UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| BENJAMIN CRAIG, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CENTURYLINK, INC., GLEN F. POST, III and R. STEWART EWING JR.,<br><br>　　　　Defendants. | No. 3:17-CV-01005-SMH-JPM |
| DON J. SCOTT, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CENTURYLINK, INC., GLEN F. POST, III, R. STEWART EWING, JR. and DAVID D. COLE,<br><br>　　　　Defendants. | No. 3:17-cv-01033-SMH-JPM |

*Caption continued on next page.*

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE STATE OF OREGON BY AND THROUGH THE OREGON STATE TREASURER AND THE OREGON PUBLIC EMPLOYEE RETIREMENT BOARD, ON BEHALF OF THE OREGON PUBLIC EMPLOYEE RETIREMENT FUND, FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS, <u>AND IN OPPOSITION TO ALL COMPETING MOTIONS</u>**

| | |
|---|---|
| AMARENDRA THUMMETI, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>  v.<br><br>CENTURYLINK, INC., GLEN F. POST III and R. STEWART EWING, JR.,<br><br>            Defendants. | No. 3:17-cv-1065-SMH-JPM |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT ................................................................................................................5

    A.   Oregon Has The Largest Financial Interest In The Relief Sought
        By The Class Because It Has The Largest Recoverable Loss
        Caused By The Alleged Fraud ........................................................................7

        i.   Oregon Has A Greater Recoverable Loss Than Any Other Movant ...........7

        ii.  Oregon Held More Damaged Shares Than Any Other Movant ..................9

    B.   Oregon Satisfies The Requirements Of Rule 23 ...........................................10

    C.   The Competing Movants Do Not Trigger The Presumption .................................12

III. CONCLUSION ...........................................................................................................13

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                   **Page(s)**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ................................................................................6

*Buettgen v. Harless*,
   263 F.R.D. 378 (N.D. Tex. 2009) ..............................................................................10

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ............................................................................1, 9, 12

*In re Comverse Tech., Inc. Sec. Litig.*,
   2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .................................................................5

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) .......................................................................9

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................ passim

*Foster v. Maxwell Techs., Inc.*,
   2013 WL 5780424 (S.D. Cal. Oct. 24, 2013) ..........................................................5, 8

*Frias v. Dendreon Corp.*,
   835 F. Supp. 2d 1067 (W.D. Wash. 2011) ..................................................................9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
   2004 WL 3314943 (N.D. Ohio May 12, 2004) ...........................................................9

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015) .........................................................................8

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) ..........................................................................6

*Porzio v. Overseas Shipholding Grp.*,
   2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ..................................................................6

*In re Reliance Acceptance Grp., Inc. Sec. Litig.*,
   1998 WL 388260 (W.D. Tex. June 29, 1998) ...........................................................10

*In re Reliant Sec. Litig.*,
   2002 U.S. Dist. LEXIS 27777 (S.D. Tex. Aug. 27, 2002) ........................................12

*Ruland v. InfoSonics Corp.*,
   2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ..........................................................4, 9

*Sallustro v. CannaVest Corp.*,
 93 F. Supp. 3d 265 (S.D.N.Y. 2015) ......................................................................... 8

*Schueneman v. Arena Pharm., Inc.*,
 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ................................................... 4, 6, 9

*In re Veeco Instruments, Inc. Sec. Litig.*,
 233 F.R.D. 330 (S.D.N.Y. 2005) ............................................................................. 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................ 5, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................... 1, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................. 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .................................................................................. 10

iii

Oregon respectfully submits this memorandum in opposition to all competing Lead Plaintiff motions and in further support of its motion for appointment as Lead Plaintiff.[1]

**I.   INTRODUCTION**

Before the Court are four motions seeking appointment of a Lead Plaintiff under the PSLRA in this securities fraud action against CenturyLink.[2]  These motions have been filed by: (1) Oregon, ECF No. 28; (2) thirteen entities whose assets are managed by Belgian asset manager KBC Asset Management NV (the "KBC Managed Funds"), ECF No. 25; (3) Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated"), ECF No. 29; and (4) two pension funds from Detroit, Michigan: the Police and Fire Retirement System of the City of Detroit and the Laborers Pension Trust Fund – Detroit and Vicinity (the "Detroit Funds"), ECF No. 26.

The PSLRA dictates that the Court should appoint as Lead Plaintiff the movant with the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Courts across the country interpret "largest financial interest" to mean the movant with the "most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  Here, Oregon has the largest recoverable loss of any movant and, as a result, has the most to gain from this litigation.  Oregon is a sophisticated, experienced Lead Plaintiff that brings to bear the resources and dedicated personnel of the Oregon Treasurer, the Oregon Attorney General, and the Department of Justice of the State of Oregon.[3]  The staff of these state agencies are highly experienced in

---

[1] All capitalized terms are defined in Oregon's initial brief, unless otherwise indicated. *See* ECF No. 28-1.

[2] Two movants that originally sought appointment as Lead Plaintiff have since withdrawn their motions. *See* ECF Nos. 39, 43.

[3] *See* Declaration Of Brian de Haan In Support Of The Motion Of The State Of Oregon By And Through The Oregon State Treasurer And The Oregon Public Employee Retirement Board, On Behalf Of The Oregon Public Employee Retirement Fund, For Appointment As Lead Plaintiff, Approval Of Its Selection

1

conducting and supervising complex litigation.  Sartor Decl., Ex. A ¶¶5-6, 9-13.  The involvement of the Oregon Attorney General and the Oregon Treasurer ensures the Court that Oregon will provide the Class with the best possible representation.

The KBC Managed Funds are the only movant that claims a larger loss than Oregon.  However, they actually have a much smaller financial interest when considered under the prevailing jurisprudence relating to loss causation.  It is black-letter law that there must be a causal connection between a securities plaintiff's investment loss and the defendant's fraudulent conduct.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).  As the Supreme Court made clear in *Dura*, that causal connection requires a "corrective disclosure" which reveals the defendants' fraud, and causes the price of the subject securities to decline.  *See id.* at 346.  If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."  *Id*. at 342.

Here, the claims against CenturyLink arise from the Company's reliance on improper sales practices to drive its revenues and earnings.  *See, e.g.*, ECF No. 1.  The KBC Managed Funds acknowledge in their motion that the truth about CenturyLink's misconduct was not revealed until June 16, 2017—when *Bloomberg* published an article reporting that a former CenturyLink employee was fired for blowing the whistle on the Company's improper sales practices.  Significantly, the vast majority of the KBC Managed Funds' investment losses resulted from sales of CenturyLink stock long ***before*** that June 2017 disclosure.  Indeed, five of the thirteen KBC Managed Funds sold out their entire position in CenturyLink stock up to two years before the June 2017 disclosure that the KBC Managed Funds cite as the first revelation of the Company's

---

Of Lead Counsel, And Consolidation Of Related Actions ("de Haan Decl."), which is submitted as Exhibit A to the Declaration of F. William Sartor ("Sartor Decl.).

improper sales practices. Eliminating the non-recoverable losses of these five entities, as required by the Supreme Court's holding in *Dura*, reduces the KBC Managed Funds' financial interest by nearly 70%, to just $4 million.

Moreover, the remaining eight KBC entities similarly incurred the majority of their losses on sales of stock ***prior*** to June 2017, when the KBC Managed Funds claim the fraud was revealed. The KBC Managed Funds do not suggest that these investments losses were caused by the fraud, and they cannot be included in the KBC Managed Funds' calculation of their financial interest in this litigation. Accordingly, as depicted in the following graph, under the clear holding of *Dura*, the KBC Managed Funds' financial interest is no more than $1.8 million, less than half of Oregon's $4.6 million recoverable loss:[4]



The other competing movants—Amalgamated and the Detroit Funds—also have smaller financial losses than Oregon, having incurred total trading losses of only $1.24 million and $1.05 million, respectively.

---

[4] Loss charts demonstrating the calculation of Oregon's and the KBC Managed Funds' recoverable losses are submitted as Exhibits B and C to the Sartor Decl.

3

Oregon's superior financial interest is confirmed by an analysis of the number of CenturyLink shares each movant held when the truth about CenturyLink was disclosed, causing the price of those shares to plummet. Oregon purchased more CenturyLink shares on a net basis—*i.e.*, Class Period purchases minus sales—than all three competing movants ***combined***:



Courts look to this factor for an objective view of financial interest because there can be no dispute in the method of its application. *See, e.g.*, *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *3-5 (S.D. Cal. Aug. 8, 2011) ("Courts that focus on potential recovery place the greatest weight on the number of net shares purchased during the class period and disregard losses and gains resulting from trades that occurred prior to disclosure of the defendant's alleged fraud."). The "net shares" analysis comports with the Supreme Court's holding in *Dura* by focusing on shares damaged by the corrective disclosure, and ignoring losses on early stock sales that would not be recoverable under *Dura*. *See Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (applying *Dura*, courts "[i]gnor[e] in-and-out losses or gains" and "focus [] on the net number of shares purchased") (citation omitted). Given its far larger financial interest under this factor alone, Oregon is entitled to the presumption as the "most adequate plaintiff."

4

Because Oregon has the largest financial interest in the litigation and has made a *prima facie* showing of its typicality and adequacy, it is entitled to a strong presumption that it is the most adequate plaintiff. Put simply, Oregon has more to gain from this litigation than the KBC Managed Funds or any other competing movant. Accordingly, Oregon's motion should be granted, and the Oregon Attorney General and Oregon Treasurer entrusted with the prosecution of this action.

## II.   ARGUMENT

The PSLRA creates a strong presumption that the Lead Plaintiff—*i.e.*, the "most adequate plaintiff"—is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In determining the "most adequate plaintiff," courts "focus[] on the amount of potential recovery in the relief sought by the class," as required by the PSLRA. *Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at *2-3 (S.D. Cal. Oct. 24, 2013) (collecting cases). This makes sense given that an investor's actual financial interest in the relief sought includes only losses potentially recoverable through the litigation. "After all, one's financial interest in the litigation can only consist of what one can recover in that action." *Galmi v. Teva Pharm. Indus. Ltd.*, No. 3:17-cv-00558-SRU, slip op. at 16 (D. Conn. July 11, 2017) (Sartor Decl., Ex. D).

The U.S. Supreme Court has held that recoverable losses in securities fraud actions include only those proximately caused by a fraud. *See Dura*, 544 U.S. at 345-46. Under *Dura*, there must be proof of a causal connection between a securities plaintiff's loss and the defendant's fraudulent conduct. If, however, as the Supreme Court explained, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id*. at 342. Accordingly, "[t]he misrepresentation does not lead to a loss if the purchaser sells the shares before the truth is revealed." *Maxwell*, 2013 WL 5780424, at *3; *see also In re Comverse*

5

*Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) ("any losses that [movant] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation").  As a result, for purposes of evaluating a lead plaintiff movant's financial interest, "it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed." *Schueneman*, 2011 WL 3475380, at *3; *see also Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 238 (E.D.N.Y. 2011) ("losses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public, are not to be included in loss calculations") (citation and alterations omitted).[5]

Courts applying *Dura* at the Lead Plaintiff stage also routinely look to which movant purchased the greatest number of net shares during the Class Period.  *See, e.g.*, *Schueneman*, 2011 WL 3475380, at *3-4.  That is because this metric provides an objective measurement of a movant's stake in the litigation and "the candidate with the most net shares purchased will normally have the largest potential damage recovery." *Id*. at 4 (citation omitted).

In fact, even before the Supreme Court issued its decision in *Dura*, courts regularly held that "in-and-out" trades have no bearing on financial interest, and losses from such trades were routinely disregarded at the Lead Plaintiff appointment stage.  *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1999) ("it is inappropriate to count losses (or profits) by 'in-and-out' traders in this case when determining the plaintiff with the greatest financial interest in the litigation").

---

[5] *See also Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (denying lead plaintiff status to investor where stock purchased was sold before corrective disclosure); *In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (same).

6

### A. Oregon Has The Largest Financial Interest In The Relief Sought By The Class Because It Has The Largest Recoverable Loss Caused By The Alleged Fraud

#### i. Oregon Has A Greater Recoverable Loss Than Any Other Movant

Oregon clearly has the greatest financial interest in this litigation, under the Supreme Court's holding in *Dura*. The below chart reflects the losses incurred, and the damaged shares retained, by Oregon and the various KBC entities after the June 2017 disclosure cited by the KBC Managed Funds:[6]

| Movant | Net Shares as of June 16, 2017[7] | Recoverable Loss (omitting losses on sales prior to June 16, 2017) |
|---|---|---|
| **Oregon** | **560,340** | **($4,655,092.70)** |
| | | |
| Index Fund - United States | 7,900 | ($26,843.28) |
| Index Fund - World | 18,473 | ($90,761.79) |
| KBC Equity Fd - America | 0 | $0.00 |
| KBC Equity Fd - Buyback America | 6,043 | ($71,687.13) |
| KBC Equity Fd - Csob Akfo Difirem | 21,154 | ($194,586.81) |
| KBC Equity Fd - Hi.Div.No-America | 0 | $0.00 |
| KBC Equity Fd - High Dividend | 0 | $0.00 |
| KBC Equity Fd - Quant Global 1 | 0 | $0.00 |
| KBC Equity Fd - Strate. Telec & Tech | 221,371 | ($441,159.45) |
| KBC Equity Fd - Telecom | (25,416) | ($15,041.58) |
| KBC Equity Fd - US Small Caps | 0 | $0.00 |
| PRICOS | 198,733 | ($1,001,445.63) |
| PRICOS DEFENSIVE | 7,610 | (37,547.65) |
| **KBC Managed Funds Total** | **455,868** | **($1,879,073.33)** |

As noted above, the KBC Managed Funds themselves claim that CenturyLink's alleged illegal sales practices scheme was first disclosed to investors on June 16, 2017, causing the price of CenturyLink stock to decline by 4.56%. *See* ECF No. 25-1 at 2. Under *Dura*, the Court must

---

[6] Only the KBC Managed Funds, in their initial brief, claim to have incurred a loss greater than Oregon. The other two competing movants, Amalgamated and the Detroit Funds, claimed to have trading losses of $1.24 million and $1.05 million, respectively. *See* ECF Nos. 29-1 and 26-1. These funds' losses are far lower than Oregon's financial interest in this case.

[7] Net shares for each movant are identical on the final corrective disclosure that ends the Class Period on June 19, 2017.

disregard the losses the KBC Managed Funds incurred by selling CenturyLink stock before that disclosure. That includes all of the losses of five of the thirteen KBC entities, which sold out their entire positions in CenturyLink before that June 16, 2017 corrective disclosure, and the majority of the losses claimed by the other eight KBC entities. *See, e.g.*, ECF No. 1 ¶45. While the KBC Managed Funds claim to have incurred a total trading loss of about $13 million, that includes over $9 million in losses incurred by the five KBC entities that sold all their shares early, and roughly $2.2 million in losses incurred prior to June 16, 2017 by the other eight KBC funds. Because the KBC Managed Funds claim the fraud was not revealed until that date, under *Dura* the losses incurred on earlier sales cannot count towards the KBC Managed Funds' financial interest in the relief sought by the Class under the PSLRA. *See Maxwell*, 2013 WL 5780424, at *4-5 (excluding all but $178,994 of a claimed $907,930); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (movants could not include losses from sales occurring before the first corrective disclosure as part of their financial interest); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 274-75 (S.D.N.Y. 2015) (rejecting a request to include losses realized from sales prior to a corrective disclosure); *Maxwell*, 2013 WL 5780424, at *3 ("for purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed") (citation omitted).

When losses from sales prior to the June 2017 disclosure are removed from the KBC Managed Funds' financial interest calculation, the KBC Managed Funds' recoverable loss is reduced to $1.8 million. In contrast, Oregon's recoverable loss is over $4.6 million, or over two-and-a-half times greater than the KBC Managed Funds' recoverable losses, and multiples greater than the trading losses of any other competing movant. As such, Oregon has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### ii.     Oregon Held More Damaged Shares Than Any Other Movant

Faced with having to discern between recoverable and unrecoverable losses, many courts have held that net shares purchased provides a more objective assessment of the movant's financial interest.  That is because the number of net shares provide objective bases for comparison among movants, while losses may be impacted by movement of the stock price that is unrelated to the alleged fraud.  *See, e.g.*, *Schueneman*, 2011 WL 3475380, at *4 (noting that under *Dura,* the "focus [is] on potential recovery" and "the candidate with the most net shares purchased will normally have the largest potential damage recovery") (citation omitted); *Ruland*, 2006 WL 3746716, at *6 (same); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011) (appointing as lead plaintiff the movant with "the greatest net shares of any individual investor or group of investors"); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (number of net shares purchased is "determinative" of financial interest).

As these courts have recognized, the net shares metric focuses on shares damaged by the alleged fraud, and therefore serves as a proxy for recoverable losses and financial interest.  Indeed, the net shares factor has been recognized by courts as providing the best measure of an investor's loss caused by the fraud, which most closely correlates with an investor's damages.  *See Cavanaugh*, 306 F.3d at 730 (investor with "most to gain from the lawsuit" should be lead plaintiff).  Looking to the amount of net shares an investor purchased during the class period also makes intuitive sense.  As one court explained, an investor with greater net shares—*i.e.*, an investor who purchased and continued to hold a large number of shares through the disclosure of the fraud—"will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed."  *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004) (quoting *McKesson*, 97 F. Supp. 2d at 996-97).

9

In this case, as demonstrated in the chart above, Oregon's greater number of net shares reveals that it was left "holding the bag" and far more impacted by the alleged fraud than the KBC Managed Funds or any other competing movant. Using the same logic, the courts in each of the above cases refused to evaluate financial interest solely based on approximate investment losses and instead appointed movants that had the largest number of net shares purchased. Here, the Court should likewise look to Oregon's overwhelmingly larger net shares purchased, as this factor most closely reflects each movants' potential recovery, and appoint Oregon as Lead Plaintiff based on this objective factor alone.

### B.     Oregon Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Oregon also perfectly satisfies the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). To overcome the strong presumption entitling Oregon to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case, and any arguments to the contrary should be rejected. *See In re Reliance Acceptance Grp., Inc. Sec. Litig.*, 1998 WL 388260, at *4 (W.D. Tex. June 29, 1998); *Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009).

Oregon is a typical Class member because, like all other Class members, Oregon: (1) purchased CenturyLink securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby. *See Buettgen*, 263 F.R.D. at 383 (finding typicality requirement met when proposed Lead Plaintiff "demonstrated it purchased shares of [the defendant company's] stock during the class period, as did the other class members, which subsequently lost significant value as a result of [the defendants'] actions and false statements").

Oregon is adequate because it has established that it is capable of "fairly and adequately protect[ing] the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Indeed, Oregon is a sophisticated institutional investor with a substantial financial stake in the litigation that has recovered well over $300 million when serving as Lead Plaintiff in securities class actions subject to the PSLRA. *See* Sartor Decl., Ex. A ¶6. Based on their prior experience, Oregon and the Oregon Department of Justice (the "Department of Justice") have developed the necessary methods and practices to effectively oversee the work of lead counsel, and to ensure that each case is prosecuted vigorously, efficiently, and in a cost-effective manner. *See id.* ¶10. It is the policy of the Department of Justice to aggressively pursue meritorious claims, and the Department of Justice has an entire section of attorneys devoted to civil enforcement. *See id.* In addition to the oversight of the Department of Justice, the Oregon Treasurer has staff responsible for overseeing the prosecution of actions in which Oregon is serving as Lead Plaintiff, including assisting the Department of Justice in supervising counsel. *See id.* ¶12. In each case in which it serves as Lead Plaintiff, Oregon is committed to devoting the necessary resources, personnel, and attention in order to maximize the recovery for the benefit of Oregon and all class members. *See id.*

In addition, Oregon and the Department of Justice employ a systematic and deliberative process when deciding whether to seek appointment as Lead Plaintiff and selecting counsel to represent it in a particular action. *See id.* ¶7. That process—which Oregon and the Department of Justice followed in this case—includes a determination by the Department of Justice as to whether seeking appointment as Lead Plaintiff is appropriate and in the best interests of Oregon, and whether Oregon's involvement would have a positive impact on the ultimate resolution of the particular case. *See id.* The Department of Justice then develops a recommendation to the

11

Attorney General and the State Treasurer, who are directly involved in the determination to seek a leadership role in any securities class action. *See id*.

Oregon has further demonstrated its adequacy through its selection of Bernstein Litowitz and Stoll Berne as Lead Counsel to represent the Class in this action. *See* Sartor Decl., Ex. A ¶9. As discussed more fully in its initial brief and in the de Hann Declaration, Bernstein Litowitz and Stoll Berne are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated an ability to conduct complex securities class action litigation effectively. *See* ECF No. 28-1 at 8-10; Sartor Decl., Ex. A ¶9.

In sum, Oregon is a sophisticated institutional investor with the experience and resources necessary to oversee counsel and prosecute this action in the best interests of the Class. Put simply, Oregon is exactly the type of investor that Congress intended to lead securities class actions. *See In re Reliant Sec. Litig.*, 2002 U.S. Dist. LEXIS 27777, at *9-10 (S.D. Tex. Aug. 27, 2002) ("Large institutional investors . . . tend to be sophisticated investors capable of controlling attorneys in securities fraud litigation, and the [PSLRA], by emphasizing financial stake, expresses a preference for appointing such investors").

      C.      **The Competing Movants Do Not Trigger The Presumption**

Because Oregon has the largest financial interest in this case and otherwise satisfies the requirements of Rule 23, the competing motions submitted by the KBC Managed Funds, Amalgamated, and the Detroit Funds should be denied. *See Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is found inadequate or atypical.") (emphasis added).

12

## III. CONCLUSION

For the reasons discussed above, and those set forth in Oregon's initial brief, Oregon respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff; (2) approve its selection of Bernstein Litowitz and Stoll Berne as Lead Counsel for the Class; (3) consolidate all related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (4) grant such other relief as the Court may deem just and proper.

Dated: September 11, 2017                                                Respectfully submitted,


                                                                          */s/ Fred Williams Sartor, Jr.*
                                                                          Fred Williams Sartor, Jr.
                                                                          George M. Snellings, IV
                                                                          **NELSON, ZENTNER, SARTOR &
                                                                             SNELLINGS, LLC**
                                                                          1507 Royal Avenue (71201)
                                                                          P. O. Box 14420 (71207-4420)
                                                                          Monroe, Louisiana
                                                                          Telephone: (318) 388-4454
                                                                          Facsimile: (318) 388-4447

                                                                          *Local counsel for Proposed Lead Plaintiff
                                                                          the State of Oregon by and through the
                                                                          Oregon State Treasurer and the Oregon
                                                                          Public Employee Retirement Board, on
                                                                          behalf of the Oregon Public Employee
                                                                          Retirement Fund*


                                                                          Gerald H. Silk
                                                                          Avi Josefson
                                                                          **BERNSTEIN LITOWITZ BERGER
                                                                             & GROSSMANN LLP**
                                                                          1251 Avenue of the Americas
                                                                          New York, NY 10020
                                                                          Telephone: (212) 554-1400
                                                                          Facsimile: (212) 554-1444
                                                                          jerry@blbglaw.com
                                                                          avi@blbglaw.com

Keith A. Ketterling
Keith S. Dubanevich
Jennifer A. Wagner
Keil M. Mueller
**STOLL BERNE**
209 Southwest Oak Street
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kketterling@stollberne.com
kdubanevich@stollberne.com
jwagner@stollberne.com
kmueller@stollberne.com

*Special Assistant Attorneys General and Counsel for Proposed Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund, and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this day, September 11, 2017, I electronically filed the above Memorandum Of Law In Further Support Of The Motion Of The State Of Oregon By And Through The Oregon State Treasurer And The Oregon Public Employee Retirement Board, On Behalf Of The Oregon Public Employee Retirement Fund, For Appointment As Lead Plaintiff, Approval Of Its Selection Of Lead Counsel, And Consolidation Of Related Actions, And In Opposition To All Competing Motions using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Fred Williams Sartor, Jr.*
Fred Williams Sartor, Jr.