# Exhibit A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JASON HUGHES, Individually and on Behalf of All Others Similarly Situated, | : : : | No. 09-4734 |
| Plaintiff, | : : | Honorable Elaine E. Bucklo |
| HURON CONSULTING GROUP INC., GARY E. HOLDREN, and GARY L. BURGE, | : : : | |
| Defendants. | : : | |

(caption continued on following pages)

**THE PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF THEIR CHOICE OF LEAD COUNSEL; AND IN RESPONSE TO THE OPPOSITION OF THE UNION FUNDS**

| | | |
|---|---|---|
| DOROTHY DeANGELIS, Individually and on Behalf of All Others Similarly Situated, | : : : | No. 09-4766 |
| Plaintiff, | : : : | |
| HURON CONSULTING GROUP INC., GARY E. HOLDREN, GARY L. BURGE, WAYNE LIPSKI and PRICEWATERHOUSECOOPERS LLP, | : : : : : | |
| Defendants. | : : | |

| | | |
|---|---|---|
| NOEL M. PARSONS, Individually and on Behalf of All Others Similarly Situated, | : : : | No. 09-4791 |
| Plaintiff, | : : : | |
| HURON CONSULTING GROUP INC., GARY E. HOLDREN, GARY L. BURGE, WAYNE LIPSKI and PRICEWATERHOUSECOOPERS LLP, | : : : : : | |
| Defendants. | : : | |

| | | |
|---|---|---|
| ADAM LIEBMAN, Individually and on Behalf of All Others Similarly Situated, | : : : | No. 09-4799 |
| Plaintiff, | : : : | |
| HURON CONSULTING GROUP INC., GARY E. HOLDREN, GARY L. BURGE and WAYNE LIPSKI, | : : : : | |
| Defendants. | : : | |

(caption continued on following page)

| | |
|---|---|
| GARY AUSTIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN, GARY L. BURGE and WAYNE LIPSKI,<br><br>Defendants. | No. 09-4842 |
| GERALD TOBIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN, GARY L. BURGE and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | No. 09-4859 |
| THOMAS FISHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN, GARY L. BURGE, WAYNE LIPSKI and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | No. 09-5475 |

## I.    INTRODUCTION[1]

The Public Pension Funds – sophisticated institutional investors that, collectively or individually, have the largest financial interest in this litigation – easily satisfy the standard for appointment as lead plaintiff. That standard is clear – "the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 . . . ." is presumed to be the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Union Funds do not dispute the fact that under any analysis the Public Pension Funds have a financial interest in this litigation vastly greater than that of the Union Funds. In fact, three members of the Public Pension Funds *individually* incurred losses greater than the *total* loss of the Union Funds *group*. Nor have the Union Funds submitted proof that the Public Pension Funds do not satisfy the adequacy or typicality requirements of Rule 23.

Recognizing the superior losses of the Public Pension Funds and unable to marshal any proof that the Public Pension Funds do not satisfy Rule 23, the Union Funds engage in a series of unsubstantiated attacks, apparently hoping that casting aspersions on these sophisticated institutions will cause this Court to ignore the clear Congressional mandate imposed by the Private Securities Litigation Reform Act ("PSLRA"). That attempt must fail, not only because the PSLRA requires proof, rather than mere speculation and innuendo, to rebut the presumption afforded the Public Pension Funds, but because the challenges presented by the Union Funds are meritless and based upon misstatements of fact and law:

- The Union Funds falsely speculate that the Public Pension Funds were gathered together by counsel and lack protocols to manage this litigation. This is directly rebutted by the evidence, which shows that the Public Pension Funds came together of their own volition and have repeatedly conferred to establish protocols

---

[1] On October 19, 2009, the Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters withdrew its motion, recognizing that the Public Pension Funds have the largest financial interest and satisfy the requirements of Rule 23, and thus are the clear selection for Lead Plaintiff.

to oversee the prosecution of this litigation, which is reflected in their Joint Declaration and Joint Prosecution Agreement.[2]

- The Union Funds falsely assert that the losses of the Public Pension Funds were not caused by the defendants' misconduct. This claim is contradicted by the evidence of the Public Pension Funds transactions in Huron shares, which was submitted in support of their motion.

- The Union Funds falsely state that Chicago Teachers inflated its financial interest by overstating the number of Huron shares it sold during the class period. The Public Pension Funds have repeatedly explained to the Union Funds, in correspondence, that this assertion is wrong, yet the Union Funds refuse to correct the record.[3]

- The Union Funds' false assertion that Chicago Teachers overstated its losses by not accounting for sales of Huron stock during the class period ignores decisions in this District that expressly recognize that the last-in, first-out ("LIFO") methodology employed by the Public Pension Funds takes into account such sales.

- The Union Funds' false assertion that Chicago Teachers misstates its losses by improperly including pre-class period holdings of Huron stock ignores the facts that the first-in, first-out ("FIFO") methodology employed by the Public Pension Funds takes into account such holdings.

- The Union Funds misstate the law in claiming Boston is statutorily barred from serving as lead plaintiff. In fact, courts uniformly recognize that a central purpose of the PSLRA is to encourage, rather than limit, the role of institutions such as Boston in securities class actions.

- The Union Funds falsely state that Boston was unaware it had been appointed lead plaintiff in a securities class action, and argue that Boston therefore cannot serve as lead plaintiff here. The Union Funds subsequently conceded its error in connection with that assertion but inexplicably persist in their erroneous argument.[4]

That the Union Funds are forced to resort to such distortions speaks volumes about the

strength of their arguments, and their capacity to serve as lead plaintiffs. The law is clear that

---

[2] *See* Joint Decl. of Kevin Huber, Gail H. Stone, Kathleen Kiely-Becchetti, Ellen K. Philbin, & John Walsh in Further Support of Motion of the Public Pension Funds & In Opposition to Competing Motions, for Appointment as Lead Plaintiff & Approval of Lead Counsel Pursuant to Section 21d(A)(3)(B) of the Securities Exchange Act of 1934 ("Joint Declaration").

[3] *See* Supplemental Declaration of Carol V. Gilden in Support of the Public Pension Funds Motion for (1) Appointment as Lead Plaintiff and (2) Approval of their Choice of Lead Counsel, and in Response to Opposition of the Union Funds ("Supp. Gilden Decl."), Ex. A, B.

[4] *See* Notice of Errata, Docket #47.

mere conjecture and fanciful drawings are not sufficient to rebut the presumption that the Public Pension Funds are the most adequate plaintiff under the PSLRA, which requires ***proof*** to rebut that presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Ferrari v. Impath, Inc.*, 2004 WL 1637053, at *6 (S.D.N.Y. July 20, 2004) ("innuendo and inferences" are insufficient to rebut presumption). The Public Pension Funds have clearly demonstrated their ability to work cohesively together, oversee their counsel, and ensure the case is run efficiently. Sophisticated, experienced and motivated by their significant financial interest in the litigation, the Public Pension Funds are the paradigmatic lead plaintiff and their motion should be granted.

In addition to challenging the appointment of the Public Pension Funds, the Union Funds separately object to their selection of three law firms to litigate the case (as opposed to the two firms representing the Union Funds). The Public Pension Funds made a considered judgment that the three law firms involved have the experience and qualifications to prosecute this case aggressively and efficiently. The Union Funds offer no proof to the contrary. Indeed, the weakness of their argument is demonstrated by the number of cases in which three (or more) law firms collaborated to successfully and efficiently prosecute similarly complex securities class actions and achieve significant benefits for the class, which include cases in which the Union Funds' counsel served as co-lead counsel.

Accordingly, the Public Pension Funds should be appointed Lead Plaintiff, and their selection of Lead Counsel should be approved.

## II.    ARGUMENT

### A.    The Public Pension Funds Have the Largest Financial Interest in the Relief Sought By the Class

The Union Funds do not dispute that the Public Pension Funds have the largest financial interest in the case, individually or as a group. Indeed, the Public Pension Funds incurred losses several times larger than those of the Union Funds, whether measured under a FIFO or LIFO

3

basis. Moreover, three members of the Public Pension Funds – Chicago Teachers, Arkansas and Boston – each, ***individually***, incurred losses greater than that of the entire Union Funds group.

The Public Pension Funds' financial interest in the litigation is also the largest, by far, when analyzed under the factors set forth in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *2 (N.D. Ill. Aug. 11, 1997), which courts throughout the country use to determine financial interest. *See* Public Pension Funds' Opp'n Brief at 4-5. Accordingly, under any judicially recognized analysis, the Public Pension Funds have demonstrated an interest in the litigation far in excess of that asserted by the Union Funds.

**B.    The Public Pension Funds Are An Appropriate "Group" Under The PSLRA**

The Union Funds' primary argument is that the Public Pension Funds' motion should be denied because of questions they raise about the formation and functioning of the Public Pension Funds.[5] Those questions are fully resolved by the Joint Declaration submitted by the Public Pension Funds, and by their Joint Prosecution Agreement.[6]

The Joint Declaration establishes that the Public Pension Funds determined to seek joint appointment and to work cooperatively in this litigation of their own volition, and not at the direction of counsel. Joint Declaration ¶ 8. This fact disposes of the Union Funds' speculation that the Public Pension Funds might be acting at the behest of counsel. The Joint Declaration also demonstrates the ability of the Public Pension Funds to work cooperatively, effectively oversee counsel, and supervise the prosecution of the case. As discussed in the Joint Declaration, each of the Public Pension Funds is a sophisticated institutional investor with a

---

[5] Significantly, the Union Funds do not contest that the PSLRA expressly permits a group of class members, such as the Public Pension Funds, to jointly move for appointment as lead plaintiff – nor could they, as the Union Funds are themselves seeking such joint appointment.

[6] *See In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 569 (D.N.J. 2006) (declarations confirmed that institutional investors decided to work together); *In re Nw. Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) (joint declaration satisfied court that group would "work as a cohesive group"); *In re Versata, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 24270, at *22 (N.D. Cal. 2001) (group "submitted a declaration providing background information and articulating why the member is seeking lead plaintiff stratus as part of the asserted group").

large financial interest in this litigation. *Id.* ¶ 2-8. The Public Pension Funds have been working together closely, and engaged in discussions – both before filing their lead plaintiff motion and subsequently after the filing regarding their shared objectives in serving as lead plaintiff, the benefits of collaborating, and protocols for managing the litigation. *Id.* ¶ 8. Those discussions resulted in a Joint Prosecution Agreement, through which the Public Pension Funds formally delineated protocols for management and the efficient prosecution of this litigation, including communication between the Public Pension Funds and with counsel, and the allocation of work between counsel.[7] *Id.* ¶¶ 8, 11.

The Joint Prosecution Agreement establishes, *inter alia*, attorney-in-charge designations for each firm, protocols for group communication, allocation of work between co-counsel, weekly conference calls between co-counsel, the exchange of time records between co-counsel, and procedures for funding the litigation. Any argument by the Union Funds that the Joint Declaration and Joint Prosecution Agreement are insufficient is contradicted by their own brief, in which they argue that "providing evidence of a group's adequacy... is not particularly onerous undertaking." U.F. Br. at 5,[8] citing *Schriver v. Impac Mortgage Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *33-34 (group demonstrated its adequacy simply by submitting a joint declaration "stating that they have already begun to confer with each other regarding the joint prosecution of the litigation").[9]

The Union Funds argue that the Public Pension Funds did not "timely" submit information about themselves, U.F. Br. at 3 n.5, implying that the Joint Declaration should have been submitted together with the Public Pension Funds' initial motion, rather than with their

---

[7] The Joint Prosecution Agreement will be submitted *in camera* at the Court's request.

[8] All references to "U.F. Br." are to the Union Funds' opposition brief filed on October 19, 2009.

[9] In contrast to the robust evidence provided by the Public Pension Funds on this point, the declaration submitted by the Union Funds falls short. Whereas the Public Pension Funds' Joint Declaration describes their joint prosecution agreement, the Union Funds are silent regarding the details of the relationship between their two law firms, and the role liaison counsel will have interacting with the clients and the Court.

opposition brief. That argument fails because there is no requirement concerning the timing of when such evidence should be submitted. So long as the Court has the information before the motions are *sub judice*, and the opposing movants have the information with an opportunity to respond – as is the case here – there is no reason to not give full weight to the Joint Declaration. Indeed, the Union Funds themselves have moved for group appointment as co-lead plaintiff without submitting any evidence concerning the formation or nature of their group together with the initial lead plaintiff motion. *See* Supp. Gilden Decl., Ex. C.

Finally, the Union Funds' suggestion that a five-member lead plaintiff group is unwieldy is refuted by the evidence and their own authority.[10] The Joint Declaration establishes that the group is *already* working together efficiently and the Joint Prosecution Agreement ensures that the efficiency continues throughout the litigation. Moreover, the case law expressly endorses such groups. *See, e.g., In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 225 (D.D.C. 1999) (noting that SEC considers a five member group small enough to effectively manage the litigation and lawyers). Indeed, the Union Funds rely on *Barnet v. Elan Corp.*, 236 F.R.D. 158 (S.D.N.Y. 2005), which found "that six members [in a lead plaintiff group] is not too unwieldy a number to effectively manage the litigation." *Id.* at 162 (citing *Funke v. Life Fin. Corp.*, 2003 U.S. Dist. LEXIS 1226, at *16 (S.D.N.Y. Jan. 28, 2003) (finding group of nine individual plaintiffs was "not too large") and *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (finding group of seven investors was small enough to avoid concerns over lawyer dominated litigation)). Recently, a group of five public pension funds were appointed as lead plaintiff in the Bank of America securities class action, another complex shareholder litigation. *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009); *see also Eastwood Enters., LLC v. Farha*, 2008 U.S. Dist. LEXIS 19127, at *4-11 (M.D. Fla. Mar. 11, 2008) (appointing

---

[10] The Union Funds offer a meaningless diagram that purports to show the lines of communication between the Public Pension Funds, their counsel, and the Court. U.F. Br. at 1. That diagram is based on speculation at best and fabrication at worst, and does not merit serious consideration.

five-member group as lead plaintiff); *Patel v. Satyam Computer Servs.*, 2009 U.S. Dist. LEXIS 20862 (S.D.N.Y. Mar. 13, 2009) (seven-member group).[11]

## C.     Chicago Teachers Accurately Stated Its Financial Interest

The Union Funds launch several attacks on Chicago Teachers – the institution with the single largest financial interest in this litigation – arguing that Chicago Teachers is manipulating its trading to conceal *profits* from its trading in Huron. These attacks however are based on facts and arguments that the Union Funds know to be false. Chicago Teachers accurately disclosed its trading and correctly calculated its losses using the same widely-accepted methodologies applied by the Union Funds.

Chicago Teachers calculated its losses under the two standards commonly used by courts: LIFO and FIFO. The Public Pension Funds clearly explained these methodologies and their use to analyze an institution's loss under the PSLRA, and accurately and fully disclosed Chicago Teachers' transactions in Huron stock and the calculation of its losses. *See* Public Pension Funds' Opening Br. at 6-7; Gilden Decl., Ex. B. Significantly, Chicago Teachers' losses, under either FIFO or LIFO, are greater alone than the combined losses of the Union Funds group.

The Union Funds ignore these irrefutable facts, manufacturing several baseless claims. First, the Union Funds wrongly accuse Chicago Teachers of "injecting" its pre-class period holdings into the loss calculation to inflate its losses. U.F. Br. at 7. This is wrong because the

---

[11] The Union Funds contend that, if the Court does not appoint all of the Public Pension Funds, it must reject their entire motion and not appoint any of them as lead plaintiff. U.F. Br. at 7 n.15. This is contrary to the precedent in this District. For example, in *In re Bally Total Fitness Securities Litigation*, Judge Grady rejected the requests of several groups of movants who sought joint appointment as lead plaintiff and, instead, considered the merits of each member of those groups individually. No. 04 Civ. 3530, 2005 WL 627960, at *4 n.6 (N.D. Ill. Mar. 15, 2005). While the Public Pension Funds believe that they have provided the Court with ample support to find that they can function cohesively as co-lead plaintiffs, if the Court disagrees, the alternative to appointing all of the Public Pension Funds is not, as the Union Funds suggest, to appoint none of them.

FIFO methodology properly takes into account pre-class period holdings in evaluating an institution's losses.[12]

Second, the Union Funds contend that Chicago Teachers misstated the number of Huron shares that it sold during the class period. That is totally inaccurate. Chicago Teachers' Certification makes clear it sold a total of 179,722 shares of Huron during the Class Period. The Union Funds' contention that Chicago Teachers sold 185,770 shares during the class period is based on a misreading of the chart submitted with Chicago Teachers' Certification to show how its losses were calculated. *See* Gilden Decl., Ex. B. That loss chart plainly states that those 185,770 shares represent the Huron shares that were ***purchased*** by Chicago Teachers during the class period. *See id.* Indeed, the loss chart itself reflects that Chicago Teachers sold 179,722 shares of Huron during the class period – the identical number of shares sold reflected on the Certification.[13]

The Union Funds make an "apples-to-oranges" comparison by suggesting that the number of class period sales listed on the Certification should equal the ***combined*** number of class period sales, post-class period sales and retained shares listed on the loss chart.[14] This is of course wrong because the loss chart includes additional transactions, after the close of the class period, that are relevant to the loss calculation but which are not required to be included in the

---

[12] Indeed, one of the two Union Funds, Building Trades United Pension Trust Fund, has itself applied FIFO to calculate its losses in past cases where it moved for appointment as lead plaintiff and held a pre-class period position in the securities that were the subject of those litigations – the identical methodology it attacks Chicago Teachers for utilizing here. *See* Supp. Gilden Decl., Exs. D, E.

[13] The loss chart functions as a ledger, which balances those 185,770 shares purchased against shares sold both during the class period and after the end of the class period, and against shares retained at the end of the class period. Accordingly, the number 185,770 appears twice on the loss chart – first as a sum of shares purchased, and second as a sum of shares sold (during and after the class period) and retained.

[14] On October 21, 2009, and again on October 23, 2009, counsel for the Public Pension Funds notified counsel of the Union Funds by letter of their mischaracterization of Chicago Teachers' certification and loss chart so that they could correct their misstatement with the Court. *See* Supp. Gilden Decl., Exs. A, B. To date, they have refused to withdraw this erroneous argument.

8

Certification under the PSLRA.[15] Indeed, the Union Funds documented their own loss calculation in the identical manner as Chicago Teachers on the loss chart submitted with their Certifications, and the total number of Huron shares sold listed on the Union Funds' loss chart do not match the class period sales listed on their Certifications – for the very same reason. For example, the Union Funds' Certifications identify sales of 2800 shares of Huron stock, yet their loss chart lists total "sales" of 29,805. The Union Funds surely do not suggest that this distinction means that they are manipulating their trading, as they accuse Chicago Teachers of doing. Similarly, according to the Certification submitted by the National Roofing Industry Pension Plan, it did not sell a single share of Huron stock – yet the Union Funds' loss chart reflects a sale of 11,305 shares by National Roofing, after the close of the class period.

Third, the Union Funds contend that Chicago Teachers' loss calculation excludes $1.6 million of profitable trades during the class period. This argument is contrary to the case law in this District and around the country, which recognizes that LIFO takes such class period sales into account. As this Court has recently reiterated, there are "[n]umerous courts that have held that LIFO analysis is the appropriate method for determining loss due to securities fraud." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 599 (N.D. Ill. 2009). Indeed, "'more recently, courts have preferred LIFO . . . because LIFO methodology . . . *takes into account gains that might have accrued to plaintiffs during the class period* due to the inflation of the stock price.'" *Id.* (emphasis added) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005)). Thus, the use of LIFO resolves the issue of accounting for class period gains that the Union Funds wrongly contend Chicago Teachers failed to address.

Accordingly, the Public Pension Funds have presented their losses in a way that is both transparent to the Court and fully consistent with widely accepted legal standards.

---

[15] *See* 15 U.S.C. § 78u-4(a)(2)(A) (requiring certification to "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint").

9

**D.    The Union Funds' Loss Causation Argument is Both Premature and Wrong**

The Union Funds argue that the Public Pension Funds have "inflated" their financial interest by including losses incurred prior to July 31, 2009, the earliest date on which the currently filed complaints allege that the truth about Huron was disclosed. U.F. Br. at 8-10. As the Union Funds note, the U.S. Supreme Court in *Dura Pharmas., Inc. v. Broudo*, 544 U.S. 336 (2005), required plaintiffs to allege loss causation by tying the defendants' false statements to a corrective disclosure that caused the price of the securities at issue to decline. Many courts have recognized, however, that consideration of loss causation is both unwarranted and inappropriate at the lead plaintiff stage. *See, e.g.*, *Montoya v. Mamma.com Inc.*, 2005 U.S. Dist. LEXIS 10224, at *6-7 (S.D.N.Y. May 31, 2005) (finding that movants who had sold some (or even all) of their shares prior to the end of the class period were not "unique" and were capable "of adequately representing the class") (citing *Dura* and *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005)); *see also In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 76959 (S.D.N.Y. Mar. 9, 2006), adopting 2006 U.S. Dist. LEXIS 5346, at *9 (S.D.N.Y. Feb. 14, 2006) (analyzing *Dura* and appointing "in-and-out" purchasers as class representatives in PSLRA action).[16]

Even if the Court assumes, for purposes of this motion, that the only relevant losses are those caused by the July 31, 2009 disclosures, the Public Pension Funds – individually and in the aggregate – still have losses that dwarf those of the Union Funds, as demonstrated by the following table:[17]

---

[16] *See also In re Sierra Wireless, Inc. Sec. Litig.*, No. 05-MD-1696, Trans. of Oral Arg. at 17:8-10 (S.D.N.Y. Dec. 2, 2005) (stating that *Dura* not an issue in motion to appoint lead plaintiff stage); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923 (D. Wash. July 13, 2005) (rejecting *Dura* argument in context of selecting lead plaintiff); *In re Cardinal Health, Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 760 (S.D. Ohio 2006) (collecting cases, and rejecting contention that loss causation can only be triggered by corrective disclosure).

[17] The Union Funds based their loss causation argument on the percentage of shares sold prior to July 31, 2009, but did not provide the Court with this calculation of actual losses despite the fact that they had the necessary information with which to calculate those losses. The reason for that omission should be obvious.

10

Losses Caused By The July 31, 2009 Corrective Disclosure

| Movant | Institution | Individual Loss (FIFO) | Total Loss (FIFO) | Individual Loss (LIFO) | Total Loss (LIFO) |
|---|---|---|---|---|---|
| Public Pension Funds | Chicago Teachers | $4,584,930.21 | $6,453,225.45 | $1,153,922.54 | $2,979,317.62 |
| | Arkansas | $914,301.48 | | $914,301.48 | |
| | Boston | $609,953.33 | | $564,857.47 | |
| | Cambridge | $205,965.28 | | $208,160.98 | |
| | Bristol | $138,075.15 | | $138,075.15 | |
| Union Funds | National Roofing | $547,615.71 | $934,484 | $547,615.71 | $938,363 |
| | Building Trades | $386,868 | | $390,748 | |

Accordingly, the Public Pension funds have the largest financial interest in this litigation even if losses incurred prior to July 31, 2009 are excluded.

The Union Funds' willingness, at this early stage of the litigation, to exclude investors who sold Huron stock prior to July 31, 2009 is disturbing at best. The loss causation argument they proffer ignores the fact that many class members incurred losses before the July 31 corrective disclosure which may be compensable if caused by an earlier, partial disclosure of the truth about Huron. The Union Funds, in furtherance of their own lead plaintiff aspirations, effectively abandon those class members from the litigation's outset, before a factual record has been developed that will permit a full analysis of those class members' claims.[18]

**E.    The "Professional Plaintiff" Restriction Does Not Apply to Institutional Investors**

The Union Funds contend that the "professional plaintiff" restriction in the PSLRA applies to Boston. *See* U.F. Br. at 10 (citing 15 U.S.C. § 78u-4(a)(3)(B)(vi)). It does not. First, the professional plaintiff limitation is discretionary, not mandatory. 15 U.S.C. § 78u-4(a)(3)(B)(vi) ("*Except as the court may otherwise permit* . . . a person may be a lead plaintiff . . .

---

[18] Indeed, counsel for the Union Funds has itself recently argued that "[a] request by a plaintiff to exclude from the class those traders who sold their stock prior to a disclosure because they cannot prove loss causation as a matter of law under *Dura* prior to development of a factual record is not only premature, *it is highly irresponsible*." *See* Supp. Gilden Decl., Ex. F (emphasis added).

in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period") (emphasis added).

Second, the overwhelming majority of district courts recognize that the "professional plaintiff" limitation simply does not apply to "institutional investors," and in particular public pension funds, who were specifically being encouraged to take active roles as lead plaintiffs in securities class action litigation.[19] *See, e.g., Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 466-67 (S.D.N.Y. 2009) ("*Iron Workers*") (appointing movant involved in 15 securities fraud actions, reasoning that "courts have routinely waived the [professional plaintiff] restriction in the case of qualified institutional investors."); *Kuriakose v. Fed. Home Loan Mortgage Co.*, 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) (holding that institutional investors are "not subject to the PSLRA's strict ban on 'professional plaintiffs' who have served as lead plaintiff in more than five class actions in the previous three-year period."); *Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) ("[T]he Court is less concerned about a plaintiff in the business of security investments being lead plaintiff on numerous occasions than if the court were to find some sort of shell corporation created for the purpose of marshaling claims ....").[20]

---

[19] The restriction on professional plaintiffs was designed to target "professional plaintiffs who own a nominal number of shares in a wide array of public companies[,]" and thereby "permit lawyers readily to file abusive securities class action lawsuits." *Dees v. Colonial BancGroup, Inc.*, No. 09-cv-104, 2009 WL 1285424, at *2 (M.D. Ala. May 7, 2009) (quoting H.R. Conf. Rep. No. 104-369 at 32 (1995), as reprinted in 1995 U.S.C.C.A.N. 730 at 731). Such lawyer-driven litigation is much less of a concern when the plaintiff is an institutional investor. See 5 Moore's Federal Practice § 23.191[4] at 23-625 ("The PSLRA seeks to restrict the use of 'professional plaintiffs' who have only a nominal interest in the litigation and who act as lead plaintiff primarily to accommodate counsel. Congress intended that courts would have discretion to permit an exception to this five-action limitation for large institutional investors, who have a real interest in controlling the litigation and are not the type of lead plaintiff sought to be restricted.").

[20] *See, also, Meeuwenberg v. Best Buy Co.*, 2004 WL 950362, at *3 (D. Minn. Apr. 29, 2004) ("The *majority* of courts have held institutional investors exempt from the statutory professional plaintiff restriction.") (emphasis added); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003) ("[T]he majority of courts ... have concluded that the restriction does not apply to institutional investors."); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 641 (D.N.J. 2002) ("The majority of courts that have considered this issue have determined that the limitation does not apply to institutional investors.").

Instead of being a bar to appointment, Boston's lead plaintiff experience should be viewed as a benefit to the Class. *See Iron Workers*, 616 F. Supp. 2d at 467 ("[T]he accumulated experience of MissPERS in pursuing multiple securities fraud actions seems a benefit more than a detriment."); *Naiditch*, 2001 WL 1659115, at *3 (institutional investor's eleven appointments as lead plaintiff "in fact could evince a laudatory zeal to fulfill its fiduciary duties. Such experience will well equip FSBA to oversee this litigation."); *Pfizer*, 233 F.R.D. at 338 (selecting lead plaintiff based on significant prior experience as lead plaintiff); *In re Gemtar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 455 (C.D. Cal. 2002) (appointing pension funds as lead plaintiff, "given their sophistication and experience prosecuting these types of cases ....") *Iron Workers*, 616 F. Supp. 2d at 467 (appointing pension fund currently serving as lead plaintiff in 15 cases where "the alternative lead plaintiff, the Iron Workers Fund, seems to have little real expertise in handling such cases.").

In the very few instances where institutional investors were rejected, courts cited record evidence that the institutional investor was likely overtaxed or its resources spread thinly. *See Cunha v. Hansen Natural Corp.*, No. 08-cv-1249-GL(JCx), 2009 WL 2029797, at *7 (C.D.Cal. July 13, 2009) (plaintiff involved in over 21 cases in past three years); *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *22 (M.D. Tenn. Nov. 6, 2003) (pension funds served as lead plaintiff 13 cases, sought to be a lead plaintiff in 24 cases, some of which motions were pending). There is no such evidence here. In fact, the Union Funds' attack along these lines is demonstrably groundless. The Union Funds initially claimed that Boston's lead plaintiff motion in *Attias v. Anadigics, Inc.* was granted "***six months ago***", that the motion was not "pending" on the day it signed its certification in this case, and further that this "mistake" shows Boston cannot keep track of its cases. U.F. Br. at 11 n.22. (emphasis in original). By letter dated October 21, 2009, counsel for the Public Pension Funds notified counsel for the Union Funds that Boston's lead plaintiff motion in *Attias* was issued, not six months ago, but on

13

August 26, 2009—the same day Boston's certification was executed—and was issued *after* Boston signed the certification. Accordingly, Boston's certification was accurate when signed. Partially admitting to their error, the Union Funds filed a notice of errata stating that the *Attias* motion was issued six weeks ago. *See* Ntce. of Errata to Dkt #35 (Dkt #47). Nevertheless, they continue to argue, without any factual basis, that Boston's resources are stretched too thin as a result and that its certification was inaccurate.

**F.      Three Co-Lead Counsel Will be Beneficial in this Complex Case**

In addition to the speculative arguments the Union Funds raise against the Public Pension Funds themselves, the Union Funds also challenge the Public Pension Funds' choice of three law firms as co-counsel. That challenge is similarly baseless. It is commonplace for courts to approve three (or more) law firms as lead counsel in a complex case such as this. *See* Public Pension Funds Opp'n Br. at 10 (citing cases).[21] This is particularly true when the client is a sophisticated institutional investor, as the Union Funds' own authority recognizes. In *Friedman v. Rayovac Corp.*, 219 F.R.D. 603 (W.D. Wis. 2002), on which the Union Funds rely, the Court denied the lead plaintiffs' motion to appoint multiple law firms as counsel where the lead plaintiffs were all individuals. Importantly, the court emphasized that the outcome would likely be different if the plaintiffs were institutions:

> [W]hen the lead plaintiff is an institutional investor, most courts have freely granted approval of the lead plaintiff's choice of counsel because in such a case the lead plaintiff will know more than the court about how to choose counsel that

---

[21] The Union Funds' counsel (and their predecessor firm) have routinely served as co-lead counsel in cases involving multiple plaintiffs and multiple counsel. *See In re Tyco Intl. Ltd. Sec. Litig.*, No. 02-01335, (D.N.H.) (3 lead counsel and 5 lead plaintiffs); *Carlson v. Xerox Corp.*, No. 00-01621 (D. CT.) (3 lead counsel and 3 lead plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.*, 21-MC-00076 (S.D.N.Y.) (3 lead plaintiffs and 3 lead counsel); *In re 3Com Corp. Sec. Litig.*, No. C-97-21083 (N.D. Cal.) (4 lead counsel and 4 lead plaintiffs); *In re Sunbeam Sec. Litig.*, No. 98-8258 (S.D. Fl.) (4 lead counsel, 2 liaison counsel, and 4 lead plaintiffs); *In re IKON Office Solutions, Inc. Sec. Litig.*, No. 98-CV-4286 (E.D. Pa.) (4 lead counsel, 1 liaison counsel, and 9 lead plaintiffs); *In re Computer Associates Sec. Litig.*, 98-CV-04839 (E.D.N.Y.) (3 lead counsel and 12 lead plaintiffs); *In re Dollar General Corp. Sec. Litig.*, 01-CV-0388 (M.D. Tenn.) (3 lead counsel and 2 lead plaintiffs); *In re Aetna, Inc. Sec. Litig.*, 01-CV-9796 (S.D.N.Y.) (3 lead counsel and 2 lead plaintiffs); *Selbst v. The Coca-Cola Co.*, No. 1:05-CV-1226-RWS (N.D. Ga.) (3 lead counsel and 4 lead plaintiffs); *Pipefitters Local No. 636 Defined Benefit Plan v. Zale Corp.*, 06-cv-01470 (N.D. Tex.) (3 lead counsel and 3 lead plaintiffs).

14

will best protect the interests of the class. In addition, an institutional investor generally will be equipped to exercise control over counsel and insure that counsel is serving the class and not his or her own interests.

*Id*. at 604; *see also id*. at 605 (distinguishing cases that involved institutional investors).

Far from being a disadvantage, joint representation by three experienced law firms is a benefit to the class in a complex case, as courts have recognized. *See, e.g., In re Tyco Int'l, Ltd. Sec. Lit.*, 2000 U.S. Dist. LEXIS 13390, at *35-36 (D.N.H. Aug. 17, 2000) ("the approval of multiple firms as co-lead counsel may provide the purported class with the benefits of combined resources and expertise, which may be especially valuable in a complex case where the defendants are represented by several large and highly qualified law firms"). Those benefits include the abilities to divide work, pool resources and expertise, and share financial burdens. The Public Pension Funds well understand these benefits, which prompted them to join together in moving for lead plaintiff status. *See* Joint Declaration ¶ 11. The Joint Declaration reflects the careful consideration of five sophisticated institutions, each knowledgeable about securities class action litigation and about the firms they selected as counsel. Their selection should not lightly be overturned, particularly when the institutions have executed the Joint Prosecution Agreement to ensure smooth and efficient representation by their selected counsel.

Finally, the Union Funds inaccurately claim that joint representation by three law firms will lead to higher fees. U.F. Br. at 12. The fee in this case will be governed by an agreement negotiated by sophisticated institutions based upon a percentage of any recovery achieved for the class – and will be subject to court approval. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Indeed, as the Union Funds well know, the fee is driven by the negotiated percentage and the size of the recovery, not the number of firms involved or the number of hours invested.

15

Moreover, the Public Pension Funds' proposed counsel have worked together efficiently and effectively on multiple occasions. There is no indication that they will not do so here.

### III. CONCLUSION

For the above reasons and those set forth in their previously-submitted memoranda, the Public Pension Funds respectfully request that the Court: (1) appoint the Public Pension Funds as the Lead Plaintiff in the Related Actions; and (2) approve their choice of Lead Counsel. The Public Pension Funds also request that the Court consolidate the above-captioned, related actions, as to which there is no disagreement with the Union Funds.

DATED: October 26, 2009

Respectfully submitted,

COHEN MILSTEIN SELLERS
& TOLL PLLC

By /s/ Carol V. Gilden

190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Tel: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com
Illinois Bar No: 06185530

-and-

Steven J. Toll
Daniel S. Sommers
Matthew K. Handley
1100 New York Avenue N.W. West Tower,
Suite 500
Washington, DC 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
Avi Josefson
2835 N. Sheffield Avenue, Suite 409
Chicago, Illinois 60657
Tel: 773-883-5382

16

Fax: 212-554-1444
avi@blbglaw.com
Illinois Bar No. 6272453

-and-

Gerald H. Silk
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444

LABATON SUCHAROW LLP
Christopher J. Keller
Alan I. Ellman
Stefanie J. Sundel
140 Broadway
New York, New York 10005
Tel: 212-907-0700
Fax: 212-883-7053

***Counsel for the Public Pension Funds and
Proposed Lead Counsel for the Class***

## CERTIFICATE OF SERVICE

I, Carol V. Gilden, hereby certify that on October 26, 2009, I caused to be filed the foregoing Reply Memorandum with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

### *Counsel for Jason Hughes:*

Leigh Robbin Handelman
Pomerantz Haudek Block Grossman & Gross LLP
One North LaSalle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181
Email: lsmollar@pomlaw.com

Patrick Vincent Dahlstrom
Pomerantz Haudek Block Grossman & Gross LLP
One North LaSalle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181
Email: pdahlstrom@pomlaw.com

### *Counsel for defendants Huron Consulting Group, Inc., Gary E. Holdren, Gary L. Burge, and Wayne Lipski :*

John C. Ellis
Richard J. Prendergast, Ltd.
111 West Washington
Suite 1100
Chicago , IL 60602
(312)641-0881
Email: jellis@rjpltd.com

Michael Thomas Layden
Richard J. Prendergast, Ltd.
111 West Washington Street
Suite 1100
Chicago , IL 60602
(312) 641-0881

Email: mlayden@rjpltd.com

Richard J. Prendergast
Richard J. Prendergast, Ltd.
111 West Washington Street
Suite 1100
Chicago , IL 60602
(312) 641-0881
Email: rprendergast@rjpltd.com

The foregoing Declaration was served on the following via electronic mail:

### *Counsel for Dorothy DeAngelis:*

Lori Ann Fanning
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: LFanning@MillerLawLLC.com

Marvin Alan Miller
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: Mmiller@millerlawllc.com

### *Counsel for plaintiff Noel M. Parsons:*

Amelia Susan Newton
Lasky & Rifkind, Ltd.
350 N. LaSalle Street
Suite 1320
Chicago, IL 60610
(312) 634-0057
Email: newton@laskyrifkind.com

Heidi E. VonderHeide
Lasky & Rifkind Ltd
350 N. LaSalle Street
Suite 1320
Chicago, IL 60610
312 634 0057
Email: vonderheide@laskyrifkind.com

Leigh R. Lasky
Lasky & Rifkind, Ltd.
350 N. LaSalle Street
Suite 1320
Chicago, IL 60610
(312) 634-0057
Email: lasky@laskyrifkind.com

Norman Rifkind
Lasky & Rifkind, Ltd.
350 N LaSalle Street
Suite 1320
Chicago, IL 60610
(312) 634-0057
Fax: (312) 634-0059
Email: rifkind@laskyrifkind.com

### *Counsel for plaintiff Adam Liebman:*

Daniel J. Kurowski
Hagens Berman Sobol Shapiro LLP
820 North Boulevard
Suite B
Oak Park , IL 60301
708 776 5600
Fax: 708-776-5601
Email: dank@hbsslaw.com

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard
Suite B
Oak Park , IL 60301
(708) 776-5600
Fax: (708) 776-5601
Email: beth@hbsslaw.com

### *Counsel for plaintiff Gary Austin:*

Lori Ann Fanning
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: LFanning@MillerLawLLC.com

Marvin Alan Miller
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago , IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: Mmiller@millerlawllc.com

### *Counsel for plaintiff Gerald Tobin:*

Kenneth A. Wexler
Wexler Wallace LLP
55 West Monroe
Suite 3300
Chicago, IL 60603
(312) 346-2222
Email: kaw@wexlerwallace.com

Mark Richard Miller
Wexler Wallace LLP
55 W. Monroe Street
#3300
Chicago, IL 60603
(312)346-2222
Fax: 312-346-0022
Email: mrm@wexlerwallace.com

### *Counsel for plaintiff Thomas Fisher:*

David Barry Kahn
David B. Kahn & Associates, Ltd.

One Northfield Plaza
Suite 100
Northfield, IL 60093
(847) 501-5083
Email: dkahn@kahnlawchicago.com

Mark E. King
David B. Kahn & Associates, Ltd.
One Northfield Plaza
Suite 100
Northfield, IL 60093
(708) 501-5083
Email: mking@kahnlawchicago.com

**_Counsel for defendant PricewaterhouseCoopers LLP_:**

Emily Nicklin
Kirkland & Ellis LLP (Chicago)
300 N. LaSalle
Chicago , IL 60654
(312)862-2000
Email: enicklin@kirkland.com

Timothy A. Duffy
Kirkland & Ellis LLP (Chicago)
300 N. LaSalle
Chicago , IL 60654
(312)862-2000
Email: tduffy@kirkland.com

_/s/ Carol V. Gilden_
Carol V. Gilden

5