# Exhibit B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| LOCAL 210 UNITY PENSION AND WELFARE FUNDS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MCDERMOTT INTERNATIONAL, INC., STEPHEN M. JOHNSON, and PERRY L. ELDERS,<br>    Defendants, | Civil Action No. 4:13-cv-02393-KMH<br>Hon. Kenneth M. Hoyt |
| JERAD FLOOD, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MCDERMOTT INTERNATIONAL, INC., STEPHEN M. JOHNSON, and PERRY L. ELDERS,<br>    Defendants. | Civil Action No.  4:13-cv-02442-KMH<br>Hon. Kenneth M. Hoyt |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE APPOINTMENT OF THE JACKSONVILLE POLICE AND FIRE PENSION FUND, LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, AND STATE-BOSTON RETIREMENT SYSTEM AS LEAD PLAINTIFF

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   ARGUMENT ........................................................................................................ 3

    A.    Jacksonville P&F, LAMPERS, and Boston Have the Largest
        Financial Interest in the Relief Sought by the Class. .............................. 3

    B.    Jacksonville P&F, LAMPERS, and Boston Satisfy Rule 23's
        Requirements ........................................................................................... 5

    C.    Jacksonville P&F, LAMPERS, and Boston Would Be an
        Appropriate Lead Plaintiff .................................................................... 9

    D.    All Competing Motions Should Be Denied ........................................... 13

III.  CONCLUSION .................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alamosa Holdings, Inc. Sec. Litig.*,
No. 5:03–cv–289–C, 2004 WL 578439 (N.D. Tex. Mar. 4, 2004)............................................7

*Alaska Electrical Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ....................................................................................................4

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) ..................................................................................6, 7

*Bach v. Amedisys, Inc.*,
No. 10-395-BAJ-CN, 2010 WL 4318755 (M.D. La. Oct. 22, 2010)......................................12

*Berger v. Compaq Computer Corp.*,
279 F.3d 313 (5th Cir. 2002) ....................................................................................................7

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12 Civ. 1203(PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012)...................................3

*In re BP, plc Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ...................................................................................12

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009) ...........................................................................................13

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................................3

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.*,
No. 03-1027, 2003 U.S. Dist. LEXIS 25264 (E.D. La. Aug. 28, 2003) .............................6, 13

*Cunha v. Hansen Natural Corp.*,
No. ED CV 08–01249–SGL(JCx), 2009 WL 2029797 (C.D. Cal. July 13, 2009)...................7

*Dees v. Colonial Bancgroup, Inc.*,
No. 2:09cv104-MHT, 2009 WL 1285424 (M.D. Ala. May 7, 2009) ....................................7, 8

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................................1, 2, 4

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)..............................................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ..................................................................................................4

*Firefighter's Pension & Relief Fund of City of New Orleans v. Bulmahn*,
   No. 13-3935, 2013 WL 4434365 (E.D. La. Aug. 15, 2013) ......................................7

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
   616 F. Supp. 2d 461 (S.D.N.Y. 2009) ................................................................5, 7

*Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
   No. 11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ................8, 9

*In re Mills Corp.*,
   No. Civ.A. 1:06-77(GEL), 2006 WL 2035391 (E.D. Va. May 30, 2006) ..............14

*Richardson v. TVIA, Inc*,
   CIV No. C-06-06304, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ...................4

*Stengle v. Am. Italian Pasta Co.*,
   No. 05-0725-CV-W-ODS, 2005 U.S. Dist. LEXIS 43816 (W.D. Mo. Dec. 19, 2005) ............6

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ......................................................................6

*Thompson v. Shaw Grp., Inc.*,
   No. Civ.A.04-1685, 2004 WL 2988503 (E.D. La. Dec. 14, 2004) ...........................6

*In re Universal Access, Inc. Sec. Litig.*,
   209 F.R.D. 379 (E.D. Tex. 2002) ...........................................................................11

*In re Unumprovident Corp. Sec. Litig.*,
   No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) .........6

*In re Versata, Inc., Sec. Litig.*,
   No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ........................13

*In re Watchguard Sec. Litig.*,
   No. 05-cv-678, 2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ...........4

**Docketed Cases**

*In re 3Com Corp. Sec. Litig.*,
   No. 97-cv-21083 (N.D. Cal.) ..........................................................................5, 8, 9

*In re AthroCare Corp. Sec. Litig.*,
   No. 08-cv-574, slip op. (W.D. Tex. Dec. 10, 2008) ................................................3

*Bach v. Amedisys, Inc.*,
   No. 3:10-cv-00395-BAJ-SCR (M.D. La. Aug. 9, 2010) .......................................12

*Capuano v. Humana, Inc.*,
  No. 08-cv-00162-JHM-DW (W.D. Ky. June 16, 2008) ......................................11

*Fernandez v. Knight Capital Group, Inc.*,
  No. 12-cv-6760 (D.N.J. Dec. 13, 2012)...............................................................9

*Hughes v. Huron Consulting Group, Inc.*,
  No. 09-cv-4734 (N.D. Ill) ..................................................................................12

*In re Huntington Bancshares Sec. Litig.*,
  No. 2:07-cv-1276, slip op. (S.D. Ohio June 24, 2008) ..................................12, 13

*Goldfarb v. El Paso Corp.*,
  No. 02-cv-2717 (S.D. Tex.) ..............................................................................2, 5

*In re STEC, Inc. Sec. Litig.*,
  No. 09-cv-1304, slip op. (C.D. Cal. Feb. 8, 2010)...............................................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  No. 12-cv-09350-VM-KNF, slip op. (S.D.N.Y. Oct. 22, 2013) ..............................8

*Louisiana Sheriffs' Pension and Relief Fund v. Merrill Lynch & Co., Inc.*,
  No. 08-cv-09063 (JSR) (S.D.N.Y.).....................................................................5, 9

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
  No. 08-cv-2177 (DMC) (JAD) (D.N.J) .............................................................11, 12

*In re Retek, Inc. Sec. Litig.*,
  No. 02-cv-4209 (D. Minn. July 1, 2005) ...........................................................9, 10

*Rubin v. MF Global Ltd.*,
  No. 08 Civ. 2233 (VM) (S.D.N.Y) .....................................................................12

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
  No. 08-cv-397 (DMC) (JAD) (D.N.J.) ............................................................5, 9, 11

*In re Star Gas Sec. Litig.*,
  No. 3:04-CV-1766-JBA (D. Conn. Mar. 1, 2005) ................................................13

**Rules & Statutes**

Fed. R. Civ. P. 23 .......................................................................................1, 2, 5

15 U.S.C. 78u-4 *et seq.* .............................................................................6, 8, 10

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995) *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)..................7, 14

Jacksonville P&F,[1] LAMPERS, and Boston respectfully submit this memorandum in further support of their appointment as Lead Plaintiff in the Action (ECF No. 21-1) and in response to the opposition memoranda of Local 675 (ECF No. 20) and Sauriol (ECF No. 19).

## I.  PRELIMINARY STATEMENT

Jacksonville P&F, LAMPERS, and Boston should be appointed to lead this litigation because any one of them individually has a greater financial interest than either of the competing movants, and each satisfies the requirements of Rule 23.  Local 675 and Sauriol do not offer the Court any reason to come to a contrary conclusion.   As reflected below, the losses of Jacksonville P&F, LAMPERS, and Boston, taken alone or together, exceed the losses of Local 675 and Sauriol regardless of whether the Court employs the commonly-accepted LIFO loss calculation method or the novel loss calculation method proffered by Local 675 pursuant to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005):

| Movant | LIFO Loss | *Dura* LIFO Loss[2] | *Dura* FIFO Loss |
|---|---|---|---|
| Jacksonville P&F | $236,560 | $236,560 | $236,560 |
| LAMPERS | $266,585 | $266,585 | $266,585 |
| Boston | $421,491 | $167,245 | $491,945 |
| Local 675 | $141,969 | $141,969 | $141,969 |
| Sauriol | $5,422 | $5,422 | $5,422 |

Significantly, Local 675 raises no challenge to the appointment of Jacksonville P&F as Lead Plaintiff:  Local 675 concedes that Jacksonville P&F has a larger financial interest than Local 675 under any measure, and does not contest that Jacksonville satisfies the adequacy and typicality requirements of Rule 23.  Nor could it, given Jacksonville P&F's record of achieving

---

[1]  All capitalized terms herein take their definitions from Jacksonville P&F's and LAMPERS's opening memorandum (ECF No. 8-1), Boston's opening memorandum (ECF No. 5), and their joint memorandum in opposition to the competing motions (ECF No. 21).

[2]  An explanation of *Dura* LIFO loss calculations for Boston is provided in Exhibit 1 to the Declaration of Thomas R. Ajamie (the "Ajamie Decl.").

significant recoveries for defrauded investors, including a $285 million recovery that Jacksonville P&F achieved for investors of El Paso Corporation through litigation prosecuted in this District. *See Goldfarb v. El Paso Corp.*, No. 02-cv-2717 (S.D. Tex.) (Hughes, J.). Even crediting all of Local 675's arguments, its motion would still fail in the face of Jacksonville P&F's greater financial interest and unquestioned adequacy.

Neither does Local 675 contest that Boston—another public pension fund with a record of success prosecuting securities class actions—is adequate and typical. As set forth in the above chart and explained below, Boston has a greater financial interest in this litigation than Local 675, even using the "*Dura*" methodology proposed by Local 675. Accordingly, even crediting all of Local 675's arguments, its motion would fail in the face of Boston's application as well.

Finally, Local 675 misleads the Court regarding the cases in which LAMPERS has served as Lead Plaintiff and misstates the "professional plaintiff" restriction of the PSLRA. LAMPERS is presently serving as Lead Plaintiff in just *two* securities class actions, well within the guidelines set out in the statute. Moreover, as an institutional investor, LAMPERS is not the type of investor whose appointment Congress intended the professional plaintiff restriction to impede. The Court should also reject Local 675's attempts to smear LAMPERS on the basis of cherry-picked quotations from a single article that in fact makes clear that LAMPERS is a responsible fiduciary committed to recovering the losses that its beneficiaries and other investors have incurred due to securities fraud.

Because Jacksonville P&F, LAMPERS, and Boston have the largest losses and meet the requirements of Rule 23—and no competing movant has offered **"*proof*"** to the contrary as

required by the PSLRA—the Court should reject the motions of Local 675 and Sauriol.[3] Accordingly, the Court should consolidate the above-captioned actions, appoint Jacksonville P&F, LAMPERS, and Boston as Lead Plaintiff, approve their selection of Lead Counsel, and reject all competing motions.

## II. ARGUMENT

### A. Jacksonville P&F, LAMPERS, and Boston Have the Largest Financial Interest in the Relief Sought by the Class.

Under any loss calculation method proposed to the Court, Jacksonville P&F, LAMPERS, and Boston have the largest financial interest in the Action. Courts in the Fifth Circuit and elsewhere use the LIFO loss calculation method to assess movants' financial interests. *See In re AthroCare Corp. Sec. Litig.*, No. 08-cv-574, slip op. at 10-11 (W.D. Tex. Dec. 10, 2008) Ex. 2 to Ajamie Decl. (adopting LIFO methodology "in accordance with . . . the strong modern trend and [] the convincing rationale set forth by other courts"); *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend both in this district and nationwide" has been to use LIFO).

Local 675 asks that the Court disregard this well-settled standard and adopt a different methodology based on loss causation—which is generally subject to expert analysis—and disregard losses incurred before the first pleaded disclosure of the truth. In this case, the determination of which metric is used to assess financial interest is largely irrelevant: Local 675 concedes that Jacksonville P&F and LAMPERS each have a larger financial interest than it does under any measure.

---

[3] *See In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (directing courts to consider movants in sequential procedure based on loss and noting that the PSLRA requires "proof" to rebut the lead plaintiff presumption). Unless otherwise noted, internal quotations and citations are omitted and all emphases are added.

Moreover, even under Local 675's "*Dura*" measure of losses, Boston still has a greater financial interest than Local 675.  Local 675 erroneously understated Boston's financial interest under its *Dura* loss methodology to be approximately $132,000.  In reality, Boston's *Dura* loss is $167,245—approximately 15% larger than Local 675's loss.  *See* Exhibit 1 to the Ajamie Decl.  But there is no basis to apply the *Dura* methodology here.  Local 675 cites to no authority from the Fifth Circuit for its contention that the loss causation concerns set out in *Dura* should be considered at this early stage of the litigation.[4]  Indeed, courts frequently decline to consider loss causation at the lead plaintiff stage because it requires premature actual determinations regarding **when** the fraud was disclosed and **how** damages are actually tabulated.  *See Richardson v. TVIA, Inc,.* No. C-06-063041, 2007 U.S. Dist. LEXIS 28406, at *18 (N.D. Cal. Apr. 16, 2007) (rejecting movant's attempt to reduce presumptive lead plaintiff's losses pursuant to *Dura*); *In re Watchguard Sec. Litig.*, No. 05-cv-678, 2005 U.S. Dist. LEXIS 40923, at *14-15, *15 n.6 (W.D. Wash. July 13, 2005) ("The Supreme Court did not suggest [in *Dura*] that a court should guess about the effect of these as-yet-unknown factors [that may affect the price of a security] in selecting a lead plaintiff").  In fact, the U.S. Supreme Court has held that courts should not determine the issue of loss causation even at the **class certification stage** of a securities class action.  *Erica P. John Fund*, 131 S. Ct. at 2186.  Accordingly, Jacksonville P&F, LAMPERS, and Boston have the largest financial interest in the outcome of this litigation and are the presumptive Lead Plaintiff.

---

[4]   Local 675's reliance on *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009), is misplaced.  There, the Fifth Circuit considered the standard under which lead plaintiffs were required to establish loss causation at the class certification stage—a requirement that has since been rejected by the U.S. Supreme Court in *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2186 (2011) (*vacating Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330 (5th Cir. 2010)).

**B.** **Jacksonville P&F, LAMPERS, and**
   **Boston Satisfy Rule 23's Requirements**

Local 675 and Sauriol have failed to provide any evidence that Jacksonville P&F, LAMPERS, and Boston, whether considered collectively or individually, would not fairly or adequately protect the Class' interests. As noted above, Jacksonville P&F's superior financial interest and adequacy to represent the class is ***uncontested***. This is not surprising given that it achieved a $285 million resolution on behalf of investors in El Paso Corporation through securities class action litigation it prosecuted in this District. *See Goldfarb*, No. 02-cv-2717. Boston's adequacy is also ***uncontested***. The only argument any opposing movant advances against Boston relates to its financial interest which, as discussed above, ***confirms*** that Boston (like Jacksonville P&F and LAMPERS) has a substantially larger loss than Local 675 or Sauriol. Accordingly, either Jacksonville P&F or Boston ***alone*** defeat the motions of Local 675 and Sauriol.

The Court should reject the effort of Local 675 to mislead the Court into believing that LAMPERS is inadequate to serve as Lead Plaintiff—despite its having recovered almost ***$1.1 billion*** for investors through its leadership of securities class actions. *See*, *e.g.*, *In re Schering-Plough Corporation/ENHANCE Sec. Litig.*, No. 08-cv-397 (DMC) (JAD) (D.N.J.) ($473 million recovery); *In re 3Com Corp. Sec. Litig.*, No. 97-cv-21083 (N.D. Cal.) ($259 million recovery); *Louisiana Sheriffs' Pension and Relief Fund v. Merrill Lynch & Co., Inc.*, No. 08-cv-09063 (JSR) (S.D.N.Y.) ($150 million recovery). Indeed, LAMPERS' accumulated experience in handling securities fraud cases "seems a benefit more than a detriment," especially when compared to the track record of Local 675. *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009).

First, Local 675 contends that LAMPERS' activism in various shareholder litigations renders it a "professional plaintiff" under the PSLRA. Local 675 is wrong. No court has ever held LAMPERS to be a professional plaintiff, which applies only if a movant was appointed as *lead plaintiff in more than five securities class actions brought pursuant to the Federal Rules of Civil Procedure in the prior three years*. 15 U.S.C. 78u-4(a)(3)(B)(vi). LAMPERS' Certification identifies each of the cases in which it was appointed as lead plaintiff during the past three years. That Certification makes clear that LAMPERS was only appointed as lead plaintiff in *two* such actions during the past three years. ECF No. 8 Ex. C. Local 675 does not and cannot contend that LAMPERS' Certification is incomplete or false, and provides no other explanation of how or why LAMPERS is subject to the professional plaintiff restriction.

Rather, Local 675 attempts to confuse the issue (and ignores the language of the statute) by citing to cases in which LAMPERS was "involved" that are completely irrelevant to the professional plaintiff analysis. ECF No. 20 at 11. These include cases that are not securities class actions subject to the PSLRA, or PSLRA cases in which LAMPERS was not appointed lead plaintiff. *See* Ex. 3 to the Ajamie Decl. The cases on which Local 675 relies are therefore inapposite because they involve movants who were rejected for having served as lead in more than five cases during the statutory three-year period.[5] Moreover, certain of the cases cited by

---

[5] *See In re Unumprovident Corp. Sec. Litig.*, No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633, at *13 (E.D. Tenn. Nov. 6, 2003) (declining to appoint as lead plaintiff movant that served as lead plaintiff in thirteen securities class actions in the last five years and that was currently serving as lead plaintiff in eight cases); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 443 (S.D. Tex. 2002) (rejecting lead plaintiff application of movant that served as lead plaintiff in nine securities class actions in prior five years); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 820 (N.D. Ohio 1999) (denying motion of movant that served as lead plaintiff "in more than five (5) securities class actions in the last three years"); *Thompson v. Shaw Group, Inc.*, No. Civ.A.04-1685, 2004 WL 2988503, at *7 (E.D. La. Dec. 14, 2004) (declining to appoint as lead plaintiff movant who oversaw seven securities class actions during the prior three years); *Chiaretti v. Orthodontic Ctrs. of Am., Inc.*, No. 03-1027, 2003 U.S. Dist. LEXIS 25264, at *6 (E.D. La. Aug. 28, 2003) (rejecting motion of movant who served as lead plaintiff in at least six "large securities class actions" in prior three years); *Stengle v. Am. Italian Pasta Co.*, No. 05-0725-CV-W-ODS, 2005 U.S. Dist. LEXIS 43816, at *19-20 (W.D. Mo. Dec. 19, 2005) (denying motion of movant who served as lead plaintiff in at least six securities class actions in prior three years); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) (rejecting motion of movant who was currently serving as lead plaintiff in six PSLRA actions in

Local 675 support LAMPERS' position. *See Cunha v. Hansen Natural Corp.*, No. ED CV 08–01249–SGL(JCx), 2009 WL 2029797, at *4 (C.D. Cal. July 13, 2009) (noting that focus on "the number of cases filed or the number of times a potential Lead Plaintiff tried (but failed) to get appointed as lead plaintiff in other cases . . . is misplaced"); *In re Alamosa Holdings, Inc. Sec. Litig.*, No. 5:03–CV–289–C, 2004 WL 578439, at *1 (N.D. Tex. Mar. 4, 2004) (appointing lead plaintiff movant that served as lead plaintiff in four securities class actions in prior three years, and rejecting movant whose appointment would constitute its sixth or seventh action in prior three years).

Even if LAMPERS had been appointed as lead plaintiff in more than five securities class actions in the prior three years (and it has not), legislative history and the strong weight of the case law holds that the professional plaintiff provision does not apply to institutional investors. *See*, *e.g.*, H.R. Conf. Rep. No. 104-369, at 35 (1995) *reprinted in* 1995 U.S.C.C.A.N. 730, 734 (1995) ("Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict"); *Iron Workers Local No. 25*, 616 F. Supp. 2d at 467 ("as many courts have noted, the provision of the PSLRA restricting the use of professional plaintiffs was largely directed at private individuals, and courts have routinely waived the restriction in the case of qualified institutional investors") (collecting cases); *Dees v. Colonial Bancgroup, Inc.*, No. 2:09cv104-MHT, 2009 WL 1285424, at *2 (M.D. Ala. May 7, 2009) (explaining that the professional

---

prior three years); *see also Firefighter's Pension & Relief Fund of City of New Orleans v. Bulmahn*, No. 13-3935, 2013 WL 4434365, at *4 n.3 (E.D. La. Aug. 15, 2013) (concluding that the professional plaintiff restriction "does not apply until the party is serving as Lead Plaintiff in *more than five* securities class actions."). *Berger v. Compaq Computer Corp.*, 279 F.3d 313 (5th Cir. 2002), simply states that the lead plaintiff should be able to control the litigation, which LAMPERS is clearly able to do based on its numerous accomplishments in litigating securities matters.

plaintiff restriction was designed to prevent the appointment of plaintiffs with nominal investments, not large institutional investors).[6]

Second, Local 675 attempts to besmirch LAMPERS—a sophisticated public pension fund that has achieved significant benefits for investors through its leadership of shareholder litigation—by cherry-picking excerpts from a *Fortune* article to suggest that LAMPERS is inadequate to lead this case. While Local 675's tactics are disappointing, they fall far short of the ***proof*** required to rebut the lead plaintiff presumption. 15 U.S.C. 78u-4(a)(3)(B)(iii). As just one illustration of LAMPERS' ability to oversee counsel and litigate this matter in the best interests of all Class members, *Fortune* recounted LAMPERS' leadership of *3Com*, which it vigorously litigated for over three years. When trying to agree on a settlement demand to resolve the action, ***LAMPERS overruled its lawyers and "wanted more."*** ECF No. 20 Ex. 4 at 144. LAMPERS eventually resolved *3Com* for $259 million, which at the time was one of the largest securities class action recoveries in history. *Id.* Indeed, LAMPERS' ability and incentive to prosecute securities class actions stems from its belief that:

> [its] fiduciary responsibility to file suits, to root out corporate wrongdoing and recover what [it] can for the fund and other shareholders—like David slinging pebbles at Goliath. We feel quite often companies do things that aren't appropriate, and therefore we feel we have a duty to file these claims to try to correct those things.

*Id.* at 140. Indeed, LAMPERS' sole concerns in participating in securities class actions are to "protect[] shareholders," "protect[] the fund," and create a "deterrent" to corporate misconduct "that can meaningfully shape companies." *Id.* at 141, 148.

---

[6]  *See also Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-09350-VM-KNF, slip op. at 3 (S.D.N.Y. Oct. 22, 2013), Ajamie Decl. Ex. 4 ("[T]he PSLRA was primarily focused on restricting private individuals from acting as professional plaintiffs, and the Court follows others in this jurisdiction in holding that institutional investors . . . need not be subject to the 'five-in-three' rule."); *Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.* (*Green Mountain Coffee*), No. 11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *13 (D. Vt. Apr. 27, 2012) (finding LAMPERS and other institutional investors exempt from professional plaintiff provision).

Any contention that LAMPERS is unable to sufficiently oversee this case is belied by the *Fortune* article, its leadership in *3Com*, and the impressive successes that it has achieved in litigating *Schering*, *Merrill Lynch*, and other securities class actions since that time. *See Green Mountain Coffee*, 2012 U.S. Dist. LEXIS 89192, at *13 (finding LAMPERS a typical and adequate lead plaintiff); *Fernandez v. Knight Capital Group, Inc.*, No. 12-cv-6760, ECF No. 18 (D.N.J. Dec. 13, 2012) (appointing LAMPERS as lead plaintiff), Ex. 5 to the Ajamie Decl. Further, LAMPERS has chosen to coordinate the prosecution of this action with two other sophisticated institutional investors, Jacksonville P&F and Boston, which will conserve resources and enhance efficiencies. ECF No. 21.

In recognition of LAMPERS' adequacy, numerous courts have appointed LAMPERS as Lead Plaintiff and certified LAMPERS as a class representative under Rule 23. For instance, in certifying LAMPERS in the *Retek* securities litigation, the court rejected defendants' personal attacks on LAMPERS' adequacy—much like Local 675's attacks here—and ruled that it was "satisfied that [LAMPERS] is committed to actively prosecuting all the claims it brought against defendants." *In re Retek, Inc. Sec. Litig.*, No. 02-cv-4209, ECF No. 235, at 6 (D. Minn. July 1, 2005) (certifying LAMPERS as class representative), Ex. 6 to the Ajamie Decl. In that case, Local 675's own counsel represented an individual investor, serving as co-lead counsel for the class, and advocated on behalf of LAMPERS' certification as a class representative. *Id.* ECF No. 18, ECF No. 112, Ex. 7 and 8 to the Ajamie Decl.

### C. Jacksonville P&F, LAMPERS, and Boston <u>Would Be an Appropriate Lead Plaintiff</u>

Given that LAMPERS, Jacksonville P&F, and Boston assert the three largest financial interests in the litigation, it is appropriate to appoint them Lead Planitiff as part of a cohesive, coordinated, and efficient three-member group. The PSLRA expressly provides that a lead

9

plaintiff can be a "person or group of persons," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and

Jacksonville P&F, LAMPERS, and Boston each have substantial experience litigating securities

class actions as part of a group, having recovered over *$1.4 billion* through their participation in

lead plaintiff groups. Jacksonville P&F's, LAMPERS', and Boston's stipulation to lead the

litigation after the Lead Plaintiff deadline confirms that they intend to prosecute the action in the

best interests of all class members. Indeed, consistent with the PSLRA, Jacksonville P&F,

LAMPERS, and Boston agreed to work together in an attempt to resolve the pending Lead

Plaintiff motions in an efficient manner, preserve judicial resources, facilitate the prompt

commencement of the action, keep costs to a minimum, and to ensure that the movant with the

largest financial interest serves as Lead Plaintiff. ECF No. 21. For these same reasons, courts

regularly appoint post-motion groups when their members individually assert a larger financial

interest than the competing movants. *See In re STEC, Inc. Sec. Litig.*, No. 09-cv-1304, slip op. at

5-6 (C.D. Cal. Feb. 8, 2010) Ex. 9 to the Ajamie Decl. (appointing as Lead Plaintiff a post-

motion group composed of movants with the largest and second largest loss, noting that because

they "would have been free to band together as a group in order to move for appointment as Lead

Plaintiff prior to the filing of their individual motions"); *Capuano v. Humana, Inc.*, No. 08-cv-

00162-JHM-DW, Stipulation at 3, ECF No. 39 (W.D. Ky. June 16, 2008) and Order at 4, ECF

No. 40 (W.D. Ky. July 17, 2008), Ex. 10 to the Ajamie Decl. (appointing group assembled from

three individuals and a theretofore competing institutional investor movant as Lead Plaintiff); *see*

*also In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 387 (E.D. Tex. 2002) (permitting

addition of institutional investor to Lead Plaintiff group following filing of Lead Plaintiff

motions where loss was not necessary to demonstrate larger financial interest than competing

movants).

10

As noted, Jacksonville P&F, LAMPERS, and Boston each have significant experience litigating securities class actions as part of a group, which informed their decision to work together here. LAMPERS recently recovered $473 million on behalf of investors in *In re Schering-Plough Corp./ENHANCE Securities Litigation*, No. 08-cv-397 (DMC) (JAD) (D.N.J.), as part of a lead plaintiff group comprised of three other pension funds. LAMPERS' recovery in *Schering* was coordinated with Jacksonville P&F's $215 million recovery on behalf of investors in *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, 08-cv-2177 (DMC) (JAD) (D.N.J), in which Jacksonville P&F served as a part of a lead plaintiff group composed of three other sophisticated investors. In seeking to resolve the actions, Jacksonville P&F and LAMPERS worked closely together, participating in coordinated mediations in a federal court in Newark, New Jersey. Joint Decl. ¶ 6.[7] Similarly, Boston has achieved several noteworthy recoveries as part of lead plaintiff groups, including a $38 million settlement on behalf of investors in *Hughes v. Huron Consulting Group, Inc.*, No. 09-cv-4734 (N.D. Ill) as part of a lead plaintiff group composed of four other pension funds, and a $90 million recovery for the class in *Rubin v. MF Global Ltd.*, No. 08 Civ. 2233 (VM) (S.D.N.Y), working with three other pension funds.

Drawing on their collective experience prosecuting these actions and working collaboratively with like-minded institutional investors, Jacksonville P&F, LAMPERS, and Boston determined that this action could be best litigated through their coordinated leadership. In assessing the adequacy of this group to represent the class, it is irrelevant whether the institutions share a prior relationship. Courts in the Fifth Circuit and elsewhere frequently appoint groups of institutional investors to serve as lead plaintiff absent such a relationship. *See*,

---

[7] Local 675's contention that *Schering* and *Merck* are unrelated is wrong. ECF 20 at 6. These were coordinated actions pending before the same judge in the same court against essentially the same defendants, given that Merck purchased Schering-Plough and succeeded to its liabilities. Ajamie Decl. Ex. 11.

11

*e.g.*, *In re BP, plc Sec. Litig.*, 758 F. Supp. 2d 428, 436-42 (S.D. Tex. 2010) (appointing group of institutional investors from different states as co-lead plaintiffs without considering prior relationships); *Bach v. Amedisys, Inc.*, No. 10-395-BAJ-CN, 2010 WL 4318755, at *5 (M.D. La. Oct. 22, 2010) and 3:10-cv-00395-BAJ-SCR, ECF No. 23-8 (M.D. La. Aug. 9, 2010) (appointing as Lead Plaintiff a group of two pension funds from Mississippi and Puerto Rico that attested to their commitment to collaborating on the prosecution of the subject action in a submission to the court), Ex. 12 to the Ajamie Decl.; *see also In re Huntington Bancshares Sec. Litig.*, No. 2:07-cv-1276, slip op. at 10 (S.D. Ohio June 24, 2008) Ex. 13 to the Ajamie Decl. (appointing a group of apparently unrelated institutional investors from far-flung states as Lead Plaintiff, reasoning that "[a]s institutional investors, [the] Group is experienced in the role of fiduciary and thus is experienced in dealing with the financial interests of the group").[8]

In fact, Local 675's counsel has previously expounded upon the appropriateness of Lead Plaintiff groups even absent preexisting relationships, in that such an "artificial" requirement "is inconsistent with market realities and the PSLRA's expressed preference for 'groups' of investors to act as Lead Plaintiff in these types of cases.[9]

---

[8]  The authority cited by Local 675 is inapposite because each decision concerns a movant group that either lacks the largest loss or has not offered evidence of the genesis of the group and its and commitment to prosecuting the litigation for the class. *See, e.g.*, *Buettgen v. Harless*, 263 F.R.D. 378, 381-82 (N.D. Tex. 2009) (rejecting groups of unrelated individuals who did not demonstrate cohesiveness or explain the reason they joined together); *Chiaretti*, 2003 U.S. Dist. LEXIS 25264, at *4 n.2 (declining to appoint group of unrelated individuals without the largest financial interest "who have never communicated with each other," finding it unlikely that they "[were] suitably al[]igned and cohesive to manage this litigation").

[9]  *See* Star Gas Group's Supplemental Brief in Further Support of its Mot. for App't as Lead Plaintiff and for Approval of its Selection of Co-Lead Counsel, *In re Star Gas Sec. Litig.*, No. 3:04-CV-1766-JBA, ECF No. 111 at 9-10 (D. Conn. Mar. 1, 2005).  The relevant excerpt from this brief is attached hereto as Exhibit 14 to the Ajamie Declaration.  *See also In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) (declining to require pre-litigation relationship among sophisticated investors, noting that "most investors in a publicly traded company are strangers to each other" and that imposing such a requirement would "foreclose the great majority of investors, who are willing and able to come together, to pursue a securities class action").

### D.    All Competing Motions Should Be Denied

Because Jacksonville P&F, LAMPERS, and Boston each individually assert the largest financial interest in the litigation, all competing motions should be denied.  As set forth above, Local 675 asserts a materially smaller financial interest than Jacksonville P&F, LAMPERS, and Boston, and offers no proof that they are inadequate to represent the class.

And while Sauriol admits that his financial interest is "far less" than that of Jacksonville P&F, LAMPERS, and Boston, Sauriol contends that he should be appointed co-Lead Plaintiff because he is an individual investor.  His position is untenable.  Sauriol fails to offer any evidence why Jacksonville P&F, LAMPERS, or Boston will be unable to represent the entire class.  The PSLRA requires the movant with the largest financial interest (so long as typical and adequate) to be appointed Lead Plaintiff, and Congress evidenced a clear preference to have sophisticated institutions such as Jacksonville P&F, LAMPERS, and Boston serve as Lead Plaintiff.  *See* H.R. Rep. No. 104-369 at 3, 5 (1995) (Conf. Rep.) ("The Conference Committee seeks to increase the likelihood that institutional investors will serve as Lead Plaintiffs" and noting that "[i]nstitutions with large stakes in class actions have much the same interests as the plaintiff class generally").  For this reason, courts reject precisely the arguments that Sauriol raises, and refuse to appoint individual investors with *de minimus* losses as co-Lead Plaintiffs.  *See*, *e.g.*, *In re Mills Corp.*, No. Civ.A. 1:06-77(GEL), 2006 WL 2035391, at *4 (E.D. Va. May 30, 2006) (declining to appoint individual with small financial interest as co-lead plaintiff with institutional investors).

## III.    CONCLUSION

For the foregoing reasons, Jacksonville P&F, LAMPERS, and Boston respectfully request that the Court: (1) consolidate the related actions; (2) appoint Jacksonville P&F, LAMPERS, and Boston as Lead Plaintiff; (3) approve their selection of Bernstein Litowitz and

Labaton Sucharow as Lead Counsel for the Class; and (4) grant such further relief as the Court deems just and proper.

Dated:  November 12, 2013

Respectfully Submitted,

/s/ Thomas R. Ajamie
Thomas R. Ajamie
**AJAMIE LLP**
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002
Tel:    (713) 860-1600
Fax:    (713) 860-1699
tajamie@ajamie.com

*Local Counsel for Proposed Lead Plaintiffs
Jacksonville Police and Fire Pension Fund
and Louisiana Municipal Police Employees'
Retirement System*


Blair A. Nicholas
David R. Kaplan
**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
12481 High Bluff Drive, Suite 300
San Diego, California  92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323
-and-
Gerald H. Silk
Avi Josefson
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Proposed Lead Plaintiffs
Jacksonville Police and Fire Pension Fund
and Louisiana Municipal Police Employees'
Retirement System, and Proposed Lead
Counsel for the Class*

/s/Damon J. Chargois
Damon J. Chargois
Kamran Masheykh
**MASHAYEKH & CHARGOIS, P.C.**
One Riverway
Suite 1700
Houston, Texas  77056
Tel:    (713) 840-6313
Fax:    (713) 622-1937

*Local Counsel for Proposed Lead Plaintiff
State-Boston Retirement System*

Christopher J. Keller
Michael W. Stocker
Rachel A. Avan
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Tel:    (212) 907-0700
Fax:    (212) 818-0477

*Counsel for Proposed Lead Plaintiff State-
Boston Retirement System, and Proposed
Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically this 12th day of November, 2013.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

<u>*/s/ Thomas R. Ajamie*</u>
Thomas R. Ajamie