# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| BENJAMIN CRAIG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC., GLEN F. POST, III and R. STEWART EWING JR.,<br><br>Defendants. | No. 3:17-CV-01005-SMH-JPM<br><br><u>CLASS ACTION</u> |
| DON J. SCOTT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC., GLEN F. POST, III, R. STEWART EWING, JR. and DAVID D. COLE,<br><br>Defendants. | No. 3:17-cv-01033-SMH-JPM<br><br><u>CLASS ACTION</u> |

*Caption continued on next page.*

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF OREGON FOR APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

| | |
|---|---|
| AMARENDRA THUMMETI, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC., GLEN F. POST III and R. STEWART EWING, JR.,<br><br>  Defendants. | No. 3:17-cv-1065-SMH-JPM<br><br><u>CLASS ACTION</u> |

Oregon respectfully submits this reply memorandum in further support of its motion for appointment as Lead Plaintiff and approval of selection of Lead Counsel.[1]

**I.   ARGUMENT**

Of the remaining movants seeking appointment as Lead Plaintiff in this action, Oregon has the largest recoverable loss and, as a result, has the "largest financial interest" in the litigation.[2] Oregon is also an experienced and dedicated Lead Plaintiff that will bring to bear the resources and dedicated personnel of the Oregon Treasurer, the Oregon Attorney General, and the Department of Justice of the State of Oregon. Oregon has also selected world-class law firms to represent it and the Class as Lead Counsel in this action. As such, Oregon respectfully submits that it is the "most adequate plaintiff" and its motion should be granted.

**A.   Oregon Has A Greater Recoverable Loss Than The KBC Managed Funds**

The KBC Managed Funds do not dispute that Oregon has a greater recoverable loss on its Class Period transactions in CenturyLink stock. Instead, on reply, they urge the Court to ignore the clear dictates of the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). That decision makes clear that, under the KBC Managed Funds' own description of the fraud, the majority of the trading losses those funds incurred were not caused by Defendants' wrongdoing and are, therefore, not recoverable.[3] *See* ECF No. 52. In *Dura*, the Supreme Court

---

[1] All capitalized terms are defined in Oregon's initial and opposition briefs, unless otherwise indicated. *See* ECF Nos. 28-1, 47.

[2] Since Oregon filed its opposition brief, two competing movants, the Detroit Funds and Amalgamated, have indicated that they do not oppose Oregon's motion for appointment as Lead Plaintiff. *See* ECF Nos. 45, 46.

[3] The KBC Managed Funds accuse Oregon of "chang[ing] its position" and "abandon[ing] the methodology it initially relied on to calculate its losses." ECF No. 52 at 4. That is simply untrue. Oregon agrees that LIFO losses are an appropriate measure of financial interest, it only disputes the manner in which the KBC Managed Funds estimated their losses to include losses that are ***not*** recoverable in this action. *See Galmi v. Teva Pharm. Indus. Ltd.*, slip op. at 17 (D. Conn. July 11, 2017) (ECF No. 47-5) (movant was not changing methodologies by "disput[ing] the manner in which [a competing movant] estimates such loses

1

held that recoverable losses in securities fraud actions include only those proximately caused by a fraud. *See Dura*, 544 U.S. at 345-46. The Supreme Court further explained that there must be a causal connection between a securities plaintiff's loss and the defendant's fraudulent conduct. If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id*. at 342. The KBC Managed Funds' argument that the Court should disregard the loss causation jurisprudence of *Dura* runs counter to the PSLRA's primary purpose: to place securities class actions in the hands of the investor with the "most to gain" from the litigation. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

Contrary to the KBC Managed Funds' contention, courts "overwhelmingly agree" that at the Lead Plaintiff stage "a movant may only include losses that will actually be recoverable in the class action." *Teva*, No. 3:17-cv-00558-SRU, slip op. at 13 (ECF No. 47-5) (applying *Dura* to ascertain the Lead Plaintiff movant with the greatest financial interest in the litigation) (citation omitted). Courts recognize that, although *Dura* involved the pleading standards for loss causation, its reasoning applies with equal weight in the context of motions for appointment as Lead Plaintiff. *See, e.g.*, *Teva*, No. 3:17-cv-00558-SRU, slip op. at 16 (ECF No. 47-5) ("one's financial interest in the litigation can only consist of what one can recover in that action").[4]

Applying *Dura*'s principles at the Lead Plaintiff stage makes sense: how could an investor have standing to assert a claim if it has not been injured by the defendants' conduct? *See In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008) (dismissing

---

and seek[ing] to impose a requirement that the estimate only include losses that are recoverable in this action").

[4] *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("If a lead plaintiff movant cannot recover a given loss in the action he seeks to lead, the loss cannot logically contribute to his financial stake in that action."); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 274-75 (S.D.N.Y. 2015) ("While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead plaintiff and lead counsel.") (citation and internal alterations omitted); *Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) (applying *Dura* at the Lead Plaintiff stage).

claims for lack of standing because a "shareholder who sells stocks before a disclosure of truthful information will not have suffered any loss based on a misrepresentation related to that information") (citing *Dura*, 544 U.S. at 342). For the same reasons, an investment loss that is not recoverable because it was not proximately caused by the defendant's alleged misconduct cannot give rise to any financial interest in the outcome of the litigation. *See In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (losses that are not "proximately linked to the misconduct at issue" in the litigation "must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff"). It is for these reasons that several courts have "align[ed] . . . with the significant weight of authority in concluding that *Dura*'s loss calculation method must be undertaken when considering a lead plaintiff motion." *Teva*, No. 3:17-cv-00558-SRU, slip op. at 16 (ECF No. 47-5).

As set forth in greater detail in Oregon's opposition brief, over 85% of the losses claimed by the KBC Managed Funds were incurred on sales of CenturyLink prior to the June 2017 disclosure of the Company's apparent fraud. *See* ECF No. 47 at 2-3. The KBC Managed Funds assert that CenturyLink's alleged illegal sales practices scheme was first disclosed to investors on June 16, 2017, causing the price of CenturyLink stock to decline significantly. *See* ECF No. 25-1 at 2. Under *Dura*, the Court must disregard the losses the KBC Managed Funds incurred by selling CenturyLink stock before that disclosure. That includes all of the losses of five of the thirteen KBC entities, which sold out their entire positions in CenturyLink before June 16, 2017, and the majority of the trading losses of the remaining eight KBC entities.

When losses from sales prior to the June 2017 disclosure are properly removed, the KBC Managed Funds' recoverable loss is reduced to $1.8 million.[5] *See* ECF No. 47 at 7. In contrast,

---

[5] Recoverable losses were calculated using the last-in, last-out ("LIFO") accounting method, which courts nearly-unanimously apply at this stage of the litigation. *See Strong v. AthroCare Corp.*, 2008 WL

3

Oregon's recoverable loss on shares held after June 16, 2017, is over $4.6 million, or over two-and-a-half times greater than the KBC Managed Funds' recoverable loss. *See id*. As such, Oregon has the most to gain from this litigation and "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

The KBC Managed Funds do not dispute Oregon's calculations, but instead contend that there are many ways to calculate recoverable losses and that Oregon picked the method that best suited its own transactions in CenturyLink stock. *See* ECF No. 52 at 4-7. But the KBC Managed Funds failed to advance any alternative method for calculating recoverable losses, let alone a method under which the KBC Managed Funds' recoverable losses even come close to those of Oregon. What's more, by admitting that there are many methods courts use to assess recoverable losses, the KBC Managed Funds concede the importance of applying *Dura* when determining financial interest at the Lead Plaintiff stage.

### B. The KBC Managed Funds' Belated "Leakage" Theory Should Be Rejected

Implicitly recognizing that the Supreme Court's loss causation jurisprudence set out in *Dura* must shape the analysis of a Lead Plaintiff's financial interest, the KBC Managed Funds vaguely suggest that losses incurred prior to the June 2017 disclosure of the fraud "may" somehow have been caused by "news about the company's abusive business practices leaking into the market." ECF No. 52 at 6-7. Critically, the KBC Managed Funds do not point to a single example of relevant information "leaking into the market," let alone provide the type of evidentiary support required for such disclosures to be considered at this stage. To the contrary, the KBC Managed Funds previously acknowledged the June 16, 2017 disclosure was the first disclosure of

---

11334942, at *6 (W.D. Tex. Dec. 10, 2008) ("The majority view seems to be that approximate losses should be calculated using the LIFO method.").

4

CenturyLink's misconduct. *See* ECF No. 25-1 at 2. Speculative assertions about possible "leakage" of negative information are insufficient and are routinely rejected on motions for appointment as Lead Plaintiff. *See, e.g.*, *Teva*, No. 3:17-cv-00558-SRU, slip op. at 21 (ECF No. 47-5) (refusing to credit leakage theory where movant "provides neither citations to publicly available documents nor a sworn affidavit in support of its alleged partial disclosures"); *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) (rejecting leakage theory where movant failed to "'allege facts in support' of his leakage theory to establish loss causation").

Further, by failing to identify a specific time frame when any purported leakage occurred, the KBC Managed Funds prevent the Court from conducting an objective analysis of loss causation. Instead, the KBC Managed Funds imply that by vaguely suggesting that there may have been some leakage of some facts at some point during the Class Period, all of their losses are now recoverable. But the KBC Managed Funds began dumping CenturyLink stock as early as March 2013, just weeks after the alleged fraud began, and at least one KBC entity sold all its CenturyLink stock nearly two years before the June 2017 disclosure. *See* ECF No. 25-3. Nothing in the record suggests that losses incurred on sales of stock at the start of the Class Period could have been caused by Defendants, and the Court should not simply assume that losses incurred prior to June 2017 are recoverable because they were caused by unspecified "leakage."[6]

---

[6] The KBC Managed Funds' reliance on *In re Gentiva Securities Litigation*, 281 F.R.D. 108 (E.D.N.Y. 2012), is misplaced. In that case, the court accepted a movant's loss causation theory because it was supported by "several plausible and legitimate partial disclosures" of the defendant's fraud, which the movant specifically identified in terms of both the date of the disclosure and the impact on the price of the subject securities. *Gentiva*, 281 F.R.D. at 115-16. In addition, the *Gentiva* court distinguished other courts' refusals to appoint in-and-out traders as Lead Plaintiffs because, like the present case, those cases involved the "complete absence of partial corrective disclosures or . . . speculative or highly questionable partial disclosures." *Id*. at 115. As such, the KBC Managed Funds' speculative "leakage" theory should be rejected.

5

      **C.    Even Under The Methodology Endorsed By The KBC Managed Funds, Oregon Has A Larger Financial Interest**

The KBC Managed Funds implore the Court to assess financial interest under the so-called "*Lax* factors," and claim that their financial interest exceeds that of Oregon under three of the four factors.[7] *See* ECF No. 52 at 2. But this argument misses the point and asks the Court to disregard *Dura* and apply the *Lax* factors without regard for the central element of loss causation. As set forth above, *Dura* stands for the principle that only shares purchased during the relevant class period and held through a disclosure of the defendant's fraud can count towards a movant's financial interest at the Lead Plaintiff stage. This principle transcends the method used to calculate financial interest or losses. *See Teva*, No. 3:17-cv-00558-SRU, slip op. at 15 (ECF No. 47-5) (noting that irrespective of the method used to assess financial interest, it "should only be used to account for losses that can be tied to the alleged fraud"). Regardless of the method applied, under *Dura*, the five KBC entities that sold all of their CenturyLink stock before the June 16, 2017 corrective disclosure must be removed from consideration because none of those entities incurred a cognizable injury. Improperly including the transactions of those five entities inflates the apparent financial interest of the KBC Managed Funds, by counting transactions that did not result in any compensable loss. Once those entities are properly excluded, Oregon's financial interest exceeds that of the KBC Managed Funds under *Lax*.

As set forth in the following chart, once the five KBC entities that did not incur any cognizable losses are excluded, the *Lax* factors weigh heavily in Oregon's favor, even when

---

[7] The "*Lax*" factors refer to four factors that some courts use to assess financial interest: (1) the number of shares purchased; (2) the number of net shares purchased (shares purchases less shares sold); (3) the net funds expended during the class period; and (4) the approximate losses suffered. *See Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). As Oregon noted in its opposition brief, these factors—particularly the net shares factor—provide an objective measure of financial interest and are favored by many courts for that reason. *See* ECF No. 47.

6

including the shares of the remaining KBC entities that were sold prior to June 2017:

| Fund Name | Shares Purchased | Net Shares Purchased | Net Funds Expended | Reported loss (LIFO) |
|---|---|---|---|---|
| **Oregon** | **1,160,139** | **560,340** | **$19,081,244.50** | **($6,418,944.84)** |
| | | | | |
| KBC EQUITY FD – BUYBACK AMERICA | 347,820 | 6,043 | $2,120,015.03 | ($2,006,810.67) |
| KBC EQUITY FD – CSOB AKFO DIFIREM | 29,631 | 21,154 | $702,053.67 | ($203,350.30) |
| KBC EQUITY FD – STRATE. TELEC & TECH | 483,724 | 221,371 | $5,594,498.22 | ($515,063.40) |
| KBC EQUITY FD – TELECOM | 55,176 | (25,416) | ($666,039.30) | ($151,613.93) |
| INDEX FUND – UNITED STATES | 7,900 | 7,900 | $208,111.54 | ($26,843.28) |
| INDEX FUND – WORLD | 25,313 | 18,473 | $532,242.31 | ($108,372.88) |
| PRICOS | 206,090 | 198,733 | $5,559,064.55 | ($999,066.54) |
| PRICOS DEFENSIVE | 8,340 | 7,610 | $212,245.55 | ($37,631.44) |
| **KBC Managed Funds' Total[8]** | **1,163,994** | **455,868** | **$14,262,191.57** | **($4,048,752.45)** |

Indeed, Oregon's LIFO loss on its investments in CenturyLink stock is nearly 60% larger than that of the KBC Managed Funds. In addition, Oregon purchased over 104,000 more net shares and expended over $4.8 million more net funds than the KBC Managed Funds. While the KBC Managed Funds purchased a mere 3,000 more shares on a gross basis, that figure includes hundreds of thousands of shares that were purchased and sold before the fraud was revealed. It is for that reason that many courts have found that "the [gross] number of shares purchased . . . is the least important" factor. *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011). In any event, the KBC Managed Funds' advantage on that factor is a mere fraction of one percent, and far outweighed by Oregon's significantly larger net shares, expenditures, and losses. There can be no credible dispute that Oregon has the largest financial interest in the litigation.

## II.   CONCLUSION

For the reasons discussed above, Oregon respectfully requests that the Court appoint it to serve as Lead Plaintiff and approve its selection of Lead Counsel.

---

[8] Excludes transactions by the following KBC entities, none of which held any CenturyLink shares at the June 16, 2017 disclosure: KBC EQUITY FD – HIGH DIVIDEND; KBC EQUITY FD – AMERICA; KBC EQUITY FD – HI.DIV.NO-AMERICA; KBC EQUITY FD – QUANT GLOBAL 1; and KBC EQUITY FD – US SMALL CAPS.

Dated: October 5, 2017                                  Respectfully submitted,

/s/ Fred Williams Sartor, Jr.
Fred Williams Sartor, Jr.
George M. Snellings, IV
**NELSON, ZENTNER, SARTOR &
   SNELLINGS, LLC**
1507 Royal Avenue (71201)
P.O. Box 14420 (71207-4420)
Monroe, Louisiana
Telephone: (318) 388-4454
Facsimile: (318) 388-4447

*Local counsel for Proposed Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund*


Gerald H. Silk
Avi Josefson
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

Keith A. Ketterling
Keith S. Dubanevich
Jennifer A. Wagner
Keil M. Mueller
**STOLL BERNE**
209 Southwest Oak Street
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kketterling@stollberne.com
kdubanevich@stollberne.com

8

jwagner@stollberne.com
kmueller@stollberne.com

*Special Assistant Attorneys General and Counsel for Proposed Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund, and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

    I hereby certify that on this day, October 5, 2017, I electronically filed the above Reply Memorandum Of Law In Further Support Of The Motion Of Oregon For Appointment As Lead Plaintiff, And Approval Of Its Selection Of Lead Counsel using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

                                                   */s/ Fred Williams Sartor, Jr.*
                                                   Fred Williams Sartor, Jr.