# EXHIBIT D

# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: ) | |
| ) | MDL No. 2795 |
| CenturyLink Residential Customer Billing ) | |
| Disputes Litigation ) | |

## REPLY MEMORANDUM OF CENTURYLINK, INC.
## AND ITS SUBSIDIARIES IN SUPPORT OF THEIR MOTION
## FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

DOUGLAS P. LOBEL
DAVID A. VOGEL
Cooley LLP
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
Email: dlobel@cooley.com
      dvogel@cooley.com

*Attorneys for CenturyLink, Inc., CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., CenturyTel Holdings Alabama, Inc., CenturyTel of Alabama, LLC, CenturyTel of Idaho, Inc., CenturyTel of the Gem State, Inc., CenturyTel of Wisconsin, LLC, Embarq Florida, Inc., Embarq Minnesota, Inc., wrongly named as CenturyLink Embarq Minnesota Inc., Gulf Coast Services, LLC, Gulf Telephone Company, LLC, and Qwest Corporation (collectively "CenturyLink")*

The parties agree that consolidation is appropriate (and unavoidable) under the circumstances. The only area of dispute is the appropriate forum for transfer.

Based on significant new developments since CenturyLink filed its Motion for Transfer, the Western District of Louisiana is now the most appropriate forum. In that District—where CenturyLink maintains its headquarters—the pending consumer actions can be joined with three related securities actions against CenturyLink recently assigned to the Hon. S. Maurice Hicks, Jr. Litigating the related consumer and securities cases in one forum, before one District Judge, in the district where Defendants are based, will best achieve the Panel's goal of preserving resources, promoting efficiency and avoiding wasteful duplication of effort.

The Panel should reject Plaintiffs' proposal for the District of Arizona. Plaintiffs base their arguments on a transparent (and admitted) effort to steer the proceeding to a circuit they prefer. As discussed below, Plaintiffs have attempted to manipulate the selection process by presenting incomplete and inaccurate facts, both about the geographic scope of CenturyLink's business and about the specific actions that will ultimately comprise the consolidated proceeding. The complete picture, presented below, compels transfer to Judge Hicks in the Western District of Louisiana. Alternatively, if the Panel declines to transfer to Louisiana, the District of Minnesota remains a far more appropriate forum than Arizona based on all the relevant factors.

## I. RECENT DEVELOPMENTS FURTHER SUPPORT TRANSFER UNDER § 1407

Since CenturyLink filed its Motion, four additional related consumer actions have been filed: Southern District of Iowa (*Denniston)*, Western District of Wisconsin (*Miller*), Southern District of Alabama (*Williams*), and District of New Mexico (*Lucero*).[1] The counsel group that

---

[1] A fifth action, in the Western District of Missouri (*Scott*), was filed, but then voluntarily dismissed three days later, immediately after CenturyLink filed the notice of related actions.

filed the nine initial actions and the Response to CenturyLink's Motion (ECF No. 19) (the "McLeod Plaintiffs" led by the Geragos & Geragos firm), did not file these new actions. Consequently, prospects for voluntary coordination between multiple groups of counsel have become uncertain, with actions pending in 13 federal courts, led by multiple teams of counsel.

Moreover, this proceeding will continue to evolve and expand after the Panel Hearing. Counsel for the McLeod Plaintiffs stated (during the parties' meet and confer) that these lawsuits will eventually be "nationwide," and will involve Plaintiffs in all 37 states in which CenturyLink does business.[2] Thus, the current scope of the proceeding today does not nearly reflect its eventual scope once all Plaintiffs have finished filing all their intended lawsuits.

## II. BASED ON RECENT DEVELOPMENTS, THE WESTERN DISTRICT OF LOUISIANA IS THE MOST APPROPRIATE TRANSFEREE COURT

While the District of Minnesota continues to be an excellent choice for the transferee court, recent developments make clear that Judge Hicks in the Western District of Louisiana ("W.D. Louisiana") is the most logical and appropriate choice to oversee this proceeding.

### A. Three Related Securities Actions Were Recently Assigned to Judge Hicks in the W.D. Louisiana

CenturyLink filed its Motion for Transfer (requesting D. Minnesota) on July 31, 2017. Shortly after that filing, three securities actions derived from the consumer cases—and ***arising from the same predicate facts and allegations***—were either transferred to or filed in the W.D. Louisiana. Each of these cases are assigned to Judge Hicks and are now pending before him:

- *Craig v. CenturyLink, Inc.*, No. 3:17-cv-01005-SMH-JPM (transferred Aug. 9, 2017 from S.D.N.Y. to W.D. La.) (Complaint attached as Exhibit 6);

---

[2]   Plaintiffs' counsel also notified the public on Twitter that the firm would be "filing [cases] in every State." *See* Exhibit 1 ("Twitter" excerpt of B. Meiselas on June 23, 2017).

- 2 -

- *Scott v. CenturyLink, Inc.*, No. 3:17-cv-01033-SMH-JPM (W.D. La. Aug. 15, 2017) (Complaint attached as Exhibit 7); and

- *Thummeti v. CenturyLink, Inc.*, No. 3:17-cv-1065-SMH-JPM (transferred Aug. 23, 2017 from S.D.N.Y. to W.D. La.) (Complaint attached as Exhibit 8).

The securities actions and consumer actions overlap and are each based on the same underlying allegations. Like the consumer actions, the securities cases allege that "CenturyLink's policies allowed its employees to add services or lines to accounts without customer permission." *Thummeti* Compl. ¶ 4; *accord Craig* Compl. ¶ 44; *Scott* Comp. ¶ 3(a); *cf., e.g.*, *Romero* Compl. (MN) ¶ 15 ("incentive program(s) for employees . . . that provided financial incentives to charge customers for services they did not order"). Also like the consumer actions (*see* CenturyLink Mem. at 7-8), the securities actions cite the *Heiser* wrongful-termination action as the basis for their allegations about these predicate facts. *Craig* Compl. ¶ 47; *Scott* Compl. ¶¶ 5, 83; *Thummeti* Compl. ¶¶ 5, 61.

### B. Combining the Consumer Actions with the Securities Actions Is Most Efficient and Avoids Duplicative Discovery and Court Proceedings

The Panel has long recognized the importance of transferring consumer actions and securities actions into the same federal court, where the core facts, legal issues and topics for discovery extensively overlap. *E.g.*, *In re MF Global Holdings Ltd. Inv. Litig.*, 857 F. Supp. 2d 1378, 1381 (J.P.M.L. 2012) (transferring consumer actions to the same forum as securities litigation); *In re Citigroup Inc. Sec. Litig.*, 648 F. Supp. 2d 1382, 1384 (J.P.M.L. 2009) (transferring ten cases alleging that defendants misrepresented company's financial condition to the same judge who was "presiding over related derivative and ERISA litigation"); *In re Holiday Magic Sec. & Antitrust Litig.*, 375 F. Supp. 1400, 1402 (J.P.M.L. 1974) (transferring securities action to the same district in which action for fraud and contract claims was pending due to "common questions of fact concerning [defendant's] . . . marketing scheme").

That is precisely the situation here. Because the securities actions address the same predicate conduct as the consumer actions, discovery and motions practice will overlap extensively. A common court and District Judge should oversee all of these actions to maximize efficiency, prevent wasteful duplication of judicial effort, and avoid inconsistent results.

*Same Discovery.* The securities and consumer actions all concern the same common predicate facts: CenturyLink's residential sales and billing policies and practices. For each of the actions, Plaintiffs will need to show that CenturyLink violated laws or breached contracts by overcharging customers or collecting unauthorized charges. Therefore, Plaintiffs in both the securities and consumer actions will undoubtedly seek discovery about the same CenturyLink policies and practices, involving the same CenturyLink witnesses and documents, including:

- Documents concerning CenturyLink's sales and billing policies;
- Documents concerning the terms of CenturyLink's contracts with its customers;
- Documents concerning CenturyLink's prices and promotions;
- Documents concerning CenturyLink's actual bills to and collections from its customers;
- Documents concerning complaints from consumers about sales and billing issues;
- Depositions of CenturyLink officers and managers who developed sales and billing policies; and
- Depositions of CenturyLink sales and customer care agents who directly interacted with customers.

*Same Legal Issues.* Similarly, many of the same legal issues will arise in the securities and consumer actions. The most obvious overlap is the ultimate substantive question in the consumer cases, which is also the predicate allegation in the securities cases: whether CenturyLink's sales and/or billing practices constituted fraud, violated state laws and/or breached customer contracts. Numerous other legal questions will arise in discovery, such as

- 4 -

whether various internal Company documents are privileged, and whether and to what extent CenturyLink may be required to produce documents made available to state attorneys general.

If different courts adjudicate the consumer and securities actions, inefficiencies and inconsistencies are bound to arise. The Panel should join the consumer and securities actions in the same court to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues, and conserve the resources of the parties, their counsel and the judiciary." *In re BP Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*, 734 F. Supp. 2d 1380, 1382 (J.P.M.L. Oct. 13, 2010) (transferring ERISA actions to same court hearing previously-centralized securities actions).

### C.     Other Factors Support Transfer to W.D. Louisiana

Two other factors support transfer to the W.D. Louisiana.

First, CenturyLink and all of its affiliates—including all the Defendants in every action—are headquartered in Monroe, Louisiana, in the W.D. Louisiana. This is an important factor in selecting a transferee court. *In re Vizio, Inc., Consumer Privacy Litig.*, 176 F. Supp. 3d 1374, 1376 (J.P.M.L. 2016) (location of defendant's headquarters was factor in selecting transferee court); *In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (same).

Second, these actions will all involve issues of Louisiana law governing a large percentage of CenturyLink's consumer contracts, including those of the named Plaintiffs. *See* Second Declaration of Guy E. Miller III ("Miller 2d Decl.") ¶ 11 (attached as Exhibit 9). Given the unique nature of the Louisiana civil code, a court intimately familiar with Louisiana law should oversee disputes arising under that law. *Cf. Kamm v. Nw. Mut. Life Ins. Co.*, No. 3:13-CV-0710-B, 2013 WL 5575177, at *8 (N.D. Tex. Oct. 10, 2013) (transferring case to Louisiana because "a Louisiana federal judge would be more familiar with any issues or 'peculiarities' that might arise thereunder"); *Troutman v. Cooper Tire & Rubber Co.*, No. CIV. 09-04084, 2010 WL

10950559, at *2 (W.D. Ark. Apr. 15, 2010) (acknowledging that "federal courts in general, are adept at applying the law of various states" but transferring case to a federal judge in Louisiana because "Louisiana law is unique among jurisdictions—due to its civil law origins"). The W.D. Louisiana Court will undoubtedly have the best familiarity with Louisiana law.

For these new and compelling reasons, CenturyLink respectfully suggests that transfer to Judge Hicks is most appropriate, and in the best interests of the parties and judiciary.

### D. In the Alternative, District of Minnesota Remains a Compelling Choice

For the reasons stated in CenturyLink's opening brief, Judge Michael J. Davis is an excellent, alternative choice for transferee judge. He has significant experience with complex class actions, and Minnesota (like Louisiana) is geographically central to the pending actions. Notably, the McLeod Plaintiffs take *no* issue with the District or with Judge Davis's expertise.

### III. THE DISTRICT OF ARIZONA IS NOT A CONVENIENT OR APPROPRIATE TRANSFEREE COURT

By contrast, the District of Arizona is not the most appropriate or convenient transferee court and does not—as Plaintiffs claim—have the "strongest geographical nexus." Resp. at 7.

Despite a nationwide assault on CenturyLink's billing practices, the McLeod Plaintiffs (with Los Angeles-based lead counsel) are only interested in a Ninth Circuit venue. Counsel blithely admitted this in the recent meet and confer. In attempting to steer the proceeding to the Ninth Circuit, the McLeod Plaintiffs' Brief misrepresents Company data and makes demonstrably false statements about CenturyLink's business. Plaintiffs also selectively filed only a small subset of their planned lawsuits to create the misimpression that the disputes—and CenturyLink's business—are focused in the Western states. These tactics should not be condoned, much less rewarded.

- 6 -

A.  **The Geographic Focus of the Actions Is
    <u>Not and Will Not Be the Western States</u>**

First, the actions are not centered around Arizona or the West. The map of the currently pending actions shows that Arizona is geographically far off to the side. *See* Exhibit 2. The McLeod Plaintiffs rely on two western state actions that they have strategically chosen not to serve (*McLeod* (CA) and *Garten* (NV)), even though they were among the earliest suits filed.[3]

Second, the Panel should consider the certain future composition of this multidistrict proceeding, not its current composition. *E.g.*, *In re Beef Indus. Antitrust Litig.*, 419 F. Supp. 720, 721 (J.P.M.L. 1976) (considering likelihood of "future tag-along actions"). Counsel for the McLeod Plaintiffs told CenturyLink's counsel that (1) these actions are nationwide lawsuits, and (2) they have plaintiffs lined up in each of CenturyLink's 37 service states. Confirming this, the McLeod Plaintiffs state that "potential" plaintiffs will exist elsewhere in the country. Resp. at 9. In fact, counsel for the McLeod Plaintiffs has touted their plans on Twitter for an attack in every state where CenturyLink does business. *See supra* note 2. However, by holding in reserve dozens of Complaints in what counsel clearly considers less desirable states, the McLeod Plaintiffs are attempting to create the false and (for them) favorable impression that the actions are concentrated in the West. Once Plaintiffs expand to 37 actions with nationwide coverage, as they have promised, the proceeding will clearly not be focused in the West.

---

[3]  The Panel should entirely discount the unserved *McLeod* (CA) action. The California court clearly lacks personal jurisdiction over Defendants because the case involves two out-of-state plaintiffs suing four out-of-state Defendants for events not connected to California. While the *McLeod* action superficially bolsters the McLeod Plaintiffs' claim of a west coast center of gravity, the case (if ever served) would never survive an initial motion to dismiss.

- 7 -

B. **The McLeod Plaintiffs Rely on Incorrect and Irrelevant Reasons for Transfer to D. Arizona**

In their bid for a Ninth Circuit forum, the McLeod Plaintiffs use inaccurate and misleading arguments.

1. *The McLeod Plaintiffs Rely on Two Irrelevant Events*

The McLeod Plaintiffs rely on two events in Arizona that, they argue, support transfer there, but neither is relevant to the issue before this Panel.

First, they note that the genesis of these consumer actions was an Arizona whistleblower action filed by a former CenturyLink employee, styled *Heiser v. CenturyLink, Inc.* Resp. at 2-3, 7. However, Plaintiffs fail to inform the Panel that the *Heiser* case was dismissed shortly after it was filed. *See* Order, *Heiser v. CenturyLink*, No. 17-cv-2333 (D. Ariz. Aug. 4, 2017), ECF No. 14. A dismissed former lawsuit says nothing about the best forum for these consumer actions.

Second, they note that the AZ Attorney General ("AG") entered into an "Assurance and Discontinuance" Agreement with CenturyLink in 2016. Resp. at 3, 7. While true, the AG has not filed a lawsuit against CenturyLink; Plaintiffs never explain why this Agreement should impact the transferee forum selection in an MDL proceeding.[4] The Agreement does not show that a transfer to Arizona will enhance judicial economy or benefit the court, parties or counsel.

2. *The McLeod Plaintiffs Misrepresent Data about CenturyLink's Business*

Most brazenly of all, the McLeod Plaintiffs paint the picture that CenturyLink's business is centered in the West, and particularly Arizona. Resp. at 1-2, 7. The data disproves that claim.

The McLeod Plaintiffs argue that "CenturyLink's concentration of customers is primarily located in the western states." Resp. at 9. That is false. CenturyLink is a ***nationwide***

---

4      By contrast, the Minnesota Attorney General ***has*** sued CenturyLink in Minnesota state court. If Louisiana is not selected, the pending AG lawsuit strongly favors transfer to Minnesota.

- 8 -

telecommunications company, providing residential services in 37 states nationwide. Miller 2d Decl. ¶ 2; Exhibit 3 (map of states). The breakdown of CenturyLink's residential customers by region (for phone and Internet) shows that they are spread evenly around the country:

| Region | States | Pct. of Customers |
|---|---|---|
| East/Southeast | AL, AR, FL, GA, LA, MS, NJ, NC, PA, SC, TN, VA | 24.8% |
| Midwest | IL, IN, IA, KS, MI, MN, MO, NE, ND, OH, OK, SD, TX, WI | 27.6% |
| Rocky Mountain | CO, ID, MT, NM, UT, WY | 22.4% |
| West | AZ, CA, NV, OR, WA | 25.2% |

Miller 2d Decl. ¶ 4; Exhibit 4. Half of CenturyLink's customers, both for phone and Internet services, are located in six states, from coast to coast: Florida, North Carolina, Minnesota, Colorado, Washington and Arizona. Miller 2d Decl. ¶ 5; Exhibit 5. Thus, the data entirely refutes Plaintiffs' contention that CenturyLink's customers are "concentrated" in the West.

The McLeod Plaintiffs also misrepresent that a majority of employees, and thus witnesses, will be located in or near Arizona.[5] Resp. at 7. Not so. Those same six states, plus Louisiana, employ half of CenturyLink's employees, and the rest work in 34 other states. Miller 2d Decl. ¶ 6. As if that were not enough, Plaintiffs make much of CenturyLink having a call center located in Arizona, but fail to disclose that CenturyLink has **18** call centers nationwide, located in **13** states, including in Louisiana, North Carolina, and Wisconsin. *Id.* ¶ 7.

In sum, the facts do not support selecting Arizona as the transferee court. If the Panel does not consider Louisiana the most appropriate forum, considerations about CenturyLink's

---

[5] The location of witnesses should have minimal relevance to the selection of the transferee court. *E.g.*, *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) ("there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise"). If the location of witnesses is deemed relevant, that factor favors **Louisiana** as the transferee court. Louisiana is the location of CenturyLink's chief policymakers who will testify about issues relevant to these proceedings.

customer base and employees do not point to Arizona—Arizona and Minnesota are essentially indistinguishable in those respects.[6] Overall geographical considerations support Minnesota, and it remains a superior choice to Arizona because of Judge Davis's experience and the utility of coordinating with the Minnesota Attorney General's lawsuit.

### IV. CENTURYLINK MET AND CONFERRED WITH THE MCLEOD PLAINTIFFS REGARDING ALTERNATIVES TO TRANSFER UNDER § 1404

Per the Panel's Notice (ECF No. 3), CenturyLink conferred with Plaintiffs' counsel regarding alternatives to coordination. As to transfer under § 1404, the W.D. Louisiana is the only district in which all the pending cases could be transferred, but the McLeod Plaintiffs declined to consent. As to voluntary coordination, the parties recognized that the actions have different discovery schedules, and informal coordination would effectively be impossible. In addition, different firms filed more actions, making coordination even more unworkable.

For these reasons, CenturyLink respectfully recommends that the Panel transfer and consolidate these matters to the Hon. S. Maurice Hicks, Jr. in the Western District of Louisiana, or alternatively to Hon. Michael J. Davis in the District of Minnesota.[7]

DATED:  August 28, 2017                    Respectfully submitted,

                                           */s/ Douglas P. Lobel*
                                           Douglas P. Lobel (VA Bar No. 42329)
                                           David A. Vogel (VA Bar No. 48971)

---

[6] Arizona and Minnesota have about the same percentage of CenturyLink residential phone customers (7.7% to 7.0%), residential Internet customers (10.6% to 7.3%), and employees (also 7.7% to 7.0%). Miller 2d Decl. ¶ 8. Plaintiffs also refer to CenturyLink's network investment and payroll in Arizona (Resp. at 7), but those figures are similar to Minnesota. *Id.* ($175 versus $182 million in annual payroll; $8.0 versus $6.1 billion in network investment).

[7] The McLeod Plaintiffs challenge the caption of the proceeding and request (1) it includes residential and commercial customers, and (2) it discusses billing practices and sales practices (Resp. at 1 n.1). Until the latest lawsuit in Alabama, none of the named Plaintiffs were commercial customers. While some of the cases allege both sales and billing issues, other cases raise pure billing issues. Taken as a whole, it is more accurate to characterize these cases as challenging billing practices, not sales practices.

> COOLEY LLP
> 11951 Freedom Drive
> Reston, Virginia 20190-5656
> Telephone: (703) 456-8000
> Facsimile: (703) 456-8100
> Email: dlobel@cooley.com
>           dvogel@cooley.com
>
> *Attorneys for CenturyLink, Inc., CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., CenturyTel Holdings Alabama, Inc., CenturyTel of Alabama, LLC, CenturyTel of Idaho, Inc., CenturyTel of the Gem State, Inc., CenturyTel of Wisconsin, LLC, Embarq Florida, Inc., Embarq Minnesota, Inc., wrongly named as CenturyLink Embarq Minnesota Inc., Gulf Coast Services, LLC, Gulf Telephone Company, LLC, and Qwest Corporation (collectively "CenturyLink")*

149682164