UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| BENJAMIN CRAIG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC., GLEN F. POST, III, and R. STEWART EWING, JR.,<br><br>Defendants. | **Case No.: 3:17-cv-01005-SMH-JPM**<br><br>Judge S. Maurice Hicks, Jr.<br><br>Magistrate Judge Joseph H. L. Perez-Montes |
| DON J. SCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>CENTURYLINK, INC., GLEN F. POST III, R. STEWART EWING JR., and DAVID D. COLE,<br><br>Defendants. | **Case No.: 3:17-cv-01033-SMH-JPM**<br><br>Judge S. Maurice Hicks, Jr.<br><br>Magistrate Judge Joseph H. L. Perez-Montes |
| AMARENDRA THUMMETI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC., GLEN F. POST, III, and R. STEWART EWING, JR.,<br><br>Defendants. | **Case No.: 3:17-cv-01065-SMH-JPM**<br><br>Judge S. Maurice Hicks, Jr.<br><br>Magistrate Judge Joseph H. L. Perez-Montes |

**DEFENDANTS' OPPOSITION TO JOINT MOTION FOR
CONTINUANCE PURSUANT TO LR 7.9**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ..................................................................................................................1
BACKGROUND ....................................................................................................................2
ARGUMENT .........................................................................................................................5
    I.    The PSRLA Mandates Prompt Appointment of a Lead Plaintiff, Not a Continuance ...........................................................................................................5
        A.    The Conditional Transfer Order Has No Effect on Proceedings in This District Under the PSLRA ..............................................................5
        B.    A Continuance is Also Inconsistent with the PSLRA's Command to Timely Appoint a Lead Plaintiff ......................................................8
    II.    Judicial Efficiency Will Not Be Served by a Continuance .......................................10
    III.    The Merits of Defendants' Motion to Vacate are Irrelevant to the Motion for Continuance ........................................................................................................11
CONCLUSION ....................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                                    **Page(s)**

*Albert Fadem Trust v. Worldcom*,
    2002 WL 1485257 (S.D.N.Y. July 12, 2002) ...........................................................................7, 9

*In re BP plc Sec. Litig.*,
    734 F. Supp. 2d 1376 (J.P.M.L. 2010) ...................................................................................12

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
    2010 WL 2035130 (S.D.N.Y. May 21, 2010) ........................................................................12

*In re Duke Energy Corp. Sec. Litig.*,
    2002 WL 1933798 (S.D.N.Y. 2002) .........................................................................................7

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) ..............................................................................................9

*In re Grain Shipments*,
    319 F. Supp. 533 (J.P.M.L. 1970) .......................................................................................4, 6

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015) ......................................................................................8

*Langley Partners, L.P. v. Tripath Tech., Inc.*,
    2005 WL 2482527 (S.D.N.Y. Oct. 6, 2005) ...........................................................................12

*Lax v. First Merchants Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .............................................................................9

*In re Penn Central Sec. Litig.*,
    333 F. Supp. 382 (J.P.M.L. 1971) ..........................................................................................11

*Samuel v. Aber Co.*,
    2009 WL 2242418 (M.D. La. July 24, 2009) ..........................................................................6

*Sevel v. AOL Time Warner, Inc.*,
    232 F. Supp. 2d 615 (E.D. Va. 2002) ...................................................................1, 6, 7, 8, 10

*Steiner v. Frankino*,
    1998 WL 34309018 (N.D. Ohio July 16, 1998) .......................................................................9

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ......................................................................................9

*In re Uber Techs., Inc., Wage and Hour Empl't Prac. Litig.*,
    2017 WL 2391523 (J.P.M.L. May 30, 2017) .........................................................................11

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

15 U.S.C.
    § 78u-4(a)(3)(A) ............................................................................................................5
    § 78u–4(a)(3)(B) ....................................................................................................*passim*

28 U.S.C.
    § 1404(a) ................................................................................................................. 2, 12
    § 1407 ................................................................................................................. 3, 6, 12

**Other Authorities**

Federal Rules of Civil Procedure
    Rule 6 .......................................................................................................................... 10

Judicial Panel on Multidistrict Litigation Rules of Procedure
    Rule 1.1 ........................................................................................................................5
    Rule 2.1 ....................................................................................................... 6, 8, 10, 12
    Rule 6.1 ...................................................................................................................... 10
    Rule 7.1 ..................................................................................................................... 4, 6
    Rule 11.1 .................................................................................................................... 10

S. Rep. 104-98, 6-7, 1995 U.S.C.C.A.N. 679 ................................................................... 9

Defendants hereby respectfully submit this Opposition to the Joint Motion for Continuance Pursuant to LR 7.9 ("Motion for Continuance," or "Motion") that was filed by two of the four entities seeking appointment as lead plaintiff in the three above-captioned securities class actions – namely, KBC Asset Management NV ("KBC"), and the State of Oregon ("Oregon").

## INTRODUCTION

The Motion seeks the continuance of the hearing that this Court scheduled for October 25, 2017, at which the Court is to hear argument on pending motions for appointment as lead plaintiff. The Motion makes three arguments in favor of a continuance, none of which hold up under the slightest scrutiny.

First, the Motion argues that the Private Securities Litigation Reform Act of 1995 ("PSLRA") bars this Court from appointing a lead plaintiff, because the U.S. Judicial Panel on Multidistrict Litigation ("Panel") has issued a **Conditional** Transfer Order ("CTO") relating to the instant three securities class actions. This argument is meritless. The only support that the Motion offers for its argument is a solitary case, *Sevel,* with which no other court appears to have agreed. Indeed, the vast majority of courts that have addressed the same issue have held the opposite. And with good reason: the PSLRA requires that courts promptly appoint a lead plaintiff, and the Panel's own rules do not contemplate that the PSLRA's requirements will be overridden in the circumstances present here.

Second, the Motion argues that postponing the October 25, 2017 hearing would "conserve judicial resources." In making this argument, the Motion again relies exclusively on *Sevel*. This reliance is again misplaced because, among other reasons, *Sevel* is highly distinguishable. Unlike in *Sevel*, there are no related securities class actions pending in any other district. Rather, all three securities class actions at issue are pending in this District, and under these circumstances, it is most efficient for *this* Court to decide the pending lead plaintiff motions. The Panel itself has said as much in similar cases.

Third, the Motion argues that CenturyLink essentially has conceded that the three instant securities class actions should be transferred out of this District. But CenturyLink's arguments to

1

the Panel concerning issues being considered by the Panel simply are not relevant to this Court's appointment of a lead plaintiff in the three securities class actions, or to the instant Motion for Continuance. In any event, the Motion mischaracterizes CenturyLink's arguments to the Panel, where the Company consistently argued that these securities class actions belong in the Monroe Division of the Western District of Louisiana.

For all of these reasons, as set forth more fully *infra*, the Motion for Continuance should be denied, and the upcoming lead plaintiff hearing held as scheduled.

## BACKGROUND

**The Instant Securities Cases**. The instant cases to which the Motion for Continuance relates – *i.e.*, *Craig v. CenturyLink et al.*, *Scott v. CenturyLink et al.*, and *Thummeti v. CenturyLink et al.* – are putative class actions alleging violations of the federal securities laws against CenturyLink, Inc. and certain individual defendants (the "Instant Securities Cases"). There are no related securities class actions currently pending against CenturyLink (or any of the other defendants in this case) in this District or any other District. Only one of the Instant Securities Cases (*Scott*) was *originally* filed in this District. *Scott* ECF No. 1 at 1.[1] The other two cases (*Craig* and *Thummeti*) were originally filed in the U.S. District Court for the Southern District of New York ("S.D.N.Y."). ECF No. 1 at 1; *Thummeti* ECF No. 1 at 1. In both of those cases, the court entered a stipulated order transferring the cases to this District in accordance with 28 U.S.C. § 1404(a). ECF No. 8; *Thummeti* ECF No. 7. Each of the two stipulated orders stated, *inter alia*, that – *as all the parties in the cases had agreed* – "transfer [to the Western District of Louisiana] will serve the convenience of the parties and witnesses, and interests of justice." *See id.*

**The Consumer Cases**. Beginning on June 18, 2017, various plaintiffs' firms began to file class action complaints, on behalf of putative classes of CenturyLink customers, alleging certain wrongful business practices (the "Consumer Cases"). In stark contrast to the Instant Securities Cases, none of the Consumer Cases is (or ever has been) filed in this District, or alleges violations of the securities laws. Over time, the number of plaintiffs and different jurisdictions in which these

---

[1] Except where preceded by "*Scott*" or "*Thummeti*," all references to ECF numbers are to the docket in *Craig*.

2

suits were filed continued to grow. In fact, counsel for some of the Consumer plaintiffs told CenturyLink and the public that the lawsuits would eventually be "nationwide" or at least filed in each of the 37 states in which CenturyLink does business. ECF No. 75-5 at 2.

Given the multiplicity of plaintiffs, plaintiffs' firms, and jurisdictions involved, with plaintiffs themselves stating that additional suits would continue to be filed, CenturyLink sought centralization of the Consumer Cases before the Panel under 28 U.S.C. § 1407 in a motion filed on July 31, 2017.[2] *See generally* ECF No. 75-2. Briefing was extensive, and there were multiple rounds of oppositions, replies, sur-replies, and replies to sur-replies. *See*, *e.g.*, ECF No. 75-5; Ex. 1.[3] CenturyLink initially asked for consolidation of the Consumer Cases in the District of **Minnesota**, where one of the Consumer Cases, and a related state court case, was pending. ECF No. 75-2 at 18-19. At that time, two of the Instant Securities Cases – *Craig* and *Thummeti* – were still pending in the S.D.N.Y. (*see supra*), and the third case, *Scott*, had not yet been filed.

By the time CenturyLink filed its (first) reply with the Panel in support of the § 1407 motion, however, the Instant Securities Cases were before this Court (with *Craig* and *Thummeti* having been transferred to this District, and *Scott* having been originally filed here, *see supra*). Therefore, in that reply, CenturyLink argued "While the District of Minnesota continues to be an excellent choice for the transferee court, recent developments make clear that Judge Hicks in the Western District of Louisiana . . . is the most logical and appropriate choice to oversee [the Consumer Cases]." ECF No. 75-5 at 2. In support of its position, CenturyLink argued that there would have been some benefit to having the Instant Securities Cases and the Consumer Cases together in this Court. However, CenturyLink took pains to note that the Instant Securities Cases belong ***in this District***, regardless of whether the Consumer Cases are transferred to this District or some other District. Thus, for example, when one of the plaintiffs in the Consumer Cases argued that the Instant Securities Cases "should tag along with the consumer cases to wherever the

---

[2] The Consumer Cases generally name CenturyLink and some of its subsidiaries, but *not* the individual defendants in the Instant Securities Cases, as defendants. *See* ECF No. 75-3 at 1 n.1 (listing CenturyLink entities seeking consolidation of the Consumer Cases). This Opposition uses the term "CenturyLink" to refer, collectively, to all of the defendants in the Consumer Cases.

[3] References to "Ex. _" refer to Exhibits to the attached Declaration of Lyle Roberts.

consumer actions are transferred," (Ex. 1 at 6), CenturyLink replied that "transferring the securities actions to the site of the consumer cases is contrary to the consistent practice of federal courts" and "W.D. Louisiana is the proper home for the securities actions, regardless of where the Panel consolidates the consumer actions." *Id.*

**Panel Decision, CTO, and Motion to Vacate**.  On October 5, 2017, the Panel issued a two-page order, finding that the Consumer Cases "involve common questions of fact, and that centralization of these cases will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." ECF No. 75-3 at 1.  Based on this finding, the Consumer cases were consolidated into MDL 2795 (*In re CenturyLink Residential Customer Billing Disputes Litigation*).  In a single six-line paragraph at the end of the order, the Panel indicated that it had chosen the District of Minnesota as the transferee district.  The Panel based this decision in large part on the fact that the majority of plaintiffs and all defendants in the Consumer Cases supported that district (though the Panel did note that CenturyLink's support was in the alternative). *Id.* at 2.  The Panel's order also referred to the Instant Securities Cases as "***potential*** tag-along actions" for which a CTO ***might*** issue. *Id*. (emphasis added).

On October 6, 2017, the Clerk of the Panel issued a CTO listing the Securities Actions, among others, as potential tag-along actions. ECF No. 75-4 at 2.  The designation of a case as a "potential tag-along action" and the issuance of a CTO are "simply [] administrative act[s] of the Clerk which can be and will be vacated upon the showing of good cause by any party." *In re Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970).  Under Panel R. 2.1(d), the pendency of a CTO "does not affect or suspend orders and pretrial proceedings in any pending federal district court action."  In addition, per Panel R. 7.1(c) & (f), if a party opposes a CTO by filing a Notice of Opposition, the CTO does not take effect unless and until that party's subsequent opposition brief, called a Motion to Vacate, is denied.  Defendants have filed a Notice of Opposition to the CTO with the Panel, *see* Ex. 2, and will file their Motion to Vacate within 14 days of that Notice.

**Lead Plaintiff Motions, and the Motion for Continuance of the Hearing on Those Motions**.  Currently pending before the Court in the Instant Securities Cases are four competing

4

motions for appointment as lead plaintiff, filed by KBC, Oregon, Detroit Institutional Investor Group, and Amalgamated Bank as Trustee for the LongView Collective Investment Fund.[4] These motions were submitted to this Court on August 21, 2017, *i.e.,* within the 60-day deadline for the filing of lead plaintiff motions specified in 15 U.S.C. § 78u-4(a)(3)(A)(i). ECF Nos. 25, 26, 28, and 29. A hearing on the motions was initially set for October 4, 2017, but one lead plaintiff applicant's counsel had a conflict on that date, and the hearing was reset to October 25, 2017. ECF No. 59.

On October 10, 2017, the instant Motion for Continuance was filed. The Motion recites that it is made pursuant to LR 7.9. On its face, the Motion merely requests "a continuance of the October 25, 2017 hearing on the pending motions for appointment as Lead Plaintiff." ECF No. 75 at 1. However, in substance, the Motion actually seeks the postponement – for an indefinite period of time – of the appointment of a lead plaintiff in the three Instant Securities Cases. Inasmuch as the litigation of these cases cannot proceed without a lead plaintiff, the Motion essentially asks the Court to immediately bring the litigation of the three cases to a complete standstill.

## ARGUMENT

I. **The PSRLA Mandates Prompt Appointment of a Lead Plaintiff, Not a Continuance**

    A. **The Conditional Transfer Order Has No Effect on Proceedings in This District Under the PSLRA**

The Motion for Continuance argues that the PSLRA bars this Court from appointing a lead plaintiff while Defendants' Motion to Vacate is pending before the Panel. ECF No. 75 at 2. But the great majority of courts that have considered this precise issue have held otherwise.

The bar to designate a case as a potential tag-along action is extremely low, and only requires the existence of some common factual question with one or more existing or potential MDL case(s). Panel R. 1.1(h). A Conditional Transfer Order, however, is not "a decision or judgment by the Panel" about the merits of transferring a potential tag-along case. Rather, it "is simply an administrative act of the Clerk which can be and will be vacated upon the showing of

---

[4] These motions for lead plaintiff appointment were all accompanied by requests to consolidate the three instant securities class actions. ECF No. 25-1 at 3-4; ECF No. 26-1 at 5-6; ECF No. 28-1 at 10-11; ECF No. 29-1 at 3-4. All parties in the three cases have consented to consolidation.

5

good cause by any party." *Grain Shipments*, 319 F. Supp. at 534.  No proceedings in this District will be affected unless the Panel denies Defendants' Motion to Vacate. Panel R. 7.1(c). (As noted *infra*, a decision on the Motion to Vacate is unlikely to issue before next year, well after this Court is likely to rule on the lead plaintiff issue under the current schedule.)

The issuance of a Conditional Transfer Order does not automatically stay an action.  Panel Rule 2.1(d) expressly provides that:

> The pendency of a . . . ***conditional transfer order*** . . . before the Panel pursuant to 28 U.S.C. § 1407 ***does not affect or suspend orders and pretrial proceedings in any pending federal district court action*** and does not limit the pretrial jurisdiction of that court. (Emphasis added.)

Courts have strictly followed Panel Rule 2.1(d).  *See, e.g.*, *Samuel v. Aber Co.*, 2009 WL 2242418, at *1 (M.D. La. July 24, 2009) (noting that a Conditional Transfer Order does not "deprive[] this court of the authority to decide this motion or take any other appropriate action prior to the time the [Conditional Transfer Order] becomes effective").

The Motion for Continuance, curiously, does not mention Rule 2.1(d).  Instead, it relies on *Sevel v. AOL Time Warner, Inc.*, 232 F. Supp. 2d 615 (E.D. Va. 2002), a case holding that the PSLRA (specifically, 15 U.S.C. § 78u–4(a)(3)(B)(ii)), mandates that the determination of lead plaintiff be stayed until the Panel rules on consolidation.  In citing *Sevel*, the Motion uses the signal "*See, e.g.*" and the word "Courts," plural, suggesting that other courts have reached similar conclusions. *See* ECF No. 75 at 2.  However, Defendants are unaware of ***any*** other case in which a court found that pending Panel proceedings bar a ruling on a lead plaintiff motion under the PSLRA.  The reason for *Sevel*'s outlier status is clear from the text of the PSLRA, excerpted in relevant part below.

6

> (B) Appointment of lead plaintiff
>
>> (i) In general
>
> Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.
>
>> (ii) Consolidated actions
>
> If more than one action on behalf of a class *asserting substantially the same claim or claims arising under this chapter* has been filed, and any party has sought to consolidate *those actions* for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

15 U.S.C. § 78u–4(a)(3)(B) (emphasis added).

As the emphasized text above makes plain, § 78u–4(a)(3)(B)(ii) does not refer to just any motion or proceeding to consolidate, but consolidation of securities class actions *with each other*. The reason for this is clear – the drafters of the PSLRA did not want multiple lead plaintiffs appointed before consolidation, only for courts to have to decide on a new, overall leadership structure after the securities class actions were consolidated.

In contrast to the holding in *Sevel*, the vast majority of courts to consider the question have elected to decide the pending lead plaintiff motions even while there was an ongoing Panel proceeding, with many of those courts citing Rule 2.1(d).[5] For example, in *In re Duke Energy Corp. Sec. Litig.*, 2002 WL 1933798, at *1 (S.D.N.Y. 2002), Judge Rakoff considered and rejected the argument advanced here in the Motion, stating "The Court concludes that the filing of a motion before the MDL Panel does not require this Court to defer its consideration of the motions for appointment of lead plaintiff and lead counsel or in any other way defer the progress of this case.

---

[5] *Sevel*, *Duke Energy*, and *Worldcom* cite to a prior version of the Panel's Rules, under which this Rule (the text of which has not changed in the interim) was numbered 1.5.

7

Nothing in the legislative history of the Reform Act suggests that [§ 78u–4(a)(3)(B)(ii)] applies to MDL transfer motions, as opposed to ordinary consolidation under the Federal Rules of Civil Procedure." (Internal citation omitted).  Judge Rakoff further observed that "[s]ince a great many of the cases sent to the MDL Panel are securities class actions, the MDL Panel must not agree with [the] interpretation of the Reform Act [*i.e.*, the interpretation advanced by the Motion here] as the Panel has not changed Rule [2.1(d)]." *Id.*[6]  This Court should follow the majority position and conclude that there is no legal barrier to considering, and promptly ruling on, the pending lead plaintiff motions.

### B. A Continuance is Also Inconsistent with the PSLRA's Command to Timely Appoint a Lead Plaintiff

As shown above, the PSLRA does not mandate a continuance as argued in the Motion for Continuance.  To the contrary, the PSLRA expressly requires district courts to **promptly** appoint a lead plaintiff.  Specifically, the PSLRA instructs district courts to rule on motions to appoint a lead plaintiff "[n]ot later than 90 days after the date on which a notice is published under subparagraph (A)(i)."[7]  15 U.S.C. § 78u–4(a)(3)(B).  Where multiple securities class actions have been filed and a motion to consolidate those securities class action has been made, the PSLRA mandates that a decision on the lead plaintiff issue be made "as soon as practicable after such decision [on the motion to consolidate] is rendered."  § 78u–4(a)(3)(B)(ii).  Here, as in many securities class actions, all of the lead plaintiff applicants and Defendants agreed (over a month ago) that the Instant Securities Cases be consolidated, *see, e.g.*, ECF No. 36 at 1, and courts often grant consolidation motions in the same order appointing a lead plaintiff.  The situation might be different if multiple related securities actions were pending in one or more other district courts – but that is not the case here.  *See* Part II *infra*.

---

[6] *See also Albert Fadem Trust v. Worldcom*, 2002 WL 1485257, at *1-2 (S.D.N.Y. July 12, 2002) (citing 15 U.S.C. § 78u–4(a)(3)(B)(ii) regarding the lead plaintiff motions received by the court, but stating "[t]he filing of a motion before the Panel does not require this Court to defer its consideration of the motions for consolidation and appointment of lead plaintiff."); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015) (on the same page of the opinion in which § 78u–4(a)(3)(B)(ii) is cited, "declin[ing]" to "stay its decision on [lead plaintiff] matters until after the JPML issues a decision regarding transfer.").

[7] In this case, the notice was published on June 22, 2016, 90 days after which was September 19, 2017.

8

Regardless of whether the 90-day deadline or the "as soon as practicable" standard applies, "the obvious intent of these provisions is to ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead plaintiff process." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-19 (N.D. Ohio 1999).[8]  A speedy lead plaintiff process and prompt consideration of motions to dismiss support Congress' twin goals in enacting the PSLRA of "encourg[ing] defendants to fight abusive claims" and deterring settlements that are based merely on the threat of legal fees and the "economics of litigation" rather than the merits.  *See* S. Rep. 104-98, 6-7, 1995 U.S.C.C.A.N. 679, 685-86; *see also id*. at 713 (lamenting that "innocent corporations [were] subject to expensive and *time-consuming* litigation" and seeking to enable "early dismissal of abusive securities suits." (emphasis added)).

For this reason, courts strictly construe the applicable PSLRA-imposed deadlines and seek to bring the lead plaintiff appointment process to a conclusion expeditiously.  *See Steiner v. Frankino*, 1998 WL 34309018, at *4 (N.D. Ohio July 16, 1998) (refusing to consider late complaint because it "would defeat the intent of the PSLRA by delaying resolution of the motion [for lead plaintiff])."[9]  In addition to protecting defendants as intended by Congress in enacting the PSLRA, some courts have denied stays and other relief that would delay appointment of a lead plaintiff on the further grounds that delay would be "detrimental to the interests of the proposed class." *See, e.g.*, *Worldcom*, 2002 WL 1485257, at * 2.

As noted in Section I.A, *supra*, Panel Rule 2.1(d) explicitly states that the pendency of a motion or CTO "does *not* affect or suspend orders and pretrial proceedings in any pending federal district court action." *Id.* (emphasis added).  But a continuance in this case would have precisely that effect, while at the same time undermining the PSLRA's command to appoint a lead plaintiff in a timely fashion.  In addition, the delay being requested in the Motion for Continuance is not a short

---

[8] *See also, e.g., Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) (construing purpose of § 78u–4(a)(3)(B) as "ensuring that lead plaintiffs are appointed as quickly as possible after the filing of the first class action complaint").

[9] *See also Telxon*, 67 F. Supp.2d at 819 (ignoring untimely complaint for lead plaintiff appointment purposes because considering it "would nullify Congress's attempt to expedite the lead plaintiff appointment process."); *Ferrari v. Gisch*, 225 F.R.D. 599, 603-04 (C.D. Cal. 2004) (citing *Telxon* and refusing to consider untimely motion for lead plaintiff for similar reasons).

9

one. Due to the Panel's schedule, it seems unlikely that oral argument on the Motion to Vacate will be heard before the end of January 2018.[10] In the likely event that the Motion to Vacate is granted, there will be lag between the hearing and the actual issuance of an opinion by the Panel and perhaps several additional weeks before a new hearing on lead plaintiff selection before this Court can be scheduled without any conflicts. So it is not at all unlikely that, instead of happening in late October 2017, oral argument in this Court for the lead plaintiff motions will be delayed five months or more. That delay alone is nearly ***double*** the 90-day deadline contemplated in the PSLRA. (To put it another way, if the Motion for Continuance were granted, a lead plaintiff might not be appointed in this case for nearly ***300*** days after the published notice.) This Court should decline the invitation to introduce this delay, which is completely contrary to both the letter and the spirit of the PSLRA, and Panel Rule 2.1(d).

## II.     Judicial Efficiency Will Not Be Served by a Continuance

The Motion for Continuance argues that a continuance will "conserve judicial resources." ECF No. 75 at 3. In support, the Motion cites the court's assertion in *Sevel* that deciding the lead plaintiff motions before a decision by the Panel "would waste time, energy, and judicial resources." *Id.* But the Motion's reliance on *Sevel* is unavailing. There were important factual differences that warranted such a statement in that case. Pending before the court in *Sevel* were four related securities class actions. But these were only four of a total of ***twenty-eight*** securities class actions

---

[10] The Clerk of the Panel has notified Defendants that the Motion to Vacate is due on October 27, 2017 and any opposition is due on November 17, 2017. Defendants have not been given a precise reply date. However, Defendants expect their reply to be due on November 27, 2017. Per Panel Rule 6.1(d), replies are due within 7 days of the due date of responses to motions, putting the due date at November 24, 2017, the day after Thanksgiving. Though no order has yet issued for 2017, for the past nine years, the Clerk of the Panel has issued an order in early November closing the Panel's offices on that day and stating that it "will be considered a 'legal holiday'" under Fed. R. Civ. P. 6, which would push the due date for Defendants' reply to the following Monday. *See*, *e.g.*, http://www.jpml.uscourts.gov/sites/jpml/files/JPML-Holiday_Closing_Order_November-2016-MISC_No_16-01.pdf.

After briefing, oral argument will be heard on the Motion to Vacate unless the Panel determines it is not needed. Panel R. 11.1(c). The Panel holds oral argument once every two months, with the next argument scheduled for November 30, 2017. *See* http://www.jpml.uscourts.gov/hearing-information (visited October 16, 2017). The argument following that does not appear to have been scheduled, *see id.*, but it is likely to be in late January 2018. It is admittedly possible that the Clerk will set the hearing date for the Motion to Vacate for November 30, 2017. However, given that this is only three days from the reply due date, it seems much more likely that oral argument will not be heard before the end of January 2018.

spread across three federal judicial districts, with no fewer than eighteen pending motions for appointment of lead plaintiff. *Sevel*, 232 F. Supp. 2d at 616-17. In those circumstances, where only 15% of the filed securities class actions were before the same court, it made good sense to defer ruling on lead plaintiff applications.

Here, in contrast, there are no related securities class actions pending in any other federal district court. Therefore, the prospect of multiple courts appointing multiple competing lead plaintiffs – the concern implicit in the *Sevel* decision – is not present here. Instead, this Court's lead plaintiff decision will affect only the cases presently in front of it. In such circumstances, the Panel itself has stated that continuances and stays are disfavored. In *In re Penn Central Sec. Litig.*, 333 F. Supp. 382, 384 n.4 (J.P.M.L. 1971), for example, the Panel stated that "[t]he Panel's experience indicates that the use of stay orders by the district courts . . . is usually undesirable." And in a more recent case, the Panel stated that the benefits of centralization would be limited, due to pending "case-specific motions." *In re Uber Techs., Inc., Wage and Hour Empl't Prac. Litig.*, 2017 WL 2391523, at *2 n.3 (J.P.M.L. May 30, 2017). Because the lead plaintiff appointment under the PSLRA will be unique to the Instant Securities Cases, all of which are before this Court, Defendants respectfully suggest that the Court follow the Panel's guidance and deny the Motion for Continuance.[11]

### III. The Merits of Defendants' Motion to Vacate are Irrelevant to the Motion for Continuance

Finally, the Motion for Continuance suggests that the requested continuance should be granted because, according to the Motion, CenturyLink has conceded that "that transfer of the

---

[11] Defendants also note that the portion of CenturyLink's briefings cited by in the Motion for Continuance and stating that having the Consumer Cases and the Instant Securities Cases together in the Western District of Louisiana would have served judicial efficiency refer to ***discovery*** proceedings. *See* ECF No. 75 at 2; ECF No. 75-5 at 3-5. Of course, under the PSLRA, all discovery in the Instant Securities Cases is stayed unless and until all motions to dismiss are denied. 15 U.S.C. § 78u–4(b)(3)(B). Consequently, nothing argued by CenturyLink to the Panel (or the lead plaintiff applicants to this Court, for that matter), suggests there are any significant risks of duplication of effort or other inefficiencies by having this Court decide the lead plaintiff issue and/or Defendants' Motion to Dismiss (to be filed at the appropriate time) while awaiting the Panel's decision on the Motion to Vacate. *Uber*, in which some of the "case-specific motions" mentioned *supra* were "motions to dismiss concerning state law," 2017 WL 2391523, at *2 n.3, also suggests that there are no efficiencies to be gained with respect to the decisions on lead plaintiff selection or the motion to dismiss (which will rely on different law – federal securities law – than motions to dismiss in the Consumer Cases).

11

Securities Actions to the District of Minnesota will promote the efficient adjudication for these claims." ECF No. 75 at 2. This suggestion is misguided for three reasons.

First, the merits of the Motion to Vacate are irrelevant to this Court's decision on the Motion for Continuance. For the reasons shown *supra*, the Court's decision should be guided by Panel Rule 2.1(d) and the deadline established by the PSLRA for the appointment of a lead plaintiff. The Motion for Continuance does not cite any case, nor are Defendants aware of any case, in which a court considering a motion for continuance based its decision on the requested continuance on the likelihood that the Panel would, at some later time, issue an order transferring the case to another district pursuant to § 1407.

Second, CenturyLink has never, in fact, conceded that the Instant Securities Actions should be transferred to another District. Quite to the contrary, CenturyLink took the necessary steps (pursuant to 28 U.S.C. § 1404(a)) to ensure that all of the Instant Securities Actions were litigated in ***this*** District. Moreover, once the Instant Securities Cases were in this District, CenturyLink has consistently argued that, (i) there were efficiency benefits to moving the Consumer Cases to the Western District of Louisiana (primarily related to the discovery phase of the litigation), but (ii) "W.D. Louisiana is the proper home for the securities actions, regardless of where the Panel consolidates the consumer actions." *See* ECF No. 75-5 at 3-5 (Section II.B); Ex. 1 at 6.[12]

Third, even assuming, *arguendo*, that the merits of the Motion to Vacate were relevant to the Motion for Continuance, the Motion to Vacate is likely to be granted. Numerous courts, including the Panel, have recognized that securities class actions belong in the issuer's district. *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010); *Langley Partners, L.P. v. Tripath Tech., Inc.*, 2005 WL 2482527, at *2 (S.D.N.Y. Oct. 6, 2005); *cf. In re BP plc Sec. Litig.*, 734 F. Supp. 2d 1376 (J.P.M.L. 2010) (in actions relating to Deepwater Horizon disaster, deciding not to consolidate securities actions with other actions for

---

[12] CenturyLink also argued that the district containing a corporate defendant's headquarters is the proper transferee district and that this Court would have greater familiarity with Louisiana law, two factors favoring only this District in particular, not simply consolidation in any district. *See* ECF No. 75-5 at 5-6 (Section II.C).

wrongful death and tort claims).  Given the unique nature of securities class actions, the Panel is likely to decide that these securities actions should remain in this Court.

## CONCLUSION

For all of the foregoing reasons, the Motion for Continuance should be denied.

Dated: October 16, 2017

Respectfully submitted,

COOLEY LLP

*/s/ Lyle Roberts*
Lyle Roberts (*admitted pro hac vice*)
George Anhang (*admitted pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
Telephone: (202) 842-7855
Facsimile: (202) 842-7899
lroberts@cooley.com
ganhang@cooley.com

HAYES, HARKEY, SMITH & CASCIO, LLP

*/s/ Thomas M. Hayes, III*
Thomas M. Hayes, III, No. 6685
Brandon W. Creekbaum, No. 33791
2811 Kilpatrick Blvd.
Monroe, LA 71201
Telephone: (318) 387-2422
Facsimile: (318) 388-5809
tom@hhsclaw.com
brandon@hhsclaw.com

*Counsel for Defendant CenturyLink, Inc, Glen F. Post III, R. Stewart Ewing Jr., and David D. Cole*

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via the Court's electronic noticing system CM/ECF to all counsel of record this 16th day of October, 2017.

<u>/s/ Lyle Roberts</u><br>
LYLE ROBERTS