# Exhibit 1

# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: ) | |
| ) | MDL No. 2795 |
| CenturyLink Residential Customer Billing ) | |
| Disputes Litigation ) | |

## REPLY OF CENTURYLINK, INC. AND ITS SUBSIDIARIES TO MCLEOD PLAINTIFFS' CONTINUED RESPONSE IN SUPPORT OF CONSOLIDATION AND TRANSFER

DOUGLAS P. LOBEL
DAVID A. VOGEL
Cooley LLP
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
Email: dlobel@cooley.com
       dvogel@cooley.com

*Attorneys for CenturyLink, Inc., CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., CenturyTel Holdings Alabama, Inc., CenturyTel of Alabama, LLC, CenturyTel of Idaho, Inc., CenturyTel of the Gem State, Inc., CenturyTel of Wisconsin, LLC, Embarq Florida, Inc., Embarq Minnesota, Inc., wrongly named as CenturyLink Embarq Minnesota Inc., Gulf Coast Services, LLC, Gulf Telephone Company, LLC, and Qwest Corporation (collectively "CenturyLink")*

Pursuant to Panel Rule 6.1(d), CenturyLink hereby replies to the "Continuing Response" of the McLeod Plaintiffs, filed Sept. 8, 2017 (ECF No. 49) ("McL. 2d Resp.").[1] The McLeod Plaintiffs agree with CenturyLink that (1) consolidation is appropriate, and that (2) the District of Minnesota ("D. Minnesota") is an appropriate alternate forum. In arguing against transfer to the Western District of Louisiana ("W.D. Louisiana"), however, Plaintiffs rely on erroneous facts and an inaccurate view of precedent.

Several points favoring transfer to the W.D. Louisiana are undisputed:

1. The three related securities actions in the W.D. Louisiana share many common issues of fact with the consumer actions. CenturyLink demonstrated that the predicate facts underlying the securities actions are the *same* facts underlying the consumer actions. *See* Reply Memo. of CenturyLink & its Subsidiaries in Supp. of Their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407, filed Aug. 28, 2017 (ECF No. 27) ("Ctl. 1st Reply"), at 2-4. The McLeod Plaintiffs did not rebut this point.

2. The McLeod Plaintiffs ignore that CenturyLink's headquarters is located in the W.D. Louisiana, making it the most appropriate forum for actions challenging nationwide company policies. *Id.* at 5-6. The McLeod Plaintiffs do not even attempt to rebut this point.

3. The McLeod Plaintiffs do not, and cannot, refute the obvious conclusion that the parties and courts would benefit from consolidation of the consumer and securities cases into one court, for coordinated discovery. Common issues of fact, creating overlapping discovery and pretrial motions, is the quintessential purpose of transfer and consolidation under § 1407, even if

---

[1] CenturyLink is unaware of any Panel rule authorizing the McLeod Plaintiffs' sur-reply.

procedural or substantive differences exist between different claims.[2] Thus, that the securities actions assert different legal theories than the consumer cases is no bar to consolidation: "'[W]here common factual issues exist, the presence of different legal theories among the actions is not a bar to centralization.'" *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 122 F. Supp. 3d 1372, 1374 (J.P.M.L. 2015) (quoting *In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012)); *accord In re Merscorp Inc., Real Estate Settlement Procedures Act (RESPA) Litig.*, 473 F. Supp. 2d 1379, 1380 (J.P.M.L. 2007) (consolidating RICO and RESPA claims); Transfer Order at 2, *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, MDL No. 1715 (J.P.M.L. filed June 16, 2006), ECF No. 109 (consolidating TILA claims with claims arising under the Fair Credit Reporting Act, Equal Credit Opportunity Act, state consumer statutes, breach of contract, and intentional misrepresentation).

The Panel described the circumstances in which different actions benefit from consolidating pretrial discovery and motions, even though the claims and procedures differ:

> Whether the actions be brought by securities holders seeking relief under the federal securities laws, shareholders suing derivatively on behalf of [defendant], or participants in retirement savings plans suing for violations of the Employee Retirement Income Security Act of 1974 (ERISA), all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary.

---

[2] The McLeod Plaintiffs recognize that the securities cases have not "materially advanced" – meaning, they are in the same initial posture as the consumer actions, no discovery has occurred, and initial motions have not yet been filed. McL. 2d Resp. at 6. The common, early posture of all of the actions makes consolidation particularly appropriate and efficient.

*In re Glob. Crossing Ltd. Sec. & "ERISA" Litig.*, 223 F. Supp. 2d 1384, 1385 (J.P.M.L. 2002). For those reasons, the Panel has often consolidated securities actions with non-securities actions. *E.g.*, *In re Bank of N.Y. Mellon*, 857 F. Supp. 2d at 1372 n.4, 1373 (consolidating eight actions involving questions of common fact to state statutory and common-law claims, shareholder derivative claims, federal securities claims, and ERISA claims); see also In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig., 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) (district where factually related securities action chosen for product liability actions); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 254 F. Supp. 2d 1368, 1369 (J.P.M.L. 2003); *In re AOL Time Warner Inc. Sec. Litig.*, 235 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002); *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1228-29 (J.P.M.L. 1977) (consolidating securities action and antitrust action because "[c]ertain conduct of the defendants is alleged to have constituted antitrust violations while non-disclosure of that same conduct is alleged to have also resulted in violations of the securities laws"); *In re Bestline Prods. Sec. & Antitrust Litig.*, 405 F. Supp. 313, 314 (J.P.M.L. 1975) (consolidating antitrust, securities, and consumer actions).[3]  Those same factors make consolidation of the securities and consumer actions here appropriate.

Ignoring the obvious benefits of consolidation that the Panel has consistently recognized, the McLeod Plaintiffs contend that it is "disingenuous" to say the securities and consumer actions overlap because they purportedly share "fundamentally different procedures." McL. 2d Resp. at 2, 5.  Ignoring the overlapping factual issues, Plaintiffs refer to two procedural issues

---

[3]  The McLeod Plaintiffs contend that three examples cited in CenturyLink's First Reply had different circumstances. McL. 2d Resp. at 5. Besides the fact that these are superficial differences, the other proceedings cited herein demonstrate the undeniable benefits of consolidating securities actions with other actions that share common discovery.

unique to securities cases under the Private Securities Litigation Reform Act ("PSLRA"). *Id.* at 6. However, as many Panel orders demonstrate, the Panel often consolidates securities actions subject to the PSLRA with other actions despite the procedural "differences" with the PSLRA. *In re BP Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 734 F. Supp. 2d 1380, 1382-83, 2010 WL 4056093 (J.P.M.L. 2010). Thus, the unique procedural aspects of PSLRA litigation are no bar to consolidation.

The McLeod Plaintiffs conclude that the securities and consumer actions can "never truly be consolidated," and that the actions must return to the transferor courts for trial. McL. 2d Resp. at 6. However, that is true of *every* MDL action, and certainly would be true of all of the proceedings cited above. The parties should be forced to undertake burdensome and redundant discovery when, as here, pretrial proceedings can be consolidated under § 1407.

4. Ignoring the pending securities actions, the McLeod Plaintiffs point out that no action is currently pending in W.D. Louisiana. McL. 2d Resp. at 2, 4. They contend that the Panel is "extremely reluctant to select a district in which no related action is pending." *Id.* at 4. This argument suffers numerous flaws.

First, the McLeod Plaintiffs later qualify the predicate of their argument by saying that no consumer action is pending in W.D. Louisiana "*to date*." *Id.* at 4. But elsewhere they assure the Panel that these will be "nationwide" actions covering all 37 states in which CenturyLink does business:

> [T]he widening scope of the proceeding is indicative that this case
> will eventually encompass fundamentally all 37 states in which
> Defendant does business. As it is likely that more new cases will
> be filed . . . .

*Id.* at 3.

- 4 -

Thus, Plaintiffs tactics are transparent: they intend to file an action in Louisiana, but not until they defeat consolidation in Louisiana by arguing that there is no pending case there. This is part of their master plan – which they do not deny – to steer these proceedings into the Ninth Circuit. Ctl. 1st Reply at 1-2, 6-7. Thus, their argument about where cases are currently pending is founded on a temporary fact that will soon change.

Second, there are indeed actions in W.D. Louisiana involving the same facts: the securities actions. That these actions are not consumer actions is irrelevant because the discovery is certainly common.

Finally, even though no consumer actions are currently pending in Louisiana, that "is no impediment to its selection as transferee district." *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 996 F. Supp. 2d 1380, 1382 (J.P.M.L. 2014). "[U]nder appropriate circumstances [the Panel] . . . transfer[s] . . . a group of actions to a district in which none of the constituent actions is pending . . . ." *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F. Supp. 1019, 1020-21 (J.P.M.L. 1978).

Even where no action is pending, one critical factor for selecting a forum applies here: when defendant's home district provides the most efficient, convenient forum because of the proximity of relevant documents, evidence, and witnesses. *See, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, 122 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2015) (selecting defendant's headquarters as the transferee forum because relevant evidence and witnesses were based there, even though "a related action [was] not currently pending" in the transferee district); *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 896 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012) (selecting Defendant's headquarters district as transferee forum even though "no plaintiff

- 5 -

has yet filed a case there" because many of the relevant documents and witnesses were there).[4] Not surprisingly, the McLeod Plaintiffs do not respond to or rebut Defendants' argument that the location of its headquarters supports transfer to Louisiana.

5. The McLeod Plaintiffs contend that the securities actions, which they claim were filed after the consumer actions, "should tag along with the consumer cases" to wherever the consumer actions are transferred. McL. 2d Resp. at 6. Factually, that is false; the first securities action (*Craig*) was filed June 22, a date before 10 of the 13 consumer actions were filed. Legally, transferring the securities actions to the site of the consumer cases is contrary to the consistent practice of federal courts. *See, e.g.*, *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010) ("Courts routinely transfer securities cases to the issuer's district, and that result is appropriate here."); *Langley Partners, L.P. v. Tripath Tech., Inc.*, 2005 WL 2482527, at *2 (S.D.N.Y. Oct. 6, 2005) ("Courts faced with securities fraud actions have transferred those actions to the district in which the issuer is located."). Consequently, W.D. Louisiana is the proper home for the securities actions, regardless of where the Panel consolidates the consumer actions.

6. The McLeod Plaintiffs take potshots at Shreveport, saying Phoenix and Minneapolis are larger cities and more travel-friendly. McL. 2d Resp. at 7. Apparently, they prioritize the convenience of counsel's flight arrangements over the gross inconvenience to the

---

[4] Numerous other examples abound. *E.g.*, *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1369, 1370-71 (J.P.M.L. 2013) (transferring multiple cases alleging "violation[s] of state consumer protection laws" to forum without any pending action); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003) (selecting District of Maine even though no case was pending there); *In re Swine Flu Immunization Prods. Liab. Litig.*, 446 F. Supp. 244, 247 (J.P.M.L. 1978) (selecting District of the District of Columbia as transferee forum because it had "a greater nexus to the principal issues involved in this litigation than any other federal district" notwithstanding that no case was pending in D.D.C.).

parties, witnesses and judiciary caused by having the consumer actions in a forum separate from the securities actions. The consumer actions involve only five sets of legal teams; clearly, Shreveport is more than adequate to accommodate hearings.

7.  The McLeod Plaintiffs attempt to buttress their favored Ninth Circuit venue by incorrectly referring to an Arizona Attorney General investigation "since at least April 2016." McL. 2d Resp. at 6. They fail to mention this investigation occurred over a year ago, and did not result in any proceeding. They do not explain why an administrative investigation should have any effect on the management of a multidistrict proceeding.[5]

For these reasons, CenturyLink respectfully submits that all of the relevant circumstances still strongly favor transfer of these and related actions to the Hon. S. Maurice Hicks of the W.D. Louisiana, or alternatively to the Hon. Michael J. Davis of the D. Minnesota.

DATED: September 12, 2017

Respectfully submitted,

/s/ Douglas P. Lobel
Douglas P. Lobel (VA Bar No. 42329)
David A. Vogel (VA Bar No. 48971)
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
Email: dlobel@cooley.com
       dvogel@cooley.com

---

[5] CenturyLink briefly addresses the false accusation that it engaged in a "bait and switch." *Id.* at 2. The McLeod Plaintiffs misrepresent the parties' discussion. During the parties' meet and confer regarding alternatives to § 1407, CenturyLink asked the McLeod Plaintiffs to consent to transferring all of the cases into the W.D. Louisiana, as it is the only federal court with personal jurisdiction over all Defendants. The McLeod Plaintiffs rejected the suggestion because Louisiana is not in the Ninth Circuit. As of that date, the securities cases were not all in the W.D. Louisiana, and had not yet been assigned to Judge Hicks. That occurred later, and was reflected in Defendants' Reply brief filed Aug. 28, 2017. *See* Ctl. 1st Reply at 2-3.

*Attorneys for CenturyLink, Inc., CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., CenturyTel Holdings Alabama, Inc., CenturyTel of Alabama, LLC, CenturyTel of Idaho, Inc., CenturyTel of the Gem State, Inc., CenturyTel of Wisconsin, LLC, Embarq Florida, Inc., Embarq Minnesota, Inc., wrongly named as CenturyLink Embarq Minnesota Inc., Gulf Coast Services, LLC, Gulf Telephone Company, LLC, and Qwest Corporation (collectively "CenturyLink")*

150558218