# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN DUBE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>SIGNET JEWELERS LIMITED, MICHAEL BARNES, MARK LIGHT, RONALD RISTAU, and MICHELE SANTANA,<br><br>Defendants. | Civil Action No. 1:16-cv-06728-JMF<br><br>CLASS ACTION |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTION**

There is no dispute that the Public Employees' Retirement System of Mississippi ("MissPERS") has the largest financial interest in this case. Rather than acknowledge MissPERS as the most adequate plaintiff to lead this action as compelled by the PSLRA, Norfolk resorts to pure speculation and innuendo to contest the adequacy of a $28 billion state pension fund that is represented by the Office of the Attorney General of Mississippi ("OAG"). MissPERS is one of the most responsible stewards for investors, having recovered over $3.5 billion as Lead Plaintiff in securities class actions that it led with distinction in this courthouse and around the country. Norfolk fails to offer any proof to rebut the statutory presumption and should be denied.

The campaign contributions that Norfolk claims give rise to a "conflict of interest" have been public for years, and courts have held that such contributions are constitutionally protected speech under the First Amendment and do not preclude MissPERS from serving as Lead Plaintiff. Moreover, the Declaration of Special Assistant Attorney General George W. Neville ("Neville Decl.") states unequivocally that neither MissPERS nor the OAG has ever considered political contributions when deciding which cases to pursue or which counsel to select. *See* Neville Decl. ¶¶5-13, attached as Ex. A to the Declaration of Gerald H. Silk ("Silk Decl.").

In an effort to cloud the record, Norfolk also wrongly contends that the Court should consider unproven and baseless allegations made against Bernstein Litowitz and MissPERS in an employment dispute filed by a former Bernstein Litowitz attorney, who promptly withdrew his allegations. Such unsubstantiated allegations cannot constitute "proof" of inadequacy, and MissPERS was not required to apprise the Court of these withdrawn and baseless allegations. Finally, Norfolk's contention that MissPERS is subject to the "professional plaintiff" provision of the PSLRA has been repeatedly rejected by the overwhelming majority of courts throughout the country, which recognize that this provision should not be applied to qualified institutional

1

investors that have the incentive, resources and experience to serve as Lead Plaintiff. MissPERS and the OAG embody all of the characteristics of the quintessential Lead Plaintiff representative. *Id.* ¶¶5-18. This includes an experienced team of Special Assistant Attorneys General, including three that are already involved in this case, who review and edit pleadings, meet with counsel, and will attend all important hearings, mediations, and any trial. *Id.* ¶¶14-18. MissPERS' active participation in securities fraud cases has resulted in an unparalleled record of success, as evidenced by $1.2 billion in investor recoveries in this District alone in matters litigated before Judges Cote, Swain, Rakoff, Oetken, Forrest, Buchwald, and Baer. *See* Silk Decl., Ex. B.

## ARGUMENT

To rebut the presumption that MissPERS should be Lead Plaintiff, Norfolk must provide "'proof' of a non-speculative risk that [MissPERS] will not be adequate." *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *2-3 (S.D.N.Y. June 27, 2016) (Furman, J.). Norfolk offers no evidence, but instead, relies on speculation and baseless, withdrawn allegations.

### A. MISSPERS IS NOT SUBJECT TO A "CONFLICT OF INTEREST"

Norfolk argues that campaign contributions to the Attorney General are somehow improper, and preclude MissPERS from serving as Lead Plaintiff. However, the Neville Decl. makes clear that campaign contributions to the Mississippi Attorney General have never played any role in the decisions of MissPERS or the OAG with regard to securities class actions or selection of counsel. Neville Decl. ¶¶5-13. The OAG and MissPERS maintain a panel of eleven law firms that were selected by the OAG based upon their expertise and experience in securities litigation, and which advise OAG and MissPERS regarding securities litigation. *Id.* ¶6. The OAG and MissPERS decide which matters warrant their involvement based on the merits of the particular case, and then choose counsel based on which firm first raised the matter with the OAG. *Id.* ¶¶7-13. That is the process that MissPERS and the OAG followed here. *Id.* Based on the

2

analyses of the panel firms, MissPERS and the OAG believe this is an important and meritorious case in which their involvement will improve the ultimate result achieved, and selected Bernstein Litowitz because it was the first firm to apprise the OAG of the matter. *Id*. ¶¶9-12. The OAG instituted this "first-to-approach" policy approximately fourteen years ago for the specific purpose of avoiding any appearance of political favoritism. *Id.* ¶7. Campaign contributions are completely irrelevant to the selection of counsel. *Id*. ¶¶5-13.

Bernstein Litowitz attorneys have contributed to the Attorney General, despite knowing the firm will not receive favored treatment, for the same reason that people across the country donate to political campaigns: the Attorney General shares Bernstein Litowitz's views regarding the importance of protecting shareholder and consumer rights and redressing corporate misconduct. Such political contributions are not only constitutionally protected speech, but they are made with knowledge that they will be publicly disclosed. Despite that disclosure, no court has ever found that such contributions rendered MissPERS inadequate. Several courts explicitly rejected Norfolk's arguments that campaign contributions are relevant to MissPERS' adequacy. *See Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 110 (S.D.N.Y. 2011) (certifying MissPERS as class representative and rejecting "entirely unpersuasive" insinuations regarding "pay-for-play"); *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 255 (N.D. Cal. 2013) (same); Silk Decl., Ex. C at 8 (same).[1] Norfolk cites no cases to the contrary.

Clearly, Norfolk's counsel, Robbins Geller, does not believe such contributions render MissPERS inadequate. Years after these contributions were public, Robbins Geller served as Co-Lead Counsel—with MissPERS as one of the Lead Plaintiffs—in a securities class action against

---

[1] *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 269 (3d Cir. 2001) (rejecting arguments regarding campaign contributions); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 604-05 (C.D. Cal. 2009) ("attorneys are free to exercise their right to donate to politicians who support their views"); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *3 (D.R.I. Feb. 17, 2016) (holding that contributions do not create conflict).

3

Morgan Stanley. When seeking class certification in that case, Robbins Geller correctly recognized that MissPERS is "unquestionably adequate," and that there is no basis to claim that it is "a 'pawn' controlled by class counsel." Silk Decl., Exs. D at 15 & E at 31. Further, Robbins Geller has argued along with its co-counsel that campaign contributions have no bearing on Rule 23 adequacy. *See id.* Ex. F at 13. Moreover, Robbins Geller has provided financial support to its clients, including gifts to the Norfolk personnel who signed its PSLRA Certification here. *See id.* Ex. G. Unlike campaign contributions, however, this type of support is not publicly disclosed.[2]

### B. DISMISSED ALLEGATIONS HAVE NO BEARING ON ADEQUACY

Norfolk urges the Court to consider allegations filed by a former Bernstein Litowitz attorney in an employment dispute. Such unproven allegations cannot constitute the "proof" of inadequacy required by the PSLRA.[3] As the Second Circuit explained, these allegations "are exactly that—simply allegations, the truth of which has not been proven." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 136 (2d Cir. 2016). Moreover, at the time the former employee voluntarily dismissed his complaint, he acknowledged that his allegations faced insurmountable factual and legal challenges. Silk Decl., Ex. H. Significantly, the only federal judge to rule on an objection on this basis (there in the context of the approval of a settlement in a securities class action where MissPERS served as Lead Plaintiff) held that such allegations were no issue. *See In re Merck & Co. Sec., Derivative & "ERISA" Litig.*, 2016 WL 8674608, at *2

---

[2] Norfolk's authority provides no support. *In re AT&T Corp. Securities Litigation*, 455 F.3d 160, 168 (3d Cir. 2006) affirmed the approval of a settlement despite campaign contributions. The same is true for *In re Bank of New York Mellon Corp. Forex Transactions Litigation*, 148 F. Supp. 3d 303, 307-09 (S.D.N.Y. 2015).

[3] *See, e.g.*, *Cendant*, 264 F.3d at 270 ("Allegations of impropriety are not proof of wrongdoing."); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2015 WL 1311073, at *9 (S.D.N.Y. Mar. 23, 2015) ("mere allegations of wrongdoing, without a finding established on the record, are insufficient to rebut [movant's] presumption of adequacy"). Norfolk's cited authority is in accord. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) (movant did "not demonstrate that any of the underlying wrongdoing was actually proven or otherwise established on the record").

4

(D.N.J. Dec. 23, 2016).

Bernstein Litowitz has been appointed as Lead Counsel in numerous cases, including a case with Robbins Geller, since the withdrawn allegations became public. *See* Silk Decl., Ex. I. Bernstein Litowitz has also been certified as class counsel in three PSLRA cases since the Second Circuit's unsealing order. *See* Silk Decl., Exs. J-L. Similarly, MissPERS was appointed as Lead Plaintiff in four securities class actions since the allegations were unsealed, and was recently certified as a class representative. *See* Silk Decl., Exs. J, M-P. Simply put, Norfolk is raising an issue that is not only a non-issue, but has been soundly dismissed by other courts.

Norfolk's claim that MissPERS should have informed the Court of these withdrawn allegations is nonsense. MissPERS had no obligation to apprise the Court of withdrawn and unproven allegations. Moreover, if Norfolk truly adhered to such a view of transparency, it would have apprised the Court that its own counsel, Robbins Geller, violated Rule 11 for engaging in "repeated misconduct," making "fundamental misrepresentations to the court," and filing frivolous lawsuits.[4] These are actual findings of misconduct in PSLRA cases, as opposed to withdrawn allegations in an employment dispute.

### C.  MISSPERS IS NOT A PROFESSIONAL PLAINTIFF

Norfolk claims that MissPERS is "barred from serving as a lead plaintiff" because it was appointed in more than five cases filed in the past three years. Virtually every court that has considered Norfolk's argument in the past decade has refused to apply the "professional plaintiff" provision to institutional investors like MissPERS. No court has ever applied the provision to

---

[4] *See City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 182-83 (N.D. Ill. 2014) (sanctions appropriate given that "this is not the first instance where Robbins Geller has engaged in similar misconduct" of basing claims on allegations of confidential witnesses); *Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*, 2014 WL 1847833, at *5, *8 (N.D. Ill. May 8, 2014) ("Rule 11 sanctions are appropriate because the original complaint was frivolous").

5

MissPERS and at least six have expressly rejected Norfolk's argument. Norfolk's counsel knows this, having unsuccessfully challenged MissPERS on this basis multiple times.[5]

The weight of authority correctly recognizes that the intent of the PSLRA is to "encourage" the appointment of institutional investors. H.R. Conf. Rep. No. 104-369, at *32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731 (1995) ("Conf. Rep."). The Conf. Rep. is unequivocal: "professional plaintiffs" are "[i]ndividuals who are motivated by the payment of a bounty" and "who own a nominal number of shares in a wide array of public companies." *Id*. at *32-33. The provision does not apply to institutions.[6]

Importantly, Norfolk overstates MissPERS' caseload and misstates the PSLRA, omitting key words. Specifically, MissPERS was appointed in just six PSLRA cases that were filed during the prior three years, and it is currently serving as Lead Plaintiff in only five such cases. Norfolk misstates the statute to suggest that the PSLRA "bar[s] serving as lead plaintiff in 'more than 5 securities class actions . . . during any 3-year period" (ECF No. 73 at 3), deleting language which makes clear the provision counts only cases "brought" during the 3-year period. 15 U.S.C. § 78u-4(a)(2)(A)(vi). Norfolk then overstates MissPERS' relevant caseload, citing cases regardless of

---

[5] *See Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC*, 616 F. Supp. 2d 461, 466 (S.D.N.Y. 2009) ("accumulated experience of MissPERS in pursuing multiple securities fraud actions seems a benefit more than a detriment"); *In re Diamond Foods, Inc. Sec. Litig.*, 281 F.R.D. 405, 412 (N.D. Cal. 2012) (appointing MissPERS because Congress "contemplated that institutional investors will serve as lead plaintiff in more than five cases during any three-year period"); *Bach v. Amedisys, Inc.*, 2010 WL 4318755, at *5 (E.D. La. Oct. 22, 2010) (refusing to apply provision to MissPERS); Silk Decl., Exs. C, Q-R (same).

[6] *See Iron Workers*, 616 F. Supp. 2d at 467 ("provision of the PSLRA restricting the use of professional plaintiffs was largely directed at private individuals, and courts have routinely waived the restriction in the case of qualified institutional investors"); *Kuriakose v. Fed. Home Loan Mortg. Co.*, 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) ("as an institutional investor, [movant] is not subject to the PLSRA's strict ban on 'professional plaintiffs'"); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *4 (S.D.N.Y. Feb. 21, 2007) (same); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 336 n.4 (S.D.N.Y. 2005) (same). Courts throughout the country are in accord. *See, e.g.*, *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *7 (N.D. Cal. June 28, 2016) ("any interpretation that the 5-and-3 cap applies to institutional investors would contravene the very purpose for which the professional plaintiff bar was enacted"); *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 WL 1395059, at *11 (E.D. Pa. Apr. 10, 2014) (professional plaintiff provision does not apply to institutional investors).

when they were brought or resolved, and in which MissPERS never served as Lead Plaintiff.

*Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653 (E.D. Va. 2016), an out-of-Circuit outlier, does not warrant a different outcome. In fact, the only published decision to address the professional plaintiff provision since *Orbital* (also from the Fourth Circuit) declined to follow it and appointed an institutional investor over objections that it was subject to the provision. *See Ollila v. Babcock & Wilcox Enters., Inc.*, 2017 WL 2304752, at *4. *Orbital* is at odds with the established law in this District, such as *Iron Workers*, which did not apply the "professional plaintiff" provision to MissPERS. 616 F. Supp. 2d at 466.[7] Notably, Norfolk's counsel has consistently argued that institutions like MissPERS are **"exempt** from the [professional plaintiff] ban." Silk Decl., Ex. S at 2.

Norfolk's claim that MissPERS' caseload renders it incapable of adequately prosecuting this case is not supported by evidence, and is contradicted by both the Neville Decl. and MissPERS' history of successfully serving as Lead Plaintiff. MissPERS and the OAG have more than adequate resources to oversee each matter in which MissPERS serves as Lead Plaintiff.[8] Neville Decl. ¶¶14-18. This includes a team of Special Assistant Attorneys General who report directly to the Mississippi Attorney General. *Id.* ¶15. There are already three such attorneys involved in this case who assess and edit pleadings, meet with lead counsel, and will attend important hearings and mediations. *Id.*

---

[7] Norfolk wrongly contends that institutions are exempted from the bar only when certain "objective criteria" are present. ECF No. 73 at 14-15. This is not the law. *See, e.g.*, *DFC*, 2014 WL 1395059, at *10 (appointing institution that was lead plaintiff in seven actions over three years where none of the "objective criteria" applied). But even under Norfolk's "test," MissPERS should be appointed because its financial interest "dwarf[s]" that of Norfolk, having purchased six times more shares and incurring twice Norfolk's loss. ECF No. 74 at 4-6.

[8] *See Diamond Foods*, 281 F.R.D. at 412 (rejecting "mere speculation" that MissPERS lacks resources to prosecute case when the "record shows that Mississippi PERS has extensive experience in serving as lead plaintiff in securities class actions and that the [OAG] has sufficient resources to devote to managing this action"); *Amedisys*, 2010 WL 4318755, at *5 (rejecting argument that MissPERS is "spread too thin").

7

| | |
|---|---|
| DATED: July 25, 2017 | Respectfully submitted, |
| | */s/ Gerald H. Silk* |
| | Gerald H. Silk |
| | Avi Josefson |
| | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** |
| | 1251 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone: (212) 554-1400 |
| | Facsimile: (212) 554-1444 |
| | jerry@blbglaw.com |
| | avi@blbglaw.com |
| | *Counsel for Proposed Lead Plaintiff MissPERS and Proposed Lead Counsel for the Class* |

8