# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| BENJAMIN CRAIG, et al., | ) No.: 3:17-cv-01005-SMH-JPM (Lead) |
| | ) No.: 3:17-cv-01033-SMH-JPM (Member) |
| Plaintiff, | ) No.: 3:17-cv-01065-SMH-JPM (Member) |
| | ) |
| v. | ) |
| | ) |
| CENTURYLINK, INC., et al., | ) Judge S. Maurice Hicks, Jr. |
| | ) |
| Defendants. | ) Magistrate Judge Joseph H. L. Perez-Montes |
| | ) |
| | ) |
| | ) |

# DEFENDANTS' OPPOSITION TO KBC ASSET MANAGEMENT NV's
## APPEAL OF THE MAGISTRATE JUDGE'S OCTOBER 20, 2017 ORDER

**Table of Contents**

**Page**

I.    BACKGROUND ................................................................................................. 2

    A.    Procedural History in This Court ............................................................... 2

    B.    Consumer Cases and JPML Proceedings .................................................... 2

II.   ARGUMENT ..................................................................................................... 4

    A.    The Standard of Review is "Very Deferential" ........................................... 4

    B.    No Continuance or Stay is Warranted ....................................................... 5

        1.    The Motion for Continuance Was Properly Denied by the
            Magistrate Judge .......................................................................... 5

        2.    A Stay is Inconsistent With the PSLRA's Command to Timely
            Appoint a Lead Plaintiff ................................................................ 6

        3.    Judicial Efficiency Will Not Be Served by a Stay ................................ 7

        4.    The Merits of the Motion to Vacate are Irrelevant to the Requested
            Stay ............................................................................................. 9

    C.    The Magistrate Judge's Disqualification of KBC Was Justified ...................... 11

        1.    The Professional Plaintiff Rule ...................................................... 11

        2.    KBC Has Served As Lead Plaintiff in *Fourteen* Cases, Not Eight
            (or Five) ...................................................................................... 12

        3.    The Disqualification of KBC Was Not Clearly Erroneous or
            Contrary to Law ........................................................................... 14

            a.    KBC Is Not Immune From the Presumptive Bar Simply
                Because It Is an Institutional Investor ............................... 14

            b.    There Are No Special Circumstances That Warrant Lifting
                 the Bar for KBC ............................................................... 15

            c.    KBC Has Not Met Its Appellate Burden ..................................... 16

        4.    KBC Suffered No "Due Process" Violation Or Undue "Prejudice"
            From the Order ............................................................................ 16

III.  CONCLUSION ................................................................................................. 19

## Table of Authorities

**Page(s)**

**Cases**

*Aikins v. Microsoft Corp.*,
2000 WL 310391 (E.D. La. Mar. 24, 2000) ...................................................................7, 8

*In re Alamosa Holdings, Inc. Sec. Litig.*,
2004 U.S. Dist. LEXIS 31115 (N.D. Tex. Mar. 4, 2004) ......................................................12

*Albert Fadem Trust v. Worldcom*,
2002 WL 1485257 (S.D.N.Y. July 12, 2002) ............................................................................9

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) ..............................................................................11, 16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009)......................................................................................................17

*In re BP plc Sec. Litig.*,
734 F. Supp. 2d 1376 (J.P.M.L. 2010)......................................................................................10

*Carcieri v. Salazar*,
555 U.S. 379 (2009)....................................................................................................................15

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................................15

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.*,
2003 U.S. Dist. LEXIS 25264 (E.D. La. Aug. 28, 2003) .......................................................11

*City of Marysville Gen. Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*,
2010 WL 2000040 (D. Idaho May 19, 2010) .........................................................................13

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
2010 WL 2035130 (S.D.N.Y. May 21, 2010) .......................................................................10

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ............................................................................12, 16

*Cunha v. Hansen Nat. Corp.*,
2009 U.S. Dist. LEXIS 61086 (C.D. Cal. 2009).........................................................13, 15, 16

*In re Duke Energy Corp. Sec. Litig.*,
2002 WL 1933798 (S.D.N.Y. 2002).........................................................................................9

**Table of Authorities**
(continued)

**Page(s)**

*In re Enron Corp., Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002)................................................................12, 16, 19

*Esquivel v. BP Co. N. Am., Inc.*,
   2010 WL 4255911 (S.D. Tex. Oct. 14, 2010)................................................7, 8

*In re First Union Corp. Sec. Litig.*,
   157 F. Supp. 2d 638 (W.D.N.C. 2000) .............................................................11

*Fox v. Portico Reality Servs. Office*,
   739 F. Supp. 2d 912 (E.D. Va. 2010) ...............................................................14

*Gallagher v. Ocular Therapeutix, Inc.*,
   2017 WL 4882487 (D.N.J. Oct. 27, 2017)...........................................................7

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
   209 F.R.D. 447 (C.D. Cal. 2002) ......................................................................15

*Glover v. Hester*,
   2011 WL 1467635 (W.D. La. 2011)..................................................................17

*In re Grain Shipments*,
   319 F. Supp. 533 (J.P.M.L. 1970).......................................................................4

*Hoenig v. NFN Berkebile*,
   2002 WL 31246641 (N.D. Tex. Sept. 2, 2002)................................................18

*Huang v. Acterna Corp.*,
   220 F.R.D. 255 (D. Md. 2004)..........................................................................19

*Janovici v. DVI, Inc.*,
   2003 WL 22849604 (E.D. Pa. Nov. 23, 2003) ................................................18

*Johnson v. Louisiana*,
   2010 WL 4291423 (W.D. La. Oct. 26, 2010)....................................................5

*Kennedy v. Novartis Pharm., Corp.*,
   2002 WL 31051601 (E.D. La. Sept. 12, 2002)................................................7, 8

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................9

*Knurr v. Orbital ATK, Inc.*,
   220 F. Supp. 3d 653 (E.D. Va. 2016) ..........................................................15, 16

**Table of Authorities**
(continued)

**Page(s)**

*In re Landry's Seafood Rest., Inc.*,
    2000 WL 33999467 (S.D. Tex. Mar. 30, 2000)......................................................18

*Lehr v. Robertson*,
    463 U.S. 248, 273 (1983)............................................................................................18

*Langley Partners, L.P. v. Tripath Tech., Inc.*,
    2005 WL 2482527 (S.D.N.Y. Oct. 6, 2005) ............................................................10

*Maryland v. Wilson*,
    519 U.S. 408, (1997)....................................................................................................5

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
    2014 WL 2604991 (N.D. Cal. June 10, 2014) .........................................................18

*Moran v. Jindal*,
    2011 WL 2118735 (M.D. La. May 25, 2011).........................................................18

*Naiditch v. Applied Micro Circuits Corp.*,
    2001 U.S. Dist. LEXIS 21374 (S.D. Cal. Nov. 5, 2001) ........................................16

*In re Netflix, Inc., Sec. Litig.*,
    2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012) .......................................16

*Oalmann v. K-Mart Corp.*,
    1992 WL 31345 (E.D. La. Feb. 10, 1992) ..............................................................18

*In re Orthodontic Ctrs. of Am., Inc. Sec. Litig.*,
    2001 WL 1636846 (E.D. La. Dec. 18, 2011).........................................................11

*In re Penn Central Sec. Litig.*,
    333 F. Supp. 382 (J.P.M.L. 1971).............................................................................9

*Philip Servs. Corp. v. City of Seattle*,
    2007 WL 3396436 (S.D. Tex. Nov. 14, 2007) .........................................................5

*Sevel v. Time Warner, Inc.*,
    232 F. Supp. 2d 615 (E.D. Va. 2002) .......................................................................7

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ........................................................................16

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
    2012 WL 3638629 (D.N.J. Aug. 22, 2012) ...........................................................17

iv

## Table of Authorities
(continued)

**Page(s)**

*Steiner v. Frankino*,
    1998 WL 34309018 (N.D. Ohio July 16, 1998) ........................................................6

*Stengle v. Am. Italian Pasta Co.*,
    2005 U.S. Dist. LEXIS 43816 (W.D. Mo. Dec. 19, 2005) .................................12, 14

*Struniak v. Lynch*,
    159 F. Supp. 3d 643 (E.D. Va. 2016) ...................................................................15

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999)..................................................6, 12, 14, 16

*Thompson v. RelationServe Media, Inc.*,
    610 F.3d 628 (11th Cir. 2010) ...........................................................................17

*Thompson v. Shaw Group, Inc.*,
    2004 U.S. LEXIS 25641 (E.D. La. Dec. 14, 2004) ..............................................12

*Tyler v. City of Omaha*,
    780 F. Supp. 1266 (D. Neb. 1991)......................................................................18

*United States v. Anthony Gordon Constr., Inc.*,
    2017 WL 3725995 (W.D. La. Aug. 29, 2017) .......................................................5

*In re Uber Techs., Inc., Wage and Hour Empl't Prac. Litig.*,
    2017 WL 2391523 (J.P.M.L. May 30, 2017) .........................................................9

*United States v. Burke*,
    504 U.S. 229 (1992)...........................................................................................18

*United States v. Pryce*,
    938 F.2d 1343 (D.C. Cir. 1991)..........................................................................18

*In re Unumprovident Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) ...................11, 12, 14, 15

*Zapata-Banda v. United States*,
    2011 WL 1113586 (S.D. Tex. Mar. 7, 2011)..........................................................5

**Statutes**

28 U.S.C.
    § 1404(a) ..........................................................................................2, 7, 10, 18
    § 1407..................................................................................................3, 7, 10

**Table of Authorities**
(continued)

**Page(s)**

Private Securities Litigation Act of 1995, 15 U.S.C. § 78u-4 ............................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure
    11.........................................................................................................................................17
    12....................................................................................................................................8, 18
    42(a)......................................................................................................................................2

Judicial Panel on Multidistrict Litigation Rules of Procedure
    Rule 2.1(d).................................................................................................4, 6, 7, 10

H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730......................15

S. Rep. 104-98, 6-7, 1995 U.S.C.C.A.N. 679 ...................................................................................6

Defendants CenturyLink, Inc. ("CenturyLink" or the "Company"), Glen F. Post, III, R. Stewart Ewing, Jr. and David D. Cole (the "Individual Defendants"; collectively, with CenturyLink, "Defendants"), hereby oppose KBC Asset Management NV's ("KBC") Appeal ("Appeal") Under Rule 72(a) and Local Rule 74.1 of the Memorandum Order Issued by Magistrate Judge Perez-Montes on October 20, 2017 ("Order").

KBC's Appeal fails as a matter of both procedure and substance. KBC must show that the Order was "clearly erroneous or contrary to law." KBC cannot show that the Order was "contrary to law," however, as it cites no contrary decisions that actually are binding on this Court. Nor can it show the existence of clear error, as the authority it *does* cite is either recitations of abstract legal principles, cases irrelevant to the issues on which KBC is appealing, or a handful of district court cases in which the judge made a different judgment call. KBC, which clearly was on notice of the "professional plaintiff" rule that led to its disqualification, should not be allowed a second bite at the apple simply because it chose to duck the issue in its motion for appointment as lead plaintiff.

On substance, the disqualification of KBC and the appointment of the State of Oregon ("Oregon") as lead plaintiff was consistent with the relevant case law. Moreover, Magistrate Judge Perez-Montes correctly found that a stay of the case for at least several months as the ongoing U.S. Judicial Panel on Multidistrict Litigation ("JPML") proceeding is completed would be improper. Indeed, a stay of this nature would be completely at odds with the PSLRA's requirement that courts promptly appoint a lead plaintiff so that securities class actions may proceed to the motion to dismiss stage at the earliest possible time. Even Oregon, which originally joined KBC in its request to effectively stay the case, now agrees that a stay is "unnecessary and unwarranted."

In short, this Court should deny the Appeal in its entirety. In addition, Defendants respectfully request that the Court direct that, as soon as practicable, a schedule be entered for the filing of a consolidated amended complaint and the filing of Defendants' response thereto.

# I.  BACKGROUND

## A.    Procedural History in This Court

The instant cases are three nearly identical putative securities class actions brought pursuant to the Private Securities Litigation Act of 1995 ("PSLRA").[1]  Under the PSLRA's procedures for lead plaintiff selection, several applicants, including KBC and Oregon, filed motions seeking appointment on August 21, 2017.  *See*, *e.g.*, ECF Nos. 25, 28.

On October 10, 2017, KBC and Oregon filed a joint motion before Magistrate Judge Perez-Montes to continue a scheduled hearing on lead plaintiff selection, relief that would have essentially stayed the instant cases for months, pending a ruling by the JPML on a Conditional Transfer Order ("CTO") listing the instant cases.  *See* ECF No. 75; *see also* § I.B, *infra*. Magistrate Judge Perez-Montes denied the requested continuance, found that "a hearing is not affirmatively required, and would not meaningfully aid in the Court's decision regarding the competing motions to approve a lead plaintiff," and canceled the hearing on lead plaintiff selection.  ECF No. 80 at 4-5.

In the same Order, Magistrate Judge Perez-Montes appointed Oregon as lead plaintiff. *Id.* at 10-12.  In part, this decision was based on the Magistrate Judge's disqualification of KBC based on the "professional plaintiff" restrictions contained in the PSLRA, including his determination that KBC has served a lead plaintiff in at least 8 securities class actions in the past 3 years.  *Id.* at 9.  KBC appealed on November 3, 2017.  ECF No. 87.

## B.    Consumer Cases and JPML Proceedings

**The Consumer Cases and Initial JPML Motion Practice**.  Earlier this year, other (non-securities fraud) lawsuits against the Company (the "Consumer Cases") were filed seeking damages based on the same alleged wrongful sales practices as alleged in the instant cases.  Over time, the number of plaintiffs and different jurisdictions in which these suits were filed continued

---

[1] One case (*Scott*) was initially brought in this District; the other two (*Craig* and *Thummeti*) were originally filed in the U.S. District Court for the Southern District of New York ("S.D.N.Y.") and were transferred to this district in accordance with 28 U.S.C. 1404(a).  *See* ECF No. 77 at 2.  Magistrate Judge Perez-Montes consolidated the cases pursuant to Fed. R. Civ. P. 42(a). *See* ECF No. 79.

to grow.  In fact, counsel for some of the plaintiffs in the Consumer Cases told CenturyLink[2] and the public that the lawsuits would eventually be filed "nationwide" or at least in each of the 37 states in which CenturyLink does business.  ECF No. 75-5 at 2.  Given the growing number of Consumer Cases, CenturyLink sought centralization of those cases before the JPML under 28 U.S.C. § 1407 in a motion filed on July 31, 2017.  *See generally* ECF No. 75-2.  At that time, no securities cases were pending in this District.  *Craig* and *Thummeti* were still pending in the S.D.N.Y., and *Scott* had not yet been filed.  *See* § I.A at 2 n.1, *supra*.  CenturyLink therefore initially asked for consolidation of the Consumer Cases in the District of *Minnesota*, where one of the Consumer Cases, and a related state court case, was pending.  ECF No. 75-2 at 18-19.

By the time CenturyLink filed its (first) reply with the JPML in support of the § 1407 motion, however, the instant cases had all been filed in or transferred to this District.  Therefore, in that reply, CenturyLink argued: "While the District of Minnesota continues to be an excellent choice for the transferee court, recent developments make clear that Judge Hicks in the Western District of Louisiana . . . is the most logical and appropriate choice to oversee [the Consumer Cases]."  ECF No. 75-5 at 2.  In support of its position, CenturyLink argued that there would be a benefit to having the instant cases and the Consumer Cases together in this District.  However, CenturyLink took pains to note that the instant cases belonged in this District, *regardless of where the Consumer Cases were transferred*.  Thus, for example, when one of the plaintiffs in the Consumer Cases argued that the instant cases "should tag along with the consumer cases to wherever the consumer actions are transferred," *see* ECF No. 77-2 at 6, CenturyLink replied that "W.D. Louisiana is the proper home for the securities actions, regardless of where the Panel consolidates the consumer actions." *Id.*

**JPML Decision, CTO-1, and Motions to Vacate**.  On October 5, 2017, the JPML issued a two-page order, finding that the Consumer Cases "involve common questions of fact,

---

[2] The Consumer Cases generally name CenturyLink and some of its subsidiaries, but *not* the Individual Defendants, as defendants.  *See* ECF No. 75-3 at 1 n.1. This Opposition therefore refers to the defendants in the Consumer Cases as "CenturyLink" or "the Company" rather than "Defendants."

and that centralization of these cases will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." ECF No. 75-3 at 1. The JPML consolidated the Consumer Cases into MDL 2795 (*In re CenturyLink Residential Customer Billing Disputes Litigation*). In a single six-line paragraph at the end of the order, the JPML indicated that it had chosen the District of Minnesota as the transferee district. The JPML based this decision in large part on the fact that the majority of plaintiffs and all defendants in the Consumer Cases supported that district (though the JPML did note that CenturyLink's support was in the alternative). *Id.* at 2. The JPML's order also referred to the instant cases as "*potential tag-along actions*" for which a CTO might issue. *Id.* (emphasis added).

On October 6, 2017, the Clerk of the JPML issued a CTO ("CTO-1") listing the instant cases, among others, as potential tag-along actions. ECF No. 75-4 at 2. The designation of a case as a "potential tag-along action" and the issuance of a CTO are "simply [] administrative act[s] of the Clerk which can be and will be vacated upon the showing of good cause by any party." *In re Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970). Under JPML R. 2.1(d), the pendency of a CTO "does not affect or suspend orders and pretrial proceedings in any pending federal district court action." In addition, in accordance with JPML R. 7.1(c) & (f), if a party opposes a CTO by filing a Notice of Opposition, the CTO does not take effect unless and until the JPML denies that party's subsequent opposition pleading, called a Motion to Vacate. Defendants timely filed a Notice of Opposition, followed by a Motion to Vacate CTO-1. ECF No. 77-3; *see also* MDL 2795 ECF Nos. 67 (noting opposition and removing W.D. La. Cases from schedule of actions), 77, 77-1. The parties will complete briefing for the Motion to Vacate on November 27, 2017.

## II.  ARGUMENT

### A.  The Standard of Review is "Very Deferential"

This Court has noted that "Appeals from a Magistrate Judge's decisions on non-dispositive matters are reviewed under a very deferential standard of review, in which the magistrate's decision will not be overturned unless it was 'clearly erroneous or contrary to law.'"

4

*See*, *e.g.*, *United States v. Anthony Gordon Constr., Inc.*, 2017 WL 3725995, at \*2 (W.D. La. Aug. 29, 2017) (Hicks, J.). An appeal that fails to cite any binding precedent is unlikely to succeed under this "very deferential" standard. *Johnson v. Louisiana*, 2010 WL 4291423, at \*1 (W.D. La. Oct. 26, 2010) (Hicks, J.)) (appeal denied in part because party "failed to present binding precedent").[3] Moreover, this Court has emphasized that "district courts enjoy broad discretion in determining whether to issue a stay." *Id.* at \*1.

**B.    No Continuance or Stay is Warranted**[4]

    **1.    The Motion for Continuance Was Properly Denied by the Magistrate Judge**

    Magistrate Judge Perez-Montes properly denied the Motion for Continuance. As shown below, his decision was proper because (1) a delay of this litigation is contrary to the PSLRA, which mandates that the selection of lead counsel and the consideration of motions to dismiss take place at the earliest possible time;[5] (2) contrary to KBC's position, judicial efficiency will *not* be served by a continuance, and (3) also contrary to KBC's assertion, CenturyLink has *never* "acknowledged" (as KBC claimed, *see* ECF No. 87-1 at 4 n.3), or otherwise argued or even suggested that the instant securities class actions belong anywhere but this District.

---

[3] As a threshold matter, therefore, the Appeal should be denied for failure to cite any binding authority in support of any of its positions. Instead, KBC relies entirely on Supreme Court dissents and concurrences, out-of-circuit appellate decisions, and district court cases – none of which are binding. *See*, *e.g.*, *Zapata-Banda v. United States*, 2011 WL 1113586, at \*7 (S.D. Tex. Mar. 7, 2011) (Supreme Court concurrences and dissents not binding "even where the majority opinion does not challenge the concurrence on a given point of law") (citing *Maryland v. Wilson*, 519 U.S. 408, 413 (1997)); *Philip Servs. Corp. v. City of Seattle*, 2007 WL 3396436, at \*3 (S.D. Tex. Nov. 14, 2007) (district court cases not binding on other district courts). The consequence of this failure is that even assuming, *arguendo,* that the cases cited by KBC were *persuasive*, the Appeal should be denied because KBC cannot show that the Order was "contrary to law" *without any actual binding law*.

[4] The initial Motion for Continuance exclusively used the word "continuance," and not the word "stay." *See generally* ECF No. 75. However, in its Memorandum in Support of its Appeal, KBC used both terms – "stay" *and* "continu[ance]" – *see*, *e.g.*, ECF No. 87-1 at 2, 4. The instant Opposition likewise uses the two terms interchangeably.

[5] On its face, the Motion for Continuance merely requested "a continuance of the October 25, 2017 hearing on the pending motions for appointment as Lead Plaintiff." ECF No. 75 at 1. However, in substance, the Motion actually sought the postponement – for an indefinite period of time – of the appointment of a lead plaintiff in the three instant securities cases. Inasmuch as the litigation of these cases cannot proceed without a lead plaintiff, the Motion essentially asked the Court to immediately bring the litigation of the three cases to a complete standstill.

## 2.     A Stay is Inconsistent With the PSLRA's Command to Timely Appoint a Lead Plaintiff

The PSLRA expressly requires district courts to appoint a lead plaintiff *promptly*. Specifically, the PSLRA instructs district courts to rule on motions to appoint a lead plaintiff "[n]ot later than 90 days after the date on which a notice is published under subparagraph (A)(i)," or, where multiple actions have been filed, "as soon as practicable after such decision [on the motion to consolidate] is rendered." § 78u–4(a)(3)(B). "The obvious intent of these provisions is to ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead plaintiff process." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-19 (N.D. Ohio 1999). A speedy lead plaintiff process and prompt consideration of motions to dismiss support Congress' twin goals in enacting the PSLRA of "encourg[ing] defendants to fight abusive claims" and deterring settlements that are based merely on the "economics of litigation" rather than the merits. *See* S. Rep. 104-98, 6-7, 1995 U.S.C.C.A.N. 679, 685-86; *see also id*. at 713 (lamenting that "innocent corporations [were] subject to expensive and *time-consuming* litigation" and seeking to enable "early dismissal of abusive securities suits." (emphasis added)). For this reason, courts strictly construe the applicable PSLRA-imposed deadlines. *See Steiner v. Frankino*, 1998 WL 34309018, at *4 (N.D. Ohio July 16, 1998) (refusing to consider late complaint because it "would defeat the intent of the PSLRA by delaying resolution of the motion [for lead plaintiff])."[6]

As noted in § I.B, *supra*, JPML Rule 2.1(d) explicitly states that the pendency of a motion or CTO "does *not* affect or suspend orders and pretrial proceedings in any pending federal district court action." *Id.* (emphasis added); *see also* ECF No. 80 at 5 (citing JPML R. 2.1(d) in denying Motion for Continuance). A continuance in this case, however, would have precisely that effect, while at the same time undermining the PSLRA's command to appoint a lead plaintiff in a timely fashion. In addition, the requested delay is not a short one – as

---

[6] *See also Telxon*, 67 F. Supp.2d at 819 (ignoring untimely complaint for lead plaintiff appointment purposes because considering it "would nullify Congress's attempt to expedite the lead plaintiff appointment process.").

Defendants noted to Magistrate Judge Perez-Montes, it will likely take months for the JPML to rule on CTO-1.  *See* ECF No. 77 at 10 & n.10.  This Court should decline the invitation to introduce this delay into the instant cases, which would be completely contrary to both the letter and the spirit of the PSLRA, and JPML Rule 2.1(d).

### 3.    Judicial Efficiency Will Not Be Served by a Stay

KBC argues that a stay will "promote[] judicial economy, preserve[] party resources, and prevent[] the possibility of inconsistent pre-trial rulings."  ECF No. 87-1 at 3.  But KBC provides no relevant case law in support, much less *binding* law.  *See* § II.A at 5 n.3, *supra*.  In the initial Motion for Continuance, KBC and Oregon relied entirely on *Sevel v. Time Warner*, which, as Defendants pointed out, was an obvious outlier and distinguishable on its facts.  *See* ECF No. 77 at 6-8 & 10-11; *see also* ECF No. 80 at 5 (finding that the "balance of jurisprudential authority" weighed against a stay).  KBC does not cite *Sevel* in support of the Appeal.  Whatever *Sevel'*s flaws, however, at least it was *relevant – i.e.* it was a case addressing the situation at hand, a court deciding whether to stay a lead plaintiff decision under the PSLRA.  *See* 232 F. Supp. 2d 615, 616 (E.D. Va. 2002).

Instead, KBC cites three cases involving Panel proceedings, *Esquivel v. BP Co. N. Am., Inc.*, 2010 WL 4255911 (S.D. Tex. Oct. 14, 2010), *Kennedy v. Novartis Pharm., Corp.*, 2002 WL 31051601, at *1 (E.D. La. Sept. 12, 2002), and *Aikins v. Microsoft Corp.*, 2000 WL 310391 (E.D. La. Mar. 24, 2000).[7]  ECF No. 87-1 at 2, 9.  But (1) none of these cases concerned requests to stay or continue a decision on lead plaintiff and/or a case under the PSLRA and (2) the cases

---

[7] KBC's citation to *Gallagher v. Ocular Therapeutix, Inc.*, 2017 WL 4882487 (D.N.J. Oct. 27, 2017), *see* ECF No. 87-1 at 10, is completely off-topic.  *Gallagher* involved a magistrate judge deciding which of two motions that were *contemporaneously before her*, a lead plaintiff motion and a motion for transfer under 28 U.S.C. § 1404(a), to decide first.  *Id.* at *2.  The opinion contains no discussion of any kind of stay or continuance, no indication that any JPML proceedings were ongoing, and no indication that there were any other related cases pending in any other court.  *See generally id.*

KBC also cites three cases (*Korean Air Lines*, *Delphi*, and *Dupont Plaza Hotel*) for the proposition that the power that a transferee judge has over pretrial matters in a case transferred via § 1407 is coextensive to that of any other district judge.  *See* ECF No. 87-1 at 2-3, 9-10 & n.6.  That proposition is neither in dispute nor relevant in any way to whether the Magistrate Judge erred in denying the continuance.

contain language that *support* Defendants' position that the Appeal should be denied.

 *Esquivel* and *Aikins* both involved motions to remand (non-PSLRA matters) to state court, *see* 2010 WL 4255911, at \*1; 2000 WL 310391, at \*1, and *Kennedy* involved various motions under Fed. R. Civ. P. 12.  2002 WL 31051601, at \*1.  *Eqsuivel*, in particular, took pains to distinguish the circumstances under which remand motions should be decided by the district court (*i.e.*, without waiting for a JPML decision) from those that warranted a stay, quoting the JPML itself: "[i]f you have a motion pending . . . *you are encouraged to rule on the motion unless [it] raises issues likely to arise in other actions in the transferee court . . ..*"  2010 WL 4255911, at \*3 (internal citation omitted) (emphasis added).  On the other hand, if "the remand issue [is] common to other cases that had been transferred to the MDL, [] a stay [is] appropriate . . . ."  *Id.* at \*4.  The court then noted that multiple nearly identical remand motions were already pending in the transferee district and granted the requested stay.  *Id.* at \*4-5.[8]

 In stark contrast to the showings made by the parties in *Eqsuivel* and KBC's other cited cases, KBC simply asserts, in conclusory fashion, that "permitting the JPML to do its work promotes judicial economy, preserves party resources, and prevents the possibility of inconsistent pre-trial rulings."  ECF No. 87-1 at 9.  KBC never even attempts to explain, however, *why* it believes that the procedural posture of the instant action is anything like those of *Esquivel*, *Kennedy*, or *Aikins*.  KBC also fails to articulate how this Court's denial of a stay *as to lead plaintiff selection under the PSLRA*, when there are no PSLRA cases that have been transferred by the JPML, would "promote[] judicial economy" or not "permit[] the JPML to do its work."  *Id.*  Given this failure, KBC's statement that "Courts in this Circuit have often stayed all proceedings in a case pending a final determination on transfer by the JPML," *see* ECF No. 87-1 at 9, amounts to little more than the unimpressive observation that some courts, given different facts, have reached a different conclusion than the Magistrate Judge did in his Order.

---

[8] Similarly, in *Aikins*, the court found that the "jurisdictional questions raised here will likely be raised in many of the other cases pending against [defendant]."  2000 WL 310391, at \*1.  In *Kennedy*, the court found that the case before it was only one of *over 625* similar product liability actions pending across the country.  2002 WL 31051601, at \*1.

But "some courts went the other way" is not KBC's appellate burden. Rather, KBC must show that the Order was "clearly erroneous or contrary to law," a standard which this Court has called "very deferential," especially with respect to stays, where "courts enjoy broad discretion." *See* § II.A, *supra*. KBC does not come close to meeting this standard.

Moreover, *the JPML itself* has stated that stays are disfavored with respect to issues not common to other cases. In *In re Penn Central Sec. Litig.*, 333 F. Supp. 382, 384 n.4 (J.P.M.L. 1971), for example, the JPML stated that "[t]he Panel's experience indicates that the use of stay orders by the district courts . . . is usually undesirable." And in a more recent case, the JPML stated that the benefits of centralization would be limited, due to pending "case-specific motions." *In re Uber Techs., Inc., Wage and Hour Empl't Prac. Litig.*, 2017 WL 2391523, at *2 n.3 (J.P.M.L. May 30, 2017). These decisions are consistent with district court decisions that *decline* to stay lead plaintiff decisions until after a JPML ruling.[9] Because lead plaintiff selection under the PSLRA will be unique to the securities class actions, Defendants respectfully suggest that the Court should follow the JPML's guidance and deny KBC's requested stay.[10]

### 4.    The Merits of the Motion to Vacate are Irrelevant to the Requested Stay

KBC also implies that the requested stay should be granted because, according to KBC, CenturyLink has "acknowledged" that the same court should oversee the instant cases and the Consumer Cases. ECF No. 87-1 at 4 n.3. This suggestion is misguided for three reasons.

*First*, the merits of the Motion to Vacate are irrelevant to this Court's decision on the

---

[9] *See* ECF No. 77 at 7-8 & n.6 (citing *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015); *In re Duke Energy Corp. Sec. Litig.*, 2002 WL 1933798, at *1 (S.D.N.Y. 2002); and *Albert Fadem Trust v. Worldcom*, 2002 WL 1485257, at *1-2 (S.D.N.Y. July 12, 2002)); ECF No. 80 at 5 (citing *Khunt* and *Duke Energy*).

[10] Moreover, the portion of CenturyLink's briefings cited by KBC and stating that having the Consumer Cases and the instant cases together in this District would have served judicial efficiency refer to *discovery* proceedings. *See* ECF No. 75 at 2; ECF No. 75-5 at 3-5. Of course, under the PSLRA, all discovery in the instant cases is stayed unless and until all motions to dismiss are denied. 15 U.S.C. § 78u–4(b)(3)(B). Consequently, nothing argued by CenturyLink to the JPML (or KBC to this Court, for that matter), suggests there are any significant risks of duplication of effort or other inefficiencies by having this Court decide the lead plaintiff issue and/or Defendants' Motion to Dismiss (to be filed at the appropriate time) while awaiting the JPML's decision on the Motion to Vacate.

Appeal.  For the reasons shown *supra*, the Court's decision should be guided by JPML Rule 2.1(d) and the deadline established by the PSLRA for the appointment of a lead plaintiff.  KBC does not cite any case in which a court considering a motion for continuance based its decision on the requested continuance on the *likelihood* that the Panel would, at some later time, issue an order transferring the case to another district pursuant to § 1407.  And as to Oregon, even though it *opposes* the Motion to Vacate, it *agrees* that a stay of these actions is "unnecessary and unwarranted."  ECF No. 90 at 9.

*Second*, CenturyLink has never, in fact, acknowledged that the instant cases should be transferred to another District.  Rather, CenturyLink took the necessary steps (pursuant to 28 U.S.C. § 1404(a)) to ensure that all of the instant cases were litigated in *this* District.  Moreover, once the instant cases were in this District, CenturyLink has consistently argued that (1) there were efficiency benefits to moving the Consumer Cases to this District (primarily related to the discovery phase of the litigation), but (2) "W.D. Louisiana is the proper home for the securities actions, regardless of where the Panel consolidates the consumer actions."  *See* ECF No. 75-5 at 3-5 (Section II.B); ECF No. 77-2 at 6.[11]

*Third*, even assuming, *arguendo*, that the merits of the Motion to Vacate were relevant to the Appeal, the JPML is likely to grant the Motion to Vacate.  Numerous courts, including the JPML, have recognized that securities class actions belong in the issuer's district.[12]  Given the unique nature of securities class actions, the JPML is likely to decide that these securities actions should remain in this Court.

---

[11] CenturyLink also argued that the district containing a corporate defendant's headquarters is the proper transferee district and that this Court would have greater familiarity with Louisiana law, two factors favoring only this District in particular, not simply consolidation in *any* district.  *See* ECF No. 75-5 at 5-6 (Section II.C).

[12] *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010); *Langley Partners, L.P. v. Tripath Tech., Inc.*, 2005 WL 2482527, at *2 (S.D.N.Y. Oct. 6, 2005); *cf. In re BP plc Sec. Litig.*, 734 F. Supp. 2d 1376 (J.P.M.L. 2010) (in actions relating to Deepwater Horizon disaster, deciding not to consolidate securities actions with other actions for wrongful death and tort claims).

C.    **The Magistrate Judge's Disqualification of KBC Was Justified**[13]

1.    **The Professional Plaintiff Rule**

The PSLRA expressly provides that "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions . . . during any 3-year period," "except as the court may otherwise permit, consistent with the purposes of this section."  15 U.S.C. § 78u-4(a)(3)(B)(vi).  "This provision gives the court considerable discretion to bar repeat litigants, creating a rebuttable presumption that the same plaintiff should not direct more than five securities class actions in three years." *Aronson v. McKesson HBOC, Inc*., 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) (applying presumptive bar to an institutional investor). Once this presumptive bar comes into play, "*the burden is upon the presumptively barred candidate* to demonstrate why the bar should not be applied in a given case." *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *20 (E.D. Tenn. Nov. 6, 2003) (emphasis added).  In other words, if a lead plaintiff applicant has already served as lead plaintiff in 5 cases in the last 3 years, it is the applicant that must affirmatively show (if it can) why it *should* be appointed as lead plaintiff (*i.e.*, the other parties do not have the burden of showing why the applicant should *not* be appointed).  *See, e.g., id*.

The professional plaintiff rule furthers a "primary tenet of the PSLRA [which] is to protect a class from representation by repeat plaintiffs."  *Chiaretti v. Orthodontic Ctrs. of Am., Inc*., 2003 U.S. Dist. LEXIS 25264, at *5-6 (E.D. La. Aug. 28, 2003) (disqualifying institution overseeing six securities class actions from service as lead plaintiff).  The "larger the number of cases being directed by a single institutional investor, the less likely it is [the PSLRA's] purposes

---

[13] Defendants recognize they may lack standing to formally oppose a lead plaintiff applicant.  However, a significant number of courts have concluded that, irrespective of whether defendants can formally oppose a lead plaintiff motion, defendants should still be heard on lead plaintiff issues.  *See, e.g., In re First Union Corp. Sec. Litig.*, 157 F. Supp. 2d 638, 641-42 (W.D.N.C. 2000) (stating that regardless of formal standing, "nothing in the [PSLRA] prevents this Court from considering the arguments raised and authorities cited by Defendants.");  The input of a defendant may be especially appropriate where – as was the case for the briefing in front of Magistrate Judge Perez-Montes – that input concerns issues that none of the lead plaintiff applicants raised.  *In re Orthodontic Ctrs. of Am., Inc. Sec. Litig.*, 2001 WL 1636846, at *2 (E.D. La. Dec. 18, 2011) (stating that nothing "prevent[s] the Court from considering [Defendants'] arguments . . . especially in [a] case where there was no adversarial presentation of the issue").

are being served." *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *21-22; *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002) (recognizing that while "involvement in numerous other securities fraud [cases], both as Lead Plaintiff and class participant, may demonstrate valuable experience and quality leadership, it also means fractured attention and resources with respect to this suit").[14]  Accordingly, district courts do not hesitate to decline to lift the bar, especially where, as in the instant matter, other institutional investors have applied to serve as lead plaintiff.  *See, e.g., Enron*, 206 F.R.D. at 457 (disqualifying pension fund that had served as lead plaintiff in nine cases, four of which were active).[15]

2.    **KBC Has Served As Lead Plaintiff in *Fourteen* Cases, Not Eight (or Five)**

In the 3 years preceding the Order, it appears to Defendants that KBC has served as a lead plaintiff in a total of *14* cases, which far exceeds both the 8 cases from Magistrate Judge Perez-Montes's review based on the cases disclosed in KBC's PSLRA certification accompanying its lead plaintiff motion ("Certification"), *see* ECF Nos. 25-3 at 2-3; 80 at 9, and the PSLRA's 5 case limit.[16]  A list of those 14 cases, including the dates on which KBC was

---

[14] See also *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999) (recognizing that "an institutional investor that is *simultaneously* involved in one or more other securities class actions would have fewer resources available and be less able to police its attorney's conduct" (emphasis in original)).

[15] *See also In re Alamosa Holdings, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 31115, at *4 (N.D. Tex. Mar. 4, 2004) (excluding institutional investor from serving as lead plaintiff that had "served as class representative in five class actions within the last three years and is also seeking to serve in a sixth"); *Stengle v. Am. Italian Pasta Co.*, 2005 U.S. Dist. LEXIS 43816, at *19-20 (W.D. Mo. Dec. 19, 2005) (excluding pension fund because it was "currently serving as a lead plaintiff in *at least six actions* and is therefore defined as a 'professional plaintiff' whose application to be lead plaintiff is disfavored by the statute" (emphasis added)); *Thompson v. Shaw Group, Inc.*, 2004 U.S. Dist. LEXIS 25641, at *22 (E.D. La. Dec. 14, 2004) (disqualifying pension fund because "there is a risk of overstretch where [the fund] would be directing a total of *eight concurrent lawsuits*" (emphasis added)); *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *22 (denying motion by pension fund that had served in *thirteen cases*); *but see In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001) (exercising discretion to "not bar the FSBA from serving as lead plaintiff, despite the fact that it has served as such in more than five actions within the last three years" because "FSBA is the only acceptable institutional investor" that filed an application).

[16] In noting this, Defendants do not suggest that the Magistrate Judge was required to conduct an exhaustive review, research cases in addition to those disclosed by KBC in its certification accompanying its lead plaintiff motion, and uncover every such case before making a finding as to the professional plaintiff bar.  The bar is at issue whenever a plaintiff exceeds five cases, and as noted, multiple courts have disqualified lead plaintiff applicants who had been appointed in eight or fewer cases.  *See* § II.C.1, *supra*.

appointed lead plaintiff, is attached as Exhibit A.[17]  KBC did not inform the Court of this violation in its initial motion to be appointed lead plaintiff.  Nor did KBC provide any basis for the Court to exercise its discretion to grant an exception to the professional plaintiff rule. Whatever KBC's reasons for this initial failure, its failure to correct the record as to the total on appeal, at the same time that it *complains about an underdeveloped record*, is inexplicable.  ECF No. 87-1 at 5-7.[18]

Instead, in its Certification, KBC merely identified 12 cases filed in the last three years in which it said it had "sought lead plaintiff" status.  Defendants' review of the dockets of those 12 cases revealed that KBC was ultimately appointed lead plaintiff in 7 of them.  *See* Ex. A. Defendants also discovered two cases in which KBC was appointed lead plaintiff subsequent to the filing of its initial lead plaintiff brief (*Pope* and *Rackspace*).  *See id.*  Finally, Defendants' research revealed that KBC was appointed lead plaintiff in 5 cases that were filed *more* than 3 years ago, but that remained pending for some portion of the last three years.  *Id.*  Because, during the last 3 years, KBC already has served as lead plaintiff in a total of 14 (i.*e.*, 7+2+5) cases,[19] if it is appointed lead plaintiff in this case, it will have been appointed in *three times* the

---

[17] To generate Exhibit A (attached to the concurrently-filed Declaration of Lyle Roberts), Defendants searched for cases in which KBC was appointed lead plaintiff in the last 5 years, and removed cases that were not active in the 3 years preceding the Order (*i.e.*, any case that settled or otherwise terminated before October 20, 2014). Choosing a different 3-year period would change the total.

[18] Although the PSLRA's certification provision only requires an entity to "identif[y] any other action . . . *filed* during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class," the restrictions on professional plaintiffs provision is broader and presumptively bars service in "more than 5 securities class actions . . . during *any* 3-year period." *Compare* 15 U.S.C. §78u-4(a)(2)(A)(v) *with id.* §78u-4(a)(3)(B)(vi) (emphasis added); *see also City of Marysville Gen. Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, 2010 WL 2000040, at *6 n.5 (D. Idaho May 19, 2010) (noting that the 5-in-3 rule covers a broader class of cases than those required to be disclosed in lead plaintiff applicants' certifications). Thus, while KBC's Certification is mostly accurate as to the cases it has *sought* to serve in that were *filed* during the last three years, it does not reveal the unprecedented volume of cases KBC has *served* as lead plaintiff between 2014 and now.

[19] While KBC might assert that some of these cases have been resolved (it appears that 7 of the 14 are still pending), "the 5-in-3 rule is *not* confined to simply the number of *presently* active cases a party is serving as a lead plaintiff in, but applies to *all* cases (active or otherwise) the party in question has served as a lead plaintiff in the past three years." *Cunha v. Hansen Nat. Corp.*, 2009 U.S. Dist. LEXIS 61086, at *11-12 (C.D. Cal. 2009) (emphasis added and in original); *City of Marysville*, 2010 WL 2000040, at *6 n.5. "Nowhere in the statute suggest, much less does its language provide, that it is limited [to active cases], and with good reason." *Cunha*, 2009 U.S. Dist. LEXIS 61086, at *12. "Even once a case has been settled or finally adjudicated the lead

number of cases permitted under the professional plaintiff rule. And there is no end in sight to KBC's lead plaintiff activities – as noted above, KBC was just appointed as lead plaintiff in an additional case, and there may be other pending lead plaintiff motions of which Defendants are unaware. Given this record, so long as the professional plaintiff rule continues to be unenforced against KBC, it presumably will continue to seek appointment in additional cases in the future. The PSLRA's presumptive bar surely exists for situations like this, in which a movant like KBC continues to seek appointment as lead plaintiff to such an unprecedented degree.

### 3. The Disqualification of KBC Was Not Clearly Erroneous or Contrary to Law

#### a. KBC Is Not Immune From the Presumptive Bar Simply Because It Is an Institutional Investor

KBC argues that it is shielded from the presumptive bar because a passage in the PSLRA's legislative history indicates that the appointment of institutional investors is favored. ECF No. 87-1 at 8. Yet, exempting institutions from the PSLRA's presumptive bar "solely on account of their status is not supported by the language of the statute." *Telxon*, 67 F. Supp. 2d at 822; 15 U.S.C. § 78u- 4(a)(3)(B)(vi) (no institutional investor exemption).[20]

In fact, not only does the statute *not* contain an exemption for institutional investors, it contains language that *only* applies to institutional investors: "a person may be a lead plaintiff, or an *officer, director, or fiduciary* of a lead plaintiff, in no more than 5 securities class actions." 15 U.S.C. § 78u-4(a)(3)(B)(vi) (emphasis added). The inclusion of this specific language that only applies to entities like institutional investors indicates that "[i]f Congress had intended to grant a blanket exemption from operation of the [PSLRA] to institutional investors . . . it could easily have [done so]." *Telxon*, 67 F. Supp. 2d at 821. It did not.[21] As one court put it: "[the]

---

plaintiff still remains tasked with a host of administrative duties." *Id.* "In short, the ending of the formal case does not end the lead plaintiff's responsibilities to or for the class he, she or it was appointed to represent." *Id.*

[20] *See also Stengle*, 2005 U.S. Dist. LEXIS 43816, at *20 ("the plain language of the statute contains no such exclusion" for institutional investors); *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *15.

[21] Furthermore, given the regularity with which institutional investors seek to serve and are appointed as lead plaintiffs, an entire section of the PSLRA would be rendered superfluous if district courts granted a blanket exemption from the presumptive bar. *See Fox v. Portico Reality Servs. Office*, 739 F. Supp. 2d 912, 925 (E.D. Va. 2010) ("[T]he rule against superfluities[] requires courts interpreting statutes 'to give effect . . . to every word

attempt to use the Conference Report to manufacture an ambiguity in the [] PSLRA fails because the mental processes of legislators, even if formalized in a committee report, are unpersuasive in light of the fact that the Five-in-Three Provision plainly contains no exemption for institutional investors." *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 661 (E.D. Va. 2016).[22]

The above notwithstanding, one part of the legislative history admittedly provides that institutional investors "*may* need to exceed this limitation." H.R. Conf. Rep. No. 104-369, at 35 (1995) (emphasis added), *reprinted in* 1995 U.S.C.C.A.N. 730, 734. Nonetheless, "[n]either the PSLRA nor its legislative history express any congressional desire [that] institutional investors be permitted to dominate or monopolize the lead plaintiff role." *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *23. Consequently, the most that can be said is that institutional investors *can* exceed the statutory 5-in-3 limit, *if* necessary. There is no such necessity here.

### b.    There Are No Special Circumstances That Warrant Lifting the Bar for KBC

In its lead plaintiff motion, KBC did not even attempt to provide any good cause for exceeding the 5-in-3 limit even further than it already has (14-in-3, *see supra*), nor *could* it have shown good cause. There are several objective criteria that district courts have considered when deciding to exercise their discretion to lift the presumptive bar, including whether (1) "the other movants are not adequate candidates;" (2) "the alternative [] plaintiffs were small individual investors with no experience in managing a securities class action;" (3) applying the presumptive bar would require appointment of a group of "unrelated strangers;" (4) "the [applicant] was the 'only acceptable institutional investor'"; and (5) "the other movants had accrued an even longer record of participation in securities litigation."[23]

---

of a statute' such that 'no part will be inoperative or superfluous, void or insignificant'").

[22] *See also Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (where the "statutory text is plain and unambiguous," courts "must apply the statute according to its terms"); *Struniak v. Lynch*, 159 F. Supp. 3d 643, 657 (E.D. Va. 2016) ("There can be no doubt 'that the plain language of a statute provides the best evidence of legislative intent.'"); *In re Cavanaugh*, 306 F.3d 726, 737 (9th Cir. 2002) (rejecting reliance on PSLRA's legislative history because it "would put the legislative history cart before the statutory text horse").

[23] *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 641 (D.N.J. 2002) (adequacy of other movants); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 454 (C.D. Cal. 2002) (same); *Cunha*, 2009 U.S.

15

*None* of the circumstances district courts identify as sufficient to lift the presumptive bar are present here. There were other lead plaintiff applicants who (1) are institutional investors, (2) are represented by experienced legal counsel, (3) do not violate the professional plaintiff rule, and (4) otherwise appear capable of adequately representing the interests of the class. As such, KBC could not and cannot meet its burden to show that there is good cause for this Court to exercise its discretion to exempt KBC from the presumptive 5-in-3 limit.

### c.    KBC Has Not Met Its Appellate Burden

KBC has utterly failed to show that the Order's "professional plaintiff" bar holding is "clearly erroneous or contrary to law." *See* § II.A, *supra*. Not only does it fail to cite any binding authority, *see id.* at 5 n.3, but its assertion that "virtually every court to consider the question has declined to apply the PSLRA's professional plaintiff provision to institutional investors like KBC," *see* ECF No. 87-1 at 8, is belied by the actual case law. KBC cannot meet its appellate burden on the "professional plaintiff" bar by simply pointing to a handful of district court cases that reached a different result from that of the Order. *Cf.* § II.B.3, *supra*.

### 4.    KBC Suffered No "Due Process" Violation Or Undue "Prejudice" From the Order

KBC's various assertions that it had no "opportunity to be heard" on the "professional plaintiff" issue, that it was "deprived [] of due process," and that it was unduly "prejudiced" because "[a] basic principle of our adversarial system is that only those issues raised by the parties should be considered, much less decided, by the court," are misguided.[24] *See* ECF No.

---

Dist. LEXIS 61086, at *18 (alternatives are small and inexperienced); *Naiditch v. Applied Micro Circuits Corp.*, 2001 U.S. Dist. LEXIS 21374, at *8 (S.D. Cal. Nov. 5, 2001) (same); *In re Netflix, Inc., Sec. Litig.*, 2012 U.S. Dist. LEXIS 59465, at *22 (N.D. Cal. Apr. 26, 2012) (unrelated strangers); *Telxon*, 67 F. Supp. 2d at 822 (same); *Knurr*, 220 F. Supp. 2d at 662 (declining to use its discretion to waive bar due to other institutional applicant that "did not suffer the largest loss, [but] lost a significant amount of money, and [] otherwise meets the requirements to qualify for the most adequate plaintiff presumption."); *Cunha*, 2009 U.S. Dist. LEXIS 61086, at *18 (quoting *Critical Path*, 156 F. Supp. 2d at 1112); *Enron*, 206 F.R.D. at 457 (same); *Aronson*, 79 F. Supp. 2d at 1156-57 (recognizing that bar might be overcome when barred candidate is the "only movant" or "only institutional investor"); *Aronson*, 79 F. Supp. 2d at 1156 (longer record of participation).

[24] Although the Memorandum in Support of KBC's Appeal uses the phrase "due process" in its "Preliminary Statement" section, this usage appears to be purely rhetorical and/or informal. *See* ECF No. 87-1 at 1. Defendants do not understand KBC to be formally asserting a procedural due process violation because, *inter alia*, the phrase is not used again in the "Argument" section, KBC cites no cases in which a due process

87-1 at 1, 5-7. First, the PSLRA itself gave KBC notice of the applicability of the "professional plaintiff" bar, such that KBC had every opportunity to be heard on the issue. Second, because the lead plaintiff process under the PSLRA is, for the most part, solely a contest between plaintiffs' law firms, numerous courts have noted that "[t]he PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation" and both raised and decided related issues *sua sponte*.

**KBC was on Statutory Notice of the Presumptive Bar**. KBC had every opportunity to be heard on the applicability of the "professional plaintiff" bar. KBC submitted no fewer than three briefs in support of its motion to be appointed lead plaintiff (ECF Nos. 25-1, 44, and 52), and each time spurned the opportunity to argue that it should be exempt. The bar is spelled out in § 78u-4(a)(3)(B)(vi), no less plainly than the certification requirement, the notice requirement, or the "most adequate plaintiff" presumptions. *See* §§ 78u-4(a)(2), 78u-4(a)(3)(A), 78u-4(a)(3)(B)(iii). In other contexts, such as the sanctions inquiry under § 78u–4(c), courts have said that "statutory wording of the PSLRA itself" is sufficient to put private securities litigants "on notice." Moreover, because of this statutory notice, a judge's decision on sanctions does *not* become *sua sponte* just because the sanctioned party did not receive some form of notice in addition to the PSLRA itself.[25] The same conclusion is warranted here.

---

violation was found in similar circumstances, and KBC does not articulate a "protected life, liberty or property interest" of which it was allegedly deprived by the Order. *Cf.*, *e.g.*, *Glover v. Hester*, 2011 WL 1467635, at *3 (W.D. La. 2011) (discussing elements of a Fourth Amendment due process claim under § 1983).

[25] *See*, *e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) ("By virtue of this statutory notice, consideration of sanctions in the PSLRA context can never be *sua sponte* and can never come as a surprise, because Congress, not the court, has prompted and mandated a Rule 11 finding"); *accord Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 671-72 (11th Cir. 2010). Moreover, no rational plaintiff's attorney could survey the law on this issue, and conclude that there was no risk of disqualification. Further, the burden is on the *applicant*, not *opposing applicants* (and certainly not the *court*), to demonstrate that an exemption is warranted. *See* § II.C.1, *supra*; *cf. Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, 2012 WL 3638629, at *13 n.5 (D.N.J. Aug. 22, 2012) ("[P]arties must raise all of their arguments when they are before the Magistrate Judge . . . a party should not be encouraged to make a partial presentation before the magistrate . . . and then make another attempt entirely [in front of the district judge]") (internal citation omitted).

***Sua Sponte* Decisions Are Proper and Commonplace in PSLRA Lead Plaintiff**

**Rulings**. To the extent KBC argues that there is a rule categorically barring judges from raising

particular issues or making decisions *sua sponte*, KBC is simply wrong, especially as to lead

plaintiff decisions under the PSLRA.[26]  There is abundant case law demonstrating that is it is

both proper and commonplace for courts to raise and decide issues on a *sua sponte* basis when

considering lead plaintiff applications.[27]  As numerous courts have recognized, "[t]he PSLRA

calls for greater supervision by the Court in the selection of which plaintiffs will control the

litigation."[28]  *See, e.g.*, *In re Landry's Seafood Rest., Inc.*, 2000 WL 33999467, at *1-2 (S.D.

Tex. Mar. 30, 2000).[29]  Courts often note this in allowing defendants, who arguably do not

technically have standing to challenge a lead plaintiff applicant, to be heard.  *See* § II.C.1 at 11

---

[26] To start, a number of KBC's appellate cites are to dissents, partial dissents, and concurrences rather than the controlling majority opinion.  *See* ECF No. 87-1 at 1, 5 (citing *Lehr v. Robertson*, 463 U.S. 248, 273 (1983) (White, J., dissenting); *United States v. Pryce*, 938 F.2d 1343, 1353 (D.C. Cir. 1991) (Silberman, J., dissenting in part); *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring)).  And in the two sentences in *Burke* immediately preceding and following the one quoted by KBC, Justice Scalia made the *opposite* point as the one KBC argues for – that despite the general rule, sometimes courts *should* rule on a basis not argued by the parties.  *See* 504 U.S. 229 at 246 ("[T]he basis . . . on which I rely has not been argued by the United States, here or below. . . . [but] there must be enough play in the joints that the Supreme Court need not render judgment . . . . simply because the parties agree upon it . . . .").

[27] There are also numerous counterexamples, outside of the PSLRA lead plaintiff context, of courts ruling on issues *sua sponte*.  These include consolidation of cases, dismissal of *in forma pauperis* complaints, dismissal under Fed. R. Civ. P. 12(h)(3) or 41(b) and the imposition of sanctions, transfer under 28 U.S.C. § 1404(a), remand of cases to state court, and, in certain cases, consideration of affirmative defenses "that have not been addressed or raised by the parties."  *See, e.g.*, *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *2 (N.D. Cal. June 10, 2014) (consolidation); *Tyler v. City of Omaha*, 780 F. Supp. 1266, 1271-74 (D. Neb. 1991) (dismissal and sanctions); *Hoenig v. NFN Berkebile*, 2002 WL 31246641, at *1 (N.D. Tex. Sept. 2, 2002) (transfer); *Oalmann v. K-Mart Corp.*, 1992 WL 31345, at *2 (E.D. La. Feb. 10, 1992) (remand); *Moran v. Jindal*, 2011 WL 2118735, at *1 (M.D. La. May 25, 2011) (affirmative defenses).  The general, abstract language quoted by KBC, therefore, tells this Court nothing about the propriety of deciding issues *sua sponte* in any one particular context.

[28] KBC notes that Oregon did not raise the "professional plaintiff" issue, and that Oregon's counsel, when representing repeat institutional plaintiffs, has argued against the bar.  ECF No. 87-1 at 7.  Of course, Oregon's counsel (and for that matter KBC's counsel, along with much of the plaintiffs' side of the private securities class action bar), who repeatedly represent the same institutional clients, have an interest in ducking or minimizing the "professional plaintiff" issue.  But the fact that plaintiffs' counsel are reluctant to raise a requirement of the PSLRA, coupled with defendants' technical lack of standing (according to some courts) to raise that requirement themselves, is not a point in KBC's *favor*.  Rather, it *bolsters* the need for independent court oversight of the lead plaintiff process and, when necessary, *sua sponte* policing of the "professional plaintiff" bar.

[29] *See also Janovici v. DVI, Inc.*, 2003 WL 22849604, at *5 (E.D. Pa. Nov. 25, 2003) (same).

n.13, *supra*.  But even in cases where no objections are voiced, "this Court may *sua sponte* evaluate the adequacy of any proposed person or group of persons as Lead Plaintiff(s)."  *Enron*, 206 F.R.D. at 439; *see also Huang v. Acterna Corp.*, 220 F.R.D. 255, 257-59 (D. Md. 2004) (denying unopposed motion to be appointed lead plaintiff).  KBC therefore could not possibly show that the *sua sponte* nature of Magistrate Judge Perez-Montes's decision was "clearly erroneous or contrary to law."

### III.  <u>CONCLUSION</u>

For these reasons, Defendants respectfully request that this Court deny KBC's appeal in its entirety.  In addition, Defendants respectfully request that the Court direct that, as soon as practicable, a schedule be entered for the filing of a consolidated amended complaint and the filing of Defendants' response thereto.

Dated:  November 17, 2017                   Respectfully submitted,

COOLEY LLP

*/s/ Lyle Roberts*
Lyle Roberts (*pro hac vice*)
George Anhang (*pro hac vice*)
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004
Telephone.:  (202) 842-7855
Facsimile:  (202) 842-7899
lroberts@cooley.com
ganahng@cooley.com

HAYES, HARKEY, SMITH & CASCIO, LLP

*/s/ Thomas M. Hayes, III*
Thomas M. Hayes, III, No. 6685
Brandon W. Creekbaum, No. 33791
2811 Kilpatrick Blvd.
Monroe, LA 71201
Telephone: (318) 387-2422
Facsimile: (318) 388-5809
tom@hhsclaw.com

19

brandon@hhsclaw.com

*Counsel for Defendants CenturyLink, Inc., Glen F. Post, III, R. Stewart Ewing, Jr., and David D. Cole*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served via the Court's electronic noticing system CM/ECF to all counsel of record this 17th day of November, 2017.


*/s/ Lyle Roberts*
LYLE ROBERTS