# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID E. KAPLAN, ROXY D. SULLIVAN, LINDSEY RANKIN, MICHAEL S. ALLEN, GARY W. MUENSTERMAN, and CHI-PIN HSU, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br> vs.<br><br>S.A.C. CAPITAL ADVISORS, L.P., S.A.C. CAPITAL ADVISORS, INC., CR INTRINSIC INVESTORS, LLC, CR INTRINSIC INVESTMENTS, LLC, S.A.C. CAPITAL ADVISORS, LLC, S.A.C. CAPITAL ASSOCIATES, LLC, S.A.C. INTERNATIONAL EQUITIES, LLC, S.A.C. SELECT FUND, LLC, STEVEN A. COHEN, MATHEW MARTOMA, and SIDNEY GILMAN,<br><br>      Defendants. | No. 1:12-cv-09350-VM |
| **This Document Relates to:** | |
| BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>S.A.C. CAPITAL ADVISORS, LLC, S.A.C. CAPITAL ASSOCIATES, LLC, S.A.C. INTERNATIONAL EQUITIES, LLC, S.A.C SELECT FUND, LLC, CR INTRINSIC INVESTORS, LLC, STEVEN A. COHEN, MATHEW MARTOMA, CR INTRINSIC INVESTMENTS, LLC and SIDNEY GILMAN,<br><br>      Defendants. | No. 1:13-cv-02459-VM |

**THE INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN
RESPONSE TO THE SAC DEFENDANTS' SUBMISSION CONCERNING MOTION
FOR APPOINTMENT OF LEAD PLAINTIFFS IN THE BIRMINGHAM CASE**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. LEGAL ARGUMENT ........................................................................................ 3

    A. KBC's PSLRA Certification In This Action Poses No Bar to Its Service as Lead Plaintiff. ............................................................................................3

    B. Defendants' Repose-Related Arguments Are Not Properly Raised Now and Cannot Serve as a Basis to Deny a Lead Plaintiff Appointment to KBC. ..........................................................................................................5

    C. The Size of KBC's Losses Should Not Impact the Lead Plaintiff Selection Process .........................................................................................................7

III. CONCLUSION....................................................................................................9

i

Plaintiff City of Birmingham Retirement and Relief System ("Birmingham Retirement System") and putative class member KBC Asset Management NV ("KBC") (collectively, the "Institutional Investor Group" or "IIG"), by and through their counsel, respectfully submit this memorandum of law in response to the SAC Defendants' ("Defendants") submission concerning the motion for appointment of lead plaintiffs in *Birmingham v. S.A.C. Capital Advisors, LLC*, Case No. 13-2459 ("*Birmingham*").[1]

## I. INTRODUCTION

Notwithstanding its ominous tone, Defendants' Memorandum is nothing but a thinly-veiled attempt to obfuscate the relevant issues and deflect attention from the Defendants' massive insider trading scheme. Nothing in Defendants' submission changes the fact that the Institutional Investor Group should be appointed to serve as the lead plaintiff for the *Birmingham* action because it: (a) timely filed a motion for appointment as lead plaintiff; (b) has the largest financial interest in this litigation; and (c) will adequately represent the interests of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).[2]

---

[1] Defendants' submission, ECF No. 110, is referred to herein as "Defendants' Memorandum" or "Defs.' Mem."

[2] The presumption that the Institutional Investor Group is the most adequate plaintiff can only be rebutted with "proof by a member of the purported plaintiff class," and no other member of the purported class has sought to serve as lead plaintiff or opposed the Institutional Investor Group's motion. 15 U.S.C. §77z-1(a)(3)(B)(iii)(II).

More importantly, Defendants' submission runs counter to the unequivocal language of the PSLRA: the most adequate plaintiff presumption "may be rebutted ***only upon proof by a member of the purported plaintiff class***." *Id.* (Unless otherwise noted, emphasis is added and citations are omitted). Defendants are not part of the proposed plaintiff class here. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), slip op. at 3 (S.D.N.Y. Mar. 21, 2007) (Pauley, J.) ("Defendants obviously do not belong to the putative class, and the majority of Courts have found that defendants do not have standing to challenge the adequacy of lead plaintiff applicants in cases governed by the PSLRA.") (attached as Ex. 1 to the Declaration of David P. Abel in Support of IIG's Memorandum of Law in Response to Defendants' Memorandum ("Abel Decl.")); *see also In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) (noting "weight of authority falls against" defendants as to their "ability to challenge lead plaintiff selection").

1

Defendants' contention that KBC's certification submitted pursuant to the Private Securities Litigation Reform Act ("PSLRA") failed to comply with the statutory requirements and was misleading is wrong. Consistent with the statutory requirements, and as Defendants concede, KBC's certification identified all other lawsuits in which it had sought to serve as lead plaintiff in the last three years. While Defendants repeatedly assert that KBC's appointment here would violate the PSLRA's "professional plaintiff" bar, the fact remains that courts from throughout the county have recognized that that bar does not apply to institutional investors such as KBC.

Defendants' further contention that three of the seven KBC funds at issue here have no trades that occurred during the statutory repose period fares no better. Defendants' legal argument in support of their repose-related contention is fundamentally flawed. In any event, Defendants' argument (which, by its very terms, potentially implicates only some, but not all, of the KBC funds in question) is not determinative of KBC's ultimate adequacy to serve as lead plaintiff.

Finally, contrary to Defendants' suggestion, the size of a lead plaintiff candidate's losses has no bearing on the question of whether or not they will be an adequate representative party under the PSLRA.

For the reasons set forth in its opening memorandum, ECF No. 107, the Institutional Investor Group respectfully requests that the Court: (1) appoint the Institutional Investor Group as lead plaintiff; (2) approve the Institutional Investor Group's selection of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") and Motley Rice LLC ("Motley Rice") to serve as lead counsel; and (3) order such other relief as the Court may deem just and proper.

II.     **LEGAL ARGUMENT**

    A.     **KBC's PSLRA Certification in This Action Poses No Bar to Its Service as Lead Plaintiff**

Defendants' primary arguments are that KBC (a) filed an incomplete and misleading certification in support of the motion because it did not list all cases in which it had been selected to serve as lead plaintiff and (b) has triggered the PSLRA's "professional plaintiff" provision. *See generally* Defs.' Mem. at 5-8. These contentions should be summarily rejected.

As an initial matter, KBC's certifications in other cases are irrelevant to the analysis. The only relevant consideration here is whether its certification ***filed in this case*** complies with the requirements of the PSLRA. That answer is "yes." In relevant part, the PSLRA requires that a certification need only identify actions filed during the last three years in which the plaintiff has sought to serve as the representative party on behalf of a class. *See* 15 U.S.C. §78u-4(a)(2)(A)(v) (stating that plaintiffs wishing to serve as representative parties are required to submit a certification that "identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, ***in which the plaintiff has sought to serve as a representative party on behalf of a class***"). As Defendants themselves concede, KBC's certification "disclosed that it has sought to be appointed lead plaintiff in 10 securities actions brought during the past three years."[3] Defs.' Mem. at 5.

---

[3]     Contrary to Defendants' suggestion (*see* Defs.' Mem. at 2-3, 7), the certification filed by KBC here is substantially similar to certifications that its counsel, Motley Rice, has filed on behalf of some of its other institutional investor clients in other recent cases. *Compare* Ex. 17 to Declaration of Audra J. Soloway in Support of Defendants' Memorandum, ECF No. 111-17 (KBC's certification in this case) to Abel Decl. at Exs. 2-4. These certifications all comply with the plain language of the PSLRA by setting forth the names of those actions "filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class."

3

Moreover, even if KBC was required to list on its certification the cases in which it had actually been appointed lead plaintiff (which it was not), the "professional plaintiff" bar does not apply here. By way of background, the PSLRA provides that:

> [e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. §78u-4(a)(3)(B)(vi). Courts in this district and elsewhere have explained in numerous cases that the professional plaintiff bar was not intended to apply to institutional investors such as KBC. *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 n.4 (S.D.N.Y. 2005) (holding that the professional plaintiff provision of the PSLRA "was not intended to target institutional investors"); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-cv-7281 (JFK), 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) ("[A]s an institutional investor, Central States is not subject to the PLSRA's strict ban on 'professional plaintiffs' who have served as lead plaintiff in more than five class actions in the previous three-year period."); *see also In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 264 (D.D.C. 2005) (quoting legislative history that "[*i*]***nstitutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict***"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) ("The [Conference Committee] Report made it quite clear that the limitation against professional plaintiffs was not designed to be applied mechanically to institutional investors.").[4]

---

[4] Defendants contend that KBC's certification is inaccurate in that it failed to list one case ***related to*** *Todd Roth v. Royal Caribbean Cruises Ltd.*, in which KBC was appointed lead plaintiff. Defs.' Mem. at 7-8. This argument is a red herring. KBC's lead plaintiff application was filed in *Roth*, as reflected in the instant certification. The PSLRA does not require that a certification set forth subsequent procedural history relating to the cases identified. It is well established that courts should refrain from imposing requirements that are not contained in the plain text of the relevant statute. *See, e.g., Griffith v. Steiner Williamsburg, LLC*, 760 F. Supp. 2d 345, 355 (S.D.N.Y. 2010) ("The Court must interpret a statute as it

4

B.  **Defendants' Repose-Related Arguments Are Not Properly Raised Now and Cannot Serve as a Basis to Deny a Lead Plaintiff Appointment to KBC**

Defendants further maintain that claims brought under both Sections 10(b) and 20A of the Securities Exchange Act of 1934 are governed by an "absolute" five-year repose period and that, as such, three of the KBC funds at issue "do not have trades to support timely claims [and] should not be appointed to serve as lead plaintiffs in this case." Defs.' Mem. at 13, 14. As a threshold matter, Defendants' argument is not addressed to all of the KBC funds at issue and therefore is not dispositive of KBC's adequacy to serve as lead plaintiff. Moreover, a motion to determine who will serve as lead plaintiff is not the appropriate vehicle to comprehensively address the merits of a potentially complex affirmative defense to liability. Rather, briefing as to the applicability of such a defense should first be undertaken in connection with a motion to dismiss directed to the allegations of a comprehensive consolidated amended complaint.

However, to the extent that a substantive response to Defendants' repose-based argument is deemed to be necessary now, KBC respectfully submits that Defendants' legal analysis is fundamentally flawed. While the Section 10(b) repose period is "5 years after [the] violation," (28 U.S.C. § 1658(b)), that is not the end of the appropriate limitations analysis in this case. Section 20A of the Exchange Act provides an express remedy for unlawful insider trading, ***and it***

---

is, not as it might be, since courts must presume that a legislature says in a statute what it means and means in a statute what it says.") (internal quotation marks omitted).

Moreover, even if recitation of such subsequent history were required, the omission of such information for one case would not constitute grounds to deny a lead plaintiff appointment to KBC. *See, e.g.*, *Kuriakose*, 2008 WL 4974839, at *8 ("The omission of the one case [on the certification form] was not very significant because, as an institutional investor, Central States is not subject to the PLSRA's strict ban on 'professional plaintiffs' who have served as lead plaintiff in more than five class actions in the previous three-year period."); *see also id.* ("Some courts have even questioned whether movants for lead plaintiff who have not filed a complaint . . . are subject to the certification requirement at all, given the provision's heading 'Certification filed with complaint.'"); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 2197836, at *8 (S.D.N.Y. June 26, 2007) ("[S]ince 'it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit [ ]a certificate,' at this stage of the litigation, ***the adequacy of the certificate should not be the determinative factor in selecting the lead plaintiff***.") (second alteration in original).

5

*contains different limitations language than that applicable to Section 10(b) claims*: "[n]o action may be brought under this section more than 5 years *after the date of the last transaction that is the subject of the violation*." 15 U.S.C. § 78t-1(b)(4).

The fact that Congress used different language in Section 20A means that a different limitations analysis should apply to that claim. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (alteration in original); *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."). Moreover, in construing a statute, "all words contained in a statute [must] be given effect to avoid rendering them superfluous." *Langston v. Smith*, No. 07-cv-2630 (ERK), 2010 WL 3119284, at *6 (E.D.N.Y. Aug. 6, 2010) (citing cases). Additionally, words within a statute are to be construed in accordance with their ordinary meaning. *See, e.g.*, *MetLife Investors USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 311 (E.D.N.Y. 2010).

Applying these established principles of statutory construction, it is clear that the specific words of Section 20A focus the limitations analysis *on the date of the last trade effectuating the insider trading scheme in which a defendant is alleged to have engaged*. *See* 15 U.S.C. § 78t-1(b)(4) (using the following language: "date of the last transaction that is the subject of the violation"). Thus, the Section 20A claims asserted here on behalf of all KBC funds are timely because the original complaint was filed in April 2013, the amended complaint was filed on July

6

15, 2013, and the insider trading scheme described therein continued through the end of July 2008. See ECF No. 89 ¶2.

### C. The Size of KBC's Losses Should Not Impact the Lead Plaintiff Selection Process

Defendants also suggest that KBC would be an inadequate class representative since its "financial stake in this litigation is miniscule."[5] See Defs.' Mem. at 8. However, the PSLRA does not contain any monetary threshold that a lead plaintiff candidate must meet. Indeed, the PSLRA's requirement that a court consider a potential lead plaintiff's losses is designed to apply only to those situations in which one competing lead plaintiff movant must be distinguished from another. Since the Institutional Investor Group is the *only* lead plaintiff movant here, consideration of the magnitude of damages or losses is of no import to the analysis.[6]

Additionally, denying the Institutional Investor Group's motion for appointment as lead plaintiffs on this basis would run contrary to one of the basic tenets of Federal Rule of Procedure 23: class action litigation should "provide[] a key to the courthouse for parties with legitimate claims whose access to justice may be slammed shut because the individual amounts

---

[5] In point of fact, KBC does have a substantial financial interest here. See infra note 6. Indeed, Defendants' contention wholly ignores the Insider Buying Class Period.

[6] The Institutional Investor Group respectfully submits that in insider trading cases such as this one, considerations of a plaintiff's "financial interest" are more complex than in conventional issuer fraud cases in light of the fact that disgorgement is the appropriate remedy and damages cannot be determined precisely without a detailed analysis of the Defendants' trading records. Such an analysis is well beyond the scope of the lead plaintiff appointment process.

For the Insider Buying Class Period, the Institutional Investor Group claimed a financial interest from the sale of a significant number (427,654) of Wyeth shares contemporaneously with Defendants' tainted purchases. ECF No. 107 at 5. KBC and Birmingham also claimed a financial interest from their contemporaneous purchases of 3,660 shares of Wyeth common stock during the brief 10-day Insider Selling Class Period. Id. at 4; see also In re Connetics Corp. Sec. Litig., No. C 07-02940 SI, 2008 WL 3842938, at *12 (N.D. Cal. Aug. 14, 2008) ("Section 20A of the Exchange Act creates a private right of action against 'any person' who violates the Exchange Act by purchasing or selling securities 'while in possession of material, nonpublic information.' The Act states that such person ***is liable to any investor who, 'contemporaneously with the purchase or sale of securities' by the insider, purchased or sold securities of the same class***.") (citing 15 U.S.C. §78t-1(a)).

7

of their claims make it economically infeasible to pursue them on an individual basis." *Upshaw v. Georgia (GA) Catalog Sales, Inc.*, 206 F.R.D. 694, 697 (M.D. Ga. 2002). As the Supreme Court has explained:

> Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions also . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). Simply put, Defendants' argument would effectively eviscerate the very policy underlying Rule 23. Moreover, a requirement that a proposed lead plaintiff have some "large" interest in order to serve as lead plaintiff suffers from a fundamental flaw: in cases in which no class member with a "large" loss is willing to serve as lead plaintiff, a defendant could violate the securities laws with virtual impunity. Clearly, that was not the intention of the PSLRA.

In the case now before the Court, the Institutional Investor Group has no conflicts with the proposed Class, as its members all have suffered the same type of injury due to the same alleged actions of Defendants. The two members of the Institutional Investor Group are sophisticated parties who understand their roles and their counsel's role in this litigation. Further, there is no issue regarding the ability of the proposed co-lead counsel, given their extensive background in securities class action litigation. Since movant has no conflicts with the proposed Class, and because it has selected qualified and experienced counsel, the Institutional Investor Group has established its adequacy to serve as lead plaintiff under the PSLRA.

8

### III. CONCLUSION

For the foregoing reasons, this Court should reject the contentions offered by Defendants in their submission directed to lead plaintiff appointment issues in the *Birmingham* case. Moreover, the Institutional Investor Group respectfully requests that the Court: (1) appoint the Institutional Investor Group as lead plaintiff; (2) approve the Institutional Investor Group's selection of Scott+Scott and Motley Rice to serve as lead counsel; and (3) order such other relief as the Court may deem just and proper.

| | |
|---|---|
| DATED: New York, New York<br>October 7, 2013 | SCOTT+SCOTT, ATTORNEYS AT LAW, LLP<br><br>/s/ Joseph P. Guglielmo<br>JOSEPH P. GUGLIELMO (JG-2447)<br>DAVID R. SCOTT (DS-8053)<br>DONALD BROGGI<br>The Chrysler Building<br>405 Lexington Avenue, 40th Floor<br>New York, NY 10174-4099<br>Tel.: (212) 223-6444<br>Fax: (212) 223-6334<br>Email: jguglielmo@scott-scott.com<br>david.scott@scott-scott.com<br>dbroggi@scott-scott.com<br><br>MOTLEY RICE LLC<br>JAMES M. HUGHES<br>GREGG S. LEVIN<br>DAVID P. ABEL<br>28 Bridgeside Boulevard<br>Mt. Pleasant, SC 29464<br>Tel.: (843) 216-9000<br>Fax: (843) 216-9450<br>Email: jhughes@motleyrice.com<br>glevin@motleyrice.com<br>dabel@motleyrice.com<br><br>*Counsel for Proposed Lead Plaintiff*<br>*Institutional Investor Group* |

9

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of October 2013 at New York, New York.

/s/ Joseph P. Guglielmo
JOSEPH P. GUGLIELMO (JG-2447)
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com