# EXHIBIT 5

# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: ) | MDL No. 2795 |
| ) | |
| CenturyLink Residential Customer Billing ) | |
| Disputes Litigation ) | |

## OREGON'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 1

# TABLE OF CONTENTS

                                                                **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 3

III.   ARGUMENT .................................................................................................. 6

        1.    Centralization Will Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of Both Sets of Actions ............................ 7

        2.    Defendants' Arguments that the Securities Cases Should Be Separated and Proceed in the W.D. Louisiana Are Meritless ........................................... 9

            A.    Defendants' "Center-of-Gravity" Arguments Are Irrelevant and Incorrect ... 9

            B.    The Interests of Convenience Are Served By Centralizing the Securities Actions With the Related Consumer Actions In Minnesota ........................ 11

            C.    The Location of Evidence Favors Coordination in Minnesota ..................... 12

            D.    The Securities and Consumer Actions Are Both At Their Nascent Stages... 13

            E.    The Benefits of Centralization Are Far From Incremental, Particularly in Light of the Difficulties of Voluntary or Informal Coordination ................. 14

IV.   CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahrens v. CTI Biopharma Corp.*,
 2016 WL 2932170 (S.D.N.Y. May 19, 2016) ...................................................................10

*In re Am. Express Anti-Steering Rules Antitrust Litig. (No. II)*,
 764 F. Supp. 2d 1343 (J.P.M.L. 2011)................................................................................13

*In re: Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*,
 857 F. Supp. 2d 1371 (J.P.M.L. 2012)..................................................................................7

*In re BP p.l.c. Securities Litigation*,
 734 F. Supp. 2d 1376, 1377 n.3, 1378 (J.P.M.L. 2010).....................................................11

*In re Butterfield Patent Infringement*,
 328 F. Supp. 513 (J.P.M.L. 1970)......................................................................................11

*In re CenturyLink, Inc. Sec. Litig.*,
 2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014) ...................................................................10

*In re Charter Commc'ns, Inc., Sec. Litig.*,
 254 F. Supp. 2d 1379 (J.P.M.L. 2003)...............................................................................11

*In re Checking Account Overdraft Litig.*,
 818 F. Supp. 2d 1373 (J.P.M.L. 2011).................................................................................7

*In re Collins & Aikman Corp. Sec. Litig.*,
 438 F. Supp. 2d 392 (S.D.N.Y. 2006)................................................................................10

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*,
 177 F. Supp. 2d 1375 (J.P.M.L. 2001)...............................................................................11

*Erickson v. Corinthian Colls., Inc.*,
 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ......................................................................10

*In re Falstaff Brewing Corp. Antitrust Litig.*,
 434 F. Supp. 1225 (J.P.M.L. 1977)..........................................................................7, 8, 10

*Goggins v. Alliance Capital Mgmt., L.P.*,
 279 F. Supp. 2d 228 (S.D.N.Y. 2003)................................................................................10

*In re Gov't Auto Fleet Sales*,
 328 F. Supp. 218 (J.P.M.L. 1971)......................................................................................14

*In re Grain Shipments*,
   319 F. Supp. 533 (J.P.M.L. 1970)..................................................................................6

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No. II)*,
   2015 WL 7769022 (J.P.M.L. June 8, 2015).................................................................6, 7

*In re Med. Waste Servs. Antitrust Litig.*,
   277 F. Supp. 2d 1382 (J.P.M.L. 2003)........................................................................13

*In re: MF Global Holdings Ltd. Inv. Litig.*,
   857 F. Supp. 2d 1378 (J.P.M.L. 2012)........................................................................7, 8

*Microspherix LLC v. Biocompatibles, Inc.*,
   2012 WL 243764 (S.D. Fla. Jan. 25, 2012) ................................................................13

*In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*,
   655 F. Supp. 2d 1378 (J.P.M.L. 2009)........................................................................10

*In re Peanut Crop Ins. Litig.*,
   342 F. Supp. 2d 1353 (J.P.M.L. 2004)........................................................................9, 10

*Sarvint Techs., Inc. v. Omsignal, Inc.*,
   161 F. Supp. 3d 1250 (N.D. Ga. 2015) .......................................................................13

*Steck v. Santander Consumer USA Holdings Inc.*,
   2015 WL 3767445 (S.D.N.Y. June 17, 2015) ............................................................10

*In re Sugar Indus. Antitrust Litig. (E. Coast)*,
   471 F. Supp. 1089 (J.P.M.L. 1979)..............................................................................11

*In re Treasury Sec. Auction Antitrust Litig.*,
   148 F. Supp. 3d 1360 (J.P.M.L. 2015)........................................................................11

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................9, 10

28 U.S.C. § 1407................................................................................................................. *passim*

**Other Authorities**

J.P.M.L. R. P. 6.2(d) ..............................................................................................................6

The State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund ("Oregon"), the Court-appointed Lead Plaintiff in the consolidated *Craig*, *Scott*, and *Thumetti* actions (collectively, the "Securities Actions"), respectfully submits this opposition to the Motion to Vacate (the "Motion to Vacate") Conditional Transfer Order No. 1 ("CTO-1") filed by Defendants CenturyLink, Inc. ("CenturyLink" or the "Company"), Glen F. Post III, R. Stewart Ewing Jr., and David D. Cole (collectively with CenturyLink, "Defendants").[1]

**I.    INTRODUCTION**

Defendants' reversal here is stunning. Having argued—repeatedly and zealously—that centralization of the Securities Actions and related consumer actions against CenturyLink was required under Section 1407, and that Judge Michael J. Davis of the U.S. District Court for the District of Minnesota was an excellent steward for the litigation, Defendants now ask this Panel to vacate its transfer order, contending that the benefits of centralization are merely "incremental." In doing so, Defendants completely abandon their prior representations to the Panel that the "parties and courts would benefit from consolidation of the consumer and securities cases into one court." ECF No. 56 at 1-2. It is hard to explain Defendants' about-face except as an improper attempt to gain some perceived litigation advantage.

The facts supporting centralization remain as true now as they were when CenturyLink raised them before the Panel. The consumer class actions arise out of the same core facts as the Securities Actions, will share overlapping discovery, and the prosecution of both sets of cases would clearly benefit from coordination in the same District. As Defendants correctly recognized

---

[1] All emphasis is added and citations omitted unless otherwise noted. All references to "Ex. __" are to the attached Declaration of Michael D. Blatchley ("Blatchley Decl.").

1

before, the "securities actions address the same predicate conduct as the consumer actions" and, as a result, "discovery and motions practice will overlap extensively." ECF No. 27 at 3-4. Moreover, as Defendants put it, centralization is necessary to "prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues, and conserve the resources of the parties, their counsel and the judiciary." *Id.* at 5. Oregon agrees.

Defendants' new arguments to the contrary are meritless. ***First***, Defendants contend that the "locus of operative facts" or "center of gravity" test requires that the Securities Actions be prosecuted separately in the Western District of Louisiana. But the "center of gravity" test is inapplicable, as it is imported from a different statute focused on a fundamentally different basis for judicial economy. Rather, the relevant question is whether ***centralization*** is appropriate under Section 1407, which looks to the efficiency and convenience of combining related cases in a single jurisdiction—a standard Defendants fully embraced in prior briefing before the Panel in this case, but now ignore. ***Second***, even if they argued from the correct statute, which they do not, Defendants are simply wrong on the facts. Indeed, even if these factors could possibly outweigh the benefits of centralization that Defendants previously espoused, Defendants have not established that the Minnesota District Court is somehow inconvenient for CenturyLink senior management, that the only important evidence is in Louisiana, or that the cases are in disparate procedural stages. To the contrary, the actual record shows that Minnesota is perfectly convenient for senior management, key evidence is located there, and the cases are in the same procedural posture and optimally positioned for centralization.

***Last***, recognizing that their request to splinter these cases would inevitably lead to inefficiencies, Defendants offer to "work together informally to coordinate discovery or motions." ECF No. 77-1 at 13. But this offer is hard to square with Defendants' conduct to date, and rings

2

particularly hollow given Defendants' previous statement to the Panel that "informal coordination [between the Consumer and Securities Actions] would effectively be impossible." ECF No. 27 at 10. *See* Section III.

For these reasons and those set forth below, Defendants' motion should be denied. The very benefits that Defendants previously touted—but now disclaim as "incremental"—are dispositive, and compel centralization in Minnesota.

## II.   BACKGROUND

The Securities Actions arise out of the same core misconduct as a Minnesota Attorney General action and numerous consumer class actions that were filed across the country (the "Consumer Actions"), many of which have been consolidated and transferred to the District of Minnesota by the Judicial Panel on Multidistrict Litigation (the "Panel"). *See* ECF No. 60. Each of these actions centers on CenturyLink's unethical and illegal sales and billing practices, which first came to light when the news media reported that a former CenturyLink sales representative had filed a lawsuit against the Company after being "fired for blowing the whistle on the telecommunications company's high-pressure sales culture that left customers paying millions of dollars for accounts they didn't request." ECF No. 27-6 at ¶45. The whistleblower lawsuit detailed how the CenturyLink representative became alarmed that the Company's practices mirrored those of Wells Fargo & Co., where allegations of employees opening up deposit and credit accounts without customers' consent had drawn governmental and media scrutiny. *Id.* According to the whistleblower, she was "fired days after notifying Chief Executive Officer Glen Post of the alleged scheme." *Id.*

These revelations prompted dramatic declines in the prices of CenturyLink's securities, as well as the filing of numerous private and government actions. CenturyLink customers who had been overbilled and otherwise harmed by the Company's practices initiated the Consumer Actions

3

in state and federal courts around the United States. Around the same time, the Attorney General of the State of Minnesota filed a lawsuit against CenturyLink in Minnesota state court. In addition, CenturyLink investors filed the *Thummeti* and *Craig* actions in the United States District Court for the Southern District of New York, asserting violations of the Securities Exchange Act of 1934 (the "Exchange Act") based on Defendants' false and misleading representations and omissions concerning these same underlying facts.

On July 31, 2017, CenturyLink sought to consolidate and transfer nine of the Consumer Actions before Judge Michael J. Davis of the United States District Court for the District of Minnesota (the "Minnesota District Court"), arguing that a failure to do so would lead to a "massive waste of judicial resources." ECF No. 1-1 at 17-19.

Shortly thereafter, the parties in *Craig* and *Thummeti* stipulated to transfer those actions to the United States District Court for the Western District of Louisiana (the "W.D. Louisiana"), and, on August 15, 2017, a third securities action, *Scott*, was filed in that court. On August 28, 2017, CenturyLink submitted additional briefing (the "Reply") to the Panel, now urging that the Consumer Actions be transferred to the W.D. Louisiana to join the Securities Actions "***arising from the same predicate facts and allegations***." ECF No. 27 at 2 (emphasis in original). In support, CenturyLink argued:

> The Panel has long recognized the importance of transferring consumer actions and securities actions into the same federal court, where the core facts, legal issues and topics for discovery extensively overlap. That is precisely the situation here. Because the securities actions address the same predicate conduct as the consumer actions, discovery and motions practice will overlap extensively. ***A common court and District Judge should oversee all of these actions*** to maximize efficiency, prevent wasteful duplication of judicial effort, and avoid inconsistent results. . . . ***If different courts adjudicate the consumer and securities actions, inefficiencies and inconsistencies are bound to arise.*** The Panel should join the consumer and securities actions in the same court to eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues, and conserve the resources of the parties, their counsel and the judiciary.

4

*Id.* at 3-5.

Despite touting the commonalities between the Securities and Consumer Actions, CenturyLink did not identify the Securities Actions as "related" to the Consumer Actions, but the Panel did so the day after the Company filed the Reply. *See* ECF No. 31. In subsequent briefing, CenturyLink repeated its arguments that centralization was required under Section 1407, arguing that, regardless of any procedural or substantive differences among the claims:

> [T]he predicate facts underlying the securities actions are the ***same*** facts underlying the consumer actions. . . . [T]he obvious conclusion [is that the] parties and courts would benefit from consolidation of the consumer and securities cases into one court, for coordinated discovery. Common issues of fact, creating overlapping discovery and pretrial motions, is the quintessential purpose of transfer and consolidation under § 1407, even if procedural or substantive differences exist between different claims. Thus, that the securities actions assert different legal theories than the consumer cases is no bar to consolidation.

ECF No. 56 at 1-2. Citing Panel precedent supporting "consolidation of the securities and consumer actions," *id.* at 2-3, CenturyLink argued that "the parties should [not] be forced to undertake burdensome and redundant discovery." *Id.* at 4. The Company warned that, without centralization, there would be "***gross inconvenience*** to the parties, witnesses and judiciary caused by having the consumer actions in a forum separate from the securities actions." *Id.* at 6-7.

On October 5, 2017, the Panel transferred eight of the Consumer Actions to the Minnesota District Court for consolidation before Judge Davis. ECF No. 61. The following day, the Panel issued CTO-1, which transferred another seven actions—including the Securities Actions—to the Minnesota District Court before Judge Davis. ECF No. 63.

While nothing has changed other than the fact that—***as CenturyLink requested***—the Panel has now consolidated the Securities Actions with the Consumer Actions, Defendants' Motion to Vacate abandons CenturyLink's repeated prior argument that the Securities and Consumer Actions

5

belong in the same District Court. *See generally* ECF No. 77-1. In a stark reversal, Defendants now argue that the Securities Actions should proceed on a different track, before a different judge, and in a different court over a thousand miles away.

Meanwhile, new securities actions continue to be filed. On October 25, 2017, Inter-Marketing Group USA, Inc. filed a securities class action lawsuit on behalf of CenturyLink noteholders against the Defendants (the "Bond Action"), raising substantially similar allegations to the Securities Actions. Although Panel rules obligated Defendants to file notice of a potential tag-along action, *see* J.P.M.L. R. P. 6.2(d), they had not done so by November 3, 2017, so Oregon filed a notice itself. ECF No. 78.

### III. ARGUMENT

Under Section 1407, an action should be transferred if it meets two conditions, namely, (i) the action "involves common questions of fact with actions previously transferred . . . and [(ii)] transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No. II)*, 2015 WL 7769022, at *2 (J.P.M.L. June 8, 2015); *see also* 28 U.S.C. § 1407(a). While a conditional transfer order is not conclusive, a party resisting transfer must establish "good cause" to vacate the order. *See In re Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970).

Here, the Section 1407 conditions are readily met. Indeed, Defendants do not contest the first one, as the cases plainly share a commonality of factual and legal issues. *See* 28 U.S.C. § 1407(a); *see also* ECF No. 27 at 2 (characterizing the Securities Actions as "arising from the ***same*** predicate facts and allegations" as the Consumer Actions) (emphasis in original).[2] Thus, the only

---

[2] *See id.* at 3 ("The securities actions and consumer actions overlap and are each based on the same underlying allegations."), 4 (explaining that "the securities actions address the same predicate

6

real question is whether Defendants can now show that centralizing the actions would work at cross purposes of the "just and efficient conduct of the litigation." *In re Checking Account Overdraft Litig.*, 818 F. Supp. 2d 1373, 1374 (J.P.M.L. 2011).  As Defendants themselves previously argued, the facts here overwhelmingly favor centralization in Minnesota.

> 1. **Centralization Will Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of Both Sets of Actions**

Centralization and coordination of the Consumer and Securities Actions before the Minnesota District Court will further the interests of convenience, fairness, and efficiency by minimizing the inconvenience and expense of redundant and duplicative discovery and the likelihood of inconsistent rulings—precisely the purpose of transfer and coordination under Section 1407.  Indeed, Section 1407 was specifically designed to avoid inefficiency and the potential for conflicting decisions that would result if the Securities and Consumer Actions were to proceed in different courts.  *See* Manual for Complex Litigation, Fourth § 20.131 (2004) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").[3]

---

conduct as the consumer actions"); ECF No. 56 at 1 ("[T]he predicate facts underlying the securities actions are the same facts underlying the consumer actions."), 5 ([T]here are indeed actions in the W.D. Louisiana involving the same facts [as the Consumer Actions]: the securities actions."); *cf. In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1228-29 (J.P.M.L. 1977); *In re: MF Global Holdings Ltd. Inv. Litig.*, 857 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012); *In re: Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1373 (J.P.M.L. 2012).

[3] *MF Global*, 857 F. Supp. 2d at 1381 ("Centralization will avoid duplicative discovery, eliminate the risk of inconsistent pretrial rulings (including with respect to issues of class certification), and conserve the resources of the parties, their counsel, and the judiciary."); *Falstaff*, 434 F. Supp. at 1228-29 ("Certain conduct of the defendants is alleged to have constituted antitrust violations while non-disclosure of that same conduct is alleged to have also resulted in violations of the securities laws.  Thus, transfer of the antitrust and securities actions under Section 1407 is

7

There can be no serious dispute concerning the benefits of centralization here. As CenturyLink itself has repeatedly argued, the Consumer and Securities Actions arise from the same underlying conduct and will involve much of the same discovery and many of the same legal issues. In previously urging the Panel to centralize the two sets of actions on that basis, CenturyLink noted that, were the actions to stay separate, "inefficiencies and inconsistencies are bound to arise." ECF No. 27 at 5. This is as true now as it was then.

In CenturyLink's words, because the "securities and consumer actions all concern the same common predicate facts: CenturyLink's residential sales and billing policies and practices," both sets of plaintiffs will "need to show that CenturyLink violated laws or breached contracts by overcharging customers or collecting unauthorized charges," and the plaintiffs' proof will rely on the same evidence. *Id.* at 4. By centralizing the actions, the Panel would help "to eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues, and conserve the resources of the parties, their counsel and the judiciary." *Id.* at 5. For these reasons, CenturyLink correctly argued that "[a] common court and District Judge should oversee all of these actions to maximize efficiency, prevent wasteful duplication of judicial effort, and avoid inconsistent results." *Id.* at 4.

Recent developments further counsel in favor of centralizing the actions. In late October, the Bond Action was filed in the Southern District of New York, where it is still venued. That action raises the same allegations as the Securities Actions, over the same class period, and plainly should be centralized with the other actions in this case. Transferring the Securities Actions to the Minnesota District Court is a necessary step in bringing all of these related actions together.

---

necessary in order to eliminate the possibility of duplicative discovery and prevent inconsistent pretrial rulings.").

8

2. **Defendants' Arguments that the Securities Cases Should Be Separated and Proceed in the W.D. Louisiana Are Meritless**

Despite CenturyLink's prior arguments that centralization was necessary for efficiency, consistency, and the prevention of wasteful judicial effort, Defendants now argue that Securities Actions should proceed separately in Louisiana. Defendants attempt to justify this about-face by arguing that the "center of gravity" of the Securities Actions is in Louisiana, that it is more convenient for CenturyLink senior management, that documents are located there, that the Securities Actions are already "well underway." The Panel should swiftly reject these arguments.

A. <u>Defendants' "Center-of-Gravity" Arguments Are Irrelevant and Incorrect</u>

Defendants argue that the Securities Actions should be venued in Louisiana because it is purportedly the "center of gravity" of the Securities Actions, as it is the location of CenturyLink's headquarters and certain named Defendants reside there. But there is no "center of gravity" test under Section 1407. Rather, Defendants attempt to import this concept from Section 1404(a), a provision governing venue. Defendants' effort falls flat.

Section 1404 and Section 1407 are not interchangeable: they are different statutes that serve different purposes. Section 1404(a) is solely focused on venue and makes no mention of the issues arising in multidistrict litigation, whereas Section 1407—which concerns multidistrict litigation— is not focused on venue.[4] Indeed, this Panel has repeatedly explained that the key phrase in Section 1407(a) permitting transfer to "***any district***" means precisely that the Panel "is ***not*** encumbered by ***considerations of venue***." *In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, 1354 (J.P.M.L.

---

[4] Section 1404(a) provides in relevant part that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). By contrast, Section 1407 states that, "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407.

9

2004) (noting the statute's primary congressional purpose was to centralize in one district "all pretrial proceedings when civil actions involving one or more common questions of fact are pending in different districts").[5] Thus, whatever its utility under Section 1404(a), Defendants' "center of gravity" argument misses the point entirely. The relevant question under Section 1407 is whether ***centralization*** will benefit the conduct of the litigation.[6]

In any event, Defendants are wrong to suggest that the Western District of Louisiana is the "center of gravity" for the Securities Cases. According to Defendants, the "center of gravity" is where the "allegedly misleading public statements were prepared, made and disseminated." ECF No. 77-1 at 7. Here, however, the allegedly false and misleading statements were not just made in Louisiana, but in investor conferences throughout the country. Indeed, Defendant Ewing spoke publicly about CenturyLink *outside* of Louisiana (in places like Las Vegas, San Francisco, and

---

[5] *See also In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009) (rejecting argument that transfer under Section 1407 was inappropriate due to contractual forum selection clauses because "the statute authorizes the Panel to centralize those actions (as well as any subsequently identified tag-along actions) in 'any district'"); *Falstaff*, 434 F. Supp. at 1229 (rejecting argument against transfer on statutory venue grounds because "[i]n considering transfer under Section 1407, the Panel is not encumbered by considerations of venue"). Even courts interpreting Section 1404(a) recognize that "concerns over judicial efficiency" are often more determinative of transfer than the "locus of operative facts" in cases where related litigation is already pending. *See, e.g.*, *Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) (transferring to venue where actions were pending because doing so would "preserve judicial resources and [] avoid the potential for inconsistent judgments").

[6] None of Defendants' cases support the notion that the center-of-gravity factor somehow outweighs the convenience gained by transferring a case to a venue where parallel litigation is already pending. *See In re CenturyLink, Inc. Sec. Litig.*, 2014 WL 1089116, at *2 (S.D.N.Y. Mar. 18, 2014) (related cases located in same district as "center of gravity"); *Ahrens v. CTI Biopharma Corp.*, 2016 WL 2932170, at *4 (S.D.N.Y. May 19, 2016) (transfer granted to "center of gravity" in part because related cases already there); *Steck v. Santander Consumer USA Holdings Inc.*, 2015 WL 3767445, at *9 (S.D.N.Y. June 17, 2015) (no mention of related cases); *Erickson v. Corinthian Colls., Inc.*, 2013 WL 5493162, at *7 (S.D.N.Y. Oct. 1, 2013) (same); *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 398-99 (S.D.N.Y. 2006) (transferring to "center of gravity" because related lawsuits were there, noting "litigating related claims in the same tribunal allows for more efficient pretrial discovery, avoids duplicative litigation, prevents inconsistent results, and saves time and expense for both parties and witnesses").

New York) nearly twice as often as he did in Louisiana, and Defendants Post and Cole have similarly frequently spoken about CenturyLink in places like New York, Boston, and Los Angeles. *See* Ex. A. Thus, Defendants' "center of gravity" test does not provide them any support.[7]

> B. The Interests of Convenience Are Served By Centralizing the Securities Actions With the Related Consumer Actions In Minnesota

Defendants next argue against centralization by claiming that Defendants Post, Ewing, and Cole somehow face an "extreme burden" if they were to someday choose to attend a pretrial hearing. ECF No. 77-1 at 9. This argument should also be rejected.

As an initial matter, centralization under Section 1407 is conducted for pretrial purposes; it does not involve transfer for trial. For this reason, any claimed burden on parties and witnesses in attending pretrial proceedings does not generally factor into the analysis at all. *See, e.g.*, *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) ("Section 1407 transfer is for pretrial proceedings only.").[8]

---

[7] Defendants' cases are inapposite. Two concerned initial consolidation of actions, and therefore did not address the question here—*i.e.*, whether or not to centralize an action with other concededly related actions that have already been venued pursuant to Section 1407. *See In re Charter Commc'ns, Inc., Sec. Litig.*, 254 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2003) (initially consolidating 14 securities actions, with all parties' consent, in district where eight were filed and corporate headquarters were located); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1361-62 (J.P.M.L. 2015) (initially transferring cases to court where majority of cases were filed, in part on the basis that companies' headquarters were located there). In the other, *In re BP p.l.c. Securities Litigation*, the Panel declined to centralize securities actions with "wrongful death, personal injury, and property and other economic damages claims" that had previously been consolidated because "the typical benefits of common discovery would likely be few" and centralization "would likely create an unwieldy and ultimately counterproductive litigation vehicle." 734 F. Supp. 2d 1376, 1377 n.3, 1378 (J.P.M.L. 2010). As Defendants previously argued, that is simply not the case here.

[8] *See also id.* ("[S]ince Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise."); *In re Sugar Indus. Antitrust Litig. (E. Coast)*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979) ("normally is no necessity for the parties to participate in pretrial conferences held by the transferee court"); *In re Butterfield Patent Infringement*, 328 F. Supp. 513, 514 (J.P.M.L. 1970) ("if serious

11

Moreover, Defendants' claims of "inconvenience" based on some unspecified future desire to attend scheduling, discovery and other pretrial conferences are not supported by any evidence.[9] That omission appears particularly telling here given that Defendants Post, Ewing and Cole each travel extensively throughout the country as part of their work for CenturyLink, and the Company has at least two offices in Minnesota, one of which is located in Minneapolis merely a block away from the very court where Judge Davis sits. *See* Exs. B, C, & D. Indeed, the fact that the Company's attorneys—Washington, D.C.-based counsel at Cooley LLP—prefer to litigate these actions in two separate courts a thousand miles apart speaks volumes about Defendants' claims of inconvenience. In truth, transferring the Securities Actions to the Minnesota District Court would only reduce the burden on the parties.

C. The Location of Evidence Favors Coordination in Minnesota

Defendants also argue that Louisiana is "more convenient" because witnesses and documents concerning Defendants' scienter and false and misleading statements are located there. Again, Defendants are wrong.

While CenturyLink does not substantiate its claim that key evidence is located in Louisiana, the actual record confirms that critical evidence can be found in Minnesota. Indeed, Judge Davis will oversee discovery in the closely related Consumer Actions (which will centralize nationwide proceedings), and over 1,000 documents relevant to the Minnesota State Attorney

---

inconvenience becomes apparent, the transferee judge has it within his power to order the taking of depositions of defendants' personnel in their own locality").

[9] By contrast, Oregon has submitted an affidavit attesting to its representatives' commitment to overseeing the action, including by "attend[ing] hearings," in order to "achieve the best possible result for the class." ECF No. 47-2 at ¶¶11-13. Clearly, it is more convenient for Oregon's representatives to travel to Minneapolis (a three-hour flight that leaves at least four times from Portland per weekday) than to Monroe (which involves a six to eight-hour flight with at least one layover). *See* Blatchley Decl. at ¶2.

12

General's investigation of CenturyLink have already been produced and are now located in Minnesota. ECF No. 1-5 at 4.[10] In addition, at least two Company employees and 35 CenturyLink customers identified in the Minnesota Attorney General action are all potential witnesses in the Securities Actions. *Id*. at 7-17. The efficiencies to be gained by coordinating discovery between the private actions and the Minnesota Attorney General Action supports the Panel's decision to centralize the Consumer Actions in Minnesota in the first place, and equally supports centralization of the Securities Actions there as well.[11]

### D. The Securities and Consumer Actions Are Both At Their Nascent Stages

Defendants also try to create distance between the Consumer and Securities Actions by suggesting the cases are at different procedural stages. They are not. As Defendants have explained, the only events that have occurred in the Securities Actions are that Magistrate Judge Joseph H.L. Perez-Montes (i) consolidated the *Craig*, *Thummeti*, and *Scott* actions, (ii) denied a motion to continue the Securities Actions pending a ruling by the Panel on CTO-1, and (iii) appointed Oregon as Lead Plaintiff. No consolidated complaint has been filed, the parties have not yet agreed on the schedule for filing a complaint or briefing a motion to dismiss, and discovery is stayed.

---

[10] Oregon readily acknowledges that modern technologies render the location of documents largely irrelevant, but is compelled to clarify the record concerning the documents in Minnesota that Defendants ignore. *See, e.g.*, *Sarvint Techs., Inc. v. Omsignal, Inc.*, 161 F. Supp. 3d 1250, 1268 (N.D. Ga. 2015) ("the location of physical documents does not play a substantial role in the venue analysis due to electronic storage and transmission of information."); *Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant.").

[11] *See, e.g.*, *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 764 F. Supp. 2d 1343, 1345 (J.P.M.L. 2011) ("Centralization…will enable continued voluntary coordination between the Government action and the MDL No. 2221 actions"); *In re Med. Waste Servs. Antitrust Litig.*, 277 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003) (transferring in part because "the attorney general of the state investigated the alleged antitrust conduct at issue" in the transferee forum).

13

In the Consumer Actions, Judge Davis has scheduled an initial pretrial conference on December 14, 2017 that will address, among other things, a similar schedule for the filing of a consolidated complaint and briefing of any motion to dismiss. Ex. E at 7-8. In other words, the two sets of cases are in a nearly identical procedural posture, and the fact that both are in their early stages weighs in favor of centralization.[12]

        E.    The Benefits of Centralization Are Far From Incremental, Particularly in Light of the Difficulties of Voluntary or Informal Coordination

Last, in attempting to salvage their request that the cases be separated, Defendants argue that informal or voluntary coordination of the Consumer and Securities Actions will be sufficient. ECF No. 77-1 at 13. But Defendants' conduct to date belies this new claim.

Indeed, despite Oregon's efforts to move the action forward, Defendants in the Securities Actions have refused to agree on a schedule, explaining that they prefer to keep the Securities and Consumer Actions on separate and disparate tracks. *See* Ex. F. Moreover, Defendants previously represented that "informal coordination [between the Securities and Consumer Actions] would ***effectively be impossible***," and they have offered no new information to suggest that anything has changed. ECF No. 27 at 10. Although Oregon is committed to coordinating the actions and moving the litigation forward regardless of where the Securities Actions proceed, it is clear that formal centralization is needed for meaningful coordination to occur.

## IV.   CONCLUSION

For the reasons set forth herein, Oregon respectfully requests that Defendants' Motion to Vacate CTO-1 be denied.

---

[12] *Cf. In re Gov't Auto Fleet Sales*, 328 F. Supp. 218, 220 (J.P.M.L. 1971) (granting transfer and noting that it was "apparent that this litigation is in its early stages" even though some discovery had already taken place in one of the actions).

14

Dated: November 17, 2017

Respectfully submitted,

/s/ Michael D. Blatchley
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
michaelb@blbglaw.com

*Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund and Lead Counsel for the Class*

15