# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| INTER-MARKETING GROUP USA, INC., individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:17-cv-01648-RGJ-JPM ) |
| CENTURYLINK, INC., GLEN F. POST, III, R. STEWART EWING, JR., and DAVID D. COLE, | ) Judge Robert G. James ) ) Magistrate Judge Joseph H. L. Perez-Montes |
| Defendants, | ) ) ) |
| BENJAMIN CRAIG, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 3:17-cv-01005-SMH-JPM (Lead) ) Case No. 3:17-cv-01033-SMH-JPM (Member) ) Case No. 3:17-cv-01065-SMH-JPM (Member) |
| v. | ) ) Judge S. Maurice Hicks, Jr. |
| CENTURYLINK, INC., GLEN F. POST, III, and R. STEWART EWING, JR., | ) ) Magistrate Judge Joseph H. L. Perez-Montes |
| Defendants, | ) ) ) |

**MEMORANDUM OF LAW OF INTER-MARKETING
GROUP USA, INC. IN OPPOSITION TO MOTION OF OREGON FOR
<u>CONSOLIDATION OF RELATED ACTIONS</u>**

# TABLE OF CONTENTS

I.   PROCEDURAL HISTORY AND CHRONOLOGY OF EVENTS ..................................... 2

II.  ARGUMENTS AND AUTHORITIES ................................................................................ 6

    A.   The Separate Debt Action on Behalf of Bond Purchasers Is Proper ...................... 6

    B.   The Consolidation Requested by Oregon Would Substantially Prejudice CenturyLink's Bond Purchasers ................................................................................ 8

        1.   Oregon Critically Lacks Standing to Pursue Claims on Behalf of the Bond Purchasers ................................................................................................ 9

        2.   Oregon's Interests Conflict with the Interests of Bond Purchasers .......... 11

    C.   If Consolidated, the Court Should Appoint a Separate Lead Plaintiff and Separate Counsel to Represent Bond Purchasers ............................................................. 12

III. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Aguirre v. ISC Constructors, LLC*, 2015 WL 12748270 (E.D. Tex. Dec. 3, 2015) ....................... 9

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................................................ 12

*Craig v. CenturyLink Inc.*, 2017 WL 4768566 (W.D. La. Oct. 20, 2017) ...................... 1, 2, 3, 4, 5

*In re Ames Dep't Stores, Inc. Note Litig.*, 991 F.2d 968 (2d Cir. 1993) ....................................... 11

*In re BP, PLC Sec. Litig.*, 758 F.Supp.2d 428 (S.D. Tex. 2010) ................................................... 12

*In re Dynex, Inc. Sec. Litig.*, 2011 WL 781215 (S.D.N.Y. March 7, 2011) ................................. 11

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002) ............................................ 10, 11

*In re Enron Corp. Sec. Litig.*, 529 F. Supp. 2d 644 (S.D. Tex. 2006) ...................................... 9, 10

*In re One Bancorp Sec. Litig.*, 136 F.R.D. 526 (D. Me. 1991) ...................................................... 9

*In re Paracelsus Corp. Sec. Litig.*, 6 F.Supp.2d 626 (S.D.Tex.1998) ............................................ 9

*In re Select Comfort Corp. Sec. Litig.*, 2000 WL 35529101 (D. Minn. Jan. 27, 2000) ................. 7

*Johnson v. Manhattan Ry. Co.*, 289 U.S. 479 (1933) ..................................................................... 9

*McKenzie v. United States*, 678 F.2d 571 (5th Cir. 1982) .............................................................. 9

*Miller v. Ventro Corp.*, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ...................................... 12

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .......................................................................... 12

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .............................................................................. 8

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 CIV. 1898 (SAS), 2005 WL 1322721 (S.D.N.Y. June 1, 2005) ............................................................................ 6

**RULES**

Rule 42(a), Fed. R. Civ. P ............................................................................................................... 5

Inter-Marketing Group USA, Inc. ("IMG" or "Plaintiff") submits this Memorandum of Law in Opposition to the Motion of Oregon for Consolidation of Related Actions (Dkt No. 33).

Oregon Public Employee Retirement Fund ("Oregon") suffered millions of dollars of losses from transactions in CenturyLink, Inc. ("CenturyLink" or the Company") <u>common stock</u> and was appointed lead plaintiff in the Consolidated Equity Action.  No. 3:17-CV-01005, Dkt No. 80; *Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566 (W.D. La. Oct. 20, 2017). Oregon suffered <u>zero losses</u> from transactions in CenturyLink-issued <u>debt securities and has no discernible interest it prosecuting such claims</u>.  Nevertheless, counsel for Oregon, Bernstein Litowitz Berger & Grossman, LLP ("Bernstein Litowitz"), attempts to misuse the statutory dictates of the PSLRA to take control of IMG's claims in its separate action on behalf of prospective class members who purchased CenturyLink-issued corporate bonds, *i.e.,* CenturyLink's 7.60% Senior Notes (the "bonds" or "CenturyLink bonds").  This despite the fact that Bernstein Litowitz does not represent a client who purchased a bond in the debt issue in question or even suffered a loss on the purchase of a CenturyLink bond.

The deadline to file a motion to be appointed lead plaintiff in *Inter-Marketing Group USA, Inc. v. CenturyLink, et al.,* Case No. 3:17-cv-01648 (the "Debt Action") was December 26, 2017. Oregon could have moved for lead plaintiff in the Debt Action within that statutory deadline but did not do so for one obvious reason.  Having suffered <u>zero losses</u> from transactions in CenturyLink debt securities, Oregon has no standing to assert the alleged claims and has no argument for why it should be appointed lead plaintiff on behalf of purchasers of CenturyLink bonds.  Bernstein Litowitz's backdoor effort to capture and assert claims for every security (both equity and debt) issued by CenturyLink and traded during the Class Period—based solely on Oregon's CenturyLink common stock transactions—should be rejected.  Oregon has neither

1

standing to pursue, nor interest in pursuing, the bond claims alleged by IMG. It would be improper and prejudicial to permit Oregon to hijack the claims of CenturyLink's bond purchasers when Oregon literally has <u>zero</u> interest in, or standing to, pursue such claims.

Oregon's Motion to Consolidate should be denied. In the alternative, a structure should be put in place where purchasers of bonds and securities other than common stock are represented by plaintiffs with standing and incentive to pursue the claims alleged and with separate counsel focused on those claims.

## I.     PROCEDURAL HISTORY AND CHRONOLOGY OF EVENTS

The Consolidated Equity Action is comprised of three cases: *Thummeti v. CenturyLink, Inc.*, 3:17-cv-1065 (W.D. La.); *Craig v. CenturyLink, Inc.*, No. 3:17-cv-01005 (W.D. La.); and *Scott v. CenturyLink, Inc.*, 3:17-cv-01033 (W.D. La.). Oregon seeks to consolidate the Debt Action into these cases and assert control over IMG's bond claims.

Of the three equity actions, *Thummeti v. CenturyLink, Inc.*, was filed first, on June 21, 2017 (3:17-cv-1065, Dkt No. 1). The complaint alleges Section 10(b) Securities Exchange Act ("Exchange Act") claims on behalf of investors who purchased CenturyLink "securities" between February 27, 2014 and June 15, 2017, both dates inclusive. *Id.* at ¶1. Critically though, the complaint alleges only that investors were damaged when the truth about the Company's operations were revealed and the price of <u>CenturyLink's common stock fell $4.46 per share</u>. *Id.* at ¶6. Nowhere in the complaint is there mention of <u>any</u> of the Company's bond issues or any alleged damages to purchasers of CenturyLink's bonds. *See generally id.* Indeed, the plaintiff, Thummeti, purchased only common stock and, therefore, did not have standing to assert claims or damages on behalf of CenturyLink's bond purchasers. *Id.* Similarly, while the notice of the pending action published on *Globe Newswire* on June 21, 2017 by Pomerantz LLP, counsel for Thummeti, advised that the action was on behalf of investors who purchased CenturyLink

2

"securities," it made absolutely no mention of any CenturyLink security <u>other than common stock</u>. *See* No. 3:17-CV-01005, Dkt No. 28-5; *Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566, at *1. Specifically, the notice <u>exclusively</u> discussed how alleged corrective disclosures caused a decline in CenturyLink's <u>common stock</u> but provided no information whatsoever as to whether CenturyLink's bonds even suffered a decline in price following the alleged corrective disclosures. *Id.*

*Craig v. CenturyLink, Inc.,* No. 3:17-cv-01005, the lead case in the Consolidated Equity Action, was filed on June 22, 2017 (Dkt No. 1). The complaint alleges Section 10(b) claims on behalf of a class of investors who purchased CenturyLink <u>common stock</u> between March 1, 2013 and June 16, 2017, inclusive. Dkt No. 1 at ¶1; *Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566, at *1 (W.D. La. Oct. 20, 2017). Nowhere in the complaint was there mention of any of the Company's bond issues, and the plaintiff, Craig, purchased only common stock. *See* Dkt No. 1 at ¶1. Accordingly, the notice published by counsel referenced investors "who purchased or otherwise acquired <u>shares</u> of CenturyLink." *See* Declaration of William Federman in Support of Memorandum of Law of Inter-Marketing Group USA, Inc. in Opposition to Motion of Oregon for Consolidation of Related Cases ("Federman Decl.") at Ex. A, attached hereto as Exhibit 1.

*Scott v. CenturyLink, Inc.,* 3:17-cv-01033, the third consolidated case, was filed on August 15, 2017. Dkt No. 1. The complaint alleges claims on behalf purchasers of CenturyLink "securities." *Id.* However, here again, the complaint exclusively discussed alleged damages to common stock purchasers, and plaintiff, Scott, purchased only CenturyLink common stock. The notice published by counsel announced the securities class action on behalf of investors "who purchased <u>CenturyLink shares</u>." Dkt No. 28-6 (emphasis added). There was no mention, either

3

in the notice or the complaint, of the Company's bond issues. In fact, none of the notices referenced by Oregon in its brief, Def. Br. at 4-5, made mention of any debt security, only common stock.

On August 21, 2017, multiple competing lead plaintiffs, in what is now the Consolidated Equity Action, moved for consolidation and appointment as lead plaintiff. Eventually, four motions to appoint lead plaintiff filed by competing lead plaintiff movants came under consideration by the Court: KBC Asset Management NV ("KBC") (Doc. 25); the Police and Fire Retirement System of the City of Detroit and the Laborer's Pension Trust Fund–Detroit and Vicinity ("Detroit") (Doc. 26); the State of Oregon on behalf of the Oregon Public Employees Retirement Fund ("Oregon") (Doc. 28); and Amalgamated Bank, as Trustee for the Long View Collective Investment Fund ("Amalgamated Bank") (Doc. 29). *Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566, at *2 (W.D. La. Oct. 20, 2017). Of the four competing lead plaintiff movants, only Oregon purchased bonds (CenturyLink 6.8775% due 2033 and CenturyLink 5.625% due 2020). Dkt No. 28-4. Yet, Oregon claimed no losses from these bond purchases and in fact posted a $121,362.50 gain from its bond purchases.[1] *Id.*

On October 20, 2017, United States Magistrate Judge Joseph H.L. Perez-Montes appointed Oregon lead plaintiff in the Consolidated Equity Action. *Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566 (W.D. La. Oct. 20, 2017). While addressing whether Oregon's gains

---

[1] KBC argued these bond purchases disqualified Oregon in that "Oregon has a conflict of interest because it purchased CenturyLink bonds during the class period…[,] sold some of its bonds (1,615,000) for a small gain of $121,362.50, and still holds 2,420,000 CenturyLink bonds (Doc. 28-4)." *Craig*, at *5. KBC further argued that "Oregon should not be appointed Lead Plaintiff because it did not sustain a loss on its bonds, so it does not have standing to represent the bond-holders." *Id.*

4

in CenturyLink bonds rendered Oregon inadequate or atypical to serve as lead plaintiff on behalf of CenturyLink's stock purchasers, Judge Perez-Montes effectively acknowledged that Oregon lacked standing to represent CenturyLink's bond purchasers, stating:

> The fact that Oregon did not sustain a loss when it sold some of its CenturyLink bonds does not provide it with a "unique defense." <u>There is little difference between Oregon, who did not sustain a loss on its bonds, and a party who does not have any CenturyLink bonds at all–neither has sustained a loss on CenturyLink bonds, while both suffered losses on CenturyLink stock</u>.

*Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566, at *5 (W.D. La. Oct. 20, 2017) (emphasis added). Indeed, all competing lead plaintiff movants lack losses in bonds and therefore lack standing to pursue claims based on any security other than common stock. On November 3, 2017, KBC appealed the Magistrate's order. Dkt No. 87. The appeal is pending.

On October 25, 2017, Plaintiff IMG filed its putative securities class action lawsuit, *Inter-Marketing Group USA, Inc. v. CenturyLink, Inc., et. al.*, No. 3:17-cv-01648, on behalf of purchasers of CenturyLink's 7.60% Senior Notes against CenturyLink and certain of its officers, seeking remedies under the Exchange Act. Dkt No. 1 at ¶1. IMG alleged that when the truth about CenturyLink's operations were disclosed, the price of CenturyLink's 7.60% Senior Notes dropped to $92.61 on June 19, 2017 from its close of $98.43 on the previous trading day, a $5.82 (or 6%) drop, on heavy trading volume. *Id.* at ¶¶6-7. The notice issued by IMG's counsel, Federman & Sherwood, advised investors that "[t]he class action was filed on behalf of purchasers of CenturyLink's 7.60% Senior Notes, Series P, due 2039." *See* Ex. B to Federman Decl.

On December 21, 2017, Oregon filed its motion to consolidate this action with the Consolidated Equity Action.[2] Dkt No. 33. Oregon requests that the Court enter an Order: (1) consolidating *IMG* with the Consolidated Equity Action pursuant to Rule 42(a), Fed. R. Civ. P.; (2) striking the December 26, 2017 lead plaintiff deadline triggered by the notice of pendency of IMG, published October 25, 2017, a deadline that has long since passed; (3) declaring any motions seeking appointment as lead plaintiff filed in response to the IMG Notice untimely under the requirements of the PSLRA; and (4) requiring publication of a corrected notice clarifying that the lead plaintiff deadline in fact expired on August 21, 2017.

On December 26, 2017 (the lead plaintiff deadline in the *IMG* case), IMG moved for appointment as lead plaintiff over the Debt Action. *See* No. 3:17-cv-0164, Dkt Nos. 36-37, 44-45. IMG was the only movant and is the presumptive lead plaintiff. Specifically, IMG sought: (1) appointment as lead plaintiff on behalf of all persons who purchased or otherwise acquired CenturyLink's 7.60% Senior Notes, Series P, due 2039, during the period March 1, 2013 through June 19, 2017, inclusive; and (2) approving IMG's selection of Federman & Sherwood as Lead Counsel and Sangisetty Law Firm as Liaison Counsel for the Class.

## II. ARGUMENTS AND AUTHORITIES

### A. The Separate Debt Action on Behalf of Bond Purchasers Is Proper

Asserting dominion over IMG's bond claims, Oregon suggests that *IMG* is precluded by the statutory lead plaintiff provisions of the PSLRA. Oregon asserts that subsequently filed complaints alleging claims on behalf of "niche" investors cannot operate to restart the lead plaintiff process. Def. Br. at 8. However, where, as here, the claims alleged involve not only a new class

---

[2] When the Debt Action was pending in the Southern District of New York, Oregon filed a motion to intervene in the case. That motion was effectively mooted when the Debt Action was transferred to this Court where the Consolidated Equity Action was already pending.

6

of plaintiffs, but also <u>an entirely different security</u>, notice of the additional claims to investors is required. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* No. 05 CIV. 1898 (SAS), 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005).

In *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* the court summarized the state of the law on this matter:

> In cases encompassing <u>the same claims and securities</u>, but somewhat different class periods, courts have generally found that the efficiency cost of republication outweighs the marginal fairness gains of notifying class members of an extended class period. In such cases, most potential lead plaintiffs are probably eligible under either class period, and, at the very least, have been alerted to the pendency of a case <u>involving the securities they hold</u>, if not the exact period in which they held them. By contrast, where amendments include "entirely new factual and legal allegations against Plaintiffs, as to separate transactions, <u>affecting a new class of plaintiffs</u>," entire classes of potential lead plaintiffs are left out of the notice procedure.

*Id.* at 2 (emphasis added) (quoting *In re Select Comfort Corp. Sec. Litig.,* No. CIV.99 884 DSD/JMM, 2000 WL 35529101, at *7–8 (D. Minn. Jan. 27, 2000))*, report and recommendation adopted in part, rejected in part on other grounds,* No. CIV. 99-884 DSD/JMM, 2000 WL 36097395 (D. Minn. May 12, 2000) (district court finding magistrate judge was correct in dismissing claims where "the lead plaintiffs…added new claims and new allegations after their appointment as lead counsel" and faced "uncertainties about the[ir] standing…to bring claims under Section 11 and 15[,]" but that leave would be granted to replead and issue new notice pursuant to the "notice provisions of the PSLRA with respect to these new claims and class periods.").

That is the situation here. IMG asserts claims based on its purchases of CenturyLink's 7.60% Senior Notes, <u>an entirely different security</u>, than any of the securities purchased by Oregon or the other competing lead plaintiff movants or named plaintiffs in the Consolidated Equity

7

Action. Thus, the filing of IMG's complaint and the notice to purchasers of the CenturyLink bond was appropriate. *See Select Comfort,* 2000 WL 36097395, at *8-9 ("The PSLRA does not contemplate the unapproved addition of new claims or new classes of plaintiffs after separate cases are consolidated or after a lead plaintiff or plaintiffs are appointed.").

In *Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.,* a case featured in Oregon's brief, the court found untimely a renewed motion for lead plaintiff filed after the lead plaintiff deadline. No. 4:17-CV-00449, 2017 WL 3780164 (E.D. Tex. Aug. 31, 2017). Although the movant had filed a timely motion, the renewed motion, filed after the deadline, sought a longer but overlapping class period based on purportedly different factual allegations. *Id.* The court rejected movant's argument, finding that the claims the movant belatedly attempted to assert were essentially the same claims, based on the same security, with only a different class period:

> While the allegations are more expansive in the *Kim* and *Troll* Complaints, they are not entirely new legal or factual allegations nor do they include an entirely new class of securities. The new complaints changed the class period, but simply changing the class period does not necessitate a new notice be sent out.

*Id.* at *3 (citations omitted). The court recognized, however, that "[i]f a new complaint is filed that includes 'entirely new factual and legal allegations against [defendants], as to separate transactions, affecting a new class of Plaintiffs,' then a new notice and an additional sixty-day period is justified." *Id.* (emphasis added).

### B. The Consolidation Requested by Oregon Would Substantially Prejudice CenturyLink's Bond Purchasers

Oregon seeks not only consolidation of *IMG* with the Consolidated Equity Action for purposes of pretrial proceedings and discovery, but also control over IMG's claims. Such a consolidation would be extremely prejudicial to CenturyLink bond purchasers because (1) Oregon

8

lacks standing to maintain claims on behalf of bond purchasers, and (2) Oregon's interests conflict with the interests of the CenturyLink bond purchasers.

### 1. Oregon Critically Lacks Standing to Pursue Claims on Behalf of the Bond Purchasers

Oregon contends that by virtue of filing a lawsuit on behalf of a putative class of purchasers of CenturyLink "securities" and being appointed lead plaintiff in that action, Oregon controls every claim based on every CenturyLink-issued security traded during the Class Period. However, it is necessary to have a plaintiff with standing to pursue all claims alleged. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."); *In re Enron Corp. Sec. Litig.*, 529 F. Supp. 2d 644, 723 (S.D. Tex. 2006) ("[U]nder Fifth Circuit law, if a proposed class representative lacks standing, 'he or she may not seek relief on behalf of himself or herself or any other member of the class.' Standing, like class certification, must be determined as to each claim.") (citations omitted); *see, e.g., In re Paracelsus Corp. Sec. Litig.*, 6 F.Supp.2d 626, 631 (S.D.Tex.1998) (holding that plaintiffs who did not acquire any of the securities in a public notes offering lacked standing to assert claims under the Securities Act of 1933 on behalf of a class who did purchase those securities in that offering); *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 531 (D. Me. 1991) (limiting representation to purchasers of common stock because none of the plaintiffs owned any other securities). Yet importantly, even were consolidation of the Consolidated Equity Action and the Debt Action to occur, <u>such consolidation would not bestow Oregon with standing to pursue claims it does not possess</u>. *Aguirre v. ISC Constructors, LLC*, No. 1:14-CV-67, 2015 WL 12748270, at \*2 (E.D. Tex. Dec. 3, 2015) ("The Supreme Court has held that consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single

9

cause, change the rights of the parties, or make those who are parties in one suit parties in another.") (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97, (1933)); *see also McKenzie v. United States*, 678 F.2d 571 (5th Cir. 1982) ("[C]onsolidation does not cause one civil action to emerge from two; the actions do not lose their separate identity; the parties to one action do not become parties to the other.").

Thus, consolidating the actions and appointing a stock purchaser who does not have standing to pursue claims on behalf of bond purchasers to act as lead plaintiff over the bond purchasers' claims does not protect the interests of bond investors who have been damaged by the alleged fraud. Indeed, such a consolidation would create a substantial risk that the claims on behalf of the CenturyLink bond purchasers will be foreclosed, via claim or issue preclusion or statute of limitations, without any recovery to the bond purchasers. Specifically, because Oregon lacks the standing to pursue the claims, the claims may well go unraised by Oregon, leaving CenturyLink's bond purchasers with no recovery and no means of redress. This would be a wholly unjust and prejudicial outcome, particularly since bond purchaser IMG has come forward, filed its own action, and moved to be appointed lead plaintiff of that action in compliance with the PSLRA.

Indeed, even in *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427 (S.D. Tex. 2002), a case featured by Oregon, the court ultimately denied class certification for claims of investors in foreign debt securities where "Lead Plaintiff did not purchase any of the Foreign Debt Securities and has not named a viable class representative who did who thus would have standing to represent class members who purchased any of the Foreign Debt Securities even for claims under § 10(b)." *In re Enron Corp. Sec. Litig.,* 529 F. Supp. 2d 644, 723-24 (S.D. Tex. 2006). Unlike in our case, standing was apparently not raised as a major point of contention at the consolidation stage since

10

it was referenced only once in the lengthy order and even then in passing. *See In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 446-47 (S.D. Tex. 2002).[3]

While Oregon points to the fact that it included bond purchases in the loss analysis it submitted in connection with its motion for lead plaintiff, that inclusion means nothing here because Oregon suffered <u>zero</u> losses (*i.e.*, injury) on the bonds. Nor did any of the named plaintiffs or even the disappointed lead plaintiff movants in the Consolidated Equity Action. They all lack standing to pursue bond claims, plain and simple.

### 2. Oregon's Interests Conflict with the Interests of Bond Purchasers

While there are some common questions of law or fact between the Consolidated Equity Action and the Debt Action, there are also important differences and conflicts of interest.

<u>First</u>, there are general conflicts among the members of the CenturyLink bond class and members of the common stock class. Notably, the market for stocks responds to different news than the market for notes/bonds. For instance, what primarily matters to debt investors "is that the company meet its obligations on the debt instrument when due. In contrast, investors in equity securities generally are concerned with a company's earning prospects since equity securities usually trade, to a greater extent, on a company's earnings outlook." *In re Ames Dep't Stores, Inc. Note Litig.*, 991 F.2d 968, 980 (2d Cir. 1993). Indeed, here, because of the differences in market movements, the corrective disclosures alleged in the actions are different. The Debt Action alleges a single corrective disclosure and price drop on June 19, 2017, whereas the Consolidated Equity Action alleges two partial corrective disclosures and price drops. *Compare* No. 3:17-cv-1005, Dkt No. 1 paragraphs 45-47 *with* No. 3:17-cv-01648, Dkt No. 1 at paragraphs 81-83. Moreover, the

---

[3] Moreover, unlike here, the court was faced with the daunting prospect of appointing lead plaintiffs for literally "hundreds of classes or subclasses … [which would] obstruct any efficient and controlled progress." *Id.* at 451.

11

market efficiency inquiry, a key factor at the class certification stage in securities class actions, will differ significantly between CenturyLink's stocks and the CenturyLink bonds since they were two distinct markets that responded to different news events. *See In re Dynex, Inc. Sec. Litig.,* 2011 WL 781215, at *4 (S.D.N.Y. March 7, 2011) (recognizing different characteristics between stocks and bonds when considering market efficiency at class certification stage). These differences make the case appropriate for separate litigation. Indeed, these differences could result in substantial prejudice to bond purchasers, particularly if CenturyLink's bond purchasers lack a plaintiff or representative with a stake in preserving their claims.

Second, there are specific conflicts among Oregon and CenturyLink bond purchasers. Because Oregon realized no losses from CenturyLink bonds (and in fact realized a gain from those bonds), Oregon has zero financial interest in pursuing claims on behalf of bond purchasers. In fact, to the precise contrary, Oregon is financially incentivized to allocate resources and any potential recovery (*e.g.*, settlement funds) predominately, if not exclusively, to the benefit of common stock purchasers (the security in which Oregon experienced losses) while allocating little or even no resources or recovery to CenturyLink bond purchasers. Thus, Oregon's financial interests conflict with the interests of bond purchasers and would have Oregon act in a manner that is contrary to the interests of CenturyLink bond purchasers.

### C. If Consolidated, the Court Should Appoint a Separate Lead Plaintiff and Separate Counsel to Represent Bond Purchasers

If consolidation is ordered, the Court should designate a separate lead plaintiff for the bond purchasers (here IMG) with separate legal representation (here Federman & Sherwood).

The Court is required to insure that independent classes with conflicts are protected by subdivision and separate representation. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999); *Amchem Prods. v. Windsor*, 521 U.S. 591, 626–27 (1997). For this reason, securities class actions

12

involving both stock purchasers and note purchasers are frequently consolidated such that they proceed on parallel tracks with different lead plaintiffs and lead counsel. *See, e.g., In re BP, PLC Sec. Litig.*, 758 F.Supp.2d 428, 440- (S.D. Tex. 2010) (collecting cases) (appointing subclass of investors with separate lead plaintiff and representation where competing lead plaintiff movants' claims rested on different legal theories and such differences gave rise to a substantial risk of conflict with the interests of other class members); *Miller v. Ventro Corp.,* No. 01-CV-1287, 2001 WL 34497752, at *11 (N.D. Cal. Nov. 28, 2001) (finding it "appropriate to appoint a bondholder as co-lead plaintiff in addition to a stockholder" where "[t]he bondholder representative shall be a part of a group of co-lead plaintiffs," "[i]n situations in which the bondholders interests are separate and independent of the stockholders interests, the bondholder representative shall have the final decision-making authority for those issues," "[e]qually, the stockholder representative shall have the final decision-making authority for issues concerning only the stockholders" and "[i]n all other situations, the co-lead plaintiffs shall make decisions by consensus.").

Accordingly, contrary to Oregon's proposed form of consolidation, any consolidation of the Debt Action with the Consolidated Equity Action should permit the actions to proceed on parallel tracks with IMG to remain as lead plaintiff and Federman & Sherwood as lead counsel on behalf of the bond purchasers, respectively. *See, e.g., Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, No. 13395 (E.D. La.) (Dkt No. 77 and generally) (consolidating common stock and bond securities class action cases but allowing cases to proceed on parallel tracks with separate lead plaintiffs and counsel).

## III.   CONCLUSION

For the foregoing reasons, IMG respectfully requests that the Court deny Oregon's motion to consolidate and allow the actions brought on behalf of different classes to proceed independently. Alternatively, IMG respectfully requests that if consolidation is ordered, the Court

13

should designate IMG as lead plaintiff for the bond purchasers and Federman & Sherwood as legal counsel for the bond purchasers while permitting the actions to proceed on parallel tracks.

Dated: January 11, 2018						Respectfully submitted,

*s/William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com
-and-
2926 Maple Ave., Suite 200
Dallas, TX  75201

*Counsel for Plaintiff IMG and Proposed Lead Counsel for the Bond Purchaser Class*


*s/Ravi Sangisetty*
Ravi Sangisetty
Sangisetty Law Firm
935 Gravier Street, Suite 835
New Orleans, LA 70112
(504) 662-1004
rks@sangisettylaw.com

*Counsel for Plaintiff IMG and Proposed Liaison Counsel for the Bond Purchaser Class*

14

## **CERTIFICATE OF SERVICE**

This is to certify that on January 11, 2018, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the counsel of record.

*s/William B. Federman*
William B. Federman