# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION<br><br><br>This document relates to<br><br>Civil File No. 18-296 (MJD/KMM)<br>Civil File No. 18-297 (MJD/KMM)<br>Civil File No. 18-298 (MJD/KMM)<br>Civil File No. 18-299 (MJD/KMM) | MDL No. 17-2795 (MJD/KMM)<br><br><br>**MEMORANDUM OF LAW OF INTER-MARKETING GROUP USA, INC. IN OPPOSITION TO MOTION OF OREGON FOR CONSOLIDATION OF RELATED ACTIONS** |

# <u>TABLE OF CONTENTS</u>

I.    PROCEDURAL HISTORY AND CHRONOLOGY OF EVENTS ............................ 2

II.   ARGUMENTS AND AUTHORITIES ....................................................................... 7

    A.    The Separate Debt Action on Behalf of Bond Purchasers Is Proper............ 7

    B.    The Consolidation Requested by Oregon Would Substantially Prejudice CenturyLink's Bond Purchasers................................................................. 10

        1.    Oregon Critically Lacks Standing to Pursue Claims on Behalf of the Bond Purchasers ............................................................................. 10

        2.    Oregon's Interests Conflict with the Interests of Bond Purchasers . 12

    C.    If Consolidated, the Court Should Appoint a Separate Lead Plaintiff and Separate Counsel to Represent Bond Purchasers ........................................ 14

III.  CONCLUSION ......................................................................................................... 15

## **TABLE OF AUTHORITIES**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 14

*Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
94 F. Supp. 3d 1035 (D. Minn. 2015)............................................................ 11

*Briggs v. Anderson*,
796 F.2d 1009 (8th Cir. 1986) ...................................................................... 11

*Craig v. CenturyLink Inc.*,
No. 3:17-CV-01005, 2017 WL 4768566 (W.D. La. Oct. 20, 2017) .................... passim

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)....................................................................................... 11

*DeGraffenreid v. General Motors Assembly Division, St. Louis*,
558 F.2d 480 (8th Cir. 1977) ........................................................................ 11

*Foreman v. Heineman*,
240 F.R.D. 456 (D. Neb. 2006) ..................................................................... 10

*Hall v. LHACO, Inc.*,
140 F.3d 1190 (8th Cir. 1998) ...................................................................... 10

*In re Ames Dep't Stores, Inc. Note Litig.*,
991 F.2d 968 (2d Cir. 1993) .......................................................................... 13

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ........................................................... 14

*In re Dynex, Inc. Sec. Litig.*,
2011 WL 781215 (S.D.N.Y. March 7, 2011) ................................................. 13

*In re Nw. Corp. Sec. Litig.*,
299 F. Supp. 2d 997 (D.S.D. 2003) ................................................................. 9

*In re One Bancorp Sec. Litig.*,
136 F.R.D. 526 (D. Me. 1991)....................................................................... 10

*In re Paracelsus Corp. Sec. Litig.,*
    6 F.Supp.2d 626 (S.D.Tex. 1998) ................................................................... 10

*In re Select Comfort Corp. Sec. Litig.,*
    No. CIV.99 884 DSD/JMM, 2000 WL 35529101 (D. Minn. Jan. 27, 2000) ................. 8

*Johnson v. Manhattan Ry. Co.,*
    289 U.S. 479, (1933) ................................................................................. 11

*Larson v. Larson,*
    624 F. Supp. 1119 (D.N.D. 1986) ................................................................. 11

*Miller v. Ventro Corp.,* No. 01-CV-1287,
    2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ............................................... 15

*Ortiz v. Fiberboard Corp.,*
    527 U.S. 815 (1999) ................................................................................... 14

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ............................................................................... 10

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
    2005 WL 1322721 (S.D.N.Y. June 1, 2005) .................................................... 7

Inter-Marketing Group USA, Inc. ("IMG" or "Plaintiff") submits this Memorandum of Law in Opposition to the Motion of Oregon for Consolidation of Related Actions (Dkt No. 33).

Oregon Public Employee Retirement Fund ("Oregon") suffered millions of dollars of losses from transactions in CenturyLink, Inc. ("CenturyLink" or the "Company") common stock and was appointed lead plaintiff in the Consolidated Equity Action. *See Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566 (W.D. La. Oct. 20, 2017). Oregon suffered zero losses from transactions in CenturyLink-issued debt securities and has no discernible interest in prosecuting such claims. Nevertheless, counsel for Oregon, Bernstein Litowitz Berger & Grossman, LLP ("Bernstein Litowitz"), attempts to misuse the statutory dictates of the PSLRA to take control of IMG's claims in its separate action on behalf of prospective class members who purchased CenturyLink-issued corporate bonds, *i.e.,* CenturyLink's 7.60% Senior Notes (the "bonds" or "CenturyLink bonds"). This despite the fact that Bernstein Litowitz does not represent a client who purchased a bond in the debt issue in question or even suffered a loss on the purchase of a CenturyLink bond.

The deadline to file a motion to be appointed lead plaintiff in *Inter-Marketing Group USA, Inc. v. CenturyLink, et al.,* Case No. 3:17-cv-01648, now Case No. 0:18-cv-00299-MJD-KMM, (the "Debt Action") was December 26, 2017. Following the case's transfer from the Western District of Louisiana to this Court, a second deadline to file a motion to be appointed lead plaintiff of the Debt Action was set for February 27, 2018. Oregon could have moved for lead plaintiff in the Debt Action within that statutory deadline, or attempted

to do so even by the second deadline; however, Oregon did not file a motion to be appointed lead plaintiff in the Debt Action for one obvious reason. Having suffered <u>zero losses</u> from transactions in CenturyLink debt securities, Oregon has no standing to assert the alleged claims and has no argument for why it should be appointed lead plaintiff on behalf of purchasers of CenturyLink bonds. Bernstein Litowitz's backdoor effort to capture and assert claims for every security (both equity and debt) issued by CenturyLink and traded during the Class Period—based solely on Oregon's CenturyLink common stock transactions—should be rejected. Oregon has neither standing to pursue, nor interest in pursuing, the bond claims alleged by IMG. It would be improper and prejudicial to permit Oregon to hijack the claims of CenturyLink's bond purchasers when Oregon literally has <u>zero</u> interest in, or standing to, pursue such claims.

Oregon's Motion to Consolidate should be denied. In the alternative, a structure should be put in place where purchasers of bonds and securities other than common stock are represented by plaintiffs with standing and incentive to pursue the claims alleged and with separate counsel focused on those claims.

## I.  <u>PROCEDURAL HISTORY AND CHRONOLOGY OF EVENTS</u>

The Consolidated Equity Action is comprised of three cases: *Thummeti v. CenturyLink, Inc.,* Case No. 0:18-cv-00298; *Craig v. CenturyLink, Inc.,* Case No. 0:18-cv-00296; and *Scott v. CenturyLink, Inc.,* Case No. 0:18-cv-00297. Oregon seeks to consolidate the Debt Action into these cases and assert control over IMG's bond claims.

Of the three equity actions, *Thummeti v. CenturyLink, Inc.,* was filed first, on June 21, 2017 (Case No. 0:18-cv-00298-MJD-KMM, Dkt No. 1). The complaint alleges Section

10(b) Securities Exchange Act ("Exchange Act") claims on behalf of investors who purchased CenturyLink "securities" between February 27, 2014 and June 15, 2017, both dates inclusive. *Id.* at ¶1. Critically though, the complaint alleges only that investors were damaged when the truth about the Company's operations were revealed and the price of CenturyLink's common stock fell $4.46 per share. *Id.* at ¶6. Nowhere in the complaint is there mention of any of the Company's bond issues or any alleged damages to purchasers of CenturyLink's bonds. *See generally id.* Indeed, the plaintiff, Thummeti, purchased only common stock and, therefore, did not have standing to assert claims or damages on behalf of CenturyLink's bond purchasers. *Id.* Similarly, while the notice of the pending action published on *Globe Newswire* on June 21, 2017 by Pomerantz LLP, counsel for Thummeti, advised that the action was on behalf of investors who purchased CenturyLink "securities," it made absolutely no mention of any CenturyLink security other than common stock. *See* Affidavit of William Federman in Support of Inter-Marketing Group USA, Inc.'s Opposition to Motion of Oregon for Consolidation of Related Cases ("Federman Aff.") at Ex. 1, filed contemporaneously herewith. Specifically, the notice exclusively discussed how alleged corrective disclosures caused a decline in CenturyLink's common stock but provided no information whatsoever as to whether CenturyLink's bonds even suffered a decline in price following the alleged corrective disclosures. *Id.*

*Craig v. CenturyLink, Inc.,* the lead case in the Consolidated Equity Action, was filed on June 22, 2017 (Case No. 0:18-cv-00296-MJD-KMM, Dkt No. 1). The complaint alleges Section 10(b) claims on behalf of a class of investors who purchased CenturyLink common stock between March 1, 2013 and June 16, 2017, inclusive. Dkt No. 1 at ¶1; *Craig*

*v. CenturyLink Inc.,* No. 3:17-cv-01005, 2017 WL 4768566, at *1 (W.D. La. Oct. 20, 2017). Nowhere in the complaint was there mention of any of the Company's bond issues, and the plaintiff, Craig, purchased only common stock. *See* Dkt No. 1 at ¶1. Accordingly, the notice published by counsel referenced investors "who purchased or otherwise acquired <u>shares</u> of CenturyLink." *See* Federman Aff. at Ex. 2.

*Scott v. CenturyLink, Inc.,* the third consolidated case, was filed on August 15, 2017 (Case No. 0-18-cv-00297-MJD-KMM, Dkt No. 1). The complaint alleges claims on behalf purchasers of CenturyLink "securities." *Id.* However, here again, the complaint exclusively discussed alleged damages to common stock purchasers, and plaintiff, Scott, purchased only CenturyLink common stock. The notice published by counsel announced the securities class action on behalf of investors "who purchased <u>CenturyLink shares</u>." *See* Federman Aff. at Ex. 3 (emphasis added). There was no mention, either in the notice or the complaint, of the Company's bond issues. In fact, <u>none</u> of the notices referenced from the Consolidated Equity Action made mention of any debt security, only common stock.

On August 21, 2017, multiple competing lead plaintiffs, in what is now the Consolidated Equity Action, moved for consolidation and appointment as lead plaintiff. Eventually, four motions to appoint lead plaintiff filed by competing lead plaintiff movants came under consideration by the Court: KBC Asset Management NV ("KBC"); the Police and Fire Retirement System of the City of Detroit and the Laborer's Pension Trust Fund– Detroit and Vicinity ("Detroit"); the State of Oregon on behalf of the Oregon Public Employees Retirement Fund ("Oregon"); and Amalgamated Bank, as Trustee for the Long View Collective Investment Fund ("Amalgamated Bank"). *Craig v. CenturyLink Inc.,* No.

4

3:17-CV-01005, 2017 WL 4768566, at *2 (W.D. La. Oct. 20, 2017). Of the four competing lead plaintiff movants, only Oregon purchased bonds (CenturyLink 6.8775% due 2033 and CenturyLink 5.625% due 2020). *See* Ex. 4 to Federman Aff. Yet, Oregon claimed <u>no losses</u> from these bond purchases and in fact posted a <u>$121,362.50 gain from its bond purchases</u>.[1] *Id.*

On October 20, 2017, United States Magistrate Judge Joseph H.L. Perez-Montes appointed Oregon lead plaintiff in the Consolidated Equity Action. *Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566 (W.D. La. Oct. 20, 2017). While addressing whether Oregon's gains in CenturyLink bonds rendered Oregon inadequate or atypical to serve as lead plaintiff on behalf of CenturyLink's stock purchasers, Judge Perez-Montes effectively acknowledged that Oregon lacked standing to represent CenturyLink's bond purchasers, stating:

> The fact that Oregon did not sustain a loss when it sold some of its CenturyLink bonds does not provide it with a "unique defense." <u>There is little difference between Oregon, who did not sustain a loss on its bonds, and a party who does not have any CenturyLink bonds at all–neither has sustained a loss on CenturyLink bonds, while both suffered losses on CenturyLink stock</u>.

*Craig v. CenturyLink Inc.,* No. 3:17-CV-01005, 2017 WL 4768566, at *5 (W.D. La. Oct.

---

[1] KBC argued these bond purchases disqualified Oregon in that "Oregon has a conflict of interest because it purchased CenturyLink bonds during the class period…[,] sold some of its bonds (1,615,000) for a small gain of $121,362.50, and still holds 2,420,000 CenturyLink bonds." *Craig*, 2017 WL 4768566, at *5. KBC further argued that "Oregon should not be appointed Lead Plaintiff because it did not sustain a loss on its bonds, so it does not have standing to represent the bond-holders." *Id.*

20, 2017) (emphasis added). Indeed, all competing lead plaintiff movants lack losses in bonds and therefore lack standing to pursue claims based on any security other than common stock. On November 3, 2017, KBC appealed the Magistrate's order. The appeal is pending.

On October 25, 2017, Plaintiff IMG filed its putative securities class action lawsuit, *Inter-Marketing Group USA, Inc. v. CenturyLink, Inc., et. al.*, Case No. 0:18-cv-00299-MJD-KMM, on behalf of purchasers of CenturyLink's 7.60% Senior Notes against CenturyLink and certain of its officers, seeking remedies under the Exchange Act. Dkt No. 1 at ¶1. IMG alleged that when the truth about CenturyLink's operations were disclosed, the price of CenturyLink's 7.60% Senior Notes dropped to $92.61 on June 19, 2017 from its close of $98.43 on the previous trading day, a $5.82 (or 6%) drop, on heavy trading volume. *Id.* at ¶¶6-7. The notice issued by IMG's counsel, Federman & Sherwood, advised investors that "[t]he class action was filed on behalf of purchasers of CenturyLink's 7.60% Senior Notes, Series P, due 2039." *See* Ex. 5 to Federman Aff.

On December 26, 2017 (the lead plaintiff deadline in the *IMG* case), IMG moved for appointment as lead plaintiff over the Debt Action. <u>IMG was the only movant and is the presumptive lead plaintiff</u>. Specifically, IMG sought: (1) appointment as lead plaintiff on behalf of all persons who purchased or otherwise acquired CenturyLink's 7.60% Senior Notes, Series P, due 2039, during the period March 1, 2013 through June 19, 2017, inclusive; and (2) approving IMG's selection of Federman & Sherwood as Lead Counsel for the Class.

6

On February 1, 2018, the Consolidated Equity Action and the Debt Action were transferred to this Court by the MDL Panel. Case No. 0:17-md-02795, Dkt. No. 26. Following the transfer, this Court ordered that certain motions be re-filed by February 27, 2018, including IMG's motion to appoint of lead plaintiff and approve lead plaintiff's selection of lead counsel of the Debt Action, and Oregon's motion to consolidate IMG's Debt Action with the Consolidated Equity Action. Case No. 0:18-cv-00299, Dkt. No. 75.

On February 27, 2018, IMG filed its motion to appoint lead plaintiff and approve lead plaintiff's selection of lead counsel of the Debt Action. Case No. 0:18-cv-00299, Dkt. No. 83. On February 27, 2018, Oregon filed its motion to consolidate IMG's Debt Action with the Consolidated Equity Action. Case No. 0:18-cv-00299, Dkt. No. 87.

## II.    ARGUMENTS AND AUTHORITIES

### A.    The Separate Debt Action on Behalf of Bond Purchasers Is Proper

Asserting dominion over IMG's bond claims, Oregon suggests that *IMG* is precluded by the statutory lead plaintiff provisions of the PSLRA. Oregon asserts that subsequently filed complaints alleging claims on behalf of "niche" investors are improper. Oregon Br. at 11. However, where, as here, the claims alleged involve not only a new class of plaintiffs, but also <u>an entirely different security</u>, "<u>affecting a new class of plaintiffs</u>," notice of the additional claims to investors is required. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005); *see Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) ("If a new complaint is filed . . . as to separate transactions, affecting a new class of Plaintiffs,' then a new notice and an additional sixty-day period is justified.")

(emphasis added); *see also In re Select Comfort Corp. Sec. Litig.,* No. CIV.99 884 DSD/JMM, 2000 WL 35529101, at *7-8 (D. Minn. Jan. 27, 2000))*, report and recommendation adopted in part, rejected in part on other grounds,* No. CIV. 99-884 DSD/JMM, 2000 WL 36097395 (D. Minn. May 12, 2000) (district court finding magistrate judge was correct in dismissing claims where "the lead plaintiffs…added new claims and new allegations after their appointment as lead counsel" and faced "uncertainties about the[ir] standing…to bring claims under Section 11 and 15[,]" but that leave would be granted to replead and issue new notice pursuant to the "notice provisions of the PSLRA with respect to these new claims and class periods.").

Because IMG asserts claims based on its purchases of CenturyLink's 7.60% Senior Notes, <u>an entirely different security</u> than any of the securities purchased by Oregon or the other competing lead plaintiff movants or named plaintiffs in the Consolidated Equity Action, the filing of IMG's complaint and the notice to purchasers of the CenturyLink bonds were appropriate. *See Select Comfort,* 2000 WL 36097395, at *8-9 ("The PSLRA does not contemplate the unapproved addition of new claims or new classes of plaintiffs after separate cases are consolidated or after a lead plaintiff or plaintiffs are appointed."). IMG has fully complied with the PSLRA in seeking to redress claims on behalf of CenturyLink bond purchasers.

The only case within the Eighth Circuit cited by Oregon to support its proposition is a district court case from South Dakota, where the court stated:

> While it may be favorable, it is not a requirement that a lead plaintiff under the PSLRA suffer losses on each type of security that may be at issue in the class action. "The purpose of the lead plaintiff section of the PSLRA was

> never to do away with the notion of class representatives or named plaintiffs in securities class actions. Rather, the purpose was to ensure that securities litigation was investor-driven, as opposed to lawyer-driven."

*In re Nw. Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1007 (D.S.D. 2003) (citations omitted). However, the issue before this Court is <u>not</u> the appointment of lead plaintiff. Nothing about IMG's action on behalf of a separately harmed class of investors disrupts Oregon's role as lead plaintiff in the Consolidated Equity Action. Instead, it is Oregon that has inserted itself into IMG's case and is attempting to commandeer the Debt Action despite having absolutely <u>no</u> standing or interest in maintaining the bond claims. Thus, while Oregon cites *In re Nw. Corp. Sec. Litig.* for its discussion of the PSLRA's goal of curtailing lawyer-driven litigation, here it is Oregon's counsel, Bernstein Litowitz, that is seeking "lawyer-driven" control of claims for which its client, Oregon, has <u>no</u> standing or interest. While Oregon has purportedly identified a class representative who purchased CenturyLink bonds, Oregon has not chosen to share his/her/its identity and/or trading information with either the Court or IMG. In *In re Nw. Corp. Sec. Litig.*, Carpenters Group had already filed an amended complaint with named plaintiffs that had standing to pursue the claims of the other securities. *Id*. at 1005. Thus, the district court order in *In re Nw. Corp. Sec. Litig.* is inapposite and unpersuasive since, in that case, the court determined appointment of lead plaintiff not consolidation, the court cited no Eighth Circuit authority in support of its conclusions, and the court had already been presented with named plaintiffs with standing to pursue the other claims. *Id*.

### B.    The Consolidation Requested by Oregon Would Substantially Prejudice CenturyLink's Bond Purchasers

Oregon seeks not only consolidation of *IMG* with the Consolidated Equity Action for purposes of pretrial proceedings and discovery, but also control over IMG's claims. Such a consolidation would be extremely prejudicial to CenturyLink bond purchasers because (1) Oregon lacks standing to maintain claims on behalf of bond purchasers, and (2) Oregon's interests conflict with the interests of the CenturyLink bond purchasers.

### 1.    Oregon Critically Lacks Standing to Pursue Claims on Behalf of the Bond Purchasers

Oregon contends that by virtue of filing a lawsuit on behalf of a putative class of purchasers of CenturyLink "securities" and being appointed lead plaintiff in that action, Oregon controls every claim based on every CenturyLink-issued security traded during the Class Period.  However, it is necessary to have a plaintiff with standing to pursue all claims alleged.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."); *Foreman v. Heineman*, 240 F.R.D. 456, 510 (D. Neb. 2006) ("A named party 'is not a proper representative of the class where he himself lacks standing to pursue the claim.'") (quoting *Hall v. LHACO, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998)); *see, e.g., In re Paracelsus Corp. Sec. Litig.,* 6 F.Supp.2d 626, 631 (S.D.Tex. 1998) (holding that plaintiffs who did not acquire any of the securities in a public notes offering lacked standing to assert claims under the Securities Act of 1933 on behalf of a class who did purchase those securities in that offering); *In re One Bancorp Sec. Litig.,* 136 F.R.D. 526, 531 (D. Me. 1991) (limiting

representation to purchasers of common stock because none of the plaintiffs owned any other securities). Thus, in *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035 (D. Minn. 2015), the court dismissed plaintiffs' Section 11 claims for failure to plead that their shares were traceable to the secondary offering, holding that "'[a] plaintiff must demonstrate standing for each claim he seeks to press.'" *Id.* at 1058 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006)).

Importantly, even were consolidation of the Consolidated Equity Action and the Debt Action to occur, <u>such consolidation would not bestow Oregon with standing to pursue claims it does not possess.</u> *Briggs v. Anderson*, 796 F.2d 1009, 1018 (8th Cir. 1986) ("We have recognized that 'consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another'") (citing *DeGraffenreid v. General Motors Assembly Division, St. Louis*, 558 F.2d 480, 486 (8th Cir. 1977)); *see also Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97, (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."); *Larson v. Larson*, 624 F. Supp. 1119, 1121 (D.N.D. 1986) ("Consolidation does not merge the suits into a single cause; the actions do not lose their separate identity because of consolidation.").

Thus, consolidating the actions and appointing a stock purchaser who does not have standing to pursue claims on behalf of bond purchasers to act as lead plaintiff over the bond purchasers' claims <u>does not</u> protect the interests of bond investors who have been damaged

11

by the alleged fraud.  Indeed, such a consolidation would create a substantial risk that the claims on behalf of the CenturyLink bond purchasers will be foreclosed, via claim or issue preclusion or statute of limitations, without any recovery to the bond purchasers. Specifically, because Oregon lacks the standing to pursue the claims, the claims may well go unraised by Oregon, leaving CenturyLink's bond purchasers with no recovery and no means of redress.  This would be a wholly unjust and prejudicial outcome, particularly since bond purchaser IMG has come forward, filed its own action, and moved to be appointed lead plaintiff of that action in compliance with the PSLRA.

While Oregon asserts that it has "identified an investor in the 7.60% Senior Notes to serve as a named plaintiff in the consolidated complaint Oregon intends to file" (Oregon Br. at 12), Oregon has twice failed to file for lead plaintiff of the bond claims on this unknown investor's behalf, and Oregon has consistently failed to provide any information about this supposed investor to the Court or to IMG.   The fact remains that Oregon suffered _zero_ losses (_i.e._, injury) on the bonds.  Nor did any of the named plaintiffs or even the disappointed lead plaintiff movants in the Consolidated Equity Action.  They all lack standing to pursue bond claims, plain and simple.  Oregon has further failed to present an investor that does have standing to maintain the bond claims.

### 2.    Oregon's Interests Conflict with the Interests of Bond Purchasers

While there are some common questions of law or fact between the Consolidated Equity Action and the Debt Action, there are also important differences and conflicts of interest.

First, there are general conflicts among the members of the CenturyLink bond class and members of the common stock class.  Notably, the market for stocks responds to different news than the market for notes/bonds.  For instance, what primarily matters to debt investors "is that the company meet its obligations on the debt instrument when due. In contrast, investors in equity securities generally are concerned with a company's earning prospects since equity securities usually trade, to a greater extent, on a company's earnings outlook."  *In re Ames Dep't Stores, Inc. Note Litig.*, 991 F.2d 968, 980 (2d Cir. 1993). Indeed, here, because of the differences in market movements, the corrective disclosures alleged in the actions are different.  The Debt Action alleges a single corrective disclosure and price drop on June 19, 2017, whereas the Consolidated Equity Action alleges two partial corrective disclosures and price drops.  *Compare* No. 0:18-cv-00296, Dkt. No. 1 paragraphs 45-47 *with* No. Case No. 0:18-cv-00299, Dkt. No. 1 at paragraphs 81-83. Moreover, the market efficiency inquiry, a key factor at the class certification stage in securities class actions, will differ significantly between CenturyLink's stocks and the CenturyLink bonds since they were two distinct markets that responded to different news events. *See In re Dynex, Inc. Sec. Litig.,* 2011 WL 781215, at *4 (S.D.N.Y. March 7, 2011) (recognizing different characteristics between stocks and bonds when considering market efficiency at class certification stage).  These differences make the case appropriate for separate litigation.  Indeed, these differences could result in substantial prejudice to bond purchasers, particularly if CenturyLink's bond purchasers lack a plaintiff or representative with a stake in preserving their claims.

13

Second, there are specific conflicts among Oregon and CenturyLink bond purchasers. Because Oregon realized no losses from CenturyLink bonds (and in fact realized a gain from those bonds), Oregon has zero financial interest in pursuing claims on behalf of bond purchasers. In fact, to the precise contrary, Oregon is financially incentivized to allocate resources and any potential recovery (*e.g.*, settlement funds) predominately, if not exclusively, to the benefit of common stock purchasers (the security in which Oregon experienced losses) while allocating little or even no resources or recovery to CenturyLink bond purchasers. Thus, Oregon's financial interests conflict with the interests of bond purchasers and would have Oregon act in a manner that is contrary to the interests of CenturyLink bond purchasers.

### C. If Consolidated, the Court Should Appoint a Separate Lead Plaintiff and Separate Counsel to Represent Bond Purchasers

If consolidation is ordered, the Court should designate a separate lead plaintiff for the bond purchasers (here IMG) with separate legal representation (here Federman & Sherwood).

The Court is required to insure that independent classes with conflicts are protected by subdivision and separate representation. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 855 (1999); *Amchem Prods. v. Windsor*, 521 U.S. 591, 626–27 (1997). For this reason, securities class actions involving both stock purchasers and note purchasers are frequently consolidated such that they proceed on parallel tracks with different lead plaintiffs and lead counsel. *See, e.g., In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 440 (S.D. Tex. 2010) (collecting cases) (appointing subclass of investors with separate lead plaintiff and

representation where competing lead plaintiff movants' claims rested on different legal theories and such differences gave rise to a substantial risk of conflict with the interests of other class members); *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *11 (N.D. Cal. Nov. 28, 2001) (finding it "appropriate to appoint a bondholder as co-lead plaintiff in addition to a stockholder" where "[t]he bondholder representative shall be a part of a group of co-lead plaintiffs," "[i]n situations in which the bondholders interests are separate and independent of the stockholders interests, the bondholder representative shall have the final decision-making authority for those issues," "[e]qually, the stockholder representative shall have the final decision-making authority for issues concerning only the stockholders" and  "[i]n all other situations, the co-lead plaintiffs shall make decisions by consensus.").

Accordingly, contrary to Oregon's proposed form of consolidation, any consolidation of the Debt Action with the Consolidated Equity Action should permit the actions to proceed on parallel tracks with IMG to remain as lead plaintiff and Federman & Sherwood as lead counsel on behalf of the bond purchasers, respectively. *See, e.g.*, *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, No. 13395 (E.D. La.) (Dkt No. 77 and generally) (consolidating common stock and bond securities class action cases but allowing cases to proceed on parallel tracks with separate lead plaintiffs and counsel).

## III.    <u>CONCLUSION</u>

For the foregoing reasons, IMG respectfully requests that the Court deny Oregon's motion to consolidate and allow the actions brought on behalf of different classes to

proceed independently.  Alternatively, IMG respectfully requests that if consolidation is ordered, the Court should designate IMG as lead plaintiff for the bond purchasers and Federman & Sherwood as legal counsel for the bond purchasers while permitting the actions to proceed on parallel tracks.

Dated: March 13, 2018                                     Respectfully submitted,

                                                         *s/William B. Federman*
                                                         William B. Federman (OK Bar # 2853)
                                                         **FEDERMAN & SHERWOOD**
                                                         10205 N. Pennsylvania Avenue
                                                         Oklahoma City, OK 73120
                                                         Telephone: (405) 235-1560
                                                         wbf@federmanlaw.com
                                                         -and-
                                                         2926 Maple Ave., Suite 200
                                                         Dallas, TX  75201

                                                         *Counsel for IMG and Proposed Lead Counsel for the Bonds Class*


                                                         *s/Gregg M. Corwin*
                                                         Gregg M. Corwin (MN. ID. 19033)
                                                         GREGG M. CORWIN & ASSOCIATE
                                                         LAW OFFICE, PC
                                                         1660 S. Hwy. 100, Suite 500
                                                         St. Louis Park, MN  55416
                                                         Telephone:  (952) 544-7774
                                                         Fax:  (952) 544-7151
                                                         gcorwin@gcorwin.com

                                                         *Counsel for IMG and Proposed Liaison Counsel for the Bonds Class*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 13, 2018, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the counsel of record.


_s/William B. Federman_

William B. Federman