# EXHIBIT 22



JUN 14 2017
MICHAEL K. JEANES, CLERK
J. LEWIS
DEPUTY CLERK

**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail: brichards@baskinrichards.com
lross@baskinrichards.com
amiller@baskinrichards.com
William A. Richards #013381
Leslie Ross, #027207
Austin J. Miller, #033322
*Attorney for Plaintiffs*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| HEIDI HEISER, an individual, for herself and as representative of a class of all those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC. doing business in Arizona as CENTURYLINK COMMUNICATIONS, LLC and CENTURYLINK SALES SOLUTIONS, INC.; GREEN AND WHITE CORPORATIONS I-X; JOHN AND JANE DOES I-XX, individuals,<br><br>Defendants. | Case No. CV2017-008928<br><br>**COMPLAINT**<br><br>(Jury Trial Requested) |

For their Complaint against CenturyLink, Inc. doing business in Arizona as CenturyLink Communications, LLC and CenturyLink Sales Solutions, Inc.; as well as Green and White Corporations I-X; and John and Jane Does I-XX, Plaintiff Heidi Heiser, for herself and on behalf of all others similarly situated, alleges as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Heidi Heiser is a resident of the State of Arizona who lives in Gilbert, Arizona.

EXHIBIT A PAGE 1 OF 11

2. Defendant CenturyLink, Inc. is a Louisiana corporation doing business in the State of Arizona as CenturyLink Communications, LLC and CenturyLink Sales Solutions, Inc. (collectively "CenturyLink"). At all material times CenturyLink has maintained legal authority to transact business in this State, has maintained operations throughout the State of Arizona, including in Maricopa County, and has transacted business throughout Arizona, including in Maricopa County. The actions and omissions of CenturyLink from which the Plaintiff's claims arise include actions occurring in the State of Arizona, Maricopa County.

3. On information and belief, CenturyLink is a large corporate provider of phone and data transmission services, including telephone, high speed internet and television services to residential and commercial consumers in Arizona and throughout many other parts of the United States.

4. Defendants Green and White Corporations are, on information and belief, corporate or business entities or groups whose actions or omissions give rise to or have caused harms that are the subject of the claims in this action, or whose actions or omissions form a part of a combination or conspiracy that has resulted in the harms claimed in this Complaint, and who are also therefore liable to Plaintiff, but whose identities are not yet known to the Plaintiffs. The Plaintiff hereby reserves the right to substitute for each such Defendant the true names of each such person whose true name is identified through discovery in this matter or otherwise.

5. Defendants John and Jane Does I-XX are, on information and belief, persons whose actions or omissions give rise to or have caused harms claimed in this Complaint, or whose actions or omissions form a part of a combination or conspiracy that has resulted in the harms claimed in this Complaint, and who are also therefore liable to Plaintiff, but whose identities are not yet known to the Plaintiff. The Plaintiff hereby reserves the right to substitute for each such Defendant the true names of each such person whose true name is identified through discovery in this matter or otherwise.

6. Events that form the basis for the claims made here have occurred within Maricopa County, Arizona. Thus, this court has jurisdiction pursuant to Article 6, Section 14 of the Arizona Constitution and A.R.S. § 12-123, and venue is proper in Maricopa County,

Arizona pursuant to A.R.S. § 12-401. This Court has jurisdiction to maintain this action as a class action on behalf of all similarly situated individuals pursuant to Rule 23, Ariz.R.Civ.P.

## FACTUAL ALLEGATIONS

7. In August of 2015, Plaintiff Heidi Heiser began working for Defendant CenturyLink as a customer service and sales agent.

8. CenturyLink provides phone, internet, and television services throughout the United States.

9. Under her employment with Defendant, Ms. Heiser worked from home, and would be forwarded phone calls from customers using lines and equipment provided by CenturyLink.

10. Until she was terminated from her job with CenturyLink for whistleblowing activities in October, 2016, Ms. Heiser was a good and valued employee of CenturyLink. She received very favorable performance reviews, and until her termination had not been told that her performance was inadequate, needed to be improved or justified any sort of discipline or correction, let alone termination.

11. As part of her job for CenturyLink, Ms. Heiser would have calls with customers and help the customers resolve issues with their CenturyLink service and billing. She also had some sales functions as a part of her job.

12. Ms. Heiser was one of perhaps hundreds of similarly employed customer service and sales agents of CenturyLink, each of which had similar job functions and responsibilities.

13. About four or five months into her employment, Ms. Heiser realized through information CenturyLink customers were telling her, and her review of data about such customers' accounts on the CenturyLink customer account system, that multiple CenturyLink customers were being designated as having additional accounts that they informed Ms. Heiser they did not request or approve.

14. Ms. Heiser was aware of CenturyLink's performance expectations and incentive programs for sales agents like her and other related employees. Those expectations and incentive programs rewarded CenturyLink employees, in part, based upon the number of lines

3

or services sold to customers, the upselling of services to existing customers, and the growth of the service base at CenturyLink.

15. Ms. Heiser learned from her work that the system and practices used by CenturyLink with its sales and other agents allowed persons who had a personal incentive to add services or lines to customer accounts to falsely indicate on the CenturyLink system the approval by a customer of new lines or services, which would then inure to the direct or indirect benefit of such CenturyLink agents or their superiors. On information and belief, at times the internal indications of additional lines or services may have not been apparent to the customers, though it served the financial and job incentives of CenturyLink employees, and could increase the revenues of CenturyLink.

16. On information and belief, sometimes the additional lines or services resulted in additional charges not authorized by the customer. Also on information and belief, they sometimes also resulted in customers being assigned, designated for, and even sometimes billed for services they did not know about and could not access. On information and belief, CenturyLink was the direct beneficiary of those unauthorized charges and the payments of them.

17. At about the same time Ms. Heiser was becoming concerned with rampant assignment of unauthorized services or lines to CenturyLink customers, news broke about a similar scandal at Wells Fargo Bank in which, due to corporate incentive policies and practices, Wells Fargo Bank employees were regularly engaging in adding false accounts or services to customer relationships.

18. Ms. Heiser recognized frightening parallels between the Wells Fargo Bank scandal and what she saw happening at CenturyLink.

19. Ms. Heiser further learned through her employment with CenturyLink that despite the proliferation of customer complaints about the addition of unauthorized lines or services, CenturyLink's policy was generally to inform the complaining customer that CenturyLink's system indicated the customer had approved the service and that it was really the customer's word against CenturyLink's, and to therefore demand payment for any such

4

extra services through the date of the complaint, and to only rectify the problem on a going-forward basis.

20. Ms. Heiser understood and believes that CenturyLink managers and quality control personnel monitored phone calls of service agents like her and because the customer complaints related to unauthorized services and charges were so prolific, CenturyLink managers were well aware of the same issues being discovered by Ms. Heiser.

21. Nevertheless, at no time did anyone at CenturyLink inform Ms. Heiser or, to her knowledge, any other customer service or sales agents that they were to cease assigning unauthorized lines or services to customer accounts, or that they should report any instances of such actions to any personnel of CenturyLink, or that there were any policies being enacted or practices implemented to ensure that unauthorized charges were cancelled and that customers who had paid such charges were reimbursed.

22. It appeared clear to Ms. Heiser, therefore, that CenturyLink management had not only created the workplace incentives, sales practices, and lack of oversight that encouraged the fraudulent assignment of unauthorized lines or services, and related charges, to customer accounts, but they were knowingly and intentionally ignoring the customer complaints about such practices and enforcing policies that allowed CenturyLink to keep payments received on unauthorized charges and to encourage more such payments.

23. Given the size of CenturyLink's customer base, and the number of customers Ms. Heiser personally observed over a substantial period of time experiencing the addition of unauthorized lines or services and the unauthorized billing for such services, Ms. Heiser believes that CenturyLink may have billed for, and even collected, many millions of dollars in unauthorized service fees from customers in the past two years.

24. As a result of the repeated incidences in which CenturyLink customers informed her they had not approved or requested services that were assigned and at times being billed to them by CenturyLink, Ms. Heiser became concerned that agents or CenturyLink might be engaged in routinely adding services or lines to customer accounts without the customer's request or permission, and that such practices were promoted by policies and practices of

1 CenturyLink and were not being monitored and properly addressed by CenturyLink management.

25. Ms. Heiser personally alerted employees of CenturyLink within her employment chain of command about her concerns that other CenturyLink employees were adding unauthorized services or lines to customer accounts and that CenturyLink was then wrongfully billing some customers for unauthorized services.

26. For example, Ms. Heiser brought her concerns to the attention of Christine Wells, her supervisor; Denise Medina, a supervisor for virtual customer service agents, and Michael Del Campo, Customer Sales and Care Supervisor.

27. Upon information and belief, Ms. Heiser was told in response to her complaints to stay positive and not to mention her concerns again.

28. At no time prior to terminating Ms. Heiser's employment did anyone from CenturyLink, to Ms. Heiser's knowledge, take action in response to the notice she was providing to CenturyLink management to stop or remedy the fraudulent and wrongful practices of adding unauthorized lines or services to CenturyLink customer accounts and billing customers for unauthorized services.

29. In addition to her direct experience interacting with CenturyLink customers and their accounts, Ms. Heiser has conducted internet research in which she has found a significant amount of public discussion by people purporting to be CenturyLink customers about unauthorized assignment of services or charges for unauthorized items. Some of the posters even indicated a desire to sue CenturyLink for such practices.

30. Also, in May of 2016, Ms. Heiser began experiencing malfunctions to the CenturyLink system that forwarded customer calls to her home.

31. As a result of the malfunctioning system, calls between Ms. Heiser and customers would be dropped.

32. The technical problems caused by CenturyLink's malfunctioning system was very frustrating to Ms. Heiser. Ms. Heiser sent approximately fifty emails to officials of Defendant concerning these technical issues.

33. However, Defendant never resolved Ms. Heiser's technical issues.

34. Defendant also did not indicate to Ms. Heiser that it thought the technical issues were her fault or that they reflected negatively on her job performance in any way.

35. In October of 2016, Defendant held an online question and answer session with its CEO, Glenn Post, that allowed company employees including Ms. Heiser to post questions to an online message board for review by CEO Post.

36. Prior to that session, Ms. Heiser had not received information indicating that her expressed concerns with unauthorized assignment of services or lines to customer accounts were being taken seriously or addressed by anyone at CenturyLink. Out of concern for CenturyLink customers and concern that CenturyLink practices were allowing the perpetration of a massive fraud on customers, during the question and answer session Ms. Heiser posted a question on-line asking the CenturyLink CEO why customers were being given multiple accounts and being billed for things they did not ask for. Thus, Ms. Heiser made the highest levels of management at CenturyLink aware of her concerns. A minimal further investigation into her complaint would have revealed the numerous other times she raised these same concerns with fraud being perpetrated against CenturyLink customers and the financial gain being obtained by CenturyLink.

37. On information and belief, Defendant took down Ms. Heiser's question from the message board shortly after she had posted it. She never received any answer from the CenturyLink CEO or any other CenturyLink officer or manager.

38. Instead, two days after the question and answer session, Ms. Heiser was informed in a surprise phone call that she was being suspended from her employment with Defendant because she had been allegedly hanging up on customers.

39. CenturyLink knew that Ms. Heiser had not been hanging up on customers. This was a pretext for CenturyLink's decision to terminate a whistleblower who had dared to publicly confront the company, including its CEO, with concerns that CenturyLink agents were wrongfully assigning lines or services to customers without authorization, who had brought the problem to the attention of other CenturyLink officials, and who was still in a position to access

7

information evidencing the pattern of unauthorized account activity.

40. In fact, CenturyLink officials actually shut down Ms. Heiser's access to the CenturyLink e-mail system so that she could not regain access to her many relevant messages to CenturyLink officials as they were telling her she was being fired.

41. The actions and omissions that Ms. Heiser complained about to CenturyLink management constitute consumer fraud under A.R.S. § 44-1521, *et seq*. They included fraudulent and deceptive practices in connection with the sale or advertisement of "merchandise" as defined in A.R.S. § 44-1521, including without limitation the phone, internet, and television services of CenturyLink, Inc., and even included false representations to customers about the company's belief that they had authorized the lines and services complained about.

42. The actions and omissions that Ms. Heiser complained about to CenturyLink management constitute a fraudulent scheme or artifice made unlawful in Arizona under A.R.S. § 13-2310. The victims of the fraudulent scheme or artifice was consumers who were customers of CenturyLink. On information and belief, the fraudulent practices resulted in substantial financial gains for CenturyLink.

43. On information and belief, the actions and omissions Ms. Heiser complained about to CenturyLink management may also constitute other forms of unlawful fraudulent or otherwise wrongful conduct under Arizona and federal law, including without limitation theft and theft by conversion (A.R.S. § 13-1802), identity theft (A.R.S. § 13-2008), illegal control of or conducting of an enterprise (A.R.S. § 13-2301, *et seq*), wire fraud, or mail fraud.

44. On information and belief, the actions and omissions Ms. Heiser complained about and that were unlawful under Arizona and federal law have resulted in financial or other harms to consumer customers of CenturyLink.

45. On information and belief, the actions and omissions Ms. Heiser complained about and that were unlawful under Arizona and federal law have resulted in substantial financial gains for CenturyLink.

46. Ms. Heiser had performed her job fully and satisfactorily and there was no ground

to fire her other than the desire to retaliate against her whistleblowing activity, to intimidate and silence her and others from further whistleblowing activities, and to create a false record or perception about Ms. Heiser to use in countering any future whistleblowing activities.

## COUNT I
## WRONGFUL TERMINATION

47. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

48. Defendant terminated Ms. Heiser because she raised concerns about a fraudulent and improper business practice that was widespread in Defendant's company.

49. It is against public policy of the State of Arizona to terminate an employee in retaliation for reporting violations of the Constitution of Arizona or statutes of the State of Arizona or the United States to the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations.

50. Ms. Heiser reported the creation of fraudulent accounts to the Chief Executive Officer of CenturyLink, Inc., Glen Post, during an online employee forum. She reported similar concerns to other management personnel at CenturyLink.

51. On information and belief, Chief Executive Officer of CenturyLink, Inc. is a managerial or supervisory position, and carries with it the authority to investigate such information provided by employees and to take action to remedy the issues and prevent further violations. Similarly, the management positions of the other persons Ms. Heiser informed of the unauthorized account activities had duties to investigate and take actions to remedy the issues and prevent further violations.

52. Dismissing employees for reporting violations of the statutes and laws of the State of Arizona and the United States jeopardizes the public policy of this state because it discourages future employees from reporting violations.

53. On information and belief, Defendant CenturyLink terminated Ms. Heiser

9
EXHIBIT A PAGE 9 OF 11

because Defendant wanted to suppress Ms. Heiser's concerns and not want to risk them being revealed to others or did not want the problems Ms. Heiser reported to be solved, since fraudulent account creation helped to increase Defendant's revenues.

54. Defendant had no legitimate business justification for terminating Ms. Heiser's employment.

55. Defendant's stated reason for terminating Ms. Heiser, because she was hanging up on customers, is unjustified because Ms. Heiser's issue with dropped calls was due to technical issues that she had made Defendant well aware of, yet Defendant did not fix. This excuse was a pretext for unlawful action intended to cover up wrongdoing by CenturyLink.

56. Plaintiff Heiser was damaged as a result of CenturyLink's wrongful conduct and termination of her employment. She has lost wages and income, and has suffered severe and pervasive emotional harm and suffering.

57. Plaintiff Heiser is entitled to recover all damages caused to her as a result of Defendant CenturyLink's wrongful conduct in violation of her rights.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter final judgment in favor of the Plaintiff and against the Defendants on the following terms:

A. Awarding Plaintiff her actual, compensatory, consequential and incidental damages resulting from Defendants' actions as alleged herein in amounts to be proven at trial;

B. Awarding punitive and/or exemplary damages in an amount sufficient to punish Defendant and to deter others similarly situated from similar future conduct;

C. Awarding Plaintiff interest on all amounts awarded at the highest rates and from the earliest dates allowed by law;

D. Awarding Plaintiff her reasonable attorneys' fees, pursuant to A.R.S. § 12-341.01 or as otherwise allowed by law;

E. Awarding Plaintiff taxable costs pursuant to A.R.S. § 12-341, or as otherwise allowed by law; and

F.  Awarding Plaintiff all such other and further relief, at law or in equity, that the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

RESPECTFULLY SUBMITTED this 14th day of June, 2017.

BASKIN RICHARDS PLC

*/s/ William A. Richards*
William A. Richards
Leslie Ross
Austin J. Miller
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012

11
EXHIBIT A PAGE 11 OF 11