# EXHIBIT 24

MICHAEL K. JEANES
Clerk of the Superior Court
By Jessica Castro, Deputy
Date 04/06/2016 Time 16:45:17
Description                    Amount
-------- CASE# CV2016-002842 --------
CIVIL NEW COMPLAINT            319.00 W

TOTAL AMOUNT                     0.00
        Receipt# 25164365

**MARK BRNOVICH**
ATTORNEY GENERAL
Firm Bar No. 14000
CHERIE L. HOWE (No. 013878)
ASSISTANT ATTORNEY GENERAL
1275 W. Washington Street
Phoenix, AZ 85007
Telephone: (602) 542-7726
Facsimile: (602) 542-4377
Cherie.Howe@azag.gov
*Attorneys for State of Arizona*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| In the Matter of<br><br>QWEST CORPORATION, d/b/a CENTURYLINK QC, a Colorado corporation,<br><br>Respondent. | No: **CV2016-002842**<br><br>**ASSURANCE OF DISCONTINUANCE** |

    The Attorney General of the State of Arizona and Respondent, Qwest Corporation, d/b/a CenturyLink QC ("CenturyLink"), agree to the entry of the following Assurance of Discontinuance pursuant to Arizona Revised Statutes ("A.R.S.") § 44-1530, a provision of the Arizona Consumer Fraud Act, A.R.S §§ 44-1521 – 44-1534.

    Whenever in this Assurance of Discontinuance reference is made to any act of CenturyLink, such reference shall be deemed to mean the acts of CenturyLink's officers, employees, agents, or other representatives, acting within the scope of their employment or authority.

    1.    CenturyLink is a Colorado corporation whose address is 100 CenturyLink Dr., Monroe, Louisiana, 71203. CenturyLink provides various telecommunication products and services to Arizona consumers, including local and long distance telephone access and high speed internet.

2. CenturyLink advertises the products and services it sells in various media including television, newspapers, the internet and flyers left at consumers' homes.

3. CenturyLink's advertisements promote fixed monthly rates for certain stand-alone services such as high speed internet ("HSI") and residential telephone service.

4. CenturyLink's advertisements also promote fixed monthly rates for so-called "bundles", packages that include one or two "anchor" products (such as HSI or residential telephone service) plus one or more "qualifying" product.

5. In order to obtain certain promotional rates for CenturyLink's stand-alone services and "bundles," consumers are required to enter into a term commitment, typically for one or two years.

6. In some cases, the promotional rate for a service will expire before the term commitment to purchase such service expires.

7. Consumers who cancel a term commitment contract with CenturyLink before the expiration of the term are subject to an agreed early termination fee.

8. CenturyLink charges some consumers an installation fee associated with starting HSI or residential telephone service.

9. CenturyLink employs salespersons who take telephone calls from consumers who are interested in purchasing the products and services advertised by CenturyLink and, additionally, contracts with third-parties to conduct sales on CenturyLink's behalf.

10. The Attorney General believes that CenturyLink engaged in acts and practices related to its marketing and sale of residential telephone and HSI services to Arizona consumers that violated the Arizona Consumer Fraud Act, including:

    a. failing to adequately disclose material qualifying conditions that apply to its advertised promotional rates, such as the requirement that consumers enter into a term commitment or that they authorize CenturyLink to automatically withdraw monthly payments from their financial accounts. CenturyLink expressly denies these allegations

#4931358

-2-

1  and alleges that all material qualifying conditions that apply to its advertised promotional
2  rates, including but not limited to term commitments and authorization that CenturyLink
3  may automatically withdraw monthly payments from financial accounts were fully
4  disclosed;

5    b. failing to adequately disclose to consumers that the advertised promotional
6  rate will end before the consumers' term commitments expire, thereby requiring
7  consumers to continue purchasing services at a non-promotional rate for the remainder of
8  the term. CenturyLink expressly denies these allegations and alleges that these terms
9  were fully disclosed;

10    c. failing to adequately disclose that if consumers cancel their contract before
11  their term commitment expires, that they will be charged an early termination fee.
12  CenturyLink expressly denies these allegations and alleges that these terms were fully
13  disclosed;

14    d. selling consumers levels of HSI that CenturyLink represents as being
15  available at consumers' addresses when, in fact, such levels are not available at those
16  locations. CenturyLink expressly denies these allegations and alleges that these terms
17  were fully disclosed;

18    e. failing to adequately disclose that a consumer will be required to purchase
19  or lease a modem/router for HSI service. CenturyLink expressly denies these allegations
20  and alleges that these terms were fully disclosed; and

21    f. failing to adequately disclose that a consumer will be charged an
22  installation fee for certain services and products. CenturyLink expressly denies these
23  allegations and alleges that these terms were fully disclosed.

24    11. The Attorney General believes that CenturyLink engaged in acts and practices
25  related to its billing and provision of customer services to Arizona consumers who purchased
26  residential telephone and high speed internet services from CenturyLink that violated the

Arizona Consumer Fraud Act, including:

   a. billing consumers at rates higher than those it represented during sales calls with consumers. CenturyLink expressly denies these allegations;

   b. billing consumers an early termination fee when the consumer cancelled his or her service upon discovering that CenturyLink was charging the consumer rates higher than those it represented during the sales call. CenturyLink expressly denies these allegations;

   c. billing consumers an early termination fee when consumers cancelled their HSI service upon learning that it was not of the quality represented by CenturyLink. CenturyLink expressly denies these allegations;

   d. billing consumers for periods of service before such services were connected, for services that were never connected, and for products that were never received, without subsequently giving those consumers a credit for such charges. CenturyLink expressly denies these allegations;

   e. billing consumers for services and products that the consumer never requested without subsequently giving those consumers a credit for such charges. CenturyLink expressly denies these allegations;

   f. failing to process consumers' service cancellation requests in a timely manner and billing them for the period of time such service remained connected following the consumers' requested cancellation date, without providing a subsequent credit for such period of time. CenturyLink expressly denies these allegations; and

   g. charging consumers full price for leased modems that consumers returned to CenturyLink within the required time frame and, in many cases, subsequently referring the consumers' accounts to collection when the consumers refused to pay for the returned modems. CenturyLink expressly denies these allegations.

NOW, THEREFORE, CenturyLink agrees, undertakes and assures:

12. CenturyLink shall comply with the Arizona Consumer Fraud Act, as it is now written and as it may be amended, if or to the extent it applies to the products or services of CenturyLink in Arizona.

13. Within three business days after a consumer places a complete order for products or services with CenturyLink, whether as an initial order or a material change which adds products or services – or upgrades to products or services - to an existing account, CenturyLink shall send the consumer a disclosure - via regular or electronic mail - that sets forth all material terms and conditions applicable to the consumer's order, including, but not limited to:

- an itemization of each service ordered, the monthly base price for each service, and the discount the consumer will receive;
- the overall period of time for which the consumer will be obligated to purchase each service from CenturyLink, either described in months or years, or with the specific end date listed;
- a statement that early termination fees may apply if the consumer cancels services prior to the expiration of the term commitment;
- the amount of any installation and activation fees, if applicable;
- the amount of all fees other than government mandated fees or taxes that will be charged on the account;
- an itemization of each product ordered and the price for each product, a statement that shipping and handling fees may apply, monthly leasing fees, and one time charges; and
- the mailing address and toll-free telephone number that the consumer can contact with questions regarding billing, installation, equipment and services, or to cancel services.

#4931358                                    -5-

14. Neither the written disclosure described in paragraph 13, above, nor the envelope in which it is contained, shall contain any marketing or advertising, other than the CenturyLink name and trademark, and shall be sent in an envelope and/or e-mail that prominently displays the phrase "Order Confirmation" or a similarly worded phrase on the envelope or in the e-mail's subject line.

15. CenturyLink shall verbally make the disclosures described in paragraph 13, above, along with disclosure of the period of time any discount shall apply, to consumers who order services or products over the telephone at the time of the consumer's order except for the last requirement as that information is contained in the Order Confirmation.

16. If a consumer complains to CenturyLink that CenturyLink is charging the consumer a price for its services or products that exceeds the amount quoted by a sales or customer service agent over the telephone, CenturyLink shall investigate the matter and will not send the consumer's account to an outside collection agency until such investigation is complete and the outcome thereof has been communicated to the consumer. CenturyLink may continue to submit regular invoices for all amounts claimed due, including those in dispute.

17. If a consumer complains to CenturyLink that CenturyLink is charging the consumer for services or products that the consumer did not order, CenturyLink shall investigate the matter and will not send the consumer's account to an outside collection agency until such investigation is complete and the outcome thereof has been communicated to the consumer. CenturyLink may continue to submit regular invoices for all amounts claimed due, including those in dispute.

18. CenturyLink shall not represent to a specific consumer that a particular download or upload HSI speed is available to that consumer without having first confirmed such speed using CenturyLink's loop qualification tool or other program available to the sales representative taking the consumer's order for such service.

19. CenturyLink shall process a consumer's service cancellation request within three business days after receiving such request and shall provide a credit for any charges imposed for such service after midnight of the date of cancellation. CenturyLink may charge after this date for any equipment that is not returned on or before the deadline to return such equipment, as communicated to the consumer by CenturyLink pursuant to paragraph 20, below.

20. Currently, if a consumer who contacts CenturyLink to cancel HSI is leasing a modem/router from the company, CenturyLink mails to the consumer, within three business days after receiving the consumer's cancellation request, a pre-addressed mailing label with the address of the location to which the consumer should send the modem/router. CenturyLink may terminate that procedure, and if so, will implement the following: If a consumer who contacts CenturyLink to cancel HSI is leasing a modem/router from the company, CenturyLink shall, either, verbally provide the consumer with the address of the location to which the consumer should send the modem/router or, at the consumer's request, direct the consumer to a website where the consumer is able to print the pre-addressed mailing label, and, in either case, CenturyLink shall notify the consumer of the deadline by which to return the modem/router to avoid additional charges.

21. If a consumer objects to being billed the purchase price of a leased modem/router because he or she claims to have returned it to CenturyLink within the required time frame, CenturyLink shall investigate the matter and will not send the consumer's account to an outside collection agency until such investigation is complete and the outcome thereof has been communicated to the consumer. CenturyLink may continue to submit regular invoices for all amounts claimed due, including those in dispute.

22. CenturyLink shall, within sixty (60) days after the date this Assurance of Discontinuance is approved by the court, provide a summary of its relevant terms to all of its employees and third parties who perform consumer sales or customer service functions for CenturyLink and shall implement a program to train all appropriate employees and agents on the

#4931358
-7-

Assurance's relevant terms.

23. CenturyLink shall retain a copy of all written consumer complaints received by its executive complaint group from Arizona residential consumers and its responses to those complaints for a period of two (2) years. Consumer complaints shall include any hard copy or electronic message received from a consumer indicating a specific problem or dissatisfaction associated with the offer, lease, sale, installation or use of any service or product sold to the consumer by CenturyLink.

24. This Assurance of Discontinuance applies to CenturyLink, any successor entity or entities, whether by acquisition, merger or otherwise, CenturyLink's current or future officers, directors, managerial or supervisory employees, and to any other employees or agents having responsibilities with respect to the subject matter of this Assurance of Discontinuance.

25. The terms of this Assurance of Discontinuance apply only to CenturyLink's activities and conduct related to its sale and provision of residential telephone and internet services to Arizona consumers, and its customer relations with such consumers.

26. CenturyLink shall pay to the Attorney General's Office the amount of one hundred and fifty thousand dollars ($150,000) for attorneys' fees and costs of investigation, pursuant to A.R.S. § 44-1530. The payment described herein shall be made by cashier's check, payable to the Office of the Arizona Attorney General, and shall be delivered to this office within thirty (30) days after the date the court approves this Assurance of Discontinuance. Said payment shall be deposited by the Attorney General's Office into the Consumer Protection – Consumer Fraud Revolving Fund in accordance with to A.R.S. § 44-1531.01 and used for the purposes set forth therein.

27. In the event of a default of the payment obligation imposed by this Assurance of Discontinuance, and in addition to any other relief or remedy elected or pursued by the State, all payments set forth herein shall be accelerated and shall become due and owing in their entirety as of the date of the default, with interest accruing at the rate of three and one-quarter percent

(3.25%) per annum for the full amount owing as of that date.

28. The parties understand and agree that this Assurance of Discontinuance shall not be construed as an approval of or sanction by the Attorney General of CenturyLink's business or of its past, present or future business practices, and CenturyLink shall not make any representations to the contrary.

29. The parties further understand and agree that this Assurance of Discontinuance shall not be considered an admission of a violation of the Consumer Fraud Act for any purpose, and the Attorney General shall not make any representations to the contrary.

30. CenturyLink is entering into this Assurance of Discontinuance as a means of efficiently closing the Attorney General's investigation into this matter and not out of any admission of guilt, wrongdoing, violation or sanction.

31. CenturyLink denies any violation of state, federal, or local law, that any actions, inactions, or practices of CenturyLink were a consumer fraud or otherwise legally improper, or that any Arizona Consumers who are residential customers of CenturyLink suffered or incurred any damage or loss for which the law provides recourse. Nothing contained in this Assurance of Discontinuance shall be construed as an admission of any fact or matter of law or create or support any right or cause of action in favor of any alleged third-party beneficiary, including but limited to Arizona Consumers who are residential customers of CenturyLink.

32. CenturyLink does not admit that any requirement contained in this Assurance of Discontinuance creates any new legal or voluntary standard of care and expressly denies that its policies, practices, or procedures that may be inconsistent with those set forth in this Assurance of Discontinuance fail to meet or violate any applicable standard.

33. This Assurance of Discontinuance shall not be relied upon in any manner by anyone not a party hereto in any civil, criminal, or administrative proceeding before any court, administrative agency, or other tribunal as an admission, concession, or evidence that CenturyLink has violated any federal, state, or local law, or that CenturyLink's actions,

inactions, policies, practices, or procedures are not inconsistent with any federal, state, or local law.

34. Upon execution of this Assurance of Discontinuance and payment by CenturyLink of the agreed amount for attorneys' fees and costs of investigation provided herein, the Attorney General releases and forever discharges CenturyLink, to the fullest extent provided by law, from all civil claims, causes of action, administrative actions, damages, restitution, fines, penalties, attorneys' fees, and costs that the Attorney General could have asserted against CenturyLink prior to the date hereof based on the Attorney General's allegations set forth herein under the Arizona Consumer Fraud Act.

35. CenturyLink understands that a violation of this Assurance of Discontinuance within six (6) years of the filing thereof constitutes prima facie evidence of a violation of A.R.S. § 44-1522. This court therefore retains jurisdiction over the parties and the subject matter for purposes of enabling the State of Arizona to apply to this court for the enforcement of and Respondent's compliance with the Assurance of Discontinuance. This Assurance of Discontinuance shall not be considered an admission of a violation for any purpose.

36. The person signing below on behalf of CenturyLink represents and declares that he or she is authorized to do so.

RESPECTFULLY SUBMITTED this 5th day of April, 2016.

MARK BRNOVICH
ATTORNEY GENERAL

By: _____
Cherie L. Howe
Assistant Attorney General
*Attorneys for State of Arizona*

#4931358

-10-

1 | CENTURYLINK COMMUNICATIONS, LLC

3 | By: *[signature]*
4 | Its: *Senior Corporate Counsel*

6 | Approved as to Form and Content:

*[signature]*
Gregory W. Falls, Esq.
SHERMAN & HOWARD, LLC
*Attorney for Respondent*

#4931358                                    -11-

Michael K Jeanes, Clerk of Court
\*\*\* Electronically Filed \*\*\*
K. Laird, Deputy
4/13/2016 9:18:00 AM
Filing ID 7340198

**MARK BRNOVICH**
**ATTORNEY GENERAL**
Firm Bar No. 14000
CHERIE L. HOWE (No. 013878)
ASSISTANT ATTORNEY GENERAL
1275 W. Washington Street
Phoenix, AZ 85007
Telephone: (602) 542-7726
Facsimile: (602) 542-4377
Cherie.Howe@azag.gov
*Attorneys for State of Arizona*

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In the Matter of<br><br>QWEST CORPORATION, d/b/a CENTURYLINK QC, a Colorado corporation,<br><br>Respondent. | Case No: CV2016-002842<br><br>**APPROVAL OF ASSURANCE OF DISCONTINUANCE** |

Pursuant to A.R.S. § 44-1530, the Assurance of Discontinuance is approved by the Superior Court of the State of Arizona in and for the County of Maricopa.

DATED this _11th_ day of April, 2016.

_____
JUDGE OF THE SUPERIOR COURT

Document electronically transmitted to the Clerk of the Court for filing using AZTurboCourt this 13th day of April, 2014.

**COPY** of the foregoing, with conformed copy of the Assurance of Discontinuance, mailed this same date to:

Gregory W. Falls, Esq.
SHERMAN & HOWARD, LLC
201 E. Washington St, Ste. 800
Phoenix, AZ  85004-2327
*Attorney for Respondent*

/s/ *Nyla Hunsinger*

&lt;5019936&gt;