# EXHIBIT 25

**REVISED GENERAL ORDER 168,
MARKET RULES TO EMPOWER TELECOMMUNICATIONS
CONSUMERS AND TO PREVENT FRAUD**

GENERAL ORDER NO. 168

PUBLIC UTILITIES COMMISSION OF THE
STATE OF CALIFORNIA

**Consumer Bill of Rights
Governing Telecommunications Services**

Adopted March 2, 2006; Effective March 2, 2006
(Decision 06-03-013 in Rulemaking 00-02-004)

IT IS ORDERED that all Commission-regulated telecommunications
service providers shall respect the consumer rights and freedom of choice
provisions set forth in this General Order.

D06-03-013, as amended by D10-10-034

# TABLE OF CONTENTS

REVISED GENERAL ORDER 168, MARKET RULES TO EMPOWER
TELECOMMUNICATIONS CONSUMERS AND TO PREVENT FRAUD ................... 1

PART 1 – CONSUMER BILL OF RIGHTS AND FREEDOM OF CHOICE ................. 2

PART 2 – CONSUMER PROTECTION AND PUBLIC SAFETY RULES ..................... 5

    A.   APPLICABILITY ................................................................. 5

    B.   RULES ............................................................................... 5

        Rule 1:  Commission Staff Requests for Information ............... 5

        Rule 2:  Worker Identification ............................................. 6

        Rule 3:  Emergency Services 911 / E911 .......................... 7

PART 3 – RULES GOVERNING SLAMMING COMPLAINTS ........................... 9

    A.   Purpose and Scope ...................................................... 9

    B.   Definitions ................................................................... 10

    C.   Authorization and Verification of
        Orders for Telecommunications Services .................... 11

    D.   Carrier Liability for Slamming .................................... 11

    E.   Resolution of Unauthorized Changes in Preferred Carrier ..................... 13

    F.   Absolution Procedure where the
        Subscriber has not Paid Charges ................................ 14

    G.   Reimbursement Procedures where the
        Subscriber has Paid Charges ...................................... 16

    H.   Informal Complaints .................................................. 18

PART 4 – CALIFORNIA TELEPHONE CORPORATION BILLING RULES ............. 21

    1.   APPLICABILITY: ............................................................. 21

    2.   DEFINITIONS: ............................................................... 21

    3.   AUTHORIZATION REQUIRED: ........................................ 23

    4.   BILLING FOR AUTHORIZED CHARGES ONLY: ................... 23

    5.   RESPONSIBILITIES OF BILLING TELEPHONE
        CORPORATIONS: ........................................................... 24

    6.   MONITORING OF SUBSCRIBER BILLINGS: ...................... 25

    7.   NONPAYMENT OF CHARGES DURING AN INVESTIGATION: ...................... 25

    8.   RESOLUTION: ............................................................... 25

D06-03-013, as amended by D10-10-034

9.    OTHER AVAILABLE RIGHTS: ...................................................26

10.   RECORD RETENTION FOR REFUNDS: ......................................26

11.   REPORTING REQUIREMENTS .................................................27

12.   ONGOING COLLABORATION WITH STAFF: ...............................31

13.   CONSUMER EDUCATION: .....................................................32

14.   EFFECT OF FAILURE TO SUPPLY REPORTS: ..............................32

15.   ACTIONS BASED ON REPORTED INFORMATION: .......................33

D06-03-013, as amended by D10-10-034

## PART 1 – Consumer Bill of Rights and Freedom of Choice

The Commission adopts the following rights and principles in this Consumer Bill of Rights as a framework for consumer protection and freedom of choice in a competitive telecommunications market.

*Freedom of Choice:*

- Consumers have a right to select telecommunications services and vendors of their choice.

- Consumers have the right to change voice service providers within the same local area and keep the same phone number in accordance with the rules set forth by FCC regulations regarding Local Number Portability.[1]

*Disclosure:*

- Consumers have a right to receive clear and complete information about all material terms and conditions, such as material limitations, for i) products and service plans they select or ii) available products and service plans for which they request information.

- Consumers have a right to be charged only according to the rates, terms and conditions they have agreed to, as set forth in service agreements or carrier tariffs governing services ordered.

*Privacy:*

- Consumers have a right to personal privacy, to have protection from unauthorized use of their personal information and records, and to reject intrusive communications and technologies.

---

[1] *See United States Telecomm. Ass'n v. FCC*, 400 F. 3d 29 (D.C. Cir. 2005); In the Matter of Telephone Number Portability, Intermodal Order, 18 FCC Rcd. 23697 (2003).

D06-03-013, as amended by D10-10-034

### *Public Participation and Enforcement:*

- Consumers have a right to participate in public policy proceedings affecting their rights, to be informed of their rights and what agencies enforce those rights, and to have effective recourse if their rights are violated.

### *Accurate Bills and Dispute Resolution:*

- Consumers have a right to accurate and understandable bills for products and services they authorize, and to mechanisms for resolving disputes and correcting errors that are accessible, if readily achievable; fair; efficient; and reasonable.

### *Non-Discrimination:*

- Consumers have the right to be treated equally to all other similarly-situated consumers, free from unreasonable prejudice or discrimination.

### *Public Safety:*

- Consumers have a right to maintain the safety and security of their person, property, financial records and personal information.

- Consumers have a right to expect that that voice providers will offer connections to E911 emergency services and access to Public Safety Answering Points to the extent this is technically feasible and required by law, and to clear and complete disclosure of material limitations on access to 911 emergency services.

In adopting these principles the Commission does not assert regulatory jurisdiction over broadband service providers; Internet Service Providers; Internet content or advanced services; or any other entity or service not currently subject to regulation by the California Public Utilities Commission. To the extent the California Public Utilities Commission lacks such jurisdiction over any such entity or service, it will work with the Federal Communications Commission to develop appropriate mechanisms in support of the foregoing rights and principles.

- 3 -

D06-03-013, as amended by D10-10-034

      The foregoing principles contained in this Consumer Bill of Rights and Freedom of Choice shall serve the same purpose as a statement of legislative intent that will help guide governmental action to promote consumer protection and freedom of choice in a competitive telecommunications market. These principles shall not be interpreted to create a private right of action, to form the predicate for a right of action under any other state or federal law, or to create liability that would not exist absent the foregoing principles.

D06-03-013, as amended by D10-10-034

## PART 2 – Consumer Protection and Public Safety Rules

### A. Applicability

These rules are applicable to telecommunications services subject to the Commission's jurisdiction offered by telecommunication service providers.

Compliance with these rules does not relieve service providers of other obligations they may have under their tariffs, other Commission General Orders and decisions, FCC orders and federal or state statutes.

For services offered under the Universal Lifeline Telephone Service program, carriers shall also comply with the requirements set forth in General Order 153, Procedures for Administration of the Moore Universal Telephone Service Act, where they apply.  The requirements of General Order 153 take precedence over these rules whenever there is a conflict between them.

The Commission intends to continue its policy of cooperating with law enforcement authorities to enforce consumer protection laws.

These rules shall not be interpreted to create any new private right of action, to abridge or alter a right of action under any other state or federal law, or to create liability that would not exist absent the foregoing rules.

The standard to be applied in the construction and application of these rules is that of a reasonable consumer.

### B. Rules

### Rule 1:  Commission Staff Requests for Information

(a)     Every carrier and service provider under the Commission's jurisdiction shall designate one or more representatives to be available to Commission staff during regular business hours (Pacific Time) to accept staff's inquiries and requests for information regarding informal complaints from subscribers. Every carrier and service provider shall provide to the

D06-03-013, as amended by D10-10-034

Commission staff and at all times keep current its list of representative names, telephone numbers and business addresses.

(b)    Every carrier and service provider under the Commission's jurisdiction shall provide all documents and information Commission staff may request in the performance of its informal complaint and inquiry handling responsibilities, including but not limited to subscriber-carrier service agreements and contracts, copies of bills, carrier solicitations, subscriber authorizations, correspondence between the carrier and subscriber, applicable third party verifications, and any other information or documentation.  Carriers and service providers shall provide requested documents and information within ten business days from the date of request unless other arrangements satisfactory to Commission staff are made.

(c)    Nothing in these rules shall limit the lawful authority of the Commission or any part of its staff to obtain information or records in the possession of carriers when they determine it necessary or convenient in the exercise of their regulatory responsibilities to do so.

## Rule 2:  Worker Identification

(a)    This rule only applies to individuals and small businesses that purchase, subscribe to, or apply for a telecommunications service subject to Commission jurisdiction.  For the purposes of this rule, a small business is a business or individual that subscribes or applies for not more than ten telephone access lines from any single carrier, and a business or individual subscribing to or applying for a T-1 line may not be considered a small business customer.  For purposes of this rule, all entities other than individuals (e.g., government and quasi-governmental agencies, associations, etc.) meeting the ten-access limit are treated identically with small businesses.

D06-03-013, as amended by D10-10-034

(b)     Every carrier shall prepare and issue to its employees and contractors who, in the course of their employment, have occasion to enter the premises of subscribers of the carrier or applicants for service, an identification card in a distinctive format having a photograph of the employee or contractor. The carrier shall require its employees and contractors to present the card upon requesting entry into any building or structure on the premises of an applicant or subscriber.

(c)     Every carrier shall require its employees and contractors to identify themselves at the request of any applicant or subscriber during a telephone or in-person conversation, using a real name or other unique identifier.

(d)     No carrier shall misrepresent, or allow its employees or contractors to misrepresent, its association or affiliation with a telephone carrier when soliciting, inducing, or otherwise implementing the subscriber's agreement to purchase products or services, and have the charge for the product or service appear on the subscriber's telephone bill.

**Rule 3: Emergency Services 911 / E911**

(a)     All carriers and voice service providers providing end-user access to the public switched telephone network shall, to the extent permitted by existing technology or facilities and in accordance with all applicable Federal Communications Commission orders, provide every residential telephone connection, and every wireless device technologically compatible with its system, with access to 911 emergency service regardless of whether an account has been established.

(b)     No carrier shall terminate such access to 911 emergency service for non-payment of any delinquent account or indebtedness owed to the carrier.

(c)     Nothing in this rule shall require a local telephone corporation to provide 911 emergency service pursuant to this section if doing

D06-03-013, as amended by D10-10-034

so would preclude providing service to subscribers of residential telephone service.

D06-03-013, as amended by D10-10-034

## PART 3 – Rules Governing Slamming Complaints

### A. Purpose and Scope

The purpose of these rules is to establish carriers' and subscribers' rights and responsibilities, and the procedures both must follow, for addressing slamming complaints that involve California's regulated telecommunications carriers. Slamming is the unauthorized change of a subscriber's presubscribed carrier. These California-specific rules are designed to supplement and work in conjunction with corresponding rules issued by the Federal Communications Commission.

The California Public Utilities Commission is the primary adjudicator of both intrastate and interstate slamming complaints in California. A subscriber may request that the FCC rather than the Commission handle an interstate slamming complaint, in which case the FCC would apply its rules, and these rules would govern any related intrastate complaint. Where these rules differ from the FCC's slamming rules, the differences are in recognition of California-specific issues and are consistent with the FCC's mandate to the states.

Compliance with these rules does not relieve carriers of other obligations they may have under their tariffs, other Commission General Orders and decisions, FCC orders, and state and federal statutes. Nor do these rules limit any rights a consumer may have.

The Commission intends to continue its policy of cooperating with law enforcement authorities to enforce consumer protection laws.

These rules shall not be interpreted to create any new private right of action, to abridge or alter a right of action under any other state or federal law, or to create liability that would not exist absent the foregoing rules.

These rules take precedence over any conflicting tariff provisions on file at the Commission. The remedies provided by these rules are in addition to any others available by law.

The standard to be applied in the construction and application of these rules is that of a reasonable consumer.

D06-03-013, as amended by D10-10-034

## B. Definitions

*Authorized Carrier*:  Any telecommunications carrier that submits a change, on behalf of a subscriber, in the subscriber's selection of a provider of telecommunications service with the subscriber's authorization verified in accordance with state and federal law.

*Commission:*  California Public Utilities Commission, unless otherwise noted.

*Consumer Affairs Branch (CAB)*: The Commission office where California consumers may complain about a utility service or billing problem they have not been able to resolve with the utility.

*Days*:  Calendar days, unless otherwise noted.

*Executing Carrier*:  Any telecommunications carrier that effects a request that a subscriber's telecommunications carrier be changed.  A carrier may be treated as an executing carrier, however, if it is responsible for any unreasonable delays in the execution of carrier changes or for the execution of unauthorized carrier changes, including fraudulent authorizations.

*FCC*:  Federal Communications Commission.

*LATA*:  Local Access and Transport Area.

*Submitting Carrier*:  Any telecommunications carrier that requests on the behalf of a subscriber that the subscriber's telecommunications carrier be changed and seeks to provide retail services to the end user subscriber.  A carrier may be treated as a submitting carrier, however, if it is responsible for any unreasonable delays in the submission of carrier change requests or for the submission of unauthorized carrier change requests, including fraudulent authorizations.

D06-03-013, as amended by D10-10-034

*Subscriber:*  Any one of the following:

> (1)  The party identified in the account records of a carrier as responsible for payment of the telephone bill;
>
> (2)  Any adult person authorized by such party to change telecommunications services or to charge services to the account; or
>
> (3)  Any person contractually or otherwise lawfully authorized to represent such party.

*Unauthorized Carrier*:  Any telecommunications carrier that submits a change, on behalf of the subscriber, in the subscriber's selection of a provider of telecommunications service but fails to obtain the subscriber's authorization verified in accordance with state and/or federal law.

*Unauthorized Change*:  A change in a subscriber's selection of a provider of telecommunications service that was made without authorization verified in accordance with the verification procedures described in state and/or federal law.

### C.  Authorization and Verification of Orders for Telecommunications Services

Authorization and verification of orders for telecommunications services shall be done in accordance with applicable state and federal laws.

### D.  Carrier Liability for Slamming

> (a)  Carrier Liability for Charges. Any submitting telecommunications carrier that fails to comply with the required procedures for changing carriers or verifying subscriber authorization shall be liable to the subscriber's properly authorized carrier in an amount equal to 150% of all charges paid to the submitting telecommunications carrier by such subscriber after such violation, as well as for additional amounts as prescribed in Part 3.G. The remedies provided in this Part 3 are in addition to any other remedies available by law.

D06-03-013, as amended by D10-10-034

(b)   Subscriber Liability for Charges. Any subscriber whose selection of telecommunications services provider is changed without authorization verified in accordance with legally-required procedures is liable for charges as follows:

(1)   If the subscriber has not already paid charges to the unauthorized carrier, the subscriber is absolved of liability for charges imposed by the unauthorized carrier for service provided during the first 30 days after the unauthorized change. Upon being informed by a subscriber that an unauthorized change has occurred, the authorized carrier, the unauthorized carrier, or the executing carrier shall inform the subscriber of this 30-day absolution period. Any charges imposed by the unauthorized carrier on the subscriber for service provided after this 30-day period shall be paid by the subscriber to the authorized carrier at the rates the subscriber was paying to the authorized carrier at the time of the unauthorized change in accordance with the provisions of Part 3.F(e).

(2)   If the subscriber has already paid charges to the unauthorized carrier, and the authorized carrier receives payment from the unauthorized carrier as provided for in paragraph (a) of this section, the authorized carrier shall refund or credit to the subscriber any amounts determined in accordance with the provisions of Part 3.G(c).

(3)   If the subscriber has been absolved of liability as prescribed by this section, the unauthorized carrier shall also be liable to the subscriber for any charge required to return the subscriber to his or her properly authorized carrier, if applicable.

D06-03-013, as amended by D10-10-034

### E.  Resolution of Unauthorized Changes in Preferred Carrier

(a)     Notification of Alleged Unauthorized Carrier Change. Executing carriers who are informed of an unauthorized carrier change by a subscriber must immediately notify both the authorized and allegedly unauthorized carrier of the incident. This notification must include the identity of both carriers.

(b)     Referral of Complaint.  Any carrier, executing, authorized, or allegedly unauthorized, that is informed by a subscriber or an executing carrier of an unauthorized carrier change shall direct that subscriber to CAB for resolution of the complaint.

(c)     Notification of Receipt of Complaint. Upon receipt of an unauthorized carrier change complaint, CAB will notify the allegedly unauthorized carrier of the complaint and order that the carrier remove all unpaid charges for the first 30 days after the slam from the subscriber's bill pending a determination of whether an unauthorized change, as defined by Part 3.B., has occurred, if it has not already done so.

(d)     Proof of Verification. Not more than twenty business days after notification of the complaint, the alleged unauthorized carrier shall provide to CAB a copy of any valid proof of verification of the carrier change. This proof of verification must contain clear and convincing evidence of a valid authorized carrier change. CAB will determine whether an unauthorized change, as defined by Part 3.B., has occurred using such proof and any evidence supplied by the subscriber. Failure by the carrier to respond or provide proof of verification will be presumed to be clear and convincing evidence of a violation.

D06-03-013, as amended by D10-10-034

### F. Absolution Procedure where the Subscriber has not Paid Charges

(a)    This section shall only apply after a subscriber has determined that an unauthorized change, as defined by Part 3.B., has occurred and the subscriber has not paid charges to the allegedly unauthorized carrier for service provided for 30 days, or a portion thereof, after the unauthorized change occurred.

(b)    An allegedly unauthorized carrier shall remove all charges incurred for service provided during the first 30 days after the alleged unauthorized change occurred, as defined by Part 3.B., from a subscriber's bill upon notification that such unauthorized change is alleged to have occurred.

(c)    An allegedly unauthorized carrier may challenge a subscriber's allegation that an unauthorized change, as defined by Part 3.B., occurred.  An allegedly unauthorized carrier choosing to challenge such allegation shall immediately notify the complaining subscriber that:  the complaining subscriber must file a complaint with CAB within 30 days of either:  the date of removal of charges from the complaining subscriber's bill in accordance with paragraph (b) of this section or; the date the allegedly unauthorized carrier notifies the complaining subscriber of the requirements of this paragraph, whichever is later; and a failure to file such a complaint within this 30-day time period will result in the charges removed pursuant to paragraph (b) of this section being reinstated on the subscriber's bill and, consequently, the complaining subscriber will only be entitled to remedies for the alleged unauthorized change other than those provided for in Part 3.D(b)(1). No allegedly unauthorized carrier shall reinstate charges to a subscriber's bill pursuant to the provisions of this paragraph without first providing such subscriber with a reasonable opportunity to demonstrate that the requisite complaint was timely filed within the 30-day period described in this paragraph.

D06-03-013, as amended by D10-10-034

(d)    If CAB, under Part 3.H. below, determines after reasonable investigation that an unauthorized change, as defined by Part 3.B., has occurred, it shall notify the carriers involved that the subscriber is entitled to absolution from the charges incurred during the first 30 days after the unauthorized carrier change occurred, and neither the authorized or unauthorized carrier may pursue any collection against the subscriber for those charges.

(e)    If the subscriber has incurred charges for more than 30 days after the unauthorized carrier change, the unauthorized carrier must forward the billing information for such services to the authorized carrier, which may bill the subscriber for such services using either of the following means:

The amount of the charge may be determined by a re-rating of the services provided based on what the authorized carrier would have charged the subscriber for the same services had an unauthorized change, as described in Part 3.B., not occurred; or

The amount of the charge may be determined using a 50% Proxy Rate as follows: Upon receipt of billing information from the unauthorized carrier, the authorized carrier may bill the subscriber for 50% of the rate the unauthorized carrier would have charged the subscriber for the services provided. However, the subscriber shall have the right to reject use of this 50% proxy method and require that the authorized carrier perform a re-rating of the services provided, as described in paragraph (e)(1) of this section.

(f)    If the unauthorized carrier received payment from the subscriber for services provided after the first 30 days after the unauthorized change occurred, the obligations for payments and refunds provided for in Part 3.G. shall apply to those payments. If CAB, under Part 3.H. below, determines after reasonable investigation that the carrier change was

- 15 -

D06-03-013, as amended by D10-10-034

authorized, the carrier may re-bill the subscriber for charges incurred.

**G. Reimbursement Procedures where the Subscriber has Paid Charges**

(a)    The procedures in this section shall only apply after a subscriber has determined that an unauthorized change, as defined by Part 3.B., has occurred and the subscriber has paid charges to an allegedly unauthorized carrier.

(b)    If CAB, under Part 3.H. below, determines after reasonable investigation that an unauthorized change, as defined by Part 3.B., has occurred, it shall direct the unauthorized carrier to forward to the authorized carrier the following:

(1)    An amount equal to 150% of all charges paid by the subscriber to the unauthorized carrier; and

(2)    Copies of any telephone bills issued from the unauthorized carrier to the subscriber.  This order shall be sent to the subscriber, the unauthorized carrier, and the authorized carrier.

(c)    Within ten days of receipt of the amount provided for in paragraph (b)(1) of this section, the authorized carrier shall provide a refund or credit to the subscriber in the amount of 50% of all charges paid by the subscriber to the unauthorized carrier. The subscriber has the option of asking the authorized carrier to re-rate the unauthorized carrier's charges based on the rates of the authorized carrier and, on behalf of the subscriber, seek an additional refund from the unauthorized carrier, to the extent that the re-rated amount exceeds the 50% of all charges paid by the subscriber to the unauthorized carrier.  The authorized carrier shall also send notice to CAB that it has given a refund or credit to the subscriber.

(d)    If an authorized carrier incurs billing and collection expenses in collecting charges from the unauthorized carrier, the

D06-03-013, as amended by D10-10-034

unauthorized carrier shall reimburse the authorized carrier for reasonable expenses.

(e)    If the authorized carrier has not received payment from the unauthorized carrier as required by paragraph (c) of this section, the authorized carrier is not required to provide any refund or credit to the subscriber. The authorized carrier must, within 45 days of receiving CAB's determination as described in paragraph (b) of this section, inform the subscriber and CAB if the unauthorized carrier has failed to forward to it the appropriate charges, and also inform the subscriber of his or her right to pursue a claim against the unauthorized carrier for a refund of all charges paid to the unauthorized carrier.

(f)    Where possible, the properly authorized carrier must reinstate the subscriber in any premium program in which that subscriber was enrolled prior to the unauthorized change, if the subscriber's participation in that program was terminated because of the unauthorized change. If the subscriber has paid charges to the unauthorized carrier, the properly authorized carrier shall also provide or restore to the subscriber any premiums to which the subscriber would have been entitled had the unauthorized change not occurred.  The authorized carrier must comply with the requirements of this section regardless of whether it is able to recover from the unauthorized carrier any charges that were paid by the subscriber.

*[Comment:Nothing in these Part 3 rules is intended to prohibit a subscriber and an alleged unauthorized carrier from making mutually-agreeable arrangements for compensating the subscriber and restoring the service to the authorized carrier without the subscriber's having to file a complaint with CAB; provided, however, that the alleged unauthorized carrier must first have informed the subscriber of the 30-day absolution period and the subscriber's right to file such a complaint.]*

D06-03-013, as amended by D10-10-034

### H. Informal Complaints

The following procedures shall apply to informal complaints to the Commission alleging an unauthorized change of a subscriber's preferred carrier, as defined by P.U. Code § 2889.5 or the FCC's slamming rules.

(a)    *Address:* Complaints may be mailed to:

>     Slamming Complaints
>     Consumer Affairs Branch
>     California Public Utilities Commission
>     505 Van Ness Avenue
>     San Francisco, CA  94102

(b)    *Form:* The complaint shall be in writing, and should contain: (1) the complainant's name, address, telephone number, and e-mail address (if the complainant has one);  (2) the names of the alleged unauthorized carrier, the authorized carrier, and the executing carrier, if known;  (3) the date of the alleged unauthorized change, if known;  (4) a complete statement of the facts (including any documentation) showing that the carrier changed the subscriber's preferred carrier without authorization;  (5) a copy of the subscriber's bill which contains the unauthorized changes; (6) a statement of whether the complainant has paid any disputed charges to the alleged unauthorized carrier; and (7) a statement of the specific relief sought.

(c)    *Procedure:*

>     CAB staff will acknowledge receipt of subscriber's complaint and inform the subscriber of the procedures for resolving it.

>     CAB will notify the executing carrier, the authorized carrier, and the alleged unauthorized carrier of the alleged unauthorized change.

D06-03-013, as amended by D10-10-034

CAB staff will require the alleged unauthorized carrier to produce evidence of authorization and verification, and any other information or documentation CAB staff may need to resolve the subscriber's complaint. The alleged unauthorized carrier shall provide evidence of subscriber authorization and verification within twenty (20) business days of CAB's request. If a carrier requests an extension of time from CAB staff, the carrier shall provide a written explanation why the required explanation cannot be provided within twenty (20) days, and an estimate of when it will provide the information. If evidence of authorization and verification is not provided within twenty (20) business days, a presumption exists that an unauthorized change occurred, and CAB staff will find that an unauthorized change did occur.

Upon request by CAB staff for information other than the subscriber authorization and verification, the alleged unauthorized carrier shall provide such information within twenty business days of CAB's request or provide a written explanation as to why the information cannot be provided within the required twenty business days and an estimate of when it will provide the information.

CAB staff will determine whether an unauthorized change has occurred. CAB's investigation may include review of the alleged subscriber authorization, verification, solicitation methods and materials, and any other information CAB staff determines is relevant to the investigation.

Upon concluding its investigation, CAB staff will inform the subscriber, the executing carrier, the alleged unauthorized carrier, and the authorized carrier of its decision.

D06-03-013, as amended by D10-10-034

(d)    *Appeals:*

    (1)    If the subscriber is not satisfied with CAB staff decision, the subscriber may appeal the decision to a Consumer Affairs Manager.  The subscriber shall present new information or explain any factual or legal errors made in CAB staff decision.

    (2)    If the subscriber is not satisfied with the resolution of the complaint by the Consumer Affairs Manager, the subscriber may file a formal complaint with the Commission according to the Commission's Rules of Practice and Procedure, Article 3.

    (3)    If CAB staff finds that an unauthorized change has occurred but the unauthorized carrier disagrees and pursues billing or collection against the subscriber, CAB staff will forward this information to Commission's enforcement staff and advise the subscriber to file a formal complaint.

D06-03-013, as amended by D10-10-034

## Part 4 – California Telephone Corporation Billing Rules[2]

1.    Applicability:

These rules apply to all Billing Telephone Corporations and Billing Aggregators and specify the responsibilities and procedures that must be followed to address and report cramming-related issues.  Cramming occurs when an unauthorized charge is placed on a Subscriber's telephone bill.

These rules supersede the rules adopted in Decision (D.) 00-03-020, as modified by D.00-11-015, and replace General Order 168, Part 4, adopted in D.06-03-013.  Compliance with these rules does not relieve Billing Telephone Corporations of other obligations they may have under their tariffs, other Commission General Orders and decisions, FCC orders, and state and federal statutes.

These rules shall not be interpreted to create any new private right of action, to abridge or alter a right of action under any other state or federal law, or to create liability that would not exist absent the foregoing rules.

2.    Definitions:

2.1.    Billing Agents:  Any entity which provides billing services for Service Providers directly or indirectly through a Billing Telephone Corporation.

2.2.    Complaint:  Any written or oral communication from a Subscriber alleging that an unauthorized charge was included in the Billing Telephone Corporation's bill to the Subscriber.

2.3.    Service Provider:  A person or entity, other than a Billing Telephone Corporation, that originates the charge or charges that are billed to the Subscriber of the Billing Telephone Corporation.

---

[2] As adopted by the Commission in D.10-10-034, and corrected in D.11-01-009.

D06-03-013, as amended by D10-10-034

2.4.  Billing Telephone Corporation:  A telephone corporation that bills a Subscriber for products and services provided by a third-party, including corporate affiliates.

2.5.  Telephone Corporation:  Any telephone corporation (as defined in Pub. Util. Code § 234) operating within California. This term includes resellers and wireless telephone service providers.

2.6.  Unauthorized Charge:  Any charge placed upon a Subscriber's telephone bill for a service or goods that the Subscriber did not agree to purchase, including any charges that resulted from false, misleading, or deceptive representations.  Charges that relate to a change in a subscriber's selection of a provider of telecommunications service are excluded from these rules and are subject to Part 3 (Rules Governing Slamming Complaints) of this General Order.

2.7.  Subscriber:  Either one of the following:

(1)  The person or entity identified in the account records of a carrier as responsible for payment of the telephone bill;

(2)  Any person authorized by such party to charge services to the account;

(3)  Any person lawfully in possession of a wireless handset where the subscriber of record, after being fully informed of the optional nature of this feature and the associated responsibilities, has authorized the Billing Telephone Corporation to place third-party charges on the Subscriber's bill for the line serving the handset.  This provision does not relieve the subscriber of any obligation to under their service agreement to promptly report a lost or stolen wireless handset to the Billing Telephone Corporation.

D06-03-013, as amended by D10-10-034

      2.8.    Investigation:  An inquiry conducted by (i) the person or entity from which the disputed charge originated, (ii) a Billing Telephone Corporation, (iii) the Commission, or (iv) any other relevant government agency, such as the District Attorney's office in the Subscriber's county or the State Attorney General.

3.      Authorization Required:

Billing Telephone Corporations shall only place charges that have been authorized by the Subscriber on the Subscriber's telephone bill.  All charges billed without Subscriber authorization are unlawful.

All disputed charges for which no verification of Subscriber authorization is available are subject to a rebuttable presumption that the charges are unauthorized.  A Billing Telephone Corporation may establish that the Subscriber authorized the charge by (i) providing a record of affirmative authorization from the Service Provider, (ii) a demonstrated pattern of knowledgeable past use, or (iii) other persuasive evidence of authorization.  With regard to direct dialed telephone services, evidence that a call was dialed is prima facie evidence of authorization.  This presumption can be rebutted with evidence that the call was not authorized.

4.      Billing for Authorized Charges Only:

Billing Telephone Corporations shall bill Subscribers only for authorized charges.  Billing Telephone Corporations shall adopt protocols which prohibit Billing Agents and Service Providers from submitting, directly or indirectly, charges for billing through a Billing Telephone Company that the Subscriber has not authorized.  Billing Telephone Corporations must monitor or cause to be monitored, either directly or through a Billing Agent, or other entity, each Service Provider's continuing compliance with this requirement.  Such monitoring shall include review of the Service Provider's marketing materials, scripts, customer verification records, or other such information as may be necessary to demonstrate that the Service Provider is obtaining valid Subscriber authorizations.

D06-03-013, as amended by D10-10-034

5.    Responsibilities of Billing Telephone Corporations:

The Billing Telephone Corporation bears ultimate responsibility for all items presented in a Subscriber's bill and must take the following measures to ensure that only authorized charges from lawful Billing Agents and Service Providers are included in the bill.  Prior to approving a Service Provider or Billing Agent for the provision of billing services, the Billing Telephone Corporation shall directly or through another entity conduct a reasonable inquiry of the Service Provider's or Billing Agent's history of violations of state or federal law or rules relating to consumer protection and current ability to operate lawfully.

At service initiation, all Billing Telephone Corporations shall disclose to Subscribers that the Billing Telephone Corporation has opted to provide billing and collection services to Third Parties and that such charges may be placed on the Subscriber's bill, absent action by the Subscriber.

Wireless Billing Telephone Corporations shall explain at service initiation in clear and concise written terms that the Subscriber's line is open to charges from third party Service Providers and that the Subscriber has the option to block these charges.  The Billing Telephone Corporation shall not charge for blocking and must allow Subscribers to add or remove this feature quickly and easily.  Billing Telephone Corporations must remind Subscribers in writing no less than once each calendar year that third-party charges may be placed on the bill and of the option to block such charges at anytime and at no additional cost. The Billing Telephone Corporation shall explain the blocking option in neutral terms and shall not attempt to influence the Subscriber's decision.

For wireline Billing Telephone Corporations, this option to block third-party services shall not extend to any services they are required by law to provide, such as the option to purchase long distance services from a competitor, or services or products offered by their affiliates.

The Billing Telephone Corporation has an affirmative duty to investigate Subscriber allegations of unauthorized billings, and where there are reasonable grounds of concern that a pattern of unauthorized charges may have occurred, to take the initiative to determine whether other Subscribers may have been subjected to unauthorized charges.  The Billing

- 24 -

D06-03-013, as amended by D10-10-034

Telephone Corporation shall resolve all Subscriber complaints of unauthorized charges as required in Rule 8, Resolution.  If a Subscriber contacts the Billing Telephone Corporation to dispute a billed item from a Service Provider, the Billing Telephone Corporation must promptly address and resolve the dispute without deflecting the Subscriber to the alleged Service Provider.  Except as allowed under these rules, the Billing Telephone Corporation shall not state or imply the law or regulations require it to provide billing services to third parties.

6.     Monitoring of Subscriber Billings:

Each Billing Telephone Corporation is responsible for monitoring the billings it controls for the purpose of preventing and detecting unauthorized charges, and for the prompt termination of billing services to Billing Agents and Service Providers that present unauthorized charges. Each Billing Telephone Corporation shall have in place and comply with a protocol for identifying unauthorized charges and suspending or terminating billing services to any Billing Agent or Service Provider that has submitted unauthorized charges.

7.     Nonpayment of Charges during an Investigation:

While a complaint investigation is pending, the Subscriber shall not be required to pay the disputed charge or any associated late charges or penalties; the charge may not be sent to collection; and no adverse credit report may be made based on non-payment of that charge.  Pursuant to Pub. Util. Code § 2889.9(g), Billing Telephone Corporations, Billing Agents and Service Providers shall provide all requested information and shall cooperate fully with the Commission's staff in any investigation and prosecution.

8.     Resolution:

If a Billing Telephone Corporation or Billing Agent receives a complaint that the Subscriber did not authorize the purchase of the product or service associated with a charge, the Billing Telephone Corporation or Billing Agent, whichever is the recipient of the complaint, not later than 30 days from the date on which the complaint is received, shall either (i) verify and advise the Subscriber of authorization of the disputed charge or (ii) credit

D06-03-013, as amended by D10-10-034

the disputed charge and any associated late charges or penalties to the Subscriber's bill, and offer the option of blocking all future third party billings at no charge as set forth in Rule 5.

9.    Other Available Rights:

Nothing herein shall prevent a Subscriber from exercising his or her other rights.  The Billing Telephone Corporation shall also notify the Service Provider of any credits issued.

10.    Record Retention for Refunds:

The Billing Telephone Corporation is ultimately responsible for refunding all unauthorized charges collected from its Subscribers, including those Subscribers who may have mistakenly paid the unauthorized charges and not requested a refund.  Every Billing Telephone Corporation and Billing Agent shall maintain accurate and up-to-date records of all billings and Service Providers sufficient to demonstrate compliance with these rules and to facilitate customer refunds.  Such records shall be retained for no less than twenty-four months.

In order to enable refunds to Subscribers, Billing Telephone Corporations and Billing Agents must retain records containing the following information:

    (a)    the Subscriber name;

    (b)    the Subscriber telephone number;

    (c)    the name of the Service Provider responsible for the charge complained about;

    (d)    the name of the Billing Agent(s), if any;

    (e)    the amount of the alleged unauthorized charge and the date the charge was incurred and billed;

    (f)    a description of the product or service billed;

D06-03-013, as amended by D10-10-034

(g)  for Billing Agents, the total dollars billed and total amount refunded for each Service Provider; for Billing Telephone Corporations, the total dollars billed and total dollars refunded for each Service Provider for which the Billing Telephone Company directly bills  and each Billing Agent; and

(h)  for Billing Agents, the total number of working telephone numbers or purchases billed by each Service Provider; for Billing Telephone Corporations, the total number of working telephone numbers or purchases billed by each Service Provider for which the Billing Telephone Corporation directly bills and each Billing Agent.  Flexible Compliance Option:  Billing Telephone Corporations and Billing Agents may also elect to maintain records that meet the Commission's standard of sufficient information to enable refunds to customers but do not include each item listed above.

11.  Reporting Requirements

11.1.  All wireless Billing Telephone Corporations shall create a calendar month summary report every quarter listing refunds made to Subscribers with California area codes for charges originated by Service Providers.  The report of refunds shall be summarized by Service Provider and contain the following information:

(a)  Name of Service Provider

(b)  Name of Billing Agent (if any)

(c)  Description of service provided

(d)  Total number of purchases by Subscribers

(e)  Total amount billed by the Billing Telephone Corporation on behalf of the Service Provider

(f)  Total number refunds to Subscribers

- 27 -

D06-03-013, as amended by D10-10-034

       (g)   Total amount refunded by the Billing
            Telephone Corporation

The Report of Refunds shall be submitted to the Director of the Commission's Consumer Protection and Safety Division pursuant to the following schedule:

- Report for January, February, and March due no later than April 30th;

- Report for April, May, and June due no later than July 31st;

- Report for July, August, and September due no later than October 31st; and

- Report for October, November, and December due no later than January 31st of the following year.

11.2.   All wireless Billing Telephone Corporations shall create a calendar month summary report every quarter listing all third party services that have been suspended or terminated. These services shall include, but are not limited to, Premium short messaging service (SMS) campaigns. The report of suspensions and terminations shall not include services that are complete or otherwise expired and may be based on national data. The report of suspensions and terminations shall be summarized by Service Provider and contain the following information:

    (a)   Name and contact information of Service Provider

    (b)   Description of service that was suspended or terminated

    (c)   Whether service was suspended or terminated

    (d)   Reason for suspension or termination. If the service is suspended, the date or conditions for reinstatement should be included.

D06-03-013, as amended by D10-10-034

The Report of Suspensions and Terminations shall be submitted to the Director of the Commission's Consumer Protection and Safety Division pursuant to the following schedule:

- Report for January, February, and March due no later than April 30th;

- Report for April, May, and June due no later than July 31st;

- Report for July, August and September due no later than October 31st; and

- Report for October, November, and December due no later than January 31st of the following year.

11.3.   All wireline Billing Telephone Corporations and their Billing Agents shall create a calendar month summary report which shall include the following information:

(a)   the total number of consumer complaints received each month for each Service Provider and Billing Agent;

(b)   Billing Telephone Corporations shall report the name, address, and telephone number of each entity receiving complaints, excluding Billing Agents;

(c)   the total number of working telephone numbers billed for each entity for which complaints were received;

(d)   for Billing Agents, the total number of subscribers billed by each Service Provider for which complaints were received; for Billing Telephone Corporations, the total number of Subscribers billed by each Service Provider for which the Billing Telephone Corporation directly bills and each billing agent;

(e)   for Billing Agents, the total dollars billed by each Service Provider; for Billing Telephone Corporation, the total dollars billed by each Service Provider for which the

D06-03-013, as amended by D10-10-034

> Billing Telephone Corporation directly bills and each Billing Agent.

The Report of Consumer Complaints shall be submitted to the Director of the Commission's Consumer Protection and Safety Division pursuant to the following schedule:

- Report for January, February, and March due no later than April 30th;

- Report for April, May, and June due no later than July 31st;

- Report for July, August, and September due no later than October 31st; and

- Report for October, November, and December due no later than January 31st of the following year.

If no complaints exist, in lieu of this report, a letter shall be sent to the Director of the Consumer Protection and Safety Division affirmatively stating that no complaints exist for the quarter.

11.4.  If a Billing Telephone Corporation terminates a Billing Agent or Service Provider for any reason, it shall notify the Director of the Commission's Consumer Protection and Safety Division within 10 business days of the termination date.  The notification shall include the identity of the Service Provider or Billing Agent and any principals and the reason(s) for the termination.

11.5.  All Billing Telephone Corporations shall submit a report to the Director of the Commission's Consumer Protection and Safety Division once a year that documents the means offered to Subscribers to restrict or otherwise block third-party billing. The report shall contain copies of consumer information and describe the Billing Telephone Corporation's actions to publicize the availability of third party blocking.

11.6.  Exemptions from Reporting Requirement

- 30 -

D06-03-013, as amended by D10-10-034

The following types of Billing Telephone Corporations may by letter request that the Director of the Consumer Protection and Safety Division suspend or modify their obligation to file the Report of Refunds and the Report of Suspensions and Terminations:

> (a) Carriers offering wireless services through prepaid or pay in advance methods.

> (b) Carriers that provide service only to business or wholesale customers.

The letter request must demonstrate that the specific Billing Telephone Corporation provides the types of services specified and is in compliance with these rules, and that the filing of the report(s) is not necessary to protect Subscribers. The letter should be signed and verified in accordance with Rule 2.4 of the Commission's Rules of Practice and Procedure. Once an exemption is granted, a Billing Telephone Corporation shall file an annual certification or letter affirming that continued exemption is warranted. The annual certification or letter shall be signed and verified in accordance with Rule 2.4 of the Commission's Rules of Practice and Procedure.

The Director of the Consumer Protection and Safety Division may grant or deny, in whole or in part, or apply such conditions as may be necessary to protect Subscribers in response to the letter request. The Director of the Consumer Protection and Safety Division may also revoke the exemption for good cause.

12.    Ongoing Collaboration with Staff:

Representatives from the Consumer Protection and Safety Division and the Telecommunications Division shall meet at least annually with all wireless Billing Telephone Corporations who offer third-party services to their customers to discuss recent developments in the wireless industry regarding cramming issues and any Commission concerns regarding cramming.

D06-03-013, as amended by D10-10-034

13.   Consumer Education:

All Billing Telephone Corporations who offer third-party billing and collection services shall cooperate with the Telecommunications Division and the Consumer Protection and Safety Division and participate in meetings and workshops for the purpose of developing materials to educate consumers on how to avoid having unauthorized charges placed on bills.  The workshop, shall not only develop content for the CalPhoneInfo web site maintained by the Commission, but also shall discuss actions taken by the Billing Telephone Corporations to inform consumers of the ability to block third-party services and their related charges.

14.   Effect of Failure to Supply Reports:

Any Billing Telephone Corporation that fails to submit its reports in a complete and timely fashion is subject to citation by the Director of the Consumer Protection and Safety Division as follows:

(a)   Up to 30 days late, a citation requiring payment of $500 to the General Fund,

(b)   30 to 60 days late, a citation requiring payment of $5,000 to the General Fund, and

(c)   No less than 10 days before issuing a citation, the Director shall give the Billing Telephone Corporation or Billing Agent notice of the impending citation and an opportunity to submit the report.

In addition to the above-listed citations, any Billing Telephone Corporation failing to timely supply the required reports is subject to a Commission decision or resolution taking such further actions as may be necessary to protect the public interest.

D06-03-013, as amended by D10-10-034

15.    Actions Based on Reported Information:

The Consumer Protection and Safety Division may request that a Billing Telephone Corporation or Billing Agent provide further information concerning a Service Provider.  This requested information may include, but is not limited to, the Service Provider's contact information, Subscriber name and telephone number, and the amount of the alleged unauthorized charge.  The Billing Telephone Corporation and Billing Agents shall provide all requested information within a reasonable period and shall cooperate fully with the Commission's staff in any investigation and prosecution.

The Consumer Protection and Safety Division, in consultation with the Communications Division, may convene such industry-wide or carrier specific meetings or workshops as may be necessary to facilitate compliance with these rules and other law and regulations.

As provided in § 2889.9(b), the Commission's remedial statutory authority over public utilities, including the potential for fines up to $20,000 per violation, extends to all Service Providers and Billing Agents using the billing services of Billing Telephone Corporations.  Billing Agents and Service Providers, like Billing Telephone Corporations, are subject to such remedial directives as the Commission finds necessary to protect the public interest.