| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.** |
|---|---|
| 1251 Avenue of the Americas | 209 SW Oak Street, Suite 500 |
| New York, NY 10020 | Portland, OR 97204 |

MICHAEL D. BLATCHLEY
michaelb@blbglaw.com
(212) 554-1281

KEITH S. DUBANEVICH
KDubanevich@stollberne.com
(503) 972-7120

January 14, 2019

**VIA EMAIL AND HAND DELIVERY**
Honorable Michael J. Davis
United States District Court
U.S. Courthouse, Suite 13E
300 South Fourth Street
Minneapolis, MN 55415

Re: *In re CenturyLink Sales Practices and Sec. Litig.*, No. 0:17-md-02795-MJD-KMM; *Craig v. CenturyLink, Inc.*, No. 0:18-cv-00296-MJD-KMM ("*Craig*")

Dear Judge Davis:

We represent Lead Plaintiff Oregon in the *CenturyLink* securities class action.[1] We write to respectfully request leave to file as supplemental authority three recent decisions that further support denial of Defendants' motion to dismiss—*In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018), *Galestan v. OneMain Holdings, Inc.*, 2018 WL 6520960 (S.D.N.Y. Dec. 12, 2018), and *Pension Trust Fund for Operating Engs. v. DeVry Ed. Grp., Inc.*, 2018 WL 6714326 (N.D. Ill. Dec. 20, 2018). In these cases, the courts rejected arguments concerning falsity, scienter and loss causation that are strikingly similar to Defendants' here.

***First***, *Signet* and *OneMain* rejected arguments that statements similar to Defendants' here were immaterial "puffery." In *Signet*, Chief Judge McMahon held that statements in Signet's Code of Conduct that employment decisions were based "solely on" merit and that violations of the Code would be disciplined were not "puffery" in light of allegations that Signet conditioned employment decisions on female employees acceding to sexual advances and retaliated against those who reported harassment. *Signet*, 2018 WL 6167889, at *17. Here, CenturyLink similarly represented in its Code of Conduct that employees must never place an order "without that customer's authorization" and that "violations of the Code will not be tolerated" when, in reality, the Company rewarded employees cited for cramming, retaliated against those who reported violations, and cramming was so widespread that an internal audit calculated that CenturyLink potentially overbilled a third to one-half of its customers. *See* Opp. at 29-30.

*Signet* and *OneMain* also rejected arguments that statements concerning Signet's "conservatively managed" credit portfolio and the "early success" of a lending initiative at OneMain were puffery in light of the statements' context, specificity, and importance to investors. *Signet*, 2018 WL 6167889, at *11-12; *OneMain*, 2018 WL 6520960, at *15. Similarly, here, Defendants specifically (and falsely) attributed the Company's results to legitimate causes and its purported focus on "customer needs," including in direct response to analyst questions and to differentiate CenturyLink from its competitors, and disclaimed they

---

[1] References to "ECF No." are to docket entries in *Craig* and defined terms have the meanings set forth in Lead Plaintiff's Opposition. ECF No. 162 (the "Opp.").

Hon. Michael J. Davis
January 14, 2019
Page 2

were being "trite"—*i.e.*, "puffing"—when doing so. Opp. at 27-28.[2]

**Second**, *Signet*, *OneMain* and *DeVry* rejected arguments about allegations derived from the accounts of former employees ("FEs") that are nearly identical to those Defendants advance here. In *OneMain*, Judge Marrero found sufficient allegations that defendants had access to data and that reports containing information "would have gone to any executive in charge," and rejected arguments that scienter was not shown because only two FEs had any direct contact with the defendants and none claimed the defendants reviewed the reports. *OneMain*, 2018 WL 6520960, at *13. In *Signet*, Judge McMahon similarly rejected arguments about the reliability of (mostly "store-level") FEs as "improper on a motion to dismiss." *Signet*, 2018 WL 6167889, at *13-16. And in *DeVry*, Judge Alonso credited the account of an FE who allegedly reported a "risk of falsity" about company statements to someone who in turn reported those concerns to a named defendant. *DeVry*, 2018 WL 6714326, at *3-4. Here, numerous FEs interacted directly with Defendants or other senior executives and recounted that several Defendants received regular reports documenting extensive cramming at CenturyLink, that Defendant Post reviewed them (and complained that the numbers were too high), and that Defendant Bailey specifically admitted that CenturyLink had a cramming problem—allegations that are corroborated by the findings of an internal audit documenting potential overbilling of between one-third to half of all CenturyLink customers. *See* Opp. at 31, 33-39.[3] Indeed, here, four FEs consistently recounted Defendants' aborted attempt to address cramming, and their accounts corroborate Defendant Post's involvement in the effort and the fact it was abandoned because management could not tolerate the resulting drop in revenues. *See generally* Opp. at 33-41.

**Third**, *Signet* and *DeVry* rejected arguments about loss causation that track Defendants' arguments here. In those cases, loss causation was alleged where the stock declined following reports about documents filed in an arbitration proceeding (*Signet*, 2018 WL 6167889, at *18) and the announcement of a government lawsuit and contested regulatory action. *DeVry*, 2018 WL 6714326, at *5. Here, Rule 8 is similarly satisfied by Lead Plaintiff's allegations concerning the statistically significant declines following the disclosures of a whistleblower lawsuit, news concerning a wave of consumer class actions, and reports of the Minnesota Attorney General's lawsuit and detailed investigatory findings. *See* Opp. at 51-53.

We thank the Court for its attention to this matter.

Respectfully submitted,

Michael D. Blatchley          Keith S. Dubanevich

*Counsel for Lead Plaintiff Oregon and Lead Counsel for the Class*

---

[2] *OneMain* also rejected an argument mirroring Defendants' contention that Plaintiffs did not sufficiently "quantify" CenturyLink's cramming. There, as here, quantification was not "necessary to illustrate the alleged fraud" because defendants failed to disclose the "existence" of known, material problems. *OneMain*, 2018 WL 6520960, at *12-13; *see* Opp. 22-25, 35.

[3] Defendants' baseless speculation about Lead Plaintiff's investigation into the audit allegations (ECF No. 164 at 4-7) is wrong. Those allegations are not only corroborated by the Minnesota Attorney General, but also FE accounts, CenturyLink's failure to dispute them and its allegedly sanctionable discovery conduct in the Attorney General action. *See* Opp. 46-50; *Signet*, 2018 WL 6167889, at *9, 17-18 (crediting as "true" allegations not disputed in separate case).

Hon. Michael J. Davis
January 14, 2019
Page 3

cc: Gregg M. Fishbein
Lockridge Grindal Nauen PLLP
*Liaison Counsel for Oregon*

All attorneys of record (via email)