# Cooley

Patrick E. Gibbs  
+1 650 843 5535  
pgibbs@cooley.com

VIA ECF

January 22, 2019

Honorable Michael J. Davis  
United States District Court  
U.S. Courthouse, Suite 13E  
300 South Fourth Street  
Minneapolis, MN 55415

Re:  *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-md-2795-MJD-KMM; *Craig v. CenturyLink, Inc.*, No. 18-cv-00296-MJD-KMM

Dear Judge Davis:

We respectfully write with the Court's prior permission to address Plaintiffs' January 14, 2019 letter. Plaintiffs' letter goes far beyond a simple notification of the issuance of certain out-of-circuit trial court opinions; instead, Plaintiffs' letter uses these decisions as a pretext to submit what amounts to an unauthorized sur-reply in opposition to Defendants' Motion to Dismiss ("Mot.").[1]  Motions to dismiss securities fraud complaints are decided with such frequency that our search found twenty-three such decisions nationwide since November 9, 2018.[2]  Plaintiffs should not be permitted to cherry-pick any such new decision to use as a vehicle to revisit their Opposition, as that would burden the Court with endless cycles of briefing.

In any event, none of the three cases Plaintiffs identified alter the legal landscape governing the Motion to Dismiss in this case. Although Plaintiffs assert that the cases are "strikingly similar" to the instant matter, all are in fact distinguishable and, in some instances, actually reinforce Defendants' arguments.

***First***, Plaintiffs claim that two cases, *In re Signet Jewelers Ltd Sec. Litig.*, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018), and *Galestan v. OneMain Holdings, Inc.*, 2018 WL 6520960 (S.D.N.Y. Dec. 12, 2018), support their contention that Defendants made materially false statements related to the Company's commitment to customer service in the Code of Conduct and during investor calls. In fact, the *Signet* court ***dismissed*** claims based on statements "touting the importance of Signet's relationship with its employees and

---

[1] This letter brief uses the same defined terms as were defined in the Motion to Dismiss.  
[2] Of the twenty-three, ***ten*** motions to dismiss in securities fraud claims were granted in full.  *See Emerson v. Genocea Biosciences, Inc.*, 2018 WL 6413145 (D. Mass. Dec. 6, 2018); *Rezvani v. Jones*, 2018 WL 6680568 (C.D. Cal. Dec. 17, 2018); *Fries v. N. Oil & Gas, Inc.*, 2018 WL 6493097 (S.D.N.Y. Dec. 10, 2018); *Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771 (N.D. Cal. Dec. 13, 2018); *JFURTI, LLC v. Singal*, 2018 WL 6332907 (S.D.N.Y. Nov. 12, 2018); *New Enterprises Ltd. v. SenesTech Inc.*, 2018 WL 6313193 (D. Ariz. Dec. 3, 2018); *Bhatt v. Tech Data Corp.*, 2018 WL 6504375 (M.D. Fla. Dec. 11, 2018); *Mandalevy v. Bofi Holding, Inc.*, 2018 WL 6436723 (S.D. Cal. Dec. 7, 2018); *In re Novan, Inc.*, 2018 WL 6732990 (M.D.N.C. Nov. 30, 2018); *Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc.*, 2018 WL 6787349 (C.D. Cal. Dec. 13, 2018).  Another ***four*** were granted in part.  *See De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832 (D.N.J. Dec. 31, 2018); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 2018 WL 6444237 (E.D. Pa. Dec. 10, 2018); *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882 (D.N.J. Dec. 6, 2018); *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 2018 WL 6605426 (S.D.N.Y. Dec. 17, 2018).

Cooley

Honorable Michael J. Davis
January 22, 2019
Page Two

consumer trust in the Signet brand" because they were "the sort of broad, aspirational, and vague puffery statements that no reasonable investor could possibly consider significant in making investment decisions." *Signet* at *18. The statements rejected in *Signet* mirror those that Plaintiffs here (wrongly) maintain are actionably false under federal securities law. *See e.g.*, Compl. ¶¶ 193-94, 205 (alleging that statements that CenturyLink was "focus[ed] on our customers, their needs," "rel[ied] on [its] call center personnel to promote sales of services that meet the needs of our customers," and attempted to "promote long-term relationships with our customers" were false and misleading); *see also* Mot. at 22-23; Reply at 14-16.

Plaintiffs also ignore a crucial distinction between this case and *OneMain* and *Signet*: the courts in *OneMain* and *Signet* allowed certain plaintiffs' claims to go forward because challenged statements were "directly at odds with the conduct alleged in the complaint." *Signet* at *17 ("the representations in Signet's Codes . . . are *directly contravened* by allegations in the FAC") (emphasis added); *OneMain* at *15 (defendants' statements about loan offerings were "contradicted" by information they had about productivity and delinquency concerns). Here, in contrast, none of the allegations in the Complaint demonstrate that any of the challenged statements were false: no allegations demonstrate that the Company was not actually focused on meeting its customers' needs, or was not committed to describing promotions accurately. And none support Plaintiffs' central claim that Defendants intentionally inflated and overstated CenturyLink's revenues through systematic "cramming." *See* Mot. at 15-20. Instead, the Complaint's allegations collectively suggest that, at most, the Company did not always succeed in the execution of its commitments or goals. *See* Mot. at 20-22; Reply at 14-15. That is not sufficient to state a securities fraud claim. *See Ong v. Chipotle*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018).

**Second**, Plaintiffs argue that *Signet* and *OneMain*, plus a third case, *Pension Trust Fund for Operating Engs. v. DeVry Ed Grp., Inc.*, 2018 WL 6714326 (N.D. Ill. Dec. 20, 2018), support their contention that the mostly low-level FEs identified in the Complaint credibly establish falsity and scienter. This too should be rejected. The accounts of the FEs in these cases are easily distinguishable from those in the Complaint. In each of the three cases, the confidential witnesses had first-hand knowledge of information that was concealed from the investing public and direct interactions that demonstrated the defendants' scienter. *See OneMain* at *13 (FEs established that individual defendants participated in numerous meetings and calls where they received reports that "detailed the negative effects of the Company's integration efforts" and directly contradicted the defendants' public statements); *Signet* at *13 (FEs "possessed first-hand knowledge" and showed that "Signet executives were aware" of the problem and "chose to disregard internal warnings"); *DeVry* at *2-3 (confidential witnesses recounted specific discussions, verified by others, with defendants regarding the precise statistic plaintiffs claimed was misleading and fraudulent).

The FEs in this Complaint do not remotely resemble those in these three cases. As detailed in our Motion, 17 of the 20 FEs have only second-hand information and *never* interacted directly with any Defendant. Mot. at 26; Reply at 17-18.[3] And no FE alleges that any Defendant knew that revenues were materially overstated and inflated by widespread cramming, which Plaintiffs must show to establish that Defendants' allegedly false statements were made with scienter. Mot. at 25-30.

Plaintiffs also attempt to revive their claims that "Defendant Bailey specifically admitted that CenturyLink had a cramming problem" and that there was an "aborted attempt to address cramming." These contentions should be dismissed out of hand. Reply at 4, 7-9. Both claims were fundamentally debunked by a documents—the authenticity of which Plaintiffs do not challenge—that were properly incorporated by reference into the Complaint. *See* Reply at 4 n.3, 8; Exs. 26, 33. Those documents reveal (1) that FE-5's conversation with Bailey was *not* about cramming, as the Complaint alleges, and (2) that Plaintiffs' narrative

---

[3] Plaintiffs attempted to avoid this fact by eliding the important distinction between Defendants and other so-called "senior executives." *See* Reply at 17-18.

# Cooley

Honorable Michael J. Davis
January 22, 2019
Page Three

regarding the "behavioral coaching model" could not have happened as Plaintiffs describe. Reply at 4, 8; Exs. 26, 33. Judicially-noticeable SEC filings also reveal that the revenue swings Plaintiffs attribute to this "aborted attempt to address cramming" actually *never happened*, which discredits their story entirely. See Reply at 8.

**Third**, Plaintiffs contend that *OneMain* supports their claim that they need not quantify the revenues they assert were inflated by cramming. But *OneMain*, in distinguishing its facts from other cases where quantification *was* required, actually demonstrates the opposite. The court in *OneMain* stated that "quantification is necessary to illustrate the fraud" where the claims involve "overstatement or overvaluation." *OneMain* at *12 (citing, *inter alia*, *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) (holding that allegations that sales were "'smaller than expected,' . . . were insufficient to support" a securities fraud claim without specifying the amount of the overstatement), *City of Roseville*, 814 F. Supp. 2d 399, 414 (S.D.N.Y. 2011) (plaintiffs' claim that value of a trust fund was overstated could not survive without specifying the amount of the decline)). That is, even according to the case Plaintiffs chose to bring to the Court's attention now, cases involving claims of overstated value, sales, or revenues—*i.e.*, exactly the type of claim Plaintiffs make here—require Plaintiffs to quantify the alleged fraud. Plaintiffs have never done that. Mot. at 15-20.

**Fourth**, relying on *Signet*, Plaintiffs argue that their blindly cut-and-pasted allegations regarding a so-called "audit" must be accepted at face value by the Court. This contention is particularly presumptuous, considering that Plaintiffs do not deny that they have never themselves seen any "audit" and thus cannot verify whether any such document even exists, much less what it contains. Reply at 4-7. In contrast, the plaintiffs in *Signet* did not simply copy and paste from advocacy pieces by other attorneys litigating other cases but instead reviewed evidentiary proof and sworn witness statements that were made public. *Signet* at *6. The *Signet* court did not countenance Plaintiffs' rote repetition of other litigants' unsubstantiated arguments, and indeed, courts routinely reject similar tactics.

**Finally**, Plaintiffs claim that *Signet* and *DeVry* show that the Complaint's skeletal loss causation allegations may suffice under the PSLRA. But, in both of those cases, disclosures directly exposed the falsity of the defendants' prior statements, revealing precisely what alleged misrepresentations had concealed. *Signet* at *4-5 (announcement of multiple investigations, plus a sale of the loan business that resulted in a $113 million loss, revealed falsity of defendants' past assurances of the business's health) and at *18 (revelation of the true and devastating nature of litigation defendants had mischaracterized in false and misleading statements); *DeVry* at *5 (announcement of investigations that revealed falsity of DeVry's flagship job placement statistic). In contrast, the alleged "disclosures" in this case did *not* reveal—or even allege conclusorily—that CenturyLink's revenues were materially overstated, which is Plaintiffs' core claim. Mot. at 32-33; Compl. ¶ 266 (alleging investigation announcements revealed "billing misconduct").[4] Plaintiffs' "new" authorities are thus entirely consistent with pre-existing case law finding that the announcement of "an investigation, without more, [to be] insufficient to establish loss causation." *Magro v. Freeport-McMoran Inc.*, 2018 WL 3725781, at *9 (D. Ariz. Aug. 3, 2018).

We respectfully thank the Court for considering our letter and look forward to appearing before the Court in support of Defendants' Motion to Dismiss.

---

[4] Purported revelations of "billing misconduct," without direct allegations demonstrating that CenturyLink's financial results were materially misstated, or that the defendants' statements concerning revenues and performance were false, do not suffice to state a claim for securities fraud. See Mot. at 15-16, 19-20.

# Cooley

Honorable Michael J. Davis
January 22, 2019
Page Four


Respectfully submitted,


*/s/ Patrick Gibbs*
Patrick E. Gibbs

cc:     All attorneys of record (via email)

Cooley LLP   3175 Hanover Street   Palo Alto, CA   94304-1130
t: (650) 843-5000  f: (650) 849-7400  cooley.com