# EXHIBIT C

1    STATE OF MINNESOTA                      DISTRICT COURT

2    COUNTY OF ANOKA              TENTH JUDICIAL DISTRICT

3    _____

4    State of Minnesota, by its
     Attorney General, Keith Ellison,
5
                    Petitioner,
6
        vs.                      TRANSCRIPT OF PROCEEDINGS
7
     CenturyTel Broadband    Court File No. 02 CV-17-3488
8    Services LLC, d/b/a
     CenturyLink Broadband
9    Services, Inc., d/b/a
     CenturyLink, Qwest Corporation,
10   d/b/a CenturyLink QC

11                  Respondent.

12   _____

13       Transcript of the proceedings in the motion

14   hearing held on the above-entitled matter on April

15   10, 2019, before the Honorable Bethany Fountain

16   Lindberg, Judge of District Court, in the Anoka

17   County Courthouse, Anoka, Minnesota.

18

19                  APPEARANCES:

20   James, Canaday, Deputy Attorney General, and Alex
     Baldwin, Assistant Attorney General, appeared for
21   and on behalf of the State.

22   David Aafedt, Esq., Doug Lobel, Esq., and Dana Moss,
     Esq., appeared for and on behalf of CenturyLink.
23

24

25   Court Reporter:  Christina De Grande

|       |                                                      |
|-------|------------------------------------------------------|
| 1     | THE COURT:  We're going to start the                 |
| 2     | case found on line 3 of the calendar.  State         |
| 3     | of Minnesota, by its Attorney General and            |
| 4     | CenturyLink, et cetera.                              |
| 10:37AM 5 | The first thing we're going to do is            |
| 6     | have everybody note their appearances.               |
| 7     | Let's start with the plaintiffs.                     |
| 8     | MR. CANADAY:  Good morning, Your Honor,              |
| 9     | Deputy Attorney General, James Canaday,              |
| 10:51AM 10 | C-a-n-a-d-a-y.                                   |
| 11    | THE COURT:  Thank you.                               |
| 12    | MR. BALDWIN:  Good morning, Your Honor.              |
| 13    | Assistant Attorney General, Alex Baldwin.            |
| 14    | THE COURT:  Okay.                                   |
| 10:59AM 15 | MR. AAFEDT:  Good morning, Your Honor.          |
| 16    | David Aafedt of the law firm Winthrop &              |
| 17    | Weinstine on behalf of CenturyLink,                  |
| 18    | defendants.  I also have with me co-counsel          |
| 19    | from the Cooley Law Firm, Dana Moss out of           |
| 11:13AM 20 | the Washington DC office, although               |
| 21    | originating from Lakeville, Minnesota; and           |
| 22    | Doug Lobel from the Virginia office of               |
| 23    | Cooley.                                              |
| 24    | THE COURT:  I didn't catch that last                |
| 11:19AM 25 | name.                                             |

1                    MR. AAFEDT:  Lobel.

2                    THE COURT:  Okay.

3                    MR. AAFEDT:  L-o-b-e-l.

4                    THE COURT:  Yes.

11:23AM  5           MR. LOBEL:  Good morning, Your Honor.

6                    THE COURT:  Good morning.  Have a seat.

7           Looks like we have several motions that are

8           on the table this morning.

9                    MR. AAFEDT:  If I may, Your Honor, due

11:32AM  10          to the fact we have five different motions,

11          we put together a syllabus that might be of

12          assistance to the Court and the parties to

13          walk through them in preparation for the

14          hearing today.

11:43AM  15          THE COURT:  Okay.

16                   MR. AAFEDT:  May I approach, Your

17          Honor?

18                   THE COURT:  You may.

19                   MR. AAFEDT:  Your Honor, as you know,

12:09PM  20          we have the State's four motions first

21          followed by the fifth motion which is

22          CenturyLink's Motion for Enforcement of the

23          Protective Order.  With respect to all of

24          the motions, there is some confidential

12:23PM  25          information contained within all of them,

State of Minnesota v. CenturyLink                    4

1          especially Number 5, the Motion for

2          Enforcement of the Protective Order.  We

3          conferred with the AG's office ahead of

4          time, and we belive that we can avoid

12:32AM 5  referencing any confidential material during

6          our arguments, so we do not believe, unless

7          Your Honor feels otherwise, that we need to

8          make any special arrangements.

9              I would note for the record, that we do

12:47AM 10 have folks not subject to the protective

11         order in this case present in the courtroom,

12         so if any party does believe there's a need

13         to reference the confidential material, we'd

14         ask the courtroom be sealed.

13:01AM 15     THE COURT:  Okay.  Is that your

16         agreement?

17             MR. BALDWIN:  That's our understanding

18         as well.  We're not intending to reference

19         any of the particular numbers in enforcement

13:14AM 20 of the Protective Order.

21             THE COURT:  All right.  That being

22         said, let's move to the State's Motion to

23         Amend the Complaint.

24             MR. BALDWIN:  Thank you, Your Honor.

13:26AM 25 If I might, I would just like to take a

```
         1              couple minutes to briefly describe how we

         2              got here today, what it is that we're

         3              requesting, and how we think we can get this

         4              litigation back on track as quickly as

13:37AM  5              possible.

         6                   THE COURT:  Okay.

         7                   MR. BALDWIN:  The State of Minnesota

         8              sued CenturyLink in July of 2017 alleging

         9              widespread fraud at the company.

13:43AM 10              Specifically, the State alleged that

        11              CenturyLink falsely promised low prices and

        12              discounts to consumers that it never

        13              provided.

        14                   Discovery to date shows that

13:53AM 15              CenturyLink engaged in deliberate corporate

        16              conduct to defraud tens of thousands of

        17              Minnesota consumers.  Specifically, the

        18              company used a very complex systems that

        19              removed discounts that its agents were

14:05AM 20              promising to customers thereby defrauding

        21              tens of thousands of people.

        22                   Shortly after the State filed this

        23              lawsuit, the company's board of directors

        24              conducted a six-month audit of millions of

14:19AM 25              corporate records.  That audit, the
```

1          company's own audit, determined that

2          CenturyLink did not accurately disclose

3          prices to consumers.  The audit determined

4          that consumers did not get discounts that

14:30AM 5          they were promised.  And the audit also

6          determined that CenturyLink did not correct

7          these problems in a timely fashion.

8              CenturyLink, in this litigation, has

9          hired an expert to analyze and audit just

14:43AM 10          one of the company's billing systems.  That

11          expert determined that CenturyLink engaged

12          in widespread fraud over a period of years

13          to falsely promise discounts it never

14          provided.

14:53AM 15              As I mentioned, I'm not going to

16          reference the specific number of consumers

17          that CenturyLink's expert determined it was

18          overbilled, but it's an alarming number.

19          That expert has also conducted nationwide

15:03AM 20          analysis and has provided similar figures to

21          others who are looking at CenturyLink's

22          illegal business practices.

23              This is an enormous case, and it's of

24          extreme importance to the State of

15:14AM 25          Minnesota.  It is possibly the largest

 1              consumer fraud action we have filed since

 2              the landmark tobacco litigation a quarter of

 3              a century ago.  Given the enormous

 4              allegations, what discovery shows to date,

 5              and the obstruction we've been dealing with,

 6              we believe the requests that we're making

 7              today are very modest in light of all this

 8              information.

 9                   Since the State initiated its

10              investigation nearly three years ago when

11              CenturyLink engaged in obstruction of the

12              State's pre-Complaint investigation, all the

13              way through CenturyLink's ability to

14              manufacture a half a year delay in the

15              consideration of these motions, we have been

16              dealing with a lot.  So I'm going to

17              identify for you the five priority requests

18              that the State is making today to get this

19              litigation to the consideration of the

20              merits as quickly as possible.

21                   With respect to the State's Motion for

22              Sanctions, we are asking the Court to order

23              CenturyLink to comply with Judge Meslow's

24              2018 discovery order and provide to

25              Minnesota the same information it provided

1      to another state attorney general in 2016

2      and 2017.  Specifically, we are asking

3      CenturyLink to identify tens of thousands of

4      additional customers who were offered

16:27AM 5      discounts they did not receive and to

6      identify tens of thousands of additional

7      customers who were promised fixed-rate

8      pricing but who did not get fixed rates

9      because CenturyLink increased the price that

16:41AM 10     was charged.

11          We are asking this Court to enforce

12     Judge Meslow's discovery order which

13     required CenturyLink to supplement discovery

14     responses using the methodology provided to

16:48AM 15     this other state attorney general in 2016

16     and 2017.  It's stylized as a motion for

17     discovery sanctions because that's what

18     Judge O'Fallon asked the State to file.

19     We're less concerned with the sanctions.  We

16:59AM 20     just want the data.  We want the

21     information.

22          The second priority request that we are

23     asking for today is with respect to the

24     State's Motion to Compel and Document

17:08AM 25     Request 175.  We are asking for the full

 1          underlying data that CenturyLink provided to

 2          David Hall, the company's expert who

 3          determined that the company engaged in

 4          widespread fraud.  We're still missing data

 5          for affected consumers that he identified as

 6          being defrauded, and we don't have a legend

 7          or a key to interpret the data.  This is

 8          what we're asking for in Doc Request 175.

 9              The third priority request that we're

17:33AM 10  asking for today is also in the Motion to

11          Compel, and it's five document requests;

12          184, 185, 197, 198, and 199 which are

13          grouped together in the State's Motion to

14          Compel.

17:48AM 15      These are document requests that

16          identified tens of thousands of additional

17          customers who were promised discounts they

18          didn't receive or gift cards that they

19          didn't receive.  CenturyLink's produced no

17:56AM 20  documents in response to these requests.

21          We're asking for them not only because it's

22          important to identify the defrauded

23          consumers, but we want to see the

24          methodologies, the audits, the way in which

18:06AM 25  CenturyLink conducts this analysis.  We

1          believe it's extremely important

2          information.

3                  With respect to the State's Motion to

4          Amend the Scheduling Order, our fourth

18:14AM  5          priority request is asking the Court to

6          permit the State to depose David Hall, the

7          company's expert, as well as Lisa Bach, an

8          employee with similar knowledge, and as well

9          as the possibility of deposing the employees

18:26AM 10          who conducted the methodologies to answer

11          the other document requests that we're

12          seeking for the additional statement

13          analogies with the additional methodologies.

14                  CenturyLink didn't produce data that

18:40AM 15          David Hall analyzed until the State noticed

16          this motion until months after discovery

17          closed.  He's a central witness.  Although

18          he's CenturyLink's expert, he'll probably be

19          the first witness we call at trial.  And

18:49AM 20          just in terms of getting this case

21          efficiently resolved and conducted through

22          trial, we need to take his deposition before

23          we get there.

24                  Finally, the fifth priority request

18:59AM 25          that we're asking for today is the Court to

 1              schedule a hearing for a partial summary

 2              judgment motion on CenturyLink's liability.

 3              Preferably, if the Court could schedule that

 4              in late May, we would be ready to go at that

 5              point.

 6                   The audit they clearly conducted in

 7              which the company concluded engaged in

 8              widespread fraud and the expert report that

 9              CenturyLink had submitted in which they

19:20AM 10              justify down to the number of consumers who

11              were defrauded in just one system

12              unambiguously established that CenturyLink

13              engaged in a pattern and practice of falsely

14              promising discounts to customers that it

19:30AM 15              didn't receive.

16                   And we would like to move for partial

17              summary judgment on the issue of liability.

18              We believe that this would be the most

19              efficient way to get this case back on

19:41AM 20              track.  The other four priority requests

21              we're asking for all go to quantifying the

22              scope of CenturyLink's fraud.  We believe

23              the State could finish that discovery,

24              analyze the documents, take the limited

19:52AM 25              depositions, after the Court takes the

1       State's Motion for Partial Summary Judgment

2       under consideration.

3           Seven months ago when we asked for

4       additional discovery, we asked for three to

50:01AM 5   six months of discovery, so it's a long way

6       from where we were months ago when we were

7       trying to get these issues heard.  So we

8       believe a quick summary judgment motion on

9       the issue of liability running parallel with

50:13AM 10  the State's additional discovery is the

11      quickest way to get this case back on track.

12          Extremely important to us in this case,

13      move quickly and efficiently to

14      consideration on the merits.  CenturyLink's

50:23AM 15  liability is uncontested.  The only question

16      is the actual number of consumers they

17      defrauded and the different ways they did

18      it.

19          Now, as the Court is well aware, we

50:34AM 20  filed four motions.  We have a number of

21      documents that we're seeking in the other

22      items, with the other motions.  With the

23      Court's permission, I would like to go a

24      little more in detail into what we're asking

50:45AM 25  for, but I'll pause at this point if the

*State of Minnesota v. CenturyLink*                    13

1          Court has any questions on what I said so

2          far.

3               THE COURT:  Nope.  I read your

4          documents.  I'm tracking your arguments. You

50:50AM 5          can continue.  We have until about

6          11 o'clock.

7               MR. BALDWIN:  Thank you, Your Honor.

8          With respect to the State's Motion for

9          Sanctions, we believe this is very

50:59AM 10          straightforward.  Judge Meslow ordered

11          CenturyLink to supplement its responses.

12          CenturyLink refused to supplement its

13          responses.  At that point, we think there's

14          really nothing else to consider here.

51:11AM 15               This was an issue that was extensively

16          briefed.  As we highlighted, we filed 16

17          papers between the two sides on these

18          discovery motions.  It's prehearing motions.

19          We had post trial -- or post hearing

51:23AM 20          briefings.  It was extensive.

21               We continually asked judge Meslow to

22          order CenturyLink to simply produce the same

23          information it already gave to another state

24          attorney general.  That attorney continually

51:35AM 25          repeatedly refused to do so.  After we got

1          word from Judge Meslow requiring the company

2          to supplement its responses, it refused to

3          do so last August, two months before the

4          close of discovery.

5:51:44AM          Rather than meeting and conferring on

6          the issue, CenturyLink filed an

7          inappropriate letter with Judge O'Fallon

8          asking to be relieved from the order.  In

9          our only appearance before Judge O'Fallon,

10          we had a brief telephone conference in which

11          he made very clear CenturyLink's letter was

12          inappropriate, and he wanted to see the

13          State brief the issue formally on a

14          discovery motion for sanctions.

15:52:04AM          That's why we filed it and stylized it

16          as a Motion for Sanctions.  But like I said,

17          we're just interested in the data.  It's

18          incredibly important data.  This company

19          knows they operated a system for years in

20:52:16AM          which its agents promised discounts and

21          these discounts never ended up on the bills

22          of these customers.

23          They initially started analyzing the

24          problem back in 2016 with another State

25:52:27AM          attorney general investigating the company.

1           They have tried to answer this, tried to

2           analyze the problems in numerous ways.  All

3           we're asking for is that we get the same

4           information they gave to another state

52:39AM  5           attorney general.

6               It is unambiguously the case that the

7           company was ordered to supplement its

8           responses and it refused to do so.  We think

9           there's really little else that needs to be

52:48AM  10          argued on the issue other than knowing the

11          extensively-briefed history.  We repeatedly

12          asked for the same information, and Judge

13          Meslow used the language in his order that

14          the State was requesting.

52:58AM  15              With respect to the Motion to Compel,

16          the Court should be aware that this is a

17          part of CenturyLink's longstanding pattern

18          and practice to refuse to provide documents

19          to the State of Minnesota.  In our,

53:07AM  20          pre-Complaint discovery, we, for example,

21          asked for audio recordings.  CenturyLink

22          gave us 391 audio recordings and said this

23          was all there was, nothing else to produce.

24          We subpoenaed third parties, got 91,327 call

53:24AM  25          recordings.

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

1          After we filed this case, we had to

2          file a Motion to Compel in 2018 and

3          prevailed getting the company to turn over

4          information about its computer systems,

53:32AM 5     policies and procedures related to those

6          systems, employees' training materials, and

7          the number of consumers it defrauded. It

8          complied with the first part of that order,

9          but it didn't give us the information on the

53:44AM 10    consumers it defrauded.

11          The State has invested significant

12          resources in taking depositions of

13          CenturyLink employees across the country,

14          while they could uniformly say, here are the

53:53AM 15    documents I would look at.  Here's how I did

16          it.  I get this report every week in an

17          e-mail.  I get this spreadsheet every month

18          telling us the information that they use to

19          track the company's business operations.

54:02AM 20          We would serve discovery requests after

21          those depositions and 30 days later be told

22          the information wasn't responsive.  We don't

23          have it.  We're not going to get it after

24          hearing from the company employees.  It's a

54:13AM 25          pattern and practice, and we think it needs

1              to end at this point.

2                    Again, I've already highlighted to you

3              the information in Document Request 175 that

4              we're asking for that information that its

5              expert reviewed as well as the additional

6              doc requests that go to tens of thousands of

7              customers the company defrauded.  I'll note

8              in Document Request 117 and 119, we asked

9              for QA data or quality assurance data that,

10             again, the employees say regularly is

11             compiled.  We've indicting that we are now

12             modifying our request to the specific number

13             of call evaluations that CenturyLink has

14             conducted for Minnesota consumers and that

15             particular number is redacted, so I'm not

16             going to say it.

17                   We're also asking through Document

18             Request 173 for information about

19             CenturyLink's faulty technology systems.

20             Remember, the company's own audits,

21             systematic audits of 9 1/2 million documents

22             and 32 billion customer records, determined

23             that the company systems were incapable of

24             giving accurate price quotes to consumers.

25             We want information about these IT systems,

1          how they haven't, you know, invested in them

2          properly and what they do when they look at

3          considering changing the IT systems.

4                  Through Document Request 178, we're

5          asking for information about the ways in

6          which CenturyLink tries to reduce the

7          credits that it talk -- that it provides to

8          defrauded consumers.  There's some

9          information there about the effort the

10         company undertakes.  Again, a number of

11         these materials have been marked

12         confidential, so I want to be careful what

13         I'm saying, but it's improper efforts to

14         deny its accounts or credits to people who

15         have been overbilled.

16                 Again, all this information goes to

17         quantifying the scope of CenturyLink's

18         fraud.  We have the information necessary to

19         establish CenturyLink's liability and want

20         to quickly put that issue before the Court

21         in late May, if possible.  All the documents

22         that we're requesting here go to the issue

23         of quantifying the scope and nature of

24         CenturyLink's fraud.

25                 Again, this is a company that tracks

1          everything.  They memorialized everything.

2          They document everything.  They sat through

3          numerous depositions to hear how all this

4          information -- it's regularly compiled.

56:20AM 5          It's all there.  We're just asking for this

6          information so we can prove our full damages

7          at trial.

8               In the Motion to Amend to the

9          Complaint, the State moved to amend its

56:30AM 10          Complaint for three reasons:  One, to ask

11          undisputed facts admissions from executives

12          about the scope and scale of CenturyLink's

13          fraud.  For example, in paragraph 25 of the

14          State's Proposed Amended Complaint, we've

56:44AM 15          got quotes from the company's current CEO,

16          the current president of their consumer

17          operations, and the president of sales at

18          the time we filed this lawsuit talking about

19          how its prices are complex, confusing, not

20          customer-friendly.  It's just routine

21          damaging information that its executives

22          have acknowledged.

23               In paragraph 26, we've got more

24          information about the company's audit which

57:05AM 25          determined, again, that the company was not

1          honestly disclosing its prices.

2               Paragraph 30, we've got quotes from the

3          current CEO stating that CenturyLink placed

4          bottlenecks and hurdles in the way of its

57:15AM 5  agents, that CenturyLink made it "too hard"

6          for agents to do the right thing.  These are

7          just admissions from the company's own CEO

8          that we would like to add in.

9               In fact, in paragraph 33, information

57:28AM 10 about how CenturyLink only stopped using one

11         of the these systems in response to an

12         investigation by another state attorney

13         general and how a week after the State filed

14         this lawsuit, CenturyLink abandoned another

57:38AM 15 system that it was using to defraud

16         consumers.

17              We've got a quote in there from

18         CenturyLink's president, consumer

19         operations, in which he admits CenturyLink

57:46AM 20 made it very difficult for a rep to be able

21         to quote accurate prices to customers.  In

22         paragraph 40, we add some information about

23         the specific number of violations that the

24         documents CenturyLink has produced show so

58:01AM 25 far.  Again, I'm not going to say that large

1          number.

2                    The second reason we would just amend

3          the Complaint was to clarify the State's

4          allegations and the State's cause of action

08:09AM 5          related to the company's fraudulent internet

6          cost recovery fee.  This is just one of

7          those sham fees that they add to everybody's

8          bill who's got internet service.  It doesn't

9          give you anything of value.  It's about $50

08:20AM 10          a year.  We alleged they, you know, were

11          defrauding people through this fee.

12                    We've also got documents produced since

13          the State filed this lawsuit that show

14          CenturyLink raised the prices and fees on

08:32AM 15          consumers who were promised fixed-rate

16          pricing or price locks as they're called at

17          CenturyLink.  So it's really just a backdoor

18          sham way to increase the rates for people

19          who have been promised fixed-rate pricing.

08:43AM 20          It provides nothing of value.  It's just

21          another way that CenturyLink didn't live up

22          to its promises, and we want to add this

23          information and can clarify what it is

24          specifically we're alleging.

08:52AM 25                    Finally, the third reason we moved to

1          amend the Complaint was out of an extreme

2          abundance of caution in response to the

3          Globe litigation that came out about a year

4          after we filed this lawsuit as well as the

5          information in Judge Meslow's order, which

6          there's a sentence in there about the

7          State's claim for restitution.  And, again,

8          in the context of CenturyLink arguing this

9          motion to Judge Meslow, they were stating

10         they were intending to bring a motion to

11         strike the State's claims for restitution.

12              You know, we have no doubt that we've

13         pleaded it correctly, that we have a

14         well-stated Complaint on that issue.  But

15         given where we were, given what was

16         happening last summer near the close of

17         discovery, we move to amend the Complaint to

18         just clarify some of those allegations.

19              With respect to the State's Motion to

20         Amend the Scheduling Order, again, we're

21         just asking for additional limited time to

22         process information that CenturyLink's

23         unreasonably withholding.  I'll just note,

24         you know, it was just seven months ago that

25         we were asking for three to six months of

 1            additional discovery.  Had we had this issue

 2            decided at the time, we would already be

 3            past this point.  Even under the most

 4            discovery we were asking for, we would be

 59:59AM 5            moving to the merits.

 6                 CenturyLink, as we've documented,

 7            engaged in a long -- a way to delay the

 8            Court's consideration of these motions for

 9            half a year.  So we recognize what we asked

 00:13AM 10            for may look a little bit different today.

 11                 We believe, at a minimum, we should be

 12            afforded the time to depose Dave Hall, Lisa

 13            Bach, and the individuals who compiled all

 14            the methodologies about the way in which

 00:26AM 15            Centry Link's defrauded people.  Again,

 16            these are from documents CenturyLink is

 17            withholding from us so we can't identify the

 18            employees until we get them.

 19                 Kind of the way discovery proceeded in

 00:36AM 20            this case, you know, CenturyLink has 55,000

 21            employees.  They submitted disclosures with

 22            just a few employees.  We discovered

 23            deposing them that the real people we were

 24            after were not on the initial disclosures.

 25            We had their identity hidden from us.  We

      1          had to identify them through subsequent

      2          disclosure, some sort of a period of

      3          identifying who it was that really had the

      4          information we were after.  So this was sort

00:58AM 5        of a dynamic process and, again, we think we

      6          should be afforded the time to depose people

      7          who are revealed as having important

      8          knowledge from these documents.

      9               We've also highlighted people we tried

01:11AM 10       to depose and CenturyLink didn't make

      11         available.  Again, we don't want to belabor

      12         the issue of the fight here, but we

      13         mentioned we had to notice or request these

      14         depositions 112 times for just 23 people.

01:22AM 15       We had to request or notice the deposition

      16         of the director of pricing 16 times.

      17         There's several other people over a period

      18         of months that we were requesting their

      19         depositions.  CenturyLink didn't make

01:32AM 20       themselves available.  There was all kinds

      21         of obstruction for this information.

      22               So we're just looking to tie off loose

      23         ends and get ready for the merits.  Again,

      24         discovery unambiguously shows that

01:44AM 25       CenturyLink engaged in a pattern and

1        practice of falsely promising discounts.

2        The company's own audit shows it.  The

3        documents they produce shows it.  Their

4        expert report shows it.

01:53AM 5        We're ready to move for partial summary

6        judgment on issue of liability.  But what we

7        really want to get out of here today is

8        documents that go to the scope and scale of

9        CenturyLink's fraud.

02:04AM 10        I'm happy to take any questions that

11        the Court has at this point.  I sort of

12        highlighted to you where we think these

13        motions stand and what we believe is most

14        important.  If the Court doesn't have any

02:15AM 15        additional questions, I would just like to

16        reserve a little time to respond to opposing

17        counsel's arguments.

18        THE COURT:  And when you're talking

19        about amending the Scheduling Order to

02:26AM 20        conduct the additional limited discovery,

21        what's the timeline you're looking at?

22        MR. BALDWIN:  Yes.  So when we noticed

23        this motion seven months ago, we were asking

24        for three to six months of additional

02:38AM 25        discovery.  We think that would be enough to

1            conduct what we've highlighted.

2                  To the extent that the Court shares our

3            concerns in trying to get this case as

4            quickly to the merits as possible, we've

02:50AM 5    identified to you the limited discovery that

6            we think we absolutely need to take.  If the

7            Court is willing to grant three to

8            six months and let that run parallel, for

9            example, for a consideration in the State's

03:01AM 10   Motion for Partial Summary judgment, we

11           would have a lot of additional discovery

12           that we would like to serve based on tying

13           off loose ends on all kinds of document

14           requests CenturyLink hasn't followed up on

03:13AM 15   that aren't even at issue in this motion

16           because we're trying to highlight for you

17           the most important information.

18                  THE COURT:  All right.  Who is arguing

19           the response?

03:22AM 20               MR. LOBEL:  I am, Your Honor.  Douglas

21           Lobel on behalf of the CenturyLink entities.

22                  THE COURT:  Okay.  Go ahead.

23                  MR. LOBEL:  Your Honor, I'd like to be

24           a little bit more disciplined in terms of

03:29AM 25   going through the motions as they were

1       filed, and we are, as a side, dividing up

2       the motions.  I will handle the Motion to

3       Amend the Complaint, the Motion to Amend the

4       Scheduling Order, the Motion for Sanctions,

03:42AM 5       and also, I will discuss with you at length

6       this late-made request for immediate summary

7       judgment motion which is alarming in terms

8       of the case management problems it would

9       present, and I'll cover that.

03:56AM 10          Ms. Moss will Cover the Motion to

11       Compel Discovery and Motion to Enforce the

12       Protective Order.  The reason I suggest

13       doing that, Your Honor, is there are legal

14       standards here that are applicable to these

04:08AM 15       motions that I didn't hear my colleague, the

16       AG's office, even mention or reference as if

17       those standards don't apply.  But they very

18       much do apply to what they are asking.

19          Before I get to the specific Motion to

04:19AM 20       Amend the Complaint, which is -- Mr. Baldwin

21       just said he wanted the Complaint to tie up

22       some loose ends.  They want 66 individuals

23       that would need to be deposed.  It's hardly

24       tying up loose ends.  There's a lot to be

04:37AM 25       said about that.

1          But let me just say that as passionate

2          and convinced that CenturyLink is

3          practically an organized crime organization

4          that I heard from Mr. Baldwin, believe me,

04:53AM 5          Your Honor, we are equally passionate that

6          this is an unfair and abusive proceeding

7          that has gone on far too long, that is

8          taking advantage of virtually unlimited

9          resources and that, apparently, will never

05:09AM 10          come to an end.

11          And so there are two sides to this.

12          And when you're not tethered to the facts,

13          and my colleague doesn't seem to be, it's

14          easy to say things and make things look

05:16AM 15          nefarious and make things look bad.

16          I don't think I'll be able to respond

17          to each and every fact that was thrown out

18          in the last 20 minutes or so.  Ms. Moss will

19          certainly do that, but believe me when I

05:29AM 20          tell you, there's another side of the story.

21          I'm going to try to give you that other side

22          that relates to the specific requests they

23          are making, and I'll try to clarify the

24          misstatements where I can.  They were

05:39AM 25          rampant in the presentation. But let me

1          proceed to the Motion to Amend the

2          Complaint.

3               This is an extraordinary request after

4          the discovery has closed at the end of

05:51AM 5          almost two years of litigation and one year

6          of investigation by the State tacked on to

7          that two years.  I think it's really

8          important to know that they had unfettered

9          discovery opportunities with the CID

06:08AM 10          process, pre-filing, in which they obtained

11          23,000 or so documents from CenturyLink and

12          had every opportunity to depose whomever

13          they chose to and chose not to depose

14          anyone.

06:21AM 15               And here we are three years later where

16          they're asking for more and more and more

17          depositions and more discovery having

18          squandered the opportunities for the last

19          almost three years.  And I'll give specifics

06:34AM 20          on that.  The State bears a huge burden to

21          justify adding these new facts and these new

22          allegations after discovery closed.

23               Now, I will tell you something that's a

24          stark statement, Your Honor.  Every material

06:48AM 25          fact they seek to add into this very large

1              Amended Complaint, the redline version you

2              have, every material fact was in their

3              possession by February of 2018.  Discovery

4              closed in September of 2018.  They sat on

07:04AM  5              their hands.  They were not diligent.  They

6              failed to proceed.  They failed to pursue

7              the deposition of Mr. Hall who was deposed

8              in that month.  They failed to proceed to

9              the depositions of all of these other

07:19AM 10              people, having started discovery, by the

11              way, four months after it commenced.  They

12              basically did nothing for the first four

13              months.  They were in possession of all this

14              information.  They did nothing, and now

07:31AM 15              they're coming to Your Honor with an

16              extraordinary demand for relief.

17                  I want to focus the Court on the

18              applicable standard.  I didn't hear a word

19              about legal standards in the other

07:42AM 20              discussion.  They say it's a permissive

21              standard for amendment and that the

22              threshold is low, and I think we all

23              understand that early in a case, that's

24              true.  When you're at the end of the case,

07:56AM 25              basically the end of discovery, discovery is

1            closed, when you are seeking to add this

2            level of facts and allegations, you have an

3            enormous burden.

4                 You cited the *Ray versus Dronen* case.

08:06AM 5      Your Honor recognized this is a *Rute versus*

6            *American Family* decision in which you

7            allowed an amendment but said it didn't

8            cause any prejudice because there were not

9            facts and allegations that were -- that were

08:17AM 10     added in.  The prejudice is enormous with

11           this particular proposed amendment.  And, in

12           fact, we cited a case that said simply

13           moving to amend after discovery closes is,

14           alone, a basis to deny the motion, that

08:32AM 15     alone.

16                Now, you didn't hear Mr. Baldwin say

17           one word about why they did not move before

18           discovery closed.  You didn't hear him say

19           one word about why they failed to take

08:45AM 20     Mr. Hall's deposition between February when

21           they learned his analysis and September when

22           it closed.  You didn't hear him try to

23           justify any of their lack of diligence

24           because they don't have a justification.

08:58AM 25          The best defense is a good offense,

ANOKA COUNTY  DISTRICT COURT
TENTH JUDICIAL DISTRICT
ANOKA, MINNESOTA

```
 1                  Your Honor, and that's what you're seeing
 2                  here.  They cannot defend their lack of case
 3                  management, their lack of diligence.  So
 4                  what they do is just throw out unsupported
09:12AM 5           allegations about things in such a
 6                  scattershot way that it sounds good.
 7                       For example, Your Honor, I heard
 8                  Mr. Baldwin say liability is uncontested.
 9                  Your Honor, I don't think you actually think
09:25AM 10          liability is uncontested in this case.  I
11                  can assure you liability is sharply
12                  contested with virtually everything.  So
13                  those are the kinds of statements that they
14                  throw out to sound facially good to try to
09:36AM 15          convince the Court to give them more, more,
16                  more.
17                       With the Court's permission, I would
18                  like to walk you through the timeline of
19                  what we all went through because the
09:47AM 20          timeline is very telling here in terms of
21                  their lack of diligence and the prejudice we
22                  would sustain.  Would the Court allow me to
23                  do that?
24                       THE COURT:  Sure. Go ahead.
09:58AM 25               MR. LOBEL:  Thank you, Your Honor.
```

```
 1                    Your Honor, I've handed you the
 2                    timeline of key events that we've put
 3                    together.  It does apply to both the Motion
 4                    to Amend the Complaint and the Motion to
10:31AM  5           Extend the Scheduling Order.  It's very
 6                    telling.  I think you'll see it tells a
 7                    story as I walk you through it.
 8                         So the first entry, Your Honor,
 9                    November 17th, 2015, this was the first date
10:45AM 10           that we could tell the State drafted one of
11                    66 customer affidavits for the individuals
12                    they are trying to now amend the Complaint
13                    and bring into the case.
14                         That was the beginning of a one or
10:56AM 15           two-year process where they drafted these
16                    affidavits and generated them and had them
17                    sitting in their files.  This was not only
18                    before the case started.  This is before the
19                    CID process started.  That's how early they
11:12AM 20           were knowledgeable of these people who they
21                    have not attempted to bring in the case
22                    until just recently.
23                         In May or July, you see the second
24                    entry.  The State issued these two CIDs, and
11:24AM 25           they had -- the CID process went on for
```

ANOKA COUNTY  DISTRICT COURT
TENTH JUDICIAL DISTRICT
ANOKA, MINNESOTA

1          14 months.  As I mentioned earlier, 23,000

2          pages of documents generated by CenturyLink

3          produced to them but no depositions taken by

4          the State even though they could have taken

11:40AM 5    hundreds if they chose to.

6                In July of 2017, they filed a

7          Complaint.  They identify what they call 35

8          exemplary customers.  Now, the individual

9          from November 2015 was not one of those 35.

11:55AM 10   They kept that in the vault apparently

11         awaiting some opportunity to add it later.

12                On October 5th, 2017, after some

13         back-and-forth negotiations with the State,

14         we submitted a proposed discovery plan.  The

12:10AM 15   State, which is now seeking upwards of 16,

16         17 months of discovery, at that time, said

17         they wanted less than eight months of fact

18         discovery.  They propose a June 1st fact

19         discovery cutoff.

12:24AM 20        Now, it turns out that Judge Meslow

21         actually entered an order, as you see, on

22         November 16th in which he only provided a

23         six-month discovery period.  But the State,

24         at that time, was more than happy with less

12:38AM 25   than eight months of discovery.

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

1          Now, during that six-month discovery

2          period, just for some context, we produced

3          over 63,000 pages of documents.  There were

4          23 depositions taken of CenturyLink

12:53AM 5          individuals in, I believe, 12 or so cities

6          across the country.  There were 100 hours of

7          deposition testimony, and there were 273

8          deposition exhibits during that deposition

9          period.  We went out of our way to try to

13:11AM 10         facilitate this process.  We asked the

11         gentlemen at the AG's office if we could fly

12         people from to the company to central sites

13         of Denver and Monroe, Louisiana where we

14         would set up a base where they can depose

13:26AM 15         these people.  They rejected that.

16         Then we prepared a schedule of people

17         that they requested.  They rejected that.

18         Then we said we could produce this person on

19         this date.  But they said, no, we want this

20         other person on this date.  And we went back

21         to the first person, their schedule was

22         booked.  They were out of the country or

23         whatever.

24         These are the kinds of problems that

13:45AM 25         occurred.  We worked very hard with them to

1          try to accommodate an increasing number of

2          requests and sort of had the door slammed in

3          our face in most instances.

4               Continuing on the timeline, Your Honor,

13:59AM 5      on November 20th, we served our first

6          written discovery on the State.  That was

7          four days after the initial discovery,

8          initial Scheduling Order.  We knew that with

9          a six-month discovery period, we needed to

14:14AM 10     get to it.  We prepared the discovery in

11         advance, and four days after the Scheduling

12         Order came out, we commenced written

13         discovery.

14              Now, you'll see that the State waited a

14:25AM 15     month to serve their first written discovery

16         on CenturyLink.  That was December 13th and

17         21st.  We waited four days.  During that

18         interim period, before the State served

19         their first written discovery, we talked to

14:39AM 20     them about we thought that the six months

21         was awfully aggressive, and we were

22         concerned about the time period.

23              We went to Mr. Canaday and Mr. Baldwin

24         and we said we would like you to agree to an

25         extension of discovery.  They refused.  They

 1              said no.  We think the six months is

 2              adequate.  We don't think we need any more

 3              discovery than that.  They would not agree

 4              to go jointly to the Court and seek a

15:02AM  5       discovery extension.  Many, many discussions

 6              and we had the door slammed in our face.

 7                   So we moved quickly after the new year

 8              as we took our first customer deposition on

 9              January 9, 2018.  That was seven weeks after

15:18AM 10       discovery opened and after we had gotten the

11              results of written discovery back.  And

12              you'll see, Your Honor, if you look down,

13              because it's quite a number of rows beyond

14              that, the State did not request their first

15:35AM 15       deposition until three-and-a-half months

16              after written discovery -- after discovery

17              opened.

18                   And so during this time, we were

19              talking many, many customer depositions.  We

15:45AM 20       were hearing consistently from these

21              customers we don't think we're entitled to

22              restitution.  The affidavit that the State

23              prepared is not accurate.  The Complaint is

24              not accurate.  And we had -- the totals are

15:58AM 25       21 of 33 people deposed said they did not

1          believe they were entitled to restitution,

2          that they were not owed any money by

3          CenturyLink.

4              Now, the State will tell you that's

16:08AM 5          because we gave credits after the State

6          began investigating.  That's false.  These

7          credits and adjustments that were given at

8          times because there were misunderstandings

9          within the account or -- or for whatever

16:20AM 10          reason.  And many of these were provided

11          long before the State ever darkened our

12          door.  So that's not a true statement.

13              So Your Honor, this is a critical date.

14          On February 23rd, 2018, and I mentioned this

16:36AM 15          several times, we provided the State with

16          its closer data.  That's the issue for their

17          Motion for Sanctions.  And we identified a

18          forensic consultant named David Hall in

19          interrogatory responses.  That was the date

16:50AM 20          after which they had the ability to seek the

21          data of David Hall through a document

22          request and to seek his deposition.

23              The first time that we heard that they

24          wanted David Hall's deposition was after

25          discovery closed in this case in early

1              September.  The first time that we heard

2              that they wanted David Hall's data was in

3              July of 2018, meaning that they got a

4              disclosure about David Hall's analysis and

17:17AM 5      methodology and for five months did not seek

6              the underlying data that he relied upon, and

7              yet, they're coming to you today and asking

8              for extraordinary relief to extend the

9              discovery period to give them David Hall's

17:31AM 10     deposition.

11                  And I ask the Court, why didn't they

12             take it in March or April or May or June or

13             July or August instead of wanting to take it

14             in the end of 2019?  They did not act

17:49AM 15     diligently.  They did not pursue their

16             rights, and they're really not entitled to

17             grace from the Court, in our view.

18                  Now, moving on, Your Honor, on

19             March 1st, we did reach agreement internally

18:04AM 20     that we thought there needed to be

21             additional discovery.  So the -- the Court

22             entered an amended scheduling order on

23             March 1st, extended discovery for three and

24             a half months.  That was the first discovery

18:16AM 25     extension in this case.  They stand here

State of Minnesota v. CenturyLink                    40

          1                before you seeking a second discovery

          2                extension, which matters.  It's not their

          3                first bite at the apple.

          4                     Now, I mentioned that about that same

18:26AM   5                date, they made their first request to

          6                schedule depositions.  This was

          7                three-and-a-half months after discovery

          8                opened.  We had already deposed 16 consumers

          9                by the time the State first wrote us and

18:39AM  10                said they wanted to depose someone from

         11                CenturyLink.  Sixteen consumers, that was

         12                the number of depositions they could have

         13                done if they would have pursued this

         14                respectfully and diligently.  And by the

18:53AM  15                way, they didn't take the first deposition

         16                for another couple weeks after that.  So

         17                it's almost over four months' delay.

         18                     Now, during this whole time period,

         19                Your Honor, they've been drafting and

19:05AM  20                drafting and drafting consumer affidavits.

         21                And the process ended on March 16, 2018,

         22                from the discovery that we've been provided,

         23                which means that for about two-and-a-half

         24                years, they were working with these

19:21AM  25                customers drafting affidavits.  These 66

1           individual were all identified, for sure, by

2           March of 2018.  And yet, it's not until

3           December of 2018 did they provide us with an

4           Amended Complaint in which they now want to

5           add these 66 individuals to the case.

6                We were doing consumer depositions all

7           throughout the winter and the spring and

8           into the summer.  And I ask Your Honor, why

9           did they not include them at the time that

10          they knew of them so we could have done them

11          during the open discovery period instead of

12          now having to amend the Complaint and add

13          them in with enormous prejudice to us and

14          enormous cost.

15               So moving on, July 23rd is a critical

16          date.  That's the date Judge Meslow issued

17          the order on the cross motions to appeal.

18          And you'll see the State, they got started

19          the end of March.  They took their last

20          deposition on August 17th.

21               Now, Your Honor, they're clamoring for

22          36 months of discovery.  Ask yourself why

23          they squandered the last three weeks of

24          discovery not taking any depositions.  They

25          could have taken, you know, ten depositions

 1           in three weeks before discovery ended like

 2           many parties do because we've got a deadline

 3           coming up and we need to get all the

 4           depositions done.  They took no depositions

 20:42AM 5    after August 17th.  They took depositions

 6           for four months, and they wasted

 7           three-and-a-half months before they ever

 8           start taking them.  And then they wasted the

 9           last two weeks at the end of the discovery

 20:54AM 10   period.

 11              So discovery closes September 3rd,

 12          2018, and they notice their four pending

 13          motions without briefs.  We didn't see the

 14          Amended Complaint or have any of the briefs.

 21:06AM 15   They noticed them on September 25th, 2018.

 16          That's 65 days after Judge Meslow issued his

 17          order July 23rd and three weeks after the

 18          close of discovery.

 19              Now, they will tell you that we somehow

 21:21AM 20   delayed because we were negotiating a

 21          hearing date because this is a significant

 22          hearing and there were many obstacles.  And

 23          by the way, Your Honor, I'm sure you know

 24          there's a multidistrict litigation ongoing

 21:35AM 25   in New York, obviously involved in

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

*State of Minnesota v. CenturyLink*                    43

1        expediting discovery in that case.  They

2        noticed the motions.  They did not give us

3        the Amended Complaint or provide any notice

4        that they intended to add these 66 new

5        consumers until December 10th of 2018.

6            So, Your Honor, I took a lot of time to

7        go through this, and I appreciate the

8        Court's indulgence and patience, but I

9        thought that it was important because the

10       timeline does tell a story.  I think the

11       issue for the Court today is should they be

12       allowed to triple the case, effectively

13       start over, add pages and pages of new facts

14       that are enormously prejudicial, cause us to

15       have to then depose all these 66 new

16       consumers, all of which they knew about when

17       they had the opportunity to do this during

18       the process that the Court set.

19           So with respect to their Amended

20       Complaint, there are at least four problems

21       that we've identified.  They want to add

22       these 66 people.  As I said, they're too

23       late.  They were not diligent.  They knew

24       about the claims 2015 to 2017.  And Your

25       Honor, and we feel we were a bit sandbagged

1          on this because we know that they had them,

2          and we wonder why they didn't add them until

3          after discovery closed.

4               It's highly prejudicial, and they

22:56AM 5   cannot explain the significant delay.  And

6          the Court does consider the stage of the

7          proceeding in terms of the legal standard

8          applicable.  It's not liberally granted when

9          you're sitting where we're sitting today.

23:09AM 10  It's much more searching, and I think the

11         Court needs to look at whether they acted

12         diligently, whether they are entitled to

13         additional discovery based on the

14         opportunity that they had.

23:18AM 15      Then, Your Honor, they make the

16         astounding statement in their reply brief on

17         the Motion to Amend, well -- because we

18         pushed back very hard in our opposition and

19         say, well, these were vignettes or examples.

23:31AM 20  Honestly, we don't really need them.

21         They're irrelevant to the scope of the case.

22         We only added them to educate the public.

23              First of all, Your Honor, you should

24         strike them because they just told you they

23:43AM 25  probably don't need them.  But if they're

  1                  being candid with the Court and they're

  2                  saying they need them to educate the public,

  3                  why didn't they add them when they did the

  4                  last affidavit in March 2018?  If they were

23:56AM 5            so desperate to educate the public, they

  6                  could have educated the public a year ago.

  7                  They chose not to because this is all

  8                  contextual, Your Honor, is the reason.

  9                       Now, they ask you to add these facts

24:07AM 10           and allegations about the closer promotions,

 11                  and if Your Honor looks at the redline of

 12                  the Amended Complaint, pages and pages and

 13                  pages of new facts and new allegations that

 14                  they wanted to add.  As the timeline shows,

24:20AM 15           Your Honor, on February 23rd, 2018, they

 16                  learned about the closer data and Mr. Hall.

 17                       So the problem with this is, they're

 18                  too late.  They didn't act diligently.  They

 19                  have no excuse why they waited until after

24:36AM 20           the close of discovery to add this, and it

 21                  would be enormously prejudicial for us to

 22                  have to be confronted with these new

 23                  allegations at this stage of the litigation

 24                  and to essentially start over again.

24:46AM 25               The third problem with the Amended

1              Complaint:  They add the express statement

2              that they're pursuing claims for tens of

3              thousands of Minnesota consumers.  Your

4              Honor, I ask you to think about that a bit

24:58AM 5              in terms of due process problems there.  We

6              have no notice of these individuals.

7              Clearly, Your Honor is not trying a case

8              involving tens of thousands of Minnesota

9              consumers.  This is an unnecessary but

25:12AM 10              highly prejudicial allegation.  The State --

11              and inconsistent with their position.

12              They've claimed that the case always

13              involved that many consumers, and although

14              we disagree, if that's how they feel, they

25:24AM 15              don't need to add this in.

16                    The fourth thing that they do in the

17              Amended Complaint is they add on all these

18              quotes that you heard from people at the

19              company.  Now, Your Honor, what I didn't

25:34AM 20              hear is they were tied in with Minnesota

21              consumers.  These were generic quotes from

22              business people taken out of context not

23              tied to individuals that are at issue in

24              this case.  We don't even know if this

25:46AM 25              affects Minnesota consumers because that's

1                not part of the story here.  But the problem

2                with all these new facts, new quotes for

3                documents and testimony is it's too generic.

4                It's not tied to any consumer.  It's too

5                late.  They wanted -- they learned about

6                this stuff months and months ago.  They

7                didn't move to amend.  There's the need for

8                additional discovery potentially, and it

9                doesn't change the scope of the case.

10                    So why did they need to add all these

11                additional?  It's not a feel-good situation,

12                Your Honor.  They've got a notice pleading

13                standard.  They don't need to amend it every

14                time they get a new document.

15                    And I guess the fifth thing I just

16                heard today for first time is that one of

17                the of the reasons they wanted to amend is

18                to add in the internet cost recovery

19                allegations.  Well, Your Honor, if you look

20                at the initial Complaint, there's lots about

21                the internet cost recovery.  They didn't add

22                that in.  The Amended Complaint has always

23                been in this case.  So that's -- that's

24                another misstatement in our view.

25                    Now, if you look at the briefing, the

 1              only response to all of these points is that

 2              we knew about these facts anyway.  There are

 3              facts, and we knew about them.  Well,

 4              knowing about them and meeting a

26:58AM 5       significantly revised Amended Complaint are

 6              two very, very different things, and they

 7              don't really have any justification for the

 8              delay.  They just want to throw more

 9              bad-sounding allegations at you.

27:09AM 10             They -- at the end, Mr. Baldwin talked

11              about they want to add facts about the scope

12              of relief.  That's another way of saying

13              they want to add new customers.  Well, they

14              had the opportunity to add new customers.

27:23AM 15      It would be extremely prejudicial to add new

16              customers at this stage.  We would have far

17              more than -- if they -- if the amendment is

18              allowed and 66 consumers are added -- Your

19              Honor, I can assure you, we've been through

27:36AM 20      this process many, many times.  It takes

21              weeks to pull this data and prepare for even

22              one deposition given where the information

23              is kept in the company.

24                    So we're not talking about three to six

27:46AM 25      months of discovery.  We're talking about

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

1         much more than that.  And by the way,

2         discovery is not one-sided.  They seem to

3         think it is.  We would be entitled to

4         discovery too.

27:54AM 5         Finally, they say the other reason they

6         need it to amend is to address Judge

7         Meslow's order about the Globe case.  Well,

8         Your Honor, first of all, that's a complete

9         red herring.  Judge Meslow never talks about

28:07AM 10        the Amended Complaint in his order.  He

11        issued an order involving four instructions.

12        "You shall amend your interrogatories in the

13        following four ways," and he lists them.  He

14        never mentioned the Amended Complaint

28:20AM 15        because the level of detail he demanded in

16        order to satisfy the Globe standard is far

17        beyond what we've ever seen in a complaint.

18        This is another contextual argument by

19        the State trying to make up for their lack

28:35AM 20        of diligence, and they say to the Court, oh,

21        Judge Meslow's issued an order in July, so

22        clearly, in December, we need to amend our

23        Complaint to be here. If they really are

24        sincere about that, why didn't they amend it

28:46AM 25        two weeks after Judge Meslow issue his

1          order?  And if they're sincere about that,

2          why are they telling in their reply briefs

3          that they don't really need to add the

4          consumers because it's just icing on the

28:58AM  5    cake?  They're not sincere about it.  These

6          are just pretexts.

7              THE COURT:  Okay.  Concerned about your

8          timeline here.  You've got a half an hour

9          and you've talked about one of these four

29:07AM 10    arguments, and we haven't gotten to yours.

11         So just been aware --

12             MR. LOBEL:  Understood, Your Honor.

13             THE COURT:  -- of your time.  And at

14         some point, I'm going to cut you off and

29:16AM 15    good back to the State.

16             MR. LOBEL:  Okay.  I'm going to jump to

17         the Motion to Amend the Scheduling Order.

18         Your Honor, there's -- this motion violates

19         three rules and one court order, Rule 6.02,

29:29AM 20    Rule 111.04, and the Scheduling Order all

21         say that any motion to extend the schedule

22         must be made before the deadline expires.

23         They ignore these rules completely, and they

24         come up with contextual reasons why they

29:47AM 25    have moved at this time, but they haven't

1              given you any -- any real reason.

2                    As I said, they started late.  They

3              ended early.  They have no excuse, and they

4              certainly can't explain -- they can't meet

29:58AM 5      the standard of excusable neglect for

6              unusual circumstances which applies at this

7              particular stage of the proceedings.

8                    With respect to the individuals that

9              they seek to depose, I've covered David

30:13AM 10     Hall.  Let me talk to you, Your Honor, about

11             Lisa Bach.  That was one of the the names

12             Mr. Baldwin mentioned.  We disclosed Lisa

13             Bach to the State on February 23rd,

14             14 months ago.  They want to depose her as

30:28AM 15     part of this additional discovery.

16                   They have no justification why they

17             didn't pursue this from February 23rd to

18             September 3rd, and I think if I had the

19             time, Your Honor, and we could certainly

30:42AM 20     supplement our briefing, every one of the

21             requests they make, we could give you the

22             date when they learned of this, all of which

23             was before discovery closed.

24                   They -- and I think it needs to be

30:55AM 25     said, the complaints about our conduct and

1           the way we managed discovery, this is the

2           first motion they ever made on this.  If

3           this was really an issue, why hadn't they

4           made an issue before this complaining about

31:09AM 5   this?  They never did.

6                Your Honor, let me move on to the

7           summary judgment issue.  They -- I will say

8           this request has entirely evolved.  About

9           six weeks ago, Mr. Baldwin wrote me and said

31:25AM 10  -- with a proposed stipulation to set an

11          August 7th date for summary judgment

12          arguments.  He wanted us to jointly submit

13          it to the Court.  We thought it was

14          impractical because it set a date certain,

31:37AM 15  and, of course, we didn't know the Court's

16          schedule or when the Court would issue a

17          ruling or what that ruling would be.

18                The next thing we learn is that in

19          their moving briefs, they said we don't have

31:49AM 20  enough information to move for summary

21          judgment.  We'd like to do that when you

22          compel responses to us.  And now we've heard

23          for the first time in the reply briefs in

24          his briefing that they want to file partial

32:03AM 25  summary judgment, and today is the first day

*State of Minnesota v. CenturyLink*                    53

```
 1            we heard that they wanted to do it in May

 2            because they claim that everything's

 3            resolved.  We're not contesting liability.

 4            We just need to go to damages and then I

32:17AM 5     guess judgment and whatever else.

 6                 Your Honor, the notion of doing partial

 7            summary judgment while we're doing

 8            additional discovery would be a nightmare of

 9            management problems.  They misunderstand the

32:30AM 10    nature of this discovery.  That -- the

11            claims involve a damages element as well as

12            a quantification element.  You have to prove

13            damages in order to prove liability, and

14            this is where they go wrong.  They say that

32:45AM 15    all the discovery they wanted to do involves

16            quantum of damages.  No.  It involves

17            whether there is damages as well.

18                 So what you would have, if you agree to

19            this proposal, is weekly, if not daily

33:00AM 20    disputes about the nature of the discovery

21            they're seeking that we claim would be

22            veering into liability issues and they claim

23            are just on damages issues.  There is an

24            overlap, and frankly, it doesn't even seem

33:14AM 25    to save any time to go to partial summary
```

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

1          judgment and the damages, and the idea of

2          having this discovery ongoing during the

3          summary judgment briefing is just completely

4          impractical.

33:27AM 5          If you look at their brief and the

6          items they want additional discovery on,

7          much of it involves liability.  They want

8          David Hall.  He involves liability.  They

9          want depositions of employees of

33:39AM 10          methodologies that CenturyLink used.  That's

11          liability.  They want depositions of

12          employees about systems.  That involves

13          liability.  So they're -- they say they want

14          to do damages discovery.  I assure you it's

33:52AM 15          all liability, and how would we sort that

16          out?

17          Plus, Your Honor, we may need discovery

18          if they have issued consumers in their

19          summary judgment motion that we would need

34:00AM 20          to depose on liability.  So the management

21          problems are just enormous in that proposal,

22          and I just think it's completely unworkable

23          and inefficient, and it doesn't save any

24          time.

34:13AM 25          Your Honor, the last issue I will

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

1                address is the Motion for Sanctions.  The --

2                we have had sharp disagreements about the

3                interpretation of this one sentence of a

4                15-page order from almost the day that it

34:25AM5                came out, and we -- the issue for the Court

6                on the sanctions issue, which I think

7                they've basically withdrawn, by the way,

8                from what I heard, is not who is right or

9                wrong.  It's just did we commit sanctionable

34:41AM10                conduct.

11                     And, Your Honor, I would just -- two

12                facts are all you need to know about this.

13                We sought immediate interpretation from

14                Judge Meslow.  Judge Meslow sent us to Judge

34:53AM15                O'Fallon.  We sought immediate

16                interpretation from Judge O'Fallon.  Judge

17                O'Fallon asked us to file motions on it.

18                     Going to -- going till the age of

19                sanctionable conduct do not seek guidance

35:01AM20                before they break the law, I would say.  So

21                I would say that sanctions is effectively --

22                should be not an issue here.  We had a

23                good-faith disagreement about the

24                interpretation of an order, and we tried to

35:16AM25                work it out the best we could.

1         So, Your Honor, with that, I will -- I

2    will stop.  Ms. Moss will handle the Motion

3    to Compel part of the sanctions motion as

4    well as the Motion to Compel Discovery as

35:28AM 5    well as the Motion to Enforce the Protective

6    Order.

7         Does the Court have any questions for

8    me?

9         THE COURT:  I don't.  Ms. Moss?

35:36AM 10         MS. MOSS:  Thank you, Your Honor.

11         With regard to the Motion to Compel, I

12    think it would be really helpful just to

13    quickly recap where we've been in discovery

14    and how we got to this point with the 16

35:49AM 15    requests that are currently at issue.

16         We, CenturyLink, have produced more

17    than 85,000 pages of documents to the State.

18    That doesn't even include the native type of

19    files that are not susceptible to a page

36:02AM 20    count, things like Excel spreadsheets and

21    text files that include more than nine

22    million rows of data about billing and

23    consumer information.

24         And as Mr. Lobel explained, there's

36:14AM 25    been over 100 hours of deposition testimony,

State of Minnesota v. CenturyLink                    57

1          and that has been captured for the State in

2          more than 5,000 pages of transcripts.  We

3          have responded, and I have been personally

4          involved in handling all of these discovery

36:28AM 5          matters, but we've responded to 199 document

6          requests from the State and 32

7          interrogatories.  We've made 39 separate

8          document productions to the State.

9              We have done a lot in this case to be

36:44AM 10         responsive to clarify the types of requests

11         we would get from the State.  If we look at

12         some of the requests that aren't at issue,

13         they were so broad.  Some of them would say

14         every document with the word "billing" in

37:01AM 15         them, every document in a certain person's

16         custody and control.  So there was a lot of

17         negotiation about what exactly the State was

18         seeking and what was reasonable to produce.

19             So, Your Honor, I do also need to

37:16AM 20         address one request the State made about

21         call recording.  During the CID process,

22         there were requests for call recordings, but

23         what the Court may not know is that

24         CenturyLink used different vendors for their

37:26AM 25         call recordings.  In order to get some of

1          that information from the vendors,

2          CenturyLink needed to go to the vendors, and

3          they explained that to the State, but the

4          State didn't want to wait for the results

37:37AM 5          from the vendors and chose to subpoena the

6          vendors  directly.

7              That resulted in the State obtaining

8          the 91,000 call recordings that we would

9          have gladly provided given the time to just

37:53AM 10          gather it ourselves.  But the bottom line

11          is, the State has the data, and that's sort

12          of the underlying theme to all of these

13          requests.  The State has the data.  At

14          times, they choose not to accept they have

38:05AM 15          the data or they don't want to believe we've

16          given it to them.  But with many of these

17          requests, they already have it.

18              I think it would be helpful for the

19          Court to step through the 16 requests at

38:18AM 20          issue in a methodical fashion, and if the

21          Court would allow it, I have just a short

22          chart to go through those --

23              THE COURT:  Listen, you can spent your

24          time how you want, but I'm saving at least 5

38:32AM 25          minutes for a rebuttal, so you've got

1      15-minutes --

2                 MS. MOSS:  Of course, Your Honor.

3                 THE COURT:  -- to argue your breadth.

4                 MS. MOSS:  Thank you.  And, Your Honor,

38:38AM 5      I will not go through each request, but just

6      in case, we've grouped them into three

7      categories; and so for those categories, if

8      it would be helpful, I can produce it, or I

9      can just explain it.

38:48AM 10                THE COURT:  You can.  If you want to

11     give it to me, that's fine.  Have they seen

12     it?

13                MS. MOSS:  I can give it to them, Your

14     Honor.

39:04AM 15                THE COURT:  Thank you.

16                MS. MOSS:  Your Honor, originally, the

17     State moved on 16 requests.  In the State's

18     reply brief, they disposed of one of the

19     requests and said they agree we provided the

39:27AM 20     information at issue.  It's Document Request

21     176.  So we have effectively not included

22     that in this chart as it's no longer at

23     issue.  So you'll see 15 requests here that

24     we grouped into three separate categories.

39:42AM 25     We think it's just an easy way for the Court

1                    to understand our argument of why we believe

2                    these 15 requests shouldn't be further

3                    compelled.

4                         In the first category of the

09:54AM 5                    information already provided, there are four

6                    requests at issue where CenturyLink has

7                    already given the information to the State

8                    that they have requested.

9                         Second, there are five requests where

10:08AM 10                    the information just simply does not exist.

11                    A lot of this stems from the State's

12                    misunderstanding of the information that

13                    they're requesting.  As you heard

14                    Mr. Baldwin explain, they would hear phrases

10:21AM 15                    or words during the deposition or pulled

16                    from a document, and so in these categories,

17                    the information that they're requesting just

18                    simply is not there.

19                         In the last category, Your Honor, there

10:35AM 20                    are six document requests that would be

21                    effectively impossible to produce.  There

22                    are things that involve reconstructing data

23                    from 2014, looking at types of data that

24                    would be -- would have to be generated

10:52AM 25                    through a very difficult process to

*State of Minnesota v. CenturyLink*                    61

1              reconstruct data pulled from tables that

2              exist in databases.

3                   But the bottom line, Your Honor, is

4              that the State said in their reply papers

11:06AM 5              that for these requests, they're not

6              actually seeking the data, which is how we

7              understood the request, that they're seeking

8              the methodology.  They've deposed several

9              people from CenturyLink who have explained

11:17AM 10              the way that numbers are obtained from

11              databases.  It's several deponents, and

12              we've included this in our briefing with the

13              transcript cites, have explained the

14              methodology as to how you compile the data,

11:32AM 15              pull the data from the database.  You look

16              at the data and compare it to data at a

17              later date.

18                   And so there are no documents that

19              explain that data.  There are processes to

11:42AM 20              write computer code to pull things, but the

21              documents don't exist, and to reconstruct

22              the data to explain to the State what

23              exactly was happening five -- you know, four

24              to five years ago just simply would be

11:58AM 25              impossible.

*State of Minnesota v. CenturyLink*                            62

1                   And so, Your Honor, I will not step

2              through each specific request at issue, but

3              our primary arguments here are that we've

4              been extremely diligent, responsive to the

12:13AM 5              State.  We've provided the information they

6              requested, and for the information that we

7              haven't, it either doesn't exist or it would

8              be impossible to do.

9         THE COURT:  Well, I just -- I didn't

12:23AM 10         hear Mr. Baldwin say that he already had

11         175.  I think he specifically said he didn't

12         have 175; is that right?

13         MR. BALDWIN:  We have partial data

14         responsive to that request.  There are

12:37AM 15         customers that Mr. Hall identified as being

16         defrauded, and we don't have their data.

17         And we also don't have the legend or code

18         used to interpret the data which is covered

19         both by Document Request 175 and Document

12:47AM 20         Request 111, which I don't believe is on

21         this chart which we also requested.

22         THE COURT:  Do you want to respond to

23         that?

24         MS. MOSS:  Yes, Your Honor.  We've had

12:58AM 25         several discussions.  And when I say, "we,"

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

1          me and Mr. Baldwin have discussed this

2          verbally and in writing in letters.  We have

3          produced the data that was used in

4          conjunction with the David Hall analysis.

13:12AM 5  The State does not believe that we have done

6          that.

7               As I stand here before you today, I

8          really don't know how to resolve that other

9          than to just simply tell the Court we have

13:25AM 10 provided the data to the State.  They have

11         all of the data related to Minnesota

12         consumers that was used in the Hall

13         analysis.  They have documents that explain

14         every code, every bill code, every

13:39AM 15 adjustment code.  We provided those to the

16         State.  They wanted to know how to interpret

17         the data because they didn't depose

18         Mr. Hall.

19              And so we actually went out of our way

20         to create a glossary for them.  We called it

21         a data dictionary or a glossary, and we

22         personally put together a glossary for the

23         State with every acronym and header of the

24         information so that the State would

14:04AM 25 understand what data -- how it was organized

1          and what it was providing.

2               The nine million rows of data that I'm

3          referring to, that's the Hall data, Your

4          Honor.  We've provided it to them.  We have

14:18AM 5  the Bates numbers.  The State thinks there

6          was data missing because they misunderstand

7          the process that it takes to extract the

8          data and provide it to the State in a format

9          that relates to Minnesota consumers.  But

14:33AM 10 it's all there.  There is not one piece of

11         data that they don't have with regard to the

12         Hall analysis.

13              THE COURT:  Okay.  Do you want to

14         respond?

14:59AM 15      MR. BALDWIN:  I would, Your Honor.  We

16         want to get this case moving.  We want to

17         get to trial.  We want to get to summary

18         judgment.  We're tired of the feet dragging.

19         We just need to get a little bit of

15:10AM 20 information to get ready for our Motion for

21         Partial Summary Judgment.  It's basically

22         drafted and would be ready to file shortly

23         and tying off a few loose ends from

24         discovery.  I'm not going to go through a

15:20AM 25 lengthy history of every, you know, twist

*State of Minnesota v. CenturyLink*                    65

1               and turn in this litigation.

2                   But look.  We need to depose David

3               Hall.  We weren't going to depose him

4               without his data.  He didn't produce his

15:29AM 5               data until two months after the close of

6               discovery, and they still haven't produced

7               all of it.  We weren't going to waste the

8               time trying to depose him without the

9               information he analyzed.  He's going to be

10              probably the first witness we call at trial.

11              I know he's CenturyLink's expert.  If we

12              don't depose him, it's just going to make an

13              additional mess at trial.  We have to depose

14              him.  There's really no way around it.

15:51AM 15                  This issue about the 66 people in the

16              Complaint, again, these are people we

17              identified to CenturyLink years ago.  We

18              voluntarily produced 134,000 documents to

19              CenturyLink showing the complaints from

16:05AM 20              about 5,000 people who have complained to

21              our office about CenturyLink's fraudulent

22              conduct.  We haven't hidden these people at

23              all.

24                  To the extent that CenturyLink is going

16:15AM 25              to use the depositions of these people as

1       pretext to slow down this litigation,

2       honestly, we'll just strike them from our

3       Proposed Complaint.  We want to get this

4       moving.  We want to get to the consideration

16:25AM 5       of liability as quickly as possible.

6           I would just like to also briefly

7       mention that the information that Ms. Moss

8       provided about the discovery requests, there

9       are a number of them grouped here;

16:40AM 10      responsive information does not exist, 184,

11      185, 198, and 199.  I'll notice too, they're

12      -- the one above that, 197.

13          I would ask that you look at the --

14      what is called Baldwin Affidavit.  Number 3,

16:58AM 15      Exhibit S, Exhibit T, Exhibit U, Exhibit V,

16      Exhibit W; these are the documents that

17      describe a specific number of defrauded

18      consumers in each of these document requests

19      or the specific percentage of consumers who

17:11AM 20      did not get what CenturyLink promised.

21          The idea that these documents don't

22      exist, it's not in their brief.  It's

23      nothing they filed to support with any

24      company declaration something in an exhibit

17:23AM 25      here today that's, you know, been put forth

1           for the first time.  This is a company that

2           audits and monitors and tracks almost

3           everything.

4               Again, I can't tell you the specific

17:35AM 5           number of these people that were defrauded

6           in these ways because CenturyLink has

7           maintained that it's confidential

8           information, but it is down to the specific

9           number of people or the specific percentage.

17:43AM 10           It was obviously some kind of precise

11           analysis which we haven't been afforded, and

12           we should because it gets to the issue of

13           whether or not CenturyLink is even

14           monitoring its fraudulent practices, how it

15           quantifies the number of people it's

16           defrauded.  So I would just ask the Court to

17           look at those few exhibits.

18               The main thing we're trying to get here

19           today, like I said, is documents to get

18:05AM 20           ready to prove the full scope of

21           CenturyLink's fraud at trial.  That's

22           Document Request 175 and then the five that

23           I mentioned as well as the -- what we've

24           been calling the state X methodology where

18:17AM 25           the expansive methodology that CenturyLink

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

1              provided to another state attorney general.

2              This is a case about systemic fraud at the

3              third largest telecommunications company in

4              the country.  It has admitted to tens of

18:30AM 5      thousands of violations.  The company's own

6              board of directors conducted audits of

7              millions of documents that track the State's

8              allegations.

9                   We're ready to go, but we think we

18:40AM 10     should be given a few additional pieces of

11             information and a few more depos, and we'll

12             be trying this.  But our big concern today

13             is getting ready for the consideration of

14             the merits here because we're ready to go.

18:50AM 15     The fact that CenturyLink manufactured a

16             six-month delay in the consideration of this

17             motion, we've used that time to draft our

18             Motion for Partial Summary Judgment, and

19             we're ready to go.  So with that, I would

19:00AM 20     just say, again, we just want a limited

21             amount of information about quantifying the

22             scope and scale of CenturyLink's tremendous

23             fraud.

24                  THE COURT:  All right.  Let's turn to

19:12AM 25     the Motion to Enforce the Protective Order.

ANOKA COUNTY  DISTRICT COURT
TENTH JUDICIAL DISTRICT
ANOKA, MINNESOTA

 1            MS. MOSS:  Your Honor, before I address
 2       that, could I address one statement about
 3       the state X methodology that Mr. Baldwin
 4       mentioned?
19:24AM  5            THE COURT:  You may.
 6            MS. MOSS:  With that point, Your Honor,
 7       this goes towards the State's Motion for
 8       Sanctions where we've been discussing the
 9       clarification of Judge Meslow's order and
19:31AM 10       what he meant by what's consistent with
11       methodologies provided to another state.  We
12       need to clarify for the Court that there is
13       a methodology that has been applied by an
14       expert witness in this case.
19:45AM 15            What the State wants us to do is
16       reconstruct assumptions that were made three
17       years ago.  Three years ago before we have
18       the information we know today, we had
19       information that was provided to another
19:59AM 20       state that had nothing to do with Minnesota
21       or nothing to do with Minnesota consumers.
22       We, then, as things evolved, retained an
23       expert to conduct analysis.
24            The State wants us to take something
50:12AM 25       that we did in 2016, unlearn everything that

1        we know today and try to recreate something

2        that CenturyLink did prior to an expert

3        being retained in the case.  The information

4        doesn't exist for Minnesota.  It has never

50:29AM  5        been conducted.  It has never been created.

6        There's nothing to produce in terms of what

7        the State labels our methodology, but it

8        does include information that we knew at the

9        time in 2016.

50:42AM 10        That response was provided to another

11        state in good faith to try to resolve

12        pre-litigation inquiries, and it was

13        withdrawn.  It was specifically withdrawn

14        from any -- any interrogatory response that

50:59AM 15        it had previously been provided in and state

16        X accepted that.  It's not an issue in the

17        other state.  It's not an issue here, but it

18        does exist because the state's share

19        information.  So what the State saw is an

51:15AM 20        earlier withdrawn answer to an interrogatory

21        that CenturyLink's expert then said was

22        inaccurate and based on assumptions that our

23        expert did not apply.

24        So, Your Honor, it would be extremely

51:32AM 25        difficult to recreate this information, if

 1              not impossible.  Given the fact that we know

 2              what we know today, we can't unlearn

 3              information and try to recreate an incorrect

 4              answer.  Essentially, what our answer would

 5              be is, State, here is what we think we did

 6              in 2016.  We don't stand by this response.

 7              We think it's inaccurate and withdrawn, but

 8              the State is asking us to provide a verified

 9              and sworn interrogatory response swearing

10              that it's true.

11                   So just from a practical perspective

12              and under the Rules of Civil Procedure, we

13              don't even understand how that's what Judge

14              Meslow could have possibly intended by the

15              words "consistent with" -- or by the phrase

16              "consistent with methodologies provided to

17              another state."

18                   There are two methodologies at issue,

19              Your Honor.  There was a methodology we --

20              we provided to a response to what's called

21              the internet cost recovery fee, methodology

22              one.  Methodology two is the response we

23              provided with regard to these billing

24              concerns.  So those were the two

25              methodologies we believe were at issue.

1           We provided that information consistent
2           with what we provided to another state and
3           that -- that's really the point of
4           contention, Your Honor, with what we
5           provided.  Have we provided withdrawn and
6           superceded responses to the state?  We
7           haven't, but we -- our position is that
8           can't possibly be what -- what Judge
9           Meslow's order contemplated.
10              THE COURT:  Okay.
11              MS. MOSS:  And then, Your Honor,
12          quickly with the Motion to Enforce the
13          Protective Order, I just would like to
14          clarify that we're trying to seek to keep a
15          miniscule portion of the State's
16          non-dispositive papers filed in redacted
17          form.  As those materials currently stand,
18          they are in the record in redacted form, but
19          what the State wants to do is re-file them
20          unredacted.
21              There are only 11 categories of
22          information at issue which we've grouped and
23          explained in our brief successively at pages
24          11 through 19.  And what those 11 categories
25          have to do with is primarily numerical

*State of Minnesota v. CenturyLink*                    73

1          figures.  These numerical figures are quoted

2          from documents that CenturyLink provided

3          during discovery and that, as I said, are

4          currently in redacted form.

5              And what the State want -- what the

6          State has not done is they -- they want to

7          interpret the Protective Order to mean that

8          they can release this information if they

9          just generally refer to it.  But under the

10          Protective Order, we have the right to

11          designate information as confidential if it

12          is commercial information within the meaning

13          of Rule 26.03.

14              And under Rule 26.03, we've provided

15          several cases that explain that the

16          definition of confidential commercial

17          information is different than a standard for

18          trade secrets because under Rule 26.03, we

19          can protect either trade secrets or other

20          commercial information which is exactly what

21          we've done here.  So we've taken -- we've

22          designated our documents during the

23          discovery process as confidential.

24              The State is now quoting from those

25          documents adding language to advocate in

```
 1                    non-dispositive papers that that information

 2                    stands for something that it doesn't,

 3                    effectively taking the information out of

 4                    context.  But they want to un-redact the

 5                    confidential numbers, words, and phrases

 6                    they quoted from discovery materials.

 7                         We've explained in our briefing that

 8                    there are cases, including the

 9                    GlaxoSmithKline case and the Star and

10                    Tribune case that recognize that the matter

11                    of the proceedings -- the stage of the

12                    proceedings matters.  And here, because

13                    these are non-dispositive motions, there is

14                    no public right of access.  The public

15                    simply does not have a right to access

16                    non-dispositive materials, and there is no

17                    reason for the Court to even engage in that

18                    inquiry because this is all related --

19                    unrelated to the merits.

20                         We're not asking the Court, at this

21                    point, to rule on what would be admissible

22                    at trial, and we're not asking the Court to

23                    decide what would be maintained as

24                    confidential information at trial.  So this

25                    motion is extremely limited, Your Honor.
```

1              It's limited to those non-dispositive

2              papers.  It's limited to 11 categories of

3              information that are at issue, and we're

4              simply seeking to keep that information

56:22AM 5      redacted in the non-dispositive materials

6              that have been filed.

7                   THE COURT:  Okay. Thank you.  And a

8              response?

9                   MR. CANADAY:  Good morning, again, Your

56:34AM 10     Honor.  James Cananday.  I'll be brief.

11             Primarily, we will rely on our written

12             response on this issue, but I just want to

13             highlight a couple of things.

14                  Ms. Moss said, and we can agree, that

56:45AM 15     you can reduce this down to 10 -- excuse me

16             -- 11 categories of redactions.  But, in

17             fact, you can simplify it one further level

18             because 9 of those 11 are simply numbers.

19             And when Ms. Moss was speaking, she said

20             they're just numerical figures and that

21             makes this sound unimportant and makes it

22             seem like it's easy to just redact them to

23             solve this problem, but these numerical

24             figures are the heart of the State's case.

57:10AM 25     And so there is a disconnect.  They're

 1              depending on how this issue is argued or in

 2              the briefing as to how important this issue

 3              is.

 4                  We did spend months, and this connects

 5              everything you've heard in the last hour.

 6              What's been going on over these months?  The

 7              State has been trying to resolve this

 8              redaction issue, which is very complicated

 9              for a million reasons, since last September.

07:34AM 10     I could say since last July depending on how

11             you count.  That's when all this started.

12                  And we're down to 11 disagreements.

13             That doesn't show you everything that we

14             have come to an agreement on.  I would

07:48AM 15     suggest the Court look at the redacted

16             version of the filing.  If the Court's

17             practice is like probably everybody at this

18             table, most of us are looking at unredacted

19             filings, for obvious reasons.

07:02AM 20                 If you look at the redacted filings,

21             you'll see that there is a lot of

22             information that we agreed, because we can

23             in good faith, is trade secrets and it's

24             something appropriate to protect.

08:11AM 25                 We are not refusing to acknowledge that

 1              CenturyLink has that type of information,

 2              but the State is a public entity, and we do

 3              have an obligation not to redact information

 4              for which there is no basis for it to be

 5              redacted.  And I would suggest that's

 6              actually equally true of the Court.

 7                   So we -- especially for the first nine

 8              categories of information where it's the

 9              numbers, I would just add that it's

10              important for this to be resolved from the

11              State's point of view, and at this point,

12              because these are at the heart of the

13              State's case, this issue is going to repeat

14              and anything else that happens in this case.

15              So some direction from the Court as to this

16              issue would be helpful in that corner -- in

17              that regard as well.

18                   The comments by Ms. Moss about the

19              stage of the proceeding matters and because

20              this is a non-dispositive context, it's

21              appropriate to redact them; that's not what

22              the cases that are cited in here say.  As we

23              laid out in our briefing, those cases

24              repeatedly point to two words that are the

25              standard:  Something is tangential or

1            unrelated to the issue, which often happens

2            when you're at the pre-merits phase.  That's

3            where there's wider latitude for the Court

4            to redact information from the public view.

5            And that's why it's important that we're

6            pointing out here that these issues that the

7            State has refused to go along with

8            redacting, these are not tangential.  These

9            are not unrelated to the issues.  These are

10           the core of the allegations made by the

11           State in the Amended Complaint and the

12           motions that are at issue here.

13               Just the last thing I'll say, and I

14           won't go into any detail, I think, in my

15           view, it's constructive to look at both the

16           affidavit submitted by CenturyLink and the

17           cases submitted by CenturyLink.  I'm asking

18           you to look at everything they're giving you

19           in support of their motion.  I'm doing that

20           because what the affidavits show doesn't

21           line up with what the cases require.  The

22           affidavits, although in the briefing they're

23           described as, you know, the affidavit of so

24           and so provides information about the

25           commercially-sensitive nature of this -- of,

ANOKA COUNTY  DISTRICT COURT
TENTH JUDICIAL DISTRICT
ANOKA, MINNESOTA

1             you know, the information we're talking

2             about, the affidavits themselves, by and

3             large, show why CenturyLink is concerned

4             that it will hurt their consumer base if

00:31AM 5     this information is out there.  There will

6             be negative marketing about CenturyLink's

7             services if its consumers know what the

8             State is alleging in terms of the consumer

9             fraud allegations in this case.

00:42AM 10             Trade secret jurisprudence doesn't

11            protect that.  That's a consequence of being

12            sued by a State with allegations of consumer

13            fraud.  You will not find good support in

14            CenturyLink's submissions related to

00:57AM 15            competitor use of information.

16                    And so that last piece that I also said

17            I would encourage you to look at is the

18            cases CenturyLink has submitted.  Most of

19            them are submitted attached to the affidavit

01:11AM 20            of CenturyLink's attorney, Mr. Winkler.

21            Most of them are unpublished.  Many of them

22            are from out of state.  But if you go

23            through them, in virtually every one, you're

24            going to find a description of why the party

01:23AM 25            was alleging something was important to be

State of Minnesota v. CenturyLink                                    80

1        treated as a trade secret.  It was training

2        material that had been developed over a

3        number of years.  It was confidential

4        financial information that went to the core

01:32AM 5        of the company.  It was confidential

6        research that was the heart of the typical

7        trade secret example.

8            And then look at CenturyLink's chart in

9        its motion of the 11 categories we're

01:46AM 10       talking here.  Again, nine of them are

11       simply the number that the State has found

12       through discovery as to what the allegations

13       are, and two of them describe the systems

14       used by CenturyLink to remove discounts from

02:00AM 15       consumers.

16           I'll leave it at that.  Thank you.

17           THE COURT:  A response, Ms. Moss?

18           MS. MOSS:  Your Honor, I'll make two

19       quick points.  First, the State is referring

02:05AM 20       to the wrong standard.  The standard here is

21       under Rule 26.03, and it's a good-cause

22       standard.  We have shown that there is good

23       cause to protect these 11 categories of

24       information through five unrebutted

02:20AM 25       declarations.  These are declarations from

ANOKA COUNTY  DISTRICT COURT
TENTH JUDICIAL DISTRICT
ANOKA, MINNESOTA

*State of Minnesota v. CenturyLink*                                81

1          company personnel to explain the

2          confidential nature of the commercial

3          information, and they've explained the harm

4          that can result.

02:29AM 5          Now, this -- Mr. Canaday mentioned

6          trade secrets.  That's not the standard

7          here.  In the case we've submitted at pages

8          9 -- at page 9 of our brief, they have

9          nothing to do with trade secrets.  They're

02:42AM 10         all confidential commercial information

11         under Rule 26.03.

12             And in those cases, especially the

13         *Krueger* case, *Krueger versus Ameriprise*

14         *Financial*, that case specifically looked at

02:57AM 15         commercial information related to internal

16         assessments and third-party analysis by a

17         financial consultant.  It's exactly what the

18         nine numbers at issue in this case has to do

19         with.  The information has to do with --

03:11AM 20         that we're seeking be redacted.  It has to

21         do with internal assessments that the

22         company has run.  It has to do with internal

23         assessments that then were released by a

24         third-party financial consultant but

03:23AM 25         understand a designation of confidentiality.

1            And so the *Krueger* case specifically

2       held that that information was commercial

3       information supported by declarations of

4       company personnel, and it was protected in

03:37AM 5       redacted form because it was submitted in

6       connection with a non-dispositive motion.

7            Secondly, Your Honor, the numbers are

8       not just numbers.  These are assessments.

9       These are internal assessments that the

03:50AM 10       company has done.  The five declarations

11       address the significance of this information

12       and identifies specific harm that can

13       result, that negative advertising campaigns

14       are common in the industry, that information

04:07AM 15       taken out of context as the State presented

16       it but then connects it with a discovery

17       document and quotes from an internal

18       discovery document and asserts that that

19       information is true, the company personnel

04:22AM 20       explained how prejudicial that is to the

21       competitive nature of the sales industry.

22            They also talk about the harm that

23       would result from the loss of customers.  As

24       Mr. Canaday tried to explain, this isn't a

04:37AM 25       harm to the customer.  This a harm to

1          CenturyLink's business by releasing internal

2          assessments and analysis that leads to the

3          loss of customers.  That is competitive

4          harm.  That is business harm.  And that's

04:51AM 5          exactly what Rule 26.03 contemplates.

6               And for those reasons, Your Honor, we

7          ask that the Court simply redact this

8          material, keep it in redacted form, and save

9          for another day the discussion about what

05:03AM 10          will be core to the State's case at trial.

11               THE COURT:  Okay.  I understand the

12          issues.  Anything else?

13               MR. BALDWIN:  No, Your Honor.

14               THE COURT:  I'll take the matter under

05:15AM 15          advisement and issue my order.  Thank you,

16          all.

17               MR. BALDWIN:  Thank you.

18               MS. MOSS:  Thank you.

19               (The foregoing proceeding concluded at

20          11:05 a.m.)

21

22

23

24

25

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA

April 10, 2019

*State of Minnesota v. CenturyLink*

84

1 STATE OF MINNESOTA  )
           )  ss
2 COUNTY OF ANOKA   )

3    BE IT KNOWN THAT I, Christina M. De Grande,

4 the undersigned, an official court reporter for the

5 Tenth Judicial District, in and for the County of

6 Anoka, State of Minnesota, do hereby certify that

7 the foregoing 83 pages are a true and accurate copy

8 of my original stenotype notes taken relative to the

9 aforementioned matter on April 10, 2019, in the City

10 of Anoka, County of Anoka, and State of Minnesota,

11 before the Honorable Bethany Fountain Lindberg.

12

13

14

15 WITNESS MY HAND AND SEAL this 22nd day of

16 April, 2019.

17

18 **Christina DeGrande**

    Digitally signed by Christina DeGrande
    DN: cn=Christina DeGrande, o, ou,
    email=christinadegrande@yahoo.com, c=US
19    Date: 2019.04.23 12:18:25 -05'00'

  CHRISTINA M. DE GRANDE
20 Official Court Reporter
  Anoka County District Court
21 2100 Third Avenue, Suite C333
  Anoka, Minnesota  55303
22 (763) 760-6756

23

24

25

ANOKA COUNTY  DISTRICT COURT

TENTH JUDICIAL DISTRICT

ANOKA, MINNESOTA