# EXHIBIT B

Electronically Served
6/26/2019 3:05 PM
Anoka County, MN

02-CV-17-3488

CASE 0:18-cv-00296-MJD-JFD   Doc. 178-2   Filed 07/01/19   Page 2 of 15

Filed in District Court
State of Minnesota
6/25/2019 1:02 PM

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF ANOKA | TENTH JUDICIAL DISTRICT |

| | |
|---|---|
| State of Minnesota, by its Attorney General, Keith Ellison,<br>                    Plaintiff,<br>v.<br>CenturyTel, Broadband Services, LLC, d/b/a CenturyLink Broadband, QuestBroadband Services, Inc., d/b/a CenturyLink; and Qwest Corporation, d/b/a CenturyLink QC,<br>                    Defendant. | **ORDER ON MOTION TO ENFORCE PROTECTIVE ORDER**<br><br>Court File No. 02-CV-17-3488 |

The above-entitled matter came before the Honorable Bethany A. Fountain Lindberg, Judge of District Court, at the Anoka County Courthouse in Anoka, Minnesota. On April 10, 2019, the parties appeared before the Court on Defendant's Motion to Enforce the Protective Order. James Canaday, Esq. and Alex Baldwin, Esq., appeared on behalf of Plaintiff, State of Minnesota. David Aafedt, Esq. and Dana Moss, Esq. appeared on behalf of Respondent, CenturyTel, Broadband Services, LLC, et al.

Based on the evidence presented, the arguments of counsel, and all of the files, records, and proceedings herein, the Court makes the following:

## ORDER

1. Defendants' Motion to Enforce the Protective Order is GRANTED in part and DENIED in part.

2. CenturyLink's Motion to Enforce the Protective Order is DENIED as to redactions one (1) through ten (10), as described in Defendants' Motion to Enforce the Protective Order.

3. CenturyLink's Motion to Enforce the Protective Order is GRANTED as to redaction eleven (11), as described in Defendants' Motion to Enforce the Protective Order.

4. Any materials filed with the Court that contain redaction number eleven (11), as described in Defendants' Motion to Enforce the Protective Order, must be filed as confidential or in redacted form.

5. The memorandum of law, attached, is incorporated herein by reference.

6. A copy of this Order shall be sent to the parties or their attorneys, if any, by U.S. Mail or e-service as appropriate. Such service shall constitute due and proper notice for all purposes.

BY THE COURT:

*Baflindberg*

Fountain Lindberg, Bethany (Anoka Judge)
2019.06.25 08:10:21 -05'00'

_____

Bethany A. Fountain Lindberg
Judge of District Court

## MEMORANDUM OF LAW

### Background

CenturyTel Broadband Services, LLC is a Louisiana limited liability company doing business in Minnesota as CenturyLink Broadband. Its principal place of business is 100 Century Link Drive, Monroe, Louisiana 71203. It is registered with the Minnesota Secretary of State pursuant to the Minnesota Limited Liability Company Act. CenturyTel Broadband Services, LLC, acting in concert with other entities affiliated with CenturyLink, Inc., provides communications services in the State of Minnesota and it is a subsidiary of CenturyLink, Inc., a Louisiana Corporation. (Complaint ¶ 3; Answer ¶ 3).

Qwest Broadband Service, Inc. is a Delaware corporation, doing business in Minnesota as CenturyLink. Its principal place of business is 100 CenturyLink Drive, Monroe, Louisiana 71203. It is registered with the Minnesota Secretary of State pursuant to the Minnesota Foreign Corporation Act. Qwest Broadband Service, Inc., acting in concert with other entities affiliated with Century Link, Inc., provides communication services in the State of Minnesota and it is a subsidiary of CenturyLink, Inc., a Louisiana Corporation. (Complaint ¶ 4; Answer ¶ 4).

Qwest Corporation is a Colorado corporation, doing business in Minnesota as CenturyLink QC. Its principal place of business is 100 CenturyLink Drive, Monroe, Louisiana 71203. It is registered with the Minnesota Secretary of State pursuant to the Minnesota Foreign Corporation Act. Qwest Corporation, acting in concert with other entities affiliated with CenturyLink, Inc., provides communications services in the state of Minnesota and it is a subsidiary of CenturyLink, Inc., a Louisiana corporation. (Complaint ¶ 5; Answer ¶ 5).

On July 12, 2017, the State of Minnesota (hereinafter, "the State") commenced this lawsuit for consumer fraud and deceptive trade practices with service of the Summons and Complaint on Defendants (hereinafter, "CenturyLink").

On November 22, 2017, the parties executed a stipulated protective order (hereinafter, "protective order") which was adopted by the Court on November 28, 2017. The protective order provides, "[t]he State may designate documents as "Confidential" if it believes, in good faith that a document contains nonpublic data, confidential data, private data on individuals, or other data which would be protected data within the meaning of the Minnesota Government Data Practices Act. . ." (Protective Order at 2 ¶ 2(a)(i)).  Likewise,

> Defendants may designate (or have designated in response to a Civil Investigative Demand) documents they produce as "Confidential" if Defendants assert in good faith that the disclosure contains "trade secret or other confidential research, development, or commercial information" within the meaning of Rule 26.03 of the Minnesota Rules of Civil Procedure, "trade secret information" within the Meaning of Minn. Stat. § 13.37, subd. 1(b) (2016), or information that is otherwise classified as nonpublic under federal or state law.

(Protective Order at 2 ¶ 2(a)(ii)).

> To mark information as confidential the designating party "may designate Documents, information or other tangible things it produces in this action or creates as part of the discovery process (including answers to written discovery) as "Confidential" either by marking, stamping, or by some other form of identification designating an entire group of documents as 'Confidential.'"

(Protective Order at 2 ¶ 2(a)).

The parties stipulated, and the Court ordered, if a designating party marks a document, information, or other tangible item as confidential and the receiving party objects, the designating party must "bring a motion for an order determining that the material is "Confidential" or preventing the disclosure of such material." (Protective Order at 4 ¶ 3). The Designating Party has

4

the burden of showing that the information is "Confidential" under applicable law." (Protective Order at 4 ¶ 3).

On January 10, 2019, CenturyLink filed and served their Motion for Enforcement of Protective Order. CenturyLink moves the Court for an order affirming that CenturyLink has properly designated certain information as "Confidential" under the Stipulated Protective Order. CenturyLink seeks to keep portions of the State's materials in redacted form.

CenturyLink, as the designating party, has the burden of showing the information is confidential under applicable law.

**Protective Orders**

CenturyLink moves the Court to designate eleven (11) categories of information as confidential commercial information. "To prevent public disclosure of matters produced in discovery, the party or person from whom discovery is sought may move for a protective order under Minn. R. Civ. P. 26.03." *State ex rel. Humphrey v. Philip Morris Inc.*, 606 N.W.2d 676, 686 (Minn. Ct. App. 2000). Minnesota Rule of Civil Procedure 26.03 provides, "for good cause shown, the court may make any order which justice requires to protect a party or person . . . including . . . that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way. . ." Minn. R. Civ. P. 26.03(a)(7). "Generally, "good cause" means a "legally sufficient reason."" *TC/Am. Monorail, Inc. v. Custom Conveyor Corp.*, 840 N.W.2d 414, 420 (Minn. 2013).

Protective orders serve the objective of discovery "to encourage the exchange of relevant information by the parties prior to trial and to discourage and prevent unjust surprise and prejudice at trial." *Gale v. Cty. of Hennepin*, 609 N.W.2d 887, 891 (Minn. 2000). "Protective orders may also promote cooperation in discovery if litigants know the information they provide will not be

5

widely disseminated." *State ex rel. Humphrey v. Philip Morris Inc.*, 606 N.W.2d 676, 686 (Minn. Ct. App. 2000).

**Confidential Commercial Information**

CenturyLink argues the information it seeks to protect is confidential commercial information. CenturyLink has identified eleven (11) categories of information it seeks to keep in redacted form and the State seeks to file unredacted. Categories one (1) through nine (9) refer to internal and third-party analyses and assessments of CenturyLink's business operations. These redactions seek to protect either a single numerical figure or a "very short phrase." (Def. Memo at 11). Categories ten (10) and eleven (11) seek to protect what CenturyLink claims is proprietary computer system information and internal sales processes. CenturyLink, as the party seeking to enforce the confidentiality of the redactions has the burden to prove the necessity of maintaining the confidentiality.

Neither the Minnesota Supreme Court nor the Minnesota Court of Appeals has defined "confidential commercial information." *See Philip Morris*, at 695 (Minn. Ct. App. 2000). However, the Minnesota Court of Appeals in *Phillip Morris* likened the analysis of confidential commercial information to that of a trade secret holding the information "must have "independent economic value" as a result of its not being generally known or readily ascertainable by persons who can make use of the information." *Id*. "Implicit in the description of "confidential information" . . . is the idea that the business came by the materials in question in the normal course of its business." *Philip Morris Inc.*, at 695 citing *Carpenter v. U.S.* 484 U.S. 19, 26, 108 S.Ct. 316, 320 (1987).

6

Thus, to prevail on its Motion to Enforce the Stipulation, CenturyLink must make two showings for each of the items it seeks to keep confidential. First, CenturyLink must demonstrate it has kept the information confidential and closely guarded within the company such that the information was available to employees only on a "need-to-know" basis and that it generally hasn't been disclosed outside the company. Second, CenturyLink must show real harm will come from dissemination of the material such as the documents being improperly used by competitors or other parties to gain a competitive edge or the documents being used to disrupt CenturyLink's operations and to harass its employees and representatives. *Seneca Foods Corp. v. Comm'r of Revenue*, No. 8683-R, 2015 WL 4875000, at *4 (Minn. Tax July 21, 2015); *Enbridge Energy, Ltd. P'ship v. Comm'r of Revenue*, No. 8579, 2014 WL 5342580, at *2 (Minn. Tax Oct. 2, 2014).

*Categories 1-9*

Categories one (1) through (9) of the redacted information deal directly with numerical references related to internal and third-party analyses and assessments of CenturyLink's confidential business operations. CenturyLink argues disclosure of this information would reveal highly confidential business operations relating to statistics about agent performance, quality assurance metrics, account and billing data, and candid discussions between employees about initiatives and training. (Def. Memo at 11). CenturyLink claims this information is kept confidential and restricted to only those within the company who have a "need-to-know" basis. CenturyLink further argues disclosure would reveal confidential analysis conducted by a third-party financial consultant. (Sullivan Aff. ¶12).

The Court is not persuaded by CenturyLink's assertions that the information has remained confidential. CenturyLink has not demonstrated the methodology it employed to keep these specific numbers confidential. It has not demonstrated that these numbers are proprietary

7

information. Nor does CenturyLink demonstrate what employees were allowed access to this information and which employees were denied access. CenturyLink makes blanket statements that this information was kept confidential. Minnesota law requires more than generalized, conclusory statements. The Court finds CenturyLink has not demonstrated the information they seek to redact is confidential.

Even if this Court had found the information to be confidential, CenturyLink must also show they would suffer specific economic harm from the data release. The Court next reviews this prong. CenturyLink makes a number of arguments as to how the dissemination of these numbers and phrases will prejudice them and cause them economic harm. First, CenturyLink argues public disclosure of the information contained in categories one (1) through (9) of its Motion to Enforce would "'chill employees' willingness to engage in internal assessments and provide open and honest self-evaluations." (Def. Memo at 12). CenturyLink argues the disclosure of this information will cause it to be less likely to conduct reviews to identify areas of improvement and penalize self-correcting behavior. (Def. Memo at 12-13). The Court is not persuaded by CenturyLink's arguments. CenturyLink provides no data to support these premises. There is no specific data about what employees CenturyLink is talking about, if this has happened in the past, the causal connection between potential behaviors and the harm, and any specific data about financial impact.

CenturyLink's broad, generalized statement does not meet the burden of proof required. The Court finds CenturyLink has not shown it will suffer real harm through its theory employees will be less forthcoming in identifying areas of improvement.

Second, CenturyLink argues its competitors could use the information to target CenturyLink customers who have "price lock" plans to try to get them to terminate the agreement

with CenturyLink based on the allegations that a specific number of customers were affected by price increases or allegedly did not receive the Visa card they were promised. CenturyLink argues these are competitive marketing strategies that would unfairly cause CenturyLink to lose existing and prospective customers.

CenturyLink's contention that unredacting certain numbers and short phrases will allow competitors to use negative marketing strategies against CenturyLink is plausible. However, CenturyLink's competitors are just as likely to launch negative campaigns against CenturyLink with the information CenturyLink does not seek to redact. The redaction of the specific number or percentages of consumers the State alleges CenturyLink defrauded by way of increased prices or unfulfilled gift cards is not the fulcrum that will determine whether competitors start a negative marketing campaign. Century Link seeks to redact numerical numbers and two short phrases. CenturyLink failed to show the distinction between the release of the information they labeled "confidential" and that which has already been released to the public. What is the causal connection to the numbers and short phrases that is catalyst or has the independent economic value? What is the real harm of competitors using the actual numbers rather than the allegations of the misconduct? CenturyLink has not given the Court enough information for the Court to conclude that CenturyLink's competitors will be more likely to launch negative marketing campaigns with the release of these numbers or short phrases than without them. On the record before the Court, CenturyLink has failed to demonstrate it would suffer economic harm by the release of the data.

Finally, CenturyLink argues it will suffer harm by public disclosure of these specific numbers as they could be used extra-judicially to prejudice CenturyLink in other litigations and investigations. (Def. Memo at 13). CenturyLink cites examples of information cited by the State

9

in this case making its way into ongoing litigation CenturyLink has in other cases. The purpose of a protective order is not to protect a party from the litigation process but to promote the exchange of information in the discovery process. CenturyLink argues they suffered unnecessary expense and undue burden defending themselves in other lawsuits. This is not real harm in the normal course of business.

The Court finds CenturyLink has not demonstrated good cause to maintain the redaction of certain numbers and short phrases contained in categories one (1) through (9) of its motion. CenturyLink failed to demonstrate that the information contained in categories one (1) through nine (9) are both (1) confidential and private and (2) would result in an independent economic harm from dissemination of the information. CenturyLink's motion with regard to redaction of categories one (1) through nine (9) is denied.

*Category 10*

Category ten (10) deals with information about CenturyLink's proprietary computer system and related operational processes. Specifically, CenturyLink seeks to keep the following statement found in the State's Motion to Compel redacted,

> CenturyLink used software that automatically rejected a promised Closer if the offered discount did not meet CenturyLink's secretive and complex promotional rules – regardless of whether those rules were communicated to consumers, and even when CenturyLink already promised the Closer . . . So when an agent had promised a Closer that did not meet one of these undisclosed requirements, CenturyLink's software would remove the Closer and would make a note in CenturyLink's records that the Closer was promised but not applied. . . . CenturyLink did not even notify consumers that they would not receive the offers they were promised. . . .[T]he software script specifically noted which consumers were promised – but denied – these Closer discounts.

CenturyLink argues this information should remain redacted because public disclosure would cause competitive harm by "revealing non-public information about CenturyLink's systems, sales

10

process, and promotions." (Def. Memo at 13, 17). CenturyLink argues information about its business systems, policies, and processes would be valuable business intelligence to competitors.

CenturyLink claims this information is sensitive information and disclosure would allow business competitors to use the information to gain business intelligence about CenturyLink's IT systems and internal policies. (Minniefield Aff. ¶ 9). The proprietary computer software CenturyLink moves to protect is still being used by CenturyLink for certain applications. (Lambert Aff. ¶ 8). CenturyLink claims this is non-public information, and that this information is not released outside of the Company. (Lambert Aff. ¶ 9).

CenturyLink makes a compelling argument that it has kept this information confidential within the company. They do not allow disclosure of the information to competitors or those outside the company. CenturyLink, as expected, works to guard its proprietary computer software from competitors, only allowing the information to be distributed within the company. As this is proprietary computer software, CenturyLink's argument that it is well protected is persuasive. The information CenturyLink seeks to redact pertains to CenturyLink's proprietary ▮▮▮ ▮▮▮ being used as a closer tool. CenturyLink no longer uses ▮▮▮ as a closer tool, however, CenturyLink still uses the ▮▮▮ for certain applications. The Court finds CenturyLink has made a sufficient showing the information it seeks to redact is confidential.

Having found the information regarding CenturyLink's ▮▮▮ confidential, the Court must now analyze whether CenturyLink will suffer harm as a result of the public release of this information. CenturyLink believes disclosing this information could result in unfair loss of customers and/or potential customers. CenturyLink argues its competitors could use the "purported system limitations" to gain a competitive advantage with customers, and CenturyLink will be prejudiced because the Plaintiff's statements mischaracterize the information and that the

11

information, as presented, is taken out of context. CenturyLink claims its competitors will be able to use these mischaracterizations against them to develop negative marketing strategies aimed at convincing customers to leave CenturyLink, harming their reputation and causing them to unfairly lose current and potential customers. (Lambert ¶¶ 9-10).

The paragraph at issue discusses processes their software system employed with respect to closer discounts. CenturyLink no longer uses the software as a closer tool. (Moss Aff. Ex. 9 at 85). The paragraph references past business processes. It does not disclose any information about CenturyLink's current software or current system limitations. Even if the system was still utilized, the statements regarding the software rejected discounts does not give CenturyLink's competitors any information about the proprietary software or how it is used. CenturyLink argues its competitors could use the information in negative marketing campaigns. Again, as noted above, CenturyLink fails to demonstrate how this specific disclosure has independent economic harm as compared to the lawsuit as a whole. CenturyLink fails to demonstrate how redacting the State's claims as to why certain customers allegedly did not enjoy the discounts they were promised will keep their competitors from creating negative marketing campaigns surrounding the entirety of the lawsuit. Moreover, the language CenturyLink seeks to redact does not mention the name of the software or any details that would reveal proprietary information about the software. The Court finds CenturyLink has not demonstrated good cause to maintain the redaction of information related to its computer software.

*Category 11*

In category eleven (11), CenturyLink seeks to protect information found in the State's Reply Memo filed in support of its Motion to Compel. Specifically, CenturyLink seeks to redact the following statement:

12



CenturyLink argues this information is sensitive, non-public information about CenturyLink's ▬. The information is derived from an internal spreadsheet used to track the status of projects. It is used ▬. (Minniefield Aff. ¶ 9). CenturyLink does not disclose this information outside the company and it is guarded within the company. CenturyLink has made a sufficient showing the information it seeks to have remain redacted is confidential information.

The Court must next analyze whether CenturyLink has met its burden in showing they will suffer harm as a result of the public release of information. CenturyLink puts forth two arguments to establish they will be harmed if the information is not redacted.

First, CenturyLink argues disclosure would cause employees to refrain ▬. CenturyLink claims that if employees fear ▬ will be taken out of context and used to harm CenturyLink's business or reputation they will be less likely ▬. (Minniefield Aff. ¶10). The Court does not follow the logic that CenturyLink's employees will choose not to take the steps necessary to ▬ because they feel the State mischaracterized the information when putting forth its theories in a lawsuit. Even if the Court were persuaded by this argument, CenturyLink does not demonstrate they will suffer actual harm. CenturyLink has not demonstrated that its operations will be interrupted or that its competitors would be able to use this specific information over other

13

information to gain a competitive edge over CenturyLink. Any harm suffered from employees choosing not to ███████████████████████ would be of CenturyLink's own making.

Second, CenturyLink argues the release of these statements could allow competitors to use the information to gain business intelligence about CenturyLink's IT systems and internal policies. CenturyLink claims this information about CenturyLink's purported system limitations could be used to develop marketing strategies aimed at convincing customers to leave CenturyLink and choose a competitor's services. (Minniefield Aff. ¶9). The Court agrees. The language CenturyLink seeks to redact is inflammatory and could potentially hurt CenturyLink's business if it was used in negative marketing campaigns by CenturyLink's competitors. Moreover, the redacted information goes directly toward CenturyLink's ███████████████████████ ███████████████.

The Court finds CenturyLink has demonstrated good cause to maintain the redaction of information related to its ████████████████.

14