# Exhibit A

STATE OF MINNESOTA                                  DISTRICT COURT

COUNTY OF ANOKA                                  TENTH JUDICIAL DISTRICT

                                                 Case Type:  Other Civil
                                                 (Consumer Protection)

_____

                                                 Court File No. 02-CV-17-3488
                                                 Judge Bethany Fountain Lindberg

State of Minnesota, by its Attorney General,
Keith Ellison,

              Plaintiff,

       v.                                        **ANSWER TO FIRST
                                                 AMENDED COMPLAINT
CenturyTel Broadband Services LLC, d/b/a         AND AFFIRMATIVE DEFENSES**
CenturyLink Broadband; Qwest Broadband
Services, Inc., d/b/a CenturyLink; and Qwest
Corporation, d/b/a CenturyLink QC,

              Defendants.

_____

       COMES NOW Defendants CenturyTel Broadband Services LLC, d/b/a CenturyLink

Broadband ("CenturyTel Broadband"), Qwest Broadband Services, Inc., d/b/a CenturyLink

("Qwest Broadband"), and Qwest Corporation, d/b/a CenturyLink QC ("QC") (collectively,

"Defendants"), for their Answer to the First Amended Complaint ("Amended Complaint") of the

State of Minnesota, by its Attorney General, Keith Ellison, ("Plaintiff" or the "State"), state and

allege as follows.  Except as specifically admitted or qualified herein, Defendants deny each and

every allegation, statement, heading, and/or thing set forth in the Amended Complaint, and with

respect to each of the specific paragraphs set forth in the Amended Complaint further state and

allege as follows:

## INTRODUCTION

1.    *CenturyLink promises a simple, low rate to Minnesota consumers for internet and cable television service.  But CenturyLink has fraudulently charged some Minnesota consumers more than the price the company quoted to them at the time of sale.  To make matters worse, CenturyLink has often refused to honor its quoted rates after consumers bring the price misrepresentations to the company's attention.  CenturyLink's pattern and practice of making false statements about the price consumers would pay has injured tens of thousands of Minnesota consumers who have purchased the company's service.  The State of Minnesota brings this action to stop CenturyLink's long-standing fraudulent practices and to enforce Minnesota's consumer protection laws.*

1.    Defendant CenturyTel Broadband admits that it provides internet and video services to certain Minnesota customers, and affirmatively states that its advertising, contracts, and other written materials speak for themselves.  Defendant Qwest Broadband admits that it provides video services to certain Minnesota customers, and affirmatively states that its advertising, contracts, and other written materials speak for themselves.  Defendant QC admits that it provides internet services to certain Minnesota customers, and affirmatively states that its advertising, contracts, and other written materials speak for themselves.  Defendants deny the remainder of the allegations in Paragraph 1 of the Amended Complaint.

## PARTIES

2.    *Keith Ellison, Attorney General of the State of Minnesota, is authorized under Minnesota Statutes chapter 8; the Uniform Deceptive Trade Practices Act, Minnesota Statutes sections 325D.43–.48; the Consumer Fraud Act, Minnesota Statutes sections 325F.68-.694; and has common law authority, including parens patriae authority, to bring this action to enforce*

*Minnesota's laws, to vindicate the State's sovereign and quasi-sovereign interests, and to remediate all harm arising out of – and provide full relief for – violations of Minnesota's laws.*

2.      The allegations in Paragraph 2 of the Amended Complaint consist of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 2.

3.      *CenturyTel Broadband Services, LLC is a Louisiana limited liability company, doing business in Minnesota as CenturyLink  Broadband.  Its principal place of business is 100 CenturyLink Drive, Monroe, Louisiana 71203.  It is registered with the Minnesota Secretary of State pursuant to the Minnesota Limited Liability Company Act.  CenturyTel Broadband Services, LLC, acting in concert with other entities affiliated with CenturyLink, Inc., provides communications services in the State of Minnesota and it is a subsidiary of CenturyLink, Inc., a Louisiana corporation.*

3.      Defendants admit the allegations in the first, second, and third sentences of Paragraph 3 of the Amended Complaint, admit that CenturyTel Broadband provides the services described in Paragraph 1 of this Answer, and admit that CenturyTel Broadband is a subsidiary of CenturyLink, Inc.  Defendants deny the remaining allegations in Paragraph 3.

4.      *Qwest Broadband Services, Inc. is a Delaware corporation, doing business in Minnesota as CenturyLink. Its principal place of business is 100 CenturyLink Drive, Monroe, Louisiana 71203.  It is registered with the Minnesota Secretary of State pursuant to the Minnesota Foreign Corporation Act.  Qwest Broadband Services, Inc., acting in concert with other entities affiliated with CenturyLink, Inc., provides communications services in the State of Minnesota and it is a subsidiary of CenturyLink, Inc., a Louisiana corporation.*

-3-

4.    Defendants admit the allegations in the first, second, and third sentences of Paragraph 4 of the Amended Complaint, admit that Qwest Broadband provides the services described in Paragraph 1 of this Answer, and admit that Qwest Broadband is an indirect subsidiary of CenturyLink, Inc.  Defendants deny the remaining allegations in Paragraph 4.

5.    *Qwest Corporation is a Colorado corporation, doing business in Minnesota as CenturyLink QC.  Its principal place of business is 100 CenturyLink Drive, Monroe, Louisiana 71203.  It is registered with the Minnesota Secretary of State pursuant to the Minnesota Foreign Corporation Act.  Qwest Corporation, acting in concert with other entities affiliated with CenturyLink, Inc., provides communications services in the State of Minnesota and it is a subsidiary of CenturyLink, Inc., a Louisiana corporation.*

5.    Defendants admit the allegations in the first, second, and third sentences of Paragraph 5 of the Amended Complaint, admit that QC provides the services described in Paragraph 1 of this Answer, and admit that QC is an indirect subsidiary of CenturyLink, Inc. Defendants deny the remaining allegations in Paragraph 5.

## JURISDICTION

6.    *Minnesota Statutes section 8.31 and common law authority provide this Court with jurisdiction over the subject matter of this action.*

6.    The allegations in Paragraph 6 of the Amended Complaint consist of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 6.

7.    *This Court has personal jurisdiction over CenturyLink as a result of CenturyLink and its affiliated entities' sales to and dealings with Minnesota consumers.  CenturyLink*

*conducts business in Minnesota and has committed acts causing injury to consumers located in Minnesota.*

7.     The allegations in the first sentence of Paragraph 7 of the Amended Complaint consist of legal conclusions, to which no response is required. Defendants deny the allegations in the second sentence of Paragraph 7, except admit that Defendant CenturyTel Broadband provides internet and video services to certain Minnesota customers, that Defendant QC provides internet services to certain Minnesota customers, and that Defendant Qwest Broadband provides video services to certain Minnesota customers.

**VENUE**

8.     *Venue in Anoka County is proper under Minnesota Statutes section 542.09 because this cause of action arises in part in Anoka County. CenturyLink does and has done business in Anoka County, and CenturyLink's unlawful acts have harmed Anoka County residents, among others.*

8.     The allegations in the first sentence of Paragraph 8 of the Amended Complaint consist of legal conclusions, to which no response is required. Defendants deny the allegations in the second sentence of Paragraph 8, except Defendants admit that Defendant CenturyTel Broadband provides internet and video services to certain Minnesota customers in Anoka County, that Defendant QC provides internet services to certain Minnesota customers in Anoka County, and that Defendant Qwest Broadband provides video services to certain Minnesota customers in Anoka County.

## FACTUAL BACKGROUND

### I.    CENTURYLINK SELLS ITS INTERNET AND CABLE TELEVISION SERVICES IN A PRICE-SENSITIVE MARKET.

9.    *For decades, CenturyLink and its related entities offered regulated telephone service to Minnesota residents.  The sale of regulated telephone service provided the company with predictable revenue from a high-margin product.  As a result of the company's long history of providing these regulated services, many Minnesotans view CenturyLink as a telephone company operating in a predictable and regulated market.*

9.    Defendants deny the allegations in the first and second sentences of Paragraph 9 of the Amended Complaint, except Defendants admit that Defendant QC has offered regulated telephone service to Minnesota residents.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 9, and on that basis deny them.

10.    *In recent years, CenturyLink has experienced accelerating losses from sales of its telephone services, including losing out on nearly $600 million of revenue per year from these "legacy services."  More recently, CenturyLink has branched into other lines of business.  The company now sells internet and cable television service to Minnesota residents.  CenturyLink competes with other cable television and internet providers, satellite television companies, and cellular providers for market share for these services.*

10.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 10, and on that basis deny each and every allegation.  Defendants admit that Defendant CenturyTel Broadband provides internet and video services to certain Minnesota customers, that Defendant QC provides internet services to certain Minnesota customers, and that Defendant Qwest Broadband provides video services to

certain Minnesota customers.  Defendants further admit that there are other providers of cable television, internet, satellite television, and cellular services.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10 of the Amended Complaint, and on that basis deny each and every allegation.

11.    *But these new "strategic products" provide CenturyLink with substantially lower margins than the company's legacy telephone services.  In recent years, the sales from these new services have been insufficient to offset the company's dramatic losses in revenue from legacy services.*

11.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations Paragraph 11, and on that basis deny each and every allegation.

12.    *Glen Post, CenturyLink's Chief Executive Officer at the time the State filed this lawsuit, told investors concerned about these mounting revenue losses that the company was responding to these market dynamics with "aggressive marketing."  But what CenturyLink has not revealed to the public is that for years the company engaged in a lengthy course of prohibited conduct by falsely promising low prices and discounts to attract price-sensitive consumers.  Through the patterns and practices described in this Complaint, CenturyLink has deceptively charged tens of thousands of Minnesota consumers more than it promised them at the time of sale.*

12.    Defendants deny the allegations in Paragraph 12.  To the extent that the allegations in the first sentence of Paragraph 12 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's Civil Investigative Demands ("CIDs") or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the

documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 12, and on that basis deny each and every allegation.

## II.    CENTURYLINK USES COMPLEX AND DECEPTIVE PRICING PRACTICES.

13.    *CenturyLink has engaged in a pattern and practice of deceptive conduct and false statements that have caused confusion among a large number of Minnesota consumers. CenturyLink first developed a complex and massive set of ever-changing pricing rules that deceived consumers. CenturyLink then layered these deceptive prices on top of a complicated computer billing system that prevented its agents from quoting accurate prices. The company also maintained a number of policies, practices, and procedures that instructed its agents not to honor its offers. CenturyLink is aware that its deceptive conduct defrauded Minnesota consumers, and the company refused to timely correct its conduct. As result of the company's long-standing and illegal conduct, tens of thousands of Minnesota consumers have been harmed by their purchase of CenturyLink service.*

13.    Defendants deny the allegations in Paragraph 13 of the Amended Complaint.

### A.    For Years CenturyLink Created and Maintained Thousands of Prices, Promotions, and Complex Pricing Rules That Confused Consumers.

14.    *The State asked CenturyLink to produce information about the prices it charges to Minnesota consumers for internet and cable television services. CenturyLink has produced approximately 9,000 pages of documents it stated were an "overview" of its pricing policies. The company claimed that the State's request that CenturyLink produce full information about its prices was "unduly burdensome."*

14.    To the extent that the allegations in Paragraph 14 purport to characterize the contents of documents, interrogatories, objections, or other information provided pursuant to objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

15.    *These pricing documents reveal a complex and elaborate pricing system in which layers of conditions and exceptions can affect the rates paid by consumers. To quote an accurate price, CenturyLink's sales agents must accurately process this information and then explain the final price to consumers at the time of sale.*

15.    Defendants deny the allegations in Paragraph 15 of the Amended Complaint.

16.    *There has been a recurring disconnect between the quotes CenturyLink has given to consumers and the actual prices they were charged, supposedly based on hidden rules contained in the company's complex billing system, which CenturyLink claims are "trade secrets." The disconnect happens in many ways, but the bottom line is that CenturyLink routinely fails to live up to its promises about the total prices consumers will pay for its services, and CenturyLink has fraudulently over-billed tens of thousands of Minnesota consumers.*

16.    Defendants deny the allegations in Paragraph 16 of the Amended Complaint. To the extent that the allegations in Paragraph 16 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise,

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and on that basis deny each and every allegation.

1.    Calculating the Actual Cost That CenturyLink Will Charge for Internet and Television Service Starts with Determining Which of the Company's Thousands of Base-Rate Scenarios Apply.

17.    *CenturyLink's base rates depend on several factors.  By using combinations from only four factors – the speed of the consumer's internet connection, the presence or absence of CenturyLink e-mail service, the manner in which CenturyLink connects a consumer's home to the Internet, and the number of channels included in its television packages – CenturyLink's pricing scheme starts with more than 1,500 different scenarios that can affect the base rates that CenturyLink will charge.*

17.    Defendants deny the allegations in Paragraph 17 of the Amended Complaint, except that they admit that the rates that each Defendant charges for internet or video services, as applicable, may depend, in part, on a variety of factors, including the internet speed selected by the consumer, whether the consumer elects to subscribe to CenturyLink as an internet service provider, whether the consumer selects wireline or standalone internet services, and the specific television channels to which the consumer subscribes, among other factors.

18.    *In part through the use of extensive and complicated base-rate pricing, CenturyLink has defrauded tens of thousands of Minnesota consumers into paying more for their service than they agreed to pay.*

18.    Defendants deny the allegations in Paragraph 18 of the Amended Complaint.

2.    CenturyLink Offers Promotional Pricing Without Explaining the Thousands of Company Rules and Exceptions That Cause Consumers To Pay More.

19.    *CenturyLink told the State that it has "hundreds of promotional offers at any time," and that the company's "extensive" use of these confusing promotions would require "enormous" productions to fully explain the scope of its complex prices.*

19.    Defendants deny the allegations in Paragraph 19 of the Amended Complaint.  To the extent that the allegations in Paragraph 19 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and on that basis deny each and every allegation.

20.    *The promotions CenturyLink has disclosed typically include a matrix of complex and subtle information, starting with the conditions and exceptions governing the promotion. These conditions and exceptions vary by promotion but typically identify which consumers or products are supposedly eligible to receive the promotion and price.  The conditions and exceptions also specify additional actions that consumers must take – or cannot take – after their purchase to preserve their eligibility for the promotion.  CenturyLink's promotional conditions and exceptions are further restricted by additional exceptions identifying additional promotions that are incompatible with the offered promotion. CenturyLink's promotional materials also impose special ordering instructions for CenturyLink's sales agents, who are paid commissions based on the number of customers they sign up for the company's services.*

20.    To the extent that the allegations in Paragraph 20 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information

provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and on that basis deny each and every allegation.

21.    *These promotional offer matrices contain a large amount of information that would have to be accurately processed by the company, with the outcome then explained to consumers at the time of sale if the company is to quote an accurate price to consumers. CenturyLink uses as many as 29 conditions and exceptions per promotion. Some promotions identify up to 138 "disqualifying" combinations of promotions. The standard ordering process requires CenturyLink's agents to perform up to 93 steps to add internet and television service to consumers' accounts. The promotional matrices reveal as many as 19 additional or special steps per promotion that CenturyLink's agents must perform to apply promotions to consumers' accounts.*

21.    To the extent that the allegations in Paragraph 21 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and on that basis deny each and every allegation.

22.   *Collectively, these documents – which provide an overview of just some of CenturyLink's promotional offerings – reveal more than 2,000 conditions and exceptions that CenturyLink uses to increase the price it charges consumers above what it promises them at the time of sale. The pricing documents – which CenturyLink marked "Trade Secret" (meaning they are hidden from consumers) – collectively identify nearly 3,800 disqualifying combinations of promotions that ostensibly make a consumer ineligible to receive a promotion.*

22.   To the extent that the allegations in Paragraph 22 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and on that basis deny each and every allegation.

23.   *Through its pattern and practice of using complicated promotions with extensive rules, CenturyLink has misrepresented the price of its internet and cable television services to tens of thousands of Minnesota consumers.*

23.   Defendants deny the allegations in Paragraph 23 of the Amended Complaint.

3.   CenturyLink Adds Dozens of Fees on Top of Its Base Rates.

24.   *On top of its base rates, CenturyLink adds any number of its dozens of one-time and monthly recurring fees to consumers' bills. CenturyLink classifies some fees as relating to accessories, equipment, activation, shipping and handling, and installation. CenturyLink also adds at least one "fee" (the "Internet Cost Recovery Fee") for which the classification or purpose is not readily apparent, but which is added to the bills of its internet subscribers. Other*

*fees apply depending on the type of service consumers purchase. In some cases, the extra fees can add up to more than the base rates that CenturyLink promises. In part through the long-standing use of its undisclosed fees, CenturyLink has defrauded tens of thousands of Minnesota consumers into paying more for their service than they agreed to pay.*

24.    CenturyLink denies the allegations in Paragraph 24 of the Amended Complaint, except admits that it charges certain fees to consumers which are reflected on those consumers' bills, and refers the Court to those bills for their full and accurate contents. Defendants admit that, in accordance with their disclosures and contracts, CenturyTel Broadband and QC sometimes charge an Internet Cost Recovery or Broadband Cost Recovery fee to certain customers of internet services. To the extent that the allegations in Paragraph 24 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and on that basis deny each and every allegation.

4.    CenturyLink Has Acknowledged That the Company's Pricing
Policies Are Too Complex.

25.    *CenturyLink has conceded that its pricing structure is complex and deceptive. Numerous corporate documents show the company acknowledging that it has too many offers, and that its offers, prices, and promotions are "complex" and "confusing." An employee responsible for communicating CenturyLink's complex pricing policies to sales agents called the process a "nightmare." CenturyLink's executives agree. Maxine Moreau, the President of*

*CenturyLink's Consumer Division, and Dean Douglas, CenturyLink's President of Sales and Marketing during the State's investigation, have each acknowledged the "complexity" of CenturyLink's prices.  Ms. Moreau has further conceded that, before the State's investigation and lawsuit, CenturyLink's pricing model used "hidden fees."  Jeffrey Storey, the company's current CEO, acknowledged after the State's lawsuit that CenturyLink had "very complex pricing and promotional plans" which were not "customer-friendly."*

25.     Defendants deny the allegations in the first sentence of Paragraph 25 of the Amended Complaint.  To the extent that the remaining allegations in Paragraph 25 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and on that basis deny each and every allegation.

26.     *These well-founded admissions by CenturyLink executives came after CenturyLink engaged in a lengthy course of prohibited conduct that deceived tens of thousands of Minnesota consumers into paying more for service than they agreed to pay.  **In fact, shortly after the State filed this action to put an end to CenturyLink's repeated violations of Minnesota law, the company commissioned a six-month audit that reviewed more than 32 billion billing records.**  CenturyLink issued a press release that summarized the findings of that audit, which conceded that CenturyLink's "pricing and promotions were complex and caused confusion" and that customers did not receive discounts they were offered at the point of sale.*

*The audit also showed that CenturyLink did not address its over-billing of customers in a timely manner.*

26.     Defendants deny the allegations in Paragraph 26 of the Amended Complaint, except that Defendants admit that CenturyLink issued a Press Release announcing the conclusion of a review conducted by a Special Committee of independent board members.  To the extent that the allegations in Paragraph 26 purport to characterize the contents of the Press Release, Defendants deny the State's characterizations and refer the Court to the document for its full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and on that basis deny each and every allegation.

**B.    For Years, CenturyLink Made It "Very Difficult" for Its Agents To Accurately Quote the Price and Terms of the Company's Service.**

27.     *CenturyLink compounded the deceptive nature of its massive set of pricing rules by engaging in a pattern and practice of prohibited conduct that made it "very difficult" for CenturyLink to quote an accurate price to consumers.*

27.     Defendants deny the allegations in Paragraph 27 of the Amended Complaint.  To the extent that the allegations in Paragraph 27 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and on that basis deny each and every allegation.

Filed in District Court
State of Minnesota
7/2/2019 11:12 AM

28.    *For example, there is no single repository at CenturyLink that contains complete information about the price and terms of the company's numerous and complex offers.  Instead, company documents show that CenturyLink agents must use up to thirty applications during the sales process "to do their job."  A senior director overseeing CenturyLink's call center agents confirmed that it is "tricky" for agents to use these applications.  Additionally, because CenturyLink's massive pricing scheme constantly changes, these systems continually need to be updated.  When CenturyLink fails to keep these systems up to date with its ever changing prices, the information agents use to quote prices to customers is inaccurate.*

28.    Defendants deny the allegations in the first sentence of Paragraph 28 of the Amended Complaint.  To the extent that the remaining allegations in Paragraph 28 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and on that basis deny each and every allegation.

29.    *CenturyLink has acknowledged that requiring its sales agents to use these numerous screens is a "hindrance" to accurately quoting prices and causes consumers to have "a frustrating series of unrelated actions with various parts of [CenturyLink]."  CenturyLink employees "pray" for the consolidation of CenturyLink's billing systems to make the company's sales process "less complex."*

29.    Defendants deny the allegations in Paragraph 29 of the Amended Complaint.  To the extent that the allegations in Paragraph 29 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and on that basis deny each and every allegation.

30.    *CenturyLink's systems remain "complex" and "confusing" in part because CenturyLink has improperly resisted efforts to consolidate and modernize its "legacy systems" – those billing systems acquired through the company's decades-long acquisitions and which do not effectively communicate with each other.  In fact, one of CenturyLink's ordering tools "never interacted" with the company's "billing system" or pricing resources.  A company employee with more than four decades of experience at CenturyLink acknowledged that the company continued to build upon an unreliable billing system that may date back to the 1960s.  **As far back as 1986, CenturyLink considered replacing this faulty system but determined that it did not want to spend the money to do so.  This ancient system remains the primary system CenturyLink uses to bill Minnesota consumers.**  CenturyLink's current CEO, Mr. Storey, admits that CenturyLink's continued reliance on these legacy systems places numerous "bottlenecks" and "hurdles" in the way of its agents.  In fact, Mr. Storey has conceded that CenturyLink "as a company [has] made it too hard" for agents "to do the right thing for the customer."*

30.    To the extent that the allegations in Paragraph 30 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and on that basis deny each and every allegation, except that Defendants admit CenturyLink, Inc. acquired some systems through acquisitions.

31.    *These bottlenecks and hurdles take numerous forms. The information displayed on agents' numerous screens contains "incorrect" prices and displays prices that are "not accurate." This inaccurate information leads to CenturyLink agents making "invalid" or "inaccurate" price quotes. Other documents show that the company's ordering tools permit agents to offer consumers discounts that are "incompatible" with other elements of the offer and which ultimately will "not be honored" and increase the price consumers pay. Additional documents show that CenturyLink's various pricing plans do "not quot[e] correctly" in the company's computer systems, which the company has described in internal communications as "a major issue."* **CenturyLink even compiles "defect" reports and various lists documenting the most common ways the company makes false promises to consumers through its billing systems.**

31.    Defendants deny the allegations in Paragraph 31 of the Amended Complaint. To the extent that the allegations in Paragraph 31 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the

State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the

State's characterizations and refer the Court to the documents, objections, responses, testimony,

transcripts, or other information provided for their full and accurate contents. Otherwise,

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 31, and on that basis deny each and every allegation.

32.     *Despite knowing it provides agents with unreliable and inaccurate information, CenturyLink simply instructs its agents to "trust your tools" even though using these inaccurate tools "result[s] in the customer being misquoted for their monthly rate."* ***In fact, CenturyLink's sales agents cannot even see whether the pricing information that appears on their screens – and that they quote to consumers – will show up on consumer's bills.*** *This "chronic issue" – in which CenturyLink representatives offer discounts that its billing system later removes and "will not actually discount at bill time" – has "always" existed at CenturyLink. In these situations, CenturyLink does not notify consumers to tell them that "they will not receive [the discount] on their account." Instead consumers discover that CenturyLink is charging them more than the company promised when consumers receive their bill.*

32.     Defendants deny the allegations in Paragraph 32 of the Amended Complaint. To

the extent that the allegations in Paragraph 32 purport to characterize the contents of documents,

objections, responses, testimony, transcripts, or other information provided pursuant to the

State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the

State's characterizations and refer the Court to the documents, objections, responses, testimony,

transcripts, or other information provided for their full and accurate contents. Otherwise,

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 32, and on that basis deny each and every allegation.

33.    *CenturyLink engaged in this prohibited conduct over an extended period of time, only abandoning some aspects of its schemes in response to litigation and investigation by state attorneys general.* **CenturyLink only stopped using one of the computer systems it used to remove discounts it promised to consumers after a state attorney general investigating the company discovered the fraud at the core of that system.** *Numerous internal communications show that CenturyLink was aware of the fraudulent nature of that system for years, and the company continued to use the system, thereby defrauding Minnesota consumers. In another instance, CenturyLink informed its employees one week after the State's lawsuit that "[s]tarting immediately" the company was abandoning the sale of its television service. Internal communications show that the company abandoned the product because of the chronic "billing issues" with that product, which the company knew about, yet it continued to use, thereby defrauding a large number of Minnesota consumers. The President of CenturyLink's Consumer Division succinctly described CenturyLink's pattern and practice of prohibited conduct when she admitted that CenturyLink has made it "very difficult for a rep to be able to quote [prices] accurately to customers."*

33.    Defendants deny the allegations in Paragraph 33 of the Amended Complaint. To the extent that the allegations in Paragraph 33 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, and on that basis deny each and every allegation.

C.     **CenturyLink Refuses To Honor Its Offers.**

34.     *Scores of documents show that CenturyLink simply refuses to honor its promised offers to consumers, even where CenturyLink knows that systematic problems with its billing system caused consumers not to receive the discounts they were promised.*

34.     Defendants deny the allegations in Paragraph 34 of the Amended Complaint.

35.     *In fact, the problem of charging consumers more than they were promised is so widespread at CenturyLink that the company has developed a euphemism for its fraud: "the misquote." Derivations of the word misquote appear in hundreds of documents CenturyLink produced to the State. But CenturyLink does not believe a misquote is a problem it needs to correct. CenturyLink tells its agents that "a price misquote is not a legitimate reason to request" an adjustment to a consumer's account. Instead, agents are instructed to "sustain" the fraudulent charges.*

35.     Defendants deny the allegations in Paragraph 35 of the Amended Complaint. To the extent that the allegations in Paragraph 35 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35, and on that basis deny each and every allegation.

36.     *CenturyLink refuses to honor its offers, in part, because the company is constantly seeking to decrease the credits it provides to consumers who complain that CenturyLink has over-billed them. CenturyLink's documents show that the company sets "targets" that require call center agents to reduce the number and amount of billing adjustments they provide to the*

*consumers CenturyLink overbills, in order to save the company millions of dollars each year. CenturyLink refers to these initiatives as "Revenue Protection." These initiatives result in the company denying billing adjustments to the consumers that CenturyLink has over-billed and failed to make whole.*

36.     Defendants deny the allegations in Paragraph 36 of the Amended Complaint.  To the extent that the allegations in Paragraph 36 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, and on that basis deny each and every allegation.

37.     *Not only does CenturyLink refuse to refund the consumers it charges, the company refuses to correct their bills going forward.  CenturyLink maintains official policies that prohibit agents from using recurring discounts to correct consumers' bills to reflect the price the company promised.  Other official policies direct agents responding to consumer complaints to attempt to try and make a new sale, rather than honoring CenturyLink's offer, as consumers request. Internal documents show that these policies have been in place for years. This lengthy course of prohibited conduct has resulted in harm to tens of thousands of Minnesota consumers that CenturyLink has overbilled and failed to make whole.*

37.     Defendants deny the allegations in Paragraph 37 of the Amended Complaint.  To the extent that the allegations in Paragraph 37 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the

State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the

State's characterizations and refer the Court to the documents, objections, responses, testimony,

transcripts, or other information provided for their full and accurate contents.  Otherwise,

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 37, and on that basis deny each and every allegation.

### III.  CENTURYLINK HAS FRAUDULENTLY OVER-BILLED TENS OF THOUSANDS OF MINNESOTA CONSUMERS AND HAS ROUTINELY REFUSED TO HONOR ITS OFFERS.

38.    *CenturyLink has regularly misquoted the price of its internet and television*

*services to Minnesota consumers.  In response to a complaint from the Minnesota Attorney*

*General's Office on behalf of a consumer, a CenturyLink employee stated that, of the sales*

*recordings she reviews, "maybe 1 out of 5 are quoted correctly or close enough.  I have one*

*today quoted $39 and its over $100 monthly."  She further stated that "in many cases, the*

*customer calls in for several months and [is] promised callbacks, passed around, or cut off*

*before going to the AG, PUC, FCC, or BBB."  Her April 22, 2015, e-mail reads as follows:*

**From:** Ornelas, Diana L
**Sent:** Wednesday, April 22, 2015 11:30 AM
**To:** Orr, Dan
**Subject:** RE: Minn Attorney General complaint, ██████████
██████████

I understand and also like to get it when the call is still available.  I have
so many I get every day and honestly, I could say maybe 1 out of 5 are
quoted correctly or close enough.  I have one today quoted $39 and its
over $100 monthly.  So I tend to get on the defensive for the customer
at times because of the large amount that are misquoted.  As in many
cases, the customer calls in for several months and promised call backs,
passed around, or cut off before going to the AG, PUC, FCC or BBB and
we are unable to review the calls.  Hopefully in the future we can have
them saved for a longer period or a better resolution would be to get
that person back to the sales rep or sales rep manager on the first call to
the company after the service is installed. Then the issue could be
reviewed, resolved and feeback/training provided.

38.     Defendants deny the allegations in Paragraph 38 of the Amended Complaint.  To
the extent that the allegations in Paragraph 38 purport to characterize the contents of documents,
objections, responses, testimony, transcripts, or other information provided pursuant to the
State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the
State's characterizations and refer the Court to the documents, objections, responses, testimony,
transcripts, or other information provided for their full and accurate contents.  Otherwise,
Defendants lack knowledge or information sufficient to form a belief as to the truth of the
allegations in Paragraph 38, and on that basis deny each and every allegation.

39.     *In a May, 2015 recording obtained by the State, another CenturyLink employee
laments that there are "not enough people to do the work" of responding to the "whole pile of
Minnesota [complaints]" that "usually come in groups of 10."*

39.     Defendants deny the allegations in Paragraph 39 of the Amended Complaint.  To
the extent that the allegations in Paragraph 39 purport to characterize the contents of documents,
objections, responses, testimony, transcripts, or other information provided pursuant to the
State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the
State's characterizations and refer the Court to the documents, objections, responses, testimony,
transcripts, or other information provided for their full and accurate contents.  Otherwise,
Defendants lack knowledge or information sufficient to form a belief as to the truth of the
allegations in Paragraph 39, and on that basis deny each and every allegation.

40.     *CenturyLink has already admitted to failing to provide promised discounts to at
least 12,094 Minnesota consumers through one of the company's billing systems ("ORKO").
Based upon the limited ORKO data that CenturyLink has provided for approximately* ▮▮▮▮
*Minnesota consumers, CenturyLink has likely over-billed tens of thousands of Minnesota*

-25-

*consumers – not merely the 12,094 consumers the company has already identified. These numbers are consistent with CenturyLink's internal documents that show, where the data is available, that CenturyLink fraudulently over-billed consumers in 46% of its sales transactions. Further, of the thousands of calls CenturyLink reviews each month, CenturyLink has acknowledged that its agents fail to make proper disclosures on ▮ of sales calls.*

40.    Defendants deny the allegations in Paragraph 40 of the Amended Complaint. To the extent that the allegations in Paragraph 40 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, and on that basis deny each and every allegation.

41.    *The following paragraphs contain examples of 100 Minnesota consumers' interactions with CenturyLink.[1]  As these stories make clear, CenturyLink's material misrepresentations about the price consumers will pay for their service are the type of statements upon which reasonable and prudent persons rely. CenturyLink's false statements have been widely disseminated and have injured tens of thousands of Minnesota consumers who have purchased the company's service. The State is pursuing relief on behalf of every single Minnesota consumer CenturyLink has defrauded. The State's case is not limited to the 100*

---

*[1]  This Complaint includes the representative and illustrative experiences of 100 Minnesotans to describe how CenturyLink has deceived consumers. The State's allegations are not confined to the consumers described in this Complaint. These experiences are non-exclusive examples that generally illustrate CenturyLink's unlawful conduct. In some cases after the Attorney General's Office intervened, CenturyLink agreed to apply at least partial credits to consumers' accounts following the company's price misrepresentations.*

-26-

*consumers specifically included in this Complaint, nor the 12,094 consumers CenturyLink has admitted to defrauding, nor the tens of thousands of defrauded consumers identified in CenturyLink's ORKO data.*

41.     The allegations in the first sentence of Paragraph 41 of the Amended Complaint consist of the State's characterization of its claims, to which no response is required. To the extent a response is required, Defendants deny the allegations in the first sentence of Paragraph 41. Defendants deny the allegations in the second and third sentences of Paragraph 41. Defendants lack knowledge or information sufficient to form a belief as to the truth of the fourth and fifth sentences of Paragraph 41 of the Amended Complaint, and on that basis deny the allegations. Defendants deny the allegations in the first sentence of Footnote 1 of the Amended Complaint. The second and third sentences of Footnote 1 consist of the State's characterization of its claims, to which no response is required. To the extent a response is required, Defendants deny the allegations in the second and third sentences of Footnote 1. Defendants deny the allegations in the fourth sentence of Footnote 1, except Defendants admit that Defendants apply credits to consumer accounts in appropriate circumstances.

42.     ***B.T.*** *uses his Ph.D. in applied economics to scrutinize financial information for his employer. CenturyLink offered him internet service for $14.95 per month for one year and $24.95 per month for a second year. CenturyLink actually charged him a base rate of $29.95 per month.* **CenturyLink repeatedly refused to honor its offer** *and threatened to charge him a $200 penalty if he cancelled his service, even though the company's complaint file states that CenturyLink listened to the recording of the sales call and confirmed the "misquote." CenturyLink told B.T. that "no one at CenturyLink can get you that price," even though the company had promised it to him.*

42.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 42 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 42 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants deny the allegations in Paragraph 42.

43.    *K.S. needed low-cost internet service for her daughter to complete her homework. CenturyLink offered her internet service for $14.99 per month for six months but failed to charge her the promised rate.  **A supervisor would not honor CenturyLink's offer** and claimed she had "used up" her discounts and denied that the company had offered her internet service for $14.99 per month.  CenturyLink's complaint file states that the company listened to the sales call and confirmed CenturyLink's offer of service for $14.99 per month.*

43.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 43 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 43 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants deny the allegations in Paragraph 43.

44.    *CenturyLink offered internet service to **K.Z.** for a base rate of $19.95 per month but charged him a base rate of $37 instead.  **A supervisor refused to honor CenturyLink's offer**, telling him he was "misquoted."  CenturyLink told him that the company's offers are "not binding commitments" and discounts are "a gift from us to you" that CenturyLink can rescind at its discretion. CenturyLink later told him that "the system" had "auto-removed" a discount from his account, thereby raising the price of his service above what CenturyLink promised.*

44.    Defendants deny the allegations in Paragraph 44 of the Amended Complaint.  To the extent that the allegations in Paragraph 44 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

45.    ***H.D.H.** agreed to keep her basic CenturyLink plan after the company promised her the same rate for another year.  CenturyLink increased her bill by more than 50% the following month. She provided her confirmation number, but the company **repeatedly refused to honor its offer**, claiming that CenturyLink can "give you all the confirmation numbers in the world," but if CenturyLink "quotes you [a rate] not available it's going to get denied." CenturyLink told her the previous agent she spoke to did not "even know what offers we have to offer in the first place" and claimed that what the company previously promised her was "irrelevant."*

45.    Defendants deny the allegations in Paragraph 45 of the Amended Complaint.  To the extent that the allegations in Paragraph 45 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the

State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

46.    *R.T. is a 62-year-old businessman from Blaine.  He used CenturyLink's on-line chat feature to purchase CenturyLink internet service for $29.95 per month for two years, and television service for $39.97 per month for one year and $59.96 per month the next year:*



my contract for internet is not up for a few months
Gianna C.: I can put ypu in a promotion of 2 years for $29.95 by adding PrismTV
looks good, I will look at the channel line ups and then decide , the package you are listing above is what tv package. does this include tehrental equipment costs
Gianna C.: It includes everything R
Gianna C.: It is the essential package.
Gianna C.: If you set it up with me today I can also offer you $25 off in your monthly bill so you are going to be paying $39.97 for the first year and $59.96 for the second year.

*CenturyLink charged him $194.84 the month after he accepted this offer. CenturyLink billed him at least $107.68 per month the following months.  R.T. repeatedly asked for the rate promised to him, and **CenturyLink refused to honor its written offer**.  CenturyLink later told him that its television service was "not a regulated or tariffed [sic] product" so CenturyLink could "raise or lower the base product price as determined by CenturyLink."*

46.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 46 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 46 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court

to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 46.

47.    *J.S. is an occupational therapist. She accepted CenturyLink's offer of internet and television service for $91.83 per month for one year. CenturyLink **repeatedly failed to honor its promise** and charged her $202.04, $103.43, $116.97, $108.15, and $128.26, respectively, the first five months she had this package. CenturyLink told her its billing system is "complicated" and "hard to explain" and that sales agents can offer promotions that the system then "removes."*

47.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 47 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 47 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 47.

48.    *A.G. is an attorney. Door-to-door CenturyLink agents sold him a package they promised in writing would cost $90.82 the first full month, $140.11 for the second through twelfth months, and $199.10 for the thirteenth through thirty-sixth months:*

> 12/24  —  3  —  12/28
> 1 = 90.82            Pro = 14.01
> 2-12 = 140.11        NFC = 36.07
> 13-36 = 199.10
> 37+ = 224.00
> Call back for new promotion
> for prism tv

*CenturyLink repeatedly refused to honor its offer, charging him hundreds of dollars more than its written offer in the following months. CenturyLink later claimed that he had received "all the discounts" he was "qualified" to receive.*

48. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 48 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 48 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 48.

49. *K.N. is 60 years old and lives in Britt. CenturyLink promised him internet service for a base rate of $29.95 per month but **failed to bill him as promised,** charging him a base rate of $61 instead. CenturyLink told him, "you're doing math, and you're trying to break [the cost] down in a way that it's not supposed to be broken down . . . there's no 'this is how much it costs.'" K.N. asked how much the company would charge him the next month, and CenturyLink*

*said, "honestly, you're not going to know . . . until the next bill prints." CenturyLink later wrote to him stating he was "ineligible" for the offer CenturyLink promised him and that he had accepted months earlier.*

49.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 49 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 49 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 49.

50.    *CenturyLink has routinely refused to honor its offers without adequately reviewing or considering customers' complaints that they were charged more than they were quoted. CenturyLink gives a variety of excuses to Minnesota residents as to why it will not honor the prices quoted to them. For example, a CenturyLink supervisor told **B.P.**, a Hibbing business owner, that **CenturyLink is "not responsible" for its sales agents' offers**.*

50.    Defendants deny the allegations in Paragraph 50 of the Amended Complaint. To the extent that the allegations in Paragraph 50 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

51.    *J.M. lives in Isanti and has served in the Army National Guard for 19 years. CenturyLink offered him a "Price for Life" package for $88.99 per month, including taxes and fees, but **refused to honor its offer** and charged him more than the amount it had guaranteed "for life."*

51.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 51 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

52.    *M.J. is a hydrologist.  CenturyLink offered him internet service for a total price of $38.10 per month for one year, but charged him $78.99 and $186.27 in the following two months.  When M.J. contacted CenturyLink about its fraudulent overbilling, the company told him it could not honor its promise, and instead offered him internet service for $55 per month, as a part of the company's "Price for Life" program.  CenturyLink did not honor this promise either, and **continued to overcharge M.J. after promising him a fixed price for life.***

52.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 52 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third

parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

53.    *A.H. worked in administration at a local university before her retirement. CenturyLink promised her a package for a total price $95 per month, as a part of the company's "Price for Life" Promotion.* **CenturyLink did not honor its promise**, *and charged more than the price it guaranteed for life, including one month in which it charged her nearly three times the amount it promised her.*

53.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 53 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

54.    *M.M. is a substitute school teacher and lives in Apple Valley.  CenturyLink offered him a "Price for Life" promotion for $42.73 per month, but charged him more than that amount in the following months.  M.M. contacted CenturyLink to ask what had happened to the "Price for Life" promotion that CenturyLink promised him, and* **the company said that it could not honor its quote.**

54.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Amended Complaint, and on that basis deny each

and every allegation.  To the extent that the allegations in Paragraph 54 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

55.    *CenturyLink offered a package to 36-year-old paralegal **S.A.** for $92 per month. CenturyLink charged her a series of fluctuating rates over $135 per month and told her **nothing could be done to correct her bill.***

55.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 55 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

56.    ***V.D.** used CenturyLink's on-line chat feature to purchase a package for a "total cost" of "$81.92 per month."  In the following months, **CenturyLink refused to honor its offer** and charged her significantly more than this amount, including one month in which the company charged her $174.38.*

56.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Amended Complaint, and on that basis deny each

and every allegation. To the extent that the allegations in Paragraph 56 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

57. *A.H. is retired and lives on a fixed income. She purchased a package from CenturyLink for $100.90 per month before taxes, but CenturyLink charged her a series of fluctuating rates as high as $284.57 after she accepted the offer.* **CenturyLink did not honor its promised rate.**

57. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 57 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

58. *J.H. is a 50-year-old businesswoman. CenturyLink offered her a package for a total of $74 per month for one year. CenturyLink repeatedly charged her more than it promised, and* **repeatedly refused to honor its offer***, telling her the offer she accepted somehow did not exist.*

58.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 58 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

59.     *CenturyLink offered a package to 72-year-old **S.G.** for a total of $106 per month but charged her fluctuating rates well above the promised price.  She repeatedly called the company, which told her it **would not honor the rate she had been promised** and that the confirmation numbers CenturyLink provided her did not matter*.

59.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 59 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

60.     *Retiree **W.L.** purchased a CenturyLink package for $129.92 per month. **CenturyLink told her the discounts it promised "did not stick" to her account**, and the company then charged her more than it promised.  CenturyLink also told 55-year-old **J.F.**, a*

*retiree who previously worked in the insurance industry, that a promotion did not "stick" to her account after the company **refused to honor the price it had promised her.** CenturyLink also charged **K.E.**, a 27-year-old from Bloomington, more than it promised her and **said her price did not "stick"** because CenturyLink had been "lazy" in entering her information into CenturyLink's computer. The company also told her it was normal for her bill to fluctuate even though she had been promised a fixed rate.*

60.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 60 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

61.     *CenturyLink promised **A.B.**, a mathematics professor, a fixed-rate contract for twelve months, but CenturyLink fraudulently increased the amount it charged him for its Internet Cost Recovery Fee after he accepted CenturyLink's offer. CenturyLink falsely told him the Federal Communications Commission increased the amount of this fee, and the company threatened to charge him $200 to cancel his service, even though CenturyLink **refused to honor** the fixed-rate pricing it promised. CenturyLink also over-billed **D.B.**, a 23-year-old resident of Little Falls, by adding several fees – including the Internet Cost Recovery Fee – to her bill even though the company told her that her quoted rate included "everything."*

61.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 61 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

62.    *School bus driver **J.C.** purchased a package that CenturyLink promised in writing would cost a total of $47.92 for the first month and $83 for the second through twelfth months. CenturyLink charged her between $96.99 and $157.53 in the following months, and the company **repeatedly refused to honor its offer.** CenturyLink also charged **D.E.**, a 29-year-old who operates heavy machinery, a series of fluctuating rates above what he had been promised. CenturyLink told him it **would not honor the price he was offered** and told him he could not cancel his service because he had agreed to a contract.*

62.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 62 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

63. *F.L. accepted CenturyLink's offer of internet service for $19.95 per month, but CenturyLink **repeatedly failed to bill her as promised,** charging her base rate of $34.95 and an Internet Cost Recovery Fee that CenturyLink had not disclosed.*

63. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 63 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

64. *CenturyLink promised retiree **W.S.** a package for $59.95 per month but charged a series of fluctuating rates significantly above this amount, and **CenturyLink repeatedly refused to honor its offer.** CenturyLink offered **J.S.,** a retired teacher and minister, a package for $92.44 the first month, $214.87 the second month, and then $144.91 for the remainder of the contract. CenturyLink charged her fluctuating rates well above what it promised, and the **company denied her many requests to simply be charged what the company promised.***

64. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 64 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents,

objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

65.     *CenturyLink repeatedly increased the price it charged 77-year-old* **M.R.** *even though she accepted a "price lock" offer from CenturyLink. Or, as CenturyLink documents put it, the company* **"lied outright to an elderly sick customer."**

65.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 65 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

66.     *CenturyLink offered a package to 39-year-old engineer* **D.B.** *for $65 per month, but charged him significantly more.  When D.B. contacted CenturyLink about its overbilling, the company told him that the company's systems were not communicating with each other, and* **refused to honor its offer.** *CenturyLink promised* **M.V.**, *a safety and fleet director, a package for $123.13 per month for three years, but* **repeatedly charged him more** *and refused to honor its promise of a fixed price for three years.*

66.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 66 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information

provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

67.   *CenturyLink charged 41-year-old Minneapolis resident **C.A.** more for service than the company offered, and **CenturyLink refused to honor its offer**. CenturyLink also **refused to honor the offer** it promised to S.B., a 63-year-old bookkeeper from Vadnais Heights, after the company falsely promised to fix her bill.*

67.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 67 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

68.   *Retiree **J.F.** helped her elderly mother purchase a CenturyLink package, which the company promised would cost a total of $75.95 per month for three years.  CenturyLink charged her mother a bewildering set of rates that varied nearly every month over the next three years, and the company **repeatedly refused to honor the promised rate**.*

68.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 68 purport to characterize

the contents of documents, objections, responses, testimony, transcripts, or other information

provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third

parties, Defendants deny the State's characterizations and refer the Court to the documents,

objections, responses, testimony, transcripts, or other information provided for their full and

accurate contents.

69.    *CenturyLink falsely promised to charge **A.B.**, an Eagan electrician, a total of*

*$59.17 per month for service, but charged him fluctuating rates and **repeatedly refused to honor***

***the amount it quoted him**.  CenturyLink falsely promised to bill **P.C.**, a software developer from*

*Blaine, $19.95 per month and instead charged him $24.95 per month plus $3.99 for the Internet*

*Cost Recovery Fee that the company failed to mention.  CenturyLink **refused to honor its offer.***

69.    Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 69 of the Amended Complaint, and on that basis deny each

and every allegation.  To the extent that the allegations in Paragraph 69 purport to characterize

the contents of documents, objections, responses, testimony, transcripts, or other information

provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third

parties, Defendants deny the State's characterizations and refer the Court to the documents,

objections, responses, testimony, transcripts, or other information provided for their full and

accurate contents.

70.    ***T.C.** is an 80-year-old retired stock broker from Saint Paul.  CenturyLink offered*

*him a package for $125 per month and charged him fluctuating rates above the promised*

*amount, including one bill as high as $239.91.  CenturyLink falsely claimed the extra charges*

*were taxes, and the company **refused to honor its offer**.  CenturyLink also charged a series of*

*ever- changing rates above the $74 per month it offered **M.G.**, a 56-year-old Bloomington*

*resident, including as much as $227.29 in the following months.  CenturyLink also **fraudulently over- billed B.G.**, a 77-year-old part-time mail carrier, charging her a series of fluctuating rates averaging nearly double the $109 per month it offered her.*

70.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 70 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

71.    *CenturyLink charged **R.W.**, a 58-year-old insurance agent, hundreds of dollars more than it promised her for service, and **CenturyLink did not honor its promise** about the cost of her service.  CenturyLink offered a package to **D.B.**, a retired sales manager, for $85 per month, but CenturyLink charged him a series of rates reaching approximately double the rate it promised in the following months, and **CenturyLink refused to honor its promised rate**.*

71.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 71 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents,

objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

72.    *W.R. is a semi-retired consultant.  CenturyLink offered him a package for $58.14 per month, but **failed to honor its offer** and charged him approximately $75 in each of the following months.  CenturyLink offered **T.K.,** an insurance claims manager, a package for $115 per month for one year.  **CenturyLink refused to honor its offer** and fraudulently overcharged him in the following months.*

72.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 72 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

73.    *CenturyLink promised **P.L.** of Eden Prairie that the price of her service would be $118 per month, including all taxes and fees.  **CenturyLink failed to honor this promise**, and charged her significantly more than the $118 she agreed to pay, including several months in which CenturyLink charged her over $200.  CenturyLink told **T.L.,** a retired baker, that the cost of his package would be $122.89 per month.  CenturyLink repeatedly charged T.L. more than the price it promised, and told him that the company **could not honor the price it offered him.***

73.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the Amended Complaint, and on that basis deny each

and every allegation.  To the extent that the allegations in Paragraph 73 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

74.    *CenturyLink promised **J.M.**, a retired telephone company employee, a promotion that would reduce her bill by $20 each month.  CenturyLink did not honor its promise, and instead increased her bill.  CenturyLink then offered J.M. a new package for $64.95 per month, but charged her a series of higher rates, including rates more than double the amount it promised. **CenturyLink refused to honor its promises, and told J.M. that CenturyLink's computer had probably "rejected these offers" after she accepted them.***

74.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 74 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

75.    *CenturyLink offered human resource manager **C.O.** a package for $59.79 per month, but failed to honor its promise, charging her approximately $75 per month in the following months.  CenturyLink promised banker **T.P.** a package including internet, television,*

*and telephone service for a total monthly price of $130. CenturyLink charged him significantly more than the promised price, and when T.P. contacted CenturyLink about his bills, **the company told him that there was nothing it could do to bring his bill down to the amount it promised him.***

75.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 75 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

76.    ***D.R.*** *owned his own business before he retired. CenturyLink offered him internet service for $46.60 per month, including all taxes and fees. **CenturyLink did not honor its offer**, and charged D.R. approximately double the price it offered him in the following months. CenturyLink offered business manager **J.R.** a package for $49.95 per month, but continually charged him more than the offered amount. When J.R. contacted CenturyLink to correct his bill, **the company confirmed that it had quoted him $49.95, but refused to honor its quote.***

76.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 76 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third

parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

77.    *CenturyLink offered licensed psychologist **E.R.** internet service for $19.99 per month, but **failed to honor its offer** and charged E.R. more than the price she agreed to pay. **F.S.** is a professor of writing and literature. CenturyLink charged him between approximately $82 and $89 each month, despite originally promising that his monthly price would be $68, and later falsely offering to lower his price to $65 per month. Each time F.S. contacted CenturyLink about its overbilling, **the company confirmed that it was charging him more than the rate it offered him, but it continued to overbill him.***

77.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 77 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

78.    *S.W. is a client relations and operations coordinator. CenturyLink **refused to honor multiple offers** to S.W., and billed her significantly more than the rates it promised her. **B.B.** is 67 years old and lives in Eden Prairie. CenturyLink offered her telephone and television service for $50 per month. CenturyLink added unauthorized charges to her account and*

*charged her between nearly double and more than four times the amount it quoted her each month.*

78.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 78 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

79.     *A.U. has degrees in mathematics and physics, and spent her career working in the telecommunications industry.  CenturyLink offered her internet service for $29.99 per month, but refused to honor its offer and later told A.U. that **there was nothing CenturyLink could do to get her the price it promised.**  CenturyLink then offered A.U. a new rate, but did not honor this offer either, and CenturyLink charged A.U. a series of rates sometimes more than double what it promised.*

79.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 79 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents,

objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

80.    *CenturyLink offered Woodbury resident **J.J.** a package for a total price of $91.87. Over the following months, CenturyLink charged J.J. significantly more than $91.87 each month, and told her that **there was no way CenturyLink could honor the price that it had quoted her.***

80.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 80 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

81.    *CenturyLink offered registered nurse **C.M.** internet service for $25 per month for twelve months, but **failed to honor its offer** and charged her more than the quoted amount each month.  **D.H.** has an M.B.A., and works for a church.  CenturyLink offered him a package for a total rate of $55 per month, but charged him more than three times that amount.  When D.H. contacted CenturyLink about his bill, **the company told him that it could not honor the rate it promised.**  CenturyLink quoted D.H. a new rate and then failed to honor that rate as well.*

81.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 81 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information

provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

82.    *G.W. lives in St. Paul and is a small business owner.  CenturyLink offered G.W. a package for $114 per month, but charged him significantly more than this amount.  When G.W. contacted CenturyLink about these charges, the company **refused to honor its offer** and told him that the agent who made the offer had lied to him*.

82.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 82 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

83.    *CenturyLink offered Woodbury resident J.W. a package for $83.91, but charged her more than that amount each month.  J.W. contacted CenturyLink, but the company told her that **there was no way CenturyLink would honor the price it quoted.***

83.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 83 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information

provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

84.    *K.F. is a nurse. CenturyLink offered her a package for $113.93 per month. CenturyLink refused to honor its original offer and **overbilled K.F. by nearly $1,000** in the following months.*

84.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 84 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

85.    *C.D. is retired and lives in Hopkins. CenturyLink offered her a package for $83.92 per month beginning in the second month, but repeatedly overcharged her and failed to honor its original offer.  **D.D.** is 72 years old and worked in law enforcement for 26 years. CenturyLink offered him a "price lock" at $44.95 per month for three years.  CenturyLink **did not honor its offer** to keep his price fixed, and increased his price before the three-year term was over.*

85.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 of the Amended Complaint, and on that basis deny each

and every allegation.  To the extent that the allegations in Paragraph 85 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

86.    *L.K. is 48 years old and works part-time as a store manager.  CenturyLink quoted her $112 per month for internet and television service, but repeatedly charged her more than the promised amount.  P.T. is a web developer and lives in Shoreview.  CenturyLink promised him internet service for $19.95 per month for three years, but charged him more than double this amount.  CenturyLink told P.T. that it **could not honor its quote.***

86.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 86 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

87.    *M.H. is 52 years old and works as a management analyst.  CenturyLink promised him internet service for $45.87 per month beginning in the second month, including all taxes and fees.  CenturyLink charged M.H. more than the amount it promised.  When he called*

*CenturyLink about its overbilling, the company would not review the recording of his sales call, and **refused to honor its offer.***

87.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 87 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

88.    *L.U. lives in St. Paul and develops trainings for county workers.  CenturyLink offered her internet service for a total price of $34.70 per month for one year, but charged her $185.26 the first month after she accepted this offer, and continued to charge her more than the price it promised her in the following months.*

88.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 88 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

89.    *K.N. is retired, and previously worked as a registered radiologic technologist and was the supervisor of a lab at a hospital. A door-to-door CenturyLink agent offered him a package for a total price of $105.90 per month for one year, but the company **did not honor its offer**. When K.N. called CenturyLink to find out why the company overcharged him, it told him that the agent who made the original offer had "scammed" him to get a commission. Despite this admission, CenturyLink did not correct K.N.'s billing. When he decided to cancel one of his services, CenturyLink offered him internet service only for $45 per month, as a part of the company's "Price for Life" program. CenturyLink **failed to honor this offer as well**, and charged him $55 per month.*

89.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 89 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

90.    *J.M. owns a small marketing business, and purchased CenturyLink's internet and telephone service for his business for $74.99 per month. In his first month of service, CenturyLink charged him $362.20. CenturyLink refused to honor its offer, and charged him more than $120 per month in the following months.*

90.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the Amended Complaint, and on that basis deny each

and every allegation. To the extent that the allegations in Paragraph 90 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

91.    *J.H. lives in Minneapolis and works in business development. CenturyLink promised him internet and television service for a total price of $72 per month. CenturyLink **did not honor its offer** and billed him a series of fluctuating rates above the amount it promised.*

91.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 91 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

92.    *D.V. is retired and previously worked as a sheet metal worker and gas pipe fitter. CenturyLink offered him a package for a total price of $104.34 per month, including all taxes and fees. CenturyLink did not honor its offer and repeatedly overbilled him, including in one month when the company charged him $175.87. When D.V. contacted CenturyLink about its overbilling, **the company tried to disclaim its actual offer.** CenturyLink told D.V. it would*

*continue to charge him more than its quoted price, and if he did not like it, CenturyLink would*

*shut off his service.*

92.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 92 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

93.    *CenturyLink promised Saint Louis Park resident **J.O.** internet and television service for $94.14 per month for 12 months, but charged her $176.74 in the first month after she accepted this offer.  J.O. called CenturyLink about its overbilling, and the company confirmed that it had promised her a price of $94.14 per month, and then **refused to honor this promise**.*

93.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 93 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

94.    *CenturyLink called Woodbury resident **J.J.** and offered her a package for $120 per month, but charged her $507.35 in the first month after she accepted this offer.  J.J. contacted CenturyLink about this bill, and **the company told her that it would not honor the offer she had been promised.***

94.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 94 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

95.    *A door-to-door CenturyLink agent offered 48-year-old **L.D.** a package for $80.63 in the first month of service, $96.91 in the second month of service, and $106.93 per month in the third through twelfth months of service.  CenturyLink told her that its quoted prices included all taxes and fees, and wrote these prices down.  **CenturyLink failed to honor its written offer,** and overbilled L.D. by hundreds of dollars in the following months.*

95.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 95 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents,

objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

96.    *M.B. lives in Eden Prairie and owns and operates elderly care centers. CenturyLink offered him a package that would cost $32.80 in the first month, $39.25 in the second month, $68.93 per month in the third through twelfth months, and $130.91 per month after one year. CenturyLink did not honor its promise, and charged M.B. $250.82 in the first month of service, and a series of fluctuating rates above the prices it promised in the following months. M.B. called CenturyLink about these bills, and a CenturyLink agent told him that she could not fix the bill because of an issue with her computer. CenturyLink continued overbilling M.B., eventually overbilling him by hundreds of dollars.*

96.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 96 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

97.    *H.R. is an assistant professor with a Ph.D. CenturyLink offered him internet service for $29.95 per month but charged him more than double that rate. An agent told him it was not possible to receive his internet service for $29.95 per month and that nothing could be done to get the rate CenturyLink promised.*

97.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 97 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 97 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

98.     *T.H. is 24 years old and has an accounting degree. CenturyLink promised him internet service for $28.93 per month but charged him $44.67. A supervisor told him* **CenturyLink would not honor its offer.** *The company then wrote to him and claimed it "does not guarantee that promotional discounts are available and the number of available discounts have restrictions and qualifications."*

98.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 98 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 98 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 98.

99.     *A door-to-door CenturyLink agent sold a package to C.A., a retiree from Spring Lake Park, that the agent promised would cost a total of $100 per month for one year*

*and $115 per month the second year.  The agent told C.A. those rates included all charges.  The*

*agent's offer sheet listed no charges other than the $100 and $115 rates:*



*CenturyLink charged him more than it promised and **refused to honor the written offer**.  Yet*

*the company told C.A. it would charge him a cancellation penalty if he terminated his service.*

99.     Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in the first sentence of Paragraph 99 of the Amended Complaint, and on

that basis deny each and every allegation.  To the extent that the allegations in Paragraph 99

purport to characterize the contents of documents, objections, responses, testimony, transcripts,

or other information provided pursuant to the State's CIDs or this Action, by Minnesota

consumers, or by third parties, Defendants deny the State's characterizations and refer the Court

to the documents, objections, responses, testimony, transcripts, or other information provided for

their full and accurate contents.  Otherwise, Defendants deny the allegations in Paragraph 99.

100.     *Internal CenturyLink documents show that the company has a policy not to honor*

*its sales agents' offers under certain scenarios, including when agents do not properly enter a*

*promotion into CenturyLink's billing system.*

100.     Defendants deny the allegations in Paragraph 100 of the Amended Complaint.  To

the extent that the allegations in Paragraph 100 purport to characterize the contents of

documents, objections, responses, testimony, transcripts, or other information provided pursuant

to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny

the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

101.     *For example, **L.F.** accepted CenturyLink's offer to receive internet service for $19.01 per month, but CenturyLink charged her $55.99 the following month.  CenturyLink told L.F. that the offer she had accepted appeared in CenturyLink's billing system, but that CenturyLink would not honor that offer.*

101.     Defendants deny the allegations in Paragraph 101 of the Amended Complaint.  To the extent that the allegations in Paragraph 101 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

102.     ***K.K.** is a legal assistant.  CenturyLink promised her internet service for $24.99 per month, but the company charged her a base rate of $44.95 per month.  CenturyLink claimed the offer she had already accepted was "not available" to her.  **CenturyLink refused to honor its offer.**  The threat of a cancellation penalty trapped K.K. into staying with CenturyLink.*

102.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 102 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 102 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court

to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 102.

103. *P.O. is a 61-year-old certified public accountant. He purchased a CenturyLink package for $55.91 per month, but CenturyLink actually charged him $97.95. The company claimed that its "system" showed P.O. should have been billed even more.* **Multiple CenturyLink agents refused to honor the promised rate,** *and the company charged him $103.39 the following month. CenturyLink later wrote to him claiming its "billing system automatically block[ed]" the offer CenturyLink had promised.*

103. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 103 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 103 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 103.

104. *M.B. is a mother of six, and her family lives on a budget. She purchased CenturyLink's internet service, which the company offered to her for $29.95 per month. CenturyLink actually charged her a base rate of $39.95.* **CenturyLink refused to honor its offer**, *telling M.B. that the offer she had already accepted was "not available."*

104. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 104 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 104

purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 104.

105. *J.F. is a retired engineer. CenturyLink offered him internet service for a base rate of $19.95 per month. The company then sent him a bill for $367.33, including internet service for a base rate of $71. A CenturyLink agent told him that the company had "verified" the offer but that* **CenturyLink would not honor the promised rate**.

105. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 105 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 105 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 105.

106. *P.W. is a mortgage processor who previously investigated fraud claims for a bank. CenturyLink sold him a package, but the company* **did not bill him as promised** *and threatened to charge him an early termination penalty if he cancelled his service.*

106. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 106 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 106

purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants deny the allegations in Paragraph 106.

107.    *R.S. purchased a CenturyLink package that the company promised would cost $75 per month.  R.S. asked about additional fees and CenturyLink mentioned only a one-time charge.  CenturyLink charged R.S. fluctuating rates between $108.41 and $310.10 the following months.  CenturyLink* **refused to honor its offer***.*

107.    Defendants deny the allegations in Paragraph 107 of the Amended Complaint.  To the extent that the allegations in Paragraph 107 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

108.    *O.N. is retired.  CenturyLink offered him a package for approximately $50 per month.  CenturyLink* **never billed him as promised** *and charged him as much as $258.46 in one month after he accepted CenturyLink's offer.*

108.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 108 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 108 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota

consumers, or by third parties, Defendants deny the State's characterizations and refer the Court

to the documents, objections, responses, testimony, transcripts, or other information provided for

their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 108.

109.    *CenturyLink sold a package to **A.K.** that the company promised would lower his*

*monthly rate.  CenturyLink actually increased the price of A.K.'s service by nearly $50 per*

*month.  A.K. repeatedly called CenturyLink, which then falsely promised to bill him $87 per*

*month – all taxes and fees included.  CenturyLink charged him $111.84, $114.85, $115.85,*

*$122.84, and $123.88 the following months.  A.K. kept contacting the company, but **CenturyLink***

***repeatedly failed to bill him as promised.**  When he cancelled his service, CenturyLink charged*

*him an early cancellation penalty.*

109.    Defendants deny the allegations in Paragraph 109 of the Amended Complaint.  To

the extent that the allegations in Paragraph 109 purport to characterize the contents of

documents, objections, responses, testimony, transcripts, or other information provided pursuant

to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny

the State's characterizations and refer the Court to the documents, objections, responses,

testimony, transcripts, or other information provided for their full and accurate contents.

110.    ***R.K.** and **D.G.** are a married couple.  CenturyLink promised them internet service*

*for $19.95 per month but charged them a base rate of $29.95.  A supervisor **refused to honor***

***CenturyLink's offer.**  CenturyLink told them it had "misinformed" them when they purchased*

*the service but that $29.95 per month was "the only rate" the company would now honor.*

110.    Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 110 of the Amended Complaint, and on that basis deny each

and every allegation.  To the extent that the allegations in Paragraph 110 purport to characterize

the contents of documents, objections, responses, testimony, transcripts, or other information
provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third
parties, Defendants deny the State's characterizations and refer the Court to the documents,
objections, responses, testimony, transcripts, or other information provided for their full and
accurate contents.

111. *CenturyLink promised **A.L.** a "price lock" package for $73.90 per month.*
***CenturyLink never charged him as promised**, billing him $227.48, $84.06, $97.27, $98.34,*
*$88.34, and $90.27 in the months after CenturyLink sold him the "price lock."*

111. Defendants deny the allegations in Paragraph 111 of the Amended Complaint. To
the extent that the allegations in Paragraph 111 purport to characterize the contents of
documents, objections, responses, testimony, transcripts, or other information provided pursuant
to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny
the State's characterizations and refer the Court to the documents, objections, responses,
testimony, transcripts, or other information provided for their full and accurate contents.

112. *CenturyLink knows it provides consumers with inaccurate information. This*
*knowledge is so ingrained that a specialist responding to a Minnesota complaint simply assumed*
*that CenturyLink would not have provided the consumer with accurate information:*

**From:** CENTURYLINK TCS Tier 2 ███████████████████████████
**Sent:** Tuesday, February 17, 2015 12:01 PM
**To:** Brewer, Mary C
**Cc:** CENTURYLINK TCS Tier 2
**Subject:** FW: ███████████████

Good Afternoon Mary,

Below are our final findings. We do apologize, however we were unable to retrieve the
requested .wav file. Though based on experience, I hope you agree, I think that the agent would
not have told the customer that they could not get the Price for Life back.  The agent did not
start until 9/22/14 and would not have had the experience at the time of this call to properly
set the expectations.  Please let us know if any additional information is needed.

If you have any questions or concerns please let me know.

Jessica Wylie
Research & Resolution Specialist, Qualfon CDA

112.    Defendants deny the allegations in Paragraph 112 of the Amended Complaint.  To

the extent that the allegations in Paragraph 112 purport to characterize the contents of

documents, objections, responses, testimony, transcripts, or other information provided pursuant

to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny

the State's characterizations and refer the Court to the documents, objections, responses,

testimony, transcripts, or other information provided for their full and accurate contents.

113.    *Fr. U. is a retired accountant.  He accepted CenturyLink's offer to upgrade the*

*speed of his internet service with no increase in the monthly rate.  CenturyLink failed to follow*

*through on its promised rate, and when Fr. U. contested the increase, a supervisor told him that*

*CenturyLink's agents need more training.*

113.    Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in the first sentence of Paragraph 113 of the Amended Complaint, and on

that basis deny each and every allegation.  To the extent that the allegations in Paragraph 113

purport to characterize the contents of documents, objections, responses, testimony, transcripts,

or other information provided pursuant to the State's CIDs or this Action, by Minnesota

consumers, or by third parties, Defendants deny the State's characterizations and refer the Court

to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 113.

114. *CenturyLink promised internet service to **S.G.** for $19.95 per month. CenturyLink charged her a base rate of $29.95 per month. She reported the misrepresentation to CenturyLink, which **did not honor its promise**.*

114. Defendants deny the allegations in Paragraph 114 of the Amended Complaint. To the extent that the allegations in Paragraph 114 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

115. ***J.T.** is a retired engineer and purchased a three-year "premium price lock" package that CenturyLink promised would cost a total of $106.94 per month. **CenturyLink would not honor the "locked" $106.94 rate** and charged him a series of fluctuating rates averaging more than $144.*

115. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 115 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 115 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 115.

116. *CenturyLink offered internet service to **D.G.**, a retired school teacher from Eveleth, for $29.95 per month.  **CenturyLink did not bill him as promised,** charging him a base rate of $39.95.*

116.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 116 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 116 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants deny the allegations in Paragraph 116.

117. ***S.H.** is a 70-year-old former director of a non-profit organization.  She purchased a CenturyLink package that the company said would cost a total of approximately $54 per month.  CenturyLink actually charged her $103.87.  When S.H. called about the bill, a supervisor told her the discrepancy would be fixed the following month.  The company charged her $76.46 and $77.96 the following months.  **CenturyLink then refused to honor its offer.***

117.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 117 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 117 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court

to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 117.

118. *CenturyLink sold a new plan to **D.S.** that the company claimed would lower the price of his service. CenturyLink **charged him more than it promised**, increasing his bill by $27.51 the following month.*

118. Defendants deny the allegations in Paragraph 118 of the Amended Complaint. To the extent that the allegations in Paragraph 118 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

119. *CenturyLink sold a package to 76-year-old retiree **K.T.** that the company promised would cost $62.14 for the first month, $40.91 for the second month, and $85.92 for the third through twelfth months. CenturyLink charged K.T. $172.24 the first month and then **falsely promised to fix his bill**.*

119. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 119 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 119, and on that basis deny each and every allegation.

120.    *P.H., a retired school teacher, purchased a package that CenturyLink promised would save her money and cost approximately $50 per month.*  **CenturyLink failed to bill her as promised.**

120.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 120 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 120 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants deny the allegations in Paragraph 120.

121.    *B.K. is a freelance art director.  He purchased internet service for $29.95 per month, but CenturyLink actually charged him a base rate of $71.  CenturyLink* **refused to honor its offer**, *claiming there were no promotions available to him, even though B.K. had already accepted such an offer.*

121.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 121 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 121 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court

to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants deny the allegations in Paragraph 121.

122.    *P.J., a business owner, purchased a CenturyLink package, but **the company failed to bill him as promised,** charging him hundreds of dollars more that it promised during the time he received service.*

122.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122 of the Amended Complaint, and on that basis deny each and every allegation. To the extent that the allegations in Paragraph 122 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.

123.    *M.H. is 81 years old and lives on a budget. She agreed to keep her service after CenturyLink promised her the same rate for another year. CenturyLink increased her bill and then charged her a series of changing rates. **CenturyLink refused to give her the rate it promised**, telling her "there's just no promotions that exist" that could keep the price of her service the same as she had been promised. CenturyLink threatened to charge her a $200 cancellation penalty if she terminated her service. When M.H. asked if CenturyLink had "lied to [her]" about the price of its service, an agent responded, "I would say so. Yes." She asked to speak with a supervisor. The agent would not transfer her, claiming CenturyLink's employees are "all in different . . . locations" and "there's nothing my facility would be able to do about [the misrepresentation]." CenturyLink later wrote to her claiming that its "system" would have*

*"automatically blocked any attempt" to keep the price of her service the same, even though CenturyLink had promised her just that.*

123.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 123 of the Amended Complaint, and on that basis deny each and every allegation.  To the extent that the allegations in Paragraph 123 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants deny the allegations in Paragraph 123.

IV.    **CENTURYLINK FRAUDULENTLY IMPOSED RATE INCREASES ON CONSUMERS WHO PURCHASED PRICE LOCKS OR OTHER FIXED-RATE PLANS FROM THE COMPANY.**

124.    *As noted in the examples above, CenturyLink has quoted monthly prices that turn out to be inaccurate for a variety of reasons.  CenturyLink often fails to honor the base rate it promises consumers.*

124.    Defendants deny the allegations in Paragraph 124 of the Amended Complaint.

125.    *In addition, the price quotes are sometimes inaccurate for the added reason that the company failed to include a monthly charge called an "Internet Cost Recovery Fee" in its actual price quotes given to Minnesota consumers, even when consumers ask about additional fees or the total price they will pay.  See e.g., R.T. (told price quote included "everything" but charged more, including Internet Cost Recovery Fee); C.A. (promised quote included all taxes and fees but still charged additional Internet Cost Recovery Fee); R.S. (charged more than quoted, including Internet Cost Recovery Fee, even after asking about all additional fees); A.B (promised fixed-rate plan but charged for increased Internet Cost Recovery Fee.); D.B. (told*

*quoted price included "everything" but charged other fees including Internet Cost Recovery Fee).*

125.    Defendants deny the allegations in Paragraph 125 of the Amended Complaint, except Defendants state that to the extent the allegations in Paragraph 125 incorporate the allegations in Paragraphs 46, 61, 99, and 107 of the Amended Complaint, Defendants hereby incorporate their responses to those paragraphs in their response to Paragraph 125.

126.    *In other cases, CenturyLink misrepresents and minimizes the price of the company's internet service by not disclosing this fee during the sales conversation in which consumers and CenturyLink primarily discuss the base cost of CenturyLink's internet service. See e.g., B.T. (charged more than promised, including unmentioned Internet Cost Recovery Fee); H.R. (charged more than double what CenturyLink promised, plus Internet Cost Recovery Fee company did not mention in sales conversation); K.K. (deceived by $20 per month in base rate plus unmentioned Internet Cost Recovery Fee); M.B. (charged more than promised, including unmentioned Internet Cost Recovery Fee); J.F. (billed base rate nearly four times promised rate plus Internet Cost Recovery Fee); A.L. (paid fluctuating rates above promised offer, including unmentioned Internet Cost Recovery Fee); S.G. (charged base rate of 50% more than quoted plus unmentioned Internet Cost Recovery Fee); D.G. (charged more than promised, including unmentioned Internet Cost Recovery Fee); B.K. (billed more than double quoted offer plus mentioned Internet Cost Recovery Fee); F.L. (charged nearly double promised rate plus undisclosed Internet Cost Recovery Fee); P.C. (charged more than promised, including unmentioned Internet Cost Recovery Fee).*

126.    Defendants deny the allegations in Paragraph 126 of the Amended Complaint, except state that to the extent the allegations in Paragraph 126 incorporate the allegations in

Paragraphs 42, 97, 102, 104, 105, 111, 114, 116, 121, 63, and 69 of the Amended Complaint,
Defendants hereby incorporate their responses to those paragraphs in their response to Paragraph
126.

127.    *CenturyLink's so-called Internet Cost Recovery Fee is charged to Minnesota
consumers who have internet service with the company.  The fee started at $0.99 per internet
connection, per month, was raised to $1.99 per internet connection, per month, and is now $3.99
per internet connection, per month.  That means each consumer now pays an added $47.88 per
year to CenturyLink just in Internet Cost Recovery Fees, despite receiving nothing of tangible
value in return for being forced to pay this fee.*

127.    Defendants deny the allegations in the first sentence of Paragraph 127 of the
Amended Complaint.  Defendants admit that, in accordance with their disclosures and contracts,
Defendants CenturyTel Broadband and QC sometimes charge an Internet Cost Recovery or
Broadband Cost Recovery fee to certain customers of internet services, and that the prices of
those fees at various times have been $0.99, $1.99 or $3.99 per month.  Defendants deny the
allegations in the third sentence of Paragraph 127.

128.    *CenturyLink has also fraudulently imposed these annual increases in the Internet
Cost Recovery Fee on consumers who purchased "price locks," promotions, or other term
agreements that CenturyLink represented as providing a fixed or guaranteed rate for a period of
time, typically one or two years. By using terms like "price lock" or "term agreement,"
CenturyLink implied that the amount consumers would pay CenturyLink each month would
remain fixed or "locked."  These representations, however, were false, as internal CenturyLink
documents show that consumers on these agreements were not spared from these*

*predicable increases in CenturyLink's Internet Cost Recovery Fee – price increases which the company controlled.*

128.    Defendants deny the allegations in Paragraph 128.  To the extent that the allegations in Paragraph 128 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128, and on that basis deny each and every allegation.

129.    *CenturyLink has also misrepresented the nature of the Internet Cost Recovery Fee to consumers who notice it on their multi-page bills, sometimes falsely calling it: a federal fee; a fee for their internet line; a phone tax; an undisputable charge; a FCC-regulated fee; a form of insurance; a fee that is negotiated with each state; or a fee for the consumer's phone line.  An internal CenturyLink communication from April of 2016 produced to the State acknowledges that the company has "misinformed" consumers by calling the Internet Cost Recovery Fee "a tax," a false description repeated on recordings produced to the State.  CenturyLink has also acknowledged it has "gotten into some legal trouble for mis-representing [the Internet Cost Recovery Fee] as government agency fees."  The Internet Cost Recovery Fee is not any of these things.  It is simply part of the base monthly rate that CenturyLink charges for internet service, but that the company has artificially listed separately on its bills as a "fee" to make its base rates appear lower to price-sensitive customers.*

129.    Defendants deny the allegations in Paragraph 129 of the Amended Complaint.  To

the extent that the allegations in Paragraph 129 purport to characterize the contents of

documents, objections, responses, testimony, transcripts, or other information provided pursuant

to the State's CIDs or this Action, by Minnesota consumers, or by third parties, Defendants deny

the State's characterizations and refer the Court to the documents, objections, responses,

testimony, transcripts, or other information provided for their full and accurate contents.

Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 129, and on that basis deny each and every allegation.

## V.    CENTURYLINK'S FRAUDULENT MISREPRESENTATIONS AND MATERIAL OMISSIONS DIRECTLY HARMED MINNESOTA CONSUMERS.

130.    *Minnesota consumers have purchased CenturyLink's services based on the*

*company's deceptive representations about the price of its services.  For multiple reasons, a*

*"causal nexus" connects CenturyLink's prohibited conduct and the damage that conduct has*

*inflicted upon Minnesota consumers.*

130.    Defendants deny the allegations in the first sentence in Paragraph 130 of the

Amended Complaint.  The allegations in the second sentence of Paragraph 130 consist of legal

conclusions, to which no response is required.  To the extent a response is required, Defendants

deny the allegations in Paragraph 130.

131.    *CenturyLink's fraudulent conduct and the harm Minnesota consumers have*

*suffered cannot be separated.  CenturyLink's fraudulent conduct takes the form of false*

*statements about the price the company will charge Minnesota consumers for their service.  If*

*CenturyLink's statements about the price consumers pay are true, Minnesota consumers do*

*not suffer financial harm.  But when CenturyLink's statements about the price of its service are*

*false, Minnesota consumers necessarily suffer financial harm when they purchase CenturyLink*

*service. Consumers who are charged more for service than they agreed to pay are harmed by the exact amount they are charged above the amount CenturyLink falsely promised to charge. There is no scenario in which CenturyLink's fraudulent misrepresentations could have failed to harm consumers.*

131. The allegations in Paragraph 131 consist of legal argument, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 131.

132. *Additionally, consumers' decisions to purchase CenturyLink's services were based on the company's widely disseminated false promises about the price and terms of the company's service. Statements about the price of a company's service are the type of representations which reasonable and prudent persons rely upon in deciding to purchase the company's service. CenturyLink also intends that consumers rely on the company's false statements about the price of the company's service. CenturyLink documents show that CenturyLink's promotions and discounts are intended to: attract price-sensitive consumers; overcome consumers' objections to the price of the company's service; and "close the sale." Through the patterns and practices identified in this Complaint, CenturyLink deliberately engaged in a lengthy course of prohibited conduct that deceived a large number of consumers.*

132. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 132, and on that basis deny them. Defendants deny the allegations in the third and last sentences of Paragraph 132. To the extent that the allegations in the fourth sentence of Paragraph 132 purport to characterize the contents of documents, objections, responses, testimony, transcripts, or other information provided pursuant to the State's CIDs or this Action, by Minnesota consumers, or by third

parties, Defendants deny the State's characterizations and refer the Court to the documents, objections, responses, testimony, transcripts, or other information provided for their full and accurate contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 132, and on that basis deny each and every allegation.

133. *Further, special circumstances exist that triggered a duty on the part of CenturyLink to disclose material facts about the prices consumers will pay. First, CenturyLink had special knowledge which Minnesota consumers did not have at the time of their purchase of the full scope of the conditions, exceptions, and charges that CenturyLink uses to determine the prices to bill consumers. Consumers do not possess this special knowledge; in fact, CenturyLink designated these rules "Trade Secret" during the State's investigation. CenturyLink knows it operates in a price-sensitive market where consumers shop based on the final monthly rate they will pay. CenturyLink knew or had reason to know that potential customers would place their trust in CenturyLink and rely on the company to inform them of material facts relating to the cost of CenturyLink's service. CenturyLink abused that trust by making verbal representations that included only a single price that consumers believed was the total price and by not disclosing that additional factors governing these offers would lead to a higher price. Second, CenturyLink did not say enough to prevent the representations it made to consumers from being deceptive and misleading.*

133. Defendants deny the allegations in Paragraph 133.

134. *The State brings this action to protect Minnesota consumers from CenturyLink's unlawful acts.*

134.    The allegations in Paragraph 134 constitute the State's characterization of its claims, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 134.

## COUNT I
## CONSUMER FRAUD

135.    *The State of Minnesota re-alleges all prior paragraphs of this Complaint.*

135.    Defendants restate their responses to each of the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

136.    *Minnesota Statutes section 325F.69, subdivision 1 reads:*

> *The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70*

*Minn. Stat. § 325F.69, subd. 1 (2016).*

136.    The allegations in Paragraph 136 of the Amended Complaint purport to quote a statute.  To the extent that Paragraph 136 is quoting a statute, the language speaks for itself and any attempt to characterize the language is denied.

137.    *The term "merchandise" within the meaning of Minnesota Statutes section 325F.69 includes services.  See Minn. Stat. § 325F.68, subd. 2 (2016).*

137.    The allegations in Paragraph 137 of the Amended Complaint consist of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 137 and refer the Court to the relevant statutes for their full and accurate contents.

138.    *CenturyLink has repeatedly violated Minnesota Statutes section 325F.69, subdivision 1, by engaging in the deceptive and fraudulent practices described in this Complaint,*

*with the intent that others rely thereon in connection with the sale of its internet and television services. Among other things, CenturyLink has falsely promised consumers that its service will cost a particular price when in fact the company charges consumers another price as a result of the practices described in this Complaint.*

138.     Defendants deny the allegations in Paragraph 138 of the Amended Complaint.

139.     *Due to the deceptive and fraudulent conduct described in this Complaint, Minnesota consumers have made payments to CenturyLink for goods and services that they otherwise would not have purchased or in amounts that they should not have been required to pay, thereby causing harm to those consumers. There is a causal relationship between these injuries to Minnesota consumers and the wrongful conduct CenturyLink has engaged in that violates Minnesota Statutes section 325F.69.*

139.     Defendants deny the allegations in the first sentence in Paragraph 139 of the Amended Complaint. The allegations in the second sentence in Paragraph 139 consist of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 139 and refer the Court to the relevant statutes for their full and accurate contents.

140.     *Given the representations it made, its special knowledge, and the circumstances described in this Complaint, CenturyLink had a duty to disclose material facts to potential customers in connection with its marketing and offering of goods and services to Minnesota consumers, including the additional prices and factors that would result in the company not honoring its quoted monthly prices. By not doing so, the company failed to disclose material information in violation of Minnesota Statutes section 325F.69, subdivision 1.*

140.     Defendants deny the allegations in Paragraph 140 of the Amended Complaint.

141.    *CenturyLink's conduct, practices, actions, and material omissions described in this Complaint constitute multiple, separate violations of Minnesota Statutes section 325F.69.*

141.    Defendants deny the allegations in Paragraph 141 of the Amended Complaint.

## COUNT II
## DECEPTIVE TRADE PRACTICES

142.    *The State of Minnesota re-alleges all prior paragraphs of this Complaint.*

142.    Defendants restate their responses to each of the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

143.    *Minnesota Statutes section 325D.44, subdivision 1 provides in part that:*

*A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:*

\****

*(9) advertises goods or services with intent not to sell them as advertised;*

\****

*(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;*

\**** or*

*(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.*

*Minn. Stat. § 325D.44, subd. 1 (2016).*

143.    The allegations in Paragraph 143 of the Amended Complaint purport to quote a statute.  To the extent that Paragraph 143 is quoting a statute, the language speaks for itself and any attempt to characterize the language is denied.

144.    *CenturyLink has repeatedly violated Minnesota Statutes section 325D.44, subdivision 1, by engaging in the deceptive and fraudulent conduct described in this Complaint. CenturyLink's conduct caused a likelihood of confusion or misunderstanding among consumers*

*regarding, among other things, the prices of CenturyLink's internet and television service. CenturyLink has advertised its services with the intent not to sell them at the advertised price because, among other things, CenturyLink has quoted prices to consumers that it later claims are impossible for consumers to receive. CenturyLink has also made false and misleading statements about the reasons for, existence of, and amounts of price reductions it promised to Minnesota consumers but subsequently failed to deliver to those consumers.*

144.    Defendants deny the allegations in Paragraph 144 of the Amended Complaint.

145.    *Due to the deceptive and fraudulent conduct described in this Complaint, consumers made payments to CenturyLink for goods and services that they otherwise would not have purchased or in amounts that they should not have been required to pay.*

145.    Defendants deny the allegations in Paragraph 145 of the Amended Complaint.

146.    *Given the representations it made, its special knowledge, and the circumstances described in this Complaint, CenturyLink had a duty to disclose all material facts to potential customers in connection with its marketing and offering of goods and services to Minnesota consumers, including the additional prices and factors that would result in the company not honoring its quoted monthly prices. By not doing so, the company failed to disclose material information in violation of Minnesota Statutes section 325D.44, subdivision 1. There is a causal relationship between these injuries to Minnesota consumers and the wrongful conduct CenturyLink has engaged in that violates Minnesota Statutes section 325D.44.*

146.    Defendants deny the allegations in the first two sentences of Paragraph 146 of the Amended Complaint. The allegations in the third sentence in Paragraph 146 consist of legal conclusions, to which no response is required. To the extent a response is required, Defendants

deny the allegations in Paragraph 146 and refer the Court to the relevant statutes for their full and accurate contents.

147.    *CenturyLink's conduct, practices, and actions described in this Complaint constitute multiple, separate violations of Minnesota Statutes section 325D.44.*

147.    Defendants deny the allegations in Paragraph 147 of the Amended Complaint.

## RELIEF

*The State of Minnesota, by its Attorney General, Keith Ellison, respectfully asks this Court to enter judgment against CenturyLink awarding the following relief:*

1.    *Declaring that CenturyLink's acts described in this Complaint constitute multiple, separate violations of Minnesota Statutes sections 325F.69 and 325D.44;*

2.    *Enjoining Defendants and their employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries, and all other persons acting in concert or participation with them, from violations of Minnesota Statutes sections 325F.69 and 325D.44;*

3.    *Awarding restitution under the parens patriae doctrine, the general equitable powers of this Court, Minnesota Statutes section 8.31, and any other authority for all persons injured by CenturyLink's acts as described in this Complaint;*

4.    *Awarding civil penalties pursuant to Minnesota Statutes section 8.31, subdivision 3, for each separate violation of Minnesota Statutes sections 325F.69 and 325D.44;*

5.    *Awarding the State of Minnesota its attorneys' fees, litigation costs, and costs of investigation, as authorized by Minnesota Statutes section 8.31, subdivision 3a; and*

6.    *Granting such further relief as provided by law or equity, or as the Court deems appropriate and just.*

02-CV-17-3488

Filed in District Court
State of Minnesota
7/2/2019 11:12 AM

Paragraphs 1 through 6 of the "Relief" section of the Amended Complaint constitute the State's specific requests for relief, as to which no response is required.  Defendants deny that the State or any citizens of Minnesota purportedly represented by the State are entitled to the relief sought in the State's prayer for Relief or to any other relief.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any defense or issue that would otherwise rest on the State or as to any element of the State's claims, and reserving the right to amend this Answer to assert any additional defenses when, and if, in the course of its investigation, discovery, preparation for trial, or otherwise it becomes appropriate to assert such defenses, Defendants assert the following defenses.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a valid claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because it has no damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were not actually or proximately caused by Defendants' conduct.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its failure to mitigate and lessen any alleged damages it may have sustained.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of acquiescence and ratification.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the voluntary payment doctrine.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants' performance was excused by the non-occurrence of a condition subsequent.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants' disclosures, representations and statements were truthful.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants were not subject to any legal or equitable duty to disclose any alleged omitted facts.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the First Amendment of the United States Constitution.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of recoupment.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the account stated doctrine.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to plead Count I and Count II of the Amended Complaint with requisite specificity.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to plead a causal nexus between Defendants' alleged conduct and the alleged harm.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by CenturyLink's contracts with its customers.

## PRAYER FOR RELIEF

Defendants respectfully request that the Court:

(1) Dismiss the Complaint with prejudice in its entirety and/or enter judgment in Defendants' favor and against Plaintiff;

(2) Grant Defendants their attorneys' fees and costs to the extent recoverable under the law; and

(3) Award Defendants any other relief the Court deems just and equitable.

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211.

02-CV-17-3488

CASE 0:18-cv-00296-MJD-JFD    Doc. 179-1    Filed 07/10/19    Page 92 of 92    Filed in District Court
State of Minnesota
7/2/2019 11:12 AM

Dated:  June 24, 2019

WINTHROP & WEINSTINE, P.A.

By:  */s/ David M. Aafedt*
David M. Aafedt, #27561X
Joseph M. Windler, #0387758
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400
daafedt@winthrop.com
jwindler@winthrop.com

COOLEY LLP
Douglas P. Lobel (*pro hac vice*)
David A. Vogel (*pro hac vice*)
Dana J. Moss (*pro hac vice*)
One Freedom Square / Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190-5656
T 703.456.8000 | F 703.456.8100
dlobel@cooley.com
dvogel@cooley.com
dmoss@cooley.com

*Attorneys for Defendants*

206114154

17526840v1