# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION**<br><br>This Document Relates to:<br><br>Civil Action No. 18-296 (MJD/KMM) | **MDL No. 17-2795 (MJD/KMM)** |

## JOINT REPORT PURSUANT TO F.R.C.P. 26(f) AND L.R. 16.2

Pursuant to the Court's Joint Case Management Order for the Consolidated Securities Action dated June 13, 2018, Fed. R. Civ. P. 26(f) and L.R. 16.2, counsel for Plaintiffs and Defendants in the above-captioned matter (the "Parties") conferred on August 12, 2019 and thereafter, and prepared the following report (the "Report"). This Report relates to the above-referenced consolidated securities class action and does not pertain to the related consolidated consumer class action [No. 17-cv-02832 et al.] or the related consolidated shareholder derivative action [No. 18-cv-2460].[1]

The Parties respectfully request the Court schedule the initial pretrial conference required under Fed. R. Civ. P. 16 and L.R. 16.2 for _____, 2019, or at another day and time that may be convenient for the Court, before the United States District Court Judge Michael J. Davis in Room 13E, of the U.S. Courthouse at 300 South Fourth Street, Minneapolis, Minnesota.

A.    **Description of the case**

1.    **Plaintiffs' concise factual summary of plaintiffs' claims:**

Lead Plaintiff State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund ("Oregon") and Named Plaintiff Fernando Alberto Vildosola as trustee for the AUFV Trust U/A/D 02/19/2009 ("Vildosola" and together with Oregon, "Plaintiffs"), assert claims on behalf of a class of all persons or entities who purchased or otherwise acquired publicly traded securities issued by CenturyLink, Inc. ("CenturyLink"

---

[1] References to "ECF No. __" herein are to No. 18-296, unless otherwise noted.

or the "Company") from March 1, 2013 through July 12, 2017 (the "Class Period") and were damaged thereby. As set forth in the Consolidated Class Action Complaint (ECF No. 143), Plaintiffs allege that Defendants CenturyLink ("CenturyLink" and, together with the Executive Defendants (as defined below), "Defendants"), Glen F. Post III, R. Stewart Ewing, Jr., David D. Cole, Karen Puckett, and Dean J. Douglas, violated Section 10(b), 15 U.S.C. § 78j(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, by knowingly or recklessly making materially false and misleading statements and omissions concerning the Company's fraudulent billing practices. Plaintiffs further allege that Defendants Glen F. Post III, R. Stewart Ewing, Jr., David D. Cole, Karen Puckett, Dean J. Douglas, and G. Clay Bailey (collectively, the "Executive Defendants") violated Section 20(a), 15 U.S.C. § 78t(a) of the Exchange Act, as controlling persons of CenturyLink.

Specifically, Plaintiffs allege that Defendants knowingly or recklessly concealed CenturyLink's years-long practice of "cramming" customer accounts by adding services without customers' authorization, deceiving customers about the prices they would be charged, and misquoting prices by failing to disclose that service "bundles" included fees for optional services that the customers did not need or authorize. The Company's cramming practices were so widespread that over 3.5 million customers were potentially overbilled. Rather than disclose these facts, during the Class Period, Defendants told investors that CenturyLink's sales practices were aboveboard and represented that CenturyLink would never "plac[e] or record[] an order for our products and services for a customer without that customer's authorization." Defendants claimed that CenturyLink's

revenue growth in its consumer and small business segments was due to its focus on customer needs through its call centers, bundling service packages, and other strategies. These representations were important to investors because investors were concerned with CenturyLink's ability to generate dependable cash flows in the face of customers abandoning traditional wireline telephone services that were the historical core of the Company's business. These representations were false because, in reality, the Company's revenues were materially inflated by these cramming practices, and the Executive Defendants secretly condoned and encouraged cramming specifically because of its impact on revenues.

Plaintiffs allege that investors learned the true facts about the Company's business practices and financial condition through a series of corrective disclosures. First, on June 16, 2017, *Bloomberg* reported that a former CenturyLink employee filed a whistleblower lawsuit alleging that she was wrongfully terminated after notifying CenturyLink's CEO about the Company's improper sales practices. Second, on June 19, 2017, *Bloomberg* reported that a consumer class action lawsuit against the Company had been filed on behalf of CenturyLink customers alleging that millions of customers had been overbilled. Third, on July 12, 2017, the Minnesota Attorney General disclosed that, after a year-long investigation, it had filed a lawsuit against CenturyLink alleging violations of state consumer protection laws and providing extensive detail concerning the Company's billing misconduct. These revelations resulted in sharp declines in the prices of CenturyLink's securities, causing investors to incur substantial damages under the federal securities laws.

**2.    Defendants' concise factual summary of defendants' claims/defenses:**

Plaintiffs seek to convert a series of allegations made by a putative nationwide class of consumer plaintiffs, who had previously filed several class actions, into a securities fraud case.  The consumer actions in turn were based on a number of unrelated, individual consumer complaints that are typical in the telecommunications industry.  The consumer plaintiffs purported to allege company-wide "boiler-room" style sales and billing practices.  The consumer plaintiffs did not specifically focus on "cramming," but raised a wide variety of disputes that would not constitute "cramming."   The consumer plaintiffs recently reached a preliminary settlement with CenturyLink, which is pending Court approval.

In its Memorandum of Law, the Court held that Plaintiffs stated a claim for securities fraud by alleging that cramming was a "widespread practice" at CenturyLink affecting millions of customers; that "cramming was material" to CenturyLink's billions in quarterly revenues throughout the proposed Class Period; and that "Defendants knew CenturyLink's sales were materially dependent on cramming," such that their public statements regarding "various business strategies" were knowingly false and misleading.  Memorandum of Law & Order at 16, 18-19, July 30, 2019 (Docket No. 420).  These are the allegations Plaintiffs must now prove with evidence, rather than resting on the assertions in the Complaint.

Defendants will demonstrate that each of these allegations are false.  Discovery will show that no systematic fraud existed, that CenturyLink's revenues were not materially affected by cramming, and that none of the Defendants made any false or misleading statements to the investing public.

5

Plaintiffs will also be unable to establish loss causation.  None of the "corrective disclosures" Plaintiffs point to revealed the central fraud they allege—that CenturyLink's revenues were materially impacted by cramming, and the Executive Defendants knew it.

Finally, Defendants will challenge the putative class as insufficiently precise and consisting of differently situated investors and bond holders who may have relied on different sets of information and public statements, and will show that Plaintiffs are not adequate class representatives.

Defendants deny liability for all claims asserted against them.  Because Plaintiffs will be unable to show that any Defendant made any materially false or misleading statements with scienter, or that they suffered any damages, their securities claims will fail.

**3.      Statement of jurisdiction (including statutory citations):**

This securities class action alleges claims under Section 10(b) and Section 20(a) of the Exchange Act, and thus the Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

**4.      Summary of factual stipulations or agreements:**

There are no factual stipulations or agreements other than those noted in this Report.

**5.      Statement of whether a jury trial has been timely demanded by any party:**

Plaintiffs have timely demanded a jury trial.  The Parties agree that venue in the District of Minnesota is presently proper for pre-trial purposes pursuant to orders of the Judicial Panel on Multi-District Litigation (the "Panel").  *See, e.g.,* ECF No. 101.

Plaintiffs' position is that trial is properly venued in this District because, among other reasons, the Consolidated Complaint filed on June 25, 2018—the operative consolidated complaint and first and only pleading filed by Lead Plaintiff Oregon and Named Plaintiff Vildosola in this action—asserts that venue is proper in the District of Minnesota.  *See, e.g., Manual for Complex Litigation, Fourth* (2004) § 20.132, at 224.

Defendants' position is that this Action may be returned to the Western District of Louisiana, where certain of the related securities actions were originally consolidated (*see, e.g.*, *Craig v. CenturyLink, et. al.*, 3:17-CV-01005, Order Granting Motion to Consolidate, Oct. 19, 2017 (Docket No. 21) (consolidating securities actions in the Western District of Louisiana)), prior to trial, and in any event must be returned to that District for trial.  *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 32-41 (1998) (the "straightforward language" of 28 U.S.C. § 1407(a) is an "unconditional command" that the Panel must remand, at the end of pretrial proceedings, each action transferred by the Panel that has not been terminated by the transferee court); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1199-1200 (D. Minn. 2012) (remanding centralized actions to transferor court during summary judgment briefing); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2011 WL 1046162, at *3 (S.D.N.Y. Mar. 22, 2011) (remanding centralized actions to transferor court after completion of discovery and during pendency of summary judgment motions and motions to strike).

6.     **Statement as to whether the parties agree to resolve the matter under the Rules of Procedure for Expedited Trials of the United States District Court, District of Minnesota, if applicable:**

The parties agree this matter is not amenable to resolution under the Rules of Procedure for Expedited Trials.

**B.     Pleadings.  Statement as to whether all process has been served, all pleadings filed and any plan for any party to amend pleadings or add additional parties to the action:**

All Defendants in the securities class action have agreed to waive service.  *See* ECF No. 89 (waiver of service for Defendants CenturyLink, Post, Ewing and Cole); ECF No. 147 (waiver of service for Defendants Puckett, Douglas and Bailey), and all related securities class actions filed against CenturyLink were transferred to this Court pursuant to orders of the Judicial Panel on Multidistrict Litigation and consolidated by this Court by order dated April 20, 2018.  ECF No. 137.  Plaintiffs filed the Consolidated Class Action Complaint on June 25, 2018.  ECF No. 143.  Defendants filed their Answer on August 13, 2019.  ECF No. 181.

At this time, Plaintiffs are not planning to amend the Consolidated Class Action Complaint.  In any event, Plaintiffs and Defendants agree that the deadline to amend the pleadings in this action will be after the close of fact discovery.  Plaintiffs propose that date be 10 days after the close of fact discovery (under Plaintiffs' proposed schedule, August 31, 2020) while Defendants propose that date be 30 days after the close of fact discovery (under Defendants' proposed schedule, November 30, 2020).

The Parties have been unable to agree on the deadline for adding additional parties without leave of Court.  Plaintiffs' position is that the parties should add all additional parties by August 31, 2020.  Plaintiffs believe that such a deadline is reasonable given that

discovery is needed for the Parties to learn whether the addition of any other parties is appropriate.

Defendants' position is that all additional parties should be added to the action on or before 45 days after the FRCP 16 conference before the Court.  Defendants believe that such a deadline is reasonable because Plaintiffs are already aware of which individuals made public statements to investors regarding CenturyLink during the proposed class period which would purportedly give rise to liability under Section 10(b) (and brought that knowledge to bear when formulating the claims in their Complaint), and further discovery to uncover the identity of additional defendants is thus unnecessary.

**C.    Fact Discovery.**

The Parties recommend that the Court establish the following fact discovery deadlines and limitations:

**(1) The parties make their initial disclosures under Fed. R. Civ. P. 26(a)(1) on or before:**  September 17, 2019

(2) **Discovery initiation:**  The parties agree that discovery has commenced pursuant to the relevant federal rules.  The Parties will serve responses and objections to any discovery requests within the time provided by the relevant rules.

**(3) Document discovery substantial completion.**

**<u>Plaintiffs' Position</u>**

Plaintiffs propose that document production begin immediately.  This is a case in which Defendants have already collected, reviewed and produced a substantial number of documents in connection with other proceedings and investigations that are directly

relevant here.  Those include the ongoing action prosecuted by the Minnesota Attorney General, *State of Minnesota, by its Attorney General, Keith Ellison v. CenturyTel Broadband Services LLC d/b/a CenturyLink Broadband*, No. 02-CV-17-3488 (Anoka Cty. Dist. Ct.), the related consolidated consumer class action [No. 17-cv-02832 et al.], and the related shareholder derivative action [No. 18-cv-2460] (the "Related Actions"), as well as Defendants' own internal investigation, and numerous other pending and completed investigations by other state Attorneys General and other regulators.  Plaintiffs propose that an initial rolling of production of documents previously produced in the three Related Actions be produced to Plaintiffs immediately, as these documents can be produced without any burden whatsoever, have already been reviewed for responsiveness and privilege, are clearly relevant, and would streamline discovery in this case.  As numerous courts have recognized in other actions involving parallel proceedings, requiring the production of previously produced documents can help to reduce burdens and costs on Defendants, the class and the Court, and such documents are regularly produced at the outset of discovery.  *See, e.g., In re Hardieplank Fiber Cement Siding Litig.*, 2014 WL 5654318, at *2 (D. Minn. Jan. 28, 2014) (Davis, J.) (ordering discovery produced in related actions to the extent it involved "any concerns" regarding issues in present case); *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at *5 (E.D. Mich. Apr. 8, 2015) (requiring production of documents previously produced in related MDL litigation and citing cases).

Defendants have refused to disclose the existence or identity of the other state Attorneys General investigating CenturyLink (despite their being cited in Plaintiffs'

Complaint, the Court's Order denying Defendants' motion to dismiss, and in recent motion practice before Judge Davis), but Plaintiffs anticipate requesting this information and any similar prior productions in related proceedings, as well as the Company's own investigation, in discovery to the extent they concern the issues in this case. *See, e.g.,* ECF No. 143 (Complaint) at ¶¶20, 103-08, 131, 178; ECF No. 180 (MTD Order) at 10, 38; *In re CenturyLink Sale Prac. & Sec. Litig.,* No. 17-md-2795, ECF No. 430 at 2 (Minnesota AG Letter) ("several state attorneys general have long-standing investigations into CenturyLink's fraudulent business practices").

Plaintiffs propose a substantial completion of document production deadline of December 13, 2019. This date, which is contemplated by Local Rule 26-1(b)(2), Local Rule Form 3, Magistrate Judge Menendez's 26(f) Report Template, and the District of Minnesota e-Discovery Guide, ensures the timely completion of factual and expert discovery. Not only is such a deadline standard practice in these kinds of cases, a deadline for substantial completion of document discovery is clearly necessary here to ensure the parties timely negotiate the scope of document discovery and complete document production in a manner that will allow the parties to meet other case management deadlines. A deadline for substantial completion helps parties appropriately tailor discovery, resolve privilege and other discovery disputes before the bulk of fact depositions are taken, ensures the parties adhere to the fact discovery cut-off deadline, and avoids last-minute requests for relief to the Court. Conversely, waiting to set a deadline for substantial completion of document discovery until 30 days after Defendants serve their responses to Plaintiffs' document requests, as Defendants propose, would create incentives for the parties to

manipulate or inappropriately prolong the discovery process through inappropriate objections, discourage an expeditious negotiation and agreement as to search terms, custodians, and other ESI parameters, and frustrate the parties' ability to meet other case deadlines.

Plaintiffs believe that the deadline for fact discovery should be August 21, 2020, or approximately 12 months from the initial discovery date.

Plaintiffs propose that the deadline for all Requests for Production, Interrogatories, and Requests for Admission be 30 days prior to the fact discovery cutoff, with the exception of Requests for Admission to authenticate documents for the purposes of trial.

**Defendants' Position**

Defendants propose a rolling production of documents beginning approximately 60 days from the service of Defendants' responses to Plaintiffs' initial document requests. The precise timing of the rolling productions will depend on the scope of the discovery requested and the volume of the expected productions.

Plaintiffs have informally demanded the re-production of every document produced in every other action and investigation CenturyLink has been involved in from the last several years. Such a request is overly broad and disproportionate on its face, as many of the documents produced in other actions and investigations relate to garden-variety billing complaints at the individual CenturyLink customer level and have no relevance to the securities fraud claims asserted by Plaintiffs against Defendants here. A "data dump" of information that Plaintiffs have not actually requested and that may relate to their claims not at all or in only the most tangential sense will also create numerous inefficiencies and

confusion and be unduly burdensome for all parties to this action.  Accordingly, courts presented with analogous circumstance have rejected premature, overbroad, informal demands for copycat discovery like the demands Plaintiffs have made here.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Marketing Sales Practices & Prods. Liability Litig.*, 2017 WL 4680242, at *1-2 (N.D. Cal. Oct. 18, 2017) (denying shareholder plaintiffs' motion to compel documents produced in multi-district consumer litigation where shareholder plaintiffs "have not demonstrated that the entire MDL production is relevant to their case," "are not entitled to complete access to the MDL Production simply because there may be an overlap between their claims and those in the consolidated consumer class action," and "have not explained how these documents have any tendency to make a fact of consequence to their securities claims more or less probable").

Plaintiffs should serve written document requests, pursuant to Rule 34(b)(1) of the Federal Rules of Civil Procedure, which comply with Rule 26(b) (including its requirement that requested discovery be relevant and "proportional to the needs of the case") and "describe with reasonable particularity each item or category of items" requested.  *See, e.g.*, *Volkswagen*, 2017 WL 4680242, at *1 (In order "to determine which documents in the MDL Production are relevant and which are not, the [shareholder] Plaintiffs must comply with the Federal Rules by serving [defendant] with requests for production."). There is no exemption or exception in the Federal Rules that excuses Plaintiffs from properly articulating their discovery requests in this case.  *See id.* ("[I]t would almost always be more efficient for a defendant to open up document repositories for the opposing side to rifle through.  But such a practice would expand the scope of discovery beyond that

allowed by the Federal Rules.") (internal quotation marks and citation omitted.) Defendants will give thoughtful consideration and timely respond to Plaintiffs' requests pursuant to Rule 34(b)(2). Moreover, once Defendants are aware of the categories of items sought by Plaintiffs, Defendants can and will evaluate whether and to what extent those do overlap with the categories of items sought by other litigants in other actions, and to the extent there is such overlap Defendants can utilize that information in efficiently responding to Plaintiffs' proper requests.

Without having had the benefit of receiving any document requests, Defendants believe that it is premature at this early juncture to commit to a date for substantial completion of document production. Defendants also are not aware of any requirement, under this Court's Local Rules or otherwise, for such a date to be set at this early juncture. Defendants do not, however, oppose the establishment of such a date at an appropriate time. Defendants believe that the most appropriate path forward is for the parties to meet and confer to discuss such a date within 14 days of service of Defendants' responses to Plaintiffs' initial document requests, and to submit a proposal for such a date (or competing proposals, if needed) no later than 30 days from the service of Defendants' responses to Plaintiffs' initial document requests. Defendants fail to comprehend how following such a reasonable, prompt and good-faith meet-and-confer process would lead to the parade of horribles that Plaintiffs attempt to conjure. In the alternative, if the Court is inclined to enter a date for substantial completion of document production at the Rule 16 Conference, Defendants propose that such date be April 30, 2020 (6 months before the close of fact discovery).

Defendants propose that fact discovery be completed by October 30, 2020, or approximately 14 months from the initial discovery date.

Defendants further propose that the deadline for service of all interrogatories, requests for admission, and requests for production be 8 weeks prior to the fact discovery cutoff (September 4, 2020).

**(4) Discovery Limits.** The parties propose that the Court limit the use and numbers of discovery procedures as follows:

**(A) Interrogatories:**

The parties agree that that each side shall serve no more than 30 interrogatories, including all discrete subparts, without leave of the Court. The parties agree they will not serve any contention-style interrogatories prior to 60 days before the end of fact discovery unless ordered by the Court. Interrogatories may be served before the deadline in the preceding sentence (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court.

**(B) Document Requests:**

**<u>Plaintiffs' Position</u>**

Plaintiffs propose that the Federal Rules of Civil Procedure and related authority should govern the limits on document requests.

**<u>Defendants' Position</u>**

Defendants propose that that each side be permitted to serve no more than 100 document requests (counting discrete subparts as separate requests) without leave of the Court.

**(C) Factual Depositions:**

Given the witnesses and third parties already known to be relevant to the claims and defenses in the Action, the parties agree to modify the presumptive number of depositions contained in the Rules.  The parties agree that each side may take fact depositions, including Rule 30(b)(6) depositions, with a cumulative number of deposition hours, with that time allotted between as many witnesses as necessary.  The Parties, however, disagree as to the amount of time that should be allotted for depositions.  The parties agree that the foregoing shall not supplant the application of Rule 30(d)(1).  Any time spent on cross-examination shall count against the examining side's time.  No speaking objections are permitted and, in addition to any other remedies, any such objections shall count against the offending side's time.

**Plaintiffs' Position**

Each side may take fact depositions, including Rule 30(b)(6) depositions, with a cumulative time of 250 hours, with that time allotted between as many witnesses as necessary.

**Defendants' Position**

Each side may take fact depositions, including Rule 30(b)(6) depositions, with a cumulative time of 150 hours, with that time allotted between as many witnesses as necessary.

**(D) Requests for Admission:**

**Plaintiffs' Position:**

Plaintiffs propose that the Federal Rules of Civil Procedure and related authority

should govern the limits on Requests for Admission.

**Defendants' Position**

Defendants propose that each side be permitted to serve no more than 50 Requests for Admission (counting discrete subparts as separate requests) without leave of the Court.

**(E) Rule 35 Medical Examinations:**

The parties do not anticipate serving discovery under Rule 35.

D.    **Expert Discovery.**

> **(1) The parties anticipate that they will require expert witnesses at the time of trial.**

The parties believe that expert testimony may be required in aid of class certification, damages, and other matters. The parties have not yet finalized the subject matter for which expert testimony may be needed or the number of experts, and intend to disclose such experts according to the schedule proposed herein.

> **(2) The parties propose that the Court establish the following plan for expert discovery:**

**Plaintiffs' Proposal:**

**(A)    Initial experts**.

> (i) The identity of any expert who may testify at trial and area of expert testimony must be disclosed on or before August 7, 2020.

> (ii) The initial expert written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served 3 weeks after the close of discovery, or on or before September 11, 2020.

**(B)    Other experts.**

(i) The identity of any additional experts who may testify at trial and area of expert testimony must be disclosed on or before August 28, 2020.

(ii) Any rebuttal expert's written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served 4 weeks after the service of initial expert reports, or on or before October 13, 2020.

**(3) All expert discovery must be completed** approximately 3 weeks after rebuttal reports are served (November 2, 2020).

**Defendants' Proposal**

Defendants note that Plaintiffs' proposal calls for the identification of expert witnesses and areas of expert testimony before the completion of fact discovery. Defendants believe that requiring such disclosure before the completion of fact discovery would be inefficient and unnecessarily require the parties to prematurely make decisions regarding the scope of expert testimony without the benefit of all material information. For example, it is often the case that key depositions, including Rule 30(b)(6) depositions, occur near the end of fact discovery. The parties should not be required to finally decide on the scope of expert testimony without all fact discovery complete.

**(A)    Initial experts**.

(i) The identity of any expert who may testify at trial and area of expert testimony must be disclosed two weeks after the close of fact discovery (November 13, 2020).

18

(ii) The initial expert written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served eight weeks  after the close of fact discovery (December 28, 2020).

**(B)      Other experts.**

(i) The identity of any additional experts who may testify at trial and area of expert testimony must be disclosed four weeks after disclosure of initial experts (December 11, 2020).

(ii) Any rebuttal expert's written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served eight weeks after initial reports are filed (February 22, 2021).

**(3) All expert discovery must be completed** 8 weeks after rebuttal reports are served (April 19, 2021).

**E.      Other Discovery Issues.**

**(1) Protective Order.**

The parties have met and conferred and are in the process of finalizing a proposed Protective Order for the Court's consideration that will, among other things, permit and/or require the parties to utilize and treat materials or discovery produced in this action as confidential.

**(2) Discovery of Electronically Stored Information.**

The parties have met and conferred and are in the process of finalizing an ESI Protocol for consideration by the Court.

**(3) Claims of Privilege or Protection.**

The parties have discussed issues regarding the protection of information by a privilege or the work-product doctrine, as required by Fed. R. Civ. P. 26(f)(3)(D), including whether the parties agree to a procedure to assert these claims after production or have any other agreements under Fed. R. Evid. 502. The parties anticipate addressing issues relating to privilege or protection in the proposed Protective Order they will be submitting to the Court.

### **Plaintiffs' Proposal Regarding the Production of Privilege Logs**

Plaintiffs propose the following schedule for the production of privilege logs:

The deadline for production of privilege log for documents previously produced by the parties in the Related Actions shall be: September 26, 2019.

The deadline for rolling production of additional privilege logs shall be: 28 days following each rolling production of documents.

The deadline for final production of all other privilege logs shall be: January 24, 2020.

Plaintiffs' position is that all privilege logs should be produced before the close of fact discovery to allow the Parties sufficient time to challenge privilege assertions and obtain any documents that may be wrongfully withheld as privileged so that those documents may be of use in discovery, including in connection with depositions of relevant witnesses. This will avoid numerous case management problems by allowing the Parties to review and challenge any privilege assertions and obtain any wrongfully withheld documents before depositions are taken or, if necessary, to re-depose witnesses whose

testimony is relevant to documents that were wrongfully withheld as privileged before the close of fact discovery.

Defendants' position that final privilege logs need not be produced until 30 days after the close of fact discovery is unworkable, as it necessarily forecloses the opportunity to use any wrongfully withheld documents during fact discovery. Further, Defendants' suggestion that Plaintiffs will continue to serve unlimited document requests late in discovery is wrong, and only highlights the need for a deadline for substantial completion of document production (which Defendants oppose). Requiring appropriate deadlines for substantial completion of document production and the production of privilege logs will provide the Parties with sufficient time to raise and resolve any privilege issues before the bulk of deposition discovery and greatly reduce the likelihood that any document requests are issued later in discovery.

### Defendants' Proposal Regarding the Production of Privilege Logs

Defendants propose that the parties make rolling productions of corresponding privilege logs as soon as reasonably practicable after each rolling document production, and contend that the timing of the privilege logs will depend on the scope and volume of each rolling document production. Defendants' position is that final privilege logs will be produced within 30 days of the close of fact discovery (November 30, 2020). Defendants believe that the parties and the Court would have more than ample opportunity to resolve any remaining privilege issues in the months between the close of fact discovery and summary judgment briefing.

Plaintiffs' position that final privilege logs must be served before the close of fact

discovery is impractical (if not impossible) because document production may continue until the close of fact discovery. This is especially true where, as here, Plaintiffs take the position that they may serve unlimited document requests on Defendants and may continue to serve requests for production until 30 days before the close of fact discovery. Notwithstanding their insistence on a deadline for substantial completion of document production – which, as noted above, Defendants do not in principle oppose – Plaintiffs have made no commitment not to continue serving substantial document requests late in the fact discovery period, and indeed have gone to lengths to expressly preserve their ability to do so.

**(4) The parties:**

☐  agree that a party should be required to request an informal conference with the Court before filing a discovery motion;

☐  agree that a party should not be required to request an informal conference with the Court before filing a discovery motion; or

**X**  do not agree whether a party should be required to request an informal conference with the Court before filing a discovery motion.

**F.    Proposed Motion Schedule.**

**<u>Plaintiffs' Proposal</u>**

Plaintiffs propose the following motion schedule.

(1)    Motions seeking to join other parties must be filed and served by August 31, 2020 for the reasons discussed above.

(2)    Motions seeking to amend the pleadings must be filed and served by August 31, 2020.

(3)    Class Certification:

i)    Motion for class certification must be filed and served by November 22, 2019.

ii)    Plaintiffs agree to make class representative witnesses from Oregon available in Portland, Oregon and any Plaintiffs' class certification experts available for deposition on or before December 24, 2019.

iii)    Any opposition to the Class Certification Motion must be filed and served approximately 50 days after the opening motion and 17 days after completion of Defendants' discovery of Plaintiffs relating to class certification, or on or before January 10, 2020.

iv)    Defendants will make any experts relied on to oppose class certification available for deposition on or before January 31, 2020.

v)    Any reply in support of the Class Certification Motion must be filed and served 28 days after Defendants' opposition, by February 7, 2020.

(4)    Summary Judgment:

i)    Any motions for summary judgment must be filed and served 3 weeks after the close of all discovery, or on or before November 20, 2020.

ii)    Oppositions to any motions for summary judgment must be filed and served approximately 5 weeks after opening motions are filed, or on or before December 23, 2020.

iii)    Replies must be filed and served approximately 5 weeks after oppositions are filed, or on or before January 29, 2021.

**<u>Defendants' Proposal</u>**

(1)    Motions seeking to join other parties must be filed and served 45 days after the FRCP 16 conference.

(2)    Motions seeking to amend the pleadings must be filed and served within 30 days after the close of fact discovery (November 30, 2020).

(3)    Class Certification:

i)    Motion for class certification must be filed and served by November 22, 2019.

ii)    Document production related to class certification must be completed 45 days after service of Class Certification Motion (January 6, 2020).

      iii)    Depositions related to class certification must be completed 30 days after completion of class certification document production (February 5, 2020).

      iv)    Any opposition to the Class Certification Motion must be filed and served 15 days after completion of class certification depositions (February 20, 2020).

      v)    Defendants will make any experts relied on to oppose class certification available for deposition on or before March 23, 2020.

      vi)    Any reply in support of the Class Certification Motion must be filed and served 45 days after oppositions are filed (April 6, 2020).

(4)    Summary Judgment:

      i)    Any motions for summary judgment must be filed and served 60 days after expert discovery cutoff (June 14, 2021).

      ii)    Oppositions to any motions for summary judgment must be filed and served 60 days after motions are filed (August 13, 2021).

      iii)    Replies must be filed and served 45 days after opposition papers are filed (September 27, 2021).

## G.    Trial-Ready Date.

### Plaintiffs' Position

(1) Plaintiffs propose that the case will be ready for trial on or after March 1, 2021.

(2) Plaintiffs propose that the final pretrial conference be held on or before March 1, 2021.

### Defendants' Position

(1) Defendants propose that the  case will be ready for trial 6 weeks after summary judgment is fully briefed (November 8, 2021).

(2) Defendants propose that the final pretrial conference be held on or before November 8, 2021.

In sum, the Parties propose different case schedules, with Plaintiffs proposing a schedule from initial discovery to the pretrial conference of approximately 18 months and

Defendants proposing a schedule from initial discovery to the pretrial conference of approximately 26 months as follows:

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Initial Date to Serve Discovery | Immediately as per FRCP | September 3, 2019 |
| Initial Disclosures | September 17, 2019 | September 17, 2019 |
| Begin Rolling Productions | September 26, 2019 (including documents produced in Related Actions) | November 2019 (assuming Plaintiffs serve initial document requests by end of August 2019) |
| Deadline for Production of Privilege Logs for Documents in Related Actions | September 26, 2019 | To be determined if and to the extent such documents are responsive to Plaintiffs' document requests |
| Substantial Completion | December 13, 2019 | To be determined within 30 days of service of Defendants' response to Plaintiffs' initial document requests  (or, in the alternative, April 30, 2020) |
| Class Certification Opening Brief | November 22, 2019 | November 22, 2019 |
| Defendants' Depositions Related to Class Certification Complete | December 24, 2019 | February 5, 2020 |
| Class Certification Opposition | January 10, 2020 | February 20, 2020 |
| Plaintiffs' Depositions Related to Class Certification Complete | January 31, 2020 | March 23, 2020 |
| Class Certification Reply | February 7, 2020 | April 6, 2020 |
| Deadline for Production of All Privilege Logs | January 24, 2020 | November 30, 2020 |
| Identity of Experts Disclosed | August 7, 2020 | November 13, 2020 |
| Additional Experts Disclosed | August 28, 2020 | December 11, 2020 |

| Fact Discovery Cutoff | August 21, 2020 | October 30, 2020 |
|---|---|---|
| **Deadline to add parties** | August 31, 2020 | 45 days after Rule 16 conference |
| **Deadline for Amendment of the Pleadings** | August 31, 2020 | November 30, 2020 |
| **Expert Reports** | September 11, 2020 | December 28, 2020 |
| **Expert Rebuttal Reports** | October 13, 2020 | February 22, 2021 |
| **Completion of Expert Depositions/End of All Discovery** | November 2, 2020 | April 19, 2021 |
| **Summary Judgment Motion** | November 20, 2020 | June 14, 2021 |
| **Summary Judgment Opposition** | December 23, 2020 | August 13, 2021 |
| **Summary Judgment Reply** | January 29, 2021 | September 27, 2021 |
| **Pretrial Conference** | March 1, 2021 | November 8, 2021 |

**H.    Insurance Carriers/Indemnitors.**

Plaintiffs represent that they have no relevant insurance agreements to disclose.

Defendants disclose the insurance agreements in the table below.

**Directors' and Officers' Liability 2016-2017**
**Subject to a $10,000,000 retention**

| Insurance Carrier | Layer | Participation |
|---|---|---|
| NATIONAL UNION FIRE INS CO OF PITTSBURGH, PA | $15,000,000 Primary | $15,000,000 |
| ACE AMERICAN INSURANCE CO | $10,000,000 X of Underlying | $10,000,000 |
| NORTH AMERICAN SPECIALTY INS | $10,000,000 X $25,000,000 | $10,000,000 |
| ARCH INSURANCE COMPANY | $15,000,000 X $35,000,000 | $15,000,000 |
| ASPEN AMERICAN INSURANCE COMPANY | $15,000,000 X $50,000,000 | $15,000,000 |
| MARKEL AMERICAN INSURANCE CO | $15,000,000 X $65,000,000 | $15,000,000 |
| STARR INDEMNITY & LIABILITY COMPANY | $10,000,000 X $80,000,000 | $10,000,000 |
| FREEDOM SPECIALTY | $10,000,000 X $90,000,000 | $10,000,000 |
| BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY | $15,000,000 X $100,000,000 | $15,000,000 |
| ILLINOIS NATIONAL INS CO | $15,000,000 X $115,000,000 | $15,000,000 |
| EVEREST NATIONAL INSURANCE CO | $15,000,000 X $130,000,000 | $15,000,000 |
| RLI INSURANCE CO | $15,000,000 X $145,000,000 | $15,000,000 |
| ALLIANZ GLOBAL RISK | $15,000,000 X $160,000,000 | $15,000,000 |
| ACE AMERICAN INSURANCE CO – Lead Side A | $10,000,000 X $175,000,000 | $10,000,000 |
| LIBERTY INSURANCE UNDR'S INC – Side A | $10,000,000 X $185,000,000 | $10,000,000 |
| XL SPECIALTY INSURANCE COMPANY – Side A | $10,000,000 X $195,000,000 | $10,000,000 |
| BEAZLEY INSURANCE COMPANY – Side A | $10,000,000 X $205,000,000 | $10,000,000 |
| CONTINENTAL CASUALTY CO – Side A | $10,000,000 X $215,000,000 | $10,000,000 |
| AXIS INSURANCE COMPANY – Side A | $10,000,000 X $225,000,000 | $10,000,000 |
| ENDURANCE AMERICAN INSURANCE COMPANY – Side A | $15,000,000 X $235,000,000 | $15,000,000 |

## I.      Settlement.

To date, no settlement discussions have occurred. The parties believe such discussions are premature at this early stage of litigation, but will confer on the appropriateness and/or potential benefits of settlement and ADR as the case progresses.

## J.      Trial by Magistrate Judge.

The parties have not agreed to consent to jurisdiction by the Magistrate Judge under 28 U.S.C. § 636(c).

Dated:  August 28, 2019

Respectfully submitted,

/s/ Patrick E. Gibbs
Patrick E. Gibbs, CA Bar No. 183174
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5535
Facsimile: (650) 618-0387
p.gibbs@cooley.com

Sarah M. Lightdale, NYS Bar No.
4395661
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6374
Facsimile: (212) 479-6275
slightdale@cooley.com

William A. McNab, MN Bar No.
320924
**WINTHROP & WEINSTINE, P.A.**
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
wmcnab@winthrop.com

/s/ Michael D. Blatchley
John Browne, NYS Bar No. 3922747
Michael D. Blatchley, NYS Bar No.
4747424
Michael M. Mathai, NYS Bar No.
5166319
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
**STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com

*Counsel for Defendants*

*Lead Counsel for Plaintiffs and the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Plaintiffs and the
Class*