# Exhibit 4

CASE 0:18-cv-00296-MJD-JFD   Doc. 242-1   Filed 03/04/20   Page 2 of 8
CASE 0:17-md-02795-MJD-KMM   Document 590-1   Filed 03/04/20   Page 2 of 8

1

```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA

--------------------------------------------------------------
                                    )
IN RE:  CENTURYLINK SALES           ) File No. 17-md-2795
PRACTICES AND SECURITIES            )          (MJD/KMM)
LITIGATION                          )
                                    )
                                    )
This relates to:                    ) Courtroom 8E
18-cv-296(MJD/KMM)                  ) Minneapolis, Minnesota
                                    ) Tuesday, October 1, 2019
                                    )
--------------------------------------------------------------


            BEFORE THE HONORABLE KATE M. MENENDEZ
        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
```

**PRETRIAL CONFERENCE**

```
TRANSCRIBER:              RENEE A. ROGGE, RMR-CRR
                          1005 United States Courthouse
                          300 South Fourth Street
                          Minneapolis, Minnesota 55415
                          (612)664-5107
```

Proceedings recorded by digital recording;
Transcript produced by computer.

1  in order to defend the case I can't have a team of lawyers
2  litigating a securities case that's turned over
3  300,000 pages of documents to plaintiffs' counsel --
4           THE COURT:  Absolutely.  That's true.
5           MR. GIBBS:  -- that my team hasn't looked at.
6           THE COURT:  That's true.
7           MR. GIBBS:  So it's not pre-production.  It's just
8  that it adds it to the body of documents that my team has to
9  review and absorb for purposes of defending this case, which
10 we don't have to do just because it's been produced in the
11 Minnesota AG case.
12          To the point about the substantive overlap, with
13 all due respect, plaintiffs' counsel has never once
14 articulated any reason why every single document produced in
15 the Minnesota AG case is even remotely relevant or within
16 the scope of discovery in this case.
17          THE COURT:  Give me an example of a set that
18 isn't.  His point is he hasn't seen that discovery.  I've
19 been trying to imagine the sorts of discovery in this data
20 set that -- it was easy for me to imagine in the consumer
21 litigation, things that wouldn't be relevant that would make
22 the touch of a button arguably over-inclusive.  Help me
23 understand what that might be here.
24          MR. GIBBS:  I can come up with a number of
25 examples.  First of all, the plaintiffs here are claiming

| | |
|---|---|
| 1 | that CenturyLink engaged in systematic overbilling of |
| 2 | customers in a way that materially inflated its financial |
| 3 | results.  The Minnesota AG is not limited to looking at |
| 4 | complaints about billing practices that necessarily inflated |
| 5 | the company's revenues at all, much less did so on such a |
| 6 | scale that they materially inflated the company's reported |
| 7 | revenue.  So the Minnesota AG may be looking at all sorts of |
| 8 | individual customer billing complaints, some of which will |
| 9 | have nothing to do with overbilling, but the Minnesota AG |
| 10 | might still think are relevant to whether there's been some |
| 11 | kind of consumer fraud on an individual Minnesota consumer. |
| 12 | THE COURT:  Well, wouldn't it be true that if |
| 13 | there is an allegation that, hypothetically speaking, |
| 14 | shenanigans were taking place with respect to individual |
| 15 | consumers that didn't necessarily put more money in the |
| 16 | pocket of the defendants, but otherwise, you know, kept in |
| 17 | abeyance consumer dissatisfaction or avoided having |
| 18 | customers go somewhere else, that those serve the same |
| 19 | purpose of proving up that later statements made about the |
| 20 | financial robustness of the defendants were false? |
| 21 | MR. GIBBS:  I don't think that's an allegation |
| 22 | that's been made here. |
| 23 | THE COURT:  Okay. |
| 24 | MR. GIBBS:  That's not my understanding of the |
| 25 | complaint that Judge Davis reviewed for purposes of denying |

1  short order that would be responsive to those types of
2  document requests. But the fact that they have taken some
3  allegations made by the Minnesota AG and dropped them into
4  the complaint here doesn't make every scrap of discovery
5  produced in the Minnesota AG case suddenly relevant to this
6  case.
7       Counsel referenced there are 3.5 million customer
8  allegations. It's not true. It is based on a document that
9  is -- whose contents and meaning are hotly disputed in the
10 Minnesota AG case; but if they want to see that document, we
11 can produce that document. That doesn't require us to
12 produce wholesale 300,000-plus documents that have all been
13 produced to the Minnesota AG. It's a pretty simple way to
14 get at the things that are actually relevant to this case,
15 and it doesn't require wholesale reproduction of something
16 from another case.
17      I understand the court's concern about timing.
18 And as I said, as long as we're talking about a reasonable
19 scope, we can set deadlines. I don't have a problem with
20 deadlines, but what I have a problem with is a scope that
21 appears to me to be virtually unlimited.
22      THE COURT: So 300,000 documents in a case of this
23 size isn't really virtually unlimited. I mean --
24      MR. GIBBS: I'm talking about the requests, Your
25 Honor. I agree 300,000 by itself. But the point is -- the

```
 1    court's first question I think is very important.
 2              THE COURT:  How is this functionally going to
 3    narrow future requests.  It's just going to give you a giant
 4    pool from which to draw in the beginning.
 5              MR. GIBBS:  Correct.  I -- you know, we've all
 6    been around the block.  I don't think that them getting the
 7    300-plus-thousand documents is going to take a single
 8    custodian off their custodian list.  I don't think it's
 9    going to take a single search term off their list of
10    required search terms.  I don't think it's going to cause
11    them to withdraw any of the one-hundred-plus requests with
12    subparts that they've already made.  It's just going to be
13    an avenue to more discovery.  And I understand why they want
14    it.  I don't blame them, but it imposes a significant burden
15    on us.  And I just don't think that's the most efficient way
16    to get at whatever documents are actually relevant to the
17    case they're trying to prove here.
18              THE COURT:  How come you couldn't achieve the
19    economy of scale by bringing a team member from the other
20    litigation who's familiar with the 300,000 documents?
21              MR. GIBBS:  A few reasons.  First of all, there's
22    simple bandwidth concerns.  The Minnesota AG case is
23    barrelling towards, I think, a February trial date.  Believe
24    me, the first thing I asked for when we got the ruling
25    denying our motion to dismiss was how many of those people
```

1   with the parties submitting additional argument, if you
2   will --
3            THE COURT: Okay. Got it.
4            MR. MCNAB: -- in the form of letter briefs.
5            THE COURT: But you thought it was appropriate for
6   me to receive those two exhibits in that form. You just
7   didn't like the additional advocacy.
8            MR. MCNAB: The editorial, yes, Your Honor.
9            THE COURT: Okay. Thank you. You can be seated.
10           MR. MCNAB: Thank you, Your Honor.
11           THE COURT: So I think that I can address -- why
12  don't we just go through quickly what I'm going to do.
13           I am not going to require production of the
14  attorney general production. I thought a lot about this.
15  I've done a lot of review of both cases. I think that I
16  have the authority to do so. I think that it would probably
17  make sense on the part of the defendants, if they chose to
18  do so, but I don't believe that it is the most efficient way
19  to handle discovery in this case. I don't think it's
20  actually going to promote any efficiencies. I don't think
21  it's going to reduce the number of document requests, the
22  number of discovery disputes, and, frankly, I think it could
23  actually create some delay.
24           If the defendants thought that the best way to
25  handle this was to turn it all over and say ask us if you

# Exhibits 5-8
# Filed Under Seal