# Exhibit J

```
 1                UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MINNESOTA

 3

 4    ***********************************

 5    IN RE: CENTURYLINK SALES PRACTICES

 6    AND SECURITIES LITIGATION

 7                          MDL No. 17-2795 (MJD/KMM)

 8    This Document Relates to:

 9    Civil File No. 18-296 (MJD/KMM)

10    ***********************************

11

12        CONTINUED DEPOSITION OF 30(B)(6) DEPOSITION OF

13          THE STATE OF OREGON, BRIAN de HAAN AS

14                      REPRESENTATIVE

15                  THURSDAY, MARCH 5, 2020

16                       VOLUME II

17

18      BE IT REMEMBERED THAT, the continued 30(B)(6)

19    deposition of THE STATE OF OREGON, BRIAN de HAAN AS

20    REPRESENTATIVE was reported by Mary C. Soldati,

21    Registered Professional Reporter and Certified Shorthand

22    Reporter, on Thursday, March 5, 2020, commencing at the

23    hour of 4:54 p.m., the proceedings being reported at the

24    Offices of Stoll Berne, PC, 209 SW Oak, Suite 500,

25    Portland, Oregon  97204.
```

                                              Page 232

1    case?

2        A.  I am counsel for the Oregon Department of

3    Justice, which is the chief legal advisor to all state

4    agencies within Oregon, including the plaintiff in this

5    case.                                                      16:57:42

6        Q.  So you are counsel to the plaintiff in this case?

7        A.  I am.

8        Q.  And I presume, then, that you understand that the

9    Lead Plaintiff in this litigation is -- and this is a

10   mouthful -- the State of Oregon, by and through the        16:57:54

11   Oregon State Treasurer, the Oregon Public Employees

12   Retirement Board on behalf of the Oregon Public

13   Employees Retirement Fund?

14       A.  Yes.

15       Q.  Do you have any understanding of why the name of   16:58:07

16   the plaintiff is styled in this way?

17       A.  Yes.

18       Q.  Can you explain to me what your understanding is?

19       A.  Plaintiff is the Oregon Public Employee

20   Retirement Fund because it owned the assets that are in    16:58:19

21   question in the litigation and it suffered the injury.

22           The Oregon Public Employee Retirement Board and

23   the Treasurer are executives of the Oregon Public

24   Employees Retirement Fund.  And the Oregon Public

25   Employee Retirement Fund is a state entity and is,         16:58:38

Page 239

1    therefore, entitled to sue in the name of the State of

2    Oregon.

3            As such, it is the State of Oregon by and through

4    the two executives of the plaintiff on behalf of the

5    plaintiff, which is the Oregon Public Employees          16:58:50

6    Retirement Fund.

7      Q.   And Oregon's position is that the State of Oregon

8    is not the real party in interest to this litigation,

9    it's actually the Oregon Public Employees Retirement

10   Fund?                                                    16:59:04

11           MR. MUELLER:   Objection to the form of the

12   question.

13           THE WITNESS:   The plaintiff is the Oregon

14   Public Employees Retirement Fund, which is an organ of

15   the state.   It, therefore, sues in the name of the      16:59:11

16   state.   That does not mean that every agency of the

17   State of Oregon, of which there are scores, are also

18   plaintiffs in this case.

19   BY MR. MARTIN:

20     Q.   So your position in this litigation is that to    16:59:21

21   the extent funds, other than OPERF, invested in

22   CenturyLink Securities during the class period, that

23   they are absent class members -- they are class members

24   potentially; is that correct?

25     A.   I'm not sure I've taken that position, but I      16:59:41

1    believe that would be the case, yes.

2        Q.   You believe that to the extent that the State

3    Accident Insurance Fund invested in CenturyLink

4    Securities during the class period, that the State

5    Accident Insurance Fund would be a class member?          17:00:01

6               MR. MUELLER:   Objection.

7    BY MR. MARTIN:

8        Q.   Under the definition -- under the definition

9    proposed in lead plaintiff's motion for class

10   certification?                                             17:00:11

11              MR. MUELLER:   Objection to the extent it

12   calls for legal conclusion.

13              THE WITNESS:   I'm not familiar with the

14   fund, but to the extent that the purchases fit the class

15   definition proposed, then yes, they would be class        17:00:19

16   members.

17   BY MR. MARTIN:

18       Q.   And are the seven or so funds with assets managed

19   by the Oregon State Treasury legal entities in their own

20   right?                                                     17:00:36

21       A.   I don't know what seven funds you're referring

22   to.

23       Q.   Earlier today the State of Oregon -- well, let me

24   just say this.   Are you -- or ask of this, are you aware

25   that the Investment Management Division of the State of    17:00:52

Page 241

```
1    Oregon Treasury invests -- manages the assets of

2    multiple funds?

3        A.  I'm aware that they manage the assets of the

4    Oregon Public Employees Retirement Fund, and then I have

5    some awareness that they also -- they're also involved     17:01:06

6    in management of the assets of something called "The

7    Common School Fund."  I'm not aware of any other funds.

8        Q.  So you don't know whether those two funds are the

9    only funds that Oregon State Treasury manages the assets

10   of or if it manages the assets of ten or dozens of other   17:01:24

11   entities?

12            MR. MUELLER:  I'm just going to object that

13   that's beyond the scope of the topics Mr. de Haan been

14   designated on.  He can certainly answer if he has

15   knowledge.                                                  17:01:35

16            THE WITNESS:  That's correct.

17   BY MR. MARTIN:

18       Q.  And the fund that you're familiar with, other

19   than the Oregon Public Employees Retirement Fund, is

20   what fund?                                                  17:01:46

21       A.  I have some awareness of something called "The

22   Common School Fund."

23       Q.  And is that a legal entity?

24       A.  I believe it is.

25       Q.  It can sue and it can be sued?                      17:01:54
```

1          MR. MUELLER:  Objection to the extent it

2   calls for a legal conclusion.

3          THE WITNESS:  Yeah.  This is not a topic

4   that I was prepared to speak on today.  I have very

5   limited knowledge as to that fund.                    17:02:07

6          I do know, however, that it was included as

7   a plaintiff in the past in securities litigation also

8   brought on behalf of OPERF.

9   BY MR. MARTIN:

10     Q.  Are you aware of any instance in which OPERF has    17:02:22

11  sued or been sued in its own name and not in the name of

12  the State of Oregon?

13         MR. MUELLER:  Objection.  Beyond the scope

14  of the topics designated.  You can answer if you know.

15         THE WITNESS:  No, I don't know.               17:02:41

16  BY MR. MARTIN:

17     Q.  Is it possible for the Oregon Public Employees

18  Retirement Fund to sue or be sued in its own name and

19  not in the name of the State of Oregon?

20         MR. MUELLER:  Same objection.                 17:03:04

21         THE WITNESS:  If it did, I don't think it

22  would be styled correctly.  I do not know whether or not

23  it has in the past.  But when it sues and is sued, it is

24  a sovereign state agency and, therefore, should use the

25  name of the state.                                   17:03:27

                                              Page 243

1    BY MR. MARTIN:

2        Q.    What is that understanding based on?

3        A.    The naming convention or my understanding that

4    it's a sovereign state entity.

5        Q.    Your understanding of naming convention?          17:03:38

6        A.    Simply that, convention.

7        Q.    Simply that it is convention?

8        A.    Yes.

9        Q.    Okay.    Do you understand that you're testifying

10   today on behalf of the State of Oregon and not in your    17:03:58

11   individual capacity?

12       A.    I do.

13       Q.    And do you have an understanding of the

14   distinction between testifying on behalf of the State of

15   Oregon and testifying in your individual capacity?         17:04:10

16            MR. MUELLER:    Same objection to the

17   definition of the State of Oregon.    You can answer.

18            THE WITNESS:    I do.

19   BY MR. MARTIN:

20       Q.    And what is that distinction as you understand    17:04:18

21   it?

22       A.    I've been prepared today to testify as a

23   representative under Federal Rule of Civil Procedure

24   30(b)(6) on behalf of Oregon Public Employees Retirement

25   Fund and on the topics designated in the deposition        17:04:31

Page 244

1    notice.

2        Q.  Do you understand that with respect to the topics

3    you've been designated -- that Oregon has -- let me

4    start over.

5            Do you understand that with respect to the topics        17:04:49

6    about which the State of Oregon has designated you to

7    testify, you're required to testify about information

8    that is known or reasonably available to the State of

9    Oregon?

10       A.  No, I wouldn't agree with that.                          17:05:02

11       Q.  Why would you not agree with that?

12       A.  Because the plaintiff is defined in this case is

13   the Oregon Public Employees Retirement Fund.

14           I'm, therefore, not responsible for all knowledge

15   within the possession of the larger State of Oregon,           17:05:14

16   just the fund.

17       Q.  So your -- your understanding is that your

18   obligation is to testify about information known or

19   reasonably available to the Oregon Public Employees

20   Retirement Fund?                                                17:05:28

21       A.  That's correct.

22       Q.  And not the State of Oregon Treasury?

23       A.  The Treasurer and the Oregon State Employees

24   Retirement Board as are named in the complaint.

25       Q.  So you're prepared to testify today on behalf of        17:05:37

Page 245

1    the Oregon State Treasurer, the Oregon State Treasury

2    and the Oregon Public Employees Retirement Board; is

3    that correct?

4        A.   No, just the first and the third.

5        Q.   Just the State of Oregon Treasury and the Oregon        17:05:56

6    Public Employees Retirement Board?

7        A.   Yes.

8        Q.   And you're -- you understand as to them, as to

9    those entities, you're required to testify about

10   information known or reasonably available to them?        17:06:09

11       A.   On the topics designated.

12       Q.   And with that understanding, are you willing to

13   be able to testify -- to testify?

14       A.   Yes.

15       Q.   Do you understand that the testimony you give        17:06:18

16   today is under oath and that you're required to testify

17   truthfully and completely?

18       A.   I do.

19       Q.   Is there any reason why you can't provide

20   truthful and complete testimony today?        17:06:28

21       A.   No.

22       Q.   Have you ever testified or been deposed in any

23   capacity?

24       A.   Never.

25       Q.   You've never been deposed before?        17:06:34

                                                        Page 246

1      Q.  And who participated in the meeting you had

2   yesterday in preparation for today's deposition?

3      A.  Michael Blatchley, Keith Dubanevich, Keil Mueller

4   and counsel for Oregon State Treasury, Deena Bothello.

5      Q.  And when you spoke to counsel in preparation for     17:14:14

6   today's deposition before yesterday, how many times did

7   you speak to counsel?

8      A.  Specifically discussing this deposition?

9      Q.  Yes.

10     A.  I believe twice.                                      17:14:29

11     Q.  And do you remember when?

12     A.  One was -- once was before we received the

13  notice.  I don't remember the exact date.  But it was to

14  prepare me to be designated on certain topics.

15         Next, was after we received the notice.  I kind       17:14:45

16  of don't remember the exact date.  But it was about the

17  substantive topics themselves and proposed testimony.

18     Q.  Who participated in those calls?

19     A.  Mike Blatchley and Keil Mueller.

20     Q.  Anyone else?                                          17:15:02

21     A.  I don't believe so.

22     Q.  Apart from the Stoll Berne attorneys and the

23  Bernstein Litowitz attorneys that you've referenced

24  today, have you had any conversations about this case

25  with any other lawyers?                                      17:15:16

Page 253

```
 1                    MR. MUELLER:   Objection to form of the

 2     question.

 3                    THE WITNESS:  Yes.   With attorneys at the

 4     Oregon Department of Justice, with other attorneys at

 5     Treasury and indirectly with attorneys at your firm and      17:15:34

 6     with attorneys who served as proposed mediators in this

 7     case.

 8     BY MR. MARTIN:

 9        Q.  Let's take those in turn.

10            Who at Oregon DOJ, have you spoken with about          17:15:58

11     this case?

12        A.  Lisa Udland, who I mentioned is chief counsel of

13     Civil Enforcement.  Tim Nord, who is my direct report.

14     Fred Boss, who is the deputy attorney general.  Tim

15     Smith, who is attorney in Civil Recovery, who supervised     17:16:13

16     settlement of Oregon's consumer actions.

17        Q.  You spoke with Tim Smith when?

18        A.  Roughly, contemporaneously, maybe a couple days

19     before the announcement of Oregon's consumer settlement,

20     and then also afterwards.                                    17:16:44

21        Q.  What was the purpose of your conversation with

22     Tim Smith?

23                    MR. MUELLER:   I'm going to object that

24     that's beyond the scope of the topics for which

25     Mr. de Haan has been designated.  He's free to answer        17:17:01
```

1    based on his personal knowledge.

2              THE WITNESS:    They were legal matters in

3    connection with Tim and my representation of the state,

4    so I don't believe I can answer.

5    BY MR. MARTIN:                                    17:17:13

6       Q.   They related to yours and Tim's representation of

7    the state?

8       A.   Yes.

9       Q.   And when you spoke to Tim, you said

10   contemporaneously with the consumer settlement; is that    17:17:37

11   correct?

12      A.   I believe I spoke to him shortly before the

13   settlement was consummated and then again afterwards,

14   shortly afterwards.

15      Q.   Approximately how long before the settlement was    17:17:47

16   consummated did you have a conversation with Tim?

17      A.   Probably between three and five days.

18      Q.   Have you ever had any conversations about this

19   litigation with Andrew Shull?

20      A.   Yes.                                       17:18:06

21      Q.   When did you have conversations about this case

22   with Andrew Shull?

23      A.   Several weeks after we moved for Lead Plaintiff.

24      Q.   And what was the purpose of those conversations?

25              MR. MUELLER:    Objection.   It's beyond the     17:18:31

1    scope of the topics.  He can answer in his personal

2    capacity.

3                    THE WITNESS:  To confirm that I was being

4    screened from the consumer investigation.

5    BY MR. MARTIN:                                    17:18:40

6        Q.  When you say "screened from the consumer

7    investigation," what do you mean?

8        A.  I mean that a screen was put in place within DOJ

9    to prevent transmission of information to me that

10   related to the state's consumer side investigation of    17:19:00

11   CenturyLink.

12       Q.  That was -- that conversation was several weeks

13   after the State of Oregon had moved to be Lead

14   Plaintiff, correct?

15                   MR. MUELLER:  I continue to object to this   17:19:25

16   line of questions in his personal capacity, but

17   Mr. de Haan has not been designated -- the topics --

18   this question doesn't fall within those topics.

19                   THE WITNESS:  And because it doesn't, I have

20   not refreshed my recollection, but it was several weeks   17:19:40

21   after, yes.

22   BY MR. MARTIN:

23       Q.  During the course of those conversations, did

24   you, in fact, confirm that there was an ethical wall

25   between you and the work that you were doing and the      17:19:53

Page 256

1    were -- are the two listed here?

2        A.  No.  My testimony is that I prepared to

3    familiarize myself with Lead Plaintiff-related

4    litigation going five years back from today, which would

5    take us to 2015.  I'm speculating based.            17:40:55

6        On my personal knowledge, I'm familiar with the

7    portfolio that there were no applications in 2013 and

8    2014.

9        Q.  Okay.  I believe you have testified earlier that

10   you're counsel to the Lead Plaintiff in this case; is    17:41:11

11   that correct?

12       A.  Yes.

13       Q.  And is anyone else working for the Oregon

14   Department of Justice serving as counsel to the Lead

15   Plaintiff in connection with this litigation?        17:41:21

16       A.  I am the line attorney primarily responsible for

17   overseeing the litigation, but I report to -- with

18   respect to decisions in the litigation to Lisa Udland,

19   who is chief counsel for Civil Enforcement.

20       Q.  Okay.  And I believe you testified earlier that    17:41:41

21   you have been overseeing the work of outside counsel in

22   this case; is that correct?

23       A.  That's correct.

24       Q.  And what steps have you taken to oversee the work

25   of outside counsel in this case?                    17:41:55

Page 271

```
1          A.  I discuss the case regularly with outside

2     counsel.  In terms of talking about progress in the

3     case, whether it be with motions or discovery and

4     talking about overall --

5               MR. MUELLER:  Just going to caution the      17:42:10

6     witness not to get into the substance.  He can talk

7     about general topics.

8               THE WITNESS:  -- and with general strategy,

9     we speak by phone regularly, once every couple of weeks.

10              Additionally, I request counsel appear in     17:42:20

11    person to brief me and my superiors and representatives

12    of Treasury on semi-regular basis.

13              In addition, I review all pleadings and all

14    other filings, including briefs in the case, to the

15    extent that briefs or filings are made by our counsel.   17:42:36

16              I review early drafts.  I comment on the

17    drafts.  I discuss my proposed revisions with counsel.

18              I read finals and then I report on them to

19    my superiors within DOJ and, additionally, to lawyers at

20    Treasury.                                                17:42:54

21         Q.  Have you assisted in discovery in connection with

22    this case?

23         A.  I don't believe I've actually procured any

24    discovery myself, but I've participated in numerous

25    calls and had numerous conversations with counsel that   17:43:07
```

Page 272

1    involve scope of discovery and methods for obtaining and

2    producing responsive documents.

3        Q.  And who else from the State of Oregon has

4    assisted in any way with discovery?

5        A.  Counsel at Treasury.                          17:43:26

6        Q.  And who is that?

7        A.  Lisa Pettinati and Deena Bothello.  Also

8    non-attorney staff at Treasury has been involved,

9    although I'm not perfectly clear on what extent.

10       Q.  And did Oregon -- so are you generally familiar    17:43:43

11   with the work that the people you just mentioned have

12   done in connection with discovery in this case?

13       A.  I'm generally familiar.

14       Q.  And do you know whether Oregon took steps to

15   preserve potentially relevant documents and information    17:43:57

16   in this case?

17       A.  Yes.

18       Q.  And how do you know that -- or sorry, you said

19   you do know whether Oregon took steps to preserve

20   potentially relevant documents and information in this    17:44:25

21   case?

22       A.  Yes.

23       Q.  And what is the answer to that?

24       A.  The answer is yes.

25       Q.  And which employee of the State of Oregon has    17:44:32

Page 273

```
 1    half, two weeks before the application was filed.

 2    BY MR. MARTIN:

 3        Q.  So your testimony is that a week and a half or

 4    two weeks before the application to become Lead

 5    Plaintiff was filed, you became aware that there was an      17:47:41

 6    opportunity for the State of Oregon to apply to become

 7    Lead Plaintiff in this case?

 8        A.  That's an approximate timeline.

 9        Q.  Okay.  And assuming you start from that point, in

10    terms of costs and expenses, can you ballpark Oregon's       17:47:54

11    costs and expenses incurred to date in connection with

12    this case?

13        A.  No.

14        Q.  Has the State of Oregon prepared a projection of

15    the costs and expenses related to this case?                 17:48:08

16        A.  No.

17        Q.  Okay.

18            MR. MARTIN:  Let's take a five-minutes

19    break.

20            THE VIDEOGRAPHER:  Off the record at 5:48.           17:48:28

21            (Break taken.)

22            THE VIDEOGRAPHER:  We are back on the record

23    at 5:57.

24    BY MR. MARTIN:

25        Q.  Did the State of Oregon or its agents, including     17:57:44
```

                                                    Page 276

1    it's counsel, conduct a pre-complaint investigation of

2    any kind?

3              MR. MUELLER:  Object to the form of the

4    question.

5              THE WITNESS:  Counsel conducted a          17:57:55

6    pre-complaint investigation.

7    BY MR. MARTIN:

8        Q.  And when you say "counsel," you're referring to

9    Stoll Berne and Bernstein Litowitz?

10       A.  I am.                                          17:58:05

11       Q.  Was any other lawyer involved -- lawyers apart

12   from lawyers of Stoll Berne and Bernstein Litowitz

13   involved in any way in the pre-complaint investigation?

14       A.  I was updated but not otherwise involved, and I'm

15   not aware of any other involvement of any other lawyers.  17:58:26

16       Q.  When did the pre-complaint investigation begin?

17             MR. MUELLER:  Object to the form of the

18   question.

19             THE WITNESS:  Prior to application by Oregon

20   for Lead Plaintiff.                                    17:58:41

21   BY MR. MARTIN:

22       Q.  And do you recall when that application was

23   submitted?

24       A.  I don't remember the exact date, but I believe it

25   was in August in 2017.                                 17:59:00

Page 277

1    Q.  So it began prior to the application for the Lead

2  Plaintiff, correct?

3    A.  It might depend on how you define "investigation"

4  but if investigation includes assessment of the

5  reliability of factual allegations, then yes.          17:59:27

6    Q.  And when did it end?

7    A.  I don't believe it has ended.

8    Q.  So there your -- your counsel -- the State of

9  Oregon or it's counsel was conducting a pre-complaint

10 investigation from before the Lead Plaintiff application  17:59:54

11 all the way through the filing of the complaint?

12          MR. MUELLER:  Object to the form of the

13 question.

14          THE WITNESS:  We're okay with disclosing my

15 knowledge of counsel's activities.                     18:00:08

16          MR. MUELLER:  You can disclose the length of

17 any investigation that you're aware of.  You cannot

18 disclose the substance of communications with counsel or

19 the details of the investigation to the extent that you

20 learned those through counsel.                         18:00:29

21          THE WITNESS:  The answer is yes, that's

22 consistent with my understanding.

23 BY MR. MARTIN:

24    Q.  And did the pre-complaint investigation involve

25 communications between the State of Oregon or its agents  18:00:41

```
 1   and any third parties?

 2              MR. MUELLER:  Object to the form of the

 3   question.  And, again, you can -- anything you learned

 4   specifically from counsel about the scope and about the

 5   substance of the investigation is privileged.          18:00:59

 6              THE WITNESS:  It's my understanding that the

 7   pre-complaint investigation in this litigation involved

 8   communications between counsel and third parties as is

 9   described in the Complaint.

10   BY MR. MARTIN:                                          18:01:27

11      Q.  And did Oregon rely on the information it learned

12   from those communications in drafting the Complaint?

13              MR. MUELLER:  Object to the form of the

14   question.

15              THE WITNESS:  Could you be more specific as   18:01:43

16   to who you mean by "Oregon" in this sense?  Are you

17   asking if I understand that counsel relied --

18   BY MR. MARTIN:

19      Q.  I mean the plaintiff -- the plaintiff in this

20   case and its counsel -- well, excuse me.               18:01:57

21          I mean the plaintiff in this case and any of its

22   agents, including counsel.

23              MR. MUELLER:  Object to the form.  You can

24   answer.

25              THE WITNESS:  Plaintiff in this case, Oregon  18:02:14
```

Page 279

```
 1    PERF, delegated responsibility for conducting a

 2    pre-complaint investigation to outside counsel, BLGP and

 3    Stoll Berne, who interviewed third parties including, in

 4    my understanding, roughly 20 former employees of

 5    CenturyLink, and certain information learned from those    18:02:35

 6    employees supports allegations made in the Complaint.

 7    BY MR. MARTIN:

 8        Q.  You just referenced communications with 20 former

 9    employees of CenturyLink.

10         Are you aware of any other communications with      18:02:54

11    third parties as part of the pre-complaint

12    investigation?

13              MR. MUELLER:  I'm going to object again.

14    It's privileged.  It's attorney-client privilege to the

15    extent that you learned information from counsel.        18:03:05

16              If it's been publicly disclosed, you can

17    testify about it.  Beyond that, I'm going to instruct

18    you not to divulge attorney-client communications.

19    BY MR. MARTIN:

20        Q.  I'm just asking if there were any communications  18:03:20

21    apart from the communications with the 20 former

22    employees that you referenced, not the identities of the

23    people that you communicated with or the substance of

24    those communications.

25              MR. MUELLER:  Same objection.                  18:03:30
```

Page 280

```
 1                    THE WITNESS:   I don't believe there have

 2    been any that have been publically disclosed.

 3    BY MR. MARTIN:

 4       Q.   Okay.   But there are others.   They just haven't

 5    been publicly disclosed; is that accurate?              18:03:43

 6                    MR. MUELLER:   Same objection.

 7                    THE WITNESS:   Same objection as privileged

 8    or work product, or are you instructing me not to

 9    answer?

10                    MR. MUELLER:   If you do not have an answer  18:03:54

11    to that question that's not based on privileged,

12    confidential information based on discussions with

13    counsel, that has never been made public, then yes, I'm

14    instructing you not to answer.

15                    THE WITNESS:   Then I cannot answer the     18:04:06

16    question.

17    BY MR. MARTIN:

18       Q.   Okay.   Is the basis for any of the allegations in

19    the Complaint information that the plaintiff learned or

20    received during discussions with law enforcement         18:04:21

21    agencies in or outside of the State of Oregon?

22                    MR. MUELLER:   Again, same objection.   If you

23    have knowledge, other than discussions with counsel, you

24    can answer.   If your only basis for your answer would be

25    divulging attorney-client communications, don't divulge  18:04:45
```

Page 281

1    that information.  It's privileged.

2             THE WITNESS:  I have no information on that

3    subject other than what's been disclosed to me by

4    counsel.

5    BY MR. MARTIN:                                   18:04:56

6        Q.  So the question is, is the basis for any of the

7    allegations in the complaint information that the

8    plaintiff learned or received during discussions with

9    law enforcement agencies?

10            I'm not asking for the substance.  I'm just      18:05:12

11   asking if any of the allegations in the Complaint --

12   you've reviewed the complaint, I take it, yes?

13       A.  I have, yes.

14       Q.  And are any of the allegations in that Complaint

15   based on information learned or received during          18:05:25

16   discussions with law enforcement agencies?

17       A.  During discussions with?

18       Q.  Discussions with law enforcement agencies.

19       A.  Certain parts of the allegations in the Complaint

20   are confirmed, and in part derived from allegations made  18:05:38

21   in law enforcement actions and litigation, including

22   evidence attached to filings in such litigation.

23            I don't believe I can answer as to whether or not

24   I've been told by counsel that they had any discussions

25   that you described.                                       18:06:00

                                                  Page 282

1              MR. MUELLER:  That's correct.

2    BY MR. MARTIN:

3       Q.  So you can't answer whether any of the

4    allegations in the complaint are based on conversations

5    that the State of Oregon has had with law enforcement     18:06:15

6    actions; is that correct?

7              MR. MUELLER:  Asked and answered.

8              THE WITNESS:  Yes.

9              MR. MARTIN:  And I want to understand the

10    basis for that.  Can you explain that to me why -- why     18:06:33

11    you can't?

12              MR. MUELLER:  You want me to explain the

13    basis for the privilege objection or?

14              MR. MARTIN:  Why are -- are you asserting

15    or -- yeah, I'm not sure.  You're asserting -- you're     18:06:42

16    instructing the witness not to answer?

17              MR. MUELLER:  I'm instructing the witness

18    that if he -- the only basis for answering the question

19    would be divulging communications between him and

20    counsel for Oregon in this action.     18:06:53

21              I'm instructing him not to -- not to -- not

22    to answer regarding those privileged communications.

23              If he has any other basis for being able to

24    answer that question, he can answer it.  But if his only

25    basis is information that was through discussion with     18:07:15

Page 283

1    counsel, then yeah.

2              THE WITNESS:   I don't have any other basis.

3    BY MR. MARTIN:

4        Q.   Is the basis for any of the allegations in the

5    Complaint documents received from law enforcement          18:07:36

6    agencies?

7              MR. MUELLER:   Same objection, but you can

8    answer.

9              THE WITNESS:   I believe in the consolidated

10   amended complaint relied on documents publicly filed by     18:07:54

11   the Minnesota Attorney General's Office.

12   BY MR. MARTIN:

13       Q.   Any other documents that the State of Oregon

14   received from law enforcement agencies and relied upon

15   in drafting the Complaint?                                   18:08:09

16       A.   Not that I'm aware of.

17             MR. MUELLER:   Objection to form.  I'm not

18   sure what you mean by "law enforcement agencies."  I

19   don't mean to make speaking objections, but just to be

20   clear.                                                       18:08:23

21   BY MR. MARTIN:

22       Q.   Do you understand what I mean by "law enforcement

23   agencies"?

24       A.   I took you to mean both civil and criminal law

25   enforcement, including other state attorney general's       18:08:34

                                                          Page 284

```
 1                        CERTIFICATE
 2
 3          I, Mary C. Soldati, Registered Professional
 4   reporter, Oregon and Washington Certified Shorthand
 5   Reporter, hereby certify that said witness personally
 6   appeared before me at the time and place set forth in
 7   the caption hereof; that at said time and place I
 8   reported in stenotype all testimony adduced and other
 9   oral proceedings had in the foregoing matter; that
10   thereafter my notes were transcribed through
11   computer-aided transcription by me; and that the
12   foregoing pages constitute a full, true and accurate
13   record of all such testimony adduced and oral
14   proceedings had, and of the whole thereof.  I further
15   certify review of the transcript was requested.
16          In witness whereof, I have hereunto set my hand
17   this 10th day of March, 2020.
18
19
20                    <%9191,Signature%>
21
22                 Mary C. Soldati, RPR
                     CSR-WA No. 3406
23                 Expires April 20, 2020
24                   CSR-OR No. 19-0457
25                 Expires April 20, 2022
```

Page 297

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil File No. 18-296 (MJD/KMM)

**Errata Sheet to the Transcript of the March 5, 2020 Deposition of Brian de Haan**

| Page | Line | Change | Reason |
|---|---|---|---|
| 238 | 13 | "security-related" to "non securities-related" | Typographical error |
| 246 | 5 | "Treasury" to "Treasurer" | Typographical error |
| 251 | 12 | Add word: "wide body **of** knowledge" | Typographical error |
| 254 | 15 | Add word: "is **an** attorney in" | Typographical error |
| 254 | 15 | "Supervised" to "supervises" | Typographical error |
| 258 | 1 | "Cantor" to "Kantor" | Spelling |
| 258 | 3 | "Cantor" to "Kantor" | Spelling |
| 264 | 23 | "treasury" to "Treasury" | Capitalization |
| 266 | 10 | "withdraw" to "withdrew" | Typographical error |
| 266 | 11 | "movement" to "movant" | Typographical error |
| 266 | 12 | "moving" to "movant" | Typographical error |
| 267 | 16 | "along side" to "alongside" | Spelling |
| 267 | 18 | "Oregon teachers" to "Ontario Teachers" | Typographical error |
| 271 | 5-8 | "I'm speculating based. On my personal knowledge, I'm familiar with the portfolio" to "I'm speculating based on my personal knowledge and familiarity with the portfolio" | Typographical error |
| 272 | 12 | Add word: "on semi-regular" to "on **a** semi-regular" | Typographical error |
| 277 | 1 | "it's" to "its" | Typographical error |
| 278 | 9 | "it's" to "its" | Typographical error |
| 280 | 2 | "BLGP" to "BLBG" | Typographical error |
| 284 | 25 | "generals" to "general" | Typographical error |
| 286 | 25 | "when it" to "whether to" | Typographical error |
| 293 | 17 | "would" to "could" | Typographical error |

I, Brian de Haan, have read the foregoing transcript, and my testimony, as corrected, above is true and correct.

I hereby certify under penalty of perjury that the foregoing is true and correct.

Date: April ___, 2020

BRIAN DE HAAN