# Exhibit Q

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br><br>STATE OF COLORADO, ex rel. PHILIP J. WEISER, ATTORNEY GENERAL<br><br>Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC.; CENTURYTEL BROADBAND SERVICES, LLC; CENTURYTEL OF COLORADO, INC.; QWEST BROADBAND SERVICES, INC.; QWEST CORPORATION; CENTURYLINK COMMUNICATIONS, LLC; CENTURYTEL OF EAGLE, INC.; CENTURYTEL TELEVIDEO, INC.; and EL PASO COUNTY TELEPHONE COMPANY,<br><br>Defendants. | ▲ COURT USE ONLY ▲ |
| PHILIP J. WEISER, Attorney General<br>JAY B. SIMONSON, 24077*<br>First Assistant Attorney General<br>MARK T. BAILEY, 36861*<br>Senior Assistant Attorney General<br>Ralph L. Carr Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Telephone: (720) 508-6000<br>FAX: (720) 508-6040<br>*Counsel of Record | Case No.<br><br><br>Div.: |
| **FINAL CONSENT JUDGMENT** | |

This matter is before the Court on the Parties' Stipulation for Entry of a

Final Consent Judgment. The Court has reviewed the Stipulation and the

Complaint filed in this action ("Complaint") and is otherwise advised in the grounds

51040487.1

therefore. The Court concludes that good cause has been shown for entering this Final Consent Judgment.

Accordingly, IT IS ORDERED that:

## I.    DEFINITIONS

1.    "CenturyLink" means CenturyLink, Inc., together with its operating subsidiaries CenturyTel Broadband Services, LLC; CenturyTel of Colorado, Inc.; Qwest Broadband Services, Inc.; Qwest Corporation; CenturyLink Communications, LLC; CenturyTel of Eagle, Inc.; CenturyTel Televideo, Inc.; El Paso County Telephone Company; and any other related entity that participates in the promotion, offering, marketing, or billing of CenturyLink services to Colorado consumers. CenturyLink, Inc., is a holding company with ownership interests in these operating subsidiaries, but does not itself carry out the activities described in this Final Consent Judgment. It is the parties' intention to bring CenturyLink, Inc., and these related entities within the scope of this Final Consent Judgment, while incorporating and maintaining these distinctions in the definition of "CenturyLink."

2.    "First Invoice" means the first invoice that the consumer receives after placing an order with CenturyLink. For new consumers, "First Invoice" means the first invoice that the consumer receives after signing up for CenturyLink's services. For CenturyLink's current consumers, "First Invoice" means the first invoice the consumer receives that includes the consumer's new or changed services.

2

## II.    GENERAL PROVISIONS

3.    <u>Release of Claims</u>. The State of Colorado, *ex. rel.* Philip J. Weiser, Attorney General (hereinafter the "STATE"), acknowledges by its execution hereof that (a) this Final Consent Judgment constitutes a complete settlement and release of all civil claims, causes of action, or proceedings under the Colorado Consumer Protection Act ("CCPA") or the common law on behalf of the STATE against CenturyLink and CenturyLink's current and former officers, directors, agents, independent contractors, employees, representatives, successors and assigns, jointly and severally ("Released Parties"), including but not limited to claims, causes of action or proceedings seeking restitution, injunctive relief, damages, fines, penalties, attorneys' fees, or costs, based on conduct, practices, facts or events that occurred prior to the entry of this Final Consent Judgment and were asserted or could have been asserted under the CCPA or the common law in the Complaint, relating to whether CenturyLink provided customers with promised sales discounts or otherwise billed customers higher rates quoted during sales communications; whether CenturyLink adequately disclosed fees and surcharges when advertising and selling its goods and services; whether CenturyLink billed customers for goods or services that were not  ordered or delivered, not delivered as promised or were appropriately cancelled; whether CenturyLink changed the amounts of prices, fees or surcharges without adequate notice to or consent by customers; whether CenturyLink improperly imposed early termination fees; whether CenturyLink imposed unreturned equipment fees on customers who had returned their equipment; whether

CenturyLink failed to provide gift cards promised during sales communications; and all other claims and allegations alleged in the Complaint up to and through the effective date of this Final Consent Judgment (the "Released Claims"); and (b) the STATE shall not proceed with or institute any civil action or proceeding against the Released Parties based on the Released Claims.

4.    <u>Preservation of Certain Law Enforcement Actions</u>. Nothing herein precludes the STATE from enforcing the provisions of this Final Consent Judgment, from pursuing any non-CCPA or non-common law enforcement action, or from pursuing any law enforcement action under the CCPA or the common law with respect to the acts or practices of CenturyLink not covered or released by this Final Consent Judgment or any acts or practices of CenturyLink conducted after the entry of this Final Consent Judgment.

5.    <u>Compliance with and Application of State Law</u>. Nothing herein relieves CenturyLink of its duty to comply with applicable laws of the State of Colorado or constitutes authorization by the STATE for CenturyLink to engage in acts and practices prohibited by such laws. This Final Consent Judgment shall be governed by the laws of the State of Colorado.

6.    <u>Non-Approval of Conduct</u>. Nothing herein constitutes approval by the STATE of CenturyLink's past or future business practices.  CenturyLink shall not make any representation contrary to this paragraph.

7.    <u>No Admission</u>.  The parties enter into this Final Consent Judgment as a compromise and settlement of all disputed claims. This Final Consent Judgment is

4

entered into without adjudication of any issue of fact or law or finding of liability of any kind, and nothing contained in this Final Consent Judgment shall be construed or deemed an admission by Defendants of any wrongdoing or any violation of state or federal law or regulation. Defendants expressly deny any liability or wrongdoing and are entering into this Final Consent Judgment to avoid further inconvenience and costs of potential litigation.

8. No Creation or Waiver of Private Claims. Unless otherwise noted, nothing herein shall be construed as a waiver of any private rights, causes of action, or remedies of any person against CenturyLink with respect to the acts and practices covered by this Final Consent Judgment. This Final Consent Judgment also does not create any private right, cause of action or remedy for any third party with respect to the acts and practices covered herein.

9. No Third Party Beneficiaries Intended. This Final Consent Judgment is for the benefit of the parties only and does not create or confer rights or remedies upon any other person, including rights as a third-party beneficiary. This Final Consent Judgment does not create a private right of action on the part of any person or entity, whether to enforce this Final Consent Judgment or otherwise, other than the parties hereto and their successors in interest.

10. Use of Settlement as Defense. CenturyLink acknowledges that it is the STATE's customary position that an agreement restraining certain conduct on the part of a defendant does not prevent the STATE from addressing later conduct that could have been prohibited, but was not, in the earlier agreement, unless the earlier

5

agreement expressly limited the STATE's enforcement options in that manner. Therefore, nothing herein shall be interpreted to prevent the STATE from taking enforcement action to address conduct occurring after the entry of this Final Consent Judgment that the STATE believes to be in violation of the law. The fact that such conduct was not expressly prohibited by the terms of this Final Consent Judgment shall not be a defense to any such enforcement action.

11.    <u>Use of Settlement in Business Activity</u>. Under no circumstances shall this Final Consent Judgment or the name of the Attorney General or any of the STATE's employees or representatives be used by CenturyLink or any of its employees, representatives, or agents as an endorsement of any conduct, past or present, by CenturyLink.

12.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction over this matter for the purpose of enabling any party to this Final Consent Judgment to apply to the Court at any time for any further orders which may be necessary or appropriate for the construction, modification or execution of this Final Consent Judgment, and for the enforcement of compliance herewith and the punishment of violations hereof.

13.    <u>Violations of Consent Judgment</u>. The parties understand and agree that a finding of any violation of any term or provision of this Final Consent Judgment may give rise to all contempt remedies available to the Court and all remedies provided under C.R.S. § 6-1-112(1)(b).

14.    CenturyLink shall not be deemed to have violated any of the terms  of this Final Consent Judgment if:  (i) CenturyLink has implemented reasonable and

appropriate policies and procedures to ensure compliance with this Final Consent Judgment; (ii) the alleged violation is the result of an isolated or inadvertent error related to technical or coding issues, or systems glitches; (iii) CenturyLink has reasonable safeguards in place to monitor for, discover and prevent these types of occurrences from happening; and (iv) CenturyLink takes appropriate steps to investigate and remedy errors or glitches identified by CenturyLink or otherwise brought to its attention. Such remedy shall address any adverse or negative customer impact(s) in a way that is consistent with the terms of this Final Consent Judgment, including but not limited to providing all credits or refunds that are due to customers as a result of any technical or coding issues, or systems glitches. Solely for the purposes of this paragraph, with respect to CenturyLink's sales of DIRECTV's Goods and Services, each reference to "CenturyLink" in this paragraph shall mean "CenturyLink and/or DIRECTV, as applicable." For a period of 90 days following entry of this Final Consent Judgment, CenturyLink shall be deemed to be in compliance with subparagraph (i) of this paragraph 14 if CenturyLink is in the process of implementing reasonable and appropriate policies and procedures to ensure compliance with this Final Consent Judgment.

15.     If the STATE believes that CenturyLink has failed to comply with this Final Consent Judgment, the STATE will notify CenturyLink in writing of such failure to comply and CenturyLink shall have thirty (30) days from receipt of such written notice to provide a good faith written response to the STATE, including either a statement that CenturyLink believes it is in full compliance or

7

otherwise a statement explaining how the violation occurred, how it has been addressed or when it will be addressed, and what CenturyLink will do to make sure the violation does not happen again. The STATE may agree to provide CenturyLink with more than thirty (30) days to respond.

16.    Nothing herein shall be construed to exonerate any failure to comply with any provision of this Final Consent Judgment, or limit the right and authority of the STATE to initiate a proceeding for any failure to comply with this Final Consent Judgment after receiving the response from CenturyLink described in paragraph 15, if the STATE determines that an enforcement action is in the public interest.

17.    This Final Consent Judgment shall apply to CenturyLink's initial sale of service to a Colorado consumer, and shall apply to any subsequent sale or material change made to the Colorado consumer's service. This Final Consent Judgment applies only to residential and small business customers (that is, businesses with 10 employees or less that are billed less than $2,000.00 per month in recurring charges) who have a Colorado mailing address or who receive service from CenturyLink in Colorado. This Final Consent Judgment applies to CenturyLink's sale of internet, television, and telephone service (other than standalone sales of basic home phone service). Except as otherwise specifically stated herein, all provisions of this Final Consent Judgment take effect immediately upon entry of this Final Consent Judgment and shall remain in effect for ten years.

18.    CenturyLink shall provide a copy of this Final Consent Judgment within 30 days of entry of this Final Consent Judgment to all members of its board of directors and all members of its leadership team.  CenturyLink shall also provide notice and a summary of the terms of this Final Consent Judgment to all of its officers, employees, agents, independent contractors, affiliates, and those acting in concert with CenturyLink who are reasonably expected to be involved in the implementation or compliance with the requirements set forth in this Final Consent Judgment.

19.    CenturyLink shall fulfill the terms of this Final Consent Judgment, and any of its parents, subsidiaries, successors, officers, employees, agents, independent contractors, affiliates, and those acting in concert with CenturyLink who are reasonably expected to be involved in the implementation or compliance with the requirements of this Final Consent Judgment shall be bound by this Final Consent Judgment so as to accomplish the full relief contemplated by this Final Consent Judgment. CenturyLink shall not effect any change in its form of doing business, organizational identity, organizational structure, affiliations, ownership, or management composition as a method or means of attempting to avoid the requirements of this Final Consent Judgment.

20.    <u>Admissibility</u>.  No part of this Final Consent Judgment, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by CenturyLink.  This Final Consent Judgment shall not be construed or used as a waiver or limitation of any defense otherwise available to CenturyLink in

9

any action, or of CenturyLink's right to defend itself from, or make any arguments in, any private individual, regulatory, governmental, or class claims or suits relating to the subject matter or terms of this Final Consent Judgment. This Final Consent Judgment is made without trial or adjudication of any issue of fact or law or finding of liability of any kind.

21.    <u>Execution in Counterparts</u>. This Final Consent Judgment may be executed in counterparts.

22.    <u>Severability</u>.  If any provision(s) of this Final Consent Judgment is held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

23.    <u>Successors in Interest</u>. The terms and provisions of this Final Consent Judgment may be enforced by the current Colorado Attorney General and by any of his duly authorized agents or representatives, as well as by any of his successors in interest, and by any of his successors in interest's agents or representatives.

24.    <u>Amendment</u>. This Final Consent Judgment may be amended solely by written agreement signed by the STATE and CenturyLink.

25.    <u>Complete Agreement</u>.  This Final Consent Judgment represents the entire agreement between the parties hereto and a complete merger of prior negotiations and agreements.  No other written or oral terms or agreements exist between the parties except for those contained in this Final Consent Judgment.

26.   <u>Attorneys' Fees and Costs</u>.  Except as otherwise provided herein, each party shall bear its own attorneys' fees and costs in connection with this matter.

27.   <u>Voluntary Agreement</u>.  Defendants acknowledge that they have had an adequate opportunity to review this Final Consent Judgment and consult with legal counsel in connection with the negotiation, drafting, and execution of this Final Consent Judgment.   Each party and signatory to this Final Consent Judgment represents that he, she, or it freely and voluntarily enters into this Final Consent Judgment without any degree of duress or compulsion.

28.   <u>Final Consent Judgment Jointly Drafted</u>.  For purposes of construing this Final Consent Judgment, this Final Consent Judgment shall be deemed to have been drafted jointly by both parties and, in the event of any dispute arising out of this Final Consent Judgment, shall not be construed against or in favor of any party.

29.   <u>Notice</u>.  Any notices sent to CenturyLink pursuant to this Final Consent Judgment shall be sent to the Office of General Counsel and Ryan McManis, Deputy General Counsel, CenturyLink Legal Department, 931 14th Street, 9th Floor, Denver, CO 80202.  Any notice sent to the STATE pursuant to this Final Consent Judgment shall be sent to Mark T. Bailey, Senior Assistant Attorney General, Jay Simonson, First Assistant Attorney General, and Chele Clark, Program Assistant, Consumer Protection Unit, 1300 Broadway, Ste. 700, Denver, Colorado 80203.

### III.   INJUNCTION

51040487.1

CenturyLink, including its officers, employees, agents, independent contractors, affiliates, and those acting in concert with CenturyLink, shall comply with the following terms and provisions:

30.    CenturyLink shall not make any false or misleading statement of material fact, nor shall CenturyLink omit any material fact, in connection with CenturyLink's sale of internet, television, and/or telephone service to a Colorado consumer.  For purposes of this Final Consent Judgment, the term "service" also refers to any goods or equipment purchased or leased in connection with a service.

31.    For sales of its services, CenturyLink shall accurately and in a clear and conspicuous manner disclose any and all material terms or conditions of its offers to Colorado consumers at the time of sale, prior to the consumer's providing his or her payment information (except in instances where a consumer provides an upfront deposit or payment for a past due amount), including, but not limited to, the following, where applicable:

    a.    The monthly base price of the service(s) the consumer purchases;

    b.    The amount (either the actual amount or, for fees or surcharges that are based on percentage, based on usage, or that vary by location, the average amount paid by CenturyLink consumers) of each recurring monthly fee or surcharge (except for those fees and surcharges described in paragraph 31(c) of this Final Consent Judgment) charged for

12

the service(s) the consumer purchases, in addition to the

monthly base price;

c.     For the Access Recovery Charge, the Federal Universal

Service Fund, the Property Tax Recovery Fee, and the Federal

Regulatory Recovery Fee when applicable, CenturyLink shall

disclose the total amount of these fees and surcharges (as an

actual amount or, for fees or surcharges that are based on

percentage, based on usage, or that vary by location, the

average amount paid by CenturyLink customers) that will

appear on the customer's First Invoice. CenturyLink may refer

the customer to his or her First Invoice for an itemization of

each of these applicable fees and surcharges;

d.     The amount of each one-time fee, or fee charged only on the

customer's First Invoice, for the purchased service(s),

including, but not limited to, activation and installation fees

and equipment purchases;

e.     The total amount of the First Invoice (using the actual

amount in paragraph 31(a) and the actual or estimated

amounts in paragraphs 31(b) through 31(d) of this Final

Consent Judgment);

f.     The total monthly cost of the service(s) starting in the month

of service after the First Invoice (using the actual amount in

51040487.1

paragraph 31(a) and the actual or estimated amounts in

paragraphs 31(b) through 31(c) of this Final Consent

Judgment);

g.    The estimated taxes or that the quoted pricing does not

include taxes;

h.    The time period for which the quoted prices apply;

i.    Any steps the consumer must take to receive the quoted

price(s) and/or any discount(s);

j.    Any applicable early cancellation fee(s); and

k.    If applicable, that the consumer will be charged for failing to

return any leased or rented equipment, and the amount of the

charge(s).

Within three business days after the sale, CenturyLink shall send the customer an

Order Confirmation via regular mail, email, or other acceptable electronic

communication that sets forth the pricing and material terms and conditions

applicable to the customer's service order, including the elements set forth in

subparagraphs (a)-(k), above.  The written communication shall contain the words

"Order Confirmation" in the title, subject line, or at the beginning of the

communication.  For written disclosures sent by regular mail the phrase "Order

Confirmation" shall be prominently displayed on the envelope.  The requirements

in this paragraph 31 shall take effect within 90 days of entry of this Final Consent

Judgment.  If a customer makes changes to his/her service order between the date

14

of the customer's service order and the service effective date, these changes will be reflected on the customer's First Invoice.

32.    CenturyLink shall not charge Colorado consumers the Internet Cost Recovery Fee or Broadband Cost Recovery Fee for any orders placed 90 or more days after the date of entry of this Final Consent Judgment. Within 90 days of entry of this Final Consent Judgment, CenturyLink shall notify current Colorado consumers who are on term commitment plans for internet service that (i) they are being charged the Internet or Broadband Cost Recovery Fee, the nature of the fee, and the amount of the fee, and (ii) if, as a result of being charged the fee, they wish to cancel their CenturyLink service or transition to another CenturyLink internet plan that does not include a separate charge for the fee, they may do so within 30 days of the notice without incurring an early termination fee. In addition, within 90 days of entry of this Final Consent Judgment, CenturyLink shall notify current Colorado consumers who are on Price Lock plans for internet service that (i) they are being charged the Internet or Broadband Cost Recovery Fee and the amount of such fee, and (ii) within 30 days of the notice, they may transition to another CenturyLink internet plan that does not include a separate charge for the fee. CenturyLink shall comply with a consumer's timely request in response to these notices. CenturyLink shall not be deemed to have violated this Final Consent Judgment if term commitment or Price Lock consumers who receive these notices do not make timely termination or transition requests, as applicable, and therefore maintain their existing internet service plans until they expire. The written notice required by this

15

paragraph 32 shall be sent via email (to the extent that CenturyLink has current email addresses for such consumers) and as a separate insert included with the consumers' bills. The notice will include a heading to the effect that it is an important notice and is not an advertisement.

33.     No later than 90 days after the entry of this Final Consent Judgment, if CenturyLink advertises an available price and charges any related fees or surcharges in addition to the advertised price, the existence of those fees or surcharges must be disclosed in the main text of the advertisement (e.g., "additional fees and surcharges apply" or "excludes fees and surcharges"). In addition, if CenturyLink charges fees or surcharges that are mandatory, but are not a) passed on to third parties (e.g., taxes paid to government entities), b) specifically authorized by law or regulation (e.g., the Access Recovery Charge, as expressly authorized by the Federal Communications Commission at the time of this Final Consent Judgment), or c) for additional services or goods (e.g., a modem rental fee) (collectively, "Specifically Disclosed Fees and Surcharges"), additional disclosure requirements apply. Specifically, CenturyLink shall disclose:

 (a) For internet advertisements,

   (1) The not to exceed total amount of all Specifically Disclosed Fees or Surcharges, which shall be identified as CTL or CenturyLink fees or surcharges, and the existence of other authorized taxes, fees, and surcharges.  These disclosures must be clear and conspicuous in close proximity to the advertised price.

16

51040487.1

(2)  The name and nature or purpose of a Specifically Disclosed Fee
or Surcharge.  This disclosure may be placed in the verbiage in
the offer's details and may be satisfied by (i) identifying each
Specifically Disclosed Fee or Surcharge and stating that such
Specifically Disclosed Fees and Surcharges are neither a tax nor
required by law but set by CenturyLink, and (ii) providing a link
to CenturyLink's publicly available website that describes
CenturyLink's common fees, surcharges, and taxes.  The
advertisement offer's details must be on the same page as the
advertisement's main text, or may be available by a hyperlink
or "hover over" feature labeled "Offer Details" or containing a
substantively similar label. If CenturyLink uses a "hover over"
or hyperlink, it must be readily viewable in the advertisement's
main text, in close proximity to the advertised price.

(3) These obligations do not apply to banner advertisements, side
bar advertisements, social media posts or internet search copy
that require consumers to visit another website to order
CenturyLink services, so long as the advertisements, posts or
search copy lead consumers to a webpage that contains the
disclosures previously described in this paragraph in the form
and manner previously described in this paragraph.

(b)  For print advertisements,

17

1) The not to exceed total amount of all Specifically Disclosed Fees or Surcharges, which shall be identified as CTL or CenturyLink fees or surcharges, and the existence of other authorized taxes, fees, and surcharges. These disclosures must be clear and conspicuous in close proximity to the advertised price.

2) The name and nature or purpose of a Specifically Disclosed Fee or Surcharge. This disclosure shall be placed on the same page of the advertisement as the corresponding price. This disclosure may be satisfied by (i) identifying each Specifically Disclosed Fee or Surcharge and stating that such Specifically Disclosed Fees and Surcharges are neither a tax nor required by law but set by CenturyLink, and (ii) providing a reference to CenturyLink's publicly available website that describes CenturyLink's common fees, surcharges, and taxes.

(c) Video and audio advertisements shall disclose the not to exceed total amount of all Specifically Disclosed Fees or Surcharges, which shall be identified as CTL or CenturyLink fees or surcharges, and the existence of other authorized taxes, fees, and surcharges. If the video or audio advertisement directs the consumer to a web page, the web page shall comply with the provisions of subparagraph (a) above.

18

(d)  CenturyLink will continue to maintain a publicly available website that describes common fees, surcharges, and taxes. CenturyLink currently maintains the following such website with these descriptions: https://www.centurylink.com/home/help/account/billing/taxes-fees-and-surcharges-on-your-bill.html.

34.    When selling goods and services as a sales agent of DIRECTV, CenturyLink shall disclose any and all material terms or conditions of DIRECTV's offer.  Such material terms or conditions include, but are not limited to, the following, if applicable:

      a.    The cost to the consumer of any DIRECTV Goods ordered;

      b.    The first month's price of any DIRECTV Services ordered;

      c.    That a mandatory programming commitment/agreement will apply, including, but not limited to the duration of the contract;

      d.    The current monthly fees and charges for HD and/or DVR services, if equipment requiring subscription to such services is initially ordered by the consumer;

      e.    Any costs, fees or other consideration consumers must pay to cancel any DIRECTV Services, including, but not limited to  the following, if applicable: (i) the existence of any early cancellation fee, (ii) the amount  of such fees, and (iii) the

amount such fees will decrease and on what basis such fees

may be prorated;

f.    That an equipment non-return fee may apply if leased

DIRECTV Goods are not returned as required;

g.    Any promotion price, and (i) the fact that the promotional

price is contingent upon the consumer's request for a rebate(s),

if such is the case, (ii) each component or requirement for

claiming a rebate, if applicable, (iii) the duration of the

promotional price, and (iv) the current price of the DIRECTV

Goods or DIRECTV Services ordered without any promotion or

discount applied.

h.    The fact that any price or offer is conditioned upon a

consumer's agreement to a particular method and/or manner

of payment; and

i.    If DIRECTV offers its services, or any part of its services (e.g.,

a 3-month trial of premium movie channels or a protection

plan), at no cost to the consumer for a period of time

("Promotional Period"), (i) whether the consumer will be

automatically billed for the service following the expiration of

the Promotional Period, (ii) that the consumer must cancel the

service within the Promotional Period to avoid being

automatically billed for it, (iii) the cost of the service after the

20

Promotional Period, (iv) the length of the Promotional Period, and (v) the means by which the consumer may cancel the service during the Promotional Period.

The parties' intent in this paragraph 34 is for CenturyLink to make the same point-of-sale disclosures of DIRECTV's goods and services as is required by § 6.14 in the Agreed Final Judgment/Consent Judgment and Permanent Injunction in *State of Colorado* ex rel. *John W. Suthers, Attorney General v. DIRECTV, Inc.*, Case No. 2010CV9701, District Court for the City and County of Denver, Dec. 24, 2010 (the "DIRECTV Consent Judgment"). The terms "DIRECTV Goods" and "DIRECTV Services" as used in this Final Consent Judgment shall have the same meaning as in the DIRECTV Consent Judgment. If the terms of § 6.14 of the DIRECTV Consent Judgment change in the future, then the parties intend that CenturyLink's disclosures required by this paragraph shall also change accordingly. Nothing herein shall be construed to waive or modify any claims either party may have against the other under the DIRECTV Consent Judgment. Notwithstanding the foregoing, CenturyLink shall not be deemed to have violated this paragraph if CenturyLink can demonstrate that it did not cause the violation and that it did not know, prior to the violation, of the circumstances that caused the violation.

35.    In the written disclosure described in paragraph 31 and in all invoices it sends to customers, CenturyLink shall provide its mailing address and toll-free telephone number in a clear and conspicuous manner. The toll-free

number shall direct customers to agents who have been specifically trained to respond to and address consumer complaints.

36.     CenturyLink shall record and retain for at least two years the entirety of each telephone call with a Colorado consumer regarding the offer or sale of its service(s), and any complaint or concern directly related thereto. CenturyLink shall inform each consumer at the beginning of the call that the call is being recorded.  CenturyLink shall also retain for at least two years all of its written correspondence with Colorado consumers regarding the offer or sale of its services(s) and any complaint or concern directly related thereto, including, but not limited to, emails and on-line chats.  CenturyLink shall require any third-party vendor it utilizes to communicate with consumers to comply with this paragraph 36.

37.     Other than taxes (if taxes are not quoted), CenturyLink shall not charge any Colorado consumer any amount greater than the amount CenturyLink disclosed to the consumer in accordance with paragraph 31 of this Final Consent Judgment for its service(s), for the time period disclosed in accordance with paragraph 31 of this Final Consent Judgment, unless the consumer orders additional service(s) or if the consumer stops meeting restrictions or conditions that were disclosed in accordance with paragraph 31 of this Final Consent Judgment at the time of sale. CenturyLink shall not dishonor any offer by claiming that a condition or restriction on the consumer's ability to receive the quoted price

22

renders the offer void, if that restriction or condition was not disclosed in accordance with paragraph 31 of this Final Consent Judgment.

38.     CenturyLink shall not charge any consumer a cancellation fee unless CenturyLink discloses the existence of the cancellation fee at the time of sale in accordance with paragraph 31 of this Final Consent Judgment, and also at the time the consumer cancels the service.  CenturyLink shall not charge any consumer a cancellation fee if it cannot demonstrate it disclosed the cancellation fee at the point of sale, in the Order Confirmation, and at the point of service termination.

39.     CenturyLink shall not charge any consumer an unreturned equipment fee unless CenturyLink discloses the existence of the unreturned equipment fee at the time of sale in accordance with paragraph 31 of this Final Consent Judgment, and also at the time the consumer's service is canceled.

40.     CenturyLink shall provide all gift cards, Visa cards, or other incentives that it promises to consumers, consistent with the terms and eligibility requirements of CenturyLink's offers.

41.     CenturyLink shall not charge unreturned equipment fees to customers who timely return their equipment in accordance with CenturyLink's stated policies.

## IV.    MONETARY PROVISIONS

42.     CenturyLink shall pay the STATE $6,775,000 within thirty business days of the date of entry of this Final Consent Judgment.

51040487.1

43.     In response to an investigative request by the State, CenturyLink represents that it has paid or plans to pay Colorado consumers $1,701,000 for what the STATE alleges were overcharges relating to a failure to apply "Closer" discounts to consumer accounts, subject to offsets for consumers who owe CenturyLink monies.  CenturyLink represents that it has issued credits to current CenturyLink customers and is in the process of mailing payments to former customers. CenturyLink represents that it has engaged a vendor to locate and mail payment to former customers, whose efforts include steps to confirm customer addresses prior to mailing the check and at least one effort to ascertain customer addresses upon receipt of returned mail.  Within ten business days of entry of this Final Consent Judgment, CenturyLink shall provide the STATE proof of all payments it has made toward the $1,701,000 as of that date.  CenturyLink shall pay the remainder of the $1,701,000 by March 31, 2020.  On or before March 31, 2020, CenturyLink shall provide the STATE proof of all payments made under this paragraph 43.  If, after making reasonable, good-faith attempts to make all payments to former customers, any amount of the $ 1,701,000 has not been paid (checks have not been cashed or customers were unable to be located), CenturyLink shall pay any unpaid amounts to the State in a manner consistent with Colorado's unclaimed property laws.

44.     All payments to the STATE under this Section IV are to be held, along with any interest thereon, in trust by the Attorney General to be used in the Attorney General's sole discretion for reimbursement of the State's actual costs and attorneys' fees, future consumer fraud or antitrust enforcement, consumer

education, public welfare purposes, or consumer redress. All payments to the STATE shall be made payable to the Colorado Department of Law with a reference to "*State v. CenturyLink, et al.*", and shall be delivered to:

Chele Clark, Program Manager
Consumer Fraud Unit
1300 Broadway – 7th Floor
Denver, Colorado 80203

## V.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that:

45.    On the first and third anniversaries of the entry of this Final Consent Judgment, CenturyLink must submit reports, sworn under penalty of perjury by an individual or individuals with authority to bind each and every Defendant, regarding its compliance with the provisions of this Final Consent Judgment during the period covered by each report. The compliance reports must:

a.  Identify the primary postal and email address and telephone number, as designated points of contact, which the STATE may use to communicate with CenturyLink in connection with this Final Consent Judgment;

b.  Identify all of CenturyLink's business entities that offer goods and services to Colorado consumers by their names, telephone numbers, and physical, postal, email, and internet addresses;

c.  Describe the activities of each such business entity, including the goods and services offered and the means of advertising, marketing, and sales;

25

d. State whether CenturyLink is in compliance with paragraphs 31-41 of this Final Consent Judgment;

e. Describe the policies, procedures, and controls CenturyLink has instituted that are designed to ensure that CenturyLink's advertising and sale of goods and services do not make any false or misleading statement of material fact or omit any material fact, including:

    i. Establishment and maintenance of a team or business group that reviews all of CenturyLink's advertisements to Colorado consumers prior to dissemination and seeks to ensure that such advertisements do not make any false or misleading statement of material fact or omit any material fact;

    ii. Identification of the individuals and business groups that are responsible for seeking to ensure that CenturyLink's advertising and sales do not make any false or misleading statement of material fact or omit any material fact;

    iii. Identification of the individuals and business groups that are responsible for seeking to ensure that CenturyLink complies with its stated policy for fees connected to the failure to return rented equipment; and

    iv. Identification of the individuals and business groups that are responsible for seeking to ensure that CenturyLink complies with the representations made to consumers with respect to

26

the providing of gift cards or other incentives, consistent with the terms and eligibility requirements of such offers.

f.   Describe all billing issues, errors and discrepancies that result in overcharges of $25 or more to more than 1,000 Colorado consumers, including, for each error or discrepancy, a description of:

   i.   The nature and cause of the issue, error or discrepancy,

   ii.  All steps taken to remediate the issue, error or discrepancy,

   iii. All steps take to communicate the details of the issue, error or discrepancy to Colorado consumers and provide any necessary refunds or credits, and

   iv.  Upon request by the STATE, the names and amounts refunded or credited to Colorado consumers to remediate any such issue, error or discrepancy.

g.   Describe the policies, procedures, and controls CenturyLink has established that are designed to ensure that customer service representatives do not make any false or misleading statements to Colorado consumers about the price of CenturyLink's goods or services, including:

   i.   Trainings provided to customer service representatives and their supervisors; and

   ii.  The quality assurance measures used by CenturyLink to monitor the performance of customer service representatives.

27

## VI.     COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that the STATE may monitor CenturyLink's compliance with this Final Consent Judgment as follows:

46.     CenturyLink agrees to cooperate with any proceedings or investigations arising out of the STATE's monitoring or investigation of compliance with this Final Consent Judgment.  This includes submission of additional compliance reports or other requested information, producing documents in response to Civil Investigative Demands ("CIDs"), and making employees available for sworn testimony in CID Hearings within a reasonable timeframe and reasonable scope as set forth in the STATE's request or CID and permitted by Colorado law.

47.     For matters concerning this Final Consent Judgment, the STATE shall communicate with CenturyLink through its counsel.  However, CenturyLink must permit representatives of the STATE to interview any employee or other person affiliated with DEFENDANT who has agreed to such an interview.  The person interviewed may have counsel present.

48.     Notwithstanding the foregoing, the STATE may use all other lawful means, including posing, through its representatives, as consumers or potential consumers of CenturyLink's goods or services, without the necessity of identification or prior notice.

## VII.   RECORDKEEPING

**IT IS FURTHER ORDERED** that CenturyLink must create or retain certain records in the course of its business after entry of this Final Consent Judgment and retain such records for four years, as listed in paragraph 49 below.

49.     CenturyLink must create and retain the following records in connection with the advertisement and sale of their goods and services to Colorado consumers:

   a.   All written records of consumer complaints, whether received directly from a consumer or indirectly from government agencies or the Better Business Bureau, that are addressed by CenturyLink's Consumer Advocacy Group ("CAG"), or any group or department with a similar role to the CAG established after the entry of this Final Consent Judgment, related to billing discrepancies or alleged misrepresentation of prices, which shall include, but not be limited to, available consumer contact information, date of complaint, source of complaint, category of complaint, and the outcome of the complaint;

   b.   All records necessary to demonstrate full compliance with each provision of this Final Consent Judgment, including all submissions to the STATE; and

29

c.   A copy of each unique advertisement or other marketing material

created, produced or approved by CenturyLink that was

disseminated to Colorado consumers.

## VIII.   REPRESENTATIONS AND WARRANTIES

50.    Except as expressly provided in this Final Consent Judgment, nothing

in this Final Consent Judgment shall be construed as relieving CenturyLink of its

obligation to comply with all state and federal laws, regulations or rules, or

granting permission to engage in any acts or practices prohibited by such laws,

regulations or rules.

51.    CenturyLink acknowledges that it has thoroughly reviewed this Final

Consent Judgment with its counsel.  CenturyLink acknowledges that it

understands and agrees to the terms of this Final Consent Judgement, and that it

agrees that it shall be entered as an Order of this Court.

52.    In any action brought by the STATE to enforce this Final Consent

Judgment, CenturyLink consents to personal and subject matter jurisdiction in the

District Court for the City and County of Denver.

## IX.   MDL SETTLEMENT

53.    The STATE agrees that it will not object to or oppose any settlement

between the parties in *In re: CenturyLink Sales Practices and Securities Litigation*,

MDL No. 17-2795 (MJD/KMM), United States District Court for the District of

Minnesota ("MDL").  However, the STATE expressly reserves and maintains its

legal position, articulated in the *amicus curie* brief filed on November 22, 2019 in

30

the MDL (Doc. 498), that private class-action settlements do not limit the Colorado Attorney General's ability to provide restitution as part of law-enforcement actions under the CCPA.

## X.    EXECUTION

54.    This Final Consent Judgment may be executed simultaneously or in counterparts, each of which shall be deemed to be an original, and may be completed by exchange of counterparts.  Signatures received via PDF scanned electronic file shall be deemed to be original signatures.

SO ORDERED and SIGNED this ____ day of _____, 2019.

By the Court:

_____
DENVER DISTRICT COURT JUDGE

31

51040487.1

Dated: December 19, 2019

The Undersigned Parties enter into this Consent Judgment in this matter, *State v. CenturyLink Inc.*, et al.

In all respects, on behalf of Plaintiff,

PHILIP J. WEISER
Attorney General

_____

MARK T. BAILEY, 36861*
Senior Assistant Attorney General
JAY B. SIMONSON, 24077*
First Assistant Attorney General
Consumer Protection Section
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
Mark.bailey@coag.gov
*Attorneys for Plaintiff

In all respects, on behalf of Defendants,

By:  _____

        Stefan D. Stein (#26694)
        SHERMAN & HOWARD L.L.C.
        633 17th Street, Suite 3000
        Denver, CO 80202
        Telephone:  (303) 297-2900
        Facsimile:  (303) 298-0940
        E-Mail:  sstein@shermanhoward.com

        Attorneys for Defendants

        CenturyLink, Inc.
        CenturyTel Broadband Services, LLC
        CenturyTel of Colorado, Inc.
        Qwest Broadband Services, Inc.
        Qwest Corporation
        CenturyLink Communications, LLC
        CenturyTel of Eagle, Inc.
        CenturyTel Televideo, Inc.
        El Paso County Telephone Company

32

51040487.1