# Exhibit S

MARK BRNOVICH
Attorney General
(Firm State Bar No. 14000)
Stephanie Elliott (State Bar No. 030872)
Jennifer Bonham (State Bar No. 032332)
Assistant Attorneys General
Office of the Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Facsimile: (602) 542-4377
Email: consumer@azag.gov
*Attorneys for the State of Arizona*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, *ex rel.* MARK BRNOVICH, Attorney General,<br><br>              Plaintiff,<br><br>       v.<br><br>CENTURYLINK, INC.; QWEST CORPORATION; CENTURYLINK COMMUNICATIONS, LLC; and QWEST BROADBAND SERVICES, INC.,<br><br>              Defendants. | Case No. CV2020-002769<br><br>**STIPULATED CONSENT JUDGMENT**<br><br>(Assigned to the Hon. _____) |

The State of Arizona, *ex rel.* Mark Brnovich, the Attorney General (the "State"), filed a Complaint alleging violations of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 1534, and CenturyLink, Inc.; Qwest Corporation; CenturyLink Communications, LLC; and Qwest Broadband Services, Inc. (collectively, the "Defendants") have waived service of the Complaint,

been fully advised of the right to a trial in this matter, and have waived the same. Defendants admit the jurisdiction of this Court over the subject matter and parties, stipulate that this Court may enter the following Consent Judgment without trial or adjudication of any issue of fact or law, and acknowledge that this Court shall retain jurisdiction for the purpose of enforcing this Consent Judgment. Defendants have consented and stipulated to entry of this Consent Judgment to compromise and settle claims in connection with an investigation under the Arizona Consumer Fraud Act and not out of any admission of guilt, wrongdoing, violation, or sanction.

## PARTIES

1.     The State is authorized to bring this action under the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 1534 (the "CFA").

2.     Defendant CenturyLink, Inc. is a corporation with its principal place of business located at 100 CenturyLink Drive, Monroe, Louisiana 71203.

3.     Defendant Qwest Corporation is a corporation with its principal place of business located at 100 CenturyLink Drive, Monroe, Louisiana 71203.

4.     Defendant CenturyLink Communications, LLC is a limited liability company with its principal place of business located at 100 CenturyLink Drive, Monroe, Louisiana 71203.

5.     Defendant Qwest Broadband Services, Inc. is a corporation with its principal place of business located at 100 CenturyLink Drive, Monroe, Louisiana 71203.

6.     The State alleges that Defendants caused events to occur in this state out of which the claims which are the subject of the Complaint arose.

7.     This Court has jurisdiction over the Complaint and the parties necessary for the Court to enter this Consent Judgment and any orders hereafter appropriate pursuant to A.R.S. § 44-1528 and this Consent Judgment.

8.     Venue is proper in Maricopa County pursuant to A.R.S. § 12-401(17).

## ALLEGATIONS

9.     The State alleges that:

   A.     Defendants failed to disclose material terms and conditions applicable to consumers' orders;

B.    Defendants billed consumers for amounts greater than those promised;

C.    Defendants failed to disclose or adequately disclose fees and surcharges when advertising and selling their services;

D.    Defendants offered consumers various "Closer" discounts as an incentive to purchase CenturyLink services, but frequently failed to apply the discounts to consumers' accounts;

E.    Defendants increased the monthly price for consumers enrolled in CenturyLink's Price-Lock Guarantee by creating and increasing the rate of a CenturyLink-imposed Internet Cost Recovery Fee;

F.    Defendants improperly billed consumers for returned equipment and subsequently sent accounts to collections when consumers did not pay for equipment that they had in fact returned; and

G.    Defendants charged consumers after the consumers cancelled services.

10.    Defendants deny the allegations in paragraphs 9(A)-9(G) and deny that they have engaged in any unlawful conduct, but have agreed to the entry of this Consent Judgment in order to avoid the expense and uncertainty of litigation. The agreement to enter this Consent Judgment should not be construed to be an admission by Defendants of any liability, which Defendants expressly deny.

11.    The Court does not find for or against Plaintiff or Defendants regarding the allegations in paragraphs 9(A)-9(G) or Defendants' denials thereof. The terms of this Consent Judgment shall not be cited as evidence of any wrongdoing by Defendants.

## **ORDER**

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

12.    For purposes of this Consent Judgment:

A.    "CenturyLink" means CenturyLink, Inc., together with its operating subsidiaries Qwest Corporation; CenturyLink Communications, LLC; Qwest Broadband Services, Inc.; and any other related entity that participates in the promotion, offering, marketing, or billing of CenturyLink

services to Arizona consumers. CenturyLink, Inc., is a holding company with ownership interests in these operating subsidiaries, but does not itself carry out the activities described in this Consent Judgment. It is the parties' intention to bring CenturyLink, Inc., and these related entities within the scope of this Consent Judgment, while incorporating and maintaining these distinctions in the definition of "CenturyLink."

B.    "First Invoice" means the first invoice that the consumer receives after placing an order with CenturyLink. For new consumers, "First Invoice" means the first invoice that the consumer receives after signing up for CenturyLink's services. For CenturyLink's current consumers, "First Invoice" means the first invoice the consumer receives that includes the consumer's new or changed services.

C.    "Released Parties" means CenturyLink and each of its current and former officers, directors, agents, independent contractors, employees, representatives, successors, and assigns, jointly and severally.

## **INJUNCTION**

13.    The injunctive relief set forth in this Consent Judgment is binding upon any of the following that receive actual notice of this Consent Judgment through personal service or otherwise: (a) Defendants; (b) their officers, agents, servants, employees, and attorneys; and (c) those persons in active concert or participation with Defendants or any of their officers, agents, servants, employees, or attorneys.

14.    Pursuant to A.R.S. § 44-1528, Defendants are permanently enjoined, restrained, and prohibited from engaging in any and all acts or practices in violation of the CFA, as currently written or as amended in the future.

15.    CenturyLink shall not make any false or misleading statement of material fact, nor shall CenturyLink omit any material fact, in connection with CenturyLink's sale of internet, television, and/or telephone service to an Arizona consumer. For purposes of this Consent Judgment, the term "service" also refers to any goods or equipment purchased or leased in

4

connection with a service.

16.     For sales of its services, CenturyLink shall accurately and in a clear and conspicuous manner disclose any and all material terms or conditions of its offers to Arizona consumers at the time of sale, including, but not limited to, the following, where applicable:

    A.    The monthly base price of the service(s) the consumer purchases;

    B.    The amount (either the actual amount or, for fees or surcharges that are based on percentage, based on usage, or that vary by location, the average amount paid by CenturyLink consumers) of each recurring monthly fee or surcharge (except for those fees and surcharges described in paragraph 16(C) of this Consent Judgment) charged for the service(s) the consumer purchases, in addition to the monthly base price;

    C.    For the Access Recovery Charge, the Federal Universal Service Fund, the Property Tax Recovery Fee, and the Federal Regulatory Recovery Fee when applicable, CenturyLink shall disclose the total amount of these fees and surcharges (as an actual amount or, for fees or surcharges that are based on percentage, based on usage, or that vary by location, the average amount paid by CenturyLink consumers) that will appear on the consumer's First Invoice.  CenturyLink may refer the consumer to his or her First Invoice for an itemization of each of these applicable fees and surcharges;

    D.    The amount of each one-time fee, or fee charged only on the consumer's First Invoice, for the purchased service(s), including, but not limited to, activation and installation fees and equipment purchases;

    E.    The total amount of the First Invoice (using the actual amount in paragraph 16(A) and the actual or estimated amounts in paragraphs 16(B) through 16(D) of this Consent Judgment);

    F.    The total monthly cost of the service(s) starting in the month of service after the First Invoice (using the actual amount in paragraph 16(A) and the

5

actual or estimated amounts in paragraphs 16(B) through 16(C) of this Consent Judgment);

G.    Estimated taxes or that the quoted pricing does not include taxes;

H.    The time period for which the quoted prices apply;

I.     Any steps the consumer must take to receive the quoted price(s) and/or any discount(s);

J.     Any applicable early cancellation fee(s); and

K.    If applicable, that the consumer will be charged for failing to return any leased or rented equipment, and the amount of the charge(s).

17.    Within three (3) business days after the sale, CenturyLink shall send the consumer an Order Confirmation via regular mail, email, or other acceptable electronic communication that sets forth the pricing and material terms and conditions applicable to the consumer's service order, including the elements set forth in subparagraphs 16(A)-(K), above.  The written communication shall contain the words "Order Confirmation" in the title, subject line, or at the beginning of the communication.  For written disclosures sent by regular mail the phrase "Order Confirmation" shall be prominently displayed on the envelope.  The requirements in paragraphs 16-17 shall take effect within ninety (90) days of entry of this Consent Judgment.  If a consumer makes changes to his/her service order between the date of the consumer's service order and the service effective date, these changes will be reflected on the consumer's First Invoice.

18.    CenturyLink shall not charge any new Arizona consumers for any Internet Cost Recovery Fee or Broadband Cost Recovery Fee.  This requirement shall take effect within ninety (90) days of entry of this Consent Judgment.  Within ninety (90) days of the entry of this Consent Judgment, CenturyLink shall notify current Arizona consumers who are on term commitment plans for internet service that:  (i) they are being charged the Internet or Broadband Cost Recovery Fee and the amount of such fee, and (ii) if they wish to cancel their CenturyLink service as a result of being charged the fee they may do so within thirty (30) days of the notice without incurring an early termination fee.  In addition, within ninety (90) days of the entry of this Consent Judgment, CenturyLink shall notify current Arizona consumers who are on Price-

Lock plans for internet service that: (i) they are being charged the Internet or Broadband Cost Recovery Fee and the amount of such fee, and (ii) within thirty (30) days of the notice, they may transition to another CenturyLink internet plan that does not include a separate charge for the fee. CenturyLink shall send notice to consumers via email (to the extent that CenturyLink has current email addresses for such consumers) and as a separate insert included with the consumers' bills. The notice will include a heading to indicate that it is an important notice and is not an advertisement. If term commitment or Price-Lock consumers who receive such notice do not elect to cancel or transition their CenturyLink service within the thirty-day period as described above, these consumers will continue to be charged the Internet or Broadband Cost Recovery Fee through the expiration of their internet service plans. The Internet or Broadband Cost Recovery Fee will not be increased for consumers who elect to remain in their Price-Lock plans through the expiration of their internet service plans. If CenturyLink determines in its sole discretion that, within ninety (90) days of the entry of this Consent Judgment, it will no longer charge any Arizona consumer the Internet or Broadband Cost Recovery Fee, and will not reinstate it at any time in the future, CenturyLink shall not be required to send the written notices otherwise required under this paragraph 18. This paragraph 18 shall only apply to Arizona consumers who receive service from CenturyLink in Arizona except any written notices under this paragraph 18, if applicable, shall also be sent to Arizona consumers who have an Arizona mailing address.

19. No later than ninety (90) days after the entry of this Consent Judgment, if CenturyLink advertises an available price and charges any related fees or surcharges in addition to the advertised price, the existence of those fees or surcharges must be disclosed in the main text of the advertisement (e.g., "additional fees and surcharges apply" or "excludes fees and surcharges"). In addition, if CenturyLink charges fees or surcharges that are mandatory, but are not (i) paid to government or quasi-government entities, (ii) specifically authorized by law or regulation (e.g., the Access Recovery Charge, as expressly authorized by the Federal Communications Commission at the time of this Consent Judgment), or (iii) for additional services or goods (e.g., a modem rental fee) (collectively, "Specifically Disclosed Fees and

Surcharges"), additional disclosure requirements apply.    Specifically, CenturyLink shall disclose:

      A.     For internet advertisements,

          i.   The not to exceed total amount of all Specifically Disclosed Fees or Surcharges, which shall be identified as CTL or CenturyLink fees or surcharges, and the existence of other authorized taxes, fees, and surcharges.  These disclosures must be clear and conspicuous in close proximity to the advertised price.

        ii.   The name and nature or purpose of a Specifically Disclosed Fee or Surcharge.  This disclosure may be placed in the verbiage in the offer's details and may be satisfied by (i) identifying each Specifically Disclosed Fee or Surcharge and stating that such Specifically Disclosed Fees and Surcharges are neither a tax nor required by law but have been set by CenturyLink, and (ii) providing a link to CenturyLink's publicly available website that describes CenturyLink's common fees, surcharges, and taxes. The advertisement offer's details must be on the same page as the advertisement's main text, or may be available by a hyperlink or "hover over" feature labeled "Offer Details" or containing a substantively similar label.  If CenturyLink uses a "hover over" or hyperlink, it must be readily viewable in the advertisement's main text, in close proximity to the advertised price.

      iii.   These obligations do not apply to banner advertisements, side bar advertisements, social media posts, or internet search copy that require consumers to visit another website to order CenturyLink services, so long as the advertisements, posts, or search copy lead consumers to a webpage that contains the disclosures previously described in this paragraph in the form and manner previously described in this paragraph.

B.   For print advertisements,

    i.   The not to exceed total amount of all Specifically Disclosed Fees or Surcharges, which shall be identified as CTL or CenturyLink fees or surcharges, and the existence of other authorized taxes, fees, and surcharges.  These disclosures must be clear and conspicuous in close proximity to the advertised price.

    ii.  The name and nature or purpose of a Specifically Disclosed Fee or Surcharge.  This disclosure shall be placed on the same page of the advertisement as the corresponding price.  This disclosure may be satisfied by (i) identifying each Specifically Disclosed Fee or Surcharge and stating that such Specifically Disclosed Fees and Surcharges are neither a tax nor required by law but set by CenturyLink, and (ii) providing a reference to CenturyLink's publicly available website that describes CenturyLink's common fees, surcharges, and taxes.

C.   Video and audio advertisements shall disclose the not to exceed total amount of all Specifically Disclosed Fees or Surcharges, which shall be identified as CTL or CenturyLink fees or surcharges, and the existence of other authorized taxes, fees, and surcharges.  If the video or audio advertisement directs the consumer to a web page, the web page shall comply with the provisions of subparagraph (A) above.

D.   CenturyLink will continue to maintain a publicly available website that describes common fees, surcharges, and taxes.  CenturyLink currently maintains the following such website with these descriptions: https://www.centurylink.com/home/help/account/billing/taxes-fees-and-surcharges-on-your-bill.html.

E.   The font size of the Specifically Disclosed Fees and Surcharges will be no smaller than the smallest font in the main text of the advertisement.

20.   When selling goods and services as a sales agent of DIRECTV, CenturyLink shall

9

disclose any and all material terms or conditions of DIRECTV's offer.  Such material terms or conditions include, but are not limited to, the following, if applicable:

    A.    The cost to the consumer of any DIRECTV Goods ordered;

    B.    The first month's price of any DIRECTV Services ordered;

    C.    That a mandatory programming commitment/agreement will apply, including, but not limited to, the duration of the contract;

    D.    The current monthly fees and charges for HD and/or DVR services, if equipment requiring subscription to such services is initially ordered by the consumer;

    E.    Any costs, fees, or other consideration consumers must pay to cancel any DIRECTV Services, including, but not limited to, the following, if applicable:  (i) the existence of any early cancellation fee, (ii) the amount of such fees, and (iii) the amount such fees will decrease and on what basis such fees may be prorated;

    F.    That an equipment non-return fee may apply if leased DIRECTV Goods are not returned as required;

    G.    Any promotional price, and (i) the fact that the promotional price is contingent upon the consumer's request for a rebate(s), if applicable, (ii) each component or requirement for claiming a rebate, if applicable, (iii) the duration of the promotional price, and (iv) the current price of the DIRECTV Goods or DIRECTV Services ordered without any promotion or discount applied;

    H.    The fact that any price or offer is conditioned upon a consumer's agreement to a particular method and/or manner of payment; and

    I.    If DIRECTV offers its services, or any part of its services (e.g., a 3-month trial of premium movie channels or a protection plan), at no cost to the consumer for a period of time ("Promotional Period"), (i) whether the consumer will be automatically billed for the service following the

expiration of the Promotional Period, (ii) that the consumer must cancel the service within the Promotional Period to avoid being automatically billed for it, (iii) the cost of the service after the Promotional Period, (iv) the length of the Promotional Period, and (v) the means by which the consumer may cancel the service during the Promotional Period.

The parties' intent in this paragraph 20 is for CenturyLink to make the same point-of-sale disclosures of DIRECTV's goods and services as is required by § 6.14 in the Consent Judgment in *State v. DirectTV*, No. CV2010-033208 (Maricopa Cnty. Sup. Ct., Jan. 5, 2011) (the "DIRECTV Consent Judgment"). The terms "DIRECTV Goods" and "DIRECTV Services" as used in this Consent Judgment shall have the same meaning as in the DIRECTV Consent Judgment. If the terms of § 6.14 of the DIRECTV Consent Judgment change in the future, then the parties intend that CenturyLink's disclosures required by this paragraph shall also change accordingly. Nothing herein shall be construed to waive or modify any claims either party may have against the other under the DIRECTV Consent Judgment. Notwithstanding the foregoing, CenturyLink shall not be deemed to have violated this paragraph if CenturyLink can demonstrate that it did not cause the violation and that it did not know, prior to the violation, of the circumstances that caused the violation.

21.    In the written disclosure described in paragraph 17 and in all invoices it sends to customers, CenturyLink shall provide its mailing address and toll-free telephone number in a clear and conspicuous manner. The toll-free number shall direct customers to agents who have been specifically trained to respond to and address consumer complaints.

22.    CenturyLink shall record and retain the entirety of each telephone call with an Arizona consumer regarding the offer or sale of its service(s), and any complaint or concern directly related thereto, for at least two (2) years from the date of the call. CenturyLink shall inform each consumer at the beginning of the call that the call is being recorded. CenturyLink shall also retain all of its written correspondence with Arizona consumers regarding the offer or sale of its services(s) and any complaint or concern directly related thereto, including, but not limited to, emails and on-line chats, for at least two (2) years from the date of the

correspondence.  CenturyLink shall require any third-party vendor it utilizes to communicate with consumers to comply with this paragraph 22.

23.     Other than taxes (if taxes are not quoted), CenturyLink shall not charge any Arizona consumer any amount greater than the amount CenturyLink disclosed to the consumer in accordance with paragraph 16 of this Consent Judgment for its service(s), for the time period disclosed in accordance with paragraph 16 of this Consent Judgment, unless the consumer orders additional service(s) or if the consumer stops meeting restrictions or conditions that were disclosed in accordance with paragraph 16 of this Consent Judgment at the time of sale. CenturyLink shall not claim that a condition or restriction on the consumer's ability to receive the quoted price renders an offer void, if that restriction or condition was not disclosed in accordance with paragraph 16 of this Consent Judgment.

24.     CenturyLink shall not charge any consumer a cancellation fee unless CenturyLink discloses the existence of the cancellation fee at the time of sale in accordance with paragraph 16 of this Consent Judgment, **i**n the Order Confirmation in accordance with paragraph 17 of this Consent Judgment, and also at the time the consumer cancels the service.  CenturyLink shall not charge any consumer a cancellation fee if it cannot demonstrate it disclosed the cancellation fee at the point of sale, in the Order Confirmation, and at the point of service termination.

25.     CenturyLink shall not charge any consumer an unreturned equipment fee unless CenturyLink discloses the existence of the unreturned equipment fee at the time of sale in accordance with paragraph 16 of this Consent Judgment, in the Order Confirmation in accordance with paragraph 17 of this Consent Judgment, and also at the time the consumer's service is canceled.

26.     CenturyLink shall provide all gift cards, Visa cards, or other incentives that it promises to consumers, consistent with the terms and eligibility requirements of CenturyLink's offers.

27.     CenturyLink shall not charge unreturned equipment fees to consumers who timely return their equipment, such as modems, routers, and set-top boxes, in accordance with CenturyLink's stated policies.

12

## COMPLIANCE REPORTING

28.     On the first and third anniversaries of the entry of this Consent Judgment, CenturyLink must submit compliance reports, sworn under penalty of perjury by an individual or individuals with authority to bind each and every Defendant, regarding its compliance with the provisions of this Consent Judgment during the period covered by each report.   The compliance reports must:

A.     Identify the primary postal and email address and telephone number, as designated points of contact, which the Attorney General's Office may use to communicate with CenturyLink in connection with this Consent Judgment;

B.     Identify all of CenturyLink's business entities that offer goods and services to Arizona consumers by their names, telephone numbers, and physical, postal, email, and internet addresses;

C.     Describe the activities of each such business entity, including the goods and services offered and the means of advertising, marketing, and sales;

D.     State whether CenturyLink is in compliance with paragraphs 16-27 of this Consent Judgment;

E.     Describe the policies, procedures, and controls CenturyLink has instituted that are designed to ensure that CenturyLink's advertising and sale of goods and services do not make any false or misleading statement of material fact or omit any material fact, including:

i.     Establishment and maintenance of a team or business group that reviews all of CenturyLink's advertisements to Arizona consumers prior to dissemination and seeks to ensure that such advertisements do not make any false or misleading statement of material fact or omit any material fact;

ii.     Identification of the individuals and business groups that are responsible for seeking to ensure that CenturyLink's advertising and sales do not

13

make any false or misleading statement of material fact or omit any material fact;

iii. Identification of the individuals and business groups that are responsible for seeking to ensure that CenturyLink complies with its stated policy for fees connected to the failure to return rented equipment; and

iv. Identification of the individuals and business groups that are responsible for seeking to ensure that CenturyLink complies with the representations made to consumers with respect to the providing of gift cards or other incentives, consistent with the terms and eligibility requirements of such offers.

F.    Describe all billing issues, errors, and discrepancies that resulted in overcharges to more than 2,000 Arizona consumers during the reporting period, including, for each error or discrepancy, a description of:

i.  The nature and cause of the issue, error, or discrepancy;

ii. All steps taken to remediate the issue, error, or discrepancy; and

iii. All steps taken to communicate the details of the issue, error, or discrepancy to Arizona consumers and provide any necessary refunds or credits.

G.    Describe the policies, procedures, and controls CenturyLink has established that are designed to ensure that customer service representatives do not make any false or misleading statements to Arizona consumers about the price of CenturyLink's goods or services, including:

i.  Trainings provided to customer service representatives and their supervisors; and

ii. The quality assurance measures used by CenturyLink to monitor the performance of customer service representatives.

## RECORDKEEPING

29.    CenturyLink must create or retain certain records in the course of its business after

entry of this Consent Judgment and retain such records for four (4) years, as listed in paragraph 30 below.

30.    CenturyLink must create and retain the following records in connection with the advertisement and sale of its goods and services to Arizona consumers:

      A.    All written records of consumer complaints related to billing discrepancies or alleged misrepresentation of prices, whether received directly from a consumer or indirectly from government agencies or the Better Business Bureau, that are received or addressed by CenturyLink's Consumer Advocacy Group ("CAG") or any group or department with a similar role to the CAG established after the entry of this Consent Judgment, which records shall include for each complaint, at a minimum, available consumer contact information, date of complaint, source of complaint, category of complaint, response to complaint, and outcome of complaint;

      B.    All records necessary to demonstrate full compliance with each provision of this Consent Judgment, including all submissions to the State; and

      C.    A copy of each unique advertisement or other marketing material created, produced, or approved by CenturyLink that was disseminated to Arizona consumers.

## **MONETARY PAYMENTS**

31.    No later than thirty (30) business days after the Court enters this Consent Judgment, Defendants shall pay to the State the amount of seven million dollars ($7,000,000), to be deposited into the Consumer Protection – Consumer Fraud Revolving Fund pursuant to A.R.S. § 44-1531.01 and used for the purposes set forth therein.  The State shall use $250,000 of that amount for consumer fraud education and increasing public awareness of consumer fraud issues.  No part of any payment shall be designated as a civil penalty, fine, and/or forfeiture.

32.    In response to an investigative request by the State, Defendants represent that they have paid or plan to pay consumers $1,992,915 for what the State alleges were overcharges relating to a failure to apply "Closer" discounts to consumer accounts, subject to offsets for

consumers who owe Defendants monies.  Within ten (10) business days of the date this Consent Judgment is entered by the Court, Defendants shall provide the State proof of all payments they have made toward the $1,992,915 as of that date.  Defendants shall pay the remainder of the $1,992,915 by March 31, 2020.  On or before March 31, 2020, Defendants shall provide the State proof that they paid all of the $1,992,915 in accordance with this paragraph.  If, after making reasonable, good-faith attempts to make all payments to all former customers, Defendants have not paid all of the $1,992,915, Defendants shall, on or before December 31, 2020, pay any unpaid amounts to the State, to be deposited into the Consumer Restitution subaccount of the Consumer Restitution and Remediation Revolving Fund pursuant to A.R.S. § 44-1531.02(B), and used for the purposes set forth therein.  Defendants shall further provide the State the names and last known contact information of all of the former customers to whom they have been unable to distribute payment.

33.    The payments required herein shall be paid by wire transfer or in the form of cashier's checks or money orders made payable to "The State of Arizona."  Payment shall be wired, delivered, or mailed and postmarked, to:

> Consumer Protection and Advocacy Section
>
> The Office of the Arizona Attorney General
>
> 2005 N. Central Ave.
>
> Phoenix, AZ 85004

34.    In the event of a default of the payment obligations imposed by this Consent Judgment, and in addition to any other relief or remedy elected or pursued by the State, all payments set forth herein shall be accelerated and shall become due and owing in their entirety as of the date of the default, with interest accruing at the statutory rate until paid.

## INFRASTRUCTURE

35.    CenturyLink agrees to invest, within twenty-four (24) months after the Court enters this Consent Judgment, two million dollars ($2,000,000) in CenturyLink fiber optic infrastructure in locations across Arizona.  The locations of these investments shall be determined in coordination with the Attorney General's Office.

## **RELEASE**

36.    Upon payment of the amount due under paragraph 31 of this Consent Judgment, the State of Arizona, *ex. rel.* Mark Brnovich, Attorney General, by its execution of this Consent Judgment, releases the Released Parties from the following:  all known and unknown civil claims, causes of action, damages, restitution, disgorgement, fines, attorneys' fees, costs, requests for injunctive relief, remedies, and/or penalties that have been or could have been asserted by the State against any of the Released Parties pursuant to the CFA or pursuant to common law concerning unfair, deceptive, or fraudulent trade practices, up to and including the date of the Court's entry of this Consent Judgment, related to or arising from the Covered Conduct that is the subject of this Consent Judgment.  "Covered Conduct" means the marketing, promotion, and sale of goods or services or bundled goods or services by CenturyLink, including, but not limited to, whether CenturyLink provided consumers with promised sales discounts or otherwise billed consumers higher rates than were quoted during sales communications;  whether CenturyLink adequately disclosed fees and surcharges when advertising and selling its goods and services; whether CenturyLink billed consumers for goods or services that were not ordered or delivered, not delivered as promised, or were appropriately cancelled; whether CenturyLink changed the amounts of prices, fees, or surcharges without adequate notice to or consent by consumers; whether CenturyLink improperly imposed early termination fees; whether CenturyLink imposed unreturned equipment fees on consumers who had returned their equipment; whether CenturyLink failed to provide gift cards promised during sales communications; and all other claims and allegations alleged in the Complaint.  Nothing in this Consent Judgment shall be construed as preventing the State from investigating or bringing an enforcement action for any violations of any applicable state laws, regulations, rules, and permits occurring subsequent to entry of this Consent Judgment.  Further, nothing in this Consent Judgment shall be construed to create, waive, or limit any action brought by any state agency other than the Office of the Attorney General; however, the Office of the Attorney General is unaware of any investigation by any other state agency involving the conduct of CenturyLink that relates to the Covered Conduct.

37.    The parties enter into this Consent Judgment as a compromise and settlement of all disputed claims as alleged herein and in the Complaint.  This Consent Judgment is entered into without trial or adjudication of any issue of fact or law or finding of liability of any kind, and nothing contained in this Consent Judgment shall be construed or deemed an admission by Defendants of any wrongdoing or any violation of state or federal law or regulation.  Defendants expressly deny any liability or wrongdoing and are entering into this Consent Judgment to avoid further inconvenience and costs of potential litigation.

38.    No part of this Consent Judgment, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by CenturyLink.  This Consent Judgment shall not be construed or used as a waiver or limitation of any defense otherwise available to CenturyLink in any action, or of CenturyLink's right to defend itself from, or make any arguments in, any private individual, regulatory, governmental, or class claims or suits relating to the subject matter or terms of this Consent Judgment.

39.    This Consent Judgment is the result of a compromise and settlement agreement between the parties.  Only the parties to this action may seek enforcement of this Consent Judgment.  Unless otherwise noted, nothing herein shall be construed as a waiver of any private rights, causes of action, or remedies of any person against CenturyLink with respect to the acts and practices covered by this Consent Judgment.

40.    This Consent Judgment is for the benefit of the parties only and does not create or confer rights or remedies upon any other person, including rights as a third-party beneficiary. This Consent Judgment does not create a private right of action on the part of any person or entity, whether to enforce this Consent Judgment or otherwise, other than the parties hereto and their successors in interest.

41.    CenturyLink may assert an affirmative defense to an allegation that any of the terms of this Consent Judgment have been violated if all of the following apply:  (i) CenturyLink has implemented reasonable and appropriate policies and procedures to ensure compliance with this Consent Judgment; (ii) the alleged violation is the result of either (a) an isolated and inadvertent error related to technical or coding issues, or system glitches, or (b) an

isolated act by a CenturyLink employee, agent, or independent contractor, contrary to CenturyLink's policies and procedures; (iii) CenturyLink has reasonable safeguards in place to monitor, discover, and prevent these types of isolated and, if applicable, inadvertent occurrences from happening; and (iv) CenturyLink took appropriate steps to immediately investigate and remedy the isolated and, if applicable, inadvertent errors or glitches identified by CenturyLink or otherwise brought to its attention. Such remedy shall address any adverse or negative customer impact(s) in a way that is consistent with the terms of this Consent Judgment, including, but not limited to, providing all credits or refunds that are due to customers as a result of any technical or coding issues, or system glitches, prior to inquiry by the Attorney General's Office.

42.    If the State believes that CenturyLink has failed to comply with this Consent Judgment, the State will notify CenturyLink in writing of such failure to comply and CenturyLink shall have thirty (30) calendar days from such written notice to provide a good-faith written response to the State, including a statement that CenturyLink believes it is in full compliance or otherwise a statement explaining how the violation occurred, how it has been addressed, or when and how it will be addressed, and what CenturyLink will do to make sure the violation does not happen again. The State may agree in its sole discretion to provide CenturyLink with more than thirty (30) days to respond.

43.    Nothing herein shall limit the right and authority of the State to initiate a proceeding for any alleged failure to comply with this Consent Judgment after receiving the response from CenturyLink described in paragraph 42, or if CenturyLink fails to respond, if the State determines in its sole discretion that an enforcement action is in the public interest.

44.    This Consent Judgment shall apply to CenturyLink's initial sale of service to any Arizona consumer, and shall apply to any subsequent sale or material change made to any Arizona consumer's service after the initial sale. Except as provided in (i) paragraph 18 above which applies in part only to Arizona consumers who receive service from CenturyLink in Arizona, and (ii) paragraph 51 below concerning certain provisions of the Assurance of Discontinuance incorporated herein that apply only to residential customers, this Consent

Judgment applies only to residential and small business customers (that is, businesses with ten (10) employees or less that are billed less than $2,000.00 per month in recurring charges and that do not purchase their service(s) by executing a master service agreement or an order subject to a master service agreement with CenturyLink) who have an Arizona mailing address or who receive service from CenturyLink in Arizona. This Consent Judgment applies to CenturyLink's sale of internet, television, and telephone service (other than standalone sales of basic home phone service). Except as otherwise specifically stated herein, all provisions of this Consent Judgment take effect immediately upon entry of this Consent Judgment. If changes in technology or other factual conditions render CenturyLink's compliance with certain provisions of this Consent Judgment impracticable, the parties agree to cooperate in good faith and make such modifications to the Consent Judgment as are necessary. In addition, after ten (10) years from the date of entry of this Consent Judgment, CenturyLink may move the Court to terminate this Consent Judgment if it believes that the interests of justice so require.

45.     CenturyLink shall provide a copy of this Consent Judgment within thirty (30) days of entry of this Consent Judgment to all members of its board of directors and all members of its leadership team. CenturyLink shall also provide notice of this Consent Judgment to all of its officers, employees, agents, independent contractors, affiliates, and those acting in concert with CenturyLink who are reasonably expected to be involved in the implementation of or compliance with the requirements set forth in this Consent Judgment.

46.     CenturyLink shall fulfill the terms of this Consent Judgment, and any of its parents, subsidiaries, successors, officers, employees, agents, independent contractors, affiliates, and those acting in concert with CenturyLink who are reasonably expected to be involved in the implementation or compliance with the requirements of this Consent Judgment shall be bound by this Consent Judgment so as to accomplish the full relief contemplated by this Consent Judgment. CenturyLink shall not effect any change in its form of doing business, organizational identity, organizational structure, affiliations, ownership, or management composition as a method or means of attempting to avoid the requirements of this Consent Judgment.

47.     The State agrees to take no further action in opposing the proposed class-action

settlement in *In re: CenturyLink Sales Practices and Securities Litigation*, MDL No. 17-2795 (MJD/KMM), United States District Court for the District of Minnesota ("MDL"), and further agrees that within ten (10) business days of the effective date of this Consent Judgment it will inform the MDL court that it intends to take no further action.  However, the State expressly reserves and maintains its legal position, articulated in the amicus curie brief filed on November 22, 2019 in the MDL (Doc. 498), that private class-action settlements do not limit the Attorney General's ability to provide restitution as part of law-enforcement actions under the CFA.

48.    Nothing in this Consent Judgment shall be construed as an approval by the Attorney General, the Court, the State of Arizona, or any agency thereof of Defendants' past, present, or future conduct.  Defendants shall not represent or imply that the Attorney General, the Court, the State of Arizona, or any agency thereof has approved or approves of any of the Defendants' actions or any of the Defendants' past, present, or future business practices.

49.    This Consent Judgment represents the entire agreement between the parties, and there are no representations, agreements, arrangements, or understandings, oral or written, between the parties relating to the subject matter of this Consent Judgment which are not fully expressed herein or attached hereto.

50.    If any portion of this Consent Judgment is held invalid by operation of law, the remaining terms thereof shall not be affected and shall remain in full force and effect.

51.    To the extent that any provision of this Consent Judgment addresses the subject of any provision of the Assurance of Discontinuance in the *Matter of Qwest Corporation, d/b/a CenturyLink QC*, No. CV2016-002842, entered on April 13, 2016, the provision of this Consent Judgment shall control; provided, however, that the parties incorporate paragraphs 14 and 18 through 20 of the Assurance of Discontinuance into this Consent Judgment, which apply only to residential customers, as if fully set forth herein.  This Consent Judgment shall not otherwise be construed to limit any claim available to the State under the Assurance of Discontinuance.

52.    Jurisdiction is retained by this Court for the purpose of entertaining an application by the State for the enforcement of this Consent Judgment.

53.    The effective date of this Consent Judgment is the date that it is entered by the

21

Court.

54.    This Consent Judgment resolves all outstanding claims expressly identified in the Complaint as to the Defendants.  As no further matters remain pending, this is a final judgment entered pursuant to Ariz. R. Civ. P. 54(c).

DATED this _____ day of _____, 20_____.


_____
JUDGE OF THE SUPERIOR COURT

## <u>CONSENT TO JUDGMENT</u>

1.     Defendants acknowledge that they have waived service of the Summons and Complaint, have read this Consent Judgment, and are aware of their right to a trial in this matter and have waived the same.

2.     Defendants admit the jurisdiction of this Court and consent to the entry of this Consent Judgment.

3.     Defendants state that no promise of any kind or nature whatsoever was made to induce them to enter into this Consent Judgment and declare that they have entered into this Consent Judgment voluntarily.

4.     This Consent Judgment is entered as a result of a compromise and a settlement agreement between the parties.  Only the parties to this action may seek enforcement of this Consent Judgment.  Nothing herein is intended to create a private right of action by other parties; however, this Consent Judgment shall not limit the rights of any private party to pursue any remedies allowed by law.

5.     Defendants acknowledge that their acceptance of this Consent Judgment is solely for the purpose of settling a consumer-fraud lawsuit filed by the State, and further acknowledge that this Consent Judgment does not preclude any other agency or officer of this State or subdivision thereof from instituting other civil or criminal proceedings as may be appropriate.

6.     This Consent to Judgment may be executed in counterparts and be delivered by facsimile or electronic transmission, or a copy thereof, each of which shall constitute an original counterpart hereof, all of which together will constitute one and the same document.

7.     Defendants represent and warrant that the person signing below on their behalf is duly appointed and authorized to do so.

1   DATED this 25th day of February, 20 20.

2

3                                           CenturyLink, Inc.;
4                                           Qwest Corporation;
5                                           CenturyLink Communications LLC;
                                            Qwest Broadband Services, Inc.
6

7

8       By:
9           Ryan McManis
10          Vice President and Deputy General
            Counsel, CenturyLink
11

12

13  **APPROVED AS TO FORM AND CONTENT:**

14  **MARK BRNOVICH**                       **GRANT WOODS**
15  **Attorney General**                    **Grant Woods Law**

16

17

18  By:
19      Stephanie Elliott                   Grant Woods
        Jennifer Bonham                     Attorney for Defendants
20      Assistant Attorneys General
        Attorneys for the State of Arizona
21

22

23

24

25

26

27

28

24