**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION<br><br><br>This Document Relates to:<br>Civil File No. 18-296 (MJD/KMM) | MDL No. 17-2795 (MJD/KMM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     DEFENDANTS FAIL TO PROVE LACK OF PRICE IMPACT ........................... 2

       A.     Defendants Fail To Disprove Back-End Price Impact ................................. 3

       B.     Defendants Fail To Disprove Front-End Price Impact ................................ 8

II.    PLAINTIFFS' CLASSWIDE DAMAGES MODEL SATISFIES *COMCAST* ..... 11

III.   THE *AFFILIATED UTE* PRESUMPTION APPLIES ........................................... 13

IV.    OREGON IS ADEQUATE AND TYPICAL UNDER RULE 23 ......................... 14

V.     THE FULL CLASS PERIOD SHOULD BE CERTIFIED .................................. 16

VI.    CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ............................................................. 5, 6, 12

*Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    955 F.3d 254 (2d Cir. 2020) .................................................. *passim*

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................. 2, 6, 16

*Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.*,
    2016 WL 4098741 (D. Minn. 2016) ..................................... *passim*

*In re BP p.l.c. Sec. Litig.*,
    2014 WL 2112823 (S.D. Tex. May 20, 2014) ............................ 13

*Brown v. State of Or., Dep't of Corr.*,
    173 F.R.D. 265 (D. Or. 1997) ..................................................... 14

*In re CenturyLink Sales Practices & Sec. Litig.*,
    403 F. Supp. 712 (D. Minn. July 30, 2019) .................... 5, 8, 9, 14

*Comcast Corp. v. Behrand*,
    569 U.S. 27 (2013) ........................................................... 1, 11, 12

*Di Donato v. Insys Therapeutics*,
    333 F.R.D. 427 (D. Ariz. 2019) ..................................................... 8

*In re Domestic Drywall Anti. Litig.*,
    2017 WL 3700999 (E.D. Pa. Aug. 24, 2017) ............................ 13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ............................................................. 1, 5, 12

*In re Finisar Corp. Sec. Litig.*,
    2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ............................ 10

*In re GenesisIntermedia, Inc. Sec. Litig.*,
    232 F.R.D. 321 (D. Minn. 2005)..................................................... 16

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ...................................................... 2, 3, 9, 10

*Hatamian v. Advanced Micro Devices, Inc.*,
    2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ......................................................*passim*

*In re Heckmann Corp. Sec. Litig.*,
    2013 WL 2456104 (D. Del. June 6, 2013) ................................................................... 11

*Howard v. Liquidity Servs.*
    322 F.R.D. 103 (D.D.C. 2017) ..................................................................................... 15

*IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*,
    818 F.3d 775 (8th Cir. 2016) ....................................................................................... 10

*La. Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    2017 WL 3149424 (D. Vt. July 21, 2017) ................................................................... 13

*Levy v. Gutierrez*,
    2019 WL 8405213 (D.N.H. Sept. 30, 2019) ............................................................... 13

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ....................................................................................... 5

*Loritz v. Exide Techs.*,
    2015 WL 6790247 (C.D. Cal. July 21, 2015) (Wilson, J.) .......................................... 13

*Menaldi v. Och-Ziff Cap. Mgmt. Grp., LLC*,
    328 F.R.D. 86 (S.D.N.Y. 2018) ............................................................................ 13, 17

*In re Moody's Corp. Sec. Litig.*,
    274 F.R.D. 480 (S.D.N.Y. 2011) .......................................................................... 10, 11

*Ret. Sys. v. Freddie Mac*,
    2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) .......................................................... 13

*Ret. Sys. v. Southern Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) ...........................................................................*passim*

*Ret. Tr. v. RH, Inc.*,
    2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ....................................................... 12, 13

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
    2018 WL 1831850 (S.D.N.Y. Apr. 11, 2018) ............................................................. 13

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................................... 3

*In re Select Comfort Corp. Sec. Litig.*,
    202 F.R.D. 598 (D. Minn. 2001)..................................................................... 15

*Singleton v. Fifth Generation, Inc.*,
    2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ........................................... 13

*In re Snap Inc. Sec. Litig.*,
    2019 WL 6270291 (C.D. Cal. Nov. 20, 2019) (Wilson, J.).................... 13, 17

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015)........................................................................... 11

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)........................................................................... 2

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
    2019 WL 2305491 (3d Cir. May 30, 2019) .................................................. 7

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
    2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ............................................... 10

*W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    325 F.R.D. 280 (D. Minn. 2018)............................................................ 13, 14

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)............................................................... 2, 6, 9, 10

*Weiner v. Trivity Health, Inc.*,
    2020 WL 467783 (D. Tenn. Jan. 29, 2020) ............................................... 15

*Wyler v. Korean Air Lines Co., Ltd.*,
    928 F.2d 1167 (D.C. Cir. 1991) .................................................................. 14

*In re Zonagen, Inc. Sec. Litig.*,
    322 F. Supp. 2d 764 (S.D. Tex. 2003) ....................................................... 11

Plaintiffs' opening motion established that this case is ideally suited for class treatment. In opposition, Defendants concede that this case satisfies virtually all Rule 23 requirements, including that common issues predominate for most liability elements of Plaintiffs' claims. Defendants largely concede that at least some class should be certified in asking the Court, in the alternative, to simply shorten the class period.

The limited challenges Defendants do raise are fatally flawed. ***First,*** under the guise of challenging "price impact," Defendants contend that the corrective disclosures revealing CenturyLink's "Wells Fargo-like" misconduct were not "actual" corrective disclosures. But Defendants' own expert agrees two corrective disclosures are statistically significant, which dooms this argument. Moreover, Defendants' argument raises an issue of loss causation which, as the U.S. Supreme Court has held, is a class-wide merits issue that is irrelevant at the class certification stage. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812-15 (2011) ("*Halliburton I*").

***Second***, Defendants dispute Plaintiffs' "out-of-pocket" damages model under *Comcast*, again raising premature (and class-wide) merits issues. But they ignore that this well-accepted method is used in nearly every securities class action, and even Defendants' own expert testified that Plaintiffs' methodology is common to all members of the class.

***Last***, Defendants attack Oregon's adequacy by baselessly contending that it traded on material nonpublic information, disregarding uncontroverted testimony refuting this nonsensical claim. In reality, Oregon is the exact type of Lead Plaintiff Congress intended to lead securities class actions and has ably represented the class here.

## I.   DEFENDANTS FAIL TO PROVE LACK OF PRICE IMPACT

Defendants spend most of their opposition attempting to rebut the *Basic* presumption of class-wide reliance by showing that Defendants' misstatements and omissions lacked price impact.  To prevail on this argument, Defendants bear the burden of persuading the Court that they have completely "sever[ed] the link" between the alleged misrepresentations and any impact on CenturyLink's stock price.  *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281-82 (2014) ("*Halliburton II*") (defendants must "show[] that the alleged misrepresentation[s] did not actually affect the stock's market price"); *Waggoner v. Barclays PLC*, 875 F.3d 79, 101 (2d Cir. 2017) (defendants must "demonstrate that the misrepresentations did not affect the stock's price by a preponderance of the evidence"). This "heavy burden" presents a "daunting task" that requires Defendants to prove "that the market would not have reacted had [Defendants] told the truth," and that the "alleged misstatements [had] no price impact whatsoever." *Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 271 (2d Cir. 2020); *Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019).

Moreover, because price impact can be observed on the "front-end" (*i.e.*, misstatements causing or maintaining inflation) *or* on the "back-end" (*i.e.,* a decline in price caused by the corrective disclosures), Defendants must affirmatively disprove *both* to satisfy their burden.  *See Goldman,* 955 F.3d at 265-66, 271 (rejecting argument that absence of price movement on misstatement days rebutted price impact because "inflation was demonstrated on the [corrective-disclosure] dates"); *In re Vivendi, S.A. Sec. Litig.*, 838

F.3d 223, 260 (2d Cir. 2016) (rejecting notion that price impact requirement means a "misstatement must be associated with an increase in inflation to have any effect"); *Southern Co.*, 332 F.R.D. at 395; *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *7-8 (N.D. Cal. Mar. 16, 2016).

Defendants' own expert concedes that the evidence does not prove a complete absence of either front-end or back-end impact, and testified at deposition that he was not even asked to prove a lack of price impact. Instead, Defendants oppose class certification by attempting to reverse the burden. DB-9-19. But the Supreme Court has rejected this approach. *Halliburton II*, 573 U.S. at 278-79 (plaintiffs are not required show price impact at the class certification).[1]

### A.    Defendants Fail To Disprove Back-End Price Impact

To rebut the reliance presumption by showing a lack of "back-end" price impact, Defendants "must show…that the entire price decline on the corrective-disclosure dates was due to something other than the corrective disclosures." *Goldman*, 955 F.3d at 271; *see also, e.g.*, *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 315 (S.D.N.Y. 2010) (defendants must prove not even "a penny" attributable to corrective disclosures). Here, Defendants must prove that none of the corrective disclosures—revealing a whistleblower

---

[1] Citations to "P¶__" and "PX-__" refers to the paragraphs and exhibits, respectively, in the Blatchley Declaration filed herewith. "DX-__" refers to the exhibits to the Blair Declaration (ECF No. 227) and "DB-__" refers to Defendants' opposition (ECF No. 226). References to "¶__" are to the Complaint (ECF No. 143), "Deal-Rpt.¶__" refers to the Expert Report of Bruce Deal (ECF No. 227-1), and "Hartzmark-Rbt.¶__" refers to the accompanying Rebuttal Report of Dr. Hartzmark. Unless noted, defined terms are those in the Complaint, internal citations are omitted, and all emphasis is added.

lawsuit, nationwide consumer class actions, and the findings of the Minnesota Attorney General's year-long investigation—revealed *anything* false about any of Defendants' misstatements. The sole basis for Defendants' back-end price impact argument is their expert's analysis, which fails to make this showing for several reasons.

*First*, Mr. Deal simply has *not* opined that there was no price impact. He performed none of the analysis necessary to support any such opinion. He does not dispute that the price declines on two of the three corrective disclosure days are statistically significant and conceded that there was a negative abnormal decline on the third date. Deal-Rpt.¶¶141-42, 145; Hartzmark-Rbt. ¶¶21-22. He identified no confounding information disclosed on the corrective disclosure dates, and made no attempt to scientifically analyze whether *any* of the price decline on those days was unrelated to the fraud—let alone the *entirety*—as Defendants must prove to carry their burden. Hartzmark-Rbt.¶¶11-12, 46-68; PX-H at 164:19-165:21; *see Goldman*, 955 F.3d at 271-74.

Mr. Deal's admission that statistically significant returns followed two of the corrective disclosures—the June 16, 2017 disclosure of the whistleblower lawsuit and July 12, 2017 revelation of the Minnesota Attorney General lawsuit—is alone fatal. *E.g.*, Deal-Rpt.¶¶141-42, 145; *see also* PX-H at 90:15-91:2. These disclosures show that there *was* price impact, and should end the dispute. *See Hatamian*, 2016 WL 1042502, at *7-8 (granting certification where defendants conceded statistically significant declines on corrective disclosures); *Southern Co.*, 332 F.R.D. at 395 (same).

*Second*, the limited opinion Mr. Deal has offered amounts to a premature loss causation argument that is improper at this stage. Specifically, Defendants assert that the

4

corrective disclosures "did not reveal anything about CenturyLink's sales and billing practices" and thus did not "'correct' the alleged misrepresentations." DB-16-17. But this is a paradigmatic loss causation argument. *See Halliburton I.*, 563 U.S. at 811-12 (proving a stock price decline occurred because of "the correction to a prior misleading statement" "*is* the loss causation requirement"). As the Supreme Court has held, loss causation issues cannot defeat certification because they are common to the class, and require full fact and expert discovery to resolve. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 475 (2013) ("loss causation [is a] common question").

Moreover, Defendants' expert's opinion that the corrective disclosures "did not reveal anything new" has already been rejected by this Court for purposes of this stage of the litigation. *In re CenturyLink Sales Practices & Sec. Litig.*, 403 F. Supp. 712, 735-36 (D. Minn. July 30, 2019) ("Plaintiffs have adequately pled loss causation [in alleging the truth was revealed through] news reports on the lawsuits alleging systemic cramming at CenturyLink"). And Mr. Deal's opinion that a restatement or similar admission of wrongdoing is required (Deal-Rpt.¶23) has been repeatedly rejected by courts, including in this case. *See CenturyLink*, 403 F. Supp. 3d at 735-36; *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). Defendants must await summary judgment or trial to re-litigate these rejected class-wide arguments. *See Goldman*, 955 F.3d at 273-74.

*Third*, Defendants' loss causation arguments are flatly incorrect. Defendants argue that the disclosures do not demonstrate price impact because they were supposedly influenced by "fear, uncertainty, and doubt" or "FUD"—a concept their expert borrowed from the technology antitrust field. Deal-Rpt.¶108-10; PX-H at 150:4-157:4; Hartzmark-

Rbt.¶¶55-58.  While Mr. Deal offers no empirical or other support for his "FUD" theory, even if Defendants could show that some portion of the decline was driven by "fear"—which they have not even attempted to do—that is "not enough to rebut the *Basic* presumption."  *Goldman*, 955 F.3d at 271; *see also Waggoner*, 875 F.3d at 104-05 ("that another factor *also* contributed" does not rebut price impact).  Here, Mr. Deal did not opine that "FUD" alone caused the declines or even assess whether "FUD" was responsible for any portion of them—let alone the *entirety* of them—as required to prevail.  PX-H at 84:6-85:23; 162:2-165:21; Hartzmark-Rbt. ¶¶55-58.

*Fourth*, Defendants contend that there is no price impact because general concerns about cramming existed in the market.  Deal-Rpt.¶¶56-58.  This is wrong.  Defendants' truth-on-the-market defense cannot defeat class certification because, as the Supreme Court held in *Amgen*, it raises common, class-wide issues.   568 U.S. at 482 (whether truth "entered the market" before disclosures raises "common" issues for trial).  In any event, the corrective disclosures here revealed new material information—as the disclosures themselves make clear.  ¶¶275-80; PX-H at 85:24-90:5; Hartzmark-Rbt.¶53, ¶¶24-54.

*Fifth*, Defendants argue a lack of price impact by incorrectly contending the June 19, 2017 decline was not statistically significant.  Defendants are wrong.  As shown by Dr. Hartzmark, the June 19, 2017 decline is statistically significant at the 94% confidence level using a one-day window, and under both parties' experts' event studies, the decline is statistically significant at least a 95% confidence level using a two-day window.  Hartzmark-Rbt.¶94, ¶¶69-70.  While Defendants' expert urges a one-day window, the analysis supporting his opinion failed to consider the disclosure that caused the decline and

a host of other facts he conceded could be "relevant" or "important" to assessing it, and which courts have held justify a two-day window. *See* Hartzmark-Rbt. ¶¶74-94; PX-H at 190:23-212:3; *Southern Co.*, 332 F.R.D. at 394-95.

In any event, the experts' dispute is academic given that the absence of a statistically significant price movement "does not prove that [the] price was not impacted by the alleged misrepresentations." *Southern Co.*, 332 F.R.D. at 394-95 ("A non-statistically significant decline simply does not 'sever the link'"); *Vizirgianakis v. Aeterna Zentaris, Inc.*, 2019 WL 2305491, at *2 (3d Cir. May 30, 2019). Thus, at best, Defendants' analysis is irrelevant and, fairly considered, supports—rather than rebuts—price impact.

*Last,* Defendants ignore that the (still developing) evidentiary record demonstrates price impact. For example, Mr. Deal ignores contemporaneous market reaction to the disclosures (Hartzmark-Rbt.¶¶24-45)—a notable failure for an expert who purports to opine on what was revealed to the market by examining analyst commentary. The analysts Mr. Deal studiously ignores expressed surprise and lowered their targets in response to the disclosures, with one, for example, explaining that ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ Hartzmark-Rbt.¶42.

Mr. Deal also ignores internal evidence showing, for example, that ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

7

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████  *See*

*CenturyLink*, 403 F. Supp. 3d at 728; Hartzmark-Rbt.¶¶74-78.  This evidence refutes the notion that the June 19 decline evinces a lack of price impact, that a one-day window is appropriate, or that Defendants' loss causation defense can be decided prior to trial.

### B.    Defendants Fail To Disprove Front-End Price Impact

Having failed to disprove back-end price impact, it is unnecessary to consider Defendants' front-end arguments.  *See, e.g., Hatamian*, 2016 WL 1042502, at *7-8.  But Defendants' front-end impact arguments are similarly meritless.

*First*, Defendants' core contention—that the absence of statistically significant price increases on certain misrepresentation dates proves a lack of front-end price impact— is without basis.  As Defendants' expert admitted, misstatements or omissions can introduce or maintain artificial inflation in a stock (*i.e.*, can have price impact) regardless of whether a stock's price increases significantly, decreases significantly, or does neither. PX-H at 123:14-135:18.  For this very reason, courts have repeatedly rejected the argument that a lack of a statistically significant price increase shows a misstatement lacked price impact. *See, e.g.*, *Hatamian*, 2016 WL 1042502, at *7 ("that there was no statistically significant price impact on [16 of 20] misstatement dates" does not show absence of price impact); *see also Di Donato v. Insys Therapeutics*, 333 F.R.D. 427, 444 (D. Ariz. 2019).

Indeed, a cursory review of the Complaint shows why Defendants' misstatements and omissions here would not necessarily have caused statistically significant price

increases.  For example, Plaintiffs allege that Defendants engaged in cramming specifically in order "to *meet* the financial projections Defendants provided to Wall Street" (¶¶2, 67), with internal documents showing that ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████   ██████████████████████████████████ P¶¶6-7.  Similarly, the Complaint alleges Defendants omitted negative, material facts (*see, e.g.*, ¶¶200, 203, 225)—which Defendants' expert agreed would not result in a price increase. *See* PX-H at 135:3-18; Hartzmark-Rbt.¶¶101-03.  In other words, Defendants' own expert concedes the lack of statistically significant price increases on misstatement dates proves nothing.

*Second*, recognizing that an absence of statistical significance does not demonstrate a lack of front-end price impact, Defendants resort to misconstruing the law concerning the well-accepted "price maintenance" doctrine and mischaracterizing Plaintiffs' Complaint. While Defendants claim courts are "dubious" of this doctrine, the opposite is true.  As the Second Circuit recently noted in criticizing a similar argument, securities plaintiffs proceeded on a price maintenance theory in 20 out of 28 (or 71% of) cases following *Halliburton II*—and in all 20, the district court held the defendant failed to rebut the presumption. *Goldman*, 955 F.3d at 266 n.9.[2]

---

[2] While Defendants suggest Plaintiffs are now "concocting" a price maintenance theory, this case has always been about Defendants' "repeated" misrepresentations and omissions concealing CenturyLink's "years long" cramming—a classic price maintenance fact pattern. *CenturyLink*, 403 F. Supp. 3d at 720; ¶¶194-95, 202, 206, 238-240; *Waggoner*, 875 F.3d at 85-88, 104-05; *Goldman*, 955 F.3d at 258-59, 265-66.

*Last*, Defendants concede that at least four misstatement dates were associated with statistically significant price increases. DB-13-14. While Defendants contend—citing no authority—that these price increases are not enough to show a lack of price impact, courts actually hold the opposite. *See, e.g., W. Palm Beach Police Pension Fund v. DFC Global*, 2016 WL 4138613, at *14 (price impact argument rejected where analysis showed "statistically positive price movement" on one of 20 misstatement days); *Hatamian*, 2016 WL 1042502, at *7-8 (statistically significant price increases on four of 20 misstatement days). This alone is fatal. If anything, the four misstatements with statistically significant price increases demonstrates price impact—and certainly does not disprove it. *Waggoner*, 875 F.3d at 101.

Thus, the facts here stand in sharp contrast to those in *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 818 F.3d 775, 780 (8th Cir. 2016) where plaintiffs alleged a single false statement introduced inflation. Rather, this case is like *Waggoner* and *Goldman* (and dozens more), where defendants made repeated misstatements concerning ethics and customer treatment that did not result in price increases on misstatement dates but—like here—the price declined in response to disclosures of an attorney general and SEC lawsuit, respectively. 875 F.3d at 103-04 & n.36 (distinguishing *Best Buy* as having "overwhelming evidence" of a lack of price impact); 955 F.3d at 258-59, 265-66.[3]

---

[3] In Defendants' case, *In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *8 (N.D. Cal. Dec. 5, 2017), the plaintiffs disclaimed price maintenance while Defendants' other cases pre-date *Halliburton II* and are inapposite given Defendants here concede significance for certain of the misstatement and disclosure dates. *Cf. In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 490, 492-93 (S.D.N.Y. 2011) (no statistical increase following misstatement

## II.    PLAINTIFFS' CLASSWIDE DAMAGES MODEL SATISFIES *COMCAST*

Defendants next raise the universally-rejected argument that Plaintiffs do not have a way of calculating damages "consistent with their liability case."  DB-23.  They agree that the "out-of-pocket method" cited by Dr. Hartzmark applies—and that even their expert's criticisms of that method raise no individualized issues—but contend that this is insufficient under *Comcast*.  *Id.* at 25; PX-H at 213:1-217:13.  Defendants are wrong.

To begin, Defendants overstate *Comcast's* application to securities class actions. *See, e.g., In re Heckmann Corp. Sec. Litig.,* 2013 WL 2456104, at *14 (D. Del. June 6, 2013) (*Comcast* "was not in regard to a securities fraud litigation, which have generally been certified for class status").  In the context of securities class actions, *Comcast* requires nothing more than plaintiffs set forth a *methodology* capable of measuring damages on a class-wide basis—they are not required to provide a final damages model.  *See, e.g., Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70, 88 (2d Cir. 2015).[4]

Here, Dr. Hartzmark's "out-of-pocket" approach using an event study is the preeminent method for calculating damages under Section 10(b).  It has been accepted by every court to consider it.  For example, in *Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.,* 2016 WL 4098741 (D. Minn. 2016), Judge Montgomery followed nationwide authority to uphold the out-of-pocket method as the "standard and well-settled

_____

days); *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 780-81 (S.D. Tex. 2003) (same); *see also Hatamian*, 2016 WL 1042502, at *8 (distinguishing *Moody's*).

[4] In *Comcast*, an antitrust case, part of plaintiffs' liability case was dismissed but plaintiffs did not adjust their damages model to even attempt to show consistency with their surviving liability theory.  *Comcast Corp. v. Behrand*, 569 U.S. 27 (2013).

formula for assessing damages" in Section 10(b) actions. *Id.* at *11; *see also, e.g., City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.,* 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (collecting cases). Indeed, there are ***over 50*** post-*Comcast* securities opinions in which courts accepted the out-of-pocket methodology (PX-N), and multiple courts over the past year have specifically upheld Dr. Hartzmark's methodology in this exact context. PX-O.[5]

Faced with this contrary authority, Defendants mischaracterize *Comcast* and resort to disputing loss causation. For example, Defendants nit-pick at technical aspects of how Dr. Hartzmark will eventually prove damages, claiming that he has failed to calculate an "inflation ribbon" or adequately address "disaggregation." DB-26, 28, 30-32. But these are quintessential loss causation disputes that the Supreme Court has held are not appropriate for resolution at class certification. *Halliburton I,* 563 U.S. at 812-15; *Amgen,* 568 U.S. at 475.[6] As Judge Montgomery explained in *Tile Shop,* "[c]oncerns over disentangling loss specific to a corrective disclosure…does not defeat predominance

---

[5] Defendants' case, *In re BP p.l.c. Sec. Litig.,* supports Plaintiffs because there, the court granted certification for claims premised on the out-of-pocket method—but denied certification as to a subclass that "eschew[ed]" that method. 2014 WL 2112823, at *11-14 (S.D. Tex. May 20, 2014); *see also Hatamian,* 2016 WL 1042502, *9 (distinguishing *BP*).

[6] Defendants contend that Dr. Hartzmark, a preeminent expert whose opinions have been accepted by courts throughout the country on this issue, "was unable to explain much of anything at his deposition." DB-28. This is wrong. Dr. Hartzmark repeatedly explained his approach and testified clearly about the out-of-pocket methodology and how it would be applied here. PX-H at 144:19-20 *see also id.* at 81:21-82:3; Hartzmark-Rbt.¶¶135-37.

because [p]laintiffs are not required to prove loss causation" at the class certification stage. 2016 WL 4098741, at *11-12; *RH*, 2018 WL 4931543, at *4.[7]

The smattering of irrelevant cases Defendants cite (DB24) only serves to demonstrate how weak their argument is. Defendants were able to uncover just a handful of cases which mostly do not even involve a Section 10(b) securities class action.[8]

## III. THE *AFFILIATED UTE* PRESUMPTION APPLIES

Plaintiffs are also entitled to a presumption of reliance under *Affiliated Ute*. As Courts in this District have repeatedly and recently recognized in cases just like this one, the *Affiliated Ute* presumption applies where "the 'thrust' of the plaintiffs' allegations is omissions." *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 288 (D. Minn. 2018); *see also Tile Shop*, 2016 WL 4098741, at *7 (applying *Affiliated Ute*). Here, the "thrust" of Plaintiffs' case is Defendants' failure to disclose its

---

[7] *See also Levy v. Gutierrez,* 2019 WL 8405213, at *11-12 (D.N.H. Sept. 30, 2019) (disaggregation not appropriate at class certification); *Menaldi v. Och-Ziff Cap. Mgmt. Grp., LLC*, 328 F.R.D. 86, 98-99 (S.D.N.Y. 2018) (disaggregation "goes beyond the Rule 23 inquiry"); *La. Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.,* 2017 WL 3149424, at *7 (D. Vt. July 21, 2017) (rejecting loss causation arguments).

[8] *See Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *20 (N.D.N.Y. Sept. 27, 2017) (false advertising); *In re Domestic Drywall Anti. Litig.,* 2017 WL 3700999, at *14 (E.D. Pa. Aug. 24, 2017) (antitrust); *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 1831850, at *8 (S.D.N.Y. Apr. 11, 2018) (contract claims). In both *Ohio Pub. Emps.' Ret. Sys. v. Freddie Mac*, 2018 WL 3861840, at *19-20 (N.D. Ohio Aug. 14, 2018) and *Loritz v. Exide Techs.*, 2015 WL 6790247 (C.D. Cal. July 21, 2015) (Wilson, J.), plaintiffs failed to establish efficiency—an element Defendants do not contest here—and are distinguishable on this basis. Further, unlike Dr. Hartzmark, the plaintiffs' experts in those cases did not tie the damages methodology to the liability theory. *See In re Snap Inc. Sec. Litig.*, 2019 WL 6270291, at *4-5 (C.D. Cal. Nov. 20, 2019) (Wilson, J.) (distinguishing *Loritz*); *Southern Co.,* 332 F.R.D. at 399-400 (distinguishing *Freddie Mac*).

widespread cramming scheme. *See, e.g.*, ¶2 ("CenturyLink never once disclosed that the Company's reported revenues could be called into question"); ¶65 (CenturyLink's "illegal and deceptive practices had a material, undisclosed effect"); ¶¶121-24 (Item 303 disclosures); ¶203 (Defendants "omitted the material fact that the Company's revenues" were due to cramming). Thus, *Affiliated Ute* applies.[9]

## IV.   OREGON IS ADEQUATE AND TYPICAL UNDER RULE 23

Defendants' arguments that Oregon is atypical and inadequate are baseless.

**First**, Defendants' argument that Oregon is atypical because it supposedly had access to nonpublic information about CenturyLink's fraud is refuted by uncontroverted facts.  As the Complaint makes clear, the entity that is Lead Plaintiff in this case **excludes** the Oregon Department of Justice ("DOJ"), the agency that investigated CenturyLink, whose knowledge cannot be imputed to Lead Plaintiff under well-settled law.  *See* ¶26; PX-I at 24:23-25, 25:1-10; DB-34-35.[10]  Moreover, here, the uncontroverted testimony from Oregon's Rule 30(b)(6) witness who personally oversaw the CenturyLink

---

[9] Defendants wrongly claim that Plaintiffs have not identified any duty to disclose—but Plaintiffs alleged actionable omissions, and the Court sustained them. *See, e.g.*, ¶¶203, 261-63; *CenturyLink*, 403 F. Supp. 3d at 724, 726.  Defendants next argue *Affiliated Ute* cannot apply because Plaintiffs allege misrepresentations along with omissions.  But as Chief Judge Tunheim explained in *Medtronic*, *Affiliated Ute* is not undermined "simply because a defendant makes misstatements" but rather, if the "omitted facts [were] material…then plaintiffs may employ the *Affiliated Ute* presumption."  *Medtronic*, 325 F.R.D. at 289.

[10] *Brown v. State of Or., Dep't of Corr.*, 173 F.R.D. 265, 268 (D. Or. 1997) ("Agencies of the State of Oregon are treated as separate entities…knowledge of one agency is not imputed to another"); *Wyler v. Korean Air Lines Co., Ltd.*, 928 F.2d 1167, 1171 (D.C. Cir. 1991) (holding it improper to charge one agency with knowledge of another "simply because both are components of the same…government").

investments unequivocally establishes that Lead Plaintiff was "not now nor [] ever [] aware of an Oregon Department of Justice investigation of CenturyLink." PX-I at 208:16-20; *see also* 210:8-211:18; P¶¶2-5; PX-K. The notion that a statewide pension fund like Oregon— the very kind of institutional investor envisioned by Congress—could be deemed inadequate due to the law enforcement activities of a state attorney general statutorily obligated to represent it is antithetical to the PSLRA, and should be rejected.[11]

*Second*, Defendant's argument that Oregon's post-disclosure purchases render it atypical has been "consistently rejected" by courts in this District and across the country. *Tile Shop*, 2016 WL 4098741, at *4; *In re Select Comfort Corp. Sec. Litig*., 202 F.R.D. 598, 607 n.12 (D. Minn. 2001) ("[c]ourts routinely certify a class with representatives who purchased stock during and after a class period"); *Weiner v. Trivity Health, Inc*., 2020 WL 467783, at *3-4 (D. Tenn. Jan. 29, 2020) (collecting cases). The argument is particularly meritless here given that Oregon purchased a mere 2,754 shares after the disclosures, or about 0.18% of the 1,526,778 total shares purchased during the Class Period. *See Tile Shop*, 2016 WL 4098741, at *5 (that 31% of purchases occurred after disclosures did not impact typicality); DX7.

---

[11] That the civil investigative demand Defendants cite was issued *after* the whistleblower lawsuit was made public demonstrates the argument's lack of merit, as Oregon made no trades after that date until after the end of the Class Period. DX-5; DX-7. Defendants' contention that Oregon's investment managers had nonpublic information is similarly baseless given that the "unique data sources" Defendants point to were, in fact, "public information" and "publicly available." PX-I at 129:5, 130:5-6. Here, the evidence refutes the notion that Oregon had access to nonpublic information. *See, e.g., Tile Shop*, 2016 WL 4098741, at *5; *Howard v. Liquidity Servs*. 322 F.R.D. 103, 126-27 (D.D.C. 2017) (rejecting typicality argument concerning nonpublic information as unsupported and contrary to the PSLRA).

*Third*, the fact that Oregon did not read specific misstatements does not render it atypical—indeed, the entire premise of the *Basic* presumption is that direct reliance is not required.  Moreover, here, Oregon—like many (if not most) large public pension funds— relied on third-party investment managers to make the majority its CenturyLink investments.  Whether Oregon or any of its managers read particular documents is irrelevant, as they clearly relied on the price of CenturyLink securities—which establishes *Basic* reliance.  *See* DX6 at 215:8-16; *Tile Shop,* 2016 WL 4098741, at *5 (reliance on outside manager does not affect typicality).[12]

## V.    THE FULL CLASS PERIOD SHOULD BE CERTIFIED

Recognizing that certification is proper, Defendants make a last-ditch attempt to shorten the class period to end on June 16, 2017—the first corrective disclosure—by claiming that the full truth was disclosed on that date.  This is meritless.

To start, Defendants' argument (which relies on a case reversed by the Ninth Circuit on this very point) merely raises *common* truth on the market and loss causation issues.  Moreover, the full truth was clearly *not* disclosed by June 16, 2017—given that subsequent disclosures revealed, for example, the Minnesota Attorney General's findings that "maybe 1 out of 5" customers were quoted correctly ██████████████████████████████ ████████████████████████████ ¶¶163-71; Hartzmark-Rbt.¶28-44; P¶3.  Moreover, among other things, the fact that CenturyLink made additional false assurances after the first corrective disclosure demonstrates this loss causation defense cannot be decided prior

---

[12] Defendants' case, *In re GenesisIntermedia, Inc. Sec. Litig.*, 232 F.R.D. 321 (D. Minn. 2005), did not involve *Basic* reliance.

to trial. *See, e.g., Southern Co.*, 332 F.R.D. at 395-96; *Snap*, 2019 WL 6270291, at \*12-13; *Och-Ziff*, 328 F.R.D. at 100.

## VI.    CONCLUSION

Plaintiffs respectfully request their motion be granted in full.

DATED: May 4, 2020

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Michael D. Blatchley*
John C. Browne, NYS Bar No. 3922747
Michael D. Blatchley, NYS Bar No. 4747424
Michael M. Mathai, NYS Bar No. 5166319
Amanda Boitano, NYS Bar No. 5705843
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com
michael.mathai@blbglaw.com
amanda.boitano@blbglaw.com

Richard D. Gluck, Cal. Bar. No. 151675
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470
Facsimile: (212) 554-1444
rich.gluck@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydi Anderson-Dana, OSB No. 166167
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600

Facsimile:    (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com
landersondana@stollberne.com

*Special Assistant Attorneys General and
Counsel for Lead Plaintiff the State of
Oregon by and through the Oregon State
Treasurer and the Oregon Public Employee
Retirement Board, on behalf of the Oregon
Public Employee Retirement Fund and
Plaintiff Fernando Alberto Vildosola, as
trustee for the AUFV Trust U/A/D
02/19/2009, and Lead Counsel for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Plaintiffs*

18