**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION**<br><br>This Document Relates to:<br><br>Civil Action No. 18-296 (MJD/KMM) | **MDL No. 17-2795 (MJD/KMM)**<br><br>**DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>Oral Argument Requested |

Patrick E. Gibbs, CA Bar No. 183174
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5535
Facsimile: (650) 618-0387
pgibbs@cooley.com

Sarah Lightdale, NY Bar No. 4395661
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6374
Facsimile: (212) 479-6275
slightdale@cooley.com

Douglas P. Lobel, VA Bar No. 42329
David A. Vogel, VA Bar No. 48971
Dana A. Moss, VA Bar No. 80095
COOLEY LLP
Reston Town Ctr., 11951 Freedom Dr.
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
dlobel@cooley.com
dvogel@cooley.com
dmoss@cooley.com

Ryan Blair, CA Bar No. 246724
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6047
Facsimile: (858) 527-2750
rblair@cooley.com

William A. McNab, MN Bar No. 320924
Thomas H. Boyd, MN Bar No. 0200517
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6400
wmcnab@winthrop.com
tboyd@winthrop.com

Jerry W. Blackwell, MN Bar No. 186867
BLACKWELL BURKE P.A.
431 South 7th Street, Suite 2500
Minneapolis, MN 55415
Telephone: (612) 343-3200
blackwell@blackwellburke.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. DEFENDANTS HAVE REBUTTED THE *BASIC* PRESUMPTION, AND PLAINTIFFS HAVE FAILED TO OTHERWISE PROVE THE PRICE IMPACT REQUIRED TO SHOW CLASS-WIDE RELIANCE. .......... 2

A. THE DEMONSTRATED ABSENCE OF POSITIVE PRICE REACTION TO THE ALLEGED MISREPRESENTATIONS SATISFIES DEFENDANTS' BURDEN. .......... 2

1. DEFENDANTS MAY PRODUCE EVIDENCE OF A LACK OF PRICE IMPACT TO REBUT THE PRESUMPTION, BUT PLAINTIFFS RETAIN THE ULTIMATE BURDEN OF PERSUASION TO SHOW RELIANCE IS COMMON TO THE CLASS. .......... 2

2. FRONT-END EVIDENCE ALONE REBUTS THE *BASIC* PRESUMPTION. .......... 3

3. THE ALLEGED MISREPRESENTATIONS DID NOT LEAD TO POSITIVE RETURNS IN CENTURYLINK STOCK VALUE—QUINTESSENTIAL EVIDENCE OF NO PRICE IMPACT. .......... 4

4. THE BACK-END EVIDENCE FURTHER DEMONSTRATES A LACK OF PRICE IMPACT. .......... 9

B. ANY CLASS PERIOD MUST END ON JUNE 16, 2017. .......... 10

II. THE DISCONNECT BETWEEN PLAINTIFFS' ALLEGATIONS AND THEIR PROPOSED DAMAGES MODEL IS FATAL UNDER *COMCAST*. .......... 10

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
955 F.3d 254 .......... 6

*Beaver Cty. Emps. Retirement Fund v. Tile Shop Hldgs., Inc.*,
2016 WL 4098741 (D. Minn. Jul. 28, 2016) .......... 10, 12

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018) .......... 2

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) .......... 5

*Erica P. John Fund, Inc. v. Halliburton Co.*,
309 F.R.D. 251 (N.D. Tex. 2015) .......... 9

*In re Finisar Corp. Sec. Litig.*,
2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) .......... 4, 5, 7, 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .......... *passim*

*Hatamian v. Advanced Micro Devices, Inc.*,
2016 WL1042502 (N.D. Cal. Mar. 16, 2016) .......... 8

*IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*,
818 F.3d 775 (8th Cir. 2016) F.3d .......... *passim*

*In re Intuitive Surgical Sec. Litig.*,
2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) .......... 9

*Loritz v. Exide Techs.*,
2015 WL 6790247 (C.D. Cal. July 21, 2015) .......... 10

*Lupyan v. Corinthian Colleges Inc.*,
761 F.3d 314 (3d Cir. 2014) .......... 3

*Ohio Pub. Emps.' Ret. Sys. v. Federal Home Loan Mortgage Corp.*,
2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) .......... *passim*

*W. Palm Beach Police Pension Fund v. DFC Global*,
2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ... 8

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) ... 3

*West Virginia Pipe Trades Health & Welfare Fund v. Medtronic*,
325 F.R.D. 280 (D. Minn. 2018) ... 10

**Other Authorities**

*Congress, the Supreme Court, and the Rise of Securities-Fraud Class Actions*, 132 Harv. L. Rev. 1067 (2019) ... 6

Fed. R. Evid. 301 ... 2, 3

Fed. R. Civ. P. 23 ... 11, 12

## PRELIMINARY STATEMENT

The Court should deny Plaintiffs' motion for class certification.

***First***, Defendants have shown, overwhelmingly, that the alleged misrepresentations did not lead to increases in the value of CenturyLink securities, rebutting the *Basic* presumption of reliance. Rather than produce evidence to meet their burden, Plaintiffs ask the Court to disregard Defendants' front-end evidence, claiming:

- Defendants must "prove" a lack of price impact, not just produce evidence;
- Defendants must disprove both front-end and back-end price impact; and
- Defendants' evidence should be ignored because Plaintiffs may resort to a "price maintenance" theory.

But the Eighth Circuit already rejected ***each*** of these arguments in *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 818 F.3d 775 (8th Cir. 2016). Plaintiffs avoid engaging with *Best Buy* based on a distinction—the number of alleged misstatements—that makes no difference, and instead cherry-pick their preferred standard from other jurisdictions. Under the clear and controlling law of this circuit, Defendants have rebutted the presumption. In the face of Defendants' contrary evidence, Plaintiffs do not even try to carry their burden to show it is more likely that the element of reliance is common to all class members under Rule 23. In short, *Best Buy* unequivocally precludes class certification here.

***Second***, Plaintiffs' failure to marry their damages methodology to their theory of liability remains fatal under *Comcast*.

## ARGUMENT

### I. DEFENDANTS HAVE REBUTTED THE *BASIC* PRESUMPTION, AND PLAINTIFFS HAVE FAILED TO OTHERWISE PROVE THE PRICE IMPACT REQUIRED TO SHOW CLASS-WIDE RELIANCE.

Plaintiffs declined to show that the alleged misrepresentations inflated the value of CenturyLink securities. *See* Dkt. No. 261[1] (Mar. 23, 2020) ("Dr. Hartzmark's reply report . . . does not attempt to prove price impact."); June 12 Declaration of Ryan Blair ("Blair Decl."), Ex. 2 at 16:12-13 (Hartzmark "was not asked to measure . . . price impact."). Thus, the sole question before this Court is whether Defendants have rebutted the *Basic* presumption of class-wide reliance. Under controlling Supreme Court and Eighth Circuit law, Defendants have.

#### A. The Demonstrated Absence of Positive Price Reaction to the Alleged Misrepresentations Satisfies Defendants' Burden.

##### *1. Defendants may produce evidence of a lack of price impact to rebut the presumption, but Plaintiffs retain the ultimate burden of persuasion to show reliance is common to the class.*

The core dispute between the parties is what is required of Defendants to rebut the *Basic* presumption. Plaintiffs represent that Defendants have a "heavy burden" under which they must "completely" disprove price impact. Dkt. No. 249 (Plaintiffs' "Reply") at 1. This misrepresents binding Eighth Circuit law holding that defendants need only "produce evidence" contrary to the presumption under Federal Rule of Evidence 301. *Best Buy*, 818 F.3d at 782 (citing Rule 301 and holding "defendants ha[ve] the burden to ***come forward with evidence*** showing a lack of price impact"); *see Bing Li v. Aeterna*

---

[1] All docket citations refer to Civil Action 18-296 (MJD/KMM).

*Zentaris, Inc.*, 324 F.R.D. 331, 344 (D.N.J. 2018) ("the defendant bears the burden of ***producing evidence*** to rebut the presumption") (citing *Best Buy* and Rule 301).

Plaintiffs conspicuously fail to cite *Best Buy* in describing the operation of the *Basic* presumption. They instead rely on a Second Circuit opinion that explicitly departed from *Best Buy*, stating: "[t]o the extent that the Eighth Circuit imposed only a burden of production on defendants, we disagree with its conclusion." *Waggoner v. Barclays PLC*, 875 F.3d 79, 103 n.36 (2d Cir. 2017).[2] The Second Circuit's different interpretation of *Halliburton II* does not overrule *Best Buy* or govern this Court's analysis.

Under Rule 301, Defendants' contrary evidence "destroys" the presumption, so Plaintiffs must carry their burden of persuasion on price impact. *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320 (3d Cir. 2014); *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276, 281–82 (2014) ("*Halliburton II*"). Even after submitting two expert reports, Plaintiffs have not done so.

**2. *Front-end evidence alone rebuts the* Basic *presumption.***

Plaintiffs further argue that to defeat Plaintiffs' motion, Defendants must "affirmatively disprove both" front-end and back-end price impact. Reply at 2. This also ignores controlling law. *Best Buy* reversed certification of the proposed class on front-end evidence alone—even though there was evidence of back-end impact. 818 F.3d at

---

[2] The *Waggoner* court speculated that the Eighth Circuit's reliance on Rule 301 in *Best Buy* could be "dictum," *id.*, but in fact, it was the very first part of the Eighth Circuit's analysis. 818 F.3d at 782.

782–83; *see Halliburton II* at 269 ("***any*** showing that severs the link [is] sufficient"); *In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *7–8 (N.D. Cal. Dec. 5, 2017) (front-end evidence rebutted presumption).[3]

Plaintiffs urge this Court to disregard *Best Buy* because in that case "plaintiffs alleged a single false statement introduced inflation." Reply at 10. The number of misrepresentations alleged does not change the Eighth Circuit's holding that front-end evidence suffices to rebut the presumption. If anything, as Plaintiffs allege approximately 200 misrepresentations, the lack of front-end impact is even ***more*** decisive here.

### *3. The alleged misrepresentations did not lead to positive returns in CenturyLink stock value—quintessential evidence of no price impact.*

The undisputed expert evidence shows a clear lack of price impact. The alleged misrepresentations overwhelmingly did not lead to positive price movement and were instead twice as likely to lead to ***negative*** price movement. For the handful of dates with positive movement, Defendants' expert identified unrelated positive news, including stock buybacks, strategic sales of corporate assets, and positive revenue surprises in unrelated areas of CenturyLink's business. *See* Dkt. No. 226 (Defendants' "Opposition") at 12–13; Dkt. No. 227, Ex. 1 (Expert Report of Bruce Deal) at ¶¶ 72–76. Plaintiffs'

---

[3] Plaintiffs complain that the *Finisar* plaintiffs did not pursue a price maintenance theory, Reply at 10 n.3, but that court found front-end evidence alone sufficient for other reasons. For example, as here, the *Finisar* plaintiffs failed to provide evidence of confounding information on the alleged misrepresentation dates. 2017 WL 6026244 at *7.

expert performed no independent analysis of those dates. Blair Decl. Ex. 2 at 33:16-21. This does not carry Plaintiffs' burden under *Best Buy*.

Plaintiffs offer three responses, but none move the needle.

***First***, Plaintiffs argue the lack of positive price movement does not "prove[] a lack of front-end price impact." Reply at 8. This assertion proceeds from a misapprehension of Eighth Circuit law: Defendants need only "***come forward with evidence***" to rebut the *Basic* presumption, not ***prove*** a lack of impact. *Best Buy*, 818 F.3d at 782. Plaintiffs' argument also contradicts numerous other federal courts. *See in re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *3 (S.D.N.Y. Mar. 23, 2020) ("A defendant may rebut the presumption with evidence that the alleged misstatements were not associated with abnormal, positive stock-price returns."); *Ohio Pub. Emps.' Ret. Sys. v. Federal Home Loan Mortgage Corp.*, 2018 WL 3861840, at *18 (N.D. Ohio Aug. 14, 2018); *Finisar*, 2017 WL 6026244, at *6–7.

Plaintiffs would have this Court believe that the only satisfactory front-end evidence would be an event study showing that ***none*** of the 200 alleged misstatements had ***any*** positive price impact on ***any*** of the 52 relevant market days. Reply at 3 (arguing Defendants must "prove a complete absence" of price impact"). This is the highest standard of proof imaginable. But it is not what is required to rebut the *Basic* presumption under *Halliburton II* or *Best Buy*. If those holdings have any force, then the overwhelming evidence Defendants have amassed must rebut the presumption. And

Plaintiffs' expert admits he did not otherwise prove front-end impact. Blair Decl. Ex. 2 at 26:24-28:21.[4]

***Second***, Plaintiffs argue that Defendants' evidence is insufficient because Plaintiffs are offering (now, anyway) a "price maintenance" theory, and claim "this case has always been about Defendants' 'repeated' misrepresentations and omissions." Reply at 9. The Eighth Circuit has already rejected this argument too. *Best Buy*, 818 F.3d at 783; *see Ohio Pub.*, 2018 WL 3861840, at *18 (citing *Best Buy* and ruling that "[a] theory that statements maintained an inflated stock price is not evidence that can refute otherwise overwhelming evidence of no price impact.").[5] And Plaintiffs' own expert says this case is ***not*** just about repeat misstatements and omissions. Hartzmark identified 26 of the 52 relevant market dates on which he "would not expect" the alleged misrepresentations to have positive price impact—but as to the 26 others (the "Purported Inflationary Dates"), Hartzmark opined that the misrepresentations "might reasonably be expected to evince a positive price movement." Dkt. No. 252-1 ("Hartzmark Reply

---

[4] For an extended part of his deposition, Hartzmark refused to make clear the scope of his price impact opinions, repeatedly offering lengthy, non-responsive answers in response to yes-or-no questions. Blair Decl. Ex. 2 at 12:3-28:21.

[5] The Second Circuit case Plaintiffs cite for the proposition that no district court since *Halliburton II* has rejected this theory, *Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 266 n.9, relied on a law journal note which acknowledged that in *Best Buy*, "the Eighth Circuit declined to apply the price-maintenance theory." *Congress, the Supreme Court, and the Rise of Securities-Fraud Class Actions*, 132 Harv. L. Rev. 1067, 1088 n.66 (2019). The note also omitted *Ohio Pub.*—as do Plaintiffs.

Report") at ¶ 113[6]; *see also* Dkt. No. 143 (Amended Complaint) at ¶ 281 (alleging Defendants "artificially inflate[d] the price of CenturyLink stock").

Notably, Hartzmark's new analysis provides even more evidence of no price impact. While the Purported Inflationary Dates include the four significantly positive returns, they also include seven significantly negative returns. In other words, according to Plaintiffs' own expert, the allegedly inflationary misrepresentations that entered the market on these 26 dates led to abnormal price ***declines*** more than a quarter of the time, almost ***twice*** as often as the abnormal price increases. *See* Blair Decl. Ex. 3 (Hartzmark Reply Report Backup); *id.* Ex. 4 (excerpts of Hartzmark's abnormal return calculations).

Plaintiffs argue, via their expert, that these disproportionately negative returns "could" be explained by the "contemporaneous disclosure of negative information." Hartzmark Reply Report at ¶ 113. But Plaintiffs did not identify—never mind analyze—***any*** negative confounding information on these dates. Blair Decl. Ex. 2 at 43:4-44:1. Pure speculation is not enough to carry Plaintiffs' burden of persuasion. *See Finisar*, 2017 WL 6026244 at *7 (denying certification where plaintiffs did not provide evidence of confounding information in response to lack of positive movement).

---

[6] Hartzmark's report does not specify the "25" Purported Inflationary Dates, a point he repeatedly obfuscated. Blair Decl. Ex. 2 at 34:21-42:9. During Hartzmark's deposition, Plaintiffs produced new backup for Hartzmark's report, Blair Decl. Ex. 3, indicating that there are 26 Purported Inflationary Dates. Following more obfuscation, Dr. Hartzmark admitted he does not know whether his report or the belatedly provided backup file is correct. *Id.* at 127:14-134:16.

***Third***, Plaintiffs argue the four positive returns somehow "demonstrate[] price impact." Reply at 10. But this meager showing cannot overcome Defendants' evidence. *See Ohio Pub.*, 2018 WL 3861840, at *13, *18 (no price impact where there was a positive abnormal return on only one of 23 relevant market dates).[7] And Plaintiffs' expert admitted there is no evidence that there was positive price impact on these four dates. Blair Decl. Ex. 2 at 46:2-18.

While Hartzmark does opine that four abnormal positive returns are "four times as many as would be expected by chance," Hartzmark Reply Report at ¶ 115, Hartzmark's own analysis contradicts this claim. As Hartzmark previously opined: "unanticipated material information is more frequently and more systematically disclosed" on "news days," leading to higher rates of abnormal returns—in the case of CenturyLink, 59% of the time. Dkt. No. 191-3 at ¶ 68; *id.* at Ex. IX. Because 17 of the Purported Inflationary Dates are "news days," the average distribution expected "by chance" likely would include ***more positive abnormal returns than those among Hartzmark's Purported Inflationary Dates***.

[7] Plaintiffs point to two cases granting certification where positive movement was observed on a small number of the dates at issue. Reply at 10. Neither applies here. In *W. Palm Beach Police Pension Fund v. DFC Global*, the court found for plaintiffs on the price maintenance theory rejected by *Best Buy*. 2016 WL 4138613, at *14 (E.D. Pa. Aug. 4, 2016). Likewise, in *Hatamian v. Advanced Micro Devices, Inc.*, the court assigned defendants the burden of proof rejected by *Best Buy*, and, its ruling was based in part on evidence of positive ***back-end*** price impact. 2016 WL1042502, at *7 (N.D. Cal. Mar. 16, 2016).

#### *4. The Back-End Evidence Further Demonstrates a Lack of Price Impact.*

Defendants have demonstrated that the three alleged corrective disclosures did not serve to "correct" any alleged misrepresentations—clear evidence of no price impact that further rebuts the *Basic* presumption. Opposition at 16–18. Plaintiffs assert this evidence goes only to "loss causation," Reply at 4–5, but whether the back-end disclosures "corrected" the alleged misrepresentations also goes to price impact. *See Ohio Pub.*, 2018 WL 3861840, at *18. Defendants have further produced evidence that the allegedly corrective disclosures only introduced uncertainty about CenturyLink's alleged conduct—which analyst reports confirm. Dkt. No. 227, Ex. 1 at ¶¶ 120, 122. In response, Plaintiffs' expert has not shown any connection between the allegedly corrective disclosures and the alleged misrepresentations.[8] Blair Decl. Ex. 2 at 76:13-77:15.

In addition, the June 19 disclosure is not statistically significant at the 95% level, Hartzmark's "scientifically accepted level of certainty." Dkt. No. 191-3, Appx. D at D-5. Plaintiffs try to avoid this clear defect by advocating for a two-day window, Reply at 6, but courts routinely reject multiple-day windows. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 269 (N.D. Tex. 2015); *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *14 (N.D. Cal. Dec. 22, 2016); *Finisar,* 2017 WL 6026244, at *7.

---

[8] CenturyLink's internal acknowledgement of the objectively observable price decline on June 16 also does not show that the *Bloomberg* article "corrected" previous misrepresentations, or otherwise demonstrate price impact.

**B. Any Class Period Must End on June 16, 2017.**

Plaintiffs admit that, after June 16, 2017, "the market [understood], as a whole, what was occurring," Dkt. No. 227, Ex. 6, at 204:3–11, and Plaintiffs have not alleged that any particular misrepresentation remained uncorrected after that date. *See* Opposition at 40–44. Plaintiffs argue that CenturyLink "made additional false assurances" after June 16, Reply at 16, but they do not explain what was "false" or draw any connection to the subsequent disclosures. Class period cut-off is an issue of individual reliance—specifically, price impact—properly decided at the class certification stage. *West Virginia Pipe Trades Health & Welfare Fund v. Medtronic*, 325 F.R.D. 280, 294 (D. Minn. 2018). This Court should decide it now.

## II. THE DISCONNECT BETWEEN PLAINTIFFS' ALLEGATIONS AND THEIR PROPOSED DAMAGES MODEL IS FATAL UNDER *COMCAST*.

*Halliburton II* reaffirmed the application of *Comcast* to 10b-5 certification motions. 573 U.S. at 277; *see Beaver Cty. Emps. Retirement Fund v. Tile Shop Hldgs., Inc.*, 2016 WL 4098741, at *11 (D. Minn. Jul. 28, 2016) (*Comcast* applies to 10b-5 actions). And contrary to Plaintiffs' representations, Reply at 11, multiple courts have rejected the "out-of-pocket" methodology in evaluating proposed 10b-5 classes. *See Ohio Pub.*, 2018 WL 3861840, at *19–20 (out-of-pocket methodology alone could not "establish that damages can be measured on a class-wide basis in a manner consistent with [plaintiff's] theories of liability"); *Loritz v. Exide Techs.*, 2015 WL 6790247, at *22

(C.D. Cal. July 21, 2015) (plaintiffs "fail[ed] to show a damages theory tied to their theory of liability under *Comcast*").[9]

Plaintiffs have shrugged off their obligations under *Comcast*. *See* Opposition at 25–33. They allege five categories of purported misrepresentations; at least 200 challenged statements that allegedly affected the price of CenturyLink securities on 52 days; and a class period spanning nearly four and a half years. Am. Compl. at 90–123; *id.* at Appx. A. They even allege that the fraud dissipated and then reconstituted in the middle of the class period. *Id.* at ¶¶ 100–114. Meanwhile, CenturyLink's stock traded between $41.81 and $22.24 during the class period. Dkt. No. 191-3, Appx. E. The complexity of the damages analysis necessary in light of these allegations is perhaps unparalleled. Certainly, Plaintiffs and their expert have not identified any comparable case.

Yet even after submitting two reports, Plaintiffs' expert cannot say whether or how he could apply his "out-of-pocket" method to the facts of this case, instead merely listing generic techniques for designing a damages model. Hartzmark Reply Report at ¶¶ 131–32. But Hartzmark does not say he actually ***could*** or ***would*** use any of those techniques. Blair Decl. Ex. 1 at 147:2-4. This does not constitute proof that a classwide damages model can be calculated under Rule 23(b)(3). *See Ohio Pub.*, 2018 WL

[9] Plaintiffs "distinguish" these 10b-5 cases because the courts ***also*** found there was a failure to prove market efficiency, Reply at 13, but that does not negate those courts' holdings under *Comcast*.

3861840, at *19. Plaintiffs' refusal to provide any information beyond the term "out-of-pocket" cannot pass the "rigorous analysis" required by *Comcast*.

Plaintiffs attempt to recast these problems as going only to loss causation. Reply at 12. But this is not a case like *Tile Shop*, where defendants were merely concerned about "disentangling loss specific to a [single] corrective disclosure." 2016 WL 4098741, at *11-12. Instead, the imbalance here between Plaintiffs' labyrinthine allegations and their cursory "methodology" is massive—and unsustainable. For Plaintiffs' methodology to nevertheless prove sufficient here would render *Comcast* a dead letter in securities fraud actions. The predominance requirement has not been satisfied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.[10]

---

[10] While this sur-reply addresses only those topics for which Plainiffs introduced new evidence in their reply, Defendants maintain that the *Affiliated Ute* presumption does not apply, Opposition at 19–23, and Oregon is neither typical nor adequate under Rule 23, Opposition at 33–40.

Dated: June 12, 2020

Respectfully submitted,

*/s/ William A. McNab*
William A. McNab (MN Bar No. 320924)
Thomas H. Boyd (MN Bar No. 0200517)
WINTHROP & WEINSTINE, P.A.
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 604-6400
Fax: (612) 604-6800
wmcnab@winthrop.com
daafedt@winthrop.com

Patrick E. Gibbs (CA Bar No. 183174)
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
Phone: (650) 843-5000
Fax: (650) 849-7400
pgibbs@cooley.com

Ryan Blair (CA Bar No. 246724)
COOLEY LLP
4402 Eastgate mall
San Diego, CA 92121
Phone: (858) 550-6047
Fax: (858) 527-2750
rblair@cooley.com

Douglas P. Lobel (VA Bar No. 42329)
David A. Vogel (VA Bar No. 48971)
Dana A. Moss, VA Bar No. 80095
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190
Phone: (703) 456-8000
Fax: (703) 456-8100
dlobel@cooley.com
dvogel@cooley.com
dmoss@cooley.com

Sarah M. Lightdale (NY Bar No. 4395661)

COOLEY LLP
55 Hudson Yards
New York, NY 10001
Phone: (212) 479-6000
Fax: (212) 479-6275
slightdale@cooley.com

Jerry W. Blackwell (MN Bar No. 186867)
BLACKWELL BURKE P.A.
431 South 7th Street, Suite 2500
Minneapolis, MN 55415
Telephone: (612) 343-3200
blackwell@blackwellburke.com

*Attorneys for Defendants CenturyLink, Inc., Glen F. Post, III, R. Stewart Ewing, Jr., David D. Cole, Karen Puckett, Dean J. Douglas, and G. Clay Bailey*