UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil File No. 18-296 (MJD/KMM)

**PLAINTIFFS' SUR-SUR-REPLY IN FURTHER SUPPORT OF THEIR MOTION
FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  DEFENDANTS MUST PROVE A LACK OF PRICE IMPACT ........................... 2

III. DEFENDANTS FAIL TO MEET THEIR INVENTED, LOWER STANDARD .. 4

IV.  THE FULL CLASS PERIOD SHOULD BE CERTIFIED ..................................... 8

V.   DEFENDANTS' *COMCAST* ARGUMENT IS MERITLESS ............................... 9

VI.  CONCLUSION ..................................................................................................... 9

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Aranaz v. Catalyst Pharm. Partners Inc.*,
   302 F.R.D. 657 (S.D. Fla. 2014) .................................................................................. 4

*Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   955 F.3d 254 (2d Cir. 2020) ............................................................................... 2, 4, 6, 8

*In re BancorpSouth, Inc.*,
   2017 WL 4125647 (6th Cir. Sept. 18, 2017) ................................................................ 8

*Baker v. SeaWorld Entm't, Inc.*,
   2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) .............................................................. 6

*Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
   2016 WL 4098741 (D. Minn. July 28, 2016) ............................................................... 6

*Bing Li v. Aeterna Zentaris, Inc.*,
   324 F.R.D. 331 (D.N.J. 2018) ....................................................................................... 3

*In re CenturyLink Sales Prac. & Sec. Litig.*,
   403 F. Supp. 3d 712 (D. Minn. 2019) ........................................................................... 7

*Chalenor v. Univ. of N. Dakota*,
   291 F.3d 1042 (8th Cir. 2002) ...................................................................................... 6

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
   2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019) ............................................................ 3, 4

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
   2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ........................................................... 3, 7

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions,*
   *Inc., HQ*,
   322 F. Supp. 3d 676 (D. Md. 2018) ........................................................................... 5, 7

*City of Pontiac Gen. Emps. Ret. Sys. v. Wal-Mart Stores, Inc.*,
   2016 WL 5400373 (W.D. Ark. Sept. 20, 2016) ............................................................ 6

*Di Donato v. Insys Therapeutics, Inc.*,
   333 F.R.D. 427 (D. Ariz. 2019) ................................................................................ 2, 3

*FindWhat Inv'r Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) .................................................................................... 6

*In re Finisar Corp. Sec. Litig.*,
  2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ................................................................ 3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ...................................................................................... 5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .................................................................................................... 2

*IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*,
   818 F.3d 775 (8th Cir. 2016) ............................................................................. 1, 3, 6

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
  2017 WL 4297450 (D. S.C. Sept. 28, 2017) ............................................................ 8, 9

*Local 703 v. Regions Fin. Corp.*,
  762 F.3d 1248 (11th Cir. 2014) ............................................................................... 3, 5

*Marcus v. J.C. Penney Co., Inc.*,
  2016 WL 8604331 (E.D. Tex. Aug. 26, 2019) ............................................................ 8

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 415 (S.D.N.Y. 2014) ................................................................................ 3

*Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) .............................................................................. 2, 7

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) .......................................................... 4

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ...................................................................................... 6

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  2020 WL 2306490 (N.D. Cal. May 8, 2020) ........................................................... 4, 9

*In re Vivendi S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ....................................................................................... 6

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
  775 F. App'x 51 (3d Cir. 2019) .............................................................................. 3, 8

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
  325 F.R.D. 280 (D. Minn. 2018) ................................................................................. 9

*Waggoner v. Barclays PLC*,
 875 F.3d 79 (2d Cir. 2017) .................................................................................... 3

## I. INTRODUCTION

This straightforward securities class action—like virtually every other one—is ideally suited for class treatment. Consistent with this reality, Defendants conceded nearly every element of class certification—including that the markets for CenturyLink securities were efficient and that Plaintiffs were entitled to *Basic*'s presumption of reliance.[1]

Defendants' opposition argued instead that Plaintiffs failed to prove price impact. But it is black letter law that it is ***Defendants'*** burden to disprove price impact. The only evidence Defendants proffered to meet their burden was the opinion of Mr. Deal—who admitted that he was ***not*** opining that there was a lack of price impact, had not been tasked with offering that opinion, and had not done so because he believed, incorrectly, "That's the plaintiffs' burden." Moreover, Mr. Deal conceded his own analysis showed there was *"some impact on the stock price"*—a fact that Plaintiffs' expert, Dr. Hartzmark, confirmed.

Recognizing that they utterly failed to carry their burden, Defendants filed a sur-reply in an attempt to rehabilitate their opposition. But Defendants' sur-reply does not move the needle one inch, as it identifies no evidence showing a lack of price impact. Instead, based on a gross misreading of the Eighth Circuit's decision in *IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775 (8th Cir. 2016), Defendants now contend (after largely ignoring *Best Buy* in the initial briefing) that Mr. Deal's report is sufficient to meet a minimal burden of "production." It is not. Not only is Defendants' mischaracterization of *Best Buy* incorrect, their argument is irrelevant because Defendants' expert conceded price impact and did not come forward with any evidence of its absence, even under the erroneous standard Defendants advocate.

---

[1] Defined terms herein have the same meaning as in Plaintiffs' Reply (ECF No. 249). All emphasis is added and citations omitted unless noted. Citations to "PX-__" are to the Declaration of Michael D. Blatchley.

## II.   DEFENDANTS MUST PROVE A LACK OF PRICE IMPACT

The *Basic* presumption reflects that "the price of stock traded in an efficient market reflects all public, material information—including material misstatements." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263 (2014) ("*Halliburton II*"). In *Halliburton II*, the Supreme Court permitted Defendants to rebut the *Basic* presumption by making a "showing that **severs the link** between the alleged misrepresentation and...the price"—*i.e.*, a showing that "the alleged misrepresentation **did not**...**actually affect** the market price." *Id.* at 269.

Courts across the country have repeatedly held that to meet this burden, Defendants face the "daunting task" of showing that the "alleged misstatements [had] **no price impact whatsoever**." *Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 270-71 (2d Cir. 2020); *Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019).

To satisfy this "heavy burden," Defendants necessarily must offer admissible evidence that "the market **in fact** did not respond to the alleged misrepresentations." *See Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 443-44 (D. Ariz. 2019) (citing *Best Buy* in articulating burden). Thus, while Defendants can attempt to rebut *Basic* by showing a lack of price impact at the "front-end" (when the misstatements are made) and "back-end" (when the truth is revealed), their evidence must conclusively establish "that the market **would not have reacted** had [Defendants] told the truth." *Goldman*, 955 F.3d at 271-72.

In a concession that they failed to meet this burden, Defendants' sur-reply attempts to reverse it by mischaracterizing *Best Buy*—which Defendants claim relieved them of their burden to "prove" a lack of price impact and replaced it with a minimal burden of "production." In Defendants' world, this does not even require them to offer an expert opinion that price impact is absent—let alone evidence showing it. This is wrong.

2

First, the Supreme Court specifically instructed (and the Eighth Circuit repeated) that "it is incumbent upon the defendant to show the absence of price impact." *Best Buy*, 818 F.3d at 781. The Eighth Circuit nowhere purported to announce a different rule than the Supreme Court's or the one followed by other courts.

To the contrary, *Best Buy* cited with approval (or distinguished on the facts) decisions from the Second and Eleventh Circuit reflecting that *Halliburton II* imposed on Defendants the "burden to ***prove*** a lack of price impact." *See Best Buy*, 818 F.3d at 780, 782 (citing *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 415, 434 (S.D.N.Y. 2014) and *Local 703 v. Regions Fin. Corp.*, 762 F.3d 1248, 1258-59 (11th Cir. 2014)). Indeed, numerous courts interpreting *Best Buy* since *Halliburton II* have rejected Defendants' reading, noting that the "Eighth Circuit's ruling did not depend on the standard of proof" but was instead based on the "overwhelming evidence" of a lack of price impact in that case. *Waggoner v. Barclays PLC*, 875 F.3d 79, 103 n.36 (2d Cir. 2017); *Insys Therapeutics*, 333 F.R.D. at 444 (same).

Second, Defendants' own *Best Buy* cases make clear that it is Defendants' burden to "***prove***" a lack of price impact. *See In re Chicago Bridge & Iron Company N.V. Sec. Litig.*, 2019 WL 5287980, at *3 (S.D.N.Y. Oct. 18, 2019), *adopted*, 2020 WL 1329354, at *9 (S.D.N.Y. Mar. 23, 2020) (defendants bear "burden of persuasion when rebutting the *Basic* presumption and must demonstrate a ***complete lack of price impact***"); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 344 (D.N.J. 2018), *aff'd*, 775 F. App'x 51 (3d Cir. 2019) (citing *Best Buy*, holding defendants had burden to "prove" a lack of price impact); *In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *6-7 (N.D. Cal. Dec. 5, 2017) (citing *Best Buy*, holding "Defendants bear the burden of production and the burden of persuasion")).[2]

---

[2] Defendants misleadingly cite *Chicago Bridge* to suggest Defendants can rebut the presumption by showing a lack of statistically positive price increases on misstatement

3

Last, every other court to interpret *Halliburton II*—including two in the past three months alone—has confirmed defendants must prove an absence of price impact. *See, e.g., Goldman*, 955 F.3d at 272 n.19 ("Once the shareholders successfully invoke *Basic*…the question is not which side has better evidence, but whether the defendant has rebutted the presumption."); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2020 WL 2306490, at *9 (N.D. Cal. May 8, 2020) ("[D]efendants misconstrue the burden to show no price impact and erroneously place it with plaintiff. The burden is on defendants"); *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657 (S.D. Fla. 2014) ("[T]he defendant is burdened with the daunting task of proving that the publicly known statement had no price impact.").

## III. DEFENDANTS FAIL TO MEET THEIR INVENTED, LOWER STANDARD

In any event, Defendants have not met their own relaxed standard as they failed to produce ***any*** competent evidence of a lack of price impact. Defendants' sole evidence is the opinion of their expert, who did ***not*** opine that the alleged misstatements had no price impact, he was never asked to offer that opinion, and did not did not do so because he incorrectly believed that was Plaintiffs' job—a position directly at odds with *Halliburton II*. PX-X at 65:13-20.

Instead, Mr. Deal offered only a "preliminary" and "illustrative" analysis that he claimed showed that isolating the effects of the fraud from non-fraudulent stock price drivers would be "complex." PX-X at 31:9-13; 32:15-23, 33:12-19; Deal-Rpt.¶68. This necessarily means he did not "produce" any evidence of a ***lack*** of price impact because, naturally, he did not conduct the analysis he claimed was too difficult to perform.

---

dates. *Chicago Bridge* rejected that argument, holding that the absence of price increases following confirmatory statements and omissions like those here did ***not*** show a lack of price impact. *Chicago*, 2019 WL 5287980, at *19-20. Similarly, *Freddie Mac* is inapposite because plaintiffs there failed to show the *Basic* presumption applied and conceded the misstatements lacked price impact. *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *18 (N.D. Ohio Aug. 14, 2018).

4

The only front-end price impact evidence Mr. Deal provided was a chart asserting that statistically significant price increases were observed on four of the 52 days on which Defendants made misstatements. This is not evidence of a lack of price impact. As Mr. Deal conceded at deposition and as recognized by courts nationwide, misstatements that omit material facts, serve to maintain existing artificial inflation, or are accompanied by offsetting bad news, would ***not*** be expected to cause a price increase—the only metric this analysis tested. PX-X at 123:18-137:20; *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 415 (7th Cir. 2015) ("[A] stock can be inflated even if the price remains the same or declines after a false statement because the price might have fallen even more."); *Regions*, 762 F.3d at 1257 (misstatements "designed to prevent a more precipitous decline in the stock's price" would not cause a price increase); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 690 (D. Md. 2018) ("By logic, if a company persists in withholding material information…a significant change in price would only occur when the truth was revealed and not necessarily when additional misrepresentations are made.").[3]

Recognizing their expert admitted that a statistically significant price increase is not necessary to show price impact—and thus conceded the validity of the price maintenance doctrine—Defendants now take the extreme position that *Best Buy* somehow disavowed that doctrine. This too is wrong.

To start, *Halliburton II* itself clearly endorsed the price maintenance doctrine, because it involved price-maintaining misstatements. Indeed, the majority cited with

---

[3] Defendants' quibbling about the number of misstatement days on which price increases could be expected only highlights their failure to perform this analysis themselves. ECF No. 267 at 6-8. While Dr. Hartzmark pointed out that price increases would not be expected on at least half of the misstatement days, he did not opine that increases would be expected on the rest, including because of negative contemporaneously-disclosed information (Hartzmark-Rbt.¶113; *see also id.* ¶¶101-13)—a phenomenon Mr. Deal himself highlighted in his report. Deal-Rpt. ¶¶47-52.

5

approval *Schleicher v. Wendt*—Judge Easterbrook's seminal opinion endorsing price maintenance. 618 F.3d 679, 684 (7th Cir. 2010). As these and the legion of other decisions rightly explain, there is no basis to differentiate between fraudulent statements that maintain, introduce or increase inflation. *See, e.g.*, *FindWhat Inv'r Grp. v. FindWhat*.com*,* 658 F.3d 1282, 1316 (11th Cir. 2011) ("There is no reason to draw any legal distinction between fraudulent statements that wrongfully prolong the presence of inflation in a stock price and fraudulent statements that initially introduce that inflation."); *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 259 (2d Cir. 2016) (same); *Goldman,* 955 F. 3d at 264 (same)*.* And *Best Buy* nowhere announced the Eighth Circuit was disavowing this well-settled law. *See, e.g., Chalenor v. Univ. of N. Dakota*, 291 F.3d 1042, 1049 (8th Cir. 2002). To the contrary, *Best Buy* cited three leading Circuit Court decisions upholding the doctrine and distinguished the case before it on the facts, and courts in the Eighth Circuit have continued to ratify price maintenance in post-*Best Buy* decisions.[4]

*Best Buy* was entirely dependent upon the unique facts of that case. There, plaintiffs sought to certify a class based on a single false statement made on an earnings call. *Best Buy*, 818 F.3d at 778. But plaintiffs' own expert conceded that the earnings call statement was "virtually the same" as defendants' non-fraudulent statement two hours earlier and "would have been expected to be interpreted similarly by investors." *Id.* at 778, 782. Nothing like that exists in the record here. Further, in *Best Buy*, unlike here, Defendants' expert conducted an event study showing that the stock price increased significantly after the non-fraudulent statement, and declined prior to the issuance of the allegedly actionable fraudulent statement made two hours later. As multiple courts have recognized in certifying classes after *Best Buy*, that case is an extreme outlier which was decided on a

---

[4] *See Best Buy*, 818 F.3d at 780, 782-83 (citing *Schleicher*, *FindWhat* and *Regions*); *see also, e.g., Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741 (D. Minn. July 28, 2016); *City of Pontiac Gen. Emps. Ret. Sys. v. Wal-Mart Stores, Inc.*, 2016 WL 5400373 (W.D. Ark. Sept. 20, 2016) ; *see also* ECF No. 261, at 1-6.

6

unique set of facts. Those facts are not remotely similar to the facts here. *See, e.g., Baker v. SeaWorld Entm't, Inc.*, 2017 WL 5885542, at *11 (S.D. Cal. Nov. 29, 2017) (distinguishing *Best Buy* as involving a "non-fraudulent" statement as opposed to misstatements that actually "prop up" a company's stock price).

In any event, Defendants' price maintenance argument is irrelevant, as Plaintiffs' case also involves misstatements that coincided with statistically positive abnormal returns—what Defendants describe as "quintessential" evidence of price impact. ECF No. 267 at 4. As Dr. Hartzmark explained, three of the misstatement dates with significant price increases coincide with an alleged acceleration of CenturyLink's cramming, which was alleged to have inflated the financial metrics Mr. Deal highlighted as potentially causing price increases. *See In re CenturyLink Sales Practices & Sec. Litig.*, 403 F. Supp. 3d 712, 725-26 (D. Minn. 2019); Deal-Rpt.¶74-76 (growth in cash flows and consumer revenues). This is evidence of price impact—not an absence of it. Thus, in no event can Defendants carry their burden of showing a "***complete lack of price impact***" in this case.

Indeed, Mr. Deal admitted the corrective disclosures here evidence price impact. As Mr. Deal testified, his analysis of the corrective disclosures showed they "do seem to have…had ***some impact on the stock price***." *See* PX-X at 190:14-21. And Mr. Deal's theory that "fear, uncertainty, and doubt" was "triggered" by fraud-related stock price declines, which FUD made larger, necessarily means the fraud had price impact. *Id.* at 163:22-164:4; Deal-Rpt.¶23. These admissions distinguish this case from *Best Buy* and end the analysis. *See* Reply at 6-7; *Emergent Biosolutions*, 322 F. Supp. 3d at 690 (expert admission of some impact dispositive).[5]

---

[5] Defendants' own cases undermine their dispute about the significance and event window relating to the June 19 disclosure. *See Chicago Bridge*, 2020 WL 1329354, at *4 (rejecting "cut-off of a 5% significance"); *Southern*, 332 F.R.D. at 391 (two-day window appropriate).

7

The few courts that have entertained Defendants' burden-shifting theory make clear that Defendants' evidence could never possibly satisfy it. In *Marcus v. J.C. Penney Co.*, 2016 WL 8604331 (E.D. Tex. Aug. 26, 2019), *adopted*, 2017 WL 907996 (E.D. Tex. Mar. 8, 2017), defendants failed to meet a burden of production even though there were *no* front-end price increases on misstatement dates. Rather, because (like here), the stock declined following corrective disclosures, thereby showing price impact, it was "not necessary to reach the question of whether [defendants] also bear the burden of persuasion." 2016 WL 8604331, at *7-8; *see also KBC Asset Mgmt. NV v. 3D Sys. Corp.,* 2017 WL 4297450, at *8 (D. S.C. Sept. 28, 2017) (citing *Best Buy,* holding defendants failed to meet burden of production); *In re BancorpSouth, Inc.*, 2017 WL 4125647, at *1 (6th Cir. Sept. 18, 2017) (Rule 301 burden not met where misstatements did not result in price increases).

While Defendants complain about the difficulty of satisfying their burden, that complaint is properly directed at Congress and the Supreme Court—not this Court. *See, e.g., Goldman*, 955 F.3d at 269-70, 274; *Aeterna Zentaris.*, 775 F. App'x at 54 (rejecting argument rebutting price impact was "impossible").[6]

## IV.   THE FULL CLASS PERIOD SHOULD BE CERTIFIED

Reiterating their meritless request to shorten the Class Period, Defendants again ignore their burden to claim that Plaintiffs somehow failed to connect the June 19, 2017 and July 12, 2017 disclosures to "any particular misrepresentation" or demonstrate how they provided new information to the market. This is wrong.

The Complaint connects the second and third corrective disclosures directly to Defendants' misstatements, describing, for example, that the July 12, 2017 news reports concerning the Minnesota Attorney General's lawsuit revealed "far more about the scope of CenturyLink's billing fraud," including by showing that only "1 out of 5" customers was quoted correctly. ¶¶163-64. Defendants' own expert conceded investors did not know

---

[6] An unrebutted presumption of reliance also applies under *Affiliated Ute*. Reply at 13-14.

8

these facts prior to this disclosure (PX-X at 87:17-89:25), which prompted a statistically significant decline and caused analysts to downgrade CenturyLink's stock in light of new revelations concerning the "geographic and financial scope" of its misconduct. Hartzmark-Rbt.¶¶37-43. As another court recently observed, that Defendants conceded the significance of the Class Period-ending corrective disclosure is dispositive, as it shows "that the price had been inflated" prior to that time and "defendants bear the burden" of demonstrating otherwise. *Symantec*, 2020 WL 2306490, at *9.[7]

## V. DEFENDANTS' *COMCAST* ARGUMENT IS MERITLESS

Recycling their rejected *Comcast* arguments, Defendants wrongly argue that Plaintiffs have identified no "comparable case." Setting aside that Plaintiffs did just that (Hartzmark-Rbt.¶¶138-40), Defendants' expert admitted that Plaintiffs' methodology is "common" to all members of the class—conceding it satisfies *Comcast*. PX-X at 215:20-216:20. Defendants' complaint over the precise ***inputs*** that will be used in the model—classic disputes over ***loss causation*** that cannot be decided at this stage—is meritless. *See Symantec*, 2020 WL 2306490, at *10.[8]

## VI. CONCLUSION

Plaintiffs respectfully request their motion be granted in full.

DATED: June 19, 2020    **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Michael D. Blatchley*

---

[7] The facts here are nothing like in *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, where there was no dispute investors "already knew the truth" after the first disclosure. 325 F.R.D. 280, 295 (D. Minn. 2018); *cf. 3D Sys.*, 2017 WL 4297450, at *8 (refusing to shorten class period where there was an "open question" as to whether "curative information was disclosed after" first disclosure).

[8] Defendants' futile effort to distinguish *Tile Shop* (and failure to distinguish the dozens of other cases cited by Plaintiffs) and their reliance on two inapposite out-of-circuit outliers only underscores the argument's lack of merit. *See* Reply at 13, n.7-8.

9

John C. Browne, NYS Bar No. 3922747
Michael D. Blatchley, NYS Bar No. 4747424
Michael M. Mathai, NYS Bar No. 5166319
Amanda Boitano, NYS Bar No. 5705843
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com
michael.mathai@blbglaw.com
amanda.boitano@blbglaw.com

Richard D. Gluck, Cal. Bar. No. 151675
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470
Facsimile: (212) 554-1444
rich.gluck@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydia Anderson-Dana, OSB No. 166167
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:   (503) 227-1600
Facsimile:    (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com
lansersondana@stollberne.com

*Special Assistant Attorneys General and Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon*

10

*Public Employee Retirement Fund and Plaintiff Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009, and Lead Counsel for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Plaintiffs*