## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>Civil Action No. 18-296 (MJD/KMM) | MDL No. 17-2795 (MJD/KMM)<br><br>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' THIRD-PARTY SUBPOENAS<br><br>Oral Argument Requested |

Patrick E. Gibbs, CA Bar No. 183174
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5535
Facsimile: (650) 618-0387
pgibbs@cooley.com

Sarah Lightdale, NY Bar No. 4395661
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6374
Facsimile: (212) 479-6275
slightdale@cooley.com

Douglas P. Lobel, VA Bar No. 42329
David A. Vogel, VA Bar No. 48971
Dana A. Moss, VA Bar No. 80095
COOLEY LLP
Reston Town Ctr., 11951 Freedom Dr.
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
dlobel@cooley.com
dvogel@cooley.com
dmoss@cooley.com

Ryan Blair, CA Bar No. 246724
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6047
Facsimile: (858) 527-2750
rblair@cooley.com

William A. McNab, MN Bar No. 320924
Thomas H. Boyd, MN Bar No. 0200517
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6400
wmcnab@winthrop.com
tboyd@winthrop.com

Jerry W. Blackwell, MN Bar No. 186867
BLACKWELL BURKE P.A.
431 South 7th Street, Suite 2500
Minneapolis, MN 55415
Telephone: (612) 343-3200
blackwell@blackwellburke.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

FACTUAL BACKGROUND ........................................................................ 2

    I.    THE ALLEGATIONS IN THE COMPLAINT ........................................... 2

    II.    THE THIRD-PARTY SUBPOENAS ........................................................ 4

    III.    DEFENDANTS' PRODUCTIONS ............................................................ 6

ARGUMENT .............................................................................................. 7

    I.    THE COURT SHOULD ORDER PLAINTIFFS TO WITHDRAW THE SUBPOENAS TO THE DEBT COLLECTORS ............................... 9

    II.    THE COURT SHOULD ORDER PLAINTIFFS TO WITHDRAW THE SUBPOENA TO GREAT PLACE TO WORK INSTITUTE, INC. ........................................................................................... 13

    III.    ALTERNATIVELY, THE THIRD-PARTY SUBPOENA RECIPIENTS ARE ENTITLED TO COSTS ............................................ 15

    IV.    THE COURT SHOULD REQUIRE THAT PLAINTIFFS SEEK LEAVE BEFORE ISSUING ADDITIONAL THIRD-PARTY SUBPOENAS ............................................................................ 16

CONCLUSION .......................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abhe & Svoboda, Inc. v. Hedley*,
  Civ. No. 15-1952, 2016 WL 11509914 (D. Minn. Mar. 15, 2016) .................. 8, 10, 11

*Am. Chems. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*,
  14-cv-44-JAJ-HCA, 2015 WL 12834384 (S.D. Iowa May 15, 2015) ......................... 8

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*,
  231 F.R.D. 426 (M.D. Fla. Sept. 28, 2005) ................................................ 8

*U.S. ex rel. Dicken v. Nw. Eye Clinic, P.A.*,
  13-cv-2691, 2018 WL 2980394 (D. Minn. June 14, 2018) .................................. 10, 13

*In re Domestic Drywall Antitrust Litig.*,
  300 F.R.D. 234 (D. Md. 2014) ................................................................. 16

*Hill v. Sw. Energy Co.*,
  858 F.3d 481 (8th Cir. 2017) .................................................................. 17

*Hofer v. Mack Trucks, Inc.*,
  981 F.2d 377 (8th Cir. 1992) .................................................................. 14

*Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.*,
  No. 18-mc-00059, 2018 WL 5994189 (D. Minn. Nov. 15, 2018) ............................... 8

*Morrow v. Flowers Foods, Inc.*,
  No. 3:07-cv-617-MHT, 2008 WL 11511782 (M.D. Ala. May 28, 2008) .................. 11

*Motorola Sols., Inc. v. Hytera Commc'n Corp.*,
  365 F. Supp. 3d 916 (N.D. Ill. 2019) ......................................................... 12

*Murphy v. Deloitte & Touche Grp. Ins. Plan*,
  619 F.3d 1151 (10th Cir. 2010) ................................................................ 13

*Shukh v. Seagate Tech, LLC*,
  295 F.R.D. 228 (D. Minn. 2013) ......................................................... 8, 9, 14

*Smith v. Dowson*,
  158 F.R.D. 138 (D. Minn. 1994) ............................................................... 8

-ii-

# TABLE OF AUTHORITIES
(continued)

**Page**

**Other Authorities**

8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 2008.1 (3d ed. 2020) ............................................................................ 16

Fed. R. Civ. P.
    16 ................................................................................................................................ 9, 17
    26 ...................................................................................................................... 8, 10, 13, 16
    26(b) .................................................................................................................................. 7
    26(c) ...................................................................................................................... 8, 9, 15, 16
    45 .................................................................................................................................. 8, 16

## PRELIMINARY STATEMENT

Plaintiffs issued 11 third-party subpoenas on June 11, 2020, seeking discovery from 10 debt collectors and one survey management firm who were engaged by CenturyLink.  Far from being "narrowly tailored" as this Court has mandated, this new discovery is irrelevant to Plaintiffs' pleaded allegations and stated theory of fraud, disproportionately sweeping, and duplicative of the discovery Plaintiffs already have obtained from CenturyLink—the result of thorough, costly reviews of over a million documents, yielding over 300,000 documents produced to Plaintiffs.

Plaintiffs allege that CenturyLink misled investors about a years-long practice of routinely and systematically misquoting prices and improperly billing customers for services they did not request.  But CenturyLink's debt collection practices and employee satisfaction surveys are not alleged to have been connected in any conceivable way to the purported scheme.  Moreover, the requests lack the requisite proportionality to case needs—as each subpoena requests documents spanning a time period years longer than the class period alleged.  Lastly, any supposedly responsive communications between CenturyLink and these third parties should already have been captured in party discovery. Plaintiffs' apparent inability to substantiate their securities fraud allegations with CenturyLink's documents does not justify inappropriate third-party discovery.

For these reasons, as detailed below, Defendants request that the Court enter a protective order requiring that Plaintiffs withdraw all 11 third-party subpoenas. Alternatively, to the extent the Court permits this discovery, Defendants request that the Court require Plaintiffs to pay the third parties' expenses for compliance, including

attorneys' fees.  Furthermore, as Plaintiffs have now served at least 30 non-party

subpoenas in this case (many of which have sought irrelevant discovery), Defendants

request that the Court require Plaintiffs to seek leave before issuing any additional

subpoenas.[1]

## FACTUAL BACKGROUND

### I.      THE ALLEGATIONS IN THE COMPLAINT

Plaintiffs allege that CenturyLink's "senior leadership" "directly and

purposefully" endorsed deceptive sales practices "by imposing unachievable sales quotas

on sales employees."  Consol. Sec. Class Action Compl. ¶ 6 (June 25, 2018) (ECF 143)

(hereinafter, "Compl.").  Plaintiffs further allege that the highest levels of CenturyLink

"closely monitored and enforced strict compliance with these quotas," and made sure to

"terminate[] sales employees who did not meet them."  *Id.*  According to Plaintiffs, these

practices amounted to an "institutionalized company-wide sales cramming scheme," and

Defendants committed securities fraud by not disclosing these "facts" to investors.  *Id.* ¶¶

62, 281.  Not once in the Complaint do Plaintiffs plead allegations regarding any of

CenturyLink's third-party debt collectors or survey management firms, let alone

allegations connecting these third parties' work for CenturyLink to the conduct

underlying Defendants' allegedly fraudulent statements.

---

[1] The parties reached impasse regarding this discovery, despite exchanging written
correspondence, and meeting and conferring regarding this discovery on June 23, 2020
and July 14, 2020.

Indeed, in Plaintiffs' more than 100-page Complaint, CenturyLink's debt collection practices are mentioned only twice, in one context—in two bullet points purporting to summarize CenturyLink's settlement with the Arizona Attorney General. Plaintiffs allege only that bills for Arizona customers were sometimes sent "to collections," *id.* ¶ 132, and that CenturyLink agreed to continue investigating customer complaints in Arizona before sending bills to collections. *Id.* ¶ 135. There are no allegations regarding CenturyLink's agreements with its collections vendors; no allegations regarding CenturyLink's communications with those vendors; no allegations regarding how customer bills in collections were resolved; and no allegations regarding vendors' statements to CenturyLink customers about the underlying issues in Plaintiffs' Complaint.

Likewise, Plaintiffs do not mention employee satisfaction surveys in the Complaint or allege that third parties managed employee surveys regarding deceptive sales practices. Plaintiffs allege only that CenturyLink's internal "exit surveys" for employees raised claims of deceptive sales practices and supposedly inadequate compensation considering job demands. *Id.* ¶¶ 102, 182. There are no allegations that employee satisfaction surveys reported "a sales cramming scheme"; that any third-party survey management firm informed CenturyLink that survey responses reported deceptive sales practices; or that any third-party survey management firm assisted with CenturyLink's internal exit surveys.

## II.    THE THIRD-PARTY SUBPOENAS

Plaintiffs issued 11 third-party subpoenas on June 11, 2020.  Ten subpoenas were issued to the following entities, which served as debt collectors for CenturyLink (collectively, "Debt Collectors"):  Afni, Inc.; Allied Interstate LLC; Amalgamated Credit Bureau; Audit Systems, Inc.; Convergent Outsourcing, Inc.; EOS-CCA; GC Services Limited Partnership; IC System, Inc.; Robinson, Reagan & Young, PLLC; and Southwest Credit Systems, L.P.  Exs. 1–10.

The Debt Collector subpoenas include broad requests and demand, among other things, production of the following:

- "All Documents concerning Your engagement by CenturyLink, including . . . [a]ll Documents concerning the nature or scope of any engagement(s) between You and CenturyLink[.]"

- "All Documents, including internal Communications or Communications with CenturyLink, concerning Disputed Collections, Cramming and Billing Issues or Sales and Billing Practices."

- "All Documents reflecting any negotiation, . . . or requested adjustment initiated or made by You in connection with any Master Agreement . . . arising from or relating to any Disputed Collections . . . concerning the accuracy or validity of any accounts due to Cramming and Billing Issues or Sales and Billing Practices."

- "All Documents or Communications concerning how You or Your employees . . . should respond to questions about CenturyLink's Sales and Billing Practices, Cramming and Billing Issues, the Heiser Lawsuit, the Minnesota AG Action," and "the Arizona AG Action[.]"

*See, e.g.*, Ex. 10.

These subpoenas further include expansively defined terms.  For example, "Cramming and Billing Issues" captures any "inquiry" or "failure to meet customer

expectations" regarding CenturyLink's sales and billing practices. *Id.*, General Definitions No. 6. Likewise, "Disputed Collections" encompasses "any instance" in which a CenturyLink customer "complained" of "any part of any bill" from CenturyLink. *Id.*, General Definitions No. 8.

Also on June 11, 2020, Plaintiffs issued a third-party subpoena to Great Place to Work Institute, Inc., a survey management firm. This subpoena requests documents related to that third party's engagement with CenturyLink and, among other things, the following:

- "All Documents concerning Cramming and Billing Issues at CenturyLink, including all Documents concerning any survey, . . . or other analysis of or relating to Cramming and Billing Issues conducted by You or shared with You, employee or customer experiences or perceptions of Cramming and Billing Issues, and any Communications concerning Cramming and Billing Issues with CenturyLink, any third party, or . . . among Your employees."

- "All Documents concerning employee or customer experiences or perceptions of CenturyLink management credibility . . . or similar attributes, as well as any Communications concerning CenturyLink management credibility . . . with CenturyLink, any third party, or between or among Your employees."

- "All Documents that You issued, produced or provided, or that any Governmental Entity issued, produced or provided, in connection with any Governmental Action[.]"

Ex. 11.

This subpoena also contains expansive terms. For example, "Cramming and Billing Issues" has the exact same broad definition here as in the Debt Collector subpoenas. *See id.*, General Definitions No. 7.

- 5 -

All 11 subpoenas request documents from January 1, 2013, to the present—a period covering seven-and-a-half years, or three years more than the purported class period.  *See id.*, Instruction No. 13.

## III.    DEFENDANTS' PRODUCTIONS

The context in which Plaintiffs have issued these 11 third-party subpoenas is important. 

In response, Defendants have performed extensive searches for and, to the extent available, produced

In total, Defendants' productions,

comprise 2 million pages and more than 300,000 documents.  To note only a few examples, Defendants collected, reviewed, and produced

Ex. 12, Request 7(c).  Defendants have also agreed to produce, or already produced,

*Id.* at Request 7(b).

Defendants' review encompassed more than a million documents

*See* Ex. 13.[2]  Given the breadth of Plaintiffs' document requests, Defendants have already

produced ████████████████████████████████████████████████████

████████████████  *see, e.g.*, Ex. 15, ████████████████  Defendants have

also produced ████████████████████████████████████████████████

████████████████  *See* Ex. 13.

## ARGUMENT

As in every case, discovery here must be both "relevant" to a "party's claim or

defense" and "proportional to the needs of the case[.]"  Fᴇᴅ. R. Cɪᴠ. P. 26(b)(1).  Critical

to assessing proportionality are "the importance of the discovery in resolving the issues"

and "whether the burden or expense of the proposed discovery outweighs its likely

benefit."  *Id.*  Courts must limit discovery that "is unreasonably cumulative or

duplicative" or that "can be obtained from some other source that is more convenient,

less burdensome, or less expensive[.]"  *Id.* at 26(b)(2)(C)(i).

Rule 26 permits "[a] party" to "move for a protective order" with respect to third-

party subpoenas that are not relevant or not proportional to the needs of the case.  Fᴇᴅ. R.

Cɪᴠ. P. 26(c)(1); *see Shukh v. Seagate Tech, LLC*, 295 F.R.D. 228, 236–37 (D. Minn.

2013) (concluding that under Rule 26 "[defendant] is entitled, as a party to the litigation,

to limit irrelevant and cumulative discovery"); *Abhe & Svoboda, Inc. v. Hedley*, Civ. No.

---

[2] ████████████████████████████████████████████████████
████████████████████████████████████████████████  *See* Ex. 14.
████████████████████████████████████████████████  *See*
Ex. 13.

15-1952, 2016 WL 11509914, at *4 (D. Minn. Mar. 15, 2016) (same); *see also Am. Chems. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*, 14-cv-44-JAJ-HCA, 2015 WL 12834384, at *2 (S.D. Iowa May 15, 2015) (same).[3]

Protective orders are warranted for "good cause," which a party can establish by demonstrating that the proposed discovery is irrelevant or overbroad. *See Shukh*, 295 F.R.D. at 236 (finding "good cause" under Rule 26 because of "a showing of irrelevancy of [the] proposed discovery" (quoting *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994))); *see also Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. Sept. 28, 2005) ("find[ing] good cause" to preclude third-party discovery under Rule 26 because it was "overbroad"). After finding good cause, courts have broad discretion to "forbid[] the disclosure or discovery" sought or "limit[] the scope of disclosure or discovery to certain matters[.]" FED. R. CIV. P. 26(c)(1)(A), (D). Rule 16 supplements this discretion, allowing courts to "discourag[e] wasteful pretrial activities" and "establish[] early and continuing control so that the case will not be protracted because of lack of management[.]" *Id.* at 16(a)(2)–(3).

---

[3] In addition to standing under Rule 26, Defendants have standing under Rule 45. *See Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.*, No. 18-mc-00059, 2018 WL 5994189, at *2 (D. Minn. Nov. 15, 2018) (observing courts have determined a party has standing under Rule 45 where the party "claims some personal right or privilege with regard to the documents sought" (internal quotation marks and citations omitted)). Defendants have standing under Rule 45 because the documents sought include communications with the Defendants, Defendants' confidential information related to customers, or both.

As demonstrated below, there is good cause to enter a protective order because the discovery sought from both the Debt Collectors and Great Place to Work Institute, Inc. is irrelevant and not proportional to the needs of the case.

## I.    THE COURT SHOULD ORDER PLAINTIFFS TO WITHDRAW THE SUBPOENAS TO THE DEBT COLLECTORS

The Debt Collector subpoenas seek irrelevant discovery from nonparties ranging for years beyond the purported class period—the exact opposite of this Court's directive that discovery must be "as narrowly tailored as possible." Ex. 16 at 79:15. Plaintiffs repeatedly allege that CenturyLink's senior executives condoned "systemic overbilling" at a "massive scale throughout the Company" based on "impossibly high sales quotas" imposed on employees, and "never once disclosed that the Company's reported revenues could be called into question." *See, e.g.*, Compl. ¶¶ 2, 63, 66, 180. Plaintiffs cannot show that individual customer complaints potentially raised to the Debt Collectors are relevant to the alleged securities fraud, especially when the 139-page, 301-paragraph Complaint lacks any allegations regarding CenturyLink's debt collection practices. *See Shukh*, 295 F.R.D. at 238 (granting party's motion for protective order against third-party discovery, concluding discovery sought was not relevant given it had "no connection" to the allegations "that bears directly upon the issues"). Indeed, the Debt Collector subpoenas suggest that, for Plaintiffs, "burden an[d] expense" have simply "become the centerpiece of litigation strategy[.]" *U.S. ex rel. Dicken v. Nw. Eye Clinic, P.A.*, 13-cv-2691, 2018 WL 2980394, at *3 (D. Minn. June 14, 2018) (Menendez, Mag. J) (internal

- 9 -

quotation marks and citations omitted) (observing relevancy "must still hew closely to matters specifically described in the complaint").

Plaintiffs' relevance theory would allow discovery from any third party, on the sole basis that a CenturyLink customer may have reported a sales and billing complaint to that third party. This theory of relevance is inconsistent with Rule 26, a conclusion reinforced by the Court's recent ruling that Plaintiffs' documents involving the Minnesota Attorney General—which, unlike the Debt Collectors, is referenced throughout the Complaint (¶¶ 13, 15, 18, 64, 93, 141–43, 164–69, 173, 178, 181, 185)— are not discoverable under Rule 26. *See* Ex. 17 at 29:8–15 (concluding information was not discoverable because, among other reasons, it was "several levels removed in direct relevance").

Moreover, Plaintiffs seek from the Debt Collectors three categories of discovery that are both not proportional to case needs and cumulative or duplicative of Defendants' productions. First, the subpoenas explicitly seek communications available from Defendants, including communications with CenturyLink and communications regarding the Debt Collectors' engagements with CenturyLink. *See* Ex. 4, Request Nos. 1, 2. To the extent Defendants have not already produced these documents, Plaintiffs could and should have first requested them from Defendants, rather than burdening third parties. *Hedley*, 2016 WL 11509914, at *4 (granting protective order, in part "[b]ecause proportional discovery . . . will be obtained from a source—the Plaintiff—that is more convenient, less burdensome, and less expensive than the discovery sought through the third-party subpoena"); *see also Morrow v. Flowers Foods, Inc.*, No. 3:07-cv-617-MHT,

2008 WL 11511782, at *1 (M.D. Ala. May 28, 2008) (granting party's motion for a

protective order against third-party subpoenas, because "information sought is more

appropriately requested from defendants prior to seeking it from nonparties").[4]

   Second, to the extent Plaintiffs claim this discovery might reveal documents not

available to Defendants (e.g., the Debt Collectors' internal communications or

communications with CenturyLink customers), such discovery is not proportional to the

needs of the case.  Any individual sales and billing complaints identified by the Debt

Collectors ██████████████████████████████████████████████

██████████████████████████████████████    *See Hedley*, 2016

WL 11509914, at *4 (finding defendants' claim that discovery sought "would be a 'cross-

check' to other discovery confirm[ed] that duplicative discovery [was] sought").  In

response to Plaintiffs' requests for production, ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████    *See* Ex. 18,

Request 7(b)–(d) ████████████████████████████████

---

[4] This principle applies here independent of the Court's observation that efficiency
considerations favored Defendants first seeking certain discovery from the Minnesota
Attorney General as opposed to Plaintiffs.  The Minnesota Attorney General discovery is
inapposite; Defendants had previously communicated and exchanged productions with
the Minnesota Attorney General, whereas Plaintiffs have no such relationship with the
Debt Collectors.  *See* Ex. 17 at 28:12–20 (noting that "[t]he third party at issue is also
engaged in extensive litigation, or has been, with the defendants").

- 11 -

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ To satisfy these

production requests, Defendants ██████████████████████

████████████████████████████████████████████████

*See* Ex. 13.[5]

      Third, the subpoenas further seek cumulative or duplicative discovery in

requesting documents concerning how the Debt Collectors should respond to questions

about legal proceedings regarding CenturyLink's sales and billing practices.  Ex. 4,

Request Nos. 1, 2.  In response to Plaintiffs' request for communications related to the

Heidi Heiser litigation, for example, Defendants' productions ██████████████

█████████████████████████████████████████████ *See*

Ex. 12, Request 8; *see also* Ex. 13.

      Additionally, the subpoenas lack the requisite proportionality to case needs as they

seek documents spanning an overbroad time period—from January 1, 2013 to the present.

*See, e.g.*, Ex. 4, Instruction No. 13.  The time period provided in the subpoenas starts

---

[5] In addition to the substance of Defendants' productions, the volume further
demonstrates that this third-party discovery would be cumulative or duplicative.
Defendants have produced over 300,000 documents across 2 million pages, including an
average of approximately 18,000 documents from each individual Defendant's custodial
file.  Considering both the substance and volume of these productions, it is highly
unlikely that this third-party discovery would add new and relevant information.  *See
Motorola Sols., Inc. v. Hytera Commc'n Corp.*, 365 F. Supp. 3d 916, 925 (N.D. Ill. 2019)
("The discovery rules are not a ticket to an unlimited, never-ending exploration of every
conceivable matter that captures an attorney's interest.") (internal citations omitted).

- 12 -

months before and ends years after the alleged class period of March 1, 2013, to July 12,

2017.  *See* Compl. ¶ 268.  Courts routinely reject requests for discovery outside the time

period at issue in the complaint.  *See, e.g.*, *Nw. Eye Clinic, P.A.*, 2018 WL 2980394, at *2

("Because of the clear time-frame at issue in the complaint, the Court finds that requiring

discovery outside of the seven years at issue would not be proportional to the needs of the

case.").  This overbroad time period, combined with Plaintiffs' unduly expansive

interpretation of relevance, would authorize discovery from any third party to whom a

CenturyLink customer may have communicated a sales or billing complaint at any

time—even a neighbor, friend, or family member.  This discovery, therefore, is the

classic example of a "fishing expedition" that Rule 26 prohibits.  *See, e.g.*, *Murphy v.*

*Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (observing that

Rule 26 "has never been a license to engage in an unwieldy, burdensome, and speculative

fishing expedition") (internal citations omitted).

## II.    THE COURT SHOULD ORDER PLAINTIFFS TO WITHDRAW THE SUBPOENA TO GREAT PLACE TO WORK INSTITUTE, INC.

Plaintiffs' subpoena to Great Place to Work Institute, Inc. also seeks broad

categories of discovery irrelevant to Plaintiffs' allegations and not proportional to case

needs.

First, Plaintiffs have requested irrelevant discovery by seeking CenturyLink

employee satisfaction surveys and any analyses of sales and billing complaints.  Ex. 11,

Request Nos. 1, 3.  Great Place to Work Institute, Inc. is never mentioned in the

Complaint, and the employee satisfaction surveys it managed have no connection to

- 13 -

Plaintiffs' allegations of securities fraud (or even to CenturyLink's internal exit surveys). This request clearly demonstrates another "fishing expedition" for potentially disparaging information about CenturyLink, without regard to whether that information is tied to the scheme alleged. *See Shukh*, 295 F.R.D. at 237 (noting that permissive discovery rules are not a license for "fishing expeditions" (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992))).

Second, as with the subpoenas to the Debt Collectors, Plaintiffs have requested from Great Place to Work Institute, Inc. communications that are equally available from the Defendants—namely, communications involving the Defendants and regarding Great Place to Work Institute, Inc.'s engagement with CenturyLink. Ex. 11, Request Nos. 1–3. For the same reasons detailed above, this discovery is cumulative or duplicative of Defendants' own productions, and not proportional to the needs of the case.

Third, Plaintiffs seek documents provided to or by any government entity, including regarding CenturyLink's legal proceedings with state attorneys general. *See, e.g.*, Ex. 11, Request No. 4. This is improper cloned discovery. The Court recently denied Plaintiffs' Motion to Compel production of documents provided to the Minnesota Attorney General, in part because it was cloned discovery. *See* Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel (May 4, 2020) (ECF 694); Ex. 19 at 45:19–22 ("I rejected that fundamental premise at the very beginning of this case when I issued the oft quoted edict that we weren't going to have 'cloned discovery'"). Plaintiffs cannot circumvent the Court's prohibition of cloned discovery by seeking discovery from a third party potentially unaware of the Court's rulings. Even if it were not cloned

- 14 -

discovery, the documents Great Place to Work Institute, Inc. provided to government

entities would be cumulative or duplicative of CenturyLink's productions.  CenturyLink

has already produced ███████████████████████████████████████

███████████████████████████████████████ *See* Ex. 13.

## III.  ALTERNATIVELY, THE THIRD-PARTY SUBPOENA RECIPIENTS ARE ENTITLED TO COSTS

If the Court does not order Plaintiffs to withdraw these 11 third-party subpoenas,

then the Court should grant the third parties' costs for compliance.  Rule 26(c)(1)(B)

allows the Court, upon a party's showing of good cause, to "specify[] . . . the allocation

of expenses[] for the disclosure or discovery," including with respect to a third-party

subpoena.[6]  FED. R CIV. P. 26(c)(1)(B); *see also* 8 CHARLES ALAN WRIGHT & ARTHUR R.

MILLER, FEDERAL PRACTICE AND PROCEDURE § 2008.1 (3d ed. 2020) (noting "allocation

of expenses" refers to courts' general authority to impose cost-shifting).  Given their

breadth and scope, the subpoenas here would subject the third parties to substantial

burden and expense.  This warrants compensation, including attorneys' fees.  *See In re*

*Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 250 (D. Md. 2014) (granting non-

party "reasonable compensation" for production "including attorney's fees").  This is

especially true for certain third parties whose productions may entail a manual, labor-

---

[6] Defendants have standing under Rule 26 to request that Plaintiffs pay the third parties'
expenses for compliance.  Rule 26(c)(1) allows Defendants to oppose third-party
discovery and authorizes the Court to establish the "allocation of expenses" for such
discovery.  FED. R. CIV. P. 26(c)(1)(B); *cf.* FED. R CIV. P. 45(d)(1) (stating that "[a] party
or attorney responsible for issuing and serving a subpoena must take reasonable steps to
avoid imposing undue burden or expense on a person subject to the subpoena").

intensive process.  Accordingly, the Court should shield the third parties from "undue

burden or expense" and require that Plaintiffs compensate them for costs incurred for

compliance.

## IV.    THE COURT SHOULD REQUIRE THAT PLAINTIFFS SEEK LEAVE BEFORE ISSUING ADDITIONAL THIRD-PARTY SUBPOENAS

Plaintiffs have now issued 30 non-party subpoenas in this action.  While many of

the first 19 subpoenas requested discovery of questionable relevance to Plaintiffs'

allegations, the latest 11 subpoenas seek discovery that is plainly irrelevant and not

proportional to case needs.  Because this Court may "discourag[e] wasteful pretrial

activities" and "establish[] early and continuing control so that the case will not be

protracted because of lack of management[,]" the Court should require Plaintiffs to seek

leave before issuing any additional third-party subpoenas.  FED. R. CIV. P. 16(a)(2)–(3);

*see also Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) (observing that "[a]

district court has very wide discretion in handling pretrial discovery") (internal citations

omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant

Defendants' Motion for a Protective Order and require that Plaintiffs withdraw the third-

party subpoenas to Afni, Inc.; Allied Interstate LLC; Amalgamated Credit Bureau; Audit

Systems, Inc.; Convergent Outsourcing, Inc.; EOS-CCA; GC Services Limited

Partnership; Great Place to Work Institute, Inc.; IC System, Inc.; Robinson, Reagan &

Young, PLLC; and Southwest Credit Systems, L.P.  Exs. 1–10.  Alternatively, if the

- 16 -

Court permits discovery from these third parties, Defendants respectfully request that the Court order Plaintiffs to pay all the third parties' fees and expenses related to compliance.

Defendants also respectfully request that the Court require Plaintiffs to seek leave before issuing any additional subpoenas.

Dated:  July 16, 2020                          Respectfully submitted,

*/s/ William A. McNab*
William A. McNab (MN Bar No. 320924)
Thomas H. Boyd (MN Bar No. 0200517)
WINTHROP & WEINSTINE, P.A.
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 604-6400
Fax: (612) 604-6800
wmcnab@winthrop.com
tboyd@winthrop.com

Patrick E. Gibbs (CA Bar No. 183174)
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
Phone: (650) 843-5000
Fax: (650) 849-7400
pgibbs@cooley.com

Ryan Blair (CA Bar No. 246724)
COOLEY LLP
4402 Eastgate mall
San Diego, CA 92121
Phone: (858) 550-6047
Fax: (858) 527-2750

rblair@cooley.com

Douglas P. Lobel (VA Bar No. 42329)
David A. Vogel (VA Bar No. 48971)
Dana A. Moss, VA Bar No. 80095
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190
Phone: (703) 456-8000
Fax: (703) 456-8100
dlobel@cooley.com
dvogel@cooley.com
dmoss@cooley.com

Sarah M. Lightdale (NY Bar No. 4395661)
COOLEY LLP
55 Hudson Yards
New York, New York 10001
Phone: (212) 479-6000
Fax: (212) 479-6275
slightdale@cooley.com

Jerry W. Blackwell (MN Bar No. 186867)
BLACKWELL BURKE P.A.
431 South 7th Street, Suite 2500
Minneapolis, MN 55415
Telephone: (612) 343-3200
blackwell@blackwellburke.com

*Attorneys for Defendants CenturyLink, Inc.,
Glen F. Post, III, R. Stewart Ewing, Jr.,
David D. Cole, Karen Puckett, Dean J.
Douglas, and G. Clay Bailey*