# Exhibit 18

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION | MDL No. 17-2795 (MJD/KMM) |
| This Document Relates to: Civil File No. 18-296 (MJD/KMM) | **PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CENTURYLINK, INC.** |

**TO:  DEFENDANT CENTURYLINK, INC., BY AND THROUGH ITS COUNSEL OF RECORD**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs, by and through their undersigned attorneys, hereby request that Defendant CenturyLink, Inc. ("CenturyLink") produce for inspection and copying the documents designated under the heading "Requests for Production" within thirty days from the service of these Requests at the office of Stoll Stoll Berne Lokting & Shlachter P.C., 209 S.W. Oak Street, Portland, OR 97204, or at such other time and place as the parties mutually agree.

CenturyLink should produce all requested Documents that are in its actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of its officers, employees, agents, representatives or attorneys.

These requests for production are continuing in nature and require supplemental responses to the greatest extent permitted by Federal Rule of Civil Procedure 26(e). Plaintiffs further request that such production be made in accordance with the "Definitions" and "Instructions" set forth below.

1

## DEFINITIONS

The following definitions will apply to the following terms as used herein:

**I.    General Definitions**

1.    "Arizona AG Action" means the action captioned *In the Matter of Qwest Corporation, d/b/a CenturyLink QC, a Colorado corporation*, No. CV2016-002842 (Maricopa Cnty.) (Ariz. 2016), and any civil investigative demand, investigation, or subpoena concerning or relating to that action.

2.    "Bailey" means defendant G. Clay Bailey.

3.    "BBB" means the Better Business Bureau.

4.    "Board" means CenturyLink's Board of Directors, including any committees or subcommittees of the Board.

5.    "CenturyLink," the "Company," "You," and "Your" each means defendant CenturyLink, Inc., and includes its present or former subsidiaries, predecessors and successors in interest, any affiliate or related company, and present and former officers, directors, partners, employees, agents and any other persons acting on its behalf or under its direction or control.

6.    "Class Period" means the period from March 1, 2013 through July 12, 2017, inclusive.

7.    "Cole" means defendant David D. Cole.

8.    "Complaint" means the Consolidated Securities Class Action Complaint filed in the above-captioned action on June 25, 2018 (ECF No. 143).[1]

9.    "Communications" means the transmission, sending, or receipt of information in any form, oral or written, including voicemails, electronic mail, text messages, instant messages, Slack, or Documents (defined below).

10.    "Concerning" means relating to, containing, constituting, considering, comprising, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

11.    "Consumer Action" means the consolidated consumer class action against CenturyLink pending in the District of Minnesota under civil file number 17-2832, et al.

12.    "Consumer Segment" means CenturyLink's consumer segment, or CenturyLink's activities in offering and providing products and services to residential customers.

13.    "Cramming and Billing Issues" means any analysis, audit, complaint, dispute, inquiry, issue, problem, question, failure to meet customer expectations or to honor promises made to customers, or misconduct concerning Your Sales and Billing Practices (defined below), including concerning prices or terms; point-of-sale or other discounts (including "Closers"); prorated charges, taxes, and fees (including as they relate to monthly

---

[1] References to "ECF No." are to the docket in *Craig v. CenturyLink, Inc.*, No. 18-cv-296 (D. Minn.).

billing estimates); any Price for Life promotion, "price lock" promotion, or any other similar promotions; the Internet Cost Recovery Fee, Broadband Cost Recovery Fee, or any similar fees; disclosures or charges concerning optional services (such as @Ease); omitting, misstating, or changing the prices customers were charged; misquoting prices (including by failing to disclose the existence and/or details concerning fees for optional services included in certain service "bundles"); the bases, existence, purpose of or reason for certain charges (including any "Internet Cost Recovery Fee," "Broadband Cost Recovery Fee," or any fee represented to be a charge required by or paid to any Governmental Entity); cancellation requests; late fees; charges for equipment or services that were not provided; offering or promising services that were unavailable in a given service area or could not otherwise be reasonably provided; customer refunds; charges for returned products; or raising, changing or adding to the price of a given product or service represented to be a fixed rate (including by adding an "Internet Cost Recovery Fee" or "Broadband Cost Recovery Fee") or at a rate other than what was offered or promised.

14.    "Data" means information, quantities or characters, and includes, without limitation, data sets and derived data sets.

15.    "Discipline" means any imposition of any consequence related to employment, whether formal or informal, including corrective actions, "documented discussions," verbal or written warnings, demotions, changes in rank or role, suspensions, reductions in an employee's pay or salary, or terminations.

16.     "Document" or "Documents" has the same meaning as "writings," which is defined in Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001 as including, but not limited to, any electronically stored data, Documents, and electronic communications (such as e-mail), stored in computers or otherwise, whether or not ever printed or displayed, that have not previously been produced.  The term "Document" includes, but is not limited to, any letter, memorandum, note, electronic mail or message, text message, SMS message, telephone message, telephone or toll call record, statement, book, handbook, appointment book, calendar, minutes or record of meetings, report, manual, study, analysis, summary, log, digest, record, bill, statement, voucher, working paper, chart, graph, table, drawing, photograph, videotape, audio recording (including voicemail messages), diary, tabulation, data sheet, directive, standard, pamphlet, brochure, circular, advertisement, announcement, application, list, note of interview or communication, Slack, or any other data compilation. For the avoidance of any doubt, Documents include Communications. A copy or duplicate of a Document that has any nonconforming notes, marginal annotations, or other markings, as well as any preliminary version, draft, or revision of the foregoing, shall be considered a separate Document within the meaning of this term.

17.     "Douglas" means defendant Dean J. Douglas.

18.     "Ewing" means defendant R. Stewart Ewing, Jr.

19.     "Executive Defendants" means Bailey, Cole, Douglas, Ewing, Post (defined below), and Puckett (defined below).

20.     "FCC" means the Federal Communications Commission.

21.    "FTC" means the Federal Trade Commission.

22.    "Governmental Entity" means any local, state, or federal government, agency, or regulator, including any state attorney general, the FCC, the FTC, the Consumer Financial Protection Bureau, and any public utility commission.

23.    "Governmental Action" means any action, civil investigative demand, investigation, proceeding, or subpoena, whether formal or informal, that was issued, instituted, conducted, discussed, or threatened by any Governmental Entity, including the Arizona AG Action and the Minnesota AG Action (defined below).

24.    "Minnesota AG Action" means the action captioned *State of Minnesota v. CenturyTel Broadband Services LLC et al.*, No. 02-CV-17-3488 (District Court, Tenth Judicial District, Minn. 2017), and any civil investigative demand, investigation, or subpoena relating thereto.

25.    "NOHD" means CenturyLink's National Order Help Desk.

26.    "Paragraph" or "¶" corresponds to paragraphs in the Complaint.

27.    "Post" means defendant Glen F. Post, III.

28.    "Puckett" means defendant Karen Puckett.

29.    "Sales and Billing Complaints" means complaints, concerns, suggestions, warnings, or whistleblowing activities, whether formal or informal, concerning Sales and Billing Practices (defined below), whether made by, issued by, or received from a CenturyLink employee, CenturyLink customer, Governmental Entity, or otherwise.

30.    "Sales and Billing Practices" means Your Consumer Segment and/or SMB Segment sales, service, and billing practices.

31.    "Sales Targets" means any quotas, goals, requirements, expectations, or targets applicable to CenturyLink's sales employees or to third parties who sold CenturyLink products or services to residential or small and medium business customers.

32.    "SEC" means the United States Securities and Exchange Commission.

33.    "SMB Segment" means CenturyLink's activities in offering and providing products and services to small and medium business customers.  The SMB Segment refers to these activities regardless as to whether those activities were reported under CenturyLink's Business Segment or Consumer Segment, as those segments were described in CenturyLink's Forms 10-K filed with the SEC during the Class Period.

34.    "Special Committee" means the special committee of Your board of directors formed to investigate Your Sales and Billing Practices, as disclosed on Your August 2, 2017 earnings call.

## II.    Terms Not Otherwise Defined

1.    To the extent that any word, phrase or term is not defined herein, any such word, phrase or term shall have the meaning defined in the Complaint, if found therein, 15 U.S.C. § 78a *et seq*., if found therein, the remaining provisions of 17 C.F.R. 240 *et seq*., if found therein, BLACK'S LAW DICTIONARY, if found therein, or the AMERICAN HERITAGE DICTIONARY FOR THE ENGLISH LANGUAGE.

## INSTRUCTIONS

1.      In responding to these Requests, You shall produce all responsive Documents that are in Your possession, custody, or control, or the possession, custody or control of Your predecessors, successors, parents, subsidiaries, divisions, affiliates, or any of their respective officers, managing agents, employees, attorneys, accountants, or other representatives. A Document shall be deemed to be within Your control if You have the right to secure the Document or a copy of the Document from another person having possession or custody of the Document.

2.      The Document Requests are continuing in nature so as to require supplemental responses to the extent required under the Federal Rules of Civil Procedure.

3.      You are to produce:

(a)      Copies of electronically stored information ("ESI") responsive to these Requests, as they are kept in the usual course of business, including all non-identical copies. Pursuant to Rule 34(b)(1)(C), Plaintiffs request that You produce ESI in the format outlined in the draft Stipulation and [Proposed] Order Concerning Protocol Governing Discovery Matters and the Production of Electronically Stored Information ("ESI Protocol") sent by Plaintiffs to Defendants on August 9, 2019 or as otherwise agreed to by the Parties.

(b)      Electronic scanned images of original Documents responsive to these Requests that exist only in hard-copy format and are therefore

unavailable in native ESI format (*e.g.*, handwritten notes, including alterations to Documents that are otherwise kept and producible as ESI in their unaltered form, or materials that were generated as ESI but where ESI files are inaccessible because they are not in Your possession or control), as they are kept in the usual course of business, including all non-identical copies. Plaintiffs request that You produce such electronic images in the format outlined in the ESI Protocol.

(c)     To the extent that any instruction herein conflicts with the ESI Protocol, the ESI Protocol controls.

4.     You are to produce responsive Documents in the order they are kept in the usual course of business (including any original folders, binders, covers, or containers) or You shall organize and label such responsive Documents to correspond with the categories in these requests. Where the original of a Document is unavailable, a copy identical to the original shall be produced.  A draft or non-identical copy of a Document is a separate Document as the term is used herein.  All attachments and appended or embedded links or files should be produced if any one of them is responsive to any of the Requests, and attachments should be produced in the format outlined in the ESI Protocol. You shall Bates stamp the Documents.

5.     If a Document exists in electronic or recorded form (whether digital or analog), including tapes or other recordings of conversations involving You or any of Your agents or representatives on any subject included within the scope of these Requests, You

shall produce the Document in the format outlined in the ESI Protocol. If a Document exists in electronic or recorded form as well as other forms (including printouts of electronic data and transcripts of recordings), You shall produce the Document in all forms.

6.      Without in any way limiting the definition of "Document" contained in the Federal Rules of Civil Procedure or herein, You are specifically instructed to search all Document management systems, computer archives, and/or backup tapes or disks for Documents responsive to the following Requests, and production of such Documents should be made regardless of whether such Documents exist in tangible or "hard" copy form. Production is also sought regardless of whether the user purported to "delete" the Document, if such Document is capable of being retrieved from archives and/or backup tapes or disks.

7.      If any responsive Document was at any time, but is no longer, in Your possession or subject to Your control:

    (a)    State whether the Document is missing or lost;

    (b)    State whether the Document has been destroyed;

    (c)    State whether the Document has been transferred voluntarily or involuntarily to others and, if so, at whose request;

    (d)    State whether the Document has been otherwise disposed of;

    (e)    Provide a precise statement of the circumstances surrounding the disposition of the Document and the date of its disposition; and

(f)     Identify the name and address of its current or last known custodian and the circumstances surrounding such disposition.

8.     If any Documents or parts of Documents called for by these Requests have been destroyed, discarded, or otherwise disposed of, You should provide a list setting forth as to each such Document the following information:

(a)     The nature of the Document, *e.g.*, letter, memorandum, telegram, etc.;

(b)     The name, address, occupation, title, and business affiliation of each person who prepared, received, viewed, and has or has had possession, custody, or control of the Document;

(c)     The date of the Document;

(d)     A description of the subject matter of the Document;

(e)     The date of destruction or other disposition;

(f)     A statement of the reasons for destruction or other disposition;

(g)     The name, address, occupation, title, and business affiliation of each person who authorized destruction or other disposition;

(h)     The name, address, occupation, title, and business affiliation of each person who destroyed or disposed of the Document; and

(i)     The Request or Requests to which the Document is responsive.

9.     If any Document responsive to these Requests is withheld under a claim of privilege or upon any other ground, as to each such Document, provide the following information in sufficient detail to permit the Court to rule on your claim:

11

(a)   The nature of the privilege being asserted or other rule relied upon, and the facts supporting Your assertion thereof;

(b)   The party who is asserting the privilege; and

(c)   The following information about the purportedly privileged Document:

> (1)   The author, primary addressee, and secondary addressees or persons copied, including the relationship of those persons to any party in this litigation and/or author of the Document;
>
> (2)   A brief description sufficient to identify the type, subject matter, and purpose of the Document;
>
> (3)   All persons to whom its contents have been disclosed;
>
> (4)   The date the Document was prepared, the date the Document bears, the date the Document was sent, and the date the Document was received; and
>
> (5)   A precise description of the place where each copy of that Document is kept, including the title or description of the file in which said Document may be found and the location of such file.

10.   If a portion of any Document responsive to these Requests is withheld under a claim of privilege pursuant to the preceding instruction, any non-privileged portion of such Document must be produced with the portion claimed to be privileged redacted.

11.    You are to produce each Document requested herein in its entirety, without deletion or excision (except as qualified by the preceding two instructions), regardless of whether You consider the entire Document to be relevant or responsive to the Requests.

12.    Whenever a Document is not produced in its entirety, including all attachments, or is produced in redacted form:

(a)    So indicate on the Document;

(b)    State with particularity the reason or reasons it is not being produced in its entirety; and

(c)    Describe to the best of Your knowledge, information, and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

13.    Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition, except where such words have a specific custom and usage definition in Your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which You are aware. In construing the inquiry and request herein: (a) the singular shall include the plural and the plural shall include the singular; (b) a masculine, feminine, or neuter pronoun shall not exclude the other genders; (c) the terms "any" and "all" shall be understood to mean "any and all;" and (d) the words "and" and "or" shall be read in the conjunctive or disjunctive or both, as the case may be, all to the end that the interpretation applied results in the more expansive production.

14.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring into the scope of the specification all responses that might otherwise be construed to be outside the scope of a Request.

15.     For purposes of these Requests, unless otherwise stated in an individual Request, the relevant time period is January 1, 2011 to present.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**    All Documents that You issued, produced or provided, or that any Governmental Entity issued, produced or provided, in connection with the Minnesota AG Action, including any civil investigative demand(s), interrogatories, requests for production, subpoenas, interview and deposition transcripts, or any other discovery, and responses thereto.

**REQUEST NO. 2:**    All Documents that You issued, produced or provided, or that any Governmental Entity issued, produced or provided, in connection with the Arizona AG Action, including any civil investigative demand(s), interrogatories, requests for production, subpoenas, interview and deposition transcripts, or any other discovery, and responses thereto.

**REQUEST NO. 3:**    All Documents that You issued, produced or provided, or were produced, provided, or issued by a Governmental Entity, concerning any Governmental Action concerning Sales and Billing Practices, including all civil investigative demands, interrogatories, requests for production, subpoenas, interview and deposition transcripts, or any other discovery, and responses thereto.

**REQUEST NO. 4:**    All Documents concerning discovery (including confirmatory discovery) in connection with the Consumer Action, including all requests for production, interrogatories, or discovery requests issued by plaintiffs in the Consumer Action to You, and all Documents and other responses You produced or otherwise made available to plaintiffs in the Consumer Action.

**REQUEST NO. 5:**    All Documents concerning the Special Committee's investigation, including:

(a)    All Documents concerning the scope of the Special Committee's investigation, including any retention agreement or any other agreement concerning the scope of the investigation by and between the Special Committee and its counsel or any other third party consulted or retained by the Special Committee or CenturyLink in connection with the Special Committee's investigation;

(b)    All Documents collected or reviewed in connection with the Special Committee's investigation;

(c)    All Documents concerning or relating to the Special Committee's investigation that were shared with any third party, including any Governmental Entity; and

(d)    All Documents concerning any interviews of any current or former CenturyLink employees or third parties conducted in connection with the

15

Special Committee's investigation, including any notes or memoranda concerning such interviews.

**REQUEST NO. 6:**    To the extent not called for by the previous Requests, all Documents concerning any investigation of CenturyLink's Sales and Billing Practices, including all Documents constituting, concerning, relating to, or relied on in preparing or conducting any analysis, audit, examination, investigation, report, study, or summary concerning Sales and Billing Practices.

**REQUEST NO. 7:**    All Documents concerning CenturyLink's receipt, evaluation, handling or resolution of Sales and Billing Complaints, including:

    (a)    All Documents guides, manuals, policies, and/or procedures concerning the receipt, handling, and processing of Sales and Billing Complaints;

    (b)    All Documents concerning Sales and Billing Complaints made, expressed, or reported by any of Your employees, representatives, or agents to any of Your officers, directors, managers, supervisors, hotlines, investigators, message boards, or online townhalls, including any sent to or from Heidi Heiser or any Executive Defendant;

    (c)    All Documents concerning Sales and Billing Complaints made to CenturyLink's customer service employees or NOHD;

    (d)    All Documents concerning Sales and Billing Complaints sent to You by or received by You from any Governmental Entity or the BBB;

(e)     All Documents concerning Sales and Billing Complaints made to, analyzed by, received by, or prepared by CenturyLink's Executive & Regulatory Services division, including any reports sent to CenturyLink executives, as described at ¶¶103-04;

(f)     All Documents concerning Sales and Billing Complaints or reports or analyses of Sales and Billing Complaints made to, sent to, or received by the Executive Defendants; and

(g)     All Documents concerning any analysis, audit, compilation, investigation, report, or summary concerning Sales and Billing Complaints.

**REQUEST NO. 8:**    All Documents concerning or relating to the allegations, events and circumstances described in the complaint filed by Heidi Heiser on June 14, 2017, captioned *Heiser v. CenturyLink, Inc*., CV2017-008928 (Maricopa Co. Ariz.), as well as all Documents exchanged by the parties in that action.

**REQUEST NO. 9:**    All Documents concerning CenturyLink's Quality Assurance team's role in handling Sales and Billing Complaints or Cramming and Billing Issues, including:

(a)     Documents concerning the purpose, responsibility, and/or mandate of the Quality Assurance team;

(b)     All Documents concerning any reviews conducted, reports created or generated, or results of any analysis or study conducted by the Quality Assurance team relating to Sales and Billing Complaints or Cramming and

Billing Issues, including regarding employee compensation in or around 2014-2015, including as described at ¶¶99-101; and

(c)    All Documents concerning the elimination or effective elimination of the Quality Assurance team, including as described at ¶101.

**REQUEST NO. 10:** All Documents concerning any agreement or settlement (including any assurances of discontinuance, settlement agreements, and term sheets) concerning any lawsuit, claim, cause of action, arbitration, or Governmental Action concerning Sales and Billing Practices.

**REQUEST NO. 11:** All Documents concerning Your compliance or attempted compliance with any agreement regarding Sales and Billing Practices with any Governmental Entity, including the Assurance of Discontinuance CenturyLink entered into in 2016 with the Arizona Attorney General and the consent order CenturyLink entered into in 2017 with the Minnesota Attorney General.

**REQUEST NO. 12:** All Documents concerning Your statements in the Assurance of Discontinuance You entered into with the Arizona Attorney General in 2016 that You "fully disclosed" to customers and potential customers all terms, qualifying conditions, termination fees, availability of internet speeds, modem/router purchase requirements, and installation fees.

**REQUEST NO. 13:** All Documents concerning any change in CenturyLink's sales training, performance measurement, or Discipline of employees responsible for Consumer Segment or SMB Segment sales (including all customer care representatives, retention

18

specialists, NOHD representatives, and any other employees with sales responsibilities) in 2014-2015, including:

(a)   All Documents concerning the Discipline of employees responsible for Consumer Segment or SMB Segment sales in 2014-2015, including any changes to Discipline practices and the frequency, type, or analysis of any Discipline actions;

(b)   All Documents concerning any shift to or rollout of "behavioral coaching" including as described in ¶¶111, 113-14;

(c)   All Documents concerning changes in Consumer Segment or SMB Segment sales, revenues, and expenses in 2014-2015;

(d)   All Documents concerning any financial or business impact of any change in CenturyLink's performance measurement, training, or Discipline of employees in 2014-2015, including as described in ¶¶112, 114; and

(e)   All Documents concerning any further changes in CenturyLink's performance measurement, training, or Discipline of employees in 2014-2015, including as described in ¶¶117-18.

**REQUEST NO. 14:** All Documents concerning the following changes to Your financial reporting concerning the Consumer Segment and SMB Segments, including all Documents reflecting, discussing, or referencing the justification for or reasons behind each change (a) through (g) listed below, any analyses concerning each change, and/or any

19

discussion of, analysis of, or reference to the impact of each change on the Company's reported financial results for the Consumer Segment and SMB Segment:

(a)     The assignment of certain expenses to Your segments in the first quarter of 2014, including as described on pages 13-14 of Your Form 10-Q filed with the SEC on May 9, 2014;

(b)     The new organizational structure implemented effective November 1, 2014, including as described on pages 4-5 of Your Form 10-K filed with the SEC on February 24, 2015;

(c)     The new organizational structure implemented during the fourth quarter of 2015, including as described on page 14 of Your Form 10-Q filed with the SEC on November 5, 2015;

(d)     The assignment of certain expenses to Your reportable segments in the first half of 2016, including as described on page 15 of Your Form 10-Q filed with the SEC on November 4, 2016;

(e)     The new organizational structure implemented in January 2017, including as described on pages 8-9 of Your Form 10-Q filed with the SEC on November 9, 2017;

(f)     The new organizational structure implemented effective November 1, 2017, including as described on pages 6-7 of Your Form 10-K filed with the SEC on March 1, 2018; and

(g)     Your adoption of Accounting Standards Codification ("ASC") 606 using the modified retrospective approach on January 1, 2018 as that change relates to Your Consumer Segment and SMB Segment operations.

**REQUEST NO. 15:**  All Documents from, to, copying, or referencing Eric Adams ("Adams"), including all Communications with or concerning Bailey, Jim Schmidt, or Brian Stading (including the email described in ¶110), all Documents concerning any meeting among Adams, Bailey and/or Stading during CenturyLink's Circle of Excellence event on or around April 23-27, 2014 as described in ¶109, and all Documents concerning Sales and Billing Practices sent from or to, copying, or referencing Adams.

**REQUEST NO. 16:**  All Documents concerning any change in role or position for Bailey in 2014-2015, including the email sent by Post concerning a change in position as described in ¶110.

**REQUEST NO. 17:**  All Documents concerning any statements You made concerning CenturyLink's 2014 or 2015 financial results, including Your statements set forth at ¶¶220-36.

**REQUEST NO. 18:**  All Documents concerning any changes or modifications to Sales and Billing Practices made following CenturyLink's entry into the Assurance of Discontinuance with the Arizona Attorney General in 2016, CenturyLink's entry into a consent order with the Minnesota Attorney General in 2017, and/or the Special Committee's investigation in 2017, if any.

**REQUEST NO. 19:** All Documents concerning Your Communications with the SEC, including all Documents concerning or relating to Your response to the SEC's August 11, 2015 and September 8, 2015 letters to You and/or Your August 24, 2015 and September 22, 2015 letters to the SEC, including all Documents reviewed, considered or relied upon in formulating and/or preparing Your response to the SEC's August 11, 2015 and September 8, 2015 letters to You and/or Your August 24, 2015 and September 22, 2015 letters to the SEC.

**REQUEST NO. 20:** All Documents concerning the Board and any committee or subcommittee of the Board, including all Documents provided or made available to the Board, as well as any minutes, recordings, summaries, materials, and reports of or for any Board or Board committee or subcommittee meeting, relating to or referencing any Executive Defendant; the Consumer Segment or SMB Segment; Sales and Billing Practices, Sales and Billing Complaints, or Cramming or Billing Issues; any investigation, proceeding, inquiry, or lawsuit by any Governmental Entity; Sales Targets; employee Discipline; the Circle of Excellence program; Your Code of Conduct; Your Communications with the SEC; or any performance or other review of any Board member.

**REQUEST NO. 21:** All Documents concerning any analyst report, analyst comment, media article, media broadcast, media inquiry, media publication, or media report concerning Sales and Billing Practices, including all drafts and communications concerning such analyst reports, analyst comments, media articles, media broadcasts, media inquiries, media publications, or media reports.

**REQUEST NO. 22:**  All Documents concerning CenturyLink's marketing strategy to compete with cable operators with respect to broadband highspeed internet and television services, including all Documents concerning the meetings, discussions, plans and strategies discussed at ¶70 that were sent from, sent to, reviewed by, discussed by, or reference any Executive Defendant, Joseph Zimmel, Kathy Victory, Kathy Flynn, Linda Olsen, or Brian Stading.

**REQUEST NO. 23:**  All Documents concerning the integration or combination of applications, policies, processes, or systems concerning CenturyLink's Sales and Billing Practices with those of any entity CenturyLink acquired, merged with, or combined with, including but not limited to Level 3, Qwest, and Embarq.

**REQUEST NO. 24:**  All Documents concerning CenturyLink's evaluation of sales employees, customer care employees, customer service employees, retention specialists, or NOHD employees (or third-parties who provided such services on CenturyLink's behalf), including:

(a)    All analyses, discussion, reviews, or references to "Revenue Protection" efforts, as well as any similar initiatives, goals, policies or procedures concerning providing, honoring, or negotiating refunds, discounts, compensation, adjustment of terms, or other offers or proposed resolutions in connection with customer Sales and Billing Complaints or Cramming and Billing Issues;

(b)      All Documents concerning any guides, manuals, policies, procedures, records, or reports pertinent to evaluations of such employees;

(c)      All Documents concerning any Sales Targets pertaining to such employees, including all Documents concerning employees' success or failure in meeting such Sales Targets and all Documents concerning any adjustments or changes to Sales Targets that were analyzed, considered, or proposed, regardless of whether or not they were implemented;

(d)      All Documents sent to, sent by, or copied to any Executive Defendant concerning Sales Targets;

(e)      All data or reports concerning Sales Targets that were accessible by or made available to any Executive Defendant; and

(f)      All Documents concerning any limitations on price adjustments or credits issued in connection with Sales and Billing Practices, including documents concerning employees' success or failure in meeting such limitations.

**REQUEST NO. 25:** All Documents concerning training of sales employees, customer care employees, customer service employees, retention specialists, or NOHD employees (or third-parties who provided such services on CenturyLink's behalf), including:

(a)      All Documents concerning any guides, manuals, policies, procedures, records, scripts or reports concerning customer interactions, quotation of prices, or billing for such employees, including as described at ¶¶81-82;

(b)     All Documents concerning Sales and Billing Practices relating to the Company's Order Quality Management ("OQM") system, the Q-FINITY system, or any similar program or system used to track, train, coach, evaluate, review, or analyze Consumer Segment and SMB Segment customer interactions;

(c)     All Documents concerning the recording of sales and other customer calls, the use of such recordings to coach or train sales employees, as well as all Documents concerning the destruction and/or preservation of such recordings; and

(d)     All call recordings addressing Cramming and Billing Issues that were reviewed, flagged or documented in the Company's Q-FINITY or Order Quality Management ("OQM") systems, including as described at ¶87 and ¶99, and all Documents concerning any coaching, training, or Discipline related to such instances of Cramming and Billing Issues.

**REQUEST NO. 26:**  All Documents concerning the Discipline of sales employees, customer care employees, customer service employees, retention specialists, or NOHD employees (or third-parties who provided such services on CenturyLink's behalf), relating to Sales and Billing Practices, Sales and Billing Complaints or Cramming and Billing Issues including:

(a)     Documents sufficient to show any guides, manuals, policies, procedures, records, or reports concerning the Discipline of such employees;

(b)     All Documents concerning any disciplinary records for Discipline relating to Sales and Billing Practices, Sales and Billing Complaints or Cramming and Billing Issues, including for exceeding limits on permissible credit issuance or failure to meet Sales Targets;

(c)     All Documents sent to, sent by, copied to, or forwarded to any Executive Defendant concerning Discipline of employees;

(d)     All data or reports concerning Discipline of employees that were accessible by or made available to any Executive Defendant;

(e)     All Documents concerning any investigative interview, exit survey, grievance, challenge, request, or report (including under any due process procedure or similar protection provided by a collective bargaining agreement) from any employee relating to Sales and Billing Practices, Sales or Billing Complaints, Cramming and Billing Issues or Sales Targets;

(f)     All Documents reviewing, analyzing or evaluating Discipline of sales and customer service employees, retention specialists, or NOHD employees (or third-parties who provided such services on CenturyLink's behalf); and

(g)     To the extent not called for by the foregoing Requests, Documents sufficient to identify the number of employees terminated each month for Cramming and Billing Issues, for exceeding limits on permissible credit issuance, and for failure to meet Sales Targets.

**REQUEST NO. 27:** All guidelines, manuals, policies, procedures and practices concerning the method, bases, and changes to the compensation of sales employees, customer care employees, customer service employees, retention specialists, or NOHD employees (or third-parties who provided such services on CenturyLink's behalf); any review, evaluation or reassessment of compensation policies and practices for such employees; and Documents sufficient to show the impact on employees' compensation for meeting or failing to meet Sales Targets, permissible credit issuance limits, and Cramming and Billing Issues.

**REQUEST NO. 28:** All Documents concerning Your Communications with customers or potential customers concerning Consumer Segment or SMB Segment product or service offerings, including:

(a)     All Documents concerning any guidelines, policies, practices, procedures, or training concerning the prices offered for services and products to customers or potential customers;

(b)     All Documents concerning the disclosure of the terms of Consumer Segment or SMB Segment customer offerings, including the existence of or details concerning optional services, promotional terms (including any expiration dates), the purpose or justification for any fee or charge (including any fee or charge represented or described to be a fee or charge required by a Governmental Entity), and any training and Discipline actions taken in

connection with disclosure of Consumer Segment or SMB Segment product and service offerings; and

(c)     All Documents concerning the accuracy of CenturyLink employees' or representatives' quotation or communication of information regarding pricing and contract terms to Consumer Segment or SMB Segment customers or potential customers (including with respect to any "Closers" or other discounts and "Price for Life," price lock, or other fixed-rate pricing) as well as any analysis, data, or reports concerning the same (including from the ORKO system, PCE scripts, or any other process, procedure, system, software or other application used in connection with tracking or applying discounts to customer accounts).

**REQUEST NO. 29:**  All Documents concerning CenturyLink's Circle of Excellence program, including Documents sufficient to identify the criteria for selection as a Circle of Excellence honoree and all Documents concerning any Cramming and Billing Issues concerning, relating to, or implicating any Circle of Excellence honoree.

**REQUEST NO. 30:**  All Documents concerning any Cramming and Billing Issues or any Sales and Billing Complaints concerning any Circle of Excellence honoree, including all Documents concerning any investigation or Discipline of any Circle of Excellence honoree.

**REQUEST NO. 31:** Without limitation as to time, all Documents concerning CenturyLink's Code of Conduct, including:

28

(a)     All Documents concerning the adoption or re-adoption of the Code of Conduct;

(b)     All Documents concerning the statements in the Code of Conduct referenced in the Complaint, including at ¶53;

(c)     All Documents concerning Your statements in CenturyLink's SEC filings concerning the Code of Conduct, including those referenced at ¶54 and ¶151;

(d)     All Documents concerning the enforcement of the Code of Conduct that relate to Sales and Billing Practices;

(e)     Documents sufficient to identify all CenturyLink personnel who were tasked with or responsible for enforcement of the Code of Conduct; and

(f)     Documents sufficient to identify all CenturyLink personnel who were cited, investigated or Disciplined for violations of the Code of Conduct that relate to Sales and Billing Practices, including the provisions referenced in ¶53.

**REQUEST NO. 32:** All Documents concerning the Executive Defendants' participation in preparing, making or reviewing any of the alleged false and misleading statements referenced at ¶¶190-263.

**REQUEST NO. 33:** To the extent not called for by the previous Requests, all Documents concerning any attempt, plan, policy, procedure, or strategy to reduce or eliminate Cramming and Billing Issues, whether implemented or not, including all Documents concerning the actual or anticipated financial or business impact of any such attempt, plan, policy, procedure, or strategy.

**REQUEST NO. 34:**  All Documents concerning CenturyLink's sales and revenue projections and Sales Targets, including:

(a)     Documents sufficient to show Your processes and procedures for projecting sales and revenues and setting and evaluating Sales Targets, including for the Consumer Segment and the SMB Segment;

(b)     All Documents concerning sales and revenue projections and Sales Targets for the Consumer Segment or SMB Segment that were sent to, sent by, copied to, or forwarded to any Executive Defendant;

(c)     All Documents constituting reports or data concerning sales and revenue projections and Sales Targets for the Consumer Segment or SMB Segment that were accessible by or made available to any Executive Defendant;

(d)     All Documents referenced, reviewed or used by Linda Olsen during monthly calls to discuss employee sales performance and Discipline, including any spreadsheets concerning employee sales performance (including gross revenue, revenue per order, revenue per call, calls per hour, and revenue per hour) and any Discipline taken as a result of sales performance, including as described at ¶75; and

(e)     All Documents concerning the setting and evaluation of sales and revenue projections and Sales Targets and any proposed changes (whether or not implemented) to the setting and evaluation of sales and revenue projections or Sales Targets, including as described at ¶¶68-70.

**REQUEST NO. 35:** All Documents concerning Consumer Segment and SMB Segment sales performance that were sent to, sent by, copied to, forwarded to, or referenced any Executive Defendant, Kathy Victory, Kathy Flynn, Linda Olsen, or Brian Stading, and Documents sufficient to identify all reports or data concerning Consumer Segment or SMB Segment sales performance that were accessible by or made available to any Executive Defendant, Kathy Victory, Kathy Flynn, Linda Olsen, or Brian Stading.

**REQUEST NO. 36:** All Documents concerning Your analysis or tracking of revenue or other financial metrics on a per-customer basis, including:

(a)     Documents sufficient to show how you determined Average Revenue Per User for the Consumer and SMB Segments, including what comprised that figure; and

(b)     All Documents concerning Douglas's statement referenced in ¶140 that: "[W]e see competition adding a lot of fees. And so, that's where there might be a little bit of a delta, but we're working through, and constantly monitoring what our competitors are doing in the marketplace, with regard to the average ARPUs in our business."

**REQUEST NO. 37:** All Documents concerning the business strategies referenced at ¶¶205-36, including all Documents concerning CenturyLink's "bundling" strategy, its pricing and discounting strategies, the "pivot" away from standalone broadband towards "bundling," and any "credit tightening" changes or initiatives.

**REQUEST NO. 38:** All Documents concerning the hiring, employment, promotion, demotion, assignment, reassignment, resignation, termination or Discipline of each Executive Defendant, Kathy Victory, Kathy Flynn, Linda Olsen, Brian Stading, and Eric Adams, including

(a)    Each individual's personnel file;

(b)    All Documents concerning (i) Defendant Douglas's hiring as President, Sales and Marketing in 2016, (ii) his change in role to President, Enterprise Markets, (iii) the decision to appoint him as a member of the "senior leadership team," and (iv) his departure from CenturyLink;

(c)    All Documents concerning (i) Puckett's change in role to President, Global Markets in or around November 2014, and (ii) her departure from the Company announced in June 2015; and

(d)    All Documents concerning (i) the decision that Post would be succeeded as CEO of CenturyLink following the Level 3 merger on January 1, 2019, and (ii) all Documents concerning the change in date of Post's resignation or retirement from January 1, 2019 to May 23, 2018.

**REQUEST NO. 39:** All Documents concerning Joseph Zimmel's tenure on and departure from Your board of directors, including all Documents concerning Zimmel's statements that (i) Your conduct raised "serious governance, transparency and honesty issues" and (ii) a press release You prepared was "incomplete and inaccurate" and "deliberately misleading in a material way."

32

**REQUEST NO. 40:** All Documents concerning all alleged corrective disclosures set forth at ¶¶264-67, including:

(a)    All Documents concerning the declines in the prices of CenturyLink securities discussed at ¶¶264-67; and

(b)    All Documents concerning any Communications with analysts, investors, the media, or any Governmental Entity concerning CenturyLink's Sales and Billing Practices, including with respect to the *Bloomberg* article titled "CenturyLink Is Accused of Running a Wells-Fargo Like Scheme" dated June 16, 2017, the *Bloomberg* article titled "CenturyLink Faces Class-Action Lawsuit Seeking Up to $12 Billion" dated June 19, 2017, and the *Bloomberg* article titled "CenturyLink Sued by Minnesota Amid $12 Billion Class Action" dated July 12, 2017, and all related Communications, articles, discussions or references concerning the events, circumstances and facts referenced in those *Bloomberg* articles, including all Communications to, from, copied to, or forwarded to any Executive Defendant or any of CenturyLink's executives, officers, directors, or investor relations personnel.

**REQUEST NO. 41:** All Documents concerning the "fake account" scandal at Wells Fargo, including as described at ¶145, that were sent to, sent by, copied to, forwarded to, reviewed by, discussed by, or referenced by any Executive Defendant or any investor relations personnel.

**REQUEST NO. 42:** To the extent not called for by the previous Requests, all Documents concerning CenturyLink's securities or investor relations, including all Documents concerning or evincing communications between or among any Executive Defendant, on the one hand, and any member of CenturyLink's investor relations team, any CenturyLink investor or potential investor, any other Executive Defendant, or any analyst, on the other hand.

**REQUEST NO. 43:** Without limitation as to time, all Documents concerning any investigation or inquiry by a Governmental Entity concerning cramming, including:

(a)     All Documents concerning the Senate Committee on Commerce, Science, and Transportation's investigation concerning third-party cramming referenced at ¶45;

(b)     All Documents concerning CenturyLink's October 24, 2011 submission to the FCC referenced at ¶46;

(c)     All Documents concerning U.S. Senator Amy Klobuchar's letter referenced at ¶47;

(d)     All Documents concerning CenturyLink's June 25, 2012 and November 18, 2013 submissions to the FCC referenced at ¶48; and

(e)     All Documents concerning the claims asserted or settlements reached by the FTC and other Governmental Entities referenced at ¶51.

**REQUEST NO. 44:** All Documents concerning any representations or statements You made to any Governmental Entity concerning your compliance with rules, regulations,

34

or other requirements concerning consumer protection or service standards, including the statements referenced in ¶50.

**REQUEST NO. 45:** Organizational Charts for all departments or Company divisions involved in any way with:

(a)    Consumer Segment or SMB Segment Sales;

(b)    Consumer Segment or SMB Segment Customer Retention;

(c)    Consumer Segment or SMB Segment Customer Care or Service;

(d)    Consumer Segment or SMB Segment Human Resources;

(e)    Investor relations;

(f)    NOHD;

(g)    Quality Assurance;

(h)    Executive & Regulatory Services; and

(i)    Communications with or representations or statements to Regulators concerning Cramming and Billing Issues, Sales and Billing Complaints, Sales and Billing Practices, or regulatory compliance.

**REQUEST NO. 46:** From January 1, 2013 onwards, all Documents concerning any contemplated or effectuated reduction in CenturyLink's dividend, including:

(a)    The dividend reduction announced in February 2013, referenced at ¶56; and

(b)    The dividend reduction announced in February 2019.

**REQUEST NO. 47:**  All Documents concerning:

(a)    The $2.726 billion Consumer Segment goodwill impairment charge announced February 13, 2019;

(b)    The $6.5 billion goodwill impairment charge announced May 8, 2019; and

(c)    The Company's May 8, 2019 announcement that "it has initiated a strategic alternatives process for its Consumer business."

**REQUEST NO. 48:**  All Documents concerning the evaluation of the effectiveness of Your internal controls over financial reporting, including the design and operation of process level internal controls over the existence and accuracy of revenue transactions; any contemplated restatement of CenturyLink's financial results or filing of a Notification of Late Filing on Form 12b-25; and the material weakness You identified and KMPG's adverse opinion concerning the effectiveness of Your internal controls over financial reporting, including as described on page 46 and 82 of Your Form 10-K filed with the SEC on March 11, 2019.

Dated:  September 4, 2019

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

*/s/ Keil M. Mueller*
Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com

John Browne
Michael D. Blatchley
Michael Mathai
Julia Tebor
**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com
michael.mathai@blbglaw.com
julia.tebor@blbglaw.com

*Special Assistant Attorneys General and
Counsel for Lead Plaintiff the State of
Oregon by and through the Oregon State
Treasurer and the Oregon Public
Employee Retirement Board, on behalf of
the Oregon Public Employee Retirement
Fund, Plaintiff Fernando Vildosola and
Lead Counsel for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Lead Plaintiff the
State of Oregon by and through the
Oregon State Treasurer and the Oregon
Public Employee Retirement Board, on
behalf of the Oregon Public Employee
Retirement Fund and Plaintiff Fernando
Vildosola*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, September 4, 2019, I caused to be served a true copy of the foregoing Plaintiffs' First Request For Production Of Documents To Defendant CenturyLink, Inc. via e-mail and first-class mail addressed to the following counsel of record:

> Patrick E. Gibbs, CA Bar No. 183174
> **COOLEY LLP**
> 3175 Hanover Street
> Palo Alto, CA 94304
> Telephone: (650) 843-5535
> Facsimile: (650) 618-0387
> p.gibbs@cooley.com
>
> Sarah M. Lightdale, NYS Bar No. 4395661
> 55 Hudson Yards
> New York, NY 10001
> Telephone: (212) 479-6374
> Facsimile: (212) 479-6275
> slightdale@cooley.com
>
> William A. McNab, MN Bar No. 320924
> **WINTHROP & WEINSTINE, P.A.**
> Capella Tower, Suite 3500
> 225 South Sixth Street
> Minneapolis, MN 55402
> Telephone: (612) 604-6400
> Facsimile: (612) 604-6800
> wmcnab@winthrop.com

Dated:  September 4, 2019                    Respectfully submitted,

                                             */s/ Keil M. Mueller*