**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION<br><br>This Document Relates to:<br>Civil File No. 18-296 (MJD/KMM) | MDL No. 17-2795 (MJD/KMM) |
|---|---|

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' THIRD-PARTY SUBPOENAS

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 4

III. THE DISCOVERY SOUGHT FROM THE COLLECTION AGENCIES IS RELEVANT, NON-DUPLICATIVE, AND PROPORTIONAL .......... 5

A. The Evidence Sought from the Collection Agencies Is Not Unduly Duplicative .......... 7

B. The Evidence of Customer Complaints About Cramming Is Proportional to the Needs of the Case .......... 8

IV. THE DISCOVERY SOUGHT FROM GREAT PLACE TO WORK IS RELEVANT AND PROPORTIONAL .......... 11

V. DEFENDANTS' BASELESS REQUEST FOR COST-SHIFTING AND COURT SUPERVISION SHOULD BE DENIED .......... 12

VI. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Abhe & Svoboda, Inc. v. Hedley*,
2016 WL 11509914 (D. Minn. Mar. 15, 2016) ........................................................ 10

*Arbor Pharm., LLC v. ANI Pharm., Inc.*
2019 WL 4898469 (D. Minn. Jan. 24, 2019)............................................................. 4

*Beseke v. Equifax Info. Servs., LLC*,
2018 WL 6040016 (D. Minn. Oct. 18, 2018) ............................................................. 5

*Cedar Rapids Lodge & Suites, LLC v. Seibert*,
2018 WL 3019899 (D. Minn. June 18, 2018)........................................................... 13

*CPI Card Grp., Inc. v. Dwyer*,
2018 WL 4815572 (D. Minn. Oct. 4, 2018) ............................................................... 9

*Ford Glob. Techs. v. New World Int'l, Inc.*,
2015 WL 6507151 (W.D. Wash. Oct. 27, 2015) ......................................................... 4

*Haddley v. Next Chapter Tech., Inc.*,
2018 WL 2180253 (D. Minn. March 23, 2018)........................................................... 9

*Honda Lease Trust v. Middlesex Mut. Assur. Co.*,
2008 WL 349239 (D. Conn. Feb. 6, 2008) ................................................................. 13

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
2018 WL 9919939 (D. Minn. Jan. 23, 2018)............................................................... 4

*Morrow v. Flowers Foods, Inc.*,
2008 WL 11511782 (M.D. Ala. May 28, 2008) ........................................................ 10

*Paisley Park Enter., Inc. v. Boxill*,
2019 WL 1036059 (D. Minn. March 5, 2019)........................................................... 13

*Price v. Trans Union LLC*,
847 F. Supp. 2d 788 (E.D. Pa. 2012) ........................................................................... 4

*Robinson v. Minnesota*,
2018 WL 6523449 (D. Minn. Dec. 12, 2018).............................................................. 5

*Shukh v. Seagate Tech, LLC*,
295 F.R.D. 228 (D. Minn. 2013)............................................................................. 4, 9

*Vallejo v. Amgen, Inc.*,
903 F.3d 733 (8th Cir. 2018) .......... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) .......... 8

# I. INTRODUCTION

This case centers on Defendants' false and misleading statements about CenturyLink's sales and billing practices, including representations that CenturyLink did not engage in deceptive sales practices such as "plac[ing] or record[ing] an order for our products and services for a customer without that customer's authorization." ¶151. Those representations were false, as CenturyLink had for years been "cramming" customer accounts with unauthorized fees, products, and services—including because of the Company's high-pressure sales culture and impossible-to-meet quotas. ¶¶67-73. Because Defendants deny engaging in this misconduct, whether and to what extent CenturyLink engaged in the sales misconduct alleged in the Complaint is at the heart of this action and will drive the determination of Plaintiffs' claims.[1]

To obtain evidence of this misconduct, Plaintiffs served subpoenas on third-party collection agencies that CenturyLink engaged to collect unpaid bills from customers. Plaintiffs did so after reviewing documents produced by CenturyLink [redacted]

[1] "Ex. __" refers to the exhibits attached to the Declaration of Michael D. Blatchley and citations to "¶__" refers to the Complaint. ECF No. 143. All emphasis is added and citations omitted unless noted.

The documents sought by the subpoenas also bear directly on Plaintiffs' allegations that CenturyLink misrepresented its billing and debt collection practices in connection with a settlement it entered into with the Arizona Attorney General, and falsely told investors that reported revenue fluctuations during the Class Period were the result of a purported focus on recruiting more "creditworthy" customers (instead of a shift to a revised incentive system for its salespeople). Because the collection agencies were on the front lines trying to collect unpaid customer bills, the discovery Plaintiffs seek targets unique and direct proof about the reasons why customers had not paid their bills, as well as the factors impacting CenturyLink's revenues.

Plaintiffs also have served a subpoena on Great Place to Work Institute, Inc. ("Great Place to Work"), a company CenturyLink retained [REDACTED]

[REDACTED] The limited documents that Defendants have produced concerning Great Place to Work's efforts reveal that CenturyLink employees expressed that:

- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]

[redacted] The documents sought from Great Place to Work—including internal analyses, communications, and notes concerning their work with CenturyLink employees—are undeniably relevant and not included in CenturyLink's document productions. There can be little doubt they are appropriately sought through third-party discovery.

Desperate to prevent Plaintiffs from obtaining the evidence Defendants themselves claim Plaintiffs need to prove their case, Defendants have moved for extraordinary relief in connection with the run-of-the-mill subpoenas here: a protective order requiring Plaintiffs to withdraw them before the third parties have themselves objected and before any meet-and-confer with the third parties has begun, to impose blanket cost-shifting with zero evidence of any cost or burden, and to require Court supervision of all third-party discovery moving forward.

In doing so, Defendants inexplicably argue that the discovery sought by the subpoenas is neither relevant nor proportional to the needs of the case. Defendants' arguments are baseless. The relevance of the materials sought is crystal-clear, and they have offered none of the necessary evidence of burden, undue expense, or harm required to substantiate their proportionality claim. Nor could they.

At bottom, Defendants' motion is little more than an attempt to chill legitimate discovery that is routinely developed in cases like this one. The Court should reject this tactic and deny the motion in its entirety.

## II. LEGAL STANDARD

Subpoenas issued pursuant to Rule 45 of the Federal Rules of Civil Procedure are standard in securities class actions—indeed, nearly all class action and most complex civil litigation—with parties often serving dozens (or more) seeking documents, testimony, or both from relevant third parties. It is also standard for parties issuing subpoenas and targeted third parties to directly negotiate the scope and responses to such subpoenas, particularly where, as here, the third parties in question are sophisticated and accustomed to handling such discovery. Indeed, courts often hold that parties lack standing to object to third-party subpoenas, and are careful to ensure parties do not improperly interfere with legitimate third-party discovery.[2]

Through their motion, however, Defendants have attempted to upend this orderly, routine course of events by requesting a protective order under Rule 26 before negotiations began. Such an order requires a showing of "good cause" to limit or prohibit discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." To establish "good cause," Defendants bear the heavy burden of demonstrating a complete lack of relevance or undue burden. *See Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2018 WL 9919939, at *4 (D. Minn. Jan. 23, 2018) (quoting *Shukh v. Seagate Tech, LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013)); *Arbor Pharm., LLC v. ANI Pharm., Inc.* 2019 WL 4898469, at *4 (D. Minn. Jan. 24, 2019) (upon

[2] *See, e.g., Ford Glob. Techs. v. New World Int'l, Inc.*, 2015 WL 6507151, at *1-3 (W.D. Wash. Oct. 27, 2015) (holding party lacked standing to object to subpoena as modified following meet and confer process with third-party); *Price v. Trans Union LLC*, 847 F. Supp. 2d 788, 791 (E.D. Pa. 2012) (sanctioning party interference with subpoena).

minimal showing of relevance, "the party resisting production then bears the burden of establishing a lack of relevancy or undue burden").

As set forth in detail below, Plaintiffs' subpoenas plainly seek "relevant" evidence under the "broad and liberal scope of discovery" under Rule 26. *Beseke v. Equifax Info. Servs., LLC*, 2018 WL 6040016, at *3 (D. Minn. Oct. 18, 2018). Indeed, "'[a]ny matter that bears on, or that could reasonably relate to other matters that could bear on, any issue that is or may be in [the] case' is relevant" and information is "'generally discoverable unless it is clear that the information sought has ***no bearing*** upon the subject matter of the action.'" *Robinson v. Minnesota*, 2018 WL 6523449, at *1 (D. Minn. Dec. 12, 2018).

Defendants have not offered any evidence of irrelevance, undue burden, or lack of proportionality, let alone sufficient evidence to meet their burden.

## III. THE DISCOVERY SOUGHT FROM THE COLLECTION AGENCIES IS RELEVANT, NON-DUPLICATIVE, AND PROPORTIONAL

Evidence of CenturyLink's cramming that is captured in customer disputes with collection agencies is relevant to at least three issues in determining this action: (i) the existence and extent of CenturyLink's cramming; (ii) Defendants' misrepresentations about its billing and debt collection practices identified by the Arizona Attorney General; and (iii) Defendants' representations that reported revenue fluctuations during the Class Period were the result of a purported focus on recruiting more "creditworthy" customers (as opposed to the Company's efforts to curtail cramming). ¶¶93, 115-19, 131-32, 215-36.

It is obvious that the collection agencies likely have documents related to the Complaint's core allegation that CenturyLink crammed customer bills.

[redacted] Because cramming would have affected the collections process and its outcomes, common sense dictates that the collection agencies have documents related to it—including customer disputes about cramming and internal communications, discussions, and analyses about difficulties collecting related to it.

Such documents are also relevant to other allegations in Plaintiffs' complaint. For example, Plaintiffs allege that Defendants falsely denied the findings of an investigation by the Arizona Attorney General, which concluded CenturyLink had billed customers for services they never requested, charged customers after they cancelled service, failed to inform customers of early-termination fees, and billed customers for equipment they had returned and sending those accounts to collections anyway—practices that were echoed by former employees cited in the Complaint, who described how CenturyLink made it impossible for customers to challenge improper charges or avoid early termination fees.

¶¶89, 131-32, 134. Documents in the collection agencies' possession, such as those discussed above, are directly relevant to proving the falsity of such representations.

In addition, the collection agency documents are directly relevant to Plaintiffs' allegations that CenturyLink falsely told investors that declines in the Company's revenues were driven by changes in customers creditworthiness and not by efforts to address cramming. *See* ¶¶ 115-19, 213-36. Evidence that customers were refusing to pay their bills because of cramming and other improper practices—not because of financial difficulties—would tend to disprove Defendants' statements otherwise.

Defendants' contention that the documents are irrelevant because the Complaint does not allege Defendants made misstatements about CenturyLink's collections practices misapprehends entirely the purpose for which Plaintiffs seek this discovery. It also contradicts their argument that they produced similar documents to Plaintiffs already, discussed below, which concedes the relevance of the materials sought. The relevance of the discovery is clear, and Plaintiffs' attempt to seek such materials is entirely proper.

### A. The Evidence Sought from the Collection Agencies Is Not Unduly Duplicative

Despite arguing that the discovery is irrelevant, Defendants also somehow claim that it is unduly cumulative of relevant evidence they have already produced. But Defendants have offered no evidence—and there is no reason to believe—that the collection agencies possess ***no*** unique, non-duplicative documents concerning customer complaints about cramming. Regardless of Defendants' productions, they have not (and cannot) produce cramming-related internal communications or communications between

the collection agencies and customers that were never forwarded or sent to CenturyLink. But those documents are nonetheless entirely relevant to Plaintiffs' claims. Indeed, the collections agencies would be expected to be a unique and primary source of evidence of certain types of cramming—such as improper charges for early termination fees and returned equipment—that are most likely to be arise in the context of a collection proceeding.

Defendants essentially concede the existence of such materials, as their motion discusses the debt collectors' "internal" communications and discussions with CenturyLink customers that would be unavailable to them. Mot. at 11. Plaintiffs obviously could not have asked Defendants for documents they do not have. And as to documents that Defendants might possess, any concerns over duplication are properly addressed through Plaintiffs' meet-and-confers with the third parties themselves—not by penalizing Plaintiffs for their efforts to compromise on search terms and custodians in party discovery.

### B. The Evidence of Customer Complaints About Cramming Is Proportional to the Needs of the Case

Defendants also baselessly claim the collection-agency discovery is not proportional. The factors to be considered in assessing proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). To substantiate their claim that the discovery is not proportional, Defendants must offer "a particular and specific demonstration of fact, as

distinguished from stereotyped and conclusory statements." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018); *see also CPI Card Grp., Inc. v. Dwyer*, 2018 WL 4815572, at *1 (D. Minn. Oct. 4, 2018) ('"[a] party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required.'").

Here, Defendants have offered ***no*** evidence of disproportionality, let alone the compelling evidence required to demonstrate "good cause" for a protective order. The sum total of their proffer is the bald assertion that the subpoenas are overbroad and that they already have searched for and produced many documents like the ones Plaintiffs seek from the collection agencies. They also ignore the remaining proportionality factors that Rule 26 requires courts to weigh, including the importance of the issues at stake in the litigation and the amount in controversy.

Nor could Defendants make the required showing. As to overbreadth, Defendants must show the materials sought are of "such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure[.]'" *Haddley v. Next Chapter Tech., Inc.*, 2018 WL 2180253, at *3 (D. Minn. March 23, 2018). But as set forth above in detail, the evidence sought is plainly highly relevant to the claims and defenses at issue in this case, and Defendants have not substantiated any meaningful harm whatsoever.[3]

[3] Defendants' cases are not to the contrary and, in fact, demonstrate Defendants' failure to demonstrate good cause here. In *Shukh v. Seagate Tech, LLC*, 295 F.R.D. 228, 236-37 (D. Minn. 2013), the court held that subpoenas issued to former employers and other third-parties related to an expert seeking information to be used for impeachment purposes—as

The other factors in the proportionality analysis also support Plaintiffs' attempt to seek discovery, and Defendants have offered no argument—let alone evidence—suggesting otherwise. The "relative access" factor weighs in favor of proportionality because the collection agencies are the most reliable sources from which to obtain documents reflecting the reasons why customers who were referred to those agencies were refusing to pay their bills. Similarly, the importance of the issues at stake and the amount in controversy also both argue strongly in favor of proportionality, given the size of the alleged fraud and the relevance of the evidence sought—*e.g.*, disputed claims that CenturyLink monetized by selling to debt collectors. And Defendants have not provided any evidence that any third party lacks sufficient resources such that complying with the subpoena would impose undue burden.[4]

Last, Defendants' arguments about the perceived overbreadth of the subpoenas are particularly vexing given that their insistence on bringing their premature motion thwarted any opportunity for Plaintiffs to negotiate an agreeable scope of production with the third

---

opposed to any actual live factual disputes in the case in chief—was sufficiently "irrelevant." In *Abhe & Svoboda, Inc. v. Hedley*, the party who issued the subpoena conceded that the materials sought were duplicative. 2016 WL 11509914, at *4 (D. Minn. Mar. 15, 2016). And in *Morrow v. Flowers Foods, Inc.*, the court suggested that plaintiffs could pursue materials from third-parties in the event defendants failed to produce them. 2008 WL 11511782, at *1 & n.2 (M.D. Ala. May 28, 2008).

[4] To the contrary, the collection agencies include companies like AFNI Outsourcing, Inc., Convergent, Inc., and Allied Interstate, LLC which generate hundreds of millions of dollars in revenues per year, are regularly involved in litigation, and respond to third-party subpoenas as a routine part of their business. *See* Exs. F, G, H, I.

parties themselves, as they have already with other third parties in this case. There is no reason to believe that Plaintiffs would not have been able to do so here.[5]

## IV. THE DISCOVERY SOUGHT FROM GREAT PLACE TO WORK IS RELEVANT AND PROPORTIONAL

Like the collection agency subpoenas, Plaintiffs' subpoena to Great Place to Work is a targeted effort to obtain highly relevant information. Based on documents produced by CenturyLink, Great Place to Work clearly appears to possess evidence going to the core issues in the case—including information CenturyLink does not have.

For example, Great Place to Work [redacted]

---

[5] Indeed, at least one of the collection agencies has already indicated a willingness to discuss its search for and production of responsive documents if Defendants' motion is denied. It is precisely through such a meet-and-confer process that Plaintiffs would be able to negotiate appropriate search parameters. In fact, Plaintiffs would readily agree to shorten the time period to run from March 1, 2013 through October 10, 2017 (the start of the Class Period to 90 days after it ends), and to further tailor for each third party as the circumstances warrant.

[redacted], there is every reason to believe it may possess further relevant materials, including materials not in CenturyLink's possession—and Defendants have never suggested otherwise. Plaintiffs' attempt to seek discovery of such documents is entirely proper.[6]

## V. DEFENDANTS' BASELESS REQUEST FOR COST-SHIFTING AND COURT SUPERVISION SHOULD BE DENIED

Defendants' decision to file a motion to truncate the ordinary-course negotiations between Plaintiffs and the third parties—where the breadth and proportionality issues they complain about are typically addressed—is concerning. So too is the fact that their motion raises facially unsupportable relevance arguments and proffers no evidence to support their burden and proportionality objections. In this context, Defendants' final requests—that the Court require Plaintiffs to (i) bear all costs of compliance with the subpoenas and (ii) seek Court permission to pursue any other third-party discovery—suggest Defendants' motion is primarily intended as an attempt to chill legitimate discovery. Indeed, Defendants cite no case supporting the dramatic relief they seek, and there is absolutely no basis for it here.

---

[6] Of course, to the extent Great Place to Work does not possess relevant documents, Plaintiffs would be willing to narrow or withdraw their subpoena. But Defendants' premature filing of their motion has prevented Plaintiffs from finding out any such facts through the routine meet-and-confer process.

To the contrary, cost-shifting in connection with a Rule 45 subpoena is only even considered after a non-party provides evidence of a "significant" burden or expense. *See Paisley Park Enter., Inc. v. Boxill*, 2019 WL 1036059, at *5 (D. Minn. March 5, 2019) ("Typically . . . a person who receives a Rule 45 subpoena is required to absorb the costs of responding to that subpoena."); *Honda Lease Trust v. Middlesex Mut. Assur. Co.*, 2008 WL 349239, at *5 (D. Conn. Feb. 6, 2008) ('Generally, reimbursement only occurs where the costs are great or the document demand unreasonably broad."); *see also Cedar Rapids Lodge & Suites, LLC v. Seibert*, 2018 WL 3019899, at *2 (D. Minn. June 18, 2018) ("In determining whether a subpoena imposes a significant expense, courts also consider a non-party's 'financial ability to bear the costs or production.'") (Menendez, M.J.). "Significance" in the context of large, national companies like those subpoenaed by Plaintiffs is not established by the ordinary expenses of responding. If it were, cost-shifting would be required for virtually every third-party subpoena. That is clearly not the law.

Here, Defendants' only support for their requested relief is their own speculation that complying with the subpoena "***may*** entail a manual, labor-intensive process." Mot. at 15-16. Setting aside that Defendants' interference with the meet-and-confer process prevented Plaintiffs and the third parties from determining whether this is in fact true, or how any burden might be mitigated, Defendants' failure to provide any evidence of this supposed cost dooms their request. *See, e.g., Paisley Park Enter., Inc.*, 2019 WL 1036059, at *5 (denying costs because third party "provided no information regarding the cost that it will incur in responding to the subpoena, let alone any information showing that such costs would constitute a significant expense").

Defendants' request that the Court require Plaintiffs to seek leave before issuing additional subpoenas in order to "discourag[e] wasteful pretrial activities" is similarly meritless. In case the irony is not clear, Defendants' proposal to discourage "wasteful pretrial activities" is to require Plaintiffs and the Court to engage in the wasteful pretrial activity of bringing and deciding motions to conduct discovery that the Federal Rules plainly allow. Not surprisingly, Defendants cite no case in which such an order was entered. The Court should reject Defendants' tactic.

## VI. CONCLUSION

For all of the reasons above, the Court should deny Defendants' motion and allow discovery of the collection agencies and Great Place to Work move forward.

DATED: July 23, 2020

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Michael D. Blatchley*
John C. Browne, NYS Bar No. 3922747
Michael D. Blatchley, NYS Bar No. 4747424
Michael M. Mathai, NYS Bar No. 5166319
Amanda Boitano, NYS Bar No. 5705843
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com
michael.mathai@blbglaw.com
amanda.boitano@blbglaw.com

Richard D. Gluck, Cal. Bar. No. 151675
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

Facsimile: (212) 554-1444
rich.gluck@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydia Anderson-Dana, OSB No. 166167
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com
lansersondana@stollberne.com

*Special Assistant Attorneys General and Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund and Plaintiff Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009, and Lead Counsel for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Plaintiffs*