```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

   ---------------------------------------------------------
                                    )
   Benjamin Craig, Individually     )  File No. 18-cv-00296
   and on Behalf of All Others      )         (MJD/KMM)
   Similarly Situated,              )
                                    )
            Plaintiffs,             )  Minneapolis, Minnesota
                                    )  October 13, 2020
   vs.                              )  3:00 p.m.
                                    )
   CenturyLink, et al,              )  Telephonic Conference
                                    )
            Defendants.             )
   ---------------------------------------------------------

          BEFORE THE HONORABLE KATHERINE M. MENENDEZ
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
                     (STATUS CONFERENCE)
```

APPEARANCES

| | |
|---|---|
| For the Plaintiffs via telephone: | BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP<br>MICHAEL D. BLATCHLEY, ESQ.<br>MICHAEL M. MATHAI, ESQ.<br>ADAM HOLLANDER, ESQ.<br>1251 Avenue of the Americas<br>Suite 44th Floor<br>New York, New York 10020 |
| | STOLL STOLLBERNE LOKTING & SCHLACHTER, PC<br>KEIL M. MUELLER, ESQ.<br>209 SW Oak Street<br>Suite 500<br>Portland, Oregon 97204 |
| For the Defendants via telephone: | COOLEY LLP<br>PATRICK E. GIBBS, ESQ.<br>3175 Hanover Street<br>Palo Alto, California 94304 |
| | COOLEY LLP<br>SARAH M. LIGHTDALE, ESQ.<br>CHRISTOPHER M. ANDREWS, ESQ.<br>55 Hudson Yards<br>New York, New York 10001 |

CARLA R. BEBAULT, CRR, FCRR
(651) 848-1220

```
 1    For the Defendants via      WINTHROP & WEINSTINE
      telephone:                  THOMAS H. BOYD, ESQ.
 2                                Suite 3500
                                  225 South Sixth Street
 3                                Minneapolis, Minnesota
                                  55402-4629
 4
      Transcribed By:             CARLA R. BEBAULT, RMR, CRR, FCRR
 5                                316 North Robert Street
                                  Suite 146 U.S. Courthouse
 6                                Saint Paul, Minnesota 55101

 7

 8

 9        Proceedings recorded by digital audio recording;
      transcript produced by computer.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

**IN CHAMBERS VIA TELEPHONE BRIDGE**

THE COURT: Let me just put on the record we are here for a status conference in our Craig versus CenturyLink, et al, MDL, 18-cv-296. On the line on behalf of the plaintiff we have lead counsel Mike Blatchley along with Michael Mathai -- let me get the rest of my names teed up here. Hang on just one second.

(Pause in proceedings.)

THE COURT: Adam Hollander, Keil Mueller.

Patrick Gibbs on behalf of the defendants, along with Sarah Lightdale, Christopher Andrews and Tom Boyd.

I just described four items that we are going to discuss today. The first of those is a conversation about plaintiffs' desire to add additional custodians for searching to the existing custodians. It's my understanding that there is some disagreement around this, but the meeting and conferring is still going on.

So let me start with you, Mr. Blatchley. Is there anything teed up for us to discuss here?

MR. BLATCHLEY: Your Honor, again, it's Mike Blatchley for lead plaintiffs. I think you're correct in noting that it's a little bit embryonic. The parties exchanged correspondence concerning these custodians and I

1   think we would suggest that the numbers of custodians at
2   issue, as they represented in the e-mail, I think is a
3   little bit exaggerated as to where the parties actually will
4   end up.  But we're intending to have a discussion about that
5   I believe this Friday, and expect that given -- just based
6   on the correspondence, it appears that this is something we
7   will be bringing to Your Honor.  So wanted to flag that
8   issue for you as something that is, again, it's embryonic,
9   but it is likely heading to your desk at some point.
10          THE COURT:  Okay.  I appreciate the head's up on
11  that.  Can you share with me, if you know at this point,
12  from your perspective, Mr. Blatchley, whether it is more
13  likely to be raised to me through a formal motion to compel
14  or through the informal process?
15          MR. BLATCHLEY:  Your Honor, given the nature of
16  this -- this dispute, we -- we think it likely should go
17  through the formal motion process.
18          THE COURT:  Okay.
19          MR. BLATCHLEY:  I think it would be -- and the
20  reason I want to say that is because I think in order to
21  properly frame the issues, we will need to provide Your
22  Honor with some documents demonstrating, you know, the
23  importance and roles of the folks that we are seeking to add
24  to the discovery.  You know, should Your Honor prefer to do
25  that by informal letter, noting that those letters would

1  require some substantial exhibits, we can certainly proceed
2  that way and believe the benefit of a faster proceeding
3  would be helpful.  But that's the reason I wanted to say
4  that we thought that a formal motion might be the better
5  course.
6              THE COURT:  Okay.  Notwithstanding the fact that I
7  still have not ruled on the motion that you all filed and
8  that we had argued in August for the protective order, a
9  formal process doesn't have to be an overly-long process.
10 It really depends on the complexities of the issues and
11 whether I can be prepared and whether my team is so buried
12 in work to rule quickly or not.
13             So I don't want you to think that you have to use
14 the informal process.  There are a lot of things to be
15 gained but, you know, it is guaranteed to be a quick
16 decision but it is also guaranteed to be a, perhaps, less
17 fulsome record developed.  And so that's the trade-off you
18 should make.
19             If you would like to bring it to my attention
20 using the informal method, you have to both agree.  So you
21 have to decide that that's the way you want to handle it.
22 If you want to bring it formally but try to get it teed up
23 quickly for consideration, let Kathy know that when you
24 reach out to schedule.  You can tell her that I gave you
25 permission to try to move things along.  And as long as I

1    can have two days between the responsive memo and the
2    hearing, I don't mind it going quite a bit faster.  So that
3    doesn't have to be a complete choice between speed and more
4    extensive briefing.
5              Mr. Gibbs, anything you want to say about that
6    topic or are you also in agreement that it is very likely to
7    come my way but it needs to be teed up?
8              MR. GIBBS:  Um, I don't really know, Your Honor.
9    I think it depends on how the meet and confer goes.  I was
10   not aware that we had actually set a time to meet and confer
11   on Friday.  I believe we had proposed it, but as far as I
12   knew we hadn't heard back from plaintiffs yet confirming
13   that time.
14             THE COURT:  Okay.
15             MR. GIBBS:  Um, I mean, we were, frankly, taken
16   aback both by the timing and the scale of the request, the
17   sheer number of additional custodians.  We would have
18   thought that this would have come up a long time ago.  But
19   rather than just fight about that issue in the abstract, we
20   are trying to meet and confer and we are in the process of
21   doing some work to figure out how much additional burden
22   would be associated with this number of additional
23   custodians, and we're certainly committed to trying to work
24   it out, but it really depends on, you know, what's the
25   number plaintiffs are really going to insist on.  If they

1   are going to insist on 27, then we're absolutely going to be
2   back to Your Honor.  If there's something considerably more
3   streamlined than that, then maybe we can get it resolved.  I
4   just don't know.
5              THE COURT:  Okay.
6              MR. GIBBS:  On the form of the submission, you
7   know, we have some slight preference on our side for an
8   informal process.  One of the -- one of the unfortunate
9   byproducts of the formal process is filing of a bunch of
10  discovery material in court.
11             THE COURT:  Um-hum.
12             MR. GIBBS:  And then an associated set of things
13  about sealing and unsealing and all that, which strikes me
14  as not always necessary for the process.  So we're happy to
15  talk to plaintiffs' counsel.  We don't want to limit their
16  ability to show you whatever they think they need to show
17  you to make their case, but the public filing often just
18  creates its own set of satellite issues that may or may not
19  really be necessary.
20             THE COURT:  And it is certainly true that those
21  motions for sealing are work for you all.  You can surmise
22  that they are also work for us.  So -- so I appreciate you
23  thinking about that.
24             Okay.  So I'm going to sort of butt out of that
25  until I am invited not to.  I appreciate you all working to

1   narrow the field of disagreement and putting thought into
2   how to raise it and I'm glad to be kind of prepped on that
3   front, so thank you very much.
4           So let's pivot to topic number 2, which is the
5   scheduling of depositions. And why don't I start with you,
6   Mr. Blatchley. Tell me what's going on here.
7           MR. BLATCHLEY: So -- thank you, Your Honor.
8   Again, Mike Blatchley for the lead plaintiffs.
9           Again, for raising that, again, point number 2,
10  our thought was to just update the Court on the process and
11  how that's going. I'm pleased to report that I think so far
12  we have been able to work cooperatively in scheduling
13  depositions. I think we've given, at least based on the
14  numbers I have right before me, defendants a little over 20
15  individuals we expect to depose. We have confirmed or are
16  in the process of confirming, I believe, about five of those
17  and expect to get dates for several others in the near term.
18          We are concerned a little bit on plaintiffs' end
19  just in terms of making sure we're able to schedule the
20  depositions in a manner that allows, you know, discovery to
21  end when it's supposed to end in February. But we also know
22  that and appreciate that defendants are -- appear to be
23  working hard to make that possible on their end. But we
24  just wanted to flag that one issue. It seems to be going
25  well, but we will -- of course we'll pull it back if there

1    are any problems on scheduling.
2             THE COURT:  And, Mr. Blatchley, are these being
3    set up for video?
4             MR. BLATCHLEY:  They are, Your Honor.
5             THE COURT:  Excellent.  Okay.  Good.  You know, I
6    know that some law firms believe they have come up with a
7    way to do safely-distanced depositions.  I find it kind of
8    hard to imagine in this case that that would be very easy to
9    accomplish.  I just really encourage everybody to keep
10   safety, you know, first and foremost in your planning.  You
11   may not have people in your family that make you
12   particularly cautious, but assume that some of your
13   colleagues might, or opposing counsel might, and that you
14   just aren't aware of those sensitivities.
15            So I hope everybody continues to try to be
16   careful.  Haste is important.  This case has been around for
17   a while, but safety is even more important.  So I really
18   appreciate that.
19            Mr. Gibbs, anything you want to say about the
20   effort to get these depositions scheduled?
21            MR. GIBBS:  Just briefly, Your Honor.  I think I
22   share Mr. Blatchley's concern over the amount of work and
23   the number of depositions left to be scheduled and I don't
24   want to -- I don't want to get into any finger pointing and
25   the like.  We had some discussions early on and after some

1  back and forth, plaintiffs agreed to give us a list and
2  proposed time frames spreading out over the remaining period
3  as opposed to just sending out, you know, three or four
4  names at a time.  And I think that's going to be very
5  helpful to the process, so I -- I'm -- we'll do the best we
6  can with the time and we'll assess those as things are going
7  forward.
8           I think -- I don't want to dwell too much on it,
9  but one of the first four witnesses the plaintiffs
10 identified is a former employee.  I won't mention her name
11 because it's not really pertinent to the issue, but we have
12 just recently confirmed that we, Cooley, will represent her
13 in her capacity as a witness.  We've let plaintiffs know
14 that -- that this former employee since her employment had
15 suffered a fairly serious medical condition that's caused
16 significant memory impairment, and we had asked plaintiffs
17 whether they really needed to proceed with that deposition.
18 I believe they still currently intend to do that.
19          She has not, at this point, directed us to resist
20 the idea of having a deposition, but she may change her mind
21 as we are working through the process and actually trying to
22 schedule a date.  So there may be an issue around one
23 witness, but hopefully we will be able to work something
24 out.
25          THE COURT:  Okay.  I will keep my fingers crossed

1  that you will be able to work something out; and if not,
2  this sounds like the perfect thing to bring to me informally
3  because it's such a discrete issue.  I have had a couple of
4  cases where somebody, a former employee, actually had
5  medical issues that made a deposition much more difficult to
6  schedule, and frankly much less productive than was
7  anticipated.  But I'll hope that that gets worked out.
8  Thanks for flagging that for me.
9           Anything else, Mr. Gibbs, you want to talk about
10 with respect to the deposition issue?
11          MR. GIBBS:  No, Your Honor.
12          THE COURT:  Okay.  All right.  Topic number 3 is
13 the motion for protective order which is still pending
14 before me.  Mr. Blatchley -- or I guess since you submitted
15 the list, let's start with you, Mr. Gibbs.  What's your
16 thinking about this topic?
17          MR. GIBBS:  We didn't mean to be nudging or
18 presumptuous.  We just thought it was a natural item to
19 touch base on if there's anything to touch base on.  If
20 there's not and the Court is working away on the ruling, we
21 didn't think there was anything in particular we needed to
22 raise.  We just figured it was an item worth discussing.
23          THE COURT:  Okay.  So I appreciate your effort to
24 be polite, but I'm not sure how to read this as anything
25 other than a nudge.

1    MR. GIBBS: I really didn't intend it that way,
2    Your Honor. We tried to think of all the issues that are
3    sort of pending and this is one.
4    THE COURT: Out there. Yep. Okay. Well, I know
5    that it's pending. I have sadly a ginormous mountain of
6    pending things that I'm trying to weed through. Some have
7    their own deadlines that are beyond my control. Criminal
8    matters have their own internal set of rules and things like
9    that. So I will get this to you just as soon as I can and
10   I'm actually cautiously optimistic that it will be headed
11   out by the end of next week, but don't set your timepieces
12   based on that.
13   And anything you want to say, Mr. Blatchley, about
14   that?
15   MR. BLATCHLEY: No, Your Honor. Mr. Gibbs has
16   done a good job of summarizing the difficulty we had in
17   presenting that issue.
18   THE COURT: Okay. Good.
19   All right. And I try to -- you know, I try to
20   rule as quickly as I can on as many things as possible but
21   that one just is with my career law clerk who you all
22   might -- I don't know -- those of you who have clerked for
23   federal judges know that often in August you lose a seasoned
24   law clerk and you get a brand new baby law clerk and that
25   leads to a lot of backlog. So just be patient. We'll get

1    that to you as soon as we can.
2             Okay.  I think the last topic on that list -- hang
3    on.  I just have turned away from it on my e-mail.  The last
4    topic is the motion to stay.  What would you like to talk
5    about with respect to that?
6             MR. GIBBS:  Your Honor, this is Patrick Gibbs from
7    Cooley.  We just wanted to alert the Court to just other
8    things happening in the case generally.  There's nothing
9    that Your Honor needs to do about it; but as I'm sure you
10   know, Judge Davis issued an order granting the plaintiffs'
11   motion for class certification.
12            THE COURT:  Um-hum.
13            MR. GIBBS:  We have filed a Rule 23(f) petition
14   with the Eighth Circuit and then shortly thereafter filed a
15   motion seeking to stay the case in the District Court
16   pending that petition.  Judge Davis pretty quickly issued an
17   order saying that he intended to rule on the papers and did
18   not expect to hear oral argument.
19            So, again, I don't think there's anything for Your
20   Honor to do.  We just thought this was appropriate as an FYI
21   to know what else is happening in the case.
22            THE COURT:  Yep.  And I had that on my radar
23   screen because there was actually some question in the
24   beginning of whether that was something that was going to
25   come to me or to Judge Davis.  It seemed appropriate for me

1  to have it go to Judge Davis, which is where it has landed.
2  So I will keep an eye out for that; and obviously, if he
3  determines that a stay is appropriate, we may -- I may set a
4  telephonic status conference.  I know that sort of flies in
5  the face of the stay, but just to make sure that we think
6  through any mechanics that need to be thought through in the
7  face of that decision.  And if he decides that a stay isn't
8  appropriate, then we'll just keep moving right ahead.
9             So, okay.  Thank you very much for that.
10             Anything you want to say about that one,
11 Mr. Blatchley?
12             MR. BLATCHLEY:  No, Your Honor.  Just that we are
13 filing our opposition to the motion for a stay this evening;
14 and other than that, I don't think there's anything else we
15 have on those topics.
16             THE COURT:  Okay.  All right.  Well, that was
17 topics 1 through 4.  Mr. Blatchley, anything else you want
18 to discuss?
19             MR. BLATCHLEY:  No, Your Honor.  I don't have
20 anything else on the agenda for today.
21             THE COURT:  Okay.  How about you, Mr. Gibbs, or
22 any of your team.  Anything else you want us to talk about?
23             MR. GIBBS:  Nothing else from us, Your Honor.
24 Thank you.
25             THE COURT:  Okay.  All right.  Well, thank you all

1   for getting in touch.  I really appreciate it.  You know, I
2   know we had this scheduled for a long time but your agenda
3   is really helpful and it helps frame and makes sure that we
4   get discussing what we need to discuss, so I appreciate you
5   doing that and I welcome those in the future when we have
6   additional status conferences.
7           I will sit tight and see if any issues arise with
8   respect to depositions.  We will get you an order on the
9   pending third-party subpoenas as soon as we can.  And then
10  if there are continuing disagreements around the custodians
11  that need to be brought to my attention, I'll keep my eyes
12  out for that as well.
13          So thank you all very much and have a really good
14  rest of your day.  Thanks, everybody.
15          MR. BLATCHLEY:  Thank you, Your Honor.
16          MR. GIBBS:  Thank you, Your Honor.
17          THE COURT:  Bye.
18          (Conference adjourned at 3:22 p.m.)
19                      *     *     *
20          I, Carla R. Bebault, certify that the foregoing is
21  a correct transcript from the digital audio recording of
22  proceedings in the above-entitled matter, transcribed to the
23  best of my skill and ability.
24              Certified by:  s/Carla R. Bebault
                               Carla Bebault, RMR, CRR, FCRR
25