**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

This Document Relates to:
Civil Action No. 18-296 (MJD/KMM)

MDL No. 17-2795 (MJD/KMM)

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.  Introduction ................................................................................................ 1

II.  Background ................................................................................................ 3

    A.  Summary of Plaintiffs' Claims Against the Settling Defendants ................ 3

    B.  Summary of the Action ................................................................... 4

    C.  The Mediation/Settlement Process ................................................... 6

III.  Summary of Key Settlement Terms ................................................................ 7

IV.  Legal Standards for Preliminary Approval ...................................................... 9

V.  The Court "Will Likely Be Able To" Approve The Proposed Settlement
Under Rule 23(e)(2) Because It Is Fair, Reasonable, and Adequate ..................... 10

    A.  The Procedural Aspects of The Settlement Satisfy Rule 23(e)(2) ............. 10

    B.  The Settlement Is Reasonable In Light of the Costs and Risks of
Further Litigation ...................................................................... 14

    C.  The Proposed Settlement Does Not Unjustly Favor Any Class
Member ...................................................................................... 19

    D.  The Anticipated Request For an Award of Attorneys' Fees and
Litigation Expenses Is Reasonable ................................................. 21

VI.  The Proposed Notice Program Is Adequate and Constitutes Due and
SUfficient Notice Under Rule 23, Due Process, and the PSLRA ......................... 21

VII.  Proposed Schedule of Settlement Events ......................................................... 24

VIII.  Conclusion ................................................................................................ 26

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                    **PAGE(S)**

*Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*,
    2013 WL 4855308 (E.D. Mo. Sept. 11, 2013) ............................................................. 19

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    955 F.3d 254 (2d Cir 2020) ............................................................................................. 17

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
    No. 12-md-2335 (S.D.N.Y.) ............................................................................................ 13

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
    2017 WL 2574005 (D. Minn. June 14, 2017) ............................................. 9, 11, 17, 19

*Bredthauer v. Lundstrom*,
    2012 WL 4904422 (D. Neb. Oct. 12, 2012) ................................................................... 22

*In re CenturyLink Sales Prac. and Sec. Litig.*,
    2020 WL 5517483 (D. Minn. Sept 14, 2020) ................................................................. 17

*In re CenturyLink Sales Prac. and Sec. Litig.*,
    403 F. Supp. 3d 712 (D. Minn. 2019) .............................................................................. 5

*In re Charter Commc'ns, Inc., Sec. Litig.*,
    2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................... 9, 20

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) .......................................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................................ 22

*In re Emp. Benefit Plans Sec. Litig.*,
    1993 WL 330595 (D. Minn. June 2, 1993) ..................................................................... 11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ............................................................. 11, 12

*Första AP-fonden v. St. Jude Med., Inc.*,
    2016 WL 6647931 (D. Minn. Nov. 9, 2016) .................................................................. 24

*Goldman Sachs Grp v. Arkansas Tchr. Ret.*,
    2020 WL 7296815 (U.S. Dec. 11, 2020) ....................................................................... 17

*Holden v. Burlington N., Inc.*,
   665 F. Supp. 1398 (D. Minn. 1987) ............................................................................... 14

*In re JPMorgan Chase & Co. Sec. Litig.*,
   No. 12-cv-3852 (S.D.N.Y.) ............................................................................................ 13

*King v. Raineri Const., LLC*,
   2015 WL 631253 (E.D. Mo. Feb. 12, 2015) .................................................................. 13

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) .................................................................................. 11

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................................... 9, 11

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................................... 12

*Rawa v. Monsanto Co.*,
   934 F.3d 862 (8th Cir. 2019) .................................................................................... 10, 19

*Reynolds v. Credit Bureau Servs., Inc.*,
   2016 WL 389977 (D. Neb. Feb. 1, 2016) ...................................................................... 23

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................... 18

*Thomas v. MagnaChip Semiconductor Corp.*,
   2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................................................................. 8

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
   591 F. Supp. 2d 1023 (D. Minn. 2008) ......................................................................... 11

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
   2012 WL 13065005 (D. Minn. Jan. 19, 2012) .............................................................. 11

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................................................. 12

*In re Wireless Tel Fed. Cost Recovery Fees Litig.*,
   396 F.3d 922 (8th Cir. 2005) ......................................................................................... 10

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................... 21

iv

**STATUTES**

15 U.S.C. § 78u-4(a) ............................................................................ 21

15 U.S.C. § 78u-4(e) ............................................................................ 19

**OTHER AUTHORITIES**

Cornerstone Research, *Securities Class Action Settlements: 2019 Review
    and Analysis* (2020) .................................................................... 19

Fed. R. Civ. P. 23(c)(2) ....................................................................... 22

Fed. R. Civ. P. 23(e)(1) ........................................................... 2, 9, 10, 22

Fed. R. Civ. P. 23(e)(2) .............................................................. 9, 10, 19

## I.    INTRODUCTION

Court-appointed Class Representatives the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund ("Oregon"), and Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009 ("Vildosola," and collectively with Oregon, "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed settlement (the "Settlement") of the above-captioned action (the "Action"), as embodied in the Stipulation and Agreement of Settlement dated January 29, 2021 (the "Stipulation").[1]    Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, which provides for the payment of $55 million in cash for the benefit of the Class, as it easily satisfies the applicable standard set forth in Rule 23(e)(1) of the Federal Rules of Civil Procedure.

The Settlement before the Court is the result of Plaintiffs' vigorous prosecution of this Action over the past three-and-a-half years, and represents an outstanding result for the Class in light of the substantial costs and risks to the Class's recovery from continued

---

[1] All capitalized terms used in this memorandum that are not otherwise defined shall have the meanings given to them in the Stipulation, which is attached as Exhibit 1 to the Declaration of Michael D. Blatchley ("Blatchley Declaration"), filed concurrently with this memorandum.    Citations to "Ex. __" refer to the exhibits attached to the Blatchley Declaration.  Also, unless otherwise noted, all references to "ECF No. __" are to the docket in *Craig v. CenturyLink, Inc.*, No. 18-cv-296 (MJD/KMM), and all references to "¶__" are to Plaintiffs' Consolidated Securities Class Action Complaint filed on June 25, 2018 (ECF No. 143).

litigation.  In fact, the $55 million recovery here is greater than the total amount recovered in private and government actions brought on behalf of consumers nationwide in connection with the sales and billing misconduct alleged in this case, and represents one of the top ten securities class action settlements ever in the District of Minnesota.  The Settlement was also negotiated at arms-length by properly incentivized parties that were represented by experienced and able counsel, with the assistance of former United States District Court Judge Layn R. Phillips serving as mediator, does not unjustly favor any class member, and the anticipated Fee and Expense request is reasonable.  Accordingly, the Court "will likely be able to" finally approve the settlement, and so preliminary approval is warranted.  Fed. R. Civ. P. 23(e)(1).

The Court also should approve the proposed form and manner of notice of the Settlement to be provided to the Class because it is the best and most practicable notice under the circumstances and is designed to ensure Class Members are notified of the Settlement and informed of their rights to participate therein, object thereto, or seek exclusion from the Class.

Accordingly, Plaintiffs respectfully request that the Court enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement Pursuant to Fed. R. Civ. P. 23(e)(1) ("Preliminary Approval Order").[2] The Preliminary Approval Order will, among other things: (1) preliminarily approve the

---

[2] The proposed Preliminary Approval Order is attached as Ex. 2 to the accompanying Blatchley Declaration.

terms of the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Class; and (3) schedule a Settlement Fairness Hearing at which the Court will consider the request for final approval of: (a) the Settlement set forth in the Stipulation; (b) the plan for allocating the net settlement proceeds of the Settlement among Class Members; and (c) Lead Counsel's application for an award of attorneys' fees and expenses, which may include a request for reimbursement to Plaintiffs for their reasonable costs and expenses as permitted by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## II.    BACKGROUND

### A.    Summary of Plaintiffs' Claims Against the Settling Defendants

Plaintiffs allege that, from March 1, 2013 through July 12, 2017, inclusive (the "Class Period"), Defendants made materially false and misleading statements concerning the Company's allegedly fraudulent billing practices and its financial condition.[3] Specifically, Plaintiffs allege that Defendants engaged in the practice of "cramming" customer accounts without disclosing that the Company's billing practices could be called into question, and denying that the Company engaged in cramming.  ¶¶15, 44, 62-65. Plaintiffs also allege that Defendants falsely attributed CenturyLink's revenue growth to its focus on customer needs, its "bundling" marketing strategy, and its adherence to

---

[3]  Defendants include CenturyLink, former CEO Glen F. Post, III; former CFO R. Stewart Ewing, Jr.; former Controller David D. Cole; former Global Head of Sales Karen Puckett; former President, Sales and Marketing Dean J. Douglas; and former Treasurer G. Clay Bailey.

CenturyLink's Unifying Principles of fairness, honesty, and integrity and its Code of Conduct.  ¶¶3, 40-42, 58-60.

Plaintiffs allege that the prices of publicly traded CenturyLink common stock and 7.60% Senior Notes due September 15, 2039 ("7.60% Notes") were artificially inflated as a result of Defendants' allegedly false and misleading statements, and that the price of these securities declined when the truth was revealed in a series of disclosures on June 16, 2017, June 19, 2017, and July 12, 2017.  ¶¶152, 158, 163, 266.

### B.    Summary of the Action

This Action was commenced on June 21, 2017, by the filing of a complaint by Amarendra Thummeti in the Southern District of New York.  Related class action complaints were filed on June 22, 2017, by Benjamin Craig in the Southern District of New York; August 15, 2017, by Don J. Scott in the Western District of Louisiana; and October 25, 2017, by Inter-Marketing Group USA, Inc. in the Southern District of New York.  The three actions filed in the Southern District of New York were transferred to the Western District of Louisiana.

On October 19, 2017, Magistrate Judge Perez-Montes of the Western District of Louisiana consolidated *Craig v. CenturyLink, Inc.*, No. 0:18-cv-0296 (MJD/KMM) (D. Minn.) ("*Craig*"), *Scott v. CenturyLink, Inc.*, No. 0:18-cv-0297 (MJD/KMM) (D. Minn.) ("*Scott*"), and *Thummeti v. CenturyLink, Inc.*, No. 0:18-cv-0298 (MJD/KMM) (D. Minn.) ("*Thummeti*").  ECF No. 79.  On October 20, 2017, Judge Perez-Montes issued an Order appointing Oregon as Lead Plaintiff in the consolidated cases and approving Bernstein

Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Stoll Stoll Berne Lokting & Shlachter P.C. ("Stoll Berne") as Lead Counsel. ECF No. 80.

On February 1, 2018, the Judicial Panel on Multidistrict Litigation transferred *Craig*, *Scott*, *Thummeti*, and *Inter-Marketing Group USA Inc. v. CenturyLink, Inc.*, No. 0:18-cv-299 (MJD/KMM) (D. Minn.) ("*IMG*") to this Court for inclusion in MDL No. 2795. On April 20, 2018, this Court consolidated *IMG* with the previously consolidated securities actions. ECF No. 137.

Plaintiffs filed their Consolidated Securities Class Action Complaint (the "Complaint") on June 25, 2018. ECF No. 143. Defendants filed a motion to dismiss the Complaint, which was denied in full on July 30, 2019. *See In re CenturyLink Sales Prac. and Sec. Litig.*, 403 F. Supp. 3d 712 (D. Minn. 2019). From August 2019 through early November 2020, Plaintiffs vigorously pursued discovery, consulted with numerous experts, and otherwise worked to develop the record supporting the claims of the Class.

On January 21, 2020, Oregon and Vildosola moved to certify the Class, appoint Plaintiffs Oregon and Vildosola as Class Representatives, and appoint Lead Counsel Bernstein Litowitz and Stoll Berne as Class Counsel. ECF No. 188. Defendants conducted discovery, including taking depositions of Oregon's representatives, Vildosola, and Plaintiffs' economic expert, and filed their opposition on March 23, 2020. ECF No. 226. Plaintiffs then deposed Defendants' economic expert and filed their reply on May 5, 2020. ECF No. 249. On June 12, 2020, Defendants filed a sur-reply. ECF No. 267. And, on June 19, 2020, Plaintiffs filed their sur-sur-reply. ECF No. 270.

Following oral argument, on September 14, 2020, this Court granted Plaintiffs' motion and certified the following class (the "Class"):

> All persons and entities that purchased or otherwise acquired publicly traded CenturyLink, Inc. ("CenturyLink") common stock or 7.60% Senior Notes due September 15, 2039, during the period between March 1, 2013 to July 12, 2017, inclusive (the "Class Period"), and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, CenturyLink's affiliates and subsidiaries, the officers and directors of CenturyLink and its subsidiaries and affiliates at all relevant times, members of the immediate family of any excluded person, heirs, successors, and assigns of any excluded person or entity, and any entity in which any excluded person has or had a controlling interest.

ECF No. 321. The Court appointed Oregon and Vildosola as Class Representatives and appointed Bernstein Litowitz and Stoll Berne as Class Counsel. *Id.*

On September 28, 2020, Defendants filed a petition seeking an interlocutory appeal of the Court's class certification order under Rule 23(f), and the next day filed a motion to stay discovery in the District Court. *See* ECF No. 323. Plaintiffs opposed the Rule 23(f) petition and the motion to stay and, on October 27, 2020, the Eighth Circuit denied Defendants' petition. ECF No. 346.

### C.    The Mediation/Settlement Process

The parties retained former United States District Court Judge Layn R. Phillips as mediator and participated in a full-day, in-person mediation on February 3, 2020. The initial mediation session was unsuccessful.

6

After approximately nine months of additional litigation, the parties re-engaged in October 2020 to explore potential settlement. The parties engaged in direct negotiations that were productive but, again, unsuccessful.

In early November 2020, the parties returned to mediation with Judge Phillips. On November 4, 2020, the parties reached agreement on the amount of the settlement payment. Negotiations followed on the other principal terms of the settlement, and a Term Sheet was executed on November 19, 2020. Thereafter, the parties negotiated a formal Settlement Agreement, which was executed on January 29, 2021.

## III.    SUMMARY OF KEY SETTLEMENT TERMS

Defendants have agreed to pay $55 million in cash, to be deposited within twenty business days after preliminary approval in an interest-bearing escrow account controlled by Lead Counsel. Lead Counsel may pay the cost of notice to the Class from the deposited funds.

The Class is the same Class that was certified by the Court in its September 14, 2020 Order:

> All persons and entities that purchased or otherwise acquired publicly traded CenturyLink common stock or 7.60% Senior Notes due September 15, 2039 ("7.6% Notes") during the period from March 1, 2013 through July 12, 2017, inclusive (the "Class Period"), and who were damaged thereby, excluding Defendants; CenturyLink's affiliates and subsidiaries; the Officers and directors of CenturyLink and its subsidiaries and affiliates at all relevant times; members of the Immediate Family of any excluded person; heirs, successors, and assigns of any excluded person or entity; and any entity in which any excluded person has or had a controlling interest.

7

The Class will release Defendants, their insurers, and related persons and entities from all claims "Plaintiffs or any other member of the Class asserted in the Complaint or could have asserted in any other forum that arise out of or are based upon the allegations, transactions, facts, matters, alleged misrepresentations, or alleged omissions involved, set forth, or referred to in the Complaint and [] relate to the purchase or acquisition of CenturyLink common stock or 7.6% Notes during the Class Period."  The release explicitly excludes claims asserted in related consumer and shareholder derivative actions, as well as claims by any governmental entity arising out of any investigation of Defendants related to the conduct alleged in the Action.

The Settlement is not a claims-made settlement.  The Class will receive the full benefit of the $55 million payment.  There will be no reversion of funds to Defendants or their insurers if the Settlement becomes final.  Members of the Class will be provided the opportunity to opt-out of the Settlement.

As is standard in securities class actions, in connection with the Settlement, the Parties have also entered into a confidential Supplemental Agreement regarding requests for exclusion from the Class.  *See* Stipulation ¶ 37.  This confidential agreement sets forth the conditions under which CenturyLink can terminate the Settlement if the requests for exclusion exceed an agreed-upon, confidential opt-out threshold. [4]  *Id.*

---

[4] These termination agreements are standard in securities class actions, customarily remain confidential, and do not impact the fairness of the Settlement.  *See, e.g.*, *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017) (an agreement permitting defendant to terminate the settlement if an opt-out threshold is reached "does not render the settlement unfair").

## IV.    LEGAL STANDARDS FOR PRELIMINARY APPROVAL

In the Eighth Circuit, "'strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.'"  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999).  This policy "'is particularly strong in the class action context.'"  *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,  2017 WL 2574005, at *2 (D. Minn. June 14, 2017); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) ("In the class action context in particular, there is an overriding public interest in favor of settlement.  Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").[5]

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements.  The procedure for approval of a proposed class action settlement is a well-established, two-step process.  *First*, the Court performs a preliminary review of the settlement to determine whether to grant preliminary approval and authorize plaintiffs to send notice of the proposed settlement to the members of the Class.  *See* Fed. R. Civ. P. 23(e)(1).  Following distribution of the notice, and after a hearing, the Court determines whether to grant final approval of the settlement.  *See* Fed. R. Civ. P. 23(e)(2).

The Federal Rules of Civil Procedure instruct that a court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to

---

[5] Unless otherwise noted, internal citations have been omitted and emphasis is added.

(i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the class for purposes

of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). In considering final approval of the

Settlement, Federal Rule 23(e)(2) provides that the Court consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As detailed below, the facts and circumstances concerning the

Settlement reached here readily satisfy Rule 23(e)(2), and the Settlement warrants

preliminary approval.[6]

## V.     THE COURT "WILL LIKELY BE ABLE TO" APPROVE THE PROPOSED SETTLEMENT UNDER RULE 23(E)(2) BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

### A.     The Procedural Aspects of The Settlement Satisfy Rule 23(e)(2)

The Settlement embodies all the hallmarks of a procedurally fair resolution under

Rule 23(e)(2). Courts in the Eighth Circuit have held that "'there is a presumption of

---

[6] At final approval, the Court will also consider the Eighth Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2): "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Rawa v. Monsanto Co.*, 934 F.3d 862, 868 (8th Cir. 2019).

fairness when a settlement is negotiated at arm's length by well informed counsel.'" *Tile Shop*, 2017 WL 2574005, at *2. This presumption is particularly strong when settlement negotiations are facilitated by a mediator. *Id.* ("The assistance of a neutral, well-respected mediator to close out the settlement negotiations further demonstrates that the Settlement was fairly and honestly negotiated."). The judgment of experienced counsel is also entitled to deference. *See, e.g., Petrovic*, 200 F.3d at 1149; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (giving considerable weight to the views of experienced class counsel); *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 2012 WL 13065005, at *4 (D. Minn. Jan. 19, 2012) ("In the final-approval context, courts have given substantial weight to the experience of the attorneys who prosecuted and negotiated the settlement.").

The Settlement in this case was the product of intensive, arms-length negotiations. *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("intensive and contentious negotiations likely result in meritorious settlements, rather than collusive ones"). The parties engaged in settlement discussions over a period of eight months, including two mediations before Judge Phillips, one of the preeminent mediators for complex securities class action cases. *See, e.g., In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 591 F. Supp. 2d 1023, 1034 (D. Minn. 2008) (noting Judge Phillips is "an experienced and independent mediator"); *see also In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (calling Judge Phillips a "nationally recognized mediator" and affirming settlement approval in part due to his representations); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *6 (N.D. Ga.

Mar. 17, 2020) (noting that Judge Phillips is "a retired federal judge with a wealth of experience in major complex litigation" and crediting his representations about reasonableness of settlement and sound negotiation process).  In fact, Judge Phillips had previously mediated the parallel private consumer action in this matter, and thus was well-positioned to assess the relative strengths and weaknesses of the Parties' positions.

The first mediation was not successful.  Extensive subsequent direct negotiations between counsel were also unsuccessful, until Judge Phillips became involved again and issued a Mediator's recommendation that finally produced a compromise.  The Parties' agreement to resolve the Action for $55 million was based on a Mediator's recommendation after these extensive negotiations.  During the negotiations, Oregon—an experienced, sophisticated institutional investor that has achieved numerous securities class action recoveries under the PSLRA, and Mr. Vildosola, an experienced investor who suffered a substantial loss on the 7.6% Notes—were highly incentivized to obtain the largest possible recovery from Defendants, which they successfully did.  *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'"); *In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, the Class was represented in the litigation and the negotiations by experienced Lead Counsel. *See King v. Raineri Const., LLC*, 2015 WL 631253, at *3 (E.D. Mo. Feb. 12, 2015) (approving settlement that was "reached by arm's length negotiation," between parties "represented by experienced counsel throughout the litigation"). Lead Counsel have prosecuted numerous securities class action cases, and the present case is the third case Lead Counsel have prosecuted on behalf of Oregon. *See, e.g.*, *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12-md-2335 (S.D.N.Y.); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-3852 (S.D.N.Y.).

In addition, the Settlement was reached only after the litigation had reached a stage where a thorough and informed evaluation of the parties' respective positions and risks in the litigation could be made. Lead Counsel conducted a detailed, substantive investigation into the alleged fraud by, among other things, reviewing SEC filings, analyst research reports, investor conference calls, press releases, media reports, and conducting numerous interviews of former CenturyLink employees before filing a detailed amended complaint. Lead Counsel also performed extensive legal research in preparing the complaint and briefing the opposition to Defendants' motion to dismiss, and consulted with experts regarding telecommunications-industry issues and loss causation and damages. And extensive fact discovery was completed—which included Plaintiffs' review of over 2.2 million pages of documents obtained from Defendants and third parties, testimony from 80 witnesses deposed in the related Minnesota Attorney General and consumer class action litigations and extensive written discovery—and a Class was certified in a contentious proceeding assisted by expert witness testimony. Thus, the Parties had more than sufficient

13

evidence to allow them to make an informed decision about the strengths and weaknesses of their respective cases. *See, e.g., Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1423-24 (D. Minn. 1987) (approving settlement reached after parties engaged in extensive written and oral discovery).

### B.    The Settlement Is Reasonable In Light of the Costs and Risks of Further Litigation

The proposed Settlement provides for an immediate, cash payment of $55 million for the benefit of the Class. This is an excellent result for Class Members, especially considering the significant risks of continued litigation and the expense and length of continued litigation through trial and appeals. Although Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the very substantial risks they would face in establishing liability and damages.

*First*, while Plaintiffs' allegations were sufficiently supported to survive Defendants' motion to dismiss, proving the claims at trial through admissible evidence was far from certain. Plaintiffs faced significant risks that, at either the summary-judgment stage or after a trial, it would not be able to establish that Defendants' statements about CenturyLink's sales and billing practices and the Company's financial results were actionable under the federal securities laws. Defendants have argued, and likely would have continued to argue, that neither the SEC nor any other governmental entity has brought a related action against CenturyLink challenging Defendants' statements to investors and, in addition, that the Company has never been required by its auditor to restate any of its financial results. Defendants also likely would have continued to argue that their

14

statements were neither false nor misleading nor material to investors. Specifically, Defendants would likely argue that their statements about CenturyLink's sales and billing practices were materially accurate to the best of their knowledge at the time they were made, and, in any event, Plaintiffs could not show that the alleged misstatements were material to investors' decisions to invest in CenturyLink securities. If the Court or a jury were to have credited such arguments at summary judgment or trial, the Class's recovery would have been significantly reduced or eliminated.

*Second*, scienter risks were heightened in this case. To prevail at trial, Plaintiffs would likely have had to show, among other things, that the Individual Defendants themselves orchestrated, encouraged, or approved the alleged improper sales and billing practices. Defendants likely would have pointed to the fact that the Company had rules in place during the Class Period prohibiting such practices, and in fact fired employees who engaged in them, as facts undermining an inference that any misleading statements were made with fraudulent intent. Moreover, Defendants would likely further assert that they had no motive to commit fraud, and that the Individual Defendants were not alleged to have personally benefited from the alleged fraud by selling shares during the Class Period.

In support of these arguments, Defendants would have cited the findings of the Company's own internal investigation into the sales and billing misconduct alleged in this case, which was conducted by a Special Committee of the Company's board of directors with the assistance of outside independent law firm O'Melveny & Myers LLP. That investigation purported to exculpate Defendants for the very misconduct alleged by Plaintiffs. Specifically, as reported by CenturyLink, that investigation—which included

15

review of 9.7 million documents and 32 billion billing records, and interviews with 200 current and former employees—(i) "did not reveal evidence to conclude that any member of the Company's management team engaged in fraud or wrongdoing," (ii) determined that the "Company management did not condone or encouraging cramming" and that "the evidence did not show that cramming was common at the Company," (iii) confirmed that the "Company maintains specific policies and procedures that prohibit and are designed to prevent and deter cramming," and (iv) found that when "instances of cramming were found to have occurred, the Company took reasonable actions to discipline employees." *See* Ex. 3. Defendants would have argued that such facts are wholly inconsistent with the Complaint's scienter allegations, demonstrate the absence of intent to deceive, and show that none of the Company's statements were false. The Class's recovery would have been eliminated had such arguments prevailed.

*Third*, Plaintiffs would have faced challenges in proving loss causation and damages. As Defendants argued strenuously in connection with class certification, and no doubt would have continued to argue at summary judgment and trial, Plaintiffs would have had to overcome numerous challenges in establishing both loss causation and damages, including challenges related to the degree of artificial inflation in CenturyLink common stock and the 7.6% Notes at various points during the Class Period, and whether alleged sales and billing misconduct was already known to the market. Among other things, Defendants would have argued—similar to what they argued at Class Certification—that the stock declines in the case were instead driven by an environment of fear, uncertainty and doubt that had been influenced by the highly-publicized Wells Fargo "fake account"

scandal, and not the revelation of any fraud (as the Special Committee subsequently concluded). The resolution of those issues likely would have come down to an inherently unpredictable and fiercely disputed "battle of the experts." *See Tile Shop*, 2017 WL 2574005, at *3 (Plaintiffs "faced significant risks establishing causation and damages. The parties had retained highly qualified experts whose damages assessments were at considerable variance."). Accordingly, in the absence of a settlement, there was a very real risk that the Court or a jury would have credited Defendants' experts in whole or in part, and therefore that the Class would recover an amount far less than the total cash Settlement Amount—or may not have recovered anything at all.

On all of these and other issues, Plaintiffs would have had to prevail at several stages, including at summary judgment and trial—and then again on the appeals that likely would have followed. Each of these stages posed meaningful risks, could have taken years, and would have subjected Plaintiffs to the additional risk of intervening changes in the law. The Settlement avoids these risks and will provide a prompt and certain benefit to the Class, rather than risk a smaller recovery—or none at all—after additional years of litigation and appeals.[7]

---

[7] As just one example, the U.S. Supreme Court recently granted certiorari to consider the Second Circuit's decision in *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc*., 955 F.3d 254 (2d Cir 2020), which was relied on by the Court in granting class certification here. *See Goldman Sachs Grp v. Arkansas Tchr. Ret.*, 2020 WL 7296815 (U.S. Dec. 11, 2020); *In re CenturyLink Sales Prac. and Sec. Litig.*, 2020 WL 5517483, at *10-13 (D. Minn. Sept 14, 2020).

17

The Settlement is also reasonable when considered in relation to the range of potential recoveries and risks to establishing damages for the Class had Plaintiffs prevailed at trial and on any appeals (which, as noted above, was far from certain). To start, there can be no question that the recovery here warrants approval under this standard given that it would represent one of the top ten largest PSLRA settlements ever in the District of Minnesota. In fact, not only is the Settlement over three times the size of the recovery in the companion consumer class action case approved by the Court—it represents a recovery that is greater than the recoveries obtained in consumer class action and in the five separate attorney general actions into CenturyLink's billing misconduct *combined*.

The $55 million recovery is all that more impressive given the lack of any financial restatement, a parallel SEC investigation, or any governmental inquiry into the Company's statements to investors concerning the alleged billing misconduct. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020) (holding approval warranted in light of "substantial risks to establishing both liability and damages" as there was no "parallel SEC action or a restatement of financial results to support Lead Plaintiff's claims and provide a roadmap for discovery").

Indeed, the Settlement here would represent the single largest securities class action recovery on behalf of investors in a publicly traded company in the District of Minnesota exclusively alleging claims under Sections 10(b) and Section 20(a) of the Exchange Act where there was not a related SEC investigation or criminal U.S. Department of Justice inquiry. Further, and consistent with the above, the $55 million Settlement represents a substantial portion of investors' realistically recoverable damages under Plaintiffs' expert's

18

damages estimates, and in fact is well over twice the median recovery in securities class actions this size even under Plaintiffs' best-case damages estimates—and therefore compares very favorably to recoveries in other securities class actions.  Accordingly, preliminary approval is warranted.  *See, e.g.*, *Tile Shop*, 2017 WL 2574005, at *3 (holding settlement representing 6.8% to 9.5% of provable damages "strongly" supported approval, noting amount "exceeds the median recovery of estimated damages in similar securities class actions"); Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis* (2020) (Fig. 5), attached as Ex. 4, at 6 (from 2010 to 2018, the median settlement recovery in securities fraud class actions with damages estimated between $500 and $999 million was 3.7%); *id.* at 20 (App'x. 3) (in securities class actions in the Eighth Circuit from 2010 to 2019, the median settlement recovery was 6.1% of estimated damages).[8]

### C.    The Proposed Settlement Does Not Unjustly Favor Any Class Member

In evaluating a proposed settlement, the Court also assesses the settlement's effectiveness in equitably distributing relief to members of the Class. Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here too, the Court can readily find that the Settlement will likely earn final approval.  The proposed Plan of Allocation treats Class Members "equitably relative

---

[8] Given the complexity of the issues, risks, and range of outcomes, these facts also satisfy the Eighth Circuit's factors, and specifically the Court's focus on "balancing. . .the strength of the plaintiff's case against the terms of the settlement."  *Monsanto*, 934 F.3d 862 at 868; *see also Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 2013 WL 4855308, at *3 (E.D. Mo. Sept. 11, 2013) (granting final approval of settlement because "even if Plaintiffs had litigated and prevailed on the merits, they might not obtain a better recovery than they have achieved in this Settlement Agreement").

to each other" based on their transactions in publicly traded CenturyLink common stock and 7.6% Notes.  *See* Fed. R. Civ. P. 23(e)(2)(D).

The Plan of Allocation provides for distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in CenturyLink common stock and 7.6% Notes.  The formula to apportion the Net Settlement Fund among Class Members, which was developed by Plaintiffs' expert in consultation with Lead Counsel, is based on the estimated amount of artificial price inflation in CenturyLink common stock and 7.6% Notes during the Class Period allegedly caused by Defendants' alleged misconduct.[9]  Once the Claims Administrator has processed all submitted claims it will make distributions to eligible Class Members, until additional redistributions are no longer cost effective.  At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) approved by the Court.

Courts routinely approve plans of allocation like the one contemplated in this case. *See e.g.*, *Charter Commc'ns*, 2005 WL 4045741, at *10.

---

[9] The calculation of "Recognized Loss Amounts" under the Plan will depend on when the claimant purchased and/or sold the securities, whether the claimant held the securities through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the securities when the claimant purchased, sold, or held them.  Under the Plan, a claimant's "Recognized Claim" will be the sum of the claimant's Recognized Loss Amounts, and the Net Settlement Fund will be allocated to Class Members on a *pro rata* basis based on the relative size of their Recognized Claims.

### D.    The Anticipated Request For an Award of Attorneys' Fees and Litigation Expenses Is Reasonable

The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund and for payment of expenses not to exceed $2 million.  A fee award of 25% is reasonable and supported by case law in this Circuit.  *See, e.g., In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (noting that "courts in this circuit . . . have frequently awarded attorney fees between twenty-five and thirty-six percent" and awarding 25% of an $80 million settlement).

A 25% fee award would also befit the substantial risks that Lead Counsel undertook in expending significant time, effort, and resources over the last three-and-a-half years in pursuing this litigation and obtaining this excellent recovery for the Class.  Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the schedule set by the Preliminary Approval Order.  By granting preliminary approval, the Court does not pass upon the reasonableness of any subsequent fee or expense application, which will be decided at the Settlement Fairness Hearing.

## VI.    THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA

The Court should approve the form and content of the proposed Notice, Claim Form, and Summary Notice.  *See* Stipulation, Exs. A-1, A-2, and A-3; Proposed Preliminary Approval Order, Exs. 1, 2, and 3.  The Notice is written in plain language and sets out the relevant information and answers to most questions that Class Members will have.

21

Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice apprises Class Members of (among other disclosures) the nature of the Action; the claims and issues involved; the definition of the Class; the terms of the proposed Settlement; that the Court will exclude any Class Member who requests exclusion, and the procedures and deadlines for doing so; the procedures and deadlines for objecting; and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice states the amount of the Settlement on an absolute and per-security basis; the issues about which the Parties disagree; the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; the names, mailing addresses, email addresses, and telephone numbers of Lead Counsel, who will be available to answer questions from Class Members; and a brief explanation of the reasons why the Parties are proposing the Settlement. *Id.*

In addition, the proposed notice program meets the standards under the Federal Rules of Civil Procedure and the due process clause of the U.S. Constitution. Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]." Fed. R. Civ. P. 23(e)(1)(B); *see also Bredthauer v. Lundstrom*, 2012 WL 4904422, at *3 (D. Neb. Oct. 12, 2012) ("Due process

. . . requires reasonable notice to class members."); *Reynolds v. Credit Bureau Servs., Inc.*, 2016 WL 389977, at *5 (D. Neb. Feb. 1, 2016) (stating notice adequate if "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'").

Here, Plaintiffs propose that the Claims Administrator mail the Notice and the Claim Form (the "Notice Packet") via First-Class Mail to all Class Members who can be identified through reasonable effort. If the Court preliminarily approves the Settlement, CenturyLink will provide the Claims Administrator with contacting information for potential Class Members based on the Company's transfer records and information provided by the Depository Trust & Clearing Corporation. In addition, the Claims Administrator will provide the Notice Packet to numerous banks, brokers, and other institutions that commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial owners of the securities. Plaintiffs further propose to supplement the mailed Notice with a published Summary Notice, to be published once in the *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. In addition, contemporaneously with the mailing of the Notice Packet, the Claims Administrator will cause copies of the Notice and Proof of Claim to be posted on the Settlement website maintained by the Claims Administrator, www.CenturyLinkSecuritiesLitigation.com, and will update the website with information regarding the Settlement.[10]

---

[10] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*. *See* Stipulation ¶ 20.

23

Accordingly, the proposed notice program represents the best notice practicable under the circumstances and satisfies all applicable requirements under Rule 23, the PSLRA, and due process. *See, e.g.*, *Första AP-fonden v. St. Jude Med., Inc.,* 2016 WL 6647931, at *2 (D. Minn. Nov. 9, 2016) (similar notice program "constituted the best notice practicable under the circumstances . . . and constituted due and sufficient notice to all persons and entities entitled thereto"). Accordingly, Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

In connection with preliminary approval of the Settlement, Plaintiffs also respectfully request the appointment of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Claims Administrator. Epiq is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements, including *In re Schering-Plough Corp./ENHANCE Securities Litigation*, No. 08-cv-397 (D.N.J.) ($473 million settlement), *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (D.N.J.) ($215 million settlement), and *In re Bank of New York Mellon Forex Transactions Litigation*, No. 12-md-2335-LAK (S.D.N.Y.) ($180 million settlement). Epiq will be responsible for, among other things, mailing Claim Packets to potential Class Members and nominees, publishing the Summary Notice, processing Claims, and distributing the Net Settlement Fund to eligible Class Members.

## VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

In connection with the preliminary approval of the Settlement, the Court should set a date for a final approval hearing; deadlines for mailing the Notice and Claim Form and

24

publishing the Summary Notice; and deadlines for submitting objections, requesting exclusion from the Class, submitting claims to participate in the Settlement, and filing papers in connection with final approval of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense application.  Plaintiffs respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Proposed Timing |
| --- | --- |
| Commence Mailing of the Notice and Proof of Claim to Class Members (the "Notice Date") | No later than 20 business days after the date of entry of the Preliminary Approval Order |
| Publish the Summary Notice | No later than 10 business days of the Notice Date |
| File papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses | 35 calendar days prior to the date of the Settlement Hearing |
| Deadline for receipt of objections and submitting requests for exclusion | 21 calendar days prior to the date of the Settlement Hearing |
| File papers in response to any objections and in further support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses | 7 calendar days prior to the date of the Settlement Hearing |
| Settlement Fairness Hearing | 110 calendar days from the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Proofs of Claim | 120 calendar days after the Notice Date |

25

## VIII. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the proposed form and manner of providing notice of the Settlement to the Class and appointing Epiq as the Claims Administrator; and (3) setting a schedule for completion of further Settlement-related proceedings, including providing notice to the Class and a date for the Settlement Fairness Hearing.

Dated: February 1, 2021

Respectfully submitted,

*/s/ Michael D. Blatchley*
John C. Browne, NYS Bar No. 3922747
Michael D. Blatchley, NYS Bar No. 4747424
Michael M. Mathai, NYS Bar No. 5166319
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com
michael.mathai@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydia Anderson-Dana, OSB No. 166167
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com

kmueller@stollberne.com
landersondana@stollberne.com

*Special Assistant Attorneys General and Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund and Plaintiff Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009, and Class Counsel*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 596-4044
Facsimile:  (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Plaintiffs*

27