<pre>
 1                  UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
 2
     ------------------------------------------------------------
 3                                    )
     In re: CenturyLink Sales         ) MDL No. 17-2795
 4   Practices and Securities         )          (MJD/KMM)
     Litigation                       )
 5                                    )
     This Document Relates to:        ) Minneapolis, Minnesota
 6   Civil File No. 18-296 (MJD/KMM)  ) March 18, 2021
                                      ) 10:59 a.m.
 7                                    )
     ------------------------------------------------------------
 8

 9

10

11          BEFORE THE HONORABLE MICHAEL J. DAVIS
              UNITED STATES DISTRICT COURT JUDGE
12

13
                       (MOTIONS HEARING)
14

15

16

17

18

19

20

21

22

23

24
          Proceedings reported by court reporter; transcript
25   produced by computer.
</pre>

1   **APPEARANCES** (Via Zoom):

2       For the Plaintiffs:        Stoll Berne
                                    KEIL M. MUELLER, ESQ.
3                                   Suite 500
                                    209 Southwest Oak Street
4                                   Portland, Oregon 97204

5       For the Defendants:        Cooley, LLP
                                    PATRICK E. GIBBS, ESQ.
6                                   3175 Hanover Street
                                    Palo Alto, California 94304
7
                                    Cooley, LLP
8                                   SARAH M. LIGHTDALE, ESQ.
                                    55 Hudson Yards
9                                   New York, New York 10001

10      Court Reporter:            LORI A. SIMPSON, RMR-CRR
                                    Suite 146
11                                  316 North Robert Street
                                    St. Paul, Minnesota 55101

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

**IN OPEN COURT**

**(VIA ZOOM)**

1

2

3

4

5    THE COURT:  All right.  Let's call this case,

6    Gerri.

7    COURTROOM DEPUTY:  In re: CenturyLink Sales and

8    Practices Litigation, Civil Case No. 17-MD-2795.

9    Counsel, please state your appearances for the

10   record.

11   MR. MUELLER:  Good morning, Your Honor.  Keil

12   Mueller of Stoll Berne on behalf of plaintiffs.

13   THE COURT:  Good morning.

14   MR. GIBBS:  Good morning, Your Honor.  Patrick

15   Gibbs from Cooley on behalf of defendants.

16   THE COURT:  Good morning.

17   Mr. Mueller, you may proceed.

18   MR. MUELLER:  Thank you, Your Honor.  On behalf of

19   lead plaintiff, the State of Oregon, and additional named

20   plaintiff Mr. Fernando Vildosola, my colleagues at Stoll

21   Berne; our co-lead counsel, Bernstein Litowitz; liaison

22   counsel, Lockridge, Grindal, Nauen; and I are pleased to

23   present this proposed settlement to the Court.

24   The proposed agreement is the product of intense

25   negotiation and represents the culmination of three and a

1    half years of work by plaintiffs and plaintiffs' counsel,

2    all on behalf of the class.  We feel very good about what

3    we've been able to accomplish for the class in this case,

4    and we submit to Your Honor the preliminary approval of this

5    proposed settlement, pursuant to FRCP 23(e)(1), is fully

6    warranted on the basis that the Court will likely be able to

7    finally approve the proposed settlement.

8            As a preliminary matter, I would note that the

9    class for the proposed settlement is the same class Your

10   Honor previously certified in this case.

11           I also note that our arguments are, I believe,

12   well laid out in our brief, which is very thorough, but I

13   would like to touch on several main points.  And, of course,

14   I'm happy at any time to answer whatever questions Your

15   Honor may have.

16           THE COURT:  All right.

17           MR. MUELLER:  So I'll start with a brief summary

18   of the course of litigation to date and then touch on the

19   material terms of the settlement, as well as the process by

20   which the parties arrived at the proposed settlement.  I'll

21   also discuss the significant risks and challenges continued

22   litigation would pose, before finally reviewing the proposed

23   notice program and approval process.

24           As Your Honor is aware, four securities class

25   action Complaints were filed and ultimately consolidated in

1    this action.  One was filed in the Western District of

2    Louisiana; the other three filed in the Southern District of

3    New York.  The Southern District of New York cases were

4    transferred to the Western District of Louisiana before all

5    cases were transferred by the Judicial Panel on

6    Multidistrict Litigation to this Court for consolidation in

7    MDL 2795.

8              Plaintiffs filed their consolidated Complaint on

9    June 25, 2018.  That Amended Complaint is a product of

10   thorough investigation that allowed plaintiffs to develop

11   allegations, including, among other things, allegations

12   based on information received from 20 former employees of

13   CenturyLink.

14             On July 30, 2019, this Court denied defendants'

15   motion to dismiss in full and the parties then engaged,

16   beginning in August 2019, in more than a year of intense

17   discovery, until reaching a tentative settlement in November

18   of 2020.

19             During that time plaintiffs prepared and served

20   initial disclosures, document requests, interrogatories,

21   more than 30 subpoenas, document subpoenas, on third

22   parties.  The parties engaged in extensive correspondence

23   regarding discovery, including extensive negotiation of

24   search criteria, extensive discussion of various discovery

25   disputes, several of which required the intervention and

1     assistance of Magistrate Judge Menendez to resolve.

2            Ultimately defendants and third parties produced

3     over 2.3 million pages of documents.  Plaintiffs produced

4     500,000 pages of documents.  Plaintiffs defended four

5     depositions in this case, including the depositions of

6     Michael Viteri of the Oregon State Treasury and Brian DeHaan

7     of the Oregon Department of Justice, testifying as 30(b)(6)

8     witnesses on behalf of the State of Oregon.  Mr. Vildosola

9     also was deposed, as was Dr. Michael Hartzmark, plaintiffs'

10    expert at class certification.  Plaintiffs deposed

11    defendants' counsel, Bruce -- I'm sorry, not defendants'

12    counsel -- defendants' expert at class certification, Bruce

13    Deal.

14            In addition to the depositions that were taken and

15    defended in this case, plaintiffs' counsel obtained and

16    reviewed transcripts of 80 witnesses that were deposed by

17    the Minnesota State Attorney General in Minnesota's action

18    against CenturyLink's subsidiary, CenturyTel, in a related

19    action.  We also obtained and reviewed discovery taken in

20    the consumer class action, including extensive confirmatory

21    discovery, which included a 30(b)(6) deposition of

22    CenturyLink.

23            The proposed settlement is a very good result for

24    the class, I would submit to the Court.  It is a $55 million

25    cash settlement, which is more than the total amount

1   recovered in the private and governmental actions brought on

2   behalf of consumers in related cases.  It also represents

3   one of the top ten securities class action settlements ever

4   in the District of Minnesota.

5            Other material terms of the settlement include the

6   class, as I mentioned, is the same class previously

7   certified by the Court.  The class will release defendants,

8   their insurers, and related persons.  This is not a

9   claims-made settlement.  There will be no reversion of funds

10  to defendants or their insurers.

11           There also, I should note for the Court, is, as is

12  common in securities class action settlements, a

13  confidential agreement regarding requests for exclusion,

14  which sets forth conditions under which CenturyLink can

15  terminate the agreement if requests for exclusion exceed a

16  certain threshold.  Those agreements commonly are kept

17  confidential.

18           The settlement, we submit, is fair, reasonable,

19  and adequate.  It was negotiated at arm's length by properly

20  incentivized and well-represented parties.  We were assisted

21  in reaching this settlement by former District Court Judge

22  Layn Phillips, who already had served as mediator in the

23  consumer class action, was well acquainted with the facts of

24  this case, at least some of the underlying facts, and has

25  also served as mediator for numerous securities class

1    actions.

2         Judge Phillips oversaw an unsuccessful initial

3    in-person mediation in February of 2020.  After that

4    unsuccessful initial mediation, the parties returned to

5    their litigation positions and engaged in further intense

6    litigation, until finally in October of 2020 the parties

7    re-engaged through direct negotiation, which was productive

8    but ultimately unsuccessful.  The parties then again engaged

9    Judge Phillips as mediator and were able, ultimately through

10   a mediator's proposal, to reach a tentative resolution in

11   November of 2020.

12        If this case were to continue to be litigated,

13   plaintiffs and the class would face significant risks and

14   challenges.

15        First and foremost, I have to say that Mr. Gibbs

16   and his colleagues are extraordinarily capable adversaries.

17   They put on a very good defense for defendants in this case,

18   and we fully expect that they would have continued to do so

19   had the parties not reached a settlement.

20        Plaintiffs would face serious risks to establish

21   liability first regarding defendants' alleged false and

22   misleading statements.  Defendants have argued throughout

23   this litigation, and certainly would have continued to

24   argue, that the statements alleged in the Complaint were

25   neither false nor material.  They would have pointed out

1    that the company's auditors never required it to restate any

2    financial results.  They would -- and they would have noted

3    that there was no SEC action or action by any other

4    governmental entity challenging defendants' statements to

5    investors.

6              The class also would have faced risks in

7    establishing scienter in this case.  Particularly, the

8    plaintiffs would have been required to demonstrate that

9    defendants orchestrated, encouraged, or approved the alleged

10   improper sales and billing practices.  And defendants, as

11   they have done throughout this litigation, would have

12   continued to point to the fact that the company had rules in

13   place prohibiting these alleged improper sales practices.

14   Defendants likely would have argued that they had no motive

15   to commit fraud, that individual defendants did not

16   personally benefit from the alleged fraud in this case.  And

17   they also likely would have pointed to the fact that the

18   company's internal investigation purported to exculpate the

19   individual defendants from the very activities and conduct

20   that are alleged to have -- plaintiffs allege to have

21   occurred.

22             In addition, there are risks that would have been

23   faced as to loss causation and damages.  Defendants would

24   have continued to argue that the stock price declines in

25   this case were driven by fear, uncertainty, and doubt,

1    influenced in particular by the Wells Fargo fake account

2    scandal as opposed to any revelation of fraud.

3            The defendants also would have continued to assert

4    a truth-on-the-market defense that investors in CenturyLink

5    were aware that sales and billing practices similar to those

6    alleged in this case are issues in the telecommunications

7    industry and are known to have been issues in the industry.

8            The recovery in this case, Your Honor, is more

9    than double the median recovery in class actions of this

10   size as a percentage basis, and we feel that this is a very

11   strong settlement given the facts and given the risks of

12   this case.  We also --

13           COURT REPORTER:  I just noticed that we lost

14   defense counsel.  Mr. Gibbs is no longer on my screen.

15           MR. MUELLER:  Shall I wait for Mr. Gibbs before I

16   continue?

17           THE COURT:  Let's figure out what's going on here.

18   Just hold on, Mr. Mueller.

19           MR. MUELLER:  Of course, Your Honor.

20           COURTROOM DEPUTY:  He will probably try and get

21   back in again here shortly.

22           MS. LIGHTDALE:  This is Sarah Lightdale from

23   Cooley.  I'm happy to continue for the defendants if needed,

24   and I'm sure Mr. Gibbs will be back on shortly.

25           THE COURT:  I want to wait for Mr. Gibbs.

1          MS. LIGHTDALE:  Of course, Your Honor.

2      (Pause)

3          THE COURT:  Ms. Lightdale, do you know whether or

4      not it was an emergency that he had to go to or is it just a

5      connection problem?

6          MS. LIGHTDALE:  Your Honor, I believe he's having

7      some technical difficulties this morning.  We had been

8      communicating about that before the hearing began.  So I

9      suspect he'll be back on as soon as he can solve those.

10         THE COURT:  All right.  Thank you.

11     (Pause)

12         THE COURT:  While I have got everyone on, a

13     numbers of lawyers on -- Lori, this will be off the record.

14     (Discussion off the record.)

15         MS. LIGHTDALE:  Your Honor, this is Sarah

16     Lightdale.  I understand from Mr. Gibbs that his Internet

17     service in his home has gone out and he is not sure when it

18     will come back up.  Would it be acceptable to you for him to

19     dial into the audio?

20         THE COURT:  He can dial into the audio, but I'm

21     going to ask you, Ms. Lightdale, to be the lead counsel on

22     this and we can proceed.  Is that --

23         MS. LIGHTDALE:  Of course, Your Honor.

24         THE COURT:  Is that agreeable to you?

25         MS. LIGHTDALE:  Absolutely, Your Honor.

```
 1                    THE COURT:  All right.

 2                    MS. LIGHTDALE:  And we apologize for the

 3       inconvenience.

 4                    THE COURT:  No, no, no.  No, no.  Please.  I can

 5       tell you that everyone has had this problem.  Even in the

 6       courthouse we've gone -- lost our signal.  So it's nothing

 7       new.  We just have to deal with it, and no apologies are

 8       necessary.

 9                    Mr. Mueller, why don't you continue.

10                    MR. MUELLER:  Thank you, Your Honor.  The pause

11       gave me a chance to realize that I neglected to introduce --

12       I know we have multiple co-counsel on the phone and we

13       haven't introduced all of them.  I did want to note,

14       however, that Brian DeHaan from the Oregon Department of

15       Justice is listening in as well today.  The State of Oregon

16       has taken its role as lead plaintiff in this case incredibly

17       seriously and has kept this litigation on track.  Mr. DeHaan

18       personally was involved at all stages of the mediation and

19       negotiation of the proposed settlement.

20                    I wanted to note briefly that the plan --

21                    THE COURT:  Turn on your video so I can at least

22       acknowledge you.

23                    MR. DeHAAN:  Good morning, Your Honor.  Brian

24       DeHaan, Oregon Department of Justice.

25                    THE COURT:  Turn on your video so I can see you.
```

1              MR. MUELLER:  He has his video on.  I don't know

2       if it's on your screen or not, Your Honor.

3              THE COURT:  It's not.  Well, that's okay.  I

4       appreciate the efforts that you've put in.

5              Continue.

6              MR. DeHAAN:  Thank you, Your Honor.

7              MR. MUELLER:  Thank you, Your Honor.

8              Very briefly, the plan of allocation in the

9       proposed settlement treats all class members equitably

10      relative to each other.  It will be based on each class

11      member's transactions in CenturyLink common stock and

12      7.6 percent notes during the class period.  Each class

13      member will receive a portion of the settlement fund.  That

14      is a *pro rata* share based on the class member's recognized

15      loss in its transactions in the securities at issue.

16             This allocation formula was developed by

17      plaintiffs' economic expert in consultation with counsel.

18      The formula is based on estimated amounts of price inflation

19      at various points during the class period.  This is a type

20      of allocation that is routinely approved in securities cases

21      such as this.  The recognized losses will be determined on

22      an investor-by-investor basis.  And we believe -- we firmly

23      believe that this is a fully appropriate plan of allocation.

24             We also believe the notice program proposed in

25      this case is incredibly robust.  We have proposed Epiq as

1      the claims administrator.  I don't know if Your Honor is

2      familiar with Epiq, but Epiq is one of the leading claims

3      administrators in particular for securities class action

4      settlements.  They have, among other things, handled over --

5      handled 54 of the hundred largest securities class actions

6      settlements since the PSLRA was enacted.

7            We do not believe -- or we believe that the

8      program we proposed for providing notice will provide notice

9      to as many potential class members as can possibly be

10     reasonably identified.  The notice procedures are similar to

11     those in other securities class actions.  We will provide

12     notice to holders of record and will work to make sure that

13     the notices get into the hands of the individual investors.

14           We will -- we have been and will continue to work

15     with defendants to ensure that we have the information

16     available to us and that the claims administrator is able to

17     obtain the information necessary to carry out the proposed

18     notice program.

19           And we firmly believe that the proposed program

20     provides the best notice practicable.  It's typically --

21     similar notice programs have proven an extremely effective

22     method of providing notice.

23           We will have a website up and running should this

24     settlement be preliminarily approved.  That website will go

25     live immediately.

1          Again, in all other respects the proposed notice

2    program has been used -- it is very similar to the notice

3    program that has been used in virtually every securities

4    class action settlement for the past 20 years.

5          So, Your Honor, without -- that's all I have.  We,

6    again, feel very good about the settlement we have been able

7    to reach.  This was a very hard-fought litigation with very

8    capable adversaries, and we feel very good about the result

9    that we have been able to present to the Court for the

10   Court's consideration.

11         THE COURT:  If I can ask one question.  If this

12   matter had gone to trial, what was the plaintiffs' estimate

13   of what the damages would have been?

14         MR. MUELLER:  Yes, Your Honor.  Well, obviously

15   there are a number of ways that that might have played out.

16   What is often referred to as plaintiffs' best day or had we

17   won on every single issue, we believe, having worked with

18   our expert, that the maximum damages recoverable in this

19   case would have been approximately 695 million.

20         THE COURT:  All right.  For the defense?

21         MR. GIBBS:  Good morning again, Your Honor.  This

22   is Patrick Gibbs.  My apologies for the technical problems

23   at my end.

24         We don't really have much to add.  I would just

25   echo that the case was extremely hard fought and would

1    continue to be hard fought.  Our position on the merits

2    obviously hasn't changed.  And I would echo counsel's point

3    that the negotiations were indeed arm's length and hard

4    fought as well, just like the underlying case.

5              THE COURT:  All right.  Thank you.

6              The Court will grant the preliminary approval.

7    The final approval date should be after August 16th, don't

8    you believe?

9              MR. MUELLER:  By our calculations, Your Honor, it

10   could be as soon as July 6th to accommodate the schedule

11   that we've proposed, but an August date would also --

12   certainly would accommodate that schedule.

13             THE COURT:  Well, I just want to make sure that we

14   have all the claims in.  And isn't August 16th the last

15   date, or am I looking at the wrong date?

16             MR. MUELLER:  The date that we had calculated --

17   we looked at this yesterday based on the proposed -- the

18   schedule that we have proposed and we thought that, based on

19   that schedule, everything would be ready for final approval

20   as early as July 6th.  So --

21             THE COURT:  Mr. Gibbs, is that your understanding

22   too?

23             MR. GIBBS:  It is, Your Honor.

24             THE COURT:  All right.  Gerri?

25             COURTROOM DEPUTY:  Yes, Judge.

 1                THE COURT:  Let's pull up a date here.

 2                Clare, do you have any questions dealing with that

 3       date?  We talked about that this morning.

 4                LAW CLERK:  Judge, it just was scheduled by the

 5       parties that the hearing would be before all of the claims

 6       had been processed.  If the Court wanted that to be

 7       completed before the hearing, it would need to be a little

 8       later than what was proposed by the parties.

 9                THE COURT:  Counsel, do you see any problems with

10       that or should we go with the July date?

11                MR. MUELLER:  We believe the July date is

12       appropriate, Your Honor.  I believe that we will -- but if

13       Your Honor is more comfortable with an August date, I think

14       that would be fine as well, but we believe that the July

15       date will -- everything that needs to occur for final

16       approval would occur before July 6th.  However, it is true

17       that under our proposed schedule the claims filing deadline

18       would be after final approval.  The date for opting out and

19       for objecting to the settlement would be before final

20       approval.  So I just want to be clear that what we're

21       proposing would have the final approval hearing before all

22       of the -- before the claims deadline.

23                COURTROOM DEPUTY:  Judge, I also want to point out

24       that we potentially may be in trial that first week in July.

25                THE COURT:  Yeah, I am looking at that now.  Let's

1    move it to July 20th.  How does that look on everyone's

2    schedule?

3              MR. MUELLER:  That looks good to plaintiffs, Your

4    Honor.

5              MR. GIBBS:  That works for us, Your Honor.

6              THE COURT:  All right.  July 20th at 11:00 a.m.

7    for final approval.

8              MR. MUELLER:  Thank you, Your Honor.

9              THE COURT:  All right.  Will you submit the

10   appropriate papers for us?

11             MR. MUELLER:  Yes, of course.

12             THE COURT:  All right.  Anything else, Mr. Gibbs?

13             MR. GIBBS:  No, Your Honor.

14             THE COURT:  Gerri, is there anything further?

15             COURTROOM DEPUTY:  No.  Judge, you have covered it

16   all.  Thank you.

17             THE COURT:  Lori, were you able to get everything

18   on the record?

19             COURT REPORTER:  Yes, I was, Judge.  Thank you.

20             THE COURT:  Thank you, everyone, for your efforts

21   in this matter.  I know that you've -- it was hard fought

22   and it was at arm's length.  I appreciate the mediator

23   getting involved in not only this case, but the other case

24   and really getting the parties to come together and come to

25   a good conclusion for both parties.

```
 1              And so with that, I wish everyone safety and --
 2      whether or not you're going to get a shot or not, it's up to
 3      you, but I want everyone to stay safe and healthy, and
 4      hopefully I'll be able to see you soon in court.  All right.
 5      Stay safe.  Bye-bye.
 6              MR. MUELLER:  Thank you, Your Honor.
 7              MR. GIBBS:  Thank you, Your Honor.
 8              THE COURT:  We're adjourned.
 9          (Court adjourned at 11:32 a.m.)
10                          *      *      *
11
12
13          I, Lori A. Simpson, certify that the foregoing is a
14      correct transcript from the record of proceedings in the
15      above-entitled matter.
16
17              Certified by:   *s/ Lori A. Simpson*
18                              Lori A. Simpson, RMR-CRR
19
20
21
22
23
24
25
```