**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE: CENTURYLINK SALES          MDL No. 17-2795 (MJD/KMM)
PRACTICES AND SECURITIES
LITIGATION

This Document Relates to:
Civil File No. 18-296 (MJD/KMM)

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 2

II.   THE REQUESTED ATTORNEY FEES ARE REASONABLE ........................... 4

    A.    The Requested Fees Are Reasonable Under Rule 23 .................................... 4

    B.    The Requested Fees Are Reasonable Under the *Johnson* Factors
        Typically Considered by This Court .............................................................. 6

        1.    The Benefit Conferred on the Class Supports a 25% Fee ................. 7

        2.    The Risk to which Lead Counsel Were Exposed Supports
            a 25% Fee ............................................................................................ 8

        3.    The Difficulty of the Legal and Factual Issues in the Case
            Support a 25% Fee .............................................................................. 9

        4.    The Skill of the Lawyers for Both Plaintiffs and Defendants
            Supports a 25% Fee ........................................................................... 11

        5.    The Time and Labor Involved Supports a 25% Fee ....................... 11

        6.    The Reaction of the Class Supports a 25% Fee .............................. 13

        7.    The Comparison Between the Requested Attorney Fee Percentage
            and Percentages Awarded in Similar Cases Supports a 25% Fee.... 13

    C.    The Approval of Plaintiffs Also Supports the Requested Fee ................... 14

    D.    If the Court Performs a Cross-Check, Lead Counsel's Fee Request Is
        Reasonable Under the Lodestar Method ..................................................... 16

III.  PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE
      REASONABLE AND SHOULD BE APPROVED ............................................... 18

IV.   PLAINTIFFS OREGON AND MR. VILDOSOLA SHOULD BE
      AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER
      15 U.S.C. §78U-4(A)(4) .................................................................................... 19

V.    CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*In re AT & T Corp.*,
    455 F.3d 160 (3d Cir. 2006) ........................................................................ 18

*In re BankAmerica Corp. Sec. Litig.*,
    228 F. Supp. 2d 1061 (E.D. Mo. 2002) ............................................... 18, 21

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
    2017 WL 2588950 (D. Minn. June 14, 2017) ............................... 7, 9, 10, 11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ........................................................................ 15

*In re Charter Commc'ns, Inc., Sec. Litig.*,
    2005 WL 4045741 (E.D. Mo. June 30, 2005) ............................................ 21

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
    2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ...................................... 13, 14

*In re Comverse Tech., Inc. Sec. Litig.*,
    2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................ 15

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ...................................................................... 16

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
    2008 WL 682174 (D. Minn. Mar. 7, 2008) ................................................ 17

*In re Infospace, Inc.*,
    330 F. Supp. 2d 1203 (W.D. Wash. 2004) .................................................. 18

*Johnson v. Georgia Highway Express*,
    488 F.2d 714 (5th Cir. 1974) ........................................................................ 6

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241 (8th Cir. 1996) .......................................................................... 4

*Jorstad v. IDS Realty Tr.*,
    643 F.2d 1305 (8th Cir. 1981) .................................................................... 16

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) ................................................................. 6, 15

*Khoday v. Symantec Corp.*,
   2016 WL 1637039 (D. Minn. Apr. 5, 2016) .......................................................*passim*

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................ 4, 16

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ......................................................................... 16

*Tussey v. ABB, Inc.*,
   2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ......................................................... 18

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) .................................................................... 5

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................................................... 15

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................*passim*

*Yarrington v. Solvay Pharm., Inc.*,
   697 F. Supp. 2d 1057 (D. Minn. 2010) ........................................................ 5, 7, 16, 17

## STATUTES

15 U.S.C. § 78u–4(a)(4) ...................................................................... 20

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(h) ......................................................................... 4

H.R. Conf. Rep. No. 104-3692 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ................. 14

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class
   Action Litigation: 2020 Full-Year Review*, NERA Economic Consulting
   (Jan. 25, 2021) ............................................................................ 13

*Report of the Third Circuit Task Force, Selection of Class Counsel*,
   208 F.R.D. 340 (2002) .................................................................... 17

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Stoll Stoll Berne Lokting & Shlachter P.C. ("Stoll Berne") (collectively, "Lead Counsel") respectfully submit this memorandum of law in support of their motion for (i) an award of attorneys' fees to Plaintiffs' Counsel[1] in the amount of 25% of the Settlement Fund; (iii) payment of Plaintiffs' Counsel's reasonable litigation expenses; and (iii) reimbursement of the reasonable expenses incurred by Lead Plaintiff and Class Representative the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund ("Oregon") and named plaintiff and Class Representative Fernando Alberto Vildosola ("Vildosola"), pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).[2]

---

[1] "Plaintiffs' Counsel" consist of Lead Counsel, Bernstein Litowitz and Stoll Berne; Liaison Counsel, Lockridge Grindal Nauen P.L.L.P. ("Lockridge"); Nelson, Zentner, Sartor & Snellings, LLC ("NZSS"), which served as liaison counsel for Lead Plaintiff while the Action was pending in the United States District Court for the Western District of Louisiana; and Motley Rice LLC ("Motley Rice"), additional counsel for Plaintiffs. Only Bernstein Litowitz, Stoll Berne, Lockridge, NZSS, and Motley Rice will be paid from the attorneys' fees awarded by the Court.

[2] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated January 29, 2021 (the "Stipulation") (ECF No. 354-1) or in the Joint Declaration of Michael D. Blatchley and Keil M. Mueller in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶__" in this memorandum refer to paragraphs in the Joint Declaration and citations to "Ex. __" refer to exhibits in the Joint Declaration. Also, references to "ECF No. __" are to the docket in *Craig v. CenturyLink, Inc.,* No. 18-cv-296 (MJD/KMM), unless otherwise specified.

## I.    INTRODUCTION

After three-and-a-half years of hard-fought litigation, during which Plaintiffs' Counsel advanced all litigation expenses and put more than 39,000 hours into prosecuting this case on a contingency-fee basis, Lead Counsel successfully reached a settlement agreement with Defendants that provides for a cash payment of $55 million for the Class. As further detailed in the Joint Declaration,[3] this exceptional result was achieved through Lead Counsel's extensive efforts, including conducting an extensive pre-suit investigation, overcoming Defendants' motion to dismiss, engaging in extensive discovery (including litigating numerous discovery motions and obtaining and analyzing 2.5 million pages of documents from Defendants and third parties), successfully moving to certify a class of investors, defeating Defendants' attempt to appeal the Court's Order granting class certification, and securing a substantial settlement for the Class—all of which was performed while Lead Counsel faced significant risks, at every stage, that the claims here would ultimately prove unsuccessful.

For their efforts on behalf of the Class, Lead Counsel seek a percentage fee award of 25% of the Settlement Fund.  This is on the low end of the typical award in common fund cases in this District, and it is reasonable given the result achieved and the substantial work Lead Counsel performed, particularly in light of the significant risks in the case.

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for detailed descriptions of, among other things: the nature of the claims asserted in the Action (¶¶13-14); the history, prosecution, and settlement of the Action (¶¶15-92); the risks associated with the prosecution of Action (¶¶94-132); and the services Plaintiffs' Counsel provided for the benefit of the Class (¶¶17-92).

As is set forth below, the $55 million settlement is an impressive recovery, and is in fact more than the total **combined** amount recovered in the private and government actions brought on behalf of consumers nationwide in connection with CenturyLink's alleged billing misconduct.  It is one of the 10 largest securities settlements in the history of the District of Minnesota and, on a percentage basis, it is more than twice as large as the median recovery for securities cases with similar damages.  In short, the resolution here was a significant success for the Class.  Moreover, here, given the enormous scope of Lead Counsel's efforts, the 25% requested fee will ultimately result in a **negative** lodestar multiple (i.e., a multiple below 1) of approximately 0.77 for Plaintiffs' Counsel—meaning that Lead Counsel will be compensated less, on a per-hour basis, than the prevailing rate for the type of sophisticated legal work they performed.

Further, the application for fees and expenses has the full support of Plaintiffs.  *See* Declaration of Brian de Haan on behalf of Oregon (Ex. 2) ("de Haan Declaration" or "de Haan Decl.") ¶¶8-9; Declaration of Fernando Alberto Vildosola (Ex. 3) ("Vildosola Decl.") ¶¶6-7.  Both Oregon, an experienced, sophisticated institutional investor that has achieved numerous securities class action recoveries under the PSLRA, and Mr. Vildosola, an experienced investor who suffered a substantial loss on the 7.60% Notes, have endorsed Lead Counsel's fee request as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation.

Lead Counsel also request reimbursement of reasonable litigation expenses incurred by Plaintiffs' Counsel in this litigation.  Finally, Lead Counsel request reimbursement of Oregon's and Mr. Vildosola's expenses, pursuant to the PSLRA.

As is set forth more fully below, Lead Counsel's fee and expense requests are eminently reasonable, and they should be granted.

## II.     THE REQUESTED ATTORNEY FEES ARE REASONABLE

### A.     The Requested Fees Are Reasonable Under Rule 23

"An award of attorney fees is committed to the sound discretion of the district court." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); Fed. R. Civ. P. 23(h)). "Courts utilize two main approaches to analyzing a request for attorney fees." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* at 244-45.

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *Xcel Energy, Inc.,* 364 F. Supp. 2d at 991 (quoting *Petrovic*, 200 F.3d at 1157); *see also id.* at 991 & n.6 (noting that "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees in these cases" and that "[f]or purposes of the attorney fee award in the Securities Action, the court notes that the PSLRA incorporates the common fund percentage method"). As one court in this District

noted, "courts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund[.]"  *Xcel Energy, Inc.,* 364 F. Supp. 2d at 998 (collecting cases); *see, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of common fund in fees); *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *11 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017) ("This Court finds that an attorney fee award of 33 1/3 percent of the settlement fund is within the range established by other cases in this District."); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (awarding 33% of settlement fund in attorney fees).

An award of 25% of the Settlement Fund is appropriate here under the "well established" percentage method typically used by this Court to analyze fees.  Lead Counsel created a Settlement Fund of $55 million, a significant benefit to the Class.  And Lead Counsel's request for 25% of the Settlement Fund is on the low end of the typical award in this Court and in the Eighth Circuit, as recognized in *Xcel Energy, Inc.* and other cases. Furthermore, as discussed below, a 25% fee is eminently reasonable in light of several factors, including the strength of the result obtained, the volume and quality of Plaintiffs' Counsel's work, the significant risks Plaintiffs' Counsel undertook in putting forth those efforts, and fee awards in comparable cases.

Although the fee here is structured as a percentage of the recovery, it is also eminently reasonable under the principles animating the lodestar methodology.  As is set forth in more detail in the Joint Declaration and discussed below, Plaintiffs' Counsel

expended a total of over 39,000 hours prosecuting this action, including in connection with obtaining transfer of this case to this Court, defeating Defendants' motion to dismiss, conducting discovery, and successfully obtaining class certification and defeating Defendants' Rule 23(f) petition. *See* ¶¶156-61. Plaintiffs' Counsel's total lodestar is $17,923,589.75. Therefore, the requested fee here amounts to a negative lodestar multiple, meaning that, for their substantial efforts, Plaintiffs' Counsel will be compensated at ***less than*** the going rate for similar non-contingent work.

**B.    The Requested Fees Are Reasonable Under the *Johnson* Factors Typically Considered by This Court**

In the Eighth Circuit, courts may consider any or all of the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-20 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989), to determine whether a requested fee award is reasonable. *See Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (noting that district courts in the Eighth Circuit may rely on *Johnson* factors when awarding fees based either on the percentage-of-benefit method or the lodestar method).

In numerous cases, including securities class actions, the District of Minnesota has applied the percentage methodology and considered the following seven *Johnson* factors in awarding attorney fees:

> (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel were exposed, (3) the difficulty and novelty of the legal and factual issues in the case, including whether plaintiffs were assisted by a relevant governmental investigation, (4) the skill of the lawyers, both plaintiffs and defendants, (5) the time and labor involved, including the efficiency in handling the case, (6) the reaction of the class and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases[.]

*Xcel Energy, Inc.*, 364 F. Supp. 2d at 993 (class action involving securities claims); *see also Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 WL 2588950, at *1 (D. Minn. June 14, 2017) (securities class action); *Khoday*, 2016 WL 1637039, at *9 (consumer class action); *Yarrington*, 697 F. Supp. 2d at 1062 (consumer class action). As discussed below, these factors—as well as the negative lodestar multiplier—support a 25% fee here.

### 1.    The Benefit Conferred on the Class Supports a 25% Fee

There can be little doubt that the $55 million recovery on behalf of the Class is an impressive result. *See, e.g.*, *Tile Shop*, 2017 WL 2588950, at *2 (recognizing substantial benefit of $9.5 million cash settlement); *Khoday*, 2016 WL 1637039, at *9. As set forth in Plaintiffs' motion for preliminary approval of the settlement, which the Court granted on March 18, 2021, the settlement ranks among the largest PSLRA settlements ever in the District of Minnesota. ECF No. 353 ("Preliminary Approval Motion") at 18. The $55 million recovery also compares favorably to settlements obtained in comparable cases, and is larger than the recoveries in the parallel state Attorneys General investigations and the companion consumer class actions **combined**. *Id.* The $55 million settlement also represents a substantial portion of investors' realistically recoverable damages under Plaintiffs' expert's damages estimates, and in fact is well over twice the median recovery in securities class actions this size even under Plaintiffs' best-case damages estimates. *Id.* at 18-19. This substantial benefit to the Class supports a 25% fee award in this case.

2.    **The Risk to which Lead Counsel Were Exposed Supports a 25% Fee**

Plaintiffs' Counsel have not received any compensation to date, assuming entirely the risk of no recovery while expending significant attorney time and advancing considerable costs. At every stage of prosecuting this case, Plaintiffs' Counsel faced substantial, case-ending risks and, had any materialized, Plaintiffs' Counsel would have received no fee at all. Despite Lead Counsel's extensive investigation, victory at the motion to dismiss stage was anything but guaranteed. Moreover, after denial of that motion, significant additional risks remained. Most immediately, class certification posed potential case-ending risk, particularly in light of Defendants' vigorous arguments regarding price impact and Plaintiffs' damages model, which, if accepted, could have precluded both certification of the class and any recovery whatsoever.

Even with the class certified, Plaintiffs faced substantial risks. As set forth in detail in the Joint Declaration (*see* ¶¶93-132), Plaintiffs would have had to "pitch a perfect game" at summary judgment and trial by proving that Defendants' statements about CenturyLink's sales and billing practices and the Company's financial results were materially false and misleading and made with scienter, and that they caused investors' losses—and then prove the quantum of damages. *See* ¶¶105-32; *Xcel Energy, Inc.*, 364 F. Supp. 2d at 994 ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."). These risks were all the more salient given that Defendants had asserted more than 40 affirmative defenses. ¶32; *Xcel*, 364 F. Supp. 2d at 995 ("These defenses, if successful, would have drastically reduced or completely

eliminated the Class' ability to obtain any recovery in this case."). And even if Plaintiffs had succeeded at summary judgment and trial, they faced the risk of an appeal delaying recovery or even eliminating it entirely. ¶¶130-32.

In light of Lead Counsel's contingency-fee arrangement, these and other factors presented a significant risk that Lead Counsel would receive no compensation despite their substantial efforts in the case. This risk further justifies Lead Counsel's fee request.

### 3.    The Difficulty of the Legal and Factual Issues in the Case Support a 25% Fee

In general, "[s]ecurities claims proceeding as a class action present complex and novel issues, and successfully prosecuting these types of actions has become more difficult with the adoption of the Private Securities Litigation Reform Act." *Tile Shop*, 2017 WL 2588950, at *2. This case involved numerous difficult legal and factual issues, including merits issues of falsity, materiality, scienter, loss causation, and damages, as well as cutting-edge class certification issues. ¶¶105-129. Among other things, this case involved difficult factual issues in connection with showing that the alleged misconduct at issue was systemic and senior management-driven and, relatedly, that the Individual Defendants themselves orchestrated, encouraged, or approved the alleged improper sales and billing practices. ¶¶115-20. In addition, there were significant complexities to proving loss causation in this case, including challenges related to the degree of artificial inflation in CenturyLink common stock and the 7.60% Notes at various points during the Class Period, and to whether alleged sales and billing misconduct was already known to the market. ¶¶113, 122-26. And, as the Court is well aware, class certification here involved extremely

complex questions—such as the viability and application of the price impact doctrine—that remain the subject of vigorous debates before the Supreme Court and Appeals courts around the country. ¶¶94-101. At summary judgment and trial, the resolution of all of these types of issues likely would have come down to an inherently unpredictable and fiercely disputed "battle of the experts." ¶¶113, 123-29.

The recovery in this case is particularly impressive given that the case lacks several strong facts that often support liability (and large settlement valuations) and provide a roadmap for proving fraud, such as suspect insider trading, a corporate restatement, or a companion SEC or DOJ investigation. *See Xcel Energy*, Inc., 364 F. Supp. 2d at 995 ("The case was also made more difficult because it had none of the usual indicia of securities fraud, such as accounting improprieties, a restatement of financials, any insider trading, or an investigation by the SEC into the primary allegations of securities fraud [in] this case."). In fact, a special committee of CenturyLink's Board of Directors commissioned an independent investigation, conducted by O'Melveny & Myers LLP, which specifically cleared CenturyLink's senior management of knowledge of the alleged fraud and absolved the Company as a whole of systemic sales and billing misconduct. ¶¶109-13, 126. Against this backdrop, the result—which, as noted above, represents more than twice the median recovery in securities cases with similar damages on a percentage basis—is impressive. ¶133.

These difficult legal and factual issues weigh in favor of the reasonableness of the fee, particularly because "[p]rior to settlement, [Lead] Counsel survived a motion to dismiss, engaged in intensive fact and expert discovery, and successfully achieved

nationwide class certification comprised of two different classes." *See Tile Shop*, 2017 WL 2588950, at *2.

### 4.    The Skill of the Lawyers for Both Plaintiffs and Defendants Supports a 25% Fee

As is set forth in more detail in the Joint Declaration and the concurrently-filed Declaration of Layn R. Phillips (Ex. 1) ("Phillips Decl."), both sides here retained counsel with significant experience and expertise in securities class actions, who litigated aggressively and effectively from the very start of the case, and who reached a hard-fought resolution. *See* ¶¶16-92, 162-69; Phillips Decl. ¶10. This further supports the reasonableness of the 25% fee. *See Tile Shop*, 2017 WL 2588950, at *3.

### 5.    The Time and Labor Involved Supports a 25% Fee

As noted above and as described in more detail in the Joint Declaration (*see* ¶¶15-85), this case has been heavily litigated since its inception in June 2017, and has involved complex procedural issues including consolidation, lead plaintiff appointment, multi-district litigation, and class certification. Lead Counsel expended significant efforts at each of these stages, against Defendants' vigorous opposition, in order to obtain the best results possible for Plaintiffs and the Class, and secured multiple victories throughout the litigation. To start, Lead Counsel spent significant time ensuring that Oregon was appointed Lead Plaintiff and moving the pretrial proceedings to the District of Minnesota. ¶¶17-21. In addition, Lead Counsel spent hundreds of hours investigating and drafting the Complaint and opposing Defendants' motion to dismiss. ¶¶22-32. As noted above, this was particularly challenging given the absence of typical "indicia of securities fraud"— such as a restatement or a parallel SEC investigation. ¶¶103-04. The substantial factual

development reflected in the Complaint and the strong arguments Lead Counsel marshalled in Oregon's motion to dismiss opposition and at oral argument were key to overcoming Defendants' motion.

Lead Counsel's skilled work in the highly contentious discovery process—which was closely supervised by Magistrate Judge Menendez—eventually resulted in extensive fact discovery, which involved Plaintiffs' analysis of over 2.5 million pages of documents obtained from Defendants and third parties, testimony from 80 witnesses deposed in the related Minnesota Attorney General and consumer class action litigations, and extensive written discovery.  ¶¶33-56.

In addition, Plaintiffs successfully moved for class certification, overcoming Defendants' vigorous challenges relating to (among other things) predominance of class-wide issues under Supreme Court and Eighth Circuit precedents, the length of the Class Period, and the named Plaintiffs' fitness to serve as class representatives.  ¶¶73-81.  In connection with class certification, Lead Counsel defended Oregon's and Vildosola's depositions, as well as two depositions of Plaintiffs' economic expert, Dr. Michael Hartzmark. ¶¶75-78.  Lead Counsel also worked closely with Dr. Hartzmark to produce two lengthy expert reports, took an important and successful deposition of Defendants' expert, and conducted a successful oral argument on the motion.  ¶¶79-80.

After oral argument, the Court certified the Class and appointed Oregon and Vildosola as Class Representatives.  Defendants immediately filed a petition seeking Rule 23(f) appeal before the Eighth Circuit. ¶82.  Lead Counsel opposed the Rule 23(f) petition, which the Eighth Circuit ultimately denied.  ¶¶83-84.

In sum, a significant amount of time and work went into Lead Counsel's investigation and prosecution of this case, supporting Lead Counsel's request for a 25% fee.

### 6.    The Reaction of the Class Supports a 25% Fee

The reaction of the Class to date also supports the requested fee. Through June 14, 2021, the Claims Administrator, Epiq, has disseminated more than 950,000 copies of the Notice to potential Class Members or nominees informing them, among other things, that Lead Counsel intended apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund and for payment of expenses not to exceed $2 million. ¶¶136-39, 177. The deadline for objecting to the fee and expense application is June 29, 2021. To date, there have been no objections to the request for attorneys' fees or litigation expenses. ¶140.

### 7.    The Comparison Between the Requested Attorney Fee Percentage and Percentages Awarded in Similar Cases Supports a 25% Fee

A review of the fee awards in similar securities class actions confirms that an attorney fee award of 25% of a $55 million settlement fund is eminently reasonable here. First, a 25% fee is in fact at the *low* end of the range of fees typically awarded in this District, where "courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions." *Khoday*, 2016 WL 1637039, at *11 (awarding an attorney fee award of 33.33% of a $60 million settlement fund).

Additionally, a general review of fees over the last ten years in securities class actions is in accord. A 2020 report from NERA Economic Consulting states that, from 2011-2020, 25% was the median fee percentage for securities class action settlements

between $25 million and $100 million.  Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2021) (Fig. 19) (Ex. 9) at 23; *see City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *2-3 (S.D.N.Y. Dec. 17, 2020) (citing NERA reports as authority).

*     *     *

In sum, each of the *Johnson* factors support the reasonableness of a 25% fee in this case.

### C.    The Approval of Plaintiffs Also Supports the Requested Fee

Lead Plaintiff and Class Representative Oregon, which was actively involved in the prosecution, mediation, and settlement of this Action, has carefully considered and approved the requested fee.  *See* de Haan Decl. ¶¶4, 9.  Oregon is a paradigmatic example of the type of sophisticated and financially interested investor that Congress envisioned serving as a fiduciary for the class when it enacted the PSLRA.  Indeed, the PSLRA was intended to encourage institutional investors like Oregon to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731.  Congress believed that institutions like Oregon would be in the best position to monitor the ongoing prosecution of the litigation and to assess the reasonableness of counsel's fee request.

Named Plaintiff and Class Representative Mr. Vildosola also fully supports the requested fee. Mr. Vildosola is an experienced businessman and is employed in numerous capacities, including as a consultant and advisor for Viga Energy Partners, Axios Group LLC, and Vildosola Consulting, a consulting firm that he owns and operates. *See* Vildosola Decl. ¶9. Based on his active involvement in the prosecution and settlement of this Action, Mr. Vildosola has carefully considered the requested fee and believes that it is fair and reasonable in light of the work Plaintiffs' Counsel performed on behalf of the Class.

Both Plaintiffs have played an active role in the Action and closely supervised the work of Plaintiffs' Counsel. *See* de Haan Decl. ¶4; Vildosola Decl. ¶3. Accordingly, the endorsement of the fee request by Plaintiffs as fair and reasonable supports its approval. *See In re Converse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) ("The fact that this fee request is the product of arm's length negotiation between Lead Counsel and the lead plaintiff is significant."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"). Furthermore, the requested fee is consistent with the fee permitted under the retainer agreement entered into between Oregon and Lead Counsel at the outset of the litigation. de Haan Decl. ¶8. As a result, the fee request is entitled to a "presumption of reasonableness." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001).

### D.    If the Court Performs a Cross-Check, Lead Counsel's Fee Request Is Reasonable Under the Lodestar Method

Courts applying the percentage of the benefit approach may "verif[y] the reasonableness of its award by cross-checking it against the lodestar method." *Keil*, 862 F.3d at 701.  The lodestar method involves "totaling the hours worked, multiplying them by a typical hourly fee, and then multiplying that amount by a 'multiplier' that takes into account 'the contingent nature of success, and . . . the quality of the attorney's work.'" *Khoday*, 2016 WL 1637039, at *11 (quoting *Petrovic*, 200 F.3d at 1157; *Jorstad v. IDS Realty Tr.*, 643 F.2d 1305, 1312-14 (8th Cir. 1981)) (noting that "[m]ultipliers can range from two to five").

The Eighth Circuit has identified four factors in setting a reasonable lodestar fee: "(1) the number of hours counsel expended; (2) counsel's 'reasonable hourly rate'; (3) the contingent nature of success; and (4) the quality of the attorneys' work." *Yarrington*, 697 F. Supp. 2d at 1065 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975)).  "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case. The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases." *Xcel Energy, Inc.*, 364 F. Supp. 2d at 999 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005), *as amended* (Feb. 25, 2005)).  As stated in *In re Rite Aid Corp. Securities Litigation*:

> The 2002 Third Circuit Task Force On Selection of Class Counsel supports this view. It states that the lodestar cross-check is "not a full-blown lodestar

inquiry" and a court "should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction." *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002). The cross-check would "enable the court to make a judgment as to whether the percentage appears too high or low given the time required to handle the case." *Id.*

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 307 n. 16.

Because of the significant challenges in this case, Plaintiffs' Counsel were required to invest significant time to achieve the litigation victories described above. This more than merits a 25% fee; indeed, given Plaintiffs Counsel's extensive efforts, a 25% fee will amount to a ***negative*** lodestar multiplier here of approximately 0.77 for Plaintiffs' Counsel—meaning that Lead Counsel will be compensated at less than the going hourly rate for the sophisticated legal services they provided, notwithstanding the contingent nature of this case and the quality of Lead Counsel's work. *See Yarrington*, 697 F. Supp. 2d at 1067 (describing a 2.26 multiplier as "modest" and "reasonable, given the risks of continued litigation, the high-quality work performed, and the substantial benefit to the Class").[4] Furthermore, even taking into account just the lodestar for the Lead Counsel firms, Bernstein Litowitz and Stoll Berne, the 25% fee requested still results in a negative lodestar multiplier of approximately 0.84.

---

[4] The details of the lodestar calculation, including the hours Plaintiffs' Counsel expended and Plaintiffs' Counsel's reasonable hourly rates are set forth in the concurrently-filed Blatchley Declaration, Mueller Declaration, Fishbein Declaration, Levin Declaration, and Snellings Declaration, which are attached as Exhibits 5A-5E to the Joint Declaration.

## III. PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

"Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation." *Khoday*, 2016 WL 1637039, at *12. "Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client." *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008) (quoting *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004)).

"Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d)." *Tussey v. ABB, Inc.*, 2019 WL 3859763, at *5 (W.D. Mo. Aug. 16, 2019). Permissible categories of expenses include but are not limited to "photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel." *Xcel Energy, Inc.* 364 F. Supp. 2d at 999-1000. Courts routinely approve costs and expenses of several million dollars or more. *See, e.g.*, *In re AT & T Corp.*, 455 F.3d 160, 163 (3d Cir. 2006) (approving reimbursement of $5,465,996.79 in costs and expenses); *Tussey*, 2019 WL 3859763, at *5 (approving reimbursement of costs and expenses totaling $2,256,805); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066-67 (E.D. Mo. 2002), *aff'd*, 350 F.3d 747 (8th Cir. 2003) (approving reimbursement of $5,448,530.96 in costs and expenses).

As set forth in detail in the Joint Declaration, Lead Counsel request payment of $878,413.33 for litigation expenses incurred by Plaintiffs' Counsel to prosecute this case. ¶179. These expenses include, among others, expert fees, on-line research, court reporting and transcripts, copying, postage, and travel expenses. ¶¶179-89. The largest category of expense was for the retention of Plaintiffs' experts, which came to $534,996.41, or approximately 61% of the total litigation expenses in incurred by Plaintiffs' Counsel. ¶182. In addition, the costs for online research, in the amount of $197,597.46, represented 22% of the total amount of expenses. ¶183. A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel is set forth in Exhibit 6 to the Joint Declaration.

The Notice informed potential Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $2,000,000. The total amount of expenses, including requested reimbursements to Plaintiffs, is $940,552.02, an amount well below the amount listed in the Notice. To date, there has been no objection to the request for expenses. ¶188.

## IV.  PLAINTIFFS OREGON AND MR. VILDOSOLA SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78U-4(A)(4)

"The PSLRA permits the court to order an award to lead plaintiffs for the services they rendered in a securities class action." *Xcel Energy, Inc.*, 364 F. Supp. 2d at 1000 (citing 15 U.S.C. § 78u–4(a)(4) ("Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.")). "In granting compensatory awards to the representative plaintiff in PSLRA class actions,

courts consider the circumstances, including the personal risks incurred by the plaintiff in becoming a lead plaintiff, the time and effort expended by that plaintiff in prosecuting the litigation, any other burdens sustained by that plaintiff in lending himself or herself to prosecuting the claim, and the ultimate recovery." *Id.* Courts also consider the "important policy role" representative plaintiffs play in enforcing federal securities laws, without whom "many violations of law might go unprosecuted." *Id.*

Pursuant to the PSLRA, Lead Counsel request reimbursement of $40,763.69 for Oregon and $21,375.00 for Mr. Vildosola as Class Representatives. As detailed in the de Haan Declaration, Oregon seeks an award based on the time dedicated by Oregon employees in the Department of Justice and the Treasury Department in furthering and supervising this litigation, plus reimbursement for travel expenses incurred by Brian de Haan from Oregon DOJ for his travel to the February 2020 mediation session, and an out-of-pocket expense to obtain an independent assessment of Lead Counsel's proposed fee request. de Haan Decl. ¶¶13-15. Similarly, Mr. Vildosola seeks an award based on the amount of time he devoted to the representation of the Class in the Action. Vildosola Decl. ¶¶8-9.

Each of the Plaintiffs took an active role in the litigation and has been fully committed to pursuing the claims on behalf of the Class since they became involved in the case. During the course of the litigation, Plaintiffs, among other things: communicated with Lead Counsel regarding case strategy and developments, reviewed pleadings and briefs filed in the Action, responded to discovery requests, consulted with Lead Counsel regarding settlement negotiations, and evaluated and approved the proposed Settlement.

*See* de Haan Decl. ¶4; Vildosola Decl. ¶9.  In addition, Mr. Vildosola and two representatives of Oregon were deposed in connection with the class certification motion, and Mr. de Haan attended the February 2020 mediation before Judge Phillips.  de Haan Decl. ¶¶4, 5; Vildosola Decl. ¶3.  These efforts required representatives of Oregon and Mr. Vildosola to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties.

Furthermore, the requests for reimbursement of Plaintiffs' costs and expenses are in line with other requests for reimbursement granted by courts in this Circuit.  *See, e.g.*, *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *24-25 (E.D. Mo. June 30, 2005) (awarding $26,625 to one lead plaintiff with hourly rate of $300); *Xcel Energy, Inc.* 364 F. Supp. 2d at 1000 (awarding lead plaintiff group $100,000 in expenses); *BankAmerica Corp.*, 228 F. Supp. 2d at 1067 (approving reimbursement of $137,217.22 in lead plaintiff expenses).

## V.    CONCLUSION

For the reasons detailed above, Lead Counsel request that the Court approve their request for an award of 25% of the Settlement Fund and payment of Plaintiffs' Counsel's litigation expenses, as well as expense reimbursements for Plaintiffs Oregon and Mr. Vildosola pursuant to the PSLRA.

Dated: June 15, 2021              Respectfully submitted,

                                  */s/ Michael D. Blatchley*
                                  John C. Browne, NYS Bar No. 3922747
                                  Michael D. Blatchley, NYS Bar No. 4747424
                                  Michael M. Mathai, NYS Bar No. 5166319

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com
michael.mathai@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydia Anderson-Dana, OSB No. 166167
Megan K. Houlihan, OSB No. 161273
**STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com
landersondana@stollberne.com
mhoulihan@stollberne.com

*Special Assistant Attorneys General and Counsel
for Lead Plaintiff the State of Oregon by and
through the Oregon State Treasurer and the
Oregon Public Employee Retirement Board, on
behalf of the Oregon Public Employee Retirement
Fund and Fernando Alberto Vildosola, as trustee
for the AUFV Trust U/A/D 02/19/2009, and Lead
Counsel for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044

Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund and Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009, and Lead Counsel for the Class*