# Exhibit 5

# EXHIBIT 5

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

## SUMMARY OF PLAINTIFFS' COUNSEL'S
## LODESTAR AND EXPENSES

| Ex. | FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|---|
| 5A | Bernstein Litowitz Berger & Grossmann LLP | 24,921.00 | $12,132,947.50 | $861,966.96 |
| 5B | Stoll Stoll Berne Lokting & Shlachter P.C. | 10,560.70 | $4,263,365.25 | $13,213.65 |
| 5C | Lockridge Grindal Nauen P.L.L.P. | 446.15 | $385,783.75 | $2,161.80 |
| 5D | Motley Rice LLC | 3,008.95 | $1,104,218.25 | $1,070.92 |
| 5E | Nelson, Zentner, Sartor & Snellings, LLC | 106.50 | $37,275.00 | ------ |
| | **TOTAL:** | **39,043.30** | **$17,923,589.75** | **$878,413.33** |

# Exhibit 5A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION | MDL No. 17-2795 (MJD/KMM) |
| This Document Relates to: Civil Action No. 18-296 (MJD/KMM) | |

---

**DECLARATION OF MICHAEL D. BLATCHLEY**
**IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND LITIGATION EXPENSES, FILED ON BEHALF OF**
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

I, Michael D. Blatchley, hereby declare under penalty of perjury as follows:

1.     I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz").  My firm serves as co-Lead Counsel for Plaintiffs and the Class in the above-captioned action (the "Action").  I submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for payment of expenses incurred by my firm in connection with the Action.  I have personal knowledge of the matters set forth herein.[1]

2.     My firm, as Court-appointed Lead Counsel in the Action, was involved in all aspects of the prosecution and resolution of the Action, as set forth in the Joint Declaration of Michael D. Blatchley and Keil Mueller in Support of (I) Plaintiffs' Motion for Final

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated January 29, 2021, and previously filed with the Court.  *See* ECF No. 354-1.

Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's

Motion for an Award of Attorneys' Fees and Litigation Expenses, filed herewith.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating

the amount of time spent by each Bernstein Litowitz attorney and professional support staff

employee involved in this Action who devoted ten or more hours to the Action from its

inception through and including November 19, 2020 and the lodestar calculation for those

individuals based on my firm's current hourly rates.  For personnel who are no longer

employed by my firm, the lodestar calculation is based upon the hourly rates for such

personnel in his or her final year of employment by my firm.  The schedule was prepared

from contemporaneous daily time records regularly prepared and maintained by Bernstein

Litowitz.

4.      As the partner responsible for supervising my firm's work on this case, I

reviewed these time and expense records to prepare this declaration.  The purpose of this

review was to confirm both the accuracy of the time entries and expenses and the necessity

for, and reasonableness of, the time and expenses committed to the litigation.  As a result

of this review, reductions were made in the exercise of counsel's judgment.  In addition,

all time expended in preparing this application for fees and expenses has been excluded.

5.      Following this review and the adjustments made, I believe that the time

reflected in the firm's lodestar calculation and the expenses for which payment is sought

as stated in this declaration are reasonable in amount and were necessary for the effective

and efficient prosecution and resolution of the litigation.  In addition, based on my

experience in similar litigation, the expenses are all of a type that would normally be billed to a fee-paying client in the private legal marketplace.

6.     The hourly rates for the Bernstein Litowitz attorneys and professional support staff employees included in Exhibit 1 are the same as, or comparable to, the rates submitted by my firm and accepted by courts for lodestar cross-checks in other securities class action litigation fee applications.

7.     My firm's rates are set based on periodic analysis of rates used by firms performing comparable work and that have been approved by courts.   Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

8.     The total number of hours expended on this Action by my firm from its inception through and including November 19, 2020, is 24,921.00 hours.  The total lodestar for my firm for that period is $12,132,947.50.  My firm's lodestar figures are based upon the firm's hourly rates, which do not include costs for expense items.

9.     None of the attorneys listed in Exhibit 1 to this declaration and included in my firm's lodestar for the Action are (or were) "contract attorneys."  All attorneys and employees of the firm listed in the attached schedule work (or worked) at Bernstein Litowitz's offices at 1251 Avenue of the Americas in New York, New York and, like every other attorney and employee of Bernstein Litowitz, work (or worked) remotely following the onset of the COVID-19 pandemic.  Except for the partners listed in the attached

3

schedule, all of the other attorneys and professional support staff listed in the schedule are (or were) W-2 employees of the firm and were not independent contractors issued Form 1099s. Thus, the firm pays FICA and Medicare taxes on their behalf, along with state and federal unemployment taxes. These employees are (or were) fully supervised by the firm's partners and have (or had) access to secretarial, paralegal, and information technology support. Bernstein Litowitz also assigns a firm email address to each attorney or other employee it employs, including those listed.

10. As detailed in Exhibit 2, my firm is seeking payment for a total of $861,966.96 in expenses incurred in connection with the prosecution of this Action from its inception through and including June 14, 2021. The following is additional information regarding certain of the expenses stated on Exhibit 2 to this declaration:

(a) **Online Legal and Factual Research** ($196,473.27). The charges reflected are for out-of-pocket payments to the vendors such as Westlaw, Thomson Reuters, and PACER for research done in connection with this litigation. These resources were used to obtain access to court filings, to conduct legal research and cite-checking of briefs, and to obtain factual information regarding the claims asserted through access to various financial databases and other factual databases. These expenses represent the actual expenses incurred by Bernstein Litowitz for use of these services in connection with this litigation. There are no administrative charges included in these figures. Online research is billed to each case based on actual usage at a charge set by the vendor. When Bernstein Litowitz utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated. At the end of each billing

period, Bernstein Litowitz's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.

(b)     **Experts** ($534,996.41).  Lead Counsel consulted with an expert in the field of loss causation and damages during their investigation and the preparation of the amended complaints, and consulted further with the damages expert during the settlement negotiations with Defendants and the development of the proposed Plan of Allocation. Lead Counsel also retained and consulted with an expert in telecommunications industry practices.

(c)     **Document Management/Litigation Support** ($38,028.48).   Bernstein Litowitz seeks $38,028.48 for the costs associated with establishing and maintaining the internal document database that was used to process and review documents produced by Defendants and non-parties in this Action.  Bernstein Litowitz requests payment of $3 per gigabyte of data per month and $15 per user to recover the costs associated with maintaining its document database management system, which includes the costs to Bernstein Litowitz of necessary software licenses and hardware.  The amount sought includes the costs of maintaining the database through November 19, 2020, the date on which the parties finalized their agreement-in-principle to settle the Action.  Bernstein Litowitz has conducted a review of market rates charged for the similar services performed by third-party document management vendors and found that its rate was at least 80% below the market rates charged by these vendors, resulting in a savings to the Class.

(d)     **Mediation** ($18,685.00).  This represents Bernstein Litowitz's share of fees paid to Phillips ADRs for the services of the mediator, former United States District Judge

Layn R. Phillips. Judge Phillips conducted an in-person mediation session on February 4, 2020 and issued the mediator's recommendation that lead to the settlement of the Action.

(e)    **Internal Copying & Printing** ($1,855.70). Our firm charges $0.10 per page for in-house copying and for printing of documents.

(f)    **Out-of-Town Travel** ($22,564.68). Bernstein Litowitz has incurred travel expenses for its attorneys to attend hearings and depositions conducted in this case and to attend the mediation session before Judge Phillips in Corona Del Mar, California. The expenses reflected in Exhibit 2 are the expenses actually incurred by my firm or reflect "caps" on travel costs based on the following criteria: (i) airfare is capped at coach rates; (ii) hotel charges per night are capped at $350 for "high cost" locations and $250 for "lower cost" locations, as categorized by IRS guidelines (the relevant cities and how they are categorized are reflected on Exhibit 2); and (iii) meals while traveling are capped at $20 per person for breakfast, $25 per person for lunch, and $50 per person for dinner.

(g)    **Working Meals** ($3,414.87). Out-of-office meals are capped at $25 per person for lunch and $50 per person for dinner and in-office working meals are capped at $20 per person for lunch and $30 per person for dinner.

11.    The expenses incurred in this Action are reflected in the records of my firm, which are regularly prepared and maintained in the ordinary course of business. These records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

12.    With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and the attorneys of the firm who worked on this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed on June 15, 2020

_____/s/ Michael D. Blatchley_____
Michael D. Blatchley

**EXHIBIT 1**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

Inception through and including November 19, 2020

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Max Berger | 35.25 | $1,300 | $45,825.00 |
| Michael Blatchley | 1,881.25 | $900 | $1,693,125.00 |
| John Browne | 275.00 | $1,050 | $288,750.00 |
| Scott Foglietta | 206.50 | $825 | $170,362.50 |
| Avi Josefson | 78.50 | $1,000 | $78,500.00 |
| Gerald Silk | 96.50 | $1,150 | $110,975.00 |
| | | | |
| **Senior Counsel** | | | |
| Richard Gluck | 412.50 | $800 | $330,000.00 |
| | | | |
| **Associates** | | | |
| Amanda Boitano | 363.50 | $400 | $145,400.00 |
| Michael Mathai | 2,988.75 | $625 | $1,867,968.75 |
| Julia Tebor | 462.25 | $575 | $265,793.75 |
| | | | |
| **Staff Attorneys** | | | |
| Alex Dickin | 1,452.75 | $450 | $653,737.50 |
| Matt Mulligan | 1,922.50 | $425 | $817,062.50 |
| | | | |
| **Staff Attorneys** | | | |
| Jade Allamby | 1,464.50 | $375 | $549,187.50 |
| Robert Blauvelt | 2,226.25 | $400 | $890,500.00 |
| Uju Chukwuanu | 241.00 | $375 | $90,375.00 |
| Sakyung Han | 529.25 | $375 | $198,468.75 |
| Scott Horlacher | 2,125.50 | $400 | $850,200.00 |
| Arthur Lee | 230.25 | $400 | $92,100.00 |
| Julius Panell | 1,147.50 | $400 | $459,000.00 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Jeff Powell | 272.00 | $400 | $108,800.00 |
| Jessica Purcell | 1,007.25 | $400 | $402,900.00 |
| Brigitta Spiers | 241.75 | $400 | $96,700.00 |
| | | | |
| **Financial Analysts** | | | |
| Nick DeFilippis | 14.00 | $625 | $8,750.00 |
| Sharon Safran | 17.75 | $335 | $5,946.25 |
| Tanjila Sultana | 49.50 | $425 | $21,037.50 |
| Adam Weinschel | 78.50 | $550 | $43,175.00 |
| | | | |
| **Investigators** | | | |
| Chris Altiery | 122.00 | $255 | $31,110.00 |
| Amy Bitkower | 162.00 | $575 | $93,150.00 |
| Jenna Goldin | 683.75 | $400 | $273,500.00 |
| Joelle Landino | 81.25 | $425 | $34,531.25 |
| Andrew Thompson | 557.50 | $400 | $223,000.00 |
| | | | |
| **Litigation Support** | | | |
| Paul Charlotin | 16.00 | $350 | $5,600.00 |
| Johanna Pitcairn | 19.00 | $400 | $7,600.00 |
| Roberto Santamarina | 194.25 | $400 | $77,700.00 |
| | | | |
| **Managing Clerk** | | | |
| Mahiri Buffong | 138.25 | $375 | $51,843.75 |
| Errol Hall | 64.75 | $310 | $20,072.50 |
| | | | |
| **Paralegals** | | | |
| Jesse Axman | 84.75 | $255 | $21,611.25 |
| Nathan Donlon | 947.00 | $335 | $317,245.00 |
| Matthew Gluck | 206.75 | $350 | $72,362.50 |
| Janielle Lattimore | 41.25 | $350 | $14,437.50 |
| Michelle Leung | 767.25 | $350 | $268,537.50 |
| Matthew Mahady | 177.75 | $350 | $62,212.50 |
| Matthew Molloy | 440.50 | $325 | $143,162.50 |
| Gary Weston | 33.75 | $375 | $12,656.25 |
| Stephanie Yu | 363.00 | $325 | $117,975.00 |
| **TOTALS:** | **24,921.00** | | **$12,132,947.50** |

**EXHIBIT 2**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**EXPENSE REPORT**

Inception through and including June 14, 2021

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | $138.54 |
| Service of Process and Document Retrieval | $11,087.18 |
| On-Line Legal and Factual Research | $196,473.27 |
| Telephone | $4,316.58 |
| Postage & Express Mail | $1,162.23 |
| Local Transportation | $10,943.40 |
| Internal Copying/Printing | $1,855.70 |
| Outside Copying | $606.71 |
| Out of Town Travel* | $22,564.68 |
| Working Meals | $3,414.87 |
| Court Reporting & Transcripts | $17,693.91 |
| Experts | $534,996.41 |
| Mediation Fees | $18,685.00 |
| Document Management/Litigation Support | $38,028.48 |
|  |  |
| **TOTAL:** | **$861,966.96** |

**\*** This includes hotels in the "higher-cost" cities of Newport Beach, CA, Palo Alto, CA, and San Diego, CA, capped at $350 per night, and the "lower-cost" city of Minneapolis, MN, capped at $250 per night.

**EXHIBIT 3**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**FIRM BIOGRAPHY**





Bernstein Litowitz Berger & Grossmann LLP

Attorneys at Law

# Firm Resume

**New York**
1251 Avenue of the Americas
44th Floor
New York, NY 10020
Tel: 212-554-1400
Fax: 212-554-1444

**California**
2121 Avenue of the Stars
Suite 2575
Los Angeles, CA 90067
Tel: 310-819-3470

**Louisiana**
2727 Prytania Street
Suite 14
New Orleans, LA 70130
Tel: 504-899-2339
Fax: 504-899-2342

**Illinois**
875 North Michigan Avenue
Suite 3100
Chicago, IL 60611
Tel: 312-373-3880
Fax: 312-794-7801

**Delaware**
500 Delaware Avenue
Suite 901
Wilmington, DE 19801
Tel: 302-364-3600





TABLE OF CONTENTS

FIRM OVERVIEW ...................................................................................................................1
   More Top Securities Recoveries ...........................................................................................1
   Giving Shareholders a Voice and Changing Business Practices for the Better ....................2
   Advocacy for Victims of Corporate Wrongdoing.................................................................2
PRACTICE AREAS ...................................................................................................................4
   Securities Fraud Litigation....................................................................................................4
   Corporate Governance and Shareholders' Rights .................................................................4
   Employment Discrimination and Civil Rights ......................................................................4
   General Commercial Litigation and Alternative Dispute Resolution ....................................5
   Distressed Debt and Bankruptcy Creditor Negotiation ........................................................5
   Consumer Advocacy.............................................................................................................5
THE COURTS SPEAK ...............................................................................................................6
RECENT ACTIONS & SIGNIFICANT RECOVERIES ............................................................7
   Securities Class Actions .......................................................................................................7
   Corporate Governance and Shareholders' Rights ...............................................................13
   Employment Discrimination and Civil Rights ....................................................................18
CLIENTS AND FEES...............................................................................................................19
IN THE PUBLIC INTEREST ...................................................................................................20
   Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows ..............................20
   Firm sponsorship of Her Justice .........................................................................................20
   The Paul M. Bernstein Memorial Scholarship.....................................................................20
   Firm sponsorship of City Year New York ..........................................................................20
   Max W. Berger Pre-Law Program ......................................................................................20
   New York Says Thank You Foundation...............................................................................20
OUR ATTORNEYS ..................................................................................................................21
   Members .............................................................................................................................21
      Max W. Berger .............................................................................................................21
      Gerald H. Silk ...............................................................................................................23
      John C. Browne .............................................................................................................24
      Avi Josefson .................................................................................................................25
      Michael D. Blatchley ....................................................................................................26
      Scott R. Foglietta .........................................................................................................26
   Senior Counsel....................................................................................................................28
      Richard D. Gluck ..........................................................................................................28
   Associates ...........................................................................................................................29
      Amanda Boitano ...........................................................................................................29
      Michael M. Mathai .......................................................................................................29
      Julia Tebor ....................................................................................................................29
   Senior Staff Attorneys ........................................................................................................30
      Alex Dickin...................................................................................................................30
      Matthew Mulligan .........................................................................................................30
   Staff Attorneys ...................................................................................................................30
      Jade Allamby ................................................................................................................30
      Robert Blauvelt.............................................................................................................31
      Uju Chukwuanu............................................................................................................31
      Sakyung Han.................................................................................................................31
      Scott Horlacher .............................................................................................................31
      Arthur Lee ....................................................................................................................32
      Julius Panell..................................................................................................................32
      Robert Jeffrey Powell ....................................................................................................32



Jessica Purcell ..................................................................................................................................32
Brigitta Spiers ...................................................................................................................................33

Since our founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has obtained many of the largest monetary recoveries in history – over $33 billion on behalf of investors. Unique among our peers, the firm has obtained the largest settlements ever agreed to by public companies related to securities fraud, including three of the ten largest in history. Working with our clients, we have also used the litigation process to achieve precedent-setting reforms which have increased market transparency, held wrongdoers accountable and improved corporate business practices in groundbreaking ways.

## FIRM OVERVIEW

Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), a national law firm with offices located in New York, California, Louisiana, Illinois, and Delaware, prosecutes class and private actions on behalf of individual and institutional clients. The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; alternative dispute resolution; distressed debt and bankruptcy; civil rights and employment discrimination; consumer class actions and antitrust. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes the New York State Common Retirement Fund; the California Public Employees' Retirement System (CalPERS); the Ontario Teachers' Pension Plan Board (the largest public pension funds in North America); the Los Angeles County Employees Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the Teacher Retirement System of Texas; the Arkansas Teacher Retirement System; Forsta AP-fonden ("AP1"); Fjarde AP-fonden ("AP4"); the Florida State Board of Administration; the Public Employees' Retirement System of Mississippi; the New York State Teachers' Retirement System; the Ohio Public Employees Retirement System; the State Teachers Retirement System of Ohio; the Oregon Public Employees Retirement System; the Virginia Retirement System; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

### MORE TOP SECURITIES RECOVERIES

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $33 billion on behalf of investors. Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained many of the largest securities recoveries in history (including 6 of the top 13):



- *In re WorldCom, Inc. Securities Litigation* – $6.19 billion recovery
- *In re Cendant Corporation Securities Litigation* – $3.3 billion recovery
- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation* – $2.43 billion recovery
- *In re Nortel Networks Corporation Securities Litigation* ("Nortel II") – $1.07 billion recovery
- *In re Merck & Co., Inc. Securities Litigation* – $1.06 billion recovery
- *In re McKesson HBOC, Inc. Securities Litigation* – $1.05 billion recovery\*

*\*Source: ISS Securities Class Action Services*

For over a decade, ISS Securities Class Action Services has compiled and published data on securities litigation recoveries and the law firms prosecuting the cases. BLB&G has been at or near the top of their rankings every year – often with the highest total recoveries, the highest settlement average, or both.

BLB&G also eclipses all competitors on ISS SCAS's "Top 100 Settlements of All Time" report, having recovered nearly 40% of all the settlement dollars represented in the report (over $25 billion), and having prosecuted over a third of all the cases on the list (35 of 100).

## GIVING SHAREHOLDERS A VOICE AND CHANGING BUSINESS PRACTICES FOR THE BETTER

BLB&G was among the first law firms ever to obtain meaningful corporate governance reforms through litigation. In courts throughout the country, we prosecute shareholder class and derivative actions, asserting claims for breach of fiduciary duty and proxy violations wherever the conduct of corporate officers and/or directors, as well as M&A transactions, seek to deprive shareholders of fair value, undermine shareholder voting rights, or allow management to profit at the expense of shareholders.

We have prosecuted seminal cases establishing precedents which have increased market transparency, held wrongdoers accountable, addressed issues in the boardroom and executive suite, challenged unfair deals, and improved corporate business practices in groundbreaking ways.

From setting new standards of director independence, to restructuring board practices in the wake of persistent illegal conduct; from challenging the improper use of defensive measures and deal protections for management's benefit, to confronting stock options backdating abuses and other self-dealing by executives; we have confronted a variety of questionable, unethical and proliferating corporate practices. Seeking to reform faulty management structures and address breaches of fiduciary duty by corporate officers and directors, we have obtained unprecedented victories on behalf of shareholders seeking to improve governance and protect the shareholder franchise.

## ADVOCACY FOR VICTIMS OF CORPORATE WRONGDOING

While BLB&G is widely recognized as one of the leading law firms worldwide advising institutional investors on issues related to corporate governance, shareholder rights, and securities litigation, we have also prosecuted some of the most significant employment discrimination, civil rights and consumer protection cases on record. Equally important, the firm has advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.



The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.*, which resulted in a recovery of $176 million, the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and served as a model for public companies going forward.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class's losses – an extraordinary result in consumer class cases.



## PRACTICE AREAS

### SECURITIES FRAUD LITIGATION

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has had the distinction of having tried and prosecuted many of the most high-profile securities fraud class actions in history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. BLB&G continues to play a leading role in major securities litigation pending in federal and state courts, and the firm remains one of the nation's leaders in representing institutional investors in securities fraud class and derivative litigation.

The firm also pursues direct actions in securities fraud cases when appropriate. By selectively opting out of certain securities class actions, we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enable it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

### CORPORATE GOVERNANCE AND SHAREHOLDERS' RIGHTS

The Corporate Governance and Shareholders' Rights Practice Group prosecutes derivative actions, claims for breach of fiduciary duty, and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has obtained unprecedented victories on behalf of shareholders seeking to improve corporate governance and protect the shareholder franchise, prosecuting actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. We have also addressed issues of corporate waste, shareholder voting rights claims, workplace harassment, and executive compensation. As a result of the firm's high-profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders.

The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

### EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS

The Employment Discrimination and Civil Rights Practice Group prosecutes class and multi-plaintiff actions, and other high-impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions: race, gender, sexual orientation and age discrimination suits; sexual harassment, and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This

**BLB&G**   Bernstein Litowitz
Berger & Grossmann LLP

litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people affected by discriminatory practice in the workplace.

## GENERAL COMMERCIAL LITIGATION AND ALTERNATIVE DISPUTE RESOLUTION

The General Commercial Litigation practice group provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees and other business entities. We have faced down powerful and well-funded law firms and defendants – and consistently prevailed. However, not every dispute is best resolved through the courts. In such cases, BLB&G Alternative Dispute practitioners offer clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. BLB&G has extensive experience – and a marked record of successes – in ADR practice. For example, in the wake of the credit crisis, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. Our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad representing clients before all the major arbitration tribunals, including the American Arbitration Association (AAA), FINRA, JAMS, International Chamber of Commerce (ICC) and the London Court of International Arbitration.

## DISTRESSED DEBT AND BANKRUPTCY CREDITOR NEGOTIATION

The BLB&G Distressed Debt and Bankruptcy Creditor Negotiation Group has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third-party litigation brought by bankruptcy trustees and creditors' committees against auditors, appraisers, lawyers, officers and directors, and other defendants who may have contributed to client losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to completion of successful settlements.

## CONSUMER ADVOCACY

The Consumer Advocacy Practice Group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues. The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages. The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators. The Consumer Practice Advocacy Group has recovered hundreds of millions of dollars for millions of consumers throughout the country. Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer. For example, in actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class. The group achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases. Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers.



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

## THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional excellence and diligence of the firm and its members. A few examples are set forth below.

### IN RE WORLDCOM, INC. SECURITIES LITIGATION

**THE HONORABLE DENISE COTE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

> "I have the utmost confidence in plaintiffs' counsel...they have been doing a superb job.… The Class is extraordinarily well represented in this litigation."
>
> "The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy.… The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."
>
> "Lead Counsel has been energetic and creative. . . . Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

### IN RE CLARENT CORPORATION SECURITIES LITIGATION

**THE HONORABLE CHARLES R. BREYER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

> "It was the best tried case I've witnessed in my years on the bench . . ."
>
> "[A]n extraordinarily civilized way of presenting the issues to you [the jury]. . . . We've all been treated to great civility and the highest professional ethics in the presentation of the case.…"
>
> "These trial lawyers are some of the best I've ever seen."

### LANDRY'S RESTAURANTS, INC. SHAREHOLDER LITIGATION

**VICE CHANCELLOR J. TRAVIS LASTER OF THE DELAWARE COURT OF CHANCERY**

> "I do want to make a comment again about the excellent efforts . . . put into this case. . . . This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system . . . you hold up this case as an example of what to do."

### MCCALL V. SCOTT (COLUMBIA/HCA DERIVATIVE LITIGATION)

**THE HONORABLE THOMAS A. HIGGINS OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE**

> "Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

# RECENT ACTIONS & SIGNIFICANT RECOVERIES

Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. Some examples from our practice groups include:

## SECURITIES CLASS ACTIONS

**CASE:** *IN RE WORLDCOM, INC. SECURITIES LITIGATION*

**COURT:** **United States District Court for the Southern District of New York**

**HIGHLIGHTS:** $6.19 billion securities fraud class action recovery – the second largest in history; unprecedented recoveries from Director Defendants.

**CASE SUMMARY:** Investors suffered massive losses in the wake of the financial fraud and subsequent bankruptcy of former telecom giant WorldCom, Inc. This litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. It further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom, and by WorldCom's former CEO and CFO. As Court-appointed Co-Lead Counsel representing Lead Plaintiff the **New York State Common Retirement Fund**, we obtained unprecedented settlements totaling more than $6 billion from the Investment Bank Defendants who underwrote WorldCom bonds, including a $2.575 billion cash settlement to settle all claims against the Citigroup Defendants. On the eve of trial, the 13 remaining "Underwriter Defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them. Additionally, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals – 20% of their collective net worth. *The Wall Street Journal*, in its coverage, profiled the settlement as literally having "shaken Wall Street, the audit profession and corporate boardrooms." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. Subsequent settlements were reached with the former executives of WorldCom, and then with Andersen, bringing the total obtained for the Class to over $6.19 billion.

**CASE:** *IN RE CENDANT CORPORATION SECURITIES LITIGATION*

**COURT:** **United States District Court for the District of New Jersey**

**HIGHLIGHTS:** $3.3 billion securities fraud class action recovery – the third largest in history; significant corporate governance reforms obtained.

**CASE SUMMARY:** The firm was Co-Lead Counsel in this class action against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors, for their role in disseminating materially false and misleading financial statements concerning the company's revenues, earnings and expenses for its 1997 fiscal year. As a result of company-wide accounting irregularities, Cendant restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein. Cendant agreed to settle the action for $2.8 billion to adopt some of the most extensive corporate governance changes in history. E&Y settled for $335 million. These settlements remain the largest sums ever recovered from a public company and a public accounting firm through securities class action litigation. BLB&G represented Lead Plaintiffs **CalPERS** – the **California Public Employees' Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

*CASE:* **IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION**

*COURT:* **United States District Court for the Southern District of New York**

*HIGHLIGHTS:* $2.425 billion in cash; significant corporate governance reforms to resolve all claims. This recovery is by far the largest shareholder recovery related to the subprime meltdown and credit crisis; the single largest securities class action settlement ever resolving a Section 14(a) claim – the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation; the largest ever funded by a single corporate defendant for violations of the federal securities laws; the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; and one of the 10 largest securities class action recoveries in history.

*DESCRIPTION:* The firm represented Co-Lead Plaintiffs the **State Teachers Retirement System of Ohio**, the **Ohio Public Employees Retirement System**, and the **Teacher Retirement System of Texas** in this securities class action filed on behalf of shareholders of Bank of America Corporation ("BAC") arising from BAC's 2009 acquisition of Merrill Lynch & Co., Inc. The action alleges that BAC, Merrill Lynch, and certain of the companies' current and former officers and directors violated the federal securities laws by making a series of materially false statements and omissions in connection with the acquisition. These violations included the alleged failure to disclose information regarding billions of dollars of losses which Merrill had suffered before the BAC shareholder vote on the proposed acquisition, as well as an undisclosed agreement allowing Merrill to pay billions in bonuses before the acquisition closed despite these losses. Not privy to these material facts, BAC shareholders voted to approve the acquisition.

*CASE:* **IN RE NORTEL NETWORKS CORPORATION SECURITIES LITIGATION ("NORTEL II")**

*COURT:* **United States District Court for the Southern District of New York**

*HIGHLIGHTS:* Over $1.07 billion in cash and common stock recovered for the class.

*DESCRIPTION:* This securities fraud class action charged Nortel Networks Corporation and certain of its officers and directors with violations of the Securities Exchange Act of 1934, alleging that the Defendants knowingly or recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period. BLB&G clients the **Ontario Teachers' Pension Plan Board** and the **Treasury of the State of New Jersey and its Division of Investment** were appointed as Co-Lead Plaintiffs for the Class in one of two related actions (Nortel II), and BLB&G was appointed Lead Counsel for the Class. In a historic settlement, Nortel agreed to pay $2.4 billion in cash and Nortel common stock (all figures in US dollars) to resolve both matters. Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.07 billion.

*CASE:* **IN RE MERCK & CO., INC. SECURITIES LITIGATION**

*COURT:* **United States District Court, District of New Jersey**

*HIGHLIGHTS:* $1.06 billion recovery for the class.

*DESCRIPTION:* This case arises out of misrepresentations and omissions concerning life-threatening risks posed by the "blockbuster" Cox-2 painkiller Vioxx, which Merck withdrew from the market in 2004. In January 2016, BLB&G achieved a $1.062 billion settlement on the eve of trial after more than 12 years of hard-fought litigation that included a successful decision at the United States Supreme Court. This settlement is the second largest recovery ever obtained in the Third Circuit, one of the top 11 securities recoveries of all time, and the largest securities recovery ever achieved against a pharmaceutical company. BLB&G represented Lead Plaintiff the **Public Employees' Retirement System of Mississippi.**



**CASE:**     *IN RE MCKESSON HBOC, INC. SECURITIES LITIGATION*

**COURT:**     **United States District Court for the Northern District of California**

**HIGHLIGHTS:**     $1.05 billion recovery for the class.

**DESCRIPTION:**     This securities fraud litigation was filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities, alleging that Defendants misled the investing public concerning HBOC's and McKesson HBOC's financial results. On behalf of Lead Plaintiff the **New York State Common Retirement Fund**, BLB&G obtained a $960 million settlement from the company; $72.5 million in cash from Arthur Andersen; and, on the eve of trial, a $10 million settlement from Bear Stearns & Co. Inc., with total recoveries reaching more than $1 billion.

**CASE:**     *IN RE LEHMAN BROTHERS EQUITY/DEBT SECURITIES LITIGATION*

**COURT:**     **United States District Court for the Southern District of New York**

**HIGHLIGHTS:**     $735 million in total recoveries.

**DESCRIPTION:**     Representing the **Government of Guam Retirement Fund**, BLB&G successfully prosecuted this securities class action arising from Lehman Brothers Holdings Inc.'s issuance of billions of dollars in offerings of debt and equity securities that were sold using offering materials that contained untrue statements and missing material information.

After four years of intense litigation, Lead Plaintiffs achieved a total of $735 million in recoveries consisting of: a $426 million settlement with underwriters of Lehman securities offerings; a $90 million settlement with former Lehman directors and officers; a $99 million settlement that resolves claims against Ernst & Young, Lehman's former auditor (considered one of the top 10 auditor settlements ever achieved); and a $120 million settlement that resolves claims against UBS Financial Services, Inc. This recovery is truly remarkable not only because of the difficulty in recovering assets when the issuer defendant is bankrupt, but also because no financial results were restated, and that the auditors never disavowed the statements.

**CASE:**     *HEALTHSOUTH CORPORATION BONDHOLDER LITIGATION*

**COURT:**     **United States District Court for the Northern District of Alabama**

**HIGHLIGHTS:**     $804.5 million in total recoveries.

**DESCRIPTION:**     In this litigation, BLB&G was the appointed Co-Lead Counsel for the bond holder class, representing Lead Plaintiff the **Retirement Systems of Alabama**. This action arose from allegations that Birmingham, Alabama based HealthSouth Corporation overstated its earnings at the direction of its founder and former CEO Richard Scrushy. Subsequent revelations disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years. A total recovery of $804.5 million was obtained in this litigation through a series of settlements, including an approximately $445 million settlement for shareholders and bondholders, a $100 million in cash settlement from UBS AG, UBS Warburg LLC, and individual UBS Defendants (collectively, "UBS"), and $33.5 million in cash from the company's auditor. The total settlement for injured HealthSouth bond purchasers exceeded $230 million, recouping over a third of bond purchaser damages.



**CASE:**      IN RE CITIGROUP, INC. BOND ACTION LITIGATION

**COURT:**      United States District Court for the Southern District of New York

**HIGHLIGHTS:**      $730 million cash recovery; second largest recovery in a litigation arising from the financial crisis.

**DESCRIPTION:**      In the years prior to the collapse of the subprime mortgage market, Citigroup issued 48 offerings of preferred stock and bonds. This securities fraud class action was filed on behalf of purchasers of Citigroup bonds and preferred stock alleging that these offerings contained material misrepresentations and omissions regarding Citigroup's exposure to billions of dollars in mortgage-related assets, the loss reserves for its portfolio of high-risk residential mortgage loans, and the credit quality of the risky assets it held in off-balance sheet entities known as "structured investment vehicles." After protracted litigation lasting four years, we obtained a $730 million cash recovery – the second largest securities class action recovery in a litigation arising from the financial crisis, and the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities. As Lead Bond Counsel for the Class, BLB&G represented Lead Bond Plaintiffs **Minneapolis Firefighters' Relief Association**, **Louisiana Municipal Police Employees' Retirement System**, and **Louisiana Sheriffs' Pension and Relief Fund**.

**CASE:**      IN RE WASHINGTON PUBLIC POWER SUPPLY SYSTEM LITIGATION

**COURT:**      United States District Court for the District of Arizona

**HIGHLIGHTS:**      Over $750 million – the largest securities fraud settlement ever achieved at the time.

**DESCRIPTION:**      BLB&G was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class in this action. The case was litigated for over seven years, and involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved.

**CASE:**      IN RE SCHERING-PLOUGH CORPORATION/ENHANCE SECURITIES LITIGATION; IN RE MERCK & CO., INC. VYTORIN/ZETIA SECURITIES LITIGATION

**COURT:**      United States District Court for the District of New Jersey

**HIGHLIGHTS:**      $688 million in combined settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) in this coordinated securities fraud litigations filed on behalf of investors in Merck and Schering-Plough.

**DESCRIPTION:**      After nearly five years of intense litigation, just days before trial, BLB&G resolved the two actions against Merck and Schering-Plough, which stemmed from claims that Merck and Schering artificially inflated their market value by concealing material information and making false and misleading statements regarding their blockbuster anti-cholesterol drugs Zetia and Vytorin. Specifically, we alleged that the companies knew that their "ENHANCE" clinical trial of Vytorin (a combination of Zetia and a generic) demonstrated that Vytorin was no more effective than the cheaper generic at reducing artery thickness. The companies nonetheless championed the "benefits" of their drugs, attracting billions of dollars of capital. When public pressure to release the results of the ENHANCE trial became too great, the companies reluctantly announced these negative results, which we alleged led to sharp declines in the value of the companies' securities, resulting in significant losses to investors. The combined $688 million in settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) is the second largest securities recovery ever in the Third Circuit, among the top 25 settlements of all time, and among the ten largest recoveries ever in a case where there was no financial restatement. BLB&G represented Lead Plaintiffs **Arkansas Teacher Retirement System,** the **Public Employees' Retirement System of Mississippi,** and the **Louisiana Municipal Police Employees' Retirement System**.



**CASE:**     *IN RE LUCENT TECHNOLOGIES, INC. SECURITIES LITIGATION*

**COURT:**     United States District Court for the District of New Jersey

**HIGHLIGHTS:**     $667 million in total recoveries; the appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

**DESCRIPTION:**     BLB&G served as Co-Lead Counsel in this securities class action, representing Lead Plaintiffs the **Parnassus Fund**, **Teamsters Locals 175 & 505 D&P Pension Trust**, **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System.** The complaint accused Lucent of making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. The settlement obtained in this case is valued at approximately $667 million, and is composed of cash, stock and warrants.

**CASE:**     *IN RE WACHOVIA PREFERRED SECURITIES AND BOND/NOTES LITIGATION*

**COURT:**     United States District Court for the Southern District of New York

**HIGHLIGHTS:**     $627 million recovery – among the 20 largest securities class action recoveries in history; third largest recovery obtained in an action arising from the subprime mortgage crisis.

**DESCRIPTION:**     This securities class action was filed on behalf of investors in certain Wachovia bonds and preferred securities against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG LLP. The case alleges that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multi-billion dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia's loan loss reserves were materially inadequate. According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo. The combined $627 million recovery obtained in the action is among the 20 largest securities class action recoveries in history, the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933, and one of a handful of securities class action recoveries obtained where there were no parallel civil or criminal actions brought by government authorities. The firm represented Co-Lead Plaintiffs **Orange County Employees Retirement System** and **Louisiana Sheriffs' Pension and Relief Fund** in this action.

**CASE:**     *BEAR STEARNS MORTGAGE PASS-THROUGH LITIGATION*

**COURT:**     United States District Court for the Southern District of New York

**HIGHLIGHTS:**     **$500 million recovery -** the largest recovery ever on behalf of purchasers of residential mortgage-backed securities.

**DESCRIPTION:**     **BLB&G served as Co-Lead Counsel in this securities action, representing Lead Plaintiffs the Public Employees' Retirement System of Mississippi. The case alleged that Bear Stearns & Company, Inc.'s sold mortgage pass-through certificates using false and misleading offering documents. The offering documents contained false and misleading statements related to, among other things, (1) the underwriting guidelines used to originate the mortgage loans underlying the certificates; and (2) the accuracy of the appraisals for the properties underlying the certificates. After six years of hard-fought litigation and extensive arm's-length negotiations, the $500 million recovery is the largest settlement in a U.S. class action against a bank that packaged and sold mortgage securities at the center of the 2008 financial crisis.**

**BLB&G**  Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| *CASE:* | ***GARY HEFLER ET AL. V. WELLS FARGO & COMPANY ET AL*** |
| *COURT:* | **United States District Court for the Northern District of California** |
| *HIGHLIGHTS:* | $480 million recovery - the fourth largest securities settlement ever achieved in the Ninth Circuit and the 31st largest securities settlement ever in the United States. |
| *DESCRIPTION:* | BLB&G served as Lead Counsel for the Court-appointed Lead Plaintiff Union Asset Management Holding, AG in this action, which alleged that Wells Fargo and certain current and former officers and directors of Wells Fargo made a series of materially false statements and omissions in connection with Wells Fargo's secret creation of fake or unauthorized client accounts in order to hit performance-based compensation goals. After years of presenting a business driven by legitimate growth prospects, U.S. regulators revealed in September 2016 that Wells Fargo employees were secretly opening millions of potentially unauthorized accounts for existing Wells Fargo customers. The Complaint alleged that these accounts were opened in order to hit performance targets and inflate the "cross-sell" metrics that investors used to measure Wells Fargo's financial health and anticipated growth. When the market learned the truth about Wells Fargo's violation of its customers' trust and failure to disclose reliable information to its investors, the price of Wells Fargo's stock dropped, causing substantial investor losses. |

| | |
|---|---|
| *CASE:* | ***OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM V. FREDDIE MAC*** |
| *COURT:* | **United States District Court for the Southern District of Ohio** |
| *HIGHLIGHTS:* | $410 million settlement. |
| *DESCRIPTION:* | This securities fraud class action was filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** alleging that Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers issued false and misleading statements in connection with the company's previously reported financial results. Specifically, the Complaint alleged that the Defendants misrepresented the company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the company's earnings and to hide earnings volatility. In connection with these improprieties, Freddie Mac restated more than $5 billion in earnings. A settlement of $410 million was reached in the case just as deposition discovery had begun and document review was complete. |

| | |
|---|---|
| *CASE:* | ***IN RE REFCO, INC. SECURITIES LITIGATION*** |
| *COURT:* | **United States District Court for the Southern District of New York** |
| *HIGHLIGHTS:* | Over $407 million in total recoveries. |
| *DESCRIPTION:* | The lawsuit arises from the revelation that Refco, a once prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the company a mere two months after its initial public offering of common stock. As a result, Refco filed one of the largest bankruptcies in U.S. history. Settlements have been obtained from multiple company and individual defendants, resulting in a total recovery for the class of over $407 million. BLB&G represented Co-Lead Plaintiff **RH Capital Associates LLC**. |



## CORPORATE GOVERNANCE AND SHAREHOLDERS' RIGHTS

**CASE:** *CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, DERIVATIVELY ON BEHALF OF TWENTY-FIRST CENTURY FOX, INC. V. RUPERT MURDOCH, ET AL.*

**COURT:** Delaware Court of Chancery

**HIGHLIGHTS:** Landmark derivative litigation establishes unprecedented, independent Board-level council to ensure employees are protected from workplace harassment while recouping $90 million for the company's coffers.

**DESCRIPTION:** Before the birth of the #metoo movement, BLB&G led the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveil a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind – the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC) – majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries – $90 million – ever obtained in a pure corporate board oversight dispute. The WPIC is expected to serve as a model for public companies in all industries. The firm represented 21st Century Fox shareholder the **City of Monroe (Michigan) Employees' Retirement System.**

**CASE:** *IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION*

**COURT:** United States District Court for the Central District of California

**HIGHLIGHTS:** Litigation recovered over $250 million for investors in challenging unprecedented insider trading scheme by billionaire hedge fund manager Bill Ackman.

**DESCRIPTION:** As alleged in groundbreaking litigation, billionaire hedge fund manager Bill Ackman and his Pershing Square Capital Management fund secretly acquire a near 10% stake in pharmaceutical concern Allergan, Inc. as part of an unprecedented insider trading scheme by Ackman and Valeant Pharmaceuticals International, Inc. What Ackman knew – but investors did not – was that in the ensuing weeks, Valeant would be launching a hostile bid to acquire Allergan shares at a far higher price. Ackman enjoys a massive instantaneous profit upon public news of the proposed acquisition, and the scheme works for both parties as he kicks back hundreds of millions of his insider-trading proceeds to Valeant after Allergan agreed to be bought by a rival bidder. After a ferocious three-year legal battle over this attempt to circumvent the spirit of the U.S. securities laws, BLB&G obtains a $250 million settlement for Allergan investors, and creates precedent to prevent similar such schemes in the future. The Plaintiffs in this action were the **State Teachers Retirement System of Ohio**, the **Iowa Public Employees Retirement System**, and **Patrick T. Johnson.**



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| **CASE:** | **UNITEDHEALTH GROUP, INC. SHAREHOLDER DERIVATIVE LITIGATION** |
| **COURT:** | **United States District Court for the District of Minnesota** |
| **HIGHLIGHTS:** | Litigation recovered over $920 million in ill-gotten compensation directly from former officers for their roles in illegally backdating stock options, while the company agreed to far-reaching reforms aimed at curbing future executive compensation abuses. |
| **DESCRIPTION:** | This shareholder derivative action filed against certain current and former executive officers and members of the Board of Directors of UnitedHealth Group, Inc. alleged that the Defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders.  The firm recovered over $920 million in ill-gotten compensation directly from the former officer Defendants – the largest derivative recovery in history.  As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]…. [T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings."  The Plaintiffs in this action were the **St. Paul Teachers' Retirement Fund Association**, the **Public Employees' Retirement System of Mississippi**, the **Jacksonville Police & Fire Pension Fund**, the **Louisiana Sheriffs' Pension & Relief Fund**, the **Louisiana Municipal Police Employees' Retirement System** and **Fire & Police Pension Association of Colorado**. |

| | |
|---|---|
| **CASE:** | **CAREMARK MERGER LITIGATION** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Landmark Court ruling orders Caremark's board to disclose previously withheld information, enjoins shareholder vote on CVS merger offer, and grants statutory appraisal rights to Caremark shareholders.  The litigation ultimately forced CVS to raise offer by $7.50 per share, equal to more than $3.3 billion in additional consideration to Caremark shareholders. |
| **DESCRIPTION:** | Commenced on behalf of the **Louisiana Municipal Police Employees' Retirement System** and other shareholders of Caremark RX, Inc. ("Caremark"), this shareholder class action accused the company's directors of violating their fiduciary duties by approving and endorsing a proposed merger with CVS Corporation ("CVS"), all the while refusing to fairly consider an alternative transaction proposed by another bidder.  In a landmark decision, the Court ordered the Defendants to disclose material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders—forcing CVS to increase the consideration offered to shareholders by $7.50 per share in cash (over $3 billion in total). |

| | |
|---|---|
| **CASE:** | **IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION** |
| **COURT:** | **United States District Court for the Southern District of New York** |
| **HIGHLIGHTS:** | Landmark settlement in which Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board that will be supported by a dedicated $75 million fund. |
| **DESCRIPTION:** | In the wake of Pfizer's agreement to pay $2.3 billion as part of a settlement with the U.S. Department of Justice to resolve civil and criminal charges relating to the illegal marketing of at least 13 of the company's most important drugs (the largest such fine ever imposed), this shareholder derivative action was filed against Pfizer's senior management and Board alleging they breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread.  The suit was brought by Court-appointed Lead Plaintiffs **Louisiana Sheriffs' Pension and Relief Fund** and **Skandia Life Insurance Company, Ltd.**  In an unprecedented settlement reached by the parties, the Defendants agreed to create a new Regulatory |

14



and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") to oversee and monitor Pfizer's compliance and drug marketing practices and to review the compensation policies for Pfizer's drug sales related employees.

| | |
|---|---|
| **CASE:** | ***MILLER ET A. V. IAC/INTERACTIVECORP ET AL.*** |
| **COURT:** | **Delaware Court of Chancery** |
| **HIGHLIGHTS:** | Litigation shuts down efforts by controlling shareholders to obtain "dynastic control" of the company through improper stock class issuances, setting valuable precedent and sending strong message to boards and management in all sectors that such moves will not go unchallenged. |
| **DESCRIPTION:** | BLB&G obtained this landmark victory for shareholder rights against IAC/InterActiveCorp and its controlling shareholder and chairman, Barry Diller. For decades, activist corporate founders and controllers seek ways to entrench their position atop the corporate hierarchy by granting themselves and other insiders "supervoting rights." Diller lays out a proposal to introduce a new class of non-voting stock to entrench "dynastic control" of IAC within the Diller family. BLB&G litigation on behalf of IAC shareholders ends in capitulation with the Defendants effectively conceding the case by abandoning the proposal. This becomes critical corporate governance precedent, given trend of public companies to introduce "low" and "no-vote" share classes, which diminish shareholder rights, insulate management from accountability, and can distort managerial incentives by providing controllers voting power out of line with their actual economic interests in public companies. |

| | |
|---|---|
| **CASE:** | ***IN RE DELPHI FINANCIAL GROUP SHAREHOLDER LITIGATION*** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Dominant shareholder is blocked from collecting a payoff at the expense of minority investors. |
| **DESCRIPTION:** | As the Delphi Financial Group prepared to be acquired by Tokio Marine Holdings Inc., the conduct of Delphi's founder and controlling shareholder drew the scrutiny of BLB&G and its institutional investor clients for improperly using the transaction to expropriate at least $55 million at the expense of the public shareholders. BLB&G aggressively litigated this action and obtained a settlement of $49 million for Delphi's public shareholders. The settlement fund is equal to about 90% of recoverable Class damages – a virtually unprecedented recovery. |

| | |
|---|---|
| **CASE:** | ***QUALCOMM BOOKS & RECORDS LITIGATION*** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Novel use of "books and records" litigation enhances disclosure of political spending and transparency. |
| **DESCRIPTION:** | The U.S. Supreme Court's controversial 2010 opinion in *Citizens United v. FEC* made it easier for corporate directors and executives to secretly use company funds – shareholder assets – to support personally favored political candidates or causes. BLB&G prosecuted the first-ever "books and records" litigation to obtain disclosure of corporate political spending at our client's portfolio company – technology giant Qualcomm Inc. – in response to Qualcomm's refusal to share the information. As a result of the lawsuit, Qualcomm adopted a policy that provides its shareholders with comprehensive disclosures regarding the company's political activities and places Qualcomm as a standard-bearer for other companies. |



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| *CASE:* | **IN RE NEWS CORP. SHAREHOLDER DERIVATIVE LITIGATION** |
| *COURT:* | **Delaware Court of Chancery – Kent County** |
| *HIGHLIGHTS:* | An unprecedented settlement in which News Corp. recoups $139 million and enacts significant corporate governance reforms that combat self-dealing in the boardroom. |
| *DESCRIPTION:* | Following News Corp.'s 2011 acquisition of a company owned by News Corp. Chairman and CEO Rupert Murdoch's daughter, and the phone-hacking scandal within its British newspaper division, we filed a derivative litigation on behalf of the company because of institutional shareholder concern with the conduct of News Corp.'s management. We ultimately obtained an unprecedented settlement in which News Corp. recouped $139 million for the company coffers, and agreed to enact corporate governance enhancements to strengthen its compliance structure, the independence and functioning of its board, and the compensation and clawback policies for management. |

| | |
|---|---|
| *CASE:* | **IN RE ACS SHAREHOLDER LITIGATION (XEROX)** |
| *COURT:* | **Delaware Court of Chancery – New Castle County** |
| *HIGHLIGHTS:* | BLB&G challenged an attempt by ACS CEO to extract a premium on his stock not shared with the company's public shareholders in a sale of ACS to Xerox. On the eve of trial, BLB&G obtained a $69 million recovery, with a substantial portion of the settlement personally funded by the CEO. |
| *DESCRIPTION:* | Filed on behalf of the **New Orleans Employees' Retirement System** and similarly situated shareholders of Affiliated Computer Service, Inc., this action alleged that members of the Board of Directors of ACS breached their fiduciary duties by approving a merger with Xerox Corporation which would allow Darwin Deason, ACS's founder and Chairman and largest stockholder, to extract hundreds of millions of dollars of value that rightfully belongs to ACS's public shareholders for himself. Per the agreement, Deason's consideration amounted to over a 50% premium when compared to the consideration paid to ACS's public stockholders. The ACS Board further breached its fiduciary duties by agreeing to certain deal protections in the merger agreement that essentially locked up the transaction between ACS and Xerox. After seeking a preliminary injunction to enjoin the deal and engaging in intense discovery and litigation in preparation for a looming trial date, Plaintiffs reached a global settlement with Defendants for $69 million. In the settlement, Deason agreed to pay $12.8 million, while ACS agreed to pay the remaining $56.1 million. |

| | |
|---|---|
| *CASE:* | **IN RE DOLLAR GENERAL CORPORATION SHAREHOLDER LITIGATION** |
| *COURT:* | **Sixth Circuit Court for Davidson County, Tennessee; Twentieth Judicial District, Nashville** |
| *HIGHLIGHTS:* | Holding Board accountable for accepting below-value "going private" offer. |
| *DESCRIPTION:* | A Nashville, Tennessee corporation that operates retail stores selling discounted household goods, in early March 2007, Dollar General announced that its Board of Directors had approved the acquisition of the company by the private equity firm Kohlberg Kravis Roberts & Co. ("KKR"). BLB&G, as Co-Lead Counsel for the **City of Miami General Employees' & Sanitation Employees' Retirement Trust**, filed a class action complaint alleging that the "going private" offer was approved as a result of breaches of fiduciary duty by the board and that the price offered by KKR did not reflect the fair value of Dollar General's publicly-held shares. On the eve of the summary judgment hearing, KKR agreed to pay a $40 million settlement in favor of the shareholders, with a potential for $17 million more for the Class. |

**BLB&G**  Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| *CASE:* | ***LANDRY'S RESTAURANTS, INC. SHAREHOLDER LITIGATION*** |
| *COURT:* | **Delaware Court of Chancery – New Castle County** |
| *HIGHLIGHTS:* | Protecting shareholders from predatory CEO's multiple attempts to take control of Landry's Restaurants through improper means. Our litigation forced the CEO to increase his buyout offer by four times the price offered and obtained an additional $14.5 million cash payment for the class. |
| *DESCRIPTION:* | In this derivative and shareholder class action, shareholders alleged that Tilman J. Fertitta – chairman, CEO and largest shareholder of Landry's Restaurants, Inc. – and its Board of Directors stripped public shareholders of their controlling interest in the company for no premium and severely devalued remaining public shares in breach of their fiduciary duties. BLB&G's prosecution of the action on behalf of Plaintiff **Louisiana Municipal Police Employees' Retirement System** resulted in recoveries that included the creation of a settlement fund composed of $14.5 million in cash, as well as significant corporate governance reforms and an increase in consideration to shareholders of the purchase price valued at $65 million. |



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

# EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS

**CASE:** *ROBERTS V. TEXACO, INC.*

**COURT:** United States District Court for the Southern District of New York

**HIGHLIGHTS:** BLB&G recovered $170 million on behalf of Texaco's African-American employees and engineered the creation of an independent "Equality and Tolerance Task Force" at the company.

**DESCRIPTION:** Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. BLB&G's prosecution of the action revealed that African-Americans were significantly under-represented in high level management jobs and that Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the company. The case settled for over $170 million, and Texaco agreed to a Task Force to monitor its diversity programs for five years – a settlement described as the most significant race discrimination settlement in history.

**CASE:** *ECOA - GMAC/NMAC/FORD/TOYOTA/CHRYSLER - CONSUMER FINANCE DISCRIMINATION LITIGATION*

**COURT:** Multiple jurisdictions

**HIGHLIGHTS:** Landmark litigation in which financing arms of major auto manufacturers are compelled to cease discriminatory "kick-back" arrangements with dealers, leading to historic changes to auto financing practices nationwide.

**DESCRIPTION:** The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and DaimlerChrysler Financial cause African-American and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the Defendants.

*NMAC:* The United States District Court for the Middle District of Tennessee granted final approval of the settlement of the class action against Nissan Motor Acceptance Corporation ("NMAC") in which NMAC agreed to offer pre-approved loans to hundreds of thousands of current and potential African-American and Hispanic NMAC customers, and limit how much it raises the interest charged to car buyers above the company's minimum acceptable rate.

*GMAC:* The United States District Court for the Middle District of Tennessee granted final approval of a settlement of the litigation against General Motors Acceptance Corporation ("GMAC") in which GMAC agreed to take the historic step of imposing a 2.5% markup cap on loans with terms up to 60 months, and a cap of 2% on extended term loans. GMAC also agreed to institute a substantial credit pre-approval program designed to provide special financing rates to minority car buyers with special rate financing.

*DAIMLERCHRYSLER:* The United States District Court for the District of New Jersey granted final approval of the settlement in which DaimlerChrysler agreed to implement substantial changes to the company's practices, including limiting the maximum amount of mark-up dealers may charge customers to between 1.25% and 2.5% depending upon the length of the customer's loan. In addition, the company agreed to send out pre-approved credit offers of no-markup loans to African-American and Hispanic consumers, and contribute $1.8 million to provide consumer education and assistance programs on credit financing.

*FORD MOTOR CREDIT*: The United States District Court for the Southern District of New York granted final approval of a settlement in which Ford Credit agreed to make contract disclosures informing consumers that the customer's Annual Percentage Rate ("APR") may be negotiated and that sellers may assign their contracts and retain rights to receive a portion of the finance charge.



## CLIENTS AND FEES

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation.  Wherever appropriate, even with our corporate clients, we will encourage retention where our fee is contingent on the outcome of the litigation.  This way, it is not the number of hours worked that will determine our fee, but rather the result achieved for our client.

Our clients include many large and well known financial and lending institutions and pension funds, as well as privately-held companies that are attracted to our firm because of our reputation, expertise and fee structure. Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants.  A considerable number of clients have been referred to the firm by former adversaries.  We have always maintained a high level of independence and discretion in the cases we decide to prosecute.  As a result, the level of personal satisfaction and commitment to our work is high.



# IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

## BERNSTEIN LITOWITZ BERGER & GROSSMANN PUBLIC INTEREST LAW FELLOWS

COLUMBIA LAW SCHOOL – BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The BLB&G Fellows are able to begin their careers free of any school debt if they make a long-term commitment to public interest law.

## FIRM SPONSORSHIP OF HER JUSTICE

NEW YORK, NY – BLB&G is a sponsor of Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time to help women who need divorces from abusive spouses, or representation on issues such as child support, custody and visitation. To read more about Her Justice, visit the organization's website at www.herjustice.org.

## THE PAUL M. BERNSTEIN MEMORIAL SCHOLARSHIP

COLUMBIA LAW SCHOOL – Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm and the family and friends of Paul M. Bernstein, and is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to the community.

## FIRM SPONSORSHIP OF CITY YEAR NEW YORK

NEW YORK, NY – BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

## MAX W. BERGER PRE-LAW PROGRAM

BARUCH COLLEGE – In order to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession, the Max W. Berger Pre-Law Program was established at Baruch College. Providing workshops, seminars, counseling and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, as well as placing them in appropriate internships and other pre-law working environments.

## NEW YORK SAYS THANK YOU FOUNDATION

NEW YORK, NY – Founded in response to the outpouring of love shown to New York City by volunteers from all over the country in the wake of the 9/11 attacks, The New York Says Thank You Foundation sends volunteers from New York City to help rebuild communities around the country affected by disasters. BLB&G is a corporate sponsor of NYSTY and its goals are a heartfelt reflection of the firm's focus on community and activism.



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

# OUR ATTORNEYS

## MEMBERS

**MAX W. BERGER**, the firm's senior founding partner, has grown BLB&G from a partnership of four lawyers in 1983 into what the *Financial Times* described as "one of the most powerful securities class action law firms in the United States" by prosecuting seminal cases which have increased market transparency, held wrongdoers accountable, and improved corporate business practices in groundbreaking ways.

Described by sources quoted in leading industry publication *Chambers USA* as "the smartest, most strategic plaintiffs' lawyer [they have] ever encountered," Max has litigated many of the firm's most high-profile and significant cases and secured some of the largest recoveries ever achieved in securities fraud lawsuits, negotiating seven of the largest securities fraud settlements in history, each in excess of a billion dollars: *Cendant* ($3.3 billion), *Citigroup-WorldCom* ($2.575 billion), *Bank of America/Merrill Lynch* ($2.4 billion), *JPMorgan Chase-WorldCom* ($2 billion), *Nortel* ($1.07 billion), *Merck* ($1.06 billion), and *McKesson* ($1.05 billion). Max's prosecution of the *WorldCom* litigation, which resulted in unprecedented monetary contributions from WorldCom's outside directors (nearly $25 million out of their own pockets on top of their insurance coverage) "shook Wall Street, the audit profession and corporate boardrooms." (*The Wall Street Journal*)

Max's cases have resulted in sweeping corporate governance overhauls, including the creation of an independent task force to oversee and monitor diversity practices (*Texaco* discrimination litigation), establishing an industry-accepted definition of director independence, increasing a board's power and responsibility to oversee internal controls and financial reporting (*Columbia/HCA*), and creating a Healthcare Law Regulatory Committee with dedicated funding to improve the standard for regulatory compliance oversight by a public company board of directors (*Pfizer*). His cases have yielded results which have served as models for public companies going forward.

Most recently, before the #metoo movement came alive, on behalf of an institutional investor client, Max handled the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery, and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveiled a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind – the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC) – majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries – $90 million – ever obtained in a pure corporate board oversight dispute.  The WPIC is expected to serve as a model for public companies in all industries.

Max's work has garnered him extensive media attention, and he has been the subject of feature articles in a variety of major media publications. *The New York Times* highlighted his remarkable track record in an October 2012 profile entitled "Investors' Billion-Dollar Fraud Fighter," which also discussed his role in the *Bank of America/Merrill Lynch Merger* litigation.  In 2011, Max was twice profiled by *The American Lawyer* for his role in negotiating a $627 million recovery on behalf of investors in the *In re Wachovia Corp. Securities Litigation,* and a $516 million recovery in *In re Lehman Brothers Equity/Debt Securities Litigation.* For his outstanding efforts on behalf of WorldCom investors, he was featured in articles in *BusinessWeek* and *The American Lawyer*, and *The National Law Journal* profiled Max (one of only eleven attorneys selected nationwide) in its annual 2005 "Winning Attorneys" section. He was subsequently featured in a 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.



**One of the "100 Most Influential Lawyers in America"**

Widely recognized as the "Dean" of the US plaintiff securities bar for his remarkable career and his professional excellence, Max has a distinguished and unparalleled list of honors to his name.

- He was selected as one of the "100 Most Influential Lawyers in America" by *The National Law Journal* for being "front and center" in holding Wall Street banks accountable and obtaining over $5 billion in cases arising from the subprime meltdown, and for his work as a "master negotiator" in obtaining numerous multi-billion dollar recoveries for investors.

- Described as a "standard-bearer" for the profession in a career spanning over 40 years, he was the recipient of *Chambers USA's* award for Outstanding Contribution to the Legal Profession. In presenting this prestigious honor, *Chambers* recognized Max's "numerous headline-grabbing successes," as well as his unique stature among colleagues – "warmly lauded by his peers, who are nevertheless loath to find him on the other side of the table." Max has been recognized as a litigation "star" and leading lawyer in his field by *Chambers* since its inception.

- *Benchmark Litigation* recently inducted him into its exclusive "Hall of Fame" in recognition of his career achievements and impact on the field of securities litigation.

- Upon its tenth anniversary, *Lawdragon* named Max a "Lawdragon Legend" for his accomplishments. He was recently inducted into *Lawdragon's* "Hall of Fame." He is regularly included in the publication's "500 Leading Lawyers in America" and "100 Securities Litigators You Need to Know" lists.

- *Law360* published a special feature discussing his life and career as a "Titan of the Plaintiffs Bar," named him one of only six litigators selected nationally as a "Legal MVP," and selected him as one of "10 Legal Superstars" nationally for his work in securities litigation.

- Max has been regularly named a "leading lawyer" in the *Legal 500 US Guide*, as well as *The Best Lawyers in America*® guide.

- Max was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice, which named him a "Trial Lawyer of the Year" Finalist in 1997 for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Max has lectured extensively for many professional organizations, and is the author and co-author of numerous articles on developments in the securities laws and their implications for public policy. He was chosen, along with several of his BLB&G partners, to author the first chapter – "Plaintiffs' Perspective" – of Lexis/Nexis's seminal industry guide *Litigating Securities Class Actions*. An esteemed voice on all sides of the legal and financial markets, in 2008 the SEC and Treasury called on Max to provide guidance on regulatory changes being considered as the accounting profession was experiencing tectonic shifts shortly before the financial crisis.

Max also serves the academic community in numerous capacities. A long-time member of the Board of Trustees of Baruch College, he served as the President of the Baruch College Fund from 2015-2019 and now serves as its Chairman. In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College, and in 2019, was awarded an honorary Doctor of Laws degree at Baruch's commencement, the highest honor Baruch College confers upon an individual for non-academic achievement. The award recognized his decades-long dedication to the mission and vision of the College, and in bestowing it, Baruch described Max as "one of the most influential individuals in the history of Baruch College."

A member of the Dean's Council to Columbia Law School, Max has taught Profession of Law, an ethics course at Columbia Law School, and serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. In February 2011, Max received Columbia Law School's most prestigious and highest honor, "The Medal for Excellence." This award is presented

**BLB&G**  Bernstein Litowitz
Berger & Grossmann LLP

annually to Columbia Law School alumni who exemplify the qualities of character, intellect, and social and professional responsibility that the Law School seeks to instill in its students. As a recipient of this award, Max was profiled in the Fall 2011 issue of *Columbia Law School Magazine.* Max is a member of the American Law Institute and an Advisor to its Restatement Third: Economic Torts project.

Among numerous charitable and volunteer works, Max is a significant and long-time contributor to Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the many legal problems they face. In recognition of their personal support of the organization, Max and his wife, Dale Berger were awarded the "Above and Beyond Commitment to Justice Award" by Her Justice in 2021 for being steadfast advocates for women living in poverty in New York City. In addition to his personal support of Her Justice, Max has ensured BLB&G's long-time involvement with the organization. Max is also an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his commitment to, service for, and work in the community. A celebrated photographer, Max has held two successful photography shows that raised hundreds of thousands of dollars for City Year and Her Justice. He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max Berger Pre-Law Program at Baruch College.

EDUCATION: Baruch College-City University of New York, B.B.A., Accounting, 1968; President of the student body and recipient of numerous awards. Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law.*

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Court of Appeals for the Second Circuit; U.S. Supreme Court.

**GERALD H. SILK**'s practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability, and the fiduciary duties of corporate officials, as well as general commercial and corporate litigation. He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context.

Jerry is a member of the firm's Management Committee. He also oversees the firm's New Matter department in which he, along with a group of attorneys, financial analysts and investigators, counsels institutional clients on potential legal claims. In December 2014, Jerry was recognized by *The National Law Journal* in its inaugural list of "Litigation Trailblazers & Pioneers" – one of several lawyers in the country who have changed the practice of litigation through the use of innovative legal strategies – in no small part for the critical role he has played in helping the firm's investor clients recover billions of dollars in litigation arising from the financial crisis, among other matters.

In addition, *Lawdragon* magazine, which has named Jerry one of the "100 Securities Litigators You Need to Know," one of the "500 Leading Lawyers in America," and one of America's top 500 "Rising Stars" in the legal profession, also profiled him as part of its "Lawyer Limelight" special series, discussing subprime litigation, his passion for plaintiffs' work and the trends he expects to see in the market. Recognized as one of an elite group of notable practitioners, *Chambers USA* ranked Jerry nationally "for his expertise in a range of cases on the plaintiff side." He is also named as a "Litigation Star" by *Benchmark*, is recommended by the Legal 500 USA guide in the field of plaintiffs' securities litigation, and has been selected by Thomson Reuters as a *Super Lawyer* every year since 2006.

In the wake of the financial crisis, he advised the firm's institutional investor clients on their rights with respect to claims involving transactions in residential mortgage-backed securities (RMBS) and collateralized debt obligations (CDOs). His work representing Cambridge Place Investment



Management Inc. on claims under Massachusetts state law against numerous investment banks arising from the purchase of billions of dollars of RMBS was featured in a 2010 *New York Times* article by Gretchen Morgenson titled, "Mortgage Investors Turn to State Courts for Relief."

Jerry also represented the New York State Teachers' Retirement System in a securities litigation against the General Motors Company arising from a series of misrepresentations concerning the quality, safety, and reliability of the Company's cars, which resulted in a $300 million settlement. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion. In addition, he is actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation – which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.

A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Jerry served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Jerry lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including his most recent article, "SEC Statement On Emerging Markets Is A Stunning Failure," which was published by *Law360* on April 27, 2020. He has authored numerous additional articles, including: "Improving Multi-Jurisdictional, Merger-Related Litigation," American Bar Association (February 2011); "The Compensation Game," *Lawdragon*, (Fall 2006); "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?," 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation," 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers," *New York Business Law Journal*, Vol. 1, No. 1 (Fall 1997).

Jerry has also been a commentator for the business media on television and in print. Among other outlets, he has appeared on NBC's *Today*, and CNBC's *Power Lunch*, *Morning Call*, and *Squawkbox* programs, as well as being featured in *The New York Times*, *Financial Times*, *Bloomberg*, *The National Law Journal*, and the *New York Law Journal*.

EDUCATION: Wharton School of the University of Pennsylvania, B.S., Economics, 1991. Brooklyn Law School, J.D., *cum laude,* 1995.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**JOHN C. BROWNE**'s practice focuses on the prosecution of securities fraud class actions. He represents the firm's institutional investor clients in jurisdictions throughout the country and has been a member of the trial teams of some of the most high-profile securities fraud class actions in history.

John was Lead Counsel in the *In re Citigroup, Inc. Bond Action Litigation,* which resulted in a $730 million cash recovery – the second largest recovery ever achieved for a class of purchasers of debt securities. It is also the second largest civil settlement arising out of the subprime meltdown and financial crisis. John was also a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.19 billion – one of the largest securities fraud recoveries in history.

Other notable litigations in which John served as Lead Counsel on behalf of shareholders include *In re Refco Securities Litigation,* which resulted in a $407 million settlement, *In re the Reserve Fund Securities and Derivative Litigation,* which settled for more than $54 million, *In re King*



*Pharmaceuticals Litigation*, which settled for $38.25 million, *In re RAIT Financial Trust Securities Litigation*, which settled for $32 million, and *In re SFBC Securities Litigation,* which settled for $28.5 million.

Most recently, John served as lead counsel in the *In re BNY Mellon Foreign Exchange Securities Litigation,* which settled for $180 million; *In re State Street Corporation Securities Litigation*, which settled for $60 million; and the *Anadarko Petroleum Corporation Securities Litigation*, which settled for $12.5 million. John also represents the firm's institutional investor clients in the appellate courts, and has argued appeals in the Second Circuit, Third Circuit and, most recently, the Fifth Circuit, where he successfully argued the appeal in the *In re Amedisys Securities Litigation*.


In recognition of his achievements and legal excellence, *Law360* has twice named John a "Class Action MVP" (one of only four litigators selected nationally), and was named a "Litigation Trailblazer" by *The National Law Journal*. He is regularly named to lists of leading practitioners by *Lawdragon, Legal 500,* and Thomson Reuters' *Super Lawyers*.

Prior to joining BLB&G, John was an attorney at Latham & Watkins, where he had a wide range of experience in commercial litigation, including defending corporate officers and directors in securities class actions and derivative suits, and representing major corporate clients in state and federal court litigations and arbitrations.

John has been a panelist at various continuing legal education programs offered by the American Law Institute ("ALI") and has authored and co-authored numerous articles relating to securities litigation.

EDUCATION: James Madison University, B.A., Economics, *magna cum laude*, 1994. Cornell Law School, J.D., *cum laude,* 1998; Editor of the *Cornell Law Review*.

BAR ADMISSIONS: New York; U.S. District Court for the Southern District of New York; U.S. Courts of Appeals for the Second, Third and Fifth Circuits.


**AVI JOSEFSON** prosecutes securities fraud litigation for the firm's institutional investor clients, and has participated in many of the firm's significant representations, including *In re SCOR Holding (Switzerland) AG Securities Litigation*, which resulted in a recovery worth in excess of $143 million for investors. He was also a member of the team that litigated the *In re OM Group, Inc. Securities Litigation*, which resulted in a settlement of $92.4 million.

As a member of the firm's new matter department, Avi counsels institutional clients on potential legal claims. He has presented argument in several federal and state courts, including an appeal he argued before the Delaware Supreme Court.

Recognized as a "Leading Plaintiff Financial Lawyer" by *Lawdragon*, Avi is also actively involved in the M&A litigation practice, and represented shareholders in the litigation arising from the proposed acquisitions of Ceridian Corporation and Anheuser-Busch. A member of the firm's subprime litigation team, he has participated in securities fraud actions arising from the collapse of subprime mortgage lender American Home Mortgage and the actions against Lehman Brothers, Citigroup and Merrill Lynch, arising from those banks' multi-billion dollar loss from mortgage-backed investments. Avi has prosecuted actions against Deutsche Bank and Morgan Stanley arising from their sale of mortgage-backed securities, and is advising U.S. and foreign institutions concerning similar claims arising from investments in mortgage-backed securities.

Avi practices in the firm's Chicago and New York offices.

**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

EDUCATION: Brandeis University, B.A., *cum laude,* 1997.  Northwestern University, J.D., 2000; *Dean's List*; Justice Stevens Public Interest Fellowship (1999); Public Interest Law Initiative Fellowship (2000).

BAR ADMISSIONS: Illinois, New York; U.S. District Courts for the Southern District of New York and the Northern District of Illinois.

**MICHAEL D. BLATCHLEY**'s practice focuses on securities fraud litigation. He is currently a member of the firm's new matter department in which he, along with a team of attorneys, financial analysts, forensic accountants, and investigators, counsels the firm's clients on their legal claims.

Michael has also served as a member of the litigation teams responsible for prosecuting a number of the firm's cases. For example, Michael was a key member of the team that recovered $150 million for investors in *In re JPMorgan Chase & Co. Securities Litigation*, a securities fraud class action arising out of misrepresentations and omissions concerning JPMorgan's Chief Investment Office, the company's risk management systems, and the trading activities of the so-called "London Whale." He was also a member of the litigation team in *In re Medtronic, Inc. Securities Litigation*, an action arising out of allegations that Medtronic promoted the Infuse bone graft for dangerous "off-label" uses, which resulted in an $85 million recovery for investors.  In addition, Michael prosecuted a number of cases related to the financial crisis, including several actions arising out of wrongdoing related to the issuance of residential mortgage-backed securities and other complex financial products.

Most recently, he was a member of the team that achieved a $250 million recovery for investors in *In re Allergan, Inc. Proxy Violation Securities Litigation*, a precedent-setting case alleging unlawful insider trading by hedge fund billionaire Bill Ackman.

Among other accolades, Michael has been repeatedly named to *Benchmark Litigation*'s "Under 40 Hot List," selected as a leading plaintiff financial lawyer by *Lawdragon*, and recognized as a "Rising Star" by Thomson Reuters' *Super Lawyers.* He frequently presents to public pension fund professionals and trustees concerning legal issues impacting their funds, has authored numerous articles addressing investor rights, including, for example, a chapter in the Practising Law Institute's *2017 Financial Services Mediation Answer Book*, and is a regular speaker at institutional investor conferences.  While attending Brooklyn Law School, Michael held a judicial internship position for the Honorable David G. Trager, United States District Judge for the Eastern District of New York.  In addition, he worked as an intern at The Legal Aid Society's Harlem Community Law Office, as well as at Brooklyn Law School's Second Look and Workers' Rights Clinics, and provided legal assistance to victims of Hurricane Katrina in New Orleans, Louisiana.

EDUCATION:  University of Wisconsin, B.A., 2000.  Brooklyn Law School, J.D., *cum laude,* 2007; Edward V. Sparer Public Interest Law Fellowship, William Payson Richardson Memorial Prize, Richard Elliott Blyn Memorial Prize, Editor for the *Brooklyn Law Review,* Moot Court Honor Society.

BAR ADMISSIONS: New York, New Jersey; U.S. District Courts for the Southern District of New York, the District of New Jersey and the Western District of Wisconsin; U.S. Court of Appeals for the Ninth Circuit.

**SCOTT R. FOGLIETTA** focuses his practice on securities fraud, corporate governance, and shareholder rights litigation.  He is a member of the firm's New Matter Department, in which he, as part of a team of attorneys, financial analysts, and investigators, counsels Taft-Hartley pension funds, public pension funds, and other institutional investors on potential legal claims.

In addition to his role in the New Matter Department, Scott was also a member of the litigation team responsible for prosecuting *In re Lumber Liquidators Holdings, Inc. Securities Litigation*,



which resulted in a $45 million recovery for investors. He is also currently a member of the team prosecuting the securities fraud class action against FleetCor Technologies. For his accomplishments, Scott was recently named a New York "Rising Star" in the area of securities litigation by Thomson Reuters *Super Lawyers*.

Before joining the firm, Scott represented institutional and individual clients in a wide variety of complex litigation matters, including securities class actions, commercial litigation, and ERISA litigation. Prior to law school, Scott earned his M.B.A. in finance from Clark University and worked as a capital markets analyst for a boutique investment banking firm.

EDUCATION: Clark University, B.A., Management, *cum laude*, 2006. Clark University, Graduate School of Management, M.B.A., Finance, 2007. Brooklyn Law School, J.D., 2010.

BAR ADMISSIONS: New York; New Jersey.



## SENIOR COUNSEL

**RICHARD D. GLUCK** has almost 30 years of litigation and trial experience in bet-the-company cases.  His practice focuses on securities fraud, corporate governance, and shareholder rights litigation.  He has been named a *Super Lawyer* in securities litigation, recognized for achieving "the highest levels of ethical standards and professional excellence" by Martindale Hubbell®, and named one of San Diego's "Top Lawyers" practicing complex business litigation.

Since joining BLB&G, Rich has been a key member of the teams prosecuting a number of high-profile cases, including several RMBS class and direct actions against a number of large Wall Street Banks.  He was a senior attorney on the team prosecuting the *In re Lehman Brothers Equity/Debt Securities Litigation*, which resulted in over $615 million for investors and is considered one of the largest total recoveries for shareholders in any case arising from the financial crisis.  Specifically, he was instrumental in developing important evidence that led to the $99 million settlement with Lehman's former auditor, Ernst & Young – one of the top 10 auditor settlements ever achieved.  He also was a senior member of the teams that prosecuted the RMBS class actions against Bear Stearns, which settled for $500 million; JPMorgan, which settled for $280 million; Wilmington Trust, which settled for $210 million; and Morgan Stanley, which settled for $95 million.  He was also a key member of the trial teams that prosecuted the litigations against MF Global, which recovered $234.3 million on behalf of investors; and Genworth, which settled for $219 million.

Before joining BLB&G, Rich represented corporate and individual clients in securities fraud and consumer class actions, SEC investigations and enforcement actions, and in actions involving claims of fraud, breach of contract and misappropriation of trade secrets in state and federal courts and in arbitration.  He has substantial trial experience, having obtained verdicts or awards for his clients in multi-million dollar lawsuits and arbitrations.  Prior to entering private practice, Rich clerked for Judge William H. Orrick of the United States District Court for the Northern District of California.

Rich currently is a senior member of the teams prosecuting *In re Vale, S.A. Securities Litigation, In re Intel Securities Litigation, Qualcomm, Inc. Securities Litigation,* and a number of direct actions against Valeant Pharmaceuticals International, Inc. on behalf of almost two dozen institutional investors and government retirement systems.  He practices out of the firm's San Diego office.

Rich is a former President of the San Diego Chapter of the Association of Business Trial Lawyers and currently is a member of its Board of Governors.

EDUCATION:  California State University Sacramento, B.S., Business Administration, *with honors*, 1987.  Santa Clara University, J.D., *summa cum laude*, 1990; Articles Editor of the *Santa Clara Computer and High Technology Law Journal.*

BAR ADMISSIONS:  California; U.S. District Courts for the Central, Northern and Southern Districts of California.

**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

## ASSOCIATES

**AMANDA BOITANO** [Former Associate] practiced out of the New York office in the securities litigation department. She represented the firm's institutional investor clients in securities fraud-related matters.

Amanda is a 2018 graduate of New York University School of Law. While in law school, she served as a senior articles editor for the *Annual Survey of American Law* and as an extern in the Violent and Organized Crimes unit of the U.S. Attorney's Office of the Southern District of New York. Amanda has also been active in *pro bono* matters and has represented individuals in family law cases. Prior to attending law school, Amanda worked for Teach for America. She is also a *Jeopardy!* champion.

EDUCATION: William & Mary, B.A., 2013; *Dean's List*. New York University School of Law, J.D., 2018.

BAR ADMISSION: New York.

**MICHAEL M. MATHAI**'s practice focuses on securities fraud, corporate governance, and shareholder rights litigation. Michael was a member of the teams that achieved a $480 million recovery in securities litigation against Wells Fargo, a $240 million recovery in securities litigation against Signet Jewelers, a $192.5 million recovery in securities litigation against SCANA, a $175 million settlement in the derivative case against McKesson, and a $35 million recovery in securities litigation against Henry Schein. He is currently a member of the teams prosecuting securities class actions against Energy Transfer, Grand Canyon Education, CenturyLink, and Allergan, among others.

Prior to joining the firm, Michael was a litigation associate at O'Melveny & Myers LLP, where he represented financial services and other companies in securities class action, shareholder rights, antitrust, and commercial litigation matters in state and federal court. He also gained considerable experience representing companies and individuals in investigations and inquiries by regulatory bodies including the SEC, DOJ, FTC, and FINRA.

EDUCATION: Harvard University, A.B. *cum laude*, 2006, Economics. London School of Economics and Political Science, 2008, M.Sc., Economics. Columbia Law School, J.D., 2012; Harlan Fiske Stone Scholar.

BAR ADMISSION: New York.

**JULIA TEBOR** [Former Associate] practiced out of the New York office and prosecuted securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients. She was a member of the trial team that recovered $210 million on behalf of defrauded investors in *In re Wilmington Trust Securities Litigation*. She was a member of the teams prosecuting *In re Green Mountain Coffee Roasters, Inc. Securities Litigation* and *St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc.*

A former litigation associate with Seward & Kissel, Julia also has broad experience in white-collar, general commercial, and employment litigation matters on behalf of clients in the financial services industry, as well as in connection with SEC and DOJ investigations.

EDUCATION: Tufts University, B.A., Spanish & English, 2006, *Dean's List*. Boston University, School of Law, J.D., 2012, *cum laude; American Journal of Law and Medicine*, Notes Editor.

BAR ADMISSIONS: New York, Massachusetts.



## SENIOR STAFF ATTORNEYS

**ALEX DICKIN** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al, St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc., Hefler et al. v. Wells Fargo & Company et al., Fresno County Employees' Retirement Association v. comScore, Inc., In re Salix Pharmaceuticals, Ltd. Securities Litigation* and *In re Wilmington Trust Securities Litigation.*

Prior to joining the firm in 2014, Alex was an attorney at Labaton Sucharow, where he focused on residential mortgage-backed securities litigation. Previously, Alex was an associate at Herbert Smith Freehills, where he worked on M&A, private equity and corporate restructuring agreements, among other responsibilities.

EDUCATION:  Macquarie University, B.B.A. 2005; L.L.B. 2008, with *Honors.*

BAR ADMISSION:  New York.

**MATTHEW MULLIGAN** has worked on  numerous matters at BLB&G, including *City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al, In re SunEdison, Inc., Securities Litigation, In re Green Mountain Coffee Roasters, Inc. Securities Litigation, In re Wilmington Trust Securities Litigation, In re Merck & Co., Inc. Securities Litigation (VIOXX-related), In re State Street Corporation Securities Litigation, Dexia Holdings, Inc. v. JP Morgan, Minneapolis Firefighters' Relief Association v. Medtronic, Inc. et al., In re Pfizer Inc. Shareholder Derivative Litigation* and *In re The Mills Corporation Securities Litigation.*

Prior to joining the firm in 2008, Matthew worked as a contract attorney on numerous complex matters, including securities fraud litigation.

EDUCATION:  Trinity University, B.A, 2001.  Tulane Law School, J.D., 2004.

BAR ADMISSIONS: New York.

## STAFF ATTORNEYS

**JADE ALLAMBY** [Former Staff Attorney] worked on *In re CenturyLink Sales Practices and Securities Litigation.*

Prior to joining the firm, Jade was a staff attorney at Selendy & Gay PLLC, where she worked on complex securities fraud and other litigation.  Jade previously worked as a contract attorney at Constantine Cannon LLP, where she worked on anti-trust litigation.

EDUCATION:  Sarah Lawrence College, B.A., 2006.  Georgetown University Law Center, J.D., 2011.  University Paris 1 Pantheon-Sorbonne, LL.M., 2011.  Georgetown University Law Center, LL.M., 2012.

BAR ADMISSIONS:  New York.



**ROBERT BLAUVELT** has worked on several matters at BLB&G, including *In re CenturyLink Sales Practices and Securities Litigation, Lehigh County Employees' Retirement System v. Novo Nordisk A/S et al* and *City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al.*

Prior to joining the firm, Robert worked at Milberg LLP where he worked on several antitrust matters. Robert has also worked at Quinn Emanuel Urquhart & Sullivan LLP where he worked on complex litigations involving collateralized debt obligations and residential mortgage-backed securities.

EDUCATION: Montclair State University, B.A., 2001. New England School of Law, J.D., 2005. Montclair State University, M.A., 2015.

BAR ADMISSIONS: New York, New Jersey.


**UJU CHUKWUANU** has worked on several matters at BLB&G, including *Lehigh County Employees' Retirement System v. Novo Nordisk A/S et al* and *In re SCANA Corporation Securities Litigation.*

Prior to joining the firm, Uju was an attorney at Lehman Brothers Holdings Inc. (in Estate), where she worked on litigation involving disputed collateral and derivatives portfolio valuations.

EDUCATION: University of Nigeria, Enugu Campus, LL.B., Honors, c*um laude*, 2001. Nigerian Law School Abuja, Nigeria, B.L., Honors, 2002. The University of Texas School of Law at Austin, LL.M., 2009.

BAR ADMISSION: New York.


**SAKYUNG HAN** [Former Staff Attorney] has worked on several matters at BLB&G, including *In re CenturyLink Sales Practices and Securities Litigation* and *In re Qualcomm Inc. Securities Litigation.*

Prior to joining the firm, Sakyung was a contract attorney at Goldman Sachs, Global Compliance division, where he worked on compliance testing. Sakyung previously worked as a contract attorney with several firms where he worked on banking investigations.

EDUCATION: Emmanuel Bible College, B.Th., 2004. Wilfrid Laurier University, B.A., 2008. Rutgers University School of Law, J.D., 2011.

BAR ADMISSION: New York, New Jersey.


**SCOTT HORLACHER** has worked on numerous matters at BLB&G, including *In re Wilmington Trust Securities Litigation, JPMorgan Mortgage Pass-Through Litigation, In re State Street Corporation Securities Litigation, In re The Reserve Fund Securities and Derivative Litigation* and *In re Tronox, Inc., Securities Litigation.*

Prior to joining the firm in 2011, Scott was Vice President at Richard C. Breeden & Co. LLC, where he worked on corporate governance matters.

EDUCATION: University of Virginia, B.A., *with Distinction*, 1997. University of Virginia School of Law, J.D., 2000.

BAR ADMISSIONS: New York, Connecticut.


Bernstein Litowitz
Berger & Grossmann LLP

**ARTHUR LEE** [Former Staff Attorney] has worked on numerous matters at BLB&G, including *In re Bank of New York Mellon Corp. Forex Transactions Litigation, JPMorgan Mortgage Pass-Through Litigation, In re Merck & Co., Inc. Securities Litigation (VIOXX-related), Dexia Holdings, Inc. v. JP Morgan, In re Citigroup Inc. Bond Litigation* and *In re Pfizer Inc. Shareholder Derivative Litigation*.

Prior to joining the firm in 2010, Arthur worked as an associate at Sichenzia Ross Friedman Ference LLP.

EDUCATION:  Rutgers, The State University of New Jersey, B.A., 2003; B.S, 2003.  Fordham University School of Law, J.D., 2006.

BAR ADMISSIONS:  New York.


**JULIUS PANELL** has worked on numerous matters at BLB&G, including *In re Henry Schein, Inc. Securities Litigation, In re Signet Jewelers Limited Securities Litigation, Hefler et al. v. Wells Fargo & Company et al.* and *Fresno County Employees' Retirement Association v. comScore, Inc.*

Prior to joining the firm, Julius worked as a contract attorney on numerous complex litigations, including shareholder derivative and class action lawsuits.  Julius began his legal career at a solo practice, working on all facets of civil and criminal matters.

EDUCATION:  Queens College, B.A., 1992.  John Jay College of Criminal Justice, M.A., 1996. New York Law School, J.D., 2000.

BAR ADMISSIONS:  New York.


**ROBERT JEFFREY POWELL** has worked on numerous matters at BLB&G, including *Hefler et al. v. Wells Fargo & Company et al., Bach v. Amedisys, Inc., Fernandez, et al v. UBS AG, et al ("UBS Puerto Rico Bonds"), In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Green Mountain Coffee Roasters, Inc. Securities Litigation, In re Genworth Financial Inc. Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, Bear Stearns Mortgage Pass-Through Litigation, Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc., et al., SMART Technologies, Inc. Shareholder Litigation* and *In re Citigroup Inc. Bond Litigation.*

Prior to joining the firm in 2011, Jeff was a litigation associate at Pillsbury Winthrop LLP and Constantine Cannon LLP.

EDUCATION:  University of the South, B.A., *magna cum laude*, 1992; Phi Beta Kappa.  Harvard Law School, J.D., 2001.

BAR ADMISSIONS:  New York.


**JESSICA PURCELL** has worked on numerous matters at BLB&G, including *In re Henry Schein, Inc. Securities Litigation, In re Signet Jewelers Limited Securities Litigation, In re Wilmington Trust Securities Litigation, In re Allergan, Inc. Proxy Violation Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation* and *In re Citigroup Inc. Bond Litigation*.

Prior to joining the Firm in 2011, Jessica was a contract attorney at Constantine & Cannon, LLP.



EDUCATION:  Georgetown University, B.S., Business Administration (Accounting) 2002. Catholic University of America, Columbus School of Law, J.D., *cum laude*, 2006.

BAR ADMISSIONS:  Connecticut, New York.


**BRIGITTA SPIERS** [Former Staff Attorney] has worked on several matters at BLB&G, including *Lehigh County Employees' Retirement System v. Novo Nordisk A/S et al.* and *City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al.*

Prior to joining the firm, Brigitta worked as a staff attorney at Milbank, Tweed, Hadley, & McCloy LLP, where she worked on complex litigations and bankruptcy actions, and as a contract attorney at Cohen Milstein Sellers & Toll PLLC, where she worked on several class action litigations involving residential mortgage backed-securities.

EDUCATION:  Victoria University of Wellington, New Zealand, B.A., 2000.  Victoria University Law School of Wellington, New Zealand, LL.B., 2000.

BAR ADMISSION:  New York.

# Exhibit 5B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil Action No. 18-296 (MJD/KMM)

---

**DECLARATION OF KEIL M. MUELLER**
**IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND LITIGATION EXPENSES, FILED ON BEHALF OF**
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

I, Keil M. Mueller, hereby declare under penalty of perjury as follows:

1.      I am a shareholder in the law firm of Stoll Stoll Berne Lokting & Shlachter

P.C. ("Stoll Berne").  My firm serves as co-Lead Counsel for Plaintiffs and the Class in the

above-captioned action (the "Action").  I submit this declaration in support of Lead

Counsel's application for an award of attorneys' fees in connection with services rendered

in the Action, as well as for payment of expenses incurred by my firm in connection with

the Action.  I have personal knowledge of the matters set forth herein.[1]

2.      My firm, as Court-appointed Lead Counsel in the Action, was involved in all

aspects of the prosecution and resolution of the Action, as set forth in the Joint Declaration

of Michael D. Blatchley and Keil Mueller in Support of (I) Plaintiffs' Motion for Final

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings
defined in the Stipulation and Agreement of Settlement dated January 29, 2021, and
previously filed with the Court. *See* ECF No. 354-1.

Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's

Motion for an Award of Attorneys' Fees and Litigation Expenses, filed herewith.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating

the amount of time spent by each Stoll Berne attorney and professional support staff

employee involved in this Action who devoted ten or more hours to the Action from its

inception through and including November 19, 2020 and the lodestar calculation for those

individuals based on my firm's current hourly rates.  The schedule was prepared from

contemporaneous daily time records regularly prepared and maintained by Stoll Berne.

4.      As the partner responsible for supervising my firm's work on this case, I

reviewed these time and expense records to prepare this declaration.  The purpose of this

review was to confirm both the accuracy of the time entries and expenses and the necessity

for, and reasonableness of, the time and expenses committed to the litigation.  As a result

of this review, reductions were made in the exercise of counsel's judgment.  In addition,

all time expended in preparing this application for fees and expenses has been excluded.

5.      Following this review and the adjustments made, I believe that the time

reflected in the firm's lodestar calculation and the expenses for which payment is sought

as stated in this declaration are reasonable in amount and were necessary for the effective

and efficient prosecution and resolution of the litigation.  In addition, based on my

experience in similar litigation, the expenses are all of a type that would normally be billed

to a fee-paying client in the private legal marketplace.

6.      The hourly rates for the Stoll Berne attorneys and professional support staff

employees included in Exhibit 1 are the same as, or comparable to, the rates submitted by

my firm and accepted by courts for lodestar cross-checks in other securities class action litigation fee applications.

7.     My firm's rates are set based on periodic analysis of rates used by firms performing comparable work and that have been approved by courts.   Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

8.     The total number of hours expended on this Action by my firm from its inception through and including November 19, 2020, is 10,560.7 hours.  The total lodestar for my firm for that period is $4,263,365.25.  My firm's lodestar figures are based upon the firm's hourly rates, which do not include costs for expense items.

9.     None of the attorneys listed in Exhibit 1 to this declaration and included in my firm's lodestar for the Action are (or were) "contract attorneys."  All attorneys and employees of the firm listed in the attached schedule work (or worked) at Stoll Berne's offices at 209 SW Oak Street, Portland, Oregon 97214 and, like every other attorney and employee of Stoll Berne, work (or worked) remotely following the onset of the COVID-19 pandemic.  Except for the partners listed in the attached schedule, all of the other attorneys and professional support staff listed in the schedule are (or were) W-2 employees of the firm and were not independent contractors issued Form 1099s.  Thus, the firm pays FICA and Medicare taxes on their behalf, along with state and federal unemployment taxes. These employees are (or were) fully supervised by the firm's partners and have (or had)

access to secretarial, paralegal, and information technology support.  Stoll Berne also assigns a firm email address to each attorney or other employee it employs, including those listed.

10.    As detailed in Exhibit 2, my firm is seeking payment for a total of $13,213.65 in expenses incurred in connection with the prosecution of this Action from its inception through and including June 14, 2021.  The following is additional information regarding certain of the expenses stated on Exhibit 2 to this declaration:

(a)    **Out-of-Town Travel** ($9,027.03).  Stoll Berne has incurred travel expenses for its attorneys to attend hearings and depositions conducted in this case and to attend the mediation session before Judge Phillips in Corona Del Mar, California.  The expenses reflected in Exhibit 2 are the expenses actually incurred by my firm or reflect "caps" on travel costs based on the following criteria: (i) airfare is capped at coach rates; (ii) hotel charges per night are capped at $350 for "high cost" locations and $250 for "lower cost" locations, as categorized by IRS guidelines (the relevant cities and how they are categorized are reflected on Exhibit 3); and (iii) meals while traveling are capped at $20 per person for breakfast, $25 per person for lunch, and $50 per person for dinner.

(b)    **Court Reporting & Transcripts** ($3,383.60). The charges reflected are for out-of-pocket payments to a court reporting service for certified transcripts of depositions taken in this matter.

11.    The expenses incurred in this Action are reflected in the records of my firm, which are regularly prepared and maintained in the ordinary course of business.  These

4

records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

12.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and the attorneys still employed with the firm and involved in this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on June 15, 2020

_____*/s/ Keil M. Mueller*_____
Keil M. Mueller

**EXHIBIT 1**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

**TIME REPORT**

Inception through and including November 19, 2020

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Keith S. Dubanevich | 322.9 | 635 | $205,041.50 |
| Timothy S. DeJong | 412.9 | 605 | $249,804.50 |
| Keil M. Mueller | 1861.9 | 470 | $875,093.00 |
| **Associates** | | | |
| Lydia Anderson-Dana | 393.6 | 415 | $163,344.00 |
| Cody Berne | 355.7 | 415 | $147,615.50 |
| Megan Houlihan | 70.2 | 415 | $29,133.00 |
| **Staff Attorneys** | | | |
| Holly Cresswell | 207.8 | 365 | $75,847.00 |
| Erika Edwards | 157 | 365 | $57,305.00 |
| Matt Greeley-Roberts | 809.4 | 365 | $295,431.00 |
| Andrew Huang | 432 | 365 | $157,680.00 |
| Elizaabeth Hysinger | 120 | 365 | $43,800.00 |
| Jennifer Kinzey | 977.3 | 365 | $356,714.50 |
| Carlo Labrado | 567.2 | 365 | $207,028.00 |
| C. Atha Mansoory | 1112.9 | 365 | $406,208.50 |
| Jonathan Martinez | 196 | 365 | $71,540.00 |
| Elizabeth Rivera | 619.6 | 365 | $226,154.00 |
| David Schor | 1594.7 | 365 | $582,065.50 |
| Jennifer Smith | 162.35 | 365 | $59,257.75 |
| **Paralegals** | | | |
| Wes Mueller | 187.25 | 290 | $54,302.50 |
| | | | |
| **TOTALS:** | **10,560.7** | | **$4,263,365.25** |

**EXHIBIT 2**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

**EXPENSE REPORT**

Inception through and including June 14, 2021

| CATEGORY | AMOUNT |
|---|---|
| Online Legal Research | $169.30 |
| Service of Process and Document Retrieval | $255.72 |
| Hand Delivery Charges | $6.00 |
| Out of Town Travel* | $9,027.03 |
| Court Fees | $372.00 |
| Court Reporting & Transcripts | $3,383.60 |
| | |
| **TOTAL:** | **$13,213.65** |

**\*** This includes hotels in the "higher-cost" cities of Palo Alto and Newport Beach, capped at $350 per night, and the "lower-cost" city of Minneapolis capped at $250 per night.

**EXHIBIT 3**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

**FIRM BIOGRAPHY**

# Stoll Berne

## ABOUT STOLL BERNE

Since its inception in 1978, Stoll Berne has achieved extraordinary results for its clients in class actions and other types of investor, consumer and business litigation. The firm regularly represents clients in federal and state courts and has earned a reputation as a leading plaintiffs' class action firm in Oregon and elsewhere. The firm has represented investors in numerous securities fraud class actions, consumers in consumer protection class actions and antitrust cases, and employees in class actions involving wage and hour claims. The firm also has represented clients in class actions involving environmental claims and health care issues.

The firm also has represented clients, in most cases serving as lead or co-lead counsel, in many class action securities cases including:

- *Ciuffitelli v. Deloitte & Touche LLP, et al.* (D. Or. 2016)

- *In re JPMorgan Chase & Co. Securities Litigation* (S.D.N.Y. 2012)

- *Louisiana Municipal Employees' Retirement System v. Bank of New York Mellon Corp.* (S.D.N.Y. 2011)

- *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Vestas Wind Systems A/S* (D. Or. 2011)

- *Zucco Partners, LLC v. Digimarc Corp.* (D. Or. 2004)

- *Central Laborers Pension Fund v. Merix Corp.* (D. Or. 2004)

- *In re Southern Pacific Funding Corp. Securities Litigation* (D. Or. 2001)

- *In re Assisted Living Concepts, Inc. Securities Litigation* (D. Or. 1999)

- *In re Louisiana-Pacific Corp. Securities Litigation* (D. Or. 1995)

- *In re Flir Systems, Inc. Securities Litigation* (D. Or. 1995)

- *Flecker v. Hollywood Entertainment Corp.* (D. Or. 1995)

- *Gordon v. Floating Point Systems, Inc.* (D. Or. 1989)

# Stoll Berne

Stoll Berne was co-lead counsel in a class action on behalf of investors who lost in excess of $300 million of investments with various entities aligned or affiliated with Aequitas Holdings, Aequitas Capital Management and Aequitas Commercial Finance. The lawsuit, *Ciuffitelli v. Deloitte & Touche LLP, et al.*, was filed in 2016 for violations of the Oregon Securities Law against various professionals who were participants in a Ponzi-scheme perpetrated by the Aequitas entities. Defendants include Deloitte & Touche, Sidley & Austin and TD Ameritrade. Settlements totaling $234.6 million on behalf of investors and returning approximately 90% of investors' out-of-pocket losses to the class received final approval of the court. Settlement approval was given by the Federal Court in December 2019 and settlement payments have been processed. This is believed to be the largest recovery in a securities case in Oregon history.

In securities class actions, Stoll Berne won an $88 million jury verdict against an investment banking firm in *In re Melridge, Inc. Securities Litigation,* 87-1426-FR (D. Or. 1988) and a $7.2 million jury verdict against one of the Big Four accounting firms in *Barlean v. Black & Co.*, 9012-07865 (Mult. Co. Cir. Ct. 1992).

In addition to its trial successes, securities class action cases where the firm was lead or co-lead counsel resulted in substantial settlements in *In re JPMorgan Chase & Co. Securities Litigation* -- $150 million; *Louisiana Municipal Employees' Retirement System v. Bank of New York Mellon Corp.* -- $180 million; *In re Southern Pacific Funding Corp. Securities Litigation* -- $19.5 million; *In re Assisted Living Concepts, Inc. Securities Litigation* -- $43.5 million; *In re Louisiana-Pacific Corp. Securities Litigation* -- $65.1 million; and *Flecker v. Hollywood Entertainment Corp.* -- $15 million.

Stoll Berne has represented plaintiffs in many other types of class actions as well, including *Reynolds v. Hartford*, 01-1529-BR (D. Or.) (obtained an $85 million settlement as lead counsel in a nationwide Fair Credit Reporting Act class action); *Razilov v. Nationwide Mut. Ins. Co.*, 01-1466-BR (D. Or.) (obtained a $19 million settlement as lead counsel in another Fair Credit Reporting Act); *Craig v. Rite Aid,* 4:08-CV-02317 (M.D. Pa.) (represented Oregon class members in $20.9 million national settlement of overtime claims by Assistant Managers); *In Re: Farmers Insurance Exchange Claims Representatives' Overtime Pay Litig.*, MDL Docket Nos. 1439 A & (B) (D. Or.) (FLSA multi-district class action, member of Steering Committee and co-trial counsel in liability phase of 1439 A cases)*; Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, 3:09-CV-320-HU (D. Or.) (obtained an $11.3 million settlement as lead counsel on behalf of healthcare providers in a breach of contract class action against the largest PPO in the country).

Lawyers at the firm are active in the community and have held leadership positions with the Federal Bar Association, Oregon Trial Lawyers Association, Multnomah Bar Association, and Oregon State Bar. The firm donates a fixed percentage of its gross revenues each year to charitable organizations and is one of the largest contributors to the Campaign for Equal Justice, which provides funding for legal services to low-income Oregonians. The firm's lawyers coach high school mock trial teams, donate their time to pro bono legal activities, including representing seniors, abused spouses, indigent clients and migrant workers, and are involved with community organizations such as Self Enhancement, Inc., Cycle Oregon, Stand for Children, CASA, Hands On Portland, and Oregon Food Bank.  Stoll Berne attorneys have been consistently recognized by their peers in numerous professional listings, including *Chambers USA: America's Leading Lawyers*, *The Best Lawyers in America*, *Benchmark Litigation Guide*, and *Oregon Super Lawyers.*

# Stoll Berne

## CASE TEAM

## Partners

<u>Keith Dubanevich:</u>  Keith concentrates his practice in complex dispute resolution and has represented a wide variety of companies in arbitration and in litigation in more than a dozen different jurisdictions. He has extensive experience handling multi-state antitrust cases, consumer litigation and securities disputes. He was recently Associate Attorney General and Chief of Staff at the Oregon Department of Justice where he managed securities litigation on behalf of the state employee's pension fund and supervised antitrust investigations and prosecutions. Keith received his law degree, *cum laude*, in 1983 from Tulane University, his Mediation Certificate in 1997 from A.A. White Dispute Resolution Center, and his B.S., Public Administration, with high honors, in 1980 from Northeastern University.  Keith is a current Commissioner on the Oregon Law Commission and is ranked in *Benchmark Litigation, Oregon Super Lawyers,* and *The Best Lawyers in America* (Lawyer of the Year, Portland; Litigation-Antitrust in 2020). Keith's experience in securities litigation include:

Stoll Berne obtained a $180 million settlement on behalf of Bank of New York Mellon investors in a lawsuit alleging that the bank operated a deceptive foreign currency exchange program. The lawsuit further alleged that the bank had misled its investors about the profitability and viability of this line of business. The matter is *Bank of New York Mellon Securities Class Action* and Stoll Berne served as Special Assistant Attorneys General to lead plaintiff the State of Oregon.

Stoll Berne served as Special Assistant Attorneys General to the State of Oregon in its role as co-lead plaintiff in a securities fraud class action lawsuit against JPMorgan Chase. Along with co-counsel, the firm obtained a $150 million settlement. *In re JPMorgan Chase & Co. Securities Litigation.*

In a securities fraud lawsuit, *OPERF v Marsh*, alleging that the defendant misrepresented key information about its services and finances, Stoll berne obtained reversal of the trial court's dismissal of the case for the lead plaintiff State of Oregon Public Employee Retirement Fund. The lawsuit alleged that when the truth came to light, and as a result of misstatements, Oregon's Public Employee Retirement System lost in excess of $10 million. Over the course of more than a decade of litigation, Stoll Berne argued the case to the trial court, twice before the Oregon Court of Appeals, and before the Oregon Supreme Court and in the course of doing so established important precedent regarding the "fraud on the market doctrine" in Oregon.

Acting as Special Assistant Attorneys General to the State of Oregon in the *Oppenheimer Funds Securities Action*, Stoll Berne obtained a $20 million settlement on behalf of the Oregon College Savings Plan in a lawsuit against Oppenheimer Funds. The lawsuit alleged that Oppenheimer Funds violated the Oregon Securities Law in connection with its Core Bond Fund, resulting in significant losses incurred by college savings accounts invested through the Plan. The settlement provided relief to Oregonians in, or about to enter, college and who had relied on funds in their college savings accounts to assist with tuition.

<u>Timothy DeJong:</u>  Tim is a litigator emphasizing complex business, securities and intellectual property disputes. Tim has experience in litigation matters involving patent infringement, class actions, violations of state and federal securities statutes, construction defect, insurance coverage and employment-related disputes. He received his law degree, Order of the Coif, in 1991 from the

# Stoll Berne

University of Oregon School of Law and his B.A., with honors, in 1988 from Western Washington University. Tim has been recognized by *Benchmark Litigation, Chambers USA, Oregon Super Lawyers* (Top 50 Oregon)*, The Best Lawyers in America* (Lawyer of the Year in Portland for Litigation-Patent in 2021) and *The Portland Business Journal* recognized him as among the "Best of the Bar" in the field of intellectual property. Before joining Stoll Berne, Tim clerked for the Honorable Robert E. Jones (District of Oregon). Tim's experience in securities litigation includes:

> Stoll Berne was co-lead counsel in what is believed to be the largest settlement of a securities case in Oregon history in representing investors in the case arising out of the Aequitas Ponzi scheme, asserting claims against Aequitas' auditors, lawyers, and others for participant/aider liability under the Oregon Securities Law. The case is *Ciuffitelli v. Deloitte & Touche LLP, et al.*

> In a securities class action, *Louisiana-Pacific Corp. Securities Litigation*, Tim helped to obtain a $65 million settlement as one of the lead attorneys for the shareholders. The lawsuit arose out of the defendant's misrepresentations regarding its oriented-strandboard siding.

> The firm recovered $43.5 million on behalf of investors in Assisted Living Concepts in a nationwide securities class action arising out of accounting for related party transactions. The case is *In re Assisted Living Concepts Securities Litigation*. The recovery obtained included $13.5 million from the company's auditor KPMG, which was at the time one of the largest recoveries against an accounting firm in Oregon history.

> In *In re Southern Pacific Funding Corp. Securities*, Stoll Berne obtained more than $20 million in total settlements on behalf of shareholders of Southern Pacific Funding Corp. in a securities class action arising out of the mortgage securitization company's account for residual securities interests.

> Stoll Berne obtained an $8 million settlement on behalf of the Oregon Public Employees Retirement Fund (OPERF) in a securities fraud litigation against American International Group, Inc. (AID). The matter is *State of Oregon v. American International Group, Inc.* The lawsuit arose out of AIG's 2005 and 2006 restatements of its financial result in which AIG conceded that it had misled investors about the company's financial performance. When the restatements became public, OPERF and other investors suffered significant losses on their investments in AIG.

**Keil Mueller:**  Keil Mueller is a trial lawyer who represents individuals, governmental entities, and businesses in a variety of complex disputes, with a particular emphasis on securities and financial fraud litigation. He received his law degree, *cum laude,* from the New York University School of Law in 2005. Keil is a member of the Public Investors Advocate Bar Association (PIABA) and is ranked in *Benchmark Litigation, Oregon Super Lawyers,* and *The Best Lawyers in America.* Keil's experience in securities litigation include:

> Stoll Berne served as Special Assistant Attorneys General to the State of Oregon in its role as co-lead plaintiff in a securities fraud class action lawsuit against JPMorgan Chase. Along with co-counsel, the firm obtained a $150 million settlement. *In re JPMorgan Chase & Co. Securities Litigation.*

# Stoll Berne

Stoll Berne obtained a $180 million settlement on behalf of Bank of New York Mellon investors in a lawsuit alleging that the bank operated a deceptive foreign currency exchange program. The lawsuit further alleged that the bank had misled its investors about the profitability and viability of this line of business. The matter is *Bank of New York Mellon Securities Class Action* and Stoll Berne served as Special Assistant Attorneys General to lead plaintiff the State of Oregon.

Acting as Special Assistant Attorneys General to the State of Oregon in the *Oppenheimer Funds Securities Action*, Stoll Berne obtained a $20 million settlement on behalf of the Oregon College Savings Plan in a lawsuit against Oppenheimer Funds.  The lawsuit alleged that Oppenheimer Funds violated the Oregon Securities Law in connection with its Core Bond Fund, resulting in significant losses incurred by college savings accounts invested through the Plan. The settlement provided relief to Oregonians in, or about to enter, college and who had relied on funds in their college savings accounts to assist with tuition.

Stoll Berne obtained an $8 million settlement on behalf of the Oregon Public Employees Retirement Fund (OPERF) in a securities fraud litigation against American International Group, Inc. (AID). The matter is *State of Oregon v. American International Group, Inc.* The lawsuit arose out of AIG's 2005 and 2006 restatements of its financial result in which AIG conceded that it had misled investors about the company's financial performance. When the restatements became public, OPERF and other investors suffered significant losses on their investments in AIG.

## Associates

**Lydia Anderson-Dana:**  Lydia is an associate in the litigation group. She received her law degree from the University of California, Berkeley, School of Law in 2016, where she was Senior Executive Editor of the California Law Review. She received her B.A. with honors in Political Science and Women and Gender Studies in 2008 from Washington University in St. Louis.  Before joining Stoll Berne, Lydia clerked for the Ninth Circuit and District of Oregon. Lydia is a current Lawyer Representative for the Ninth Circuit, District of Oregon and board member for the Oregon Chapter of the Federal Bar Association. Lydia is ranked as a Rising Star by *Oregon Super Lawyers* and a Ones to Watch by *The Best Lawyers in America*.  Lydia's experience in securities litigation includes:

> Stoll Berne was co-lead counsel in what is believed to be the largest settlement of a securities case in Oregon history in representing investors in the case arising out of the Aequitas Ponzi scheme, asserting claims against Aequitas' auditors, lawyers, and others for participant/aider liability under the Oregon Securities Law. The case is *Ciuffitelli v. Deloitte & Touche LLP, et al.*

**Cody Berne:**  Cody is an associate in the litigation group and focuses his practice on representing investors and businesses who lost money because of investment fraud. He received his law degree from UC Davis School of Law, Order of the Coif, in 2014 and his B.A., Politics, in 2003 from Pomona College.  During law school, he was an intern for the Eastern District of California, District Court. Before joining the firm, Cody worked as a deputy district attorney at the Multnomah County District Attorney's Office where he tried over 30 trials to verdict and represented investors in investment fraud at another Portland law firm. He received the Haglund Award in 2016 from the Multnomah Bar Association and is ranked by *The Best Lawyers in America*. He is a current Arbitrator for both FINRA

# Stoll Berne

and the National Futures Association (NFA) and is a member of the Public Investors Advocate Bar Association (PIABA). Cody's experience in securities litigation includes:

> Book of Business Sale: Represented a Registered Investment Adviser (RIA) and an Investment Adviser Representative (IAR) in a dispute about the sale of a book of business and an RIA.

> ESOP Shareholder Inspection Lawsuit: Represented participants in an Employee Stock Ownership Plan (ESOP) in a shareholder inspection lawsuit, along with an investigation into alleged breaches of fiduciary duty by the ESOP's directors and trustee.

**Meg Houlihan:**  Meg Houlihan is an associate in the firm's litigation group where she focuses on complex litigation matters. Prior to joining Stoll Berne, Meg was an associate at another Portland law firm and served as a judicial law clerk for the Court of Appeals, Ninth Circuit, and the U.S. District Court for the District of Oregon. Meg received her law degree in 2015 from Yale Law School and her B.A, *summa cum laude*. in Political Science and History in 2010 from Gonzaga University. Meg received the 2019 Oregon State Bar President's Special Award of Appreciation and is named a Rising Star by *Oregon Super Lawyers.*

## Staff Attorneys

**Holly Cresswell:**   Prior to joining the case team, Holly worked as a document review attorney for Epiq Document Review, Review Right/Haystack Document Review, and Consilio Services Document Review. Prior to that, Holly worked for many years on the Legal and Compliance Futures and Securities teams at INTL FCStone Inc., OptionsXpress by Charles Schwab, and J.P. Morgan Chase.

EDUCATION:  Michigan State University, B.A., 2001. Michigan State University- Detroit College of Law, J.D., 2005.

BAR ADMISSIONS:  Illinois.

**Erika Edwards:**   Prior to joining the case team, Erika worked as outside counsel for Araujo Law Offices, PA; was a sole practitioner in Chicago; worked for Empire Today, LLC as a compliance attorney; was a partner at Lopez, Howard, Edwards & Hernandez, LLC; and was an assistant attorney general for the Illinois Attorney General's Office.

EDUCATION:  Jackson State University, B.A., *cum laude*, 1995; Howard University School of Law, J.D., 1998.

BAR ADMISSIONS:  Illinois.

**Matt Greeley-Roberts:**   Prior to joining the case team, Matt was a contract attorney for Rosta & Connelly and Daigle Law. He was also a solo practitioner specializing in business matters and intellectual property.

EDUCATION:  University of Oregon, B.S., 2013; University of Oregon School of Law, J.D., 2018.

BAR ADMISSIONS:  Oregon.

# Stoll Berne

**Andrew Huang:**   Prior to joining the case team, Andrew worked as a document reviewer and contract analyst for FTI Consulting, Axiom, and Inspired Review.

EDUCATION:  University of Missouri-Kansas City School of Law, LL.M, 2008; University of Missouri-Kansas City School of Law, J.D., 2011.

BAR ADMISSIONS:  California; District of Columbia.

**Elizaabeth Hysinger:**   Prior to joining the case team, among other positions, Elizaabeth was a Regulatory Affairs and Data Privacy Legal Counsel for Bloomberg LP; a Business Banking Legal Counsel for JP Morgan Chase Bank; and a Vice President/Legal Counsel, Complex Trade Representation - Investment Banking for Deutsche Bank. She also worked as a document reviewer for Fronteo and Advanced Discovery.

EDUCATION:  University of Pennsylvania, B.S.; Columbia Business School/Columbia University School of Law, JD/MBA Joint Degree; New York University School of Law, LL.M. in Taxation.

BAR ADMISSIONS:  New York.

**Jennifer Kinzey:**   Jennifer has worked on several matters for Stoll Berne, including *Ciuffitelli v. Deloitte & Touche LLP, et al.*  Prior to joining the case team, she was a special prosecutor for the Multnomah County District Attorney's Office.

EDUCATION:  Morningside College, B.A., 2013; Drake University Law School, J.D. with High Honors, 2017.

BAR ADMISSIONS:  Oregon.

**Carlo Labrado:**   Prior to joining the case team, Carlo was a staff attorney for Robbins Geller Rudman & Dowd LLP and Scott and Scott. Carlo also has many years of document review experience, including for TCDI, Blood, Hurst & O'Reardon LLP, and FTI Consulting.

EDUCATION:  University of California, Irvine, B.A.; University of San Diego School of Law, J.D.

BAR ADMISSIONS:  Illinois.

**C. Atha Mansoory:**   Prior to joining the case team, Atha owned a solo legal practice focusing on business, real estate, and contract law.

EDUCATION:  Colgate University, B.A., 2003; University of Oregon School of Law, J.D., 2008; Portland State University, Graduate Certificate in Real Estate Development, 2012.

BAR ADMISSIONS:  Oregon.

**Jonathan Martinez:**   Prior to joining the case team, Jonathan was a document review attorney for Special Counsel, Hire Counsel, and Cadence Counsel. Jonathan also has experience as an associate attorney for RaeAnn Compton, P.A. and Morris Law, P.A.

EDUCATION:  Florida Northeastern Illinois University, B.A., *magna cum laude*, 2010; Florida Coastal School of Law, J.D., 2014.

# Stoll Berne

BAR ADMISSIONS:  Florida.

<u>Elizabeth Rivera:</u>   Prior to joining the case team, Elizabeth was a contract attorney for Beacon Hill Staffing Group, FTI Consulting, Special Counsel, and UnitedLex.

BAR ADMISSIONS:  New York.

<u>David Schor:</u>   David has worked on several matters for Stoll Berne, including *Ciuffitelli v. Deloitte & Touche LLP, et al.* and *Oregon v. Monsanto et al.*  Prior to joining the case team, David was an Assistant Attorney General for the Oregon Department of Justice's Civil Recovery Unit.

EDUCATION:  University of Oregon, B.A, 2005; Lewis & Clark Law School, J.D., 2013.

BAR ADMISSIONS:  Oregon.

<u>Jennifer Smith:</u>   Prior to joining the case team, Jennifer was a contract attorney/document reviewer for Advanced Discovery, Inc., McDermott Will & Emery, Special Counsel, Law Resources, Hire Counsel, Kelly Services, and Axiom Law.  She was also the Chief Deputy Clerk for the Probate Division of the Clerk of the Circuit Court of Cook County.

EDUCATION:  Yale University, B.A., 1983; New York University School of Law, J.D., 1987; Rijksuniversiteit Leiden, Post-Graduate Certificate in European Community Law, 1991.

BAR ADMISSIONS:  Illinois.

## Paralegals

<u>Wes Mueller:</u>   Wes is the firm's Litigation Support Specialist/Litigation Paralegal. Wes assists clients and attorneys in case management and preparation for depositions, arbitrations, hearings, and trials. Wes also supports the Information Systems department and is involved in designing, implementing, and maintaining Relativity workspaces. In 2017, We became a Certified User for the e-discovery software, Relativity. In this capacity, Wes processes, analyzes, and reviews data in one application to simplify the e-discovery workflows.

# Exhibit 5C

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil Action No. 18-296 (MJD/KMM)

## DECLARATION OF GREGG M. FISHBEIN
## IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES, FILED ON BEHALF OF LOCKRIDGE GRINDAL NAUEN P.L.L.P.

I, Gregg M. Fishbein, hereby declare under penalty of perjury as follows:

1.      I am a partner in the law firm of Lockridge Grindal Nauen P.L.L.P. ("Lockridge").  I submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the above-captioned class action (the "Action"), as well as for payment of expenses incurred by my firm in connection with the Action.  I have personal knowledge of the matters set forth herein.[1]

2.      My firm acted as Liaison Counsel for Plaintiffs in this Action.  In that capacity, we worked with Lead Counsel on numerous aspects of the litigation, including in formulating and carrying out litigation strategy, communicating with the Court, providing

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated January 29, 2021, and previously filed with the Court. *See* ECF No. 354-1.

input on important case filings, preparing for and participating in Court conferences and hearings, and advising Lead Counsel regarding local practice and procedure.

3.    The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each Lockridge attorney and professional support staff employee involved in this Action who devoted ten or more hours to the Action from its inception through and including November 19, 2020 and the lodestar calculation for those individuals based on my firm's current hourly rates. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by Lockridge.

4.    As the partner responsible for supervising my firm's work on this case, I reviewed these time and expense records to prepare this declaration. The purpose of this review was to confirm both the accuracy of the time entries and expenses and the necessity for, and reasonableness of, the time and expenses committed to the litigation. As a result of this review, reductions were made in the exercise of counsel's judgment. In addition, all time expended in preparing this application for fees and expenses has been excluded.

5.    Following this review and the adjustments made, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as stated in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation. In addition, based on my experience in similar litigation, the expenses are all of a type that would normally be billed to a fee-paying client in the private legal marketplace.

6.    The hourly rates for the Lockridge attorneys and professional support staff employees included in Exhibit 1 are the same as, or comparable to, the rates submitted by

my firm and accepted by courts for lodestar cross-checks in other securities class action litigation fee applications.

7.    My firm's rates are set based on periodic analysis of rates used by firms performing comparable work and have been approved by courts.  Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

8.    The total number of hours expended on this Action by my firm from its inception through and including November 19, 2020, is 446.15 hours.  The total lodestar for my firm for that period is $385,783.75.  My firm's lodestar figures are based upon the firm's hourly rates, which do not include costs for expense items.

9.    As detailed in Exhibit 2, my firm is seeking payment for a total of $2,161.80 in expenses incurred in connection with the prosecution of this Action from its inception through and including June 11, 2021.

10.    The expenses incurred in this Action are reflected in the records of my firm, which are regularly prepared and maintained in the ordinary course of business.  These records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

11.    With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and the attorneys still employed with the firm and involved in this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed on June 14, 2021

/s/ Gregg M. Fishbein
Gregg M. Fishbein

**EXHIBIT 1**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

**TIME REPORT**

Inception through and including November 19, 2020

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Richard Lockridge | 41.00 | $1,050.00 | $43,050.00 |
| Gregg Fishbein | 334.00 | $950.00 | $317,300.00 |
| | | | |
| **Associates** | | | |
| Kate Baxter-Kauf | 11.55 | $525.00 | $6,063.75 |
| | | | |
| **Paralegals** | | | |
| Amber Raak | 59.60 | $325.00 | $19,370.00 |
| | | | |
| **TOTALS:** | **446.15** | | **$385,783.75** |

5

**EXHIBIT 2**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

**EXPENSE REPORT**

Inception through and including June 11, 2021

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | 200.00 |
| Online Legal Research | 20.10 |
| Courthouse Records Copying | 862.00 |
| Transcripts | 516.20 |
| Hand Delivery Charges | 178.00 |
| Internal Copying | 191.30 |
| Food & Beverage | 194.20 |
| **TOTAL:** | **$2,161.80** |

6

**EXHIBIT 3**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

**FIRM BIOGRAPHY**





Founded in 1978, Lockridge Grindal Nauen P.L.L.P. ("LGN") has extensive experience in antitrust, securities, environmental, employment, health care, commercial, intellectual property, and telecommunications law. Our clients include agri-businesses, business enterprises, banks, local governments, trade and industry associations, real estate developers, telecommunications providers, health care professionals, and insurers.

LGN is one of the preeminent class action law firms in the country, has vast experience representing banks, financial institutions, shareholders, and other institutional investors in complex litigation, and has extensive experience litigating cases in Minnesota and across the country. LGN attorneys are assisted by more than 20 paralegals and government relations specialists, and an extensive support staff. The firm has offices in Minneapolis, Minnesota, Washington, D.C., and Bismark, North Dakota.

540264.1



**LOCKRIDGE GRINDAL NAUEN**
P.L.L.P.
Attorneys at Law

**Richard A. Lockridge**
*Partner*
612-339-6900
ralockridge@locklaw.com

### Practices

Antitrust Law
Securities Litigation
Products Liability & Consumer Fraud Litigation

### Education

University of Iowa Law School, 1974,
*with high distinction*

### Bar Admissions

1974, Iowa
1976, Minnesota

### Court Admissions

Minnesota
Iowa
U.S. District Court, District of Minnesota
U.S. Court of Appeals, Third Circuit

# Richard A. Lockridge

Richard Lockridge heads the firm's class action practices. He is a former Minnesota Assistant Attorney General and was a law clerk to the Honorable Myron H. Bright of the Eighth Circuit Court of Appeals. During the past forty years, Mr. Lockridge has focused his practice on securities and antitrust class action litigation. He has led litigation teams in a number of high profile complex class action matters and has developed a national reputation for fairness, integrity and superior legal representation.

## Representative Cases

- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* MDL No. 1720 (E.D.N.Y.)
- *In re Regions Morgan Keegan Securities, Derivative and ERISA Litigation,* MDL No. 2009 (W.D. Tenn.) (Lead Counsel)
- *In re WorldCom, Inc. Securities Litigation,* No. 02-CV-3288 (S.D.N.Y)
- *In re Countrywide Financial Securities Litigation* No. 07-CV-05295 (C.D. Cal.)
- *Kirk Dahl, et al. v. Bain Capital Partners, LLC, et al.* (the Private Equity Antitrust Litigation) No. 07-CV-12388) (D. Mass.)
- *In re Baycol Products Litigation,* MDL No. 1431 (D. Minn.) (Co-Lead Counsel)
- *In re Vioxx Litigation,* MDL No. 1657 (E.D. La.)
- *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation,* MDL No. 081905 (D. Minn.)
- *David L. Antonson, et al. v. Leon H. Robertson, et al., (American Carriers Securities Litig.)* No. 88-2567 (D. Kan.);
- *In re Baycol Products Litig., MDL No. 1431 (D. Minn.);*
- *Benacquisto, et al. v. American Express Financial Corp. et al., Master File No. 00-1980 (D. Minn.), No. 96-18477 (Henn. Cty. Dist. Ct.) (insurance class action);*
- *In re Catfish Antitrust Litig., MDL No. 928 (N.D. Miss.);*
- *In re Citi-Equity Group, Inc. Securities Litig., No. 3-94-1024 (D. Minn.);*
- *In re Digi International Inc. Securities Litig., No. 97-5 (D. Minn.);*
- *In re Flat Glass Antitrust Litigation (II), MDL No. 1942 (W.D. Pa.);*
- *George Guenther, et al. v. Cooper Life Sciences, et al. (Cooper Life Sciences Securities Litig.), No. C 89-1823 MHP (N.D. Cal.);*
- *In re LaserMaster Technologies, Inc. Securities Litig., No. 4-95-631 (D. Minn.);*

© Lockridge Grindal Nauen P.L.L.P. 2018  Minneapolis, MN (612) 339–6900  Washington, D.C. (202) 544–9840  Bismarck, ND (701) 426-7940  LOCKLAW.COM

- *Lockwood Motors, Inc., et al. v. General Motors Corporation*, No. 3-94-1141 (D. Minn);
- *In re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litig.*, MDL No. 1309 (D. Minn.);
- *Meyers v. The Guardian Life Insurance Company of America, Inc. Litig.*, No. 2:97CV35-D-B (N.D. Miss.);
- *In re Microcrystalline Cellulose Antitrust Litig.*, MDL No. 1402 (E.D. Pa.);
- *In re Monosodium Glutamate Antitrust Litig.*, MDL No. 1328 (D. Minn.);
- *In re New Steel Pails Antitrust Litig.*, No. C-1-91-213 (S.D. Ohio);
- *In re Piper Funds, Inc. Institutional Government Income Portfolio Litig.*, No. 3-94-587 (D. Minn.);
- *In re Polypropylene Carpet Antitrust Litig.*, MDL No. 1075 (N.D. Ga);
- *In re Regions Morgan Keegan Securities, Derivative and ERISA Litig.*, MDL No. 2009 (W.D. TN);
- *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784-SHM-DKV (W.D. Tenn.);
- *In re Residential Doors Antitrust Litig.*, MDL No. 1039 (E.D. Pa);
- *Richard J. Rodney, Jr., et al. v. KPMG Peat Marwick*, No. 4-95-CIV-800 (D. Minn.);
- *In re Select Comfort Corporation Securities Litig.*, No. 99-884 (D. Minn.);
- *Gary G. Smith, et al. v. Little Caesar Enterprises, Inc., et al. (Little Caesar Franchise Litig.)*, No. 93 CV 74041 DT (E.D. Mich.);
- *Alan B. Spitz and Linda Spitz, and Ann Novacheck v. Connecticut General Life Insurance Company*, MDL No. 1136 (C.D. Cal.);
- *In re Steel Drums Antitrust Litig.*, No. 887 (S.D. Ohio);
- *In re Summit Medical Systems, Inc. Securities Litig.*, No. 97-558 (D. Minn.);
- *In re Unisys Savings Plan Litig.*, No. 91-3067 (E.D. Pa.).
- *In re Wholesale Grocery Products Antitrust Litig.*, MDL No. 2090 (D. Minn). *In re ADC Telecommunications, Inc. Shareholders Litig.*, No. 27-cv-10-17053 (Henn. Cty. Dist. Ct.);
- *In re Air Cargo Shipping Services Antitrust Litig.*, No. 1:06-md-1775-CBA-VVP (E.D.N.Y.);
- *American Telephone and Telegraph Antitrust Litig.*, No. 81-2623 (D.D.C.);
- *In re AOL Time Warner Securities Litig.*, MDL No. 1500 (S.D.N.Y.);
- *Aviva Partners, LLC, v. Navarre Corp., et al.*, No. 05-1151 (D. Minn.);
- *In re Bioplasty Securities Litig.*, No. 4-91-689 (D. Minn.);
- *Chemical Distribution, Inc., et al. v. Akzo Nobel Chemicals, et al.*, MDL No. 1226 (N.D. Cal.);
- *In re Chronimed Inc., Securities Litig., Master File No. 01-1092 (D. Minn.);*
- *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litigation*, No. 1:11-md-2213-RPP (S.D.N.Y.);
- *In re Connecticut General Life Insurance Co. Premium Litig.*, MDL No. 1336 (C.D. Cal.);
- *In re Countrywide Financial Securities Litigation* No. 07-CV-05295 (C.D. Cal.);
- *In re Credit Suisse – AOL Securities Litig.*, No. 1:02-CV-12146-NG (D. Mass.);
- *Crosby v. Aid Association for Lutherans*, No. 00-CV-2112 (D. Minn.);
- *In re Delphi Corporation Securities, ERISA, and Shareholder Derivative Litig.*, No. 05-md-1725 (E.D. Mich.);
- *Dixie Brewing Company, Inc. v. John Barth, Inc. (In re Hops Antitrust Litig.)*, No. 8404434 (E.D. Pa.);

- *In re Domestic Air Transportation Antitrust Litig.*, MDL No. 861 (N.D. Ga.);
- *Durocher v. American Family Life Insurance Co.*, No. 97-CV-292 (Marinette Cty. Dist. Ct.);
- *In re Endotronics Securities Litig.*,  No. 4-87-130 (D. Minn.);
- *In re Federal National Mortgage Association Securities, Derivative and ERISA Litig.*, MDL No. 1668 (D.D.C.);
- *Fink v. Rainforest Café*, No. MC 00-451 (Henn. Cty. Dist. Ct.);
- *In re Flat Glass (I) Antitrust Litig.*, MDL No. 1200 (W.D. Pa.) ;
- *Funeral Consumers Alliance, Inc., et al. v. Service Corporation International, et al.*, No. H-05-3394 (S.D. Tex.);
- *In re Guidant Corp. Implantable Defibrillators Products Liability Litig.*, MDL No. 1708 (D. Minn.);
- *Haritos, et al. v. American Express Financial Advisors, Inc.*, No. 02-2255-PHX-PGR (D. Ariz.);
- *In re ICN/Viratek Securities Litig.*,  No. 87 Civ. 4296 (S.D.N.Y.);
- *Insulate SB, Inc. v. Abrasive Products & Equipment et al*, No. 13-cv-02664-ADM-SER (D. Minn.);
- *Johnson v. Kives (K-Tel Securities Litig.)*, No. 4-85-1216 (D. Minn.);
- *Khoday et al v. Symantec Corp. et al*, No. 11-cv-00180-JNT-TNL (D. Minn.);
- *In re King Pharmaceuticals, Inc. Securities Litig.*, No. 2:03-CV-77 (E.D. Tenn.);
- *Kirk Dahl, et al. V. Bain Capital Partners, LLC, et al. (Private Equity Antitrust Litigation)* No. 07-CV-12388 (D. Mass);
- *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, MDL No. 1891 (C.D. Cal.);
- *John S. Lawrence v. Philip Morris Companies, Inc., et al. (Philip Morris Securities Litig.)*, No. 94-1494 (E.D.N.Y.);
- *In re Lease Oil Antitrust Litig.*, MDL No. 1166 (S.D. Tex.);
- *Leetate Smith, et al. v. Merrill Lynch & Co., et al. (Orange County Bond Litig.)*, No. SACV-94-1063-LHM(EEx) (C.D. Cal.);
- *Glen Lewy 1990 Trust v. Investment Advisers, Inc., et al.*, No. CT-00-17047 (Henn. Cty. Dist. Ct.);
- *Low Density Polyethylene Resin Antitrust Litig.*, No. 82-cv-1093 (S.D.N.Y.);
- *Marksman Partners, L.P., et al. v. Chantal Pharmaceutical Corporation, et al.*, No. CV-96-0872-WJR (C.D. Cal.);
- *In re Medtronic, Inc. Implantable Defibrillator Products Liability Litig.*, MDL No. 1726 (D. Minn.);
- *In re Merck & Co., Inc., Securities, Derivative & ERISA Litig.*, No. 3:05-cv-1151 (D.N.J.);
- *In re Meridia Products Liability Litig.*, MDL No. 1481 (N. D. Ohio);
- *In re Methionine Antitrust Litig.*, MDL No. 1311 (N.D. Cal.);
- *Steven S. Mitchell v. Thousand Trails, Inc. (Thousand Trails Security Litig.)*, No. C86-146 (W.D. Wash.);
- *In re Nasdaq Market-Maker Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.);
- *Nelsen v. Craig-Hallum (Craig-Hallum Securities Litig.)*, No. 4-86-135 (D. Minn.);
- *In re Packaged Ice Antitrust Litig.*, MDL No. 1952, (E.D. Mich.);
- *In re Painewebber Securities Litig.*, No. 86-cv-6776 (S.D.N.Y.);
- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.);
- *In Re Propulsid Products Liability Litig.*, MDL No. 1355 (E.D. La.);
- *In re Puerto Rican Cabotage Antitrust Litigation*, MDL No. 1960, Case No. 3:08-md-1960 (D. Puerto Rico);

- *In re Retek, Inc. Securities Litig.*, No. 02-4209 (D. Minn.);
- *In re Rezulin Litig.*, MDL No. 1348 (S.D.N.Y.);
- *In re Riscorp, Inc. Securities Litig.*, No. CV-96-2374-CIV-T-23A (M.D. Fla.);
- *Rodney v. OCA, Inc., et al.*, No. 05-2219 (E.D. La.);
- *In re Scientific-Atlanta, Inc. Securities Litig.*, No. 1:01-CV-1950 (N.D. Ga.);
- *In re Serzone Products Liability Litig.*, MDL No. 1477 (S.D. W. Va.);
- *Spencer v. Comserv Corporation (Comserv Securities Litig.)*, No. 4-84-794 (D. Minn.);
- *In re Tamoxifen Citrate Antitrust Litig.*, MDL No. 1408 (E.D.N.Y.);
- *In re Telxon Securities Litig.*, No. 5:98-CV-2876 (N.D. Ohio);
- *In re Tricord Systems, Inc. Securities Litig.*, No. 3-94-746(D. Minn.);
- *In re Tyco International, Ltd., ERISA Litig.*, No. 02-cv-1357 (D.N.H.);
- *In re Vioxx Product Liability Litig.*, MDL No.1657 (E.D.La.);
- *In re Western Union Money Transfer Litig.*, No. CV 01 0335 (E.D.N.Y.);
- *William Stevenson, et al v. ev3, Inc. et al.* No 27-cv-13773 (Henn. Cty. Dist. Ct.);
- *In re Wirebound Box Antitrust Litig.*, MDL No. 793 (D. Minn.); and
- *In re Worldcom, Inc. Securities Litig.*, No. 02-CV-3288 (S.D.N.Y.).

## Presentations

- *HarrisMartin's Oil Spill Litigation Conference June 23, 2010 in New Orleans: The Exxon Valdez Experience: Lessons Learned*
- *The Exxon Valdez Experience presented at Louisiana State Bar Association's Gulf Coast Oil Spill Symposium, May 25, 2010 in New Orleans.*

## Professional Recognition

- Named a Minnesota Super Lawyer© from 2003-2017
- Recognized as one of the Top Minnesota Super Lawyers© in 2003

## Professional Associations

- American Association for Justice (AAJ)
- Committee to Support the Antitrust Laws (COSAL)
- Federal Bar Association
- Minnesota State Bar Association
- National Association of Shareholder & Consumer Attorneys (NASCAT)



LOCKRIDGE
GRINDAL
NAUEN
P.L.L.P.
Attorneys at Law
www.locklaw.com

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2018 | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | LOCKLAW.COM

**LOCKRIDGE
GRINDAL
NAUEN**
P.L.L.P.
Attorneys at Law



**Gregg M. Fishbein**
*Partner*
612-596-4044
gmfishbein@locklaw.com

### Practices
Securities Litigation
Business Litigation

### Education
Drake University, 1989, *with honors*, Order of the Coif, Order of the Barristers

### Bar Admissions
1989, Minnesota

### Court Admissions
Minnesota
U.S. District Court, District of Minnesota
U.S. Court of Appeals, Eighth Circuit
U.S. Court of Appeals, Sixth Circuit
U.S. Court of Appeals, First Circuit
U.S. Supreme Court
U.S. Tax Court

# Gregg M. Fishbein

Since joining the firm in July of 1994, Mr. Fishbein has specialized in class action and other complex commercial litigation. During the past twenty-three years of practice, he has been continuously active in class and complex litigation, including representation of plaintiff classes. He was on the trial team in Rainforest Café, Inc. v. State of Wisconsin Investment Board, et al., a shareholder rights action tried in the State Court of Minnesota on behalf of the State of Wisconsin Investment Board, Central Florida Investments, and 70 other former investors in the Rainforest Café. Mr. Fishbein was also part of the team that assisted plaintiffs' lead counsel in the In Re Worldcom Securities Litigation, a case that settled for over $6.1 billion. Mr. Fishbein is currently representing shareholders of Medtronic, Inc. and Johnson Controls, Inc. who were required to pay significant capital gains taxes as a result of tax inversions with Irish entities. He also represents a number of institutional entities that are involved in proceedings under Minnesota's Trust Instruction Proceedings statute.

Mr. Fishbein is a 1989 graduate of Drake University of Law School, where he was a member of the Order of the Coif and Order of the Barristers. While in law school, Mr. Fishbein was on both the Drake Law Review and the National Moot Court team and served as the National Student Director for the American Bar Association's Volunteer Income Tax Assistance program.

### Representative Cases
- *In re Regions Morgan Keegan Securities, Derivative and ERISA Litigation*, MDL No. 2009 (W.D. Tenn) — securities class action and derivative action resulting in recover of $125 million for the class.
- *In re Target Corporate Customer Data Breach Security Litigation*, MDL No. 2522 (D. Minn.)
- *Turnridge et al v. TruGreen Limited Partnership*, Case No. 27-CV-14-14711 (Henn. Cty. Dist. Ct.)
- *In re American Express Financial Advisors Securities Litigation*, Civil Action No. 1:04-CV-1773 (S.D.N.Y.) — securities class action which resulted in recovery of $100 million for the class.
- *In re AOL Time Warner Securities Litigation*, MDL No. 1500 (S.D.N.Y.) — securities class action which resulted in recovery of $2.65 billion for the class.

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2018   Minneapolis, MN (612) 339–6900   Washington, D.C. (202) 544–9840   Bismarck, ND (701) 426-7940 | LOCKLAW.COM

**Community Involvement**

- Minnesota Urban Debate League Board Member
- Robbinsdale Area Schools Financial Advisory Council
- City of Plymouth Charter Commission
- Plymouth New Hope Little League Board of Directors and Treasurer

- *In re OM Group, Inc. Securities Litigation*, No. 1:02 CV 2163 (N.D. Ohio) — securities class action which resulted in recovery of $92.4 million for the class.

- *Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.*, MDL No. 1584 (S.D.N.Y.) (Federal Home Loan Mortgage Corporation Securities Litigation) — securities class action which resulted in recovery of $410 million for the class.

- *In re Countrywide Financial Corporation Securities Litigation*, No. 07-CU-05295 (C.D, Cal.) — securities class action which resulted in recovery of $624 million for the class.

- *In re Worldcom, Inc. Securities Litigation* No. 02-CV-3288 (S.D. NY) — Securities class action which resulted in recovery of $6.13 billion for the class.

- *In re ADC Telecommunications, Inc. Shareholders Litig.*, No. 27-cv-10-17053 (Henn. Cty. Dist. Ct.);

- *In re Ancor Communications, Inc. Securities Litig.*, File No. 97-1696 (D. Minn.);

- *Arlene Gumm, et al.v. Alex Molinaroli, et al.*, No. 16-CV-1093-PP (E.D. Wis.);

- *In re ATS Medical, Inc. Shareholder Litig.*, No. 27-cv-10-12009 (Henn. Cty. Dist.Ct.);

- *In re Boston Scientific Corp. Securities Litig.*, No. 05-11934 (D. Mass.);

- *In re Ceridian Corp. Securities Litig.*, No. 97-2044 (D. Minn.);

- *In re Chronimed, Inc. Securities Litig.*, No. 01-CV-1092 (D. Minn.);

- *In re Citi-Equity Group, Inc. Securities Litig.*, No. 3-94-1024 (D. Minn.);

- *Ellen Jane Kutten, et al. v. Bank of America, N.A., et al.*, No. 06-937 (E.D. Mo.);

- *In re Equisure, Inc. Securities Litig.*, No. 97-2056 (D. Minn.);

- *George Siepel, et al. v. Bank of America, N.A., et al.*, No. 05-2393 (E.D. Mo.);

- *Glen Lewy 1990 Trust, et al. v. Investment Advisers, Inc., et al.*, No. CT 00-17047 (Henn. Cty. Dist. Ct.);

- *In re GT Interactive Software Corp. et al.*, No. 98-CV-0085 (S.D.N.Y.);

- *Haritos, et al. v. American Express Financial Advisors, Inc.*, No. 02-2255-PHX-PGR (D. Ariz.);

- *In re IKON Office Solutions, Inc. Securities Litig.*, No. 98-CV-4286 (E.D. Pa.);

- *Johannessohn et al v. Polaris Industries, Inc.*, No. 16-03348 (D. Minn);

- *Klein v. G&K Services, Inc. et al.;* No 16-03198 (D. Minn);

- *Leetate Smith, et al. v. Merrill Lynch & Co., et al.*, No. SACV-94-1063-LHM (C.D. Cal.) (Orange County Bond Litigation);

- *Little Gem Life Sciences LLC v. Orphan Medical, Inc., et al.*, No. 06-1377 (D. Minn.);

- *Luis et al v. RBC Capital Markets, LLC*, No. 16-03873 (D. Minn);

- *McFarlin v. Ernst & Young, LLP*, No. 99-CV-553 (D. Minn.);

- *In re Merck & Co., Inc., Securities, Derivative & ERISA Litig.*, No. 3:05-cv-1151 (D.N.J.);

- *In re Navarre Corp. Securities Litig.*, No. 99-CV-1955 (D. Minn.);

- *Orr v. Polaris Industries, Inc. et al.;* No. 16-03108 (D. Minn);

- *In re Oxford Health Plans, Inc. Securities Litig.*, No. 3-97-CV-2567 (D. Conn.);

- *In re Piper Funds, Inc. Institutional Government Income Portfolio Litig.*, No. 3-94-587 (D. Minn.);

- *Rainforest Café, Inc. v. State of Wisconsin Investment Board, et al.*, No. A03-0813 (D. Minn.);

- *In re Retek, Inc. Securities Litig.*, No. 02-4209 (D. Minn.);

- *Richard J. Rodney, Jr., et al. v. KPMG Peat Marwick*, No. 4-95-CV-800 (D. Minn.);
- *Ritchie Capital Management, L.L.C. et al v. BMO Harris Bank N.A.*, No. 15-01876 (D. Minn);
- *Shoemaker v. Cardiovascular Systems, Inc. et al.;* No. 16-00568 (D. Minn);
- *In re Telxon Securities Litig.*, No. 5:98-CV-2876 (N.D. Ohio); and
- *In re Tricord Systems Inc. Securities Litig.*, No. 3-94-746 (D. Minn).

## Presentations

- *The Charming Bernie Madoff Or, How Madoff fooled, bribed, lied and otherwise misled the SEC for at least 16 years.* Presented at the 2010 Made In America institutional investor conference in Las Vegas, Nevada.

- *How a New, More Powerful SEC Will Impact Your Funds.* Presented at the Annual Public Safety Pension & Benefits Seminar presented by the National Association of Police Organizations, Inc. in Las Vegas, Nevada in 2010

- *Post-Election Recap: How the Elections Will Affect Your Funds.* Presented at the Annual Public Safety Pension & Benefits Seminar presented by the National Association of Police Organizations, Inc. in Las Vegas, Nevada in 2009.

- *Portfolio Monitoring: Not Just for Your Stock Holdings.* Presented at the Annual Public Safety Pension & Benefits Seminar presented by the National Association of Police Organizations, Inc. in Las Vegas, Nevada in 2008.

## Publications

- *Internet Privacy: Does The Use of "Cookies" Give Rise To A Private Cause Of Action For Invasion Of Privacy In Minnesota?* Wm. Mitchell L. Rev. Volume 27, Number 3 (2001)



## LOCKRIDGE GRINDAL NAUEN
### P.L.L.P.
### Attorneys at Law

**From the Courtroom to the Capitol®**

© Lockridge Grindal Nauen P.L.L.P. 2018  Minneapolis, MN (612) 339–6900  Washington, D.C. (202) 544–9840  Bismarck, ND (701) 426-7940  LOCKLAW.COM

**LOCKRIDGE GRINDAL NAUEN**
P.L.L.P.
Attorneys at Law



**Kate M. Baxter-Kauf**
*Associate*
612-339-6900
[kmbaxter-kauf@locklaw.com](mailto:kmbaxter-kauf@locklaw.com)

**Practices**
Antitrust Law
Business Litigation
Securities Litigation
Data Breach Litigation

**Education**
University of Minnesota Law School, 2011
*magna cum laude*, Order of the Coif

**Bar Admissions**
2011, Minnesota

**Court Admissions**
Minnesota
U.S. District Court, District of Minnesota

# Kate M. Baxter-Kauf

Kate Baxter-Kauf's practice is concentrated in the firm's data breach, antitrust law, business litigation, and securities litigation practice groups. She represents individuals, consumers, financial institutions and small businesses in litigation to protect their rights and, most often, the rights of the class members they seek to represent. Ms. Baxter-Kauf is a 2011 magna cum laude and Order of the Coif graduate of the University of Minnesota Law School. While in law school, she served as an Articles Editor for the Minnesota Law Review and interned with the Honorable Magistrate Judge Janie S. Mayeron of the United States District Court for the District of Minnesota. Prior to joining the firm, Ms. Baxter-Kauf clerked for the Honorable Alan C. Page, the Honorable Helen M. Meyer, and the Honorable Christopher J. Dietzen, Associate Justices of the Minnesota Supreme Court.

Before law school, Ms. Baxter-Kauf was an award-winning coach of high school and college policy debate teams across the country and facilitated debate teams at Twin Cities urban middle and high schools. She coached the 2003 National Forensic League policy debate national champions.

## Representative Cases

- *In re: Yahoo! Inc. Customer Data Security Breach Litigation,* MDL No. 2752 (N.D. Cal.)
- *First Choice Federal Credit Union et al v. The Wendy's Company et al,* Civil No. 2:16-cv-00506 (W.D. Pa.)
- *In re: Target Corporate Customer Data Breach Security Litigation,* MDL No. 2522 (D. Minn.)
- *In re: Supervalu, Inc., Customer Data Security Breach Litigation,* MDL No. 2586 (D. Minn.)
- *In re: The Home Depot, Inc., Customer Data Security Breach Litigation,* MDL No. 2583 (N.D. Ga.)
- *In re: Community Health Systems, Inc., Customer Security Data Breach Litigation,* MDL No. 2595 (N.D. Ala.)
- *Soderstrom et al v. MSP Crossroads Apartments LLC et al,* Civil No. 16-cv-02784-SHM-dkv (W.D. Tenn.)
- *Khoday v. Symantec Corp.,* Case No. 11-cv-180-JRT-TNL (D. Minn.)
- *In re Medtronic, Inc. Shareholder Litigation,* A15-0858 (Minn.)

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2018 | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940  [LOCKLAW.COM](http://LOCKLAW.COM)

## Professional Recognition

- Named a Minnesota Rising Star from 2015-2017 by Super Lawyers®
- Named an 'Up & Coming Attorney' by Minnesota Lawyer for 2016.
- Named a 'North Star Lawyer' by the Minnesota State Bar Association for 2015 & 2016 in recognition of pro bono work.

## Community Involvement

- Minnesota Urban Debate League Advisory Board (Board Development Committee Chair)
- NARAL Pro-Choice Minnesota Foundation Board of Directors (Treasurer)
- American Constitution Society
- Randolph Heights PTA (Vice President)
- Macalester-Groveland Community Council (Elected At-Large Representative)

- *In re Regions Morgan Keegan Open-End Mutual Fund Litigation,* Master File No. 2:07-cv-02784-SHM-dkv (W.D. Tenn)
- *In re Wholesale Grocery Products Antitrust Litigation,* MDL No. 2090 (D. Minn.)
- *Turnidge et al v. TruGreen Limited Partnership,* Case No. 27-CV-14-14711 (Henn. Cty. Dist. Ct.)
- *UrbanWorks Architecture LLC v. Hunt Associates et al,* Nos. 27-CV-14-8415 & 27-CV-16-10241 (Henn. Cty. Dist. Ct.)

## Presentations

- 2016 Cyber Security Summit, Interactive Table Top Exercise on Preparing for and Reacting to Data Breach incidents (Counsel Panelist), Cyber Security Summit Minneapolis (October 11, 2016)
- 2011 J.D. Class Commencement Address, University of Minnesota Law School (May 14, 2011)

## Publications

- *Great Bites in Brief,* The Hennepin Lawyer (May/June 2017)
- *The Value of a Clerkship,* Minn. Lawyer JDs Rising (May 2013).
- *Lean In: A Review for Young Lawyers,* Minn. Lawyer JDs Rising (April 2013).
- *Environmental Justice and the BP Deepwater Horizon Oil Spill,* 20 N.Y.U. Environmental L.J. 99 (2012) (with Hari M. Osofsky, Bradley Hammer, Ann Mailander, Brett Mares, Amy Pikovsky, Andrew Whitney, & Laura Wilson).
- *Breastfeeding in Custody Proceedings,* 15 Rich. J.L. Pub. Int. 627 (2012).

## Professional Associations

- Federal Bar Association
- Minnesota State Bar Association (Appellate Practice Section and Participant, Public Defender Appellate Pro Bono Project)
- Hennepin County Bar Association (Civil Litigation Section Special Projects Co-Chair, Art and the Bar Committee Member)
- Minnesota Women Lawyers (Community Action & Advocacy Committee Member)
- National Association of Shareholder and Consumer Attorneys
- Minnesota Supreme Court Historical Society
- Minnesota Mothers' Attorney Association



LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Attorneys at Law

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2018 | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | LOCKLAW.COM

# Exhibit 5D

**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil Action No. 18-296 (MJD/KMM)

---

### DECLARATION OF GREGG LEVIN IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES FILED ON BEHALF OF MOTLEY RICE LLC

I, Gregg Levin, hereby declare under penalty of perjury as follows:

1.      I am a member of the law firm of Motley Rice LLC ("Motley Rice").[1]  I submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the "Action"), as well as for payment of Litigation Expenses incurred in connection with the Action.  I have personal knowledge of the facts stated in this declaration and, if called upon, could and would testify to these facts.

2.      My firm actively participated in the prosecution of the claims on behalf of the Class in this Action.  In particular, my firm performed work on behalf of the Class at the direction and under the supervision of Lead Counsel.  My firm participated in, among

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated January 29, 2021, and previously filed with the Court.  *See* ECF No. 354-1.

other tasks, consulting with Lead Counsel regarding litigation strategy and reviewing and analyzing documents produced in discovery by Defendants and third parties.

3.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff employee associated with Motley Rice who was involved in this Action and who devoted ten or more hours to the Action from April 20, 2018 through and including November 19, 2020.  The lodestar calculation for those individuals refer to my firm's hourly rates, which are set in accordance with paragraph 7 below.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by Motley Rice.

4.     As the member attorney responsible for supervising my firm's work on this case, I reviewed these time and expense records to prepare this declaration.  The purpose of this review was to confirm both the accuracy of the time entries and expenses and the necessity for, and reasonableness of, the time and expenses committed to the litigation.  As a result of this review, reductions were made in the exercise of counsel's judgment.  All time expended in preparing this application for fees and expenses has been excluded.

5.     Following this review and the adjustments made, I believe that the time reflected in my firm's lodestar calculation and the expenses for which payment is sought as stated in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.  In addition, based on my experience and understanding, the expenses are all of a type that would normally be billed to a fee-paying client in the private legal marketplace.

6.      The hourly rates for the attorneys and professional support staff included in Exhibit 1 are the same as, or comparable to, the rates submitted by my firm and accepted by courts for lodestar cross-checks in other securities class action fee applications.

7.      My firm's hourly rates are set based on periodic analysis of rates assigned to individuals who are performing comparable work at other firms and have been approved by courts.  Different timekeepers within the same employment category (*e.g.*, members, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years with Motley Rice, year in the current position (*e.g.*, years as a member), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

8.      The total number of hours expended on this Action by my firm from April 20, 2018 through and including November 19, 2020 is 3,008.95 hours.  The total lodestar for my firm for that period is $1,104,218.25.  My firm's lodestar figures are based upon the hourly rates described above, which do not include expense items.  Expense items are recorded separately, and these amounts are not duplicated in these hourly rates.

9.      As detailed in Exhibit 2, my firm is seeking payment for a total of $1,070.92 in expenses incurred from April 20, 2018 through and including November 19, 2020.

10.     The expenses incurred in this Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

11.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a copy of the Motley Rice Shareholder and Securities Fraud Resume.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on June 4, 2021.

_____

Gregg Levin

# EXHIBIT 1

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

## MOTLEY RICE LLC

## TIME REPORT

April 20, 2018 through and including November 19, 2020

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Levin, Gregg | 65.75 | $925.00 | $60,818.75 |
| Narwold, William | 20.00 | $1,100.00 | $22,000.00 |
| **Associates** | | | |
| Camm, Matthew | 16.75 | $425.00 | $7,118.75 |
| Moriarty, Christopher F. | 10.50 | $675.00 | $7,087.50 |
| Weatherby, Meredith | 60.00 | $575.00 | $34,500.00 |
| Williams, Erin | 87.75 | $550.00 | $48,262.50 |
| **Staff Attorneys** | | | |
| Jacobs, Rebecca | 18.50 | $400.00 | $7,400.00 |
| Quillin, Kelly | 61.25 | $400.00 | $24,500.00 |
| **Project Attorneys** | | | |
| Louie, Karen | 53.75 | $375.00 | $20,156.25 |
| **Contract Attorneys** | | | |
| Bailey, Steven | 211.35 | $300.00 | $63,405.00 |
| Barry, Michael | 590.65 | $300.00 | $177,195.00 |
| Beasley, Daniel | 36.90 | $280.00 | $10,332.00 |
| During, Vanessa | 1,113.75 | $360.00 | $400,950.00 |
| Graff, Stefan | 57.00 | $225.00 | $12,825.00 |
| Kelly, Phillip | 39.70 | $280.00 | $11,116.00 |
| Maghzi, Ameneh | 410.45 | $350.00 | $143,657.50 |
| Reyes, Paul | 72.90 | $360.00 | $26,244.00 |
| **Paralegals** | | | |
| Weil, Katherine M. | 82.00 | $325.00 | $26,650.00 |
| | | | |
| **TOTALS** | **3,008.95** | | **$1,104,218.25** |

**EXHIBIT 2**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**MOTLEY RICE LLC**

**EXPENSE REPORT**

April 20, 2018 through and including November 19, 2020

| CATEGORY | AMOUNT |
|---|---|
| Copying/Printing Costs | $133.98 |
| Telephone | $2.15 |
| Online Legal and Factual Research | $934.79 |
| | |
| **TOTAL:** | **$1,070.92** |

6

**EXHIBIT 3**

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

**MOTLEY RICE LLC**

**SHAREHOLDER AND SECURITIES FRAUD RESUME**

# SHAREHOLDER AND SECURITIES FRAUD RESUME



# INTRODUCTION

**Founded as a trial lawyers' firm with a complex litigation focus by Ron Motley, Joe Rice and nearly 50 other lawyers, Motley Rice LLC has become one of the nation's largest plaintiffs' law firms.**

Motley Rice LLC ("Motley Rice") is led by lawyers who received their training and trial experience in complex litigation involving in-depth investigations, discovery battles and multi-week trials.

From asbestos and tobacco to counter-terrorism and human rights cases, Motley Rice attorneys have shaped developments in U.S. jurisprudence over several decades. Shareholder litigation has earned an increasing portion of our firm's focus in recent years as threats to global retirement security have increased. Motley Rice seeks to create a better, more secure future for pensioners, unions, government entities and institutional investors through improved corporate governance and accountability.

## APPROACH TO SECURITIES LITIGATION

As concerns about our global financial system have intensified, so has our focus on securities litigation as a practice area. As one presenter at the 2009 International Foundation of Employee Benefit Plans annual conference noted, "2008 likely will go down in history as one of the worst years for retirement security in the United States."

Our securities litigation philosophy is straightforward – obtain the best possible results for our clients and any class of investors we represent. Unlike some other firms, we are extremely selective about the cases that we recommend our clients pursue, recognizing that many securities fraud class action cases filed each year are unworthy of an institutional investor's involvement for a variety of reasons.

Our attorneys have substantial experience analyzing securities cases and advising institutional investor clients, whether to seek lead-plaintiff appointment (alone or with a similarly-minded group), remain an absent class member, or consider an opt-out case based on the particular factual and legal circumstances of the case.

When analyzing new filings, our attorneys draw upon their securities, business, and litigation experience, which is supplemented by our in-house team of paralegals and business analysts. In addition, the firm has developed close working relationships with widely-respected forensic accountants and expert witnesses, whose involvement at the earliest stages of complex cases can be critical to determining the best course of action. If Motley Rice believes that a case deserves an institutional investor's involvement, we provide our clients with a detailed written analysis of potential claims and loss-recoupment strategies.

Motley Rice attorneys have secured important corporate governance reforms and returned money to shareholders in shareholder derivative cases, served as lead or co-lead counsel in several significant, multi-million dollar securities fraud class actions, and taken leadership roles in cases involving fiduciaries who failed to maximize shareholder value and fulfill disclosure obligations in a variety of merger and acquisition cases.



# OUR BACKGROUND IN COMPLEX LITIGATION

Motley Rice attorneys have been at the forefront of some of the most significant and monumental civil actions over the last 30 years. Our experience in complex trial litigation includes class actions and individual cases involving securities and consumer fraud, occupational disease and toxic tort, medical drugs and devices, environmental damage, terrorist attacks and human rights abuses.

## Tobacco Master Settlement Agreement

In the 1990s, Motley Rice attorneys and more than half of the states' attorneys general took on the tobacco industry. Armed with evidence acquired from whistleblowers, individual smokers' cases and tobacco liability class actions, the attorneys led the campaign in the courtroom and at the negotiation table to recoup state healthcare funds and exact marketing restrictions from cigarette manufacturers. The effort resulted in significant restrictions on cigarette marketing to children and culminated in the $246 billion Master Settlement Agreement, the largest civil settlement in U.S. history.

## Asbestos Litigation

From the beginning, our lawyers were integral to the story of how "a few trial lawyers and their asbestos-afflicted clients came out . . . to challenge giant asbestos corporations and uncover the greatest and longest business cover-up of an epidemic disease, caused by a product, in American history."[1] In addition to representing thousands of workers and family members impacted by asbestos, Motley Rice has represented numerous public entities, and litigated claims alleging various insurers of asbestos defendants engaged in unfair settlement practices in connection with the resolution of underlying asbestos personal injury claims. This litigation resulted in, among other things, an eleven-state settlement with Travelers Insurance Company.

## Anti-Terrorism and Human Rights

In *In re Terrorist Attacks on September 11, 2001*, Motley Rice attorneys brought a landmark lawsuit against the alleged private and state sponsors of al Qaeda and Osama bin Laden in an action filed on behalf of more than 6,500 family members, survivors, and those killed on 9/11—including the representation of more than 900 firefighters and their families. In prosecuting this action, Motley Rice has undertaken a global investigation into terrorism financing.

Our attorneys also initiated the *In re September 11 Litigation* and negotiated settlements for 56 families that opted out of the Victim Compensation Fund that far exceeded existing precedents at the time for wrongful death cases against the airline industry.

## BP PLC Oil Spill Litigation

In April 2010, the Deepwater Horizon disaster spilled approximately 4.9 million gallons of oil into the water, killed 11 oil rig workers, devastated the Gulf's natural resources and profoundly harmed the economic and emotional well-being of hundreds of thousands of people. The Deepwater Horizon Economic and Property Damages Settlement is the largest civil class action settlement in U.S. history. Motley Rice co-founder Joseph Rice is a Plaintiffs' Steering Committee member and served as one of the primary negotiators of that Settlement and the Medical Benefits Settlement. In addition, Rice led negotiations in the $1.028 billion settlement between the PSC and Halliburton Energy Services for its alleged role in the oil spill. Motley Rice attorneys continue to hold leadership roles in the litigation and are currently working to ensure that all qualifying oil spill victims are fairly compensated.

## Volkswagen 'Clean Diesel' Litigation

In 2015, Volkswagen Group's admission that it had programmed more than 11 million vehicles to cheat emissions tests and bypass standards sparked worldwide outrage. Motley Rice co-founder Joe Rice served as one of the lead negotiators in the nearly $15 billion settlement deal reached in 2016 for U.S. owners and lessees of 2.0-liter TDI vehicles, the largest auto-related consumer class action settlement in U.S. history. Rice and other Motley Rice attorneys also helped recover up to $4.4 billion with regards to affected 3.0-liter vehicles.

## Transvaginal Mesh Litigation

Motley Rice attorneys represent thousands of women and have played a leading role in litigation alleging debilitating and life-altering complications caused by defective transvaginal mesh devices. In 2014, Joe Rice, with co-counsel, negotiated the original settlement deal reached in In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation that numerous subsequent settlements with the manufacturer were modeled after.

## Opioid Litigation

At the forefront of litigation targeting the alleged overprescribing and deceptive marketing of addictive opioid painkillers, Motley Rice, led by attorney Linda Singer, the former Attorney General for the District of Columbia, serves as lead counsel for the first jurisdictions to file complaints in the most recent wave of litigation against pharmaceutical companies regarding the opioid crisis—the City of Chicago and Santa Clara County. In addition, the firm's co-founder Joe Rice serves as co-lead counsel in the *National Prescription Opiate Litigation* coordinated in the Northern District of Ohio. The firm represents 40 jurisdictions.

---

[1] Ralph Nader, commenting on the story told by the book *Outrageous Misconduct*.

Prior results do not guarantee a similar outcome.

CASES

## Securities Fraud Class Actions

***In Re 3M Co. Securities Litigation,*** No. 2:19-cv-15982 (D.N.J.) Motley Rice serves as co-lead counsel for securities fraud litigation filed by investors who allege 3M Co., and its executives failed to inform them of the scope of potential liability for its products containing toxic PFAS chemicals. Internal documents show that 3M knew for decades that PFAS chemicals posed a danger to the public, but the company continued to use them without warning the public. Shareholders allege that 3M and its executives did not adequately inform investors of the risks and potential liability the company faced, even as state and federal investigations and lawsuits expanded to address growing concerns between February 2017 and May 2019. Minnesota, New Jersey, and New Hampshire have sued the company for PFAS contamination in their water systems. The case is currently in discovery.

***In re Twitter Inc. Securities Litigation,*** No. 3:16-cv-05314 (N.D.Cal.) Motley Rice serves as lead counsel for Twitter Inc. shareholders who allege they were misled about the social media network's daily user growth during 2015. Twitter executives announced toward the end of 2014 that they expected the company's number of active users would grow to more than half a billion in the intermediate term, and would reach heights of more than a billion long term. When the public, however, later learned that actual user growth was slower than anticipated, the company's price per share drastically declined. The case is currently in discovery.

***In re Citigroup Inc. Securities Litigation,*** No. 07 Civ. 9901 (SHS) (DCF) (S.D.N.Y.). Motley Rice served as co-counsel in this securities fraud action alleging that Citigroup responded to the widely-known financial crisis by concealing both the extent of its ownership of toxic assets—most prominently, collateralized debt obligations (CDO) backed by nonprime mortgages—and the risks associated with them. By alleged misrepresentations and omissions of what amounted to more than two years of income and an entire significant line of business, Citigroup allegedly artificially manipulated and inflated its stock prices throughout the class period. Citigroup's alleged actions caused its stock price to trade in a range of $42.56 to $56.41 per share for most of the class period. These disclosures helped place Citigroup in serious danger of insolvency, a danger that was averted only through a $300 billion dollar emergency government bailout. On August 1, 2013, the Court approved the settlement resolving all claims in the Citigroup action in exchange for payment of $590 million for the benefit of the class.

***Alaska Electrical Pension Fund v. Pharmacia Corp.,*** No. 03-1519 (D.N.J.). Motley Rice served as co-class counsel in federal securities fraud litigation alleging that the defendants misrepresented clinical trial results of Celebrex® to make its safety profile appear better than rival drugs. In January 2013, the lawsuit settled in mediation for $164 million.

***Bennett v. Sprint Nextel Corporation,*** No. 2:09-cv-02122-EFM-KMH (D. Kan.). As co-lead counsel, Motley Rice represented the PACE Industry Union-Management Pension Fund (PIUMPF) and two other institutional investors who purchased Sprint Nextel common stock between October 26, 2006 and February 27, 2008. The class action complaint alleged that the defendants made materially false and misleading statements regarding Sprint's business and financial results. As a result, the complaint alleged that Sprint stock traded at artificially inflated prices during the class period and that, when the market learned the truth, the value of Sprint's shares plummeted. In August 2015, the court granted final approval to a $131 million settlement.

***In re Barrick Gold Securities Litigation,*** No. 1:13-cv-03851-RMB (S.D.N.Y.). As sole lead counsel, Motley Rice represented Co-Lead Plaintiffs Union Asset Management Holding AG and LRI Invest S.A. in a class action on behalf of investors who purchased shares of Barrick Gold Corporation, the world's largest gold mining company. The suit alleged that Barrick Gold had fraudulently underreported the cost and the time to develop its Pascua-Lama gold mine on the border between Argentina and Chile, and misrepresented its compliance with applicable environmental regulations and the sufficiency of its internal controls. Barrick Gold eventually abandoned its development of the Pascua-Lama mine after an injunction was issued by a Chilean court following the company's failure to comply with environmental regulations, and causing Barrick Gold to take an impairment charge of over $5 billion. A $140 million settlement was reached, and received final approval in December 2016.

***Minneapolis Firefighters' Relief Association v. Medtronic, Inc.,*** No. 08-6324 (PAM/AJB) (D. Minn.). Motley Rice is co-lead counsel for a class of investors who purchased Medtronic common stock in this case that survived the defendants' motion to dismiss. The suit alleges that Medtronic engaged in a pervasive campaign of illegal off-label marketing in which the company advised doctors to use Medtronic's Infuse Bone Graft in ways not FDA-approved, leading to severe complications in patients. Medtronic's stock price dropped significantly after investors learned that the FDA and Department of Justice were investigating Medtronic's off-label marketing. The $85 million settlement was approved on Nov. 8, 2012.

***Cornwell v. Credit Suisse Group,*** No. 08 Civ. 3758 (VM) (S.D.N.Y.). Motley Rice served as co-counsel in an action against Credit Suisse Group alleging the defendants issued materially false and misleading statements regarding the company's business and financial results and failed to write down impaired securities containing mortgage-related debt. Subsequently, Credit Suisse's stock price relative to other market events declined 2.83 percent when impaired securities came to light. A $70 million settlement was approved in July 2011.

# CASES

*In re Forest Laboratories, Inc. Securities Litigation,* No. 05 Civ. 2827 (RMB) (S.D.N.Y.). Motley Rice represented PIUMPF in a securities fraud class action alleging that the company and its officers misrepresented the safety, efficacy, and side effects of several drugs. Motley Rice, in cooperation with other class counsel, helped the parties reach a $65 million settlement that was approved on May 15, 2009.

*City of Brockton Retirement System v. Avon Products, Inc.,* No. 11 Civ. 4665 (PGG) (S.D.N.Y.). Motley Rice serves as sole lead counsel representing lead plaintiffs in a class action on behalf of all persons who acquired Avon common stock between July 31, 2006 and Oct. 26, 2011. The action alleges that the defendants falsely assured investors they had effective internal controls and accounting systems, as required under the Foreign Corrupt Practices Act (FCPA). In October 2008, Avon disclosed that it had begun an investigation into possible FCPA violations in China in June 2008. The action alleges that, unbeknownst to investors, Avon had an illegal practice of paying bribes in violation of the FCPA extending as far back as 2004 and which continued even after its October 2008 disclosure. Despite its certifications of the effectiveness of its internal controls, Avon's internal controls were allegedly severely deficient, allowing the company to engage in millions of dollars of improper payments in more than a dozen countries. On August 24, 2016, the court approved a final settlement of $62 million.

*City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.,* No. 11 C 8332 (N.D. Ill.). Motley Rice serves as co-lead counsel representing investors in this lawsuit against Hospira, the world's largest manufacturer of generic injectable pharmaceuticals, including generic acute-care and oncology injectables and integrated infusion therapy and medication management systems. The lawsuit alleges that Hospira and certain executive officers engaged in a fraudulent scheme to artificially inflate the company's stock price by concealing significant deteriorating conditions, manufacturing and quality control deficiencies at its largest manufacturing facility located in Rocky Mount, N.C., and the costly effects of these deficiencies on production capacity. These deteriorating conditions culminated in a series of regulatory actions by the FDA which the defendants allegedly misrepresented to their investors. The case settled for $60 million in 2014.

*Hill v. State Street Corporation,* No. 09-cv-12146-NG (D. Mass.). Motley Rice represented institutional investors as co-lead counsel against State Street. The action alleged that State Street defrauded institutional investors – including the state of California's two largest pension funds, California Public Employees' Retirement System (CalPERS) and California State Teachers' Retirement System (CalSTRS) — by misrepresenting its exposure to toxic assets and overcharging them for foreign exchange trades. On January 8, 2015, the court approved a $60 million settlement.

*In re Hewlett-Packard Co. Securities Litigation,* No. SACV 11-1404 AG (RNBx) (C.D. Cal.). Motley Rice served as co-lead counsel representing investors who purchased Hewlett-Packard common stock between November 22, 2010 and August 18, 2011. The lawsuit alleged that Hewlett-Packard misled investors about its ability to release over a hundred million webOS-enabled devices by the end of 2011. After Hewlett-Packard abandoned webOS development in August 2011, the company's stock price declined significantly. The court granted final approval to a $57 million settlement on September 15, 2014.

*South Ferry LP #2 v. Killinger,* No. C04-1599C-(W.D. Wash.) (regarding Washington Mutual). Motley Rice served as co-lead counsel on behalf of a class of investors who purchased WaMu common stock between April 15, 2003, and June 28, 2004. The suit alleged that WaMu misrepresented its ability to hedge risk and withstand changes in interest rates, as well as its integration of differing technologies resulting from various acquisitions. The Court granted class certification in January 2011 and approved the $41.5 million settlement on June 5, 2012.

*In re Dell, Inc. Securities Litigation,* No. A-06-CA-726-SS (W.D. Tex.). Motley Rice was appointed lead counsel for the lead plaintiff, Union Asset Management Holding AG, which sued on behalf of a class of purchasers of Dell common stock. The suit alleged that Dell and certain senior executives lied to investors and manipulated financial announcements to meet performance objectives that were tied to executive compensation. The defendants' alleged fraud ultimately caused the price of Dell's stock to decline by over 40 percent. After the case was dismissed by the district court, Motley Rice attorneys launched an appeal to the Fifth Circuit Court of Appeals. After fully briefing the case and oral arguments, the parties settled the case for $40 million.

*Freedman v. St. Jude Medical, Inc.,* No. 12-3070 (RHK/JJG) (D. Minn.). Motley Rice served as co-lead counsel representing co-lead plaintiff Första AP-fonden, a Swedish pension fund, in this securities fraud class action against St. Jude Medical, Inc., a manufacturer of medical devices for cardiac rhythm management and the treatment of atrial fibrillation. This action alleged that defendants made false and misleading statements and concealed material information relating to the safety, durability, and manufacturing processes of the company's new generation of cardiac rhythm management devices marketed under the name "Durata." A $39.5 million settlement was approved in November 2016.

*Hatamian v. Advanced Micro Devices, Inc.,* No. 4:14-cv-00226-YGR (N.D. Cal.). Motley Rice served as co-lead counsel representing Lead Plaintiffs KBC Asset Management NV and Arkansas Teacher Retirement System in this securities fraud class action on behalf of investors that purchased AMD common stock between April 4, 2011, and October 18, 2012. AMD, a multinational semiconductor manufacturer, allegedly misrepresented and concealed problems affecting the production, launch, demand, and sales of its new "Llano" microprocessor. These problems allegedly led

AMD to miss the critical sales period for Llano-based computers and ultimately take a $100 million write-down of by-then obsolete Llano inventory, causing AMD's stock price to fall, and damaging the company's investors. The court granted class certification on March 16, 2016. For the next two years, Class Counsel obtained and reviewed approximately 2.5 million pages of documents; participated in 34 depositions of fact, expert, and confidential witnesses; retained industry and financial experts; briefed competing motions for summary judgment; and engaged in multiple mediations with defendants. On March 6, 2018, the court approved a $29.5 million settlement.

*Ross v. Career Education Corp.* No. 1:12-cv-00276 (N.D. Ill.). On April 16, 2014, the U.S. District Court for the Northern District of Illinois issued an order granting final judgment and dismissing with prejudice *Ross v. Career Education Corp.* Motley Rice served as co-lead counsel in the lawsuit, which alleged that Career Education and certain of its executive officers violated the federal securities laws by misleading the company's investors about its placement practices and reporting. The court approved a final settlement of $27.5 million.

*In re MBNA Corporation Securities Litigation,* No. 05-CV-00272-GMS (D. Del.). Motley Rice served as co-lead counsel on behalf of investors who purchased MBNA common stock. The suit alleged that MBNA manipulated its financial statements in violation of GAAP, and MBNA executives sold over one million shares of stock based on inside information for net proceeds of more than $50 million, knowing these shares would drop in value once MBNA's true condition was revealed to the market. The case was settled with many motions pending. The $25 million settlement was approved on October 6, 2009.

*Bodner v. Aegerion Pharmaceuticals, Inc., et al.,* 14-cv-10105 (D.Mass.) Motley Rice served as co-lead counsel on behalf of investors who purchased Aegerion common stock. The suit alleged that Aegerion issued false and misleading statements and failed to disclose, among other things, that (i) the Company illegally marketed the drug JUXTAPID beyond its FDA-approved label, and (ii) the Company was experiencing a higher than expected drop-out rate of patients taking JUXTAPID. A $22.25 million settlement was approved on November 30, 2017.

*Welmon v. Chicago Bridge & Iron Co., N.V.,* No. 06-CV-01283 (JES) (S.D.N.Y.). Motley Rice represented the co-lead plaintiff in this case that alleged that the defendants issued numerous materially false and misleading statements which caused CB&I's securities to trade at artificially inflated prices. The litigation resulted in a $10.5 million settlement that was approved on June 3, 2008.

*In re NPS Pharmaceuticals, Inc. Securities Litigation,* No. 2:06-cv-00570-PGC-PMW (D. Utah). Motley Rice represented the lead plaintiff as sole lead counsel in a class action brought on behalf of stockholders of NPS Pharmaceuticals, Inc., concerning the drug PREOS. NPS claimed that PREOS would be a "billion dollar drug" that could effectively treat "millions of women around the world who have osteoporosis." The complaint alleged fraudulent misrepresentations regarding PREOS's efficacy, market potential, prospects for FDA approval and dangers of hypercalcimic toxicity. The case settled after the lead plaintiff moved for class certification and the parties engaged in document production and protracted settlement negotiations. The $15 million settlement was approved on June 18, 2009.

*In re Synovus Financial Corp.,* No. 1:09-cv-01811 (N.D. Ga.). Motley Rice and our client, Sheet Metal Workers' National Pension Fund, serve as court-appointed co-lead counsel and co-lead plaintiff for investors in Synovus Financial Corp. The lawsuit alleges that the bank artificially inflated its stock price by concealing its troubled lending relationship with the Sea Island Company, a resort real estate and hospitality company to whom Synovus allegedly made hundreds of millions of dollars of "insider loans" with "little more than a handshake" facilitated by personal relationships among certain senior executives and board members. In 2014, the court approved a final settlement of $11.75 million.

*In re Molson Coors Brewing Co. Securities Litigation,* No. 1:05-cv-00294 (D. Del.). Motley Rice served as co-lead counsel for co-lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund and Metzler Investment GmbH in litigation against Molson Coors Brewing Co. and several of its officers and directors. The lawsuit alleged that, following the February 9, 2005, merger of Molson, Inc. and the Adolph Coors Company, the defendants fraudulently misrepresented the financial and operational performance of the combined company prior to reporting a net loss for the first quarter of 2005. Following protracted negotiations, the parties reached a $6 million settlement in May 2009.

*Marsden v. Select Medical Corporation,* No. 04-cv-4020 (E.D. Pa.). Motley Rice served as co-lead counsel on behalf of stockholders of Select Medical, a healthcare provider specializing in long-term care hospital facilities. The suit alleged that Select Medical exploited its business structure to improperly maximize Medicare reimbursements, misled investors and that the company's executives engaged in massive insider trading for proceeds of over $100 million. A $5 million settlement was reached and approved on April 15, 2009.

# CASES

## Shareholder Derivative Litigation

**Walgreens / Controlled Substances Violations:** *In re Walgreen Co. Derivative Litigation.* On October 4, 2013, Motley Rice filed a consolidated complaint for a group of institutional investors against the board of directors of Walgreen Co. The complaint alleges that Walgreen's board engaged in a scheme to maximize revenues by encouraging the company's pharmacists to fill improper or suspicious prescriptions for Schedule-II drugs, particularly oxycodone, in Florida. The complaint followed the June 2013 announcement of an $80 million settlement between Walgreens and the Drug Enforcement Administration relating to the misconduct. A settlement was approved in December 2014, in which Walgreens agreed to, among other things, extended compliance-related commitments, including maintaining a Department of Pharmaceutical Integrity.

*Manville Personal Injury Settlement Trust v. Gemunder,* No. 10-CI-01212 (Ky. Cir. Ct.) (regarding Omnicare, Inc.). On April 14, 2010, Motley Rice, sole lead counsel in this action, filed a shareholder derivative complaint on behalf of plaintiff Manville Personal Injury Settlement Trust. Plaintiff's claims stem from a November 3, 2009, announcement by the U.S. Department of Justice that Omnicare, Inc. had agreed to pay $98 million to settle state and federal investigations into three kickback schemes through which the company paid or solicited payments in violation of state and federal anti-kickback laws. The court denied the defendants' motions to dismiss in their entireties on April 27, 2011. The defendants sought an interlocutory appeal, which was denied on October 6, 2011. Following significant discovery, which included plaintiff's counsel's review and analysis of approximately 1.4 million pages of documents, the parties reached agreement on a settlement, which received final approval from the court on October 28, 2013. Under the settlement, a $16.7 million fund (less court awarded fees and costs) will be created to be used over a four year period by Omnicare to fund certain corporate governance measures and provide funding for the company's compliance committee in connection with the performance of its duties. Additionally, the settlement calls for Omnicare to adopt and/or maintain corporate governance measures relating to, among other things, employee training and ensuring the appropriate flow of information to the compliance committee.

*Service Employees International Union v. Hills,* No. A0711383 (Ohio Ct. Com. Pl.) (regarding Chiquita Brands International, Inc.). In this shareholder derivative litigation, SEIU retained Motley Rice to bring an action on behalf of Chiquita Brands International. The plaintiff alleged that the defendants breached their fiduciary duties by paying bribes to terrorist organizations in violation of U.S. and Columbian law. In October 2010, the plaintiffs resolved their state court action as part of a separate federal derivative claim.

*Mercier v. Whittle,* No. 2008-CP-23-8395 (S.C. Ct. Com. Pl.) (regarding the South Financial Group). This shareholder derivative action was brought on behalf of South Financial Group, Inc., following the company's decision to apply for federal bailout money from the Troubled Asset Relief Program (TARP) while allegedly accelerating the retirement of its former chairman and CEO to protect his multi-million dollar golden parachute, which would be prohibited under TARP. The litigation was settled prior to trial and achieved, among other benefits, payment back to the company from chairman Whittle, increased board independence and enhanced shareholder rights.

*Manville Personal Injury Settlement Trust v. Farmer,* No. A 0806822 (Ohio Ct. Com. Pl.) (regarding Cintas Corporation). In this shareholder derivative action brought on behalf of Cintas Corporation, the plaintiff alleged that the defendants breached their fiduciary duties by, among other things, failing to cause the company to comply with applicable worker safety laws and regulations. In November 2009, the court approved a settlement agreement that provided for the implementation of corporate governance measures designed to increase the flow of employee safety information to the company's board; ensure the company's compliance with a prior agreement between itself and OSHA relating to workplace safety violations; and secure the attendance of the company's chief health and safety officer at shareholder meetings.

## Corporate Takeover Litigation

*In re The Shaw Group, Inc., Shareholders Litigation,* No. 614399 (19th Jud. Dist. La.). Motley Rice attorneys served as co-lead counsel in the class action brought by our client, a European asset management company, on behalf of the public shareholders of The Shaw Group, Inc. The lawsuit challenged Shaw's proposed sale to Chicago Bridge & Iron Company N.V. in a transaction valued at approximately $3.04 billion. The plaintiffs alleged that the defendants breached their fiduciary duties to Shaw's shareholders by agreeing to a transaction that was financially unfair and the result of an improper sales process, which the defendants pursued at a time when Shaw's stock was poised for significant growth. The plaintiffs also alleged that the transaction offered substantial benefits to Shaw insiders not shared with the company's public shareholders. In December 2012, the parties reached a settlement with two components. Shaw agreed to make certain additional disclosures to shareholders of financial analyses indicating a potential share price impact of certain alternative transactions of as much as $19.00 per share versus the status quo. To provide a remedy for Shaw shareholders who believed the company was worth more than CB&I was paying for it, the settlement contained a second component – universal appraisal rights for all Shaw shareholders who properly dissented from the proposed merger, and the opportunity for Shaw dissenters to pursue that remedy on a class-wide basis. The court granted final approval of the settlement on June 28, 2013.

  Prior results do not guarantee a similar outcome.

CASES

*In re Coventry Health Care, Inc. Securities Litigation,* No. 7905-CS (Del. Ch. ). Motley Rice represented three public pension funds as court-appointed sole lead counsel in a shareholder class action challenging the $7.2 billion acquisition of Coventry Health Care, Inc., by Aetna, Inc. The plaintiffs alleged that the defendants breached their fiduciary duties to Coventry's shareholders through a flawed sales process involving a severely conflicted financial advisor and at a time when the company was poised for remarkable growth as a result of recent government healthcare reforms. The case settled for improvements to the deal's terms and enhanced disclosures.

*In re Allion Healthcare, Inc. Shareholders Litigation,* No. 5022-cc (Del. Ch.). Motley Rice attorneys served as co-lead counsel representing a group of institutional shareholders in their challenge to the going-private buy-out of Allion Healthcare, Inc., by private equity firm H.I.G. Capital, LLC, and a group of insider stockholders led by the company's CEO, who controlled about 41 percent the company's shares. The shareholders alleged that the CEO used his stock holdings and influence over board members to accomplish the buyout at the expense of Allion's public shareholders. After a lengthy mediation, the shareholders succeeded in negotiating a settlement resulting in a $4 million increase in the merger consideration available to shareholders. In January 2011, the Delaware Court of Chancery approved the settlement.

*In re RehabCare Group, Inc. Shareholders Litigation,* No. 6197-VCL (Del. Ch.). Motley Rice represented institutional shareholders in their challenge to the acquisition of healthcare provider RehabCare Group, Inc., by Kindred Healthcare, Inc. As co-lead counsel, Motley Rice uncovered important additional facts about the relationship between RehabCare, Kindred, and the exclusive financial advisor for the transaction, as well as how those relationships affected the process RehabCare's board of directors undertook to sell the company. After extensive discovery, the parties reached a settlement in which RehabCare agreed to make a $2.5 million payment for the benefit of RehabCare shareholders. In addition, RehabCare and Kindred agreed to waive certain standstill agreements with potential higher bidders for the company; lower the merger agreement's termination fee from $26 million to $13 million to encourage any potential higher bidders; eliminate the requirement that Kindred have a three-business day period during which it has the right to match any superior proposal; and make certain additional public disclosures about the proposed merger. The Delaware Court of Chancery granted final approval of the settlement on Sept. 8, 2011.

*In re Atheros Communications Inc. Shareholder Litigation,* No. 6124-VCN (Del. Ch.). In this action involving Qualcomm Incorporated's proposed acquisition of Atheros Communications, Inc., for approximately $3.1 billion, Motley Rice served as co-lead counsel representing investors alleging that, among other things, Atheros' preliminary proxy statement was materially misleading to the company's shareholders, who

were responsible for voting on the proposed acquisition. In March 2011, the Court issued a preliminary injunction delaying the shareholder vote, ruling that Atheros' proxy statement was materially misleading because, even though the proxy stated that the company's CEO "had not had any discussions with Qualcomm regarding the terms of his potential employment," it failed to disclose that he in fact "had overwhelming reason to believe he would be employed by Qualcomm after the transaction closed." The proxy also failed to inform shareholders of an almost entirely contingent $24 million fee to the company's financial adviser, Qatalyst Partners, LLP.

*In re Winn-Dixie Stores, Inc. Shareholder Litigation,* No. 16-2011-CA-010616 (Fla. 4th Cir. Ct.). Motley Rice served as co-lead counsel in litigation challenging the $560 million buyout of Winn-Dixie Stores, Inc. by BI-LO, LLC, achieving a settlement that allows for shareholders to participate in a $9 million common fund or $2.5 million opt-in appraisal proceeding.

*Maric Capital Master Fund, Ltd. v. PLATO Learning, Inc.,* No. 5402-VCS (Del. Ch.). The firm's institutional investor client won a partial preliminary injunction against the proposed acquisition of PLATO Learning, Inc., by a private equity company. In its ruling, the Delaware Court of Chancery found that the target company's proxy statement was misleading to its shareholders and omitted material information. The court's opinion has since been published and has been cited by courts and the legal media.

*In re Lear Corporation Shareholder Litigation,* No. 2728-N (Del. Ch.). In this deal case, Motley Rice helped thwart a merger out of line with shareholder interests. Motley Rice represented an institutional investor in this case and, along with Delaware co-counsel, was appointed co-chair of the Plaintiffs' Executive Committee. Motley Rice and its co-counsel conducted expedited discovery and the briefing. The court ultimately granted in part and denied in part the plaintiffs' motion for a preliminary injunction. In granting the injunction, the court found a reasonable probability of success in the plaintiffs' disclosure claim concerning the Lear CEO's conflict of interest in securing his retirement through the proposed takeover. Lear shareholders overwhelmingly rejected the merger.

*Helaba Invest Kapitalanlagegesellschaft mbH v. Fialkow,* No. 2683-VCL (Del. Ch.) (regarding National Home Health Care Corp.). This action was brought on behalf of the shareholders of National Home Health Care Corporation in response to the company's November 2006 announcement that it had entered into a merger agreement with affiliates of Angelo Gordon. The matter settled prior to trial and was approved on April 18, 2008. The defendants agreed to additional consideration and proxy disclosures for the class.

*Schultze Asset Management, LLC v. Washington Group International, Inc.,* No. 3261-VCN (Del. Ch.). This action followed Washington Group's announcement that it agreed to be acquired by URS Corporation. The action alleged that Washington Group and its board of directors breached their fiduciary duties

# CASES

by failing to maximize shareholder value, choosing financial projections that unfairly undervalued the company and pursuing a flawed decision-making process. Motley Rice represented the parties, which ultimately settled the lawsuit with Washington Group. Washington Group agreed to make further disclosures to its shareholders regarding the proposed alternative transactions it had rejected prior to its accepting URS's proposal and agreed to make disclosures regarding how the company was valued in the proposed transaction with URS. These additional disclosures prompted shareholders to further question the fairness of the URS proposal. Ultimately, URS increased its offer for Washington Group to the benefit of minority stockholders.

*In re The DirecTV Group, Inc. Shareholder Litigation,* No. 4581-VCP (Del. Ch. ). As court-appointed co-lead counsel, Motley Rice attorneys represented a group of institutional investors on behalf of the minority shareholders of DirecTV Group. A settlement was reached and approved by the court on Nov. 30, 2009. It provided for material changes to the merger agreement and the governing documents of the post-merger DirectTV.

## State Law Securities Cases

*In re Tremont Group Holdings, Inc. Securities Litigation,* No. 09 Civ. 03137 (S.D.N.Y.). Motley Rice represents an individual investor in consolidated litigation regarding investments made in Bernard L. Madoff Investment Securities, LLC, through a variable universal life insurance policy.

*Brown v. Charles Schwab & Co.,* No. 2:07-cv-03852-DCN (D.S.C.). Motley Rice attorneys served as class counsel in this case, one of the first to interpret the civil liabilities provision of the Uniform Securities Act of 2002. The U.S. District Court for the District of South Carolina certified a class of investors with claims against broker-dealer Charles Schwab & Co., Inc., for its role in allegedly aiding the illegal sale of securities as part of a $66 million Ponzi scheme. A subclass of 38 plaintiffs in this case reached a settlement agreement with Schwab under which they receive approximately $5.7 million, an amount representing their total unrecovered investment losses plus attorneys' fees.

## Opt-Out/Individual Actions

*In re Vivendi Universal, S.A. Securities Litigation,* No. 02 Civ. 5571 (S.D.N.Y.). In this action, Motley Rice represents more than 20 foreign institutional investors who were excluded from the class. The firm's clients include the Swedish public pension fund Första AP-fonden (AP1), one of five buffer funds in the Swedish pay-as-you-go pension system. In light of a recent Supreme Court ruling preventing foreign clients from gaining relief, Motley Rice has worked with institutional investor plaintiffs to file suit in France. *The French action is pending. In re Merck & Co., Inc., Securities Derivative & "ERISA" Litigation,* MDL No. 1658 (SRC) (D.N.J.). Motley Rice and co-counsel represented several foreign institutional investors who opted out of the federal securities fraud class action against Merck & Co., Inc., related to misrepresentations and omissions about the company's blockbuster drug, Vioxx. Private settlements were reached in these cases in 2016.

Prior results do not guarantee a similar outcome.

# ACCOLADES FOR THE FIRM



## "Best Law Firm"

*U.S. News – Best Lawyers®*

Mass tort litigation / class actions–plaintiffs

2021 • 2020 • 2019 • 2018 • 2017 • 2016 • 2015

2014 • 2013 • 2012 • 2011 • 2010



## The Legal 500 United States

**Litigation editions**

Product liability, mass tort and class action - plaintiff: TIER 1

2020 • 2019 • 2018 • 2017 • 2016 • 2015 • 2014

2013 • 2012 • 2011 • 2009 • 2007

 

## "Elite Trial Lawyers"

*The National Law Journal*

2020 Pharmaceuticals Firm of the Year

2020 Insurance Liability Firm of the Year

2019 Bankruptcy Law

2015 • 2014



## Practice Group of the Year

*Law360*

2020 • 2019 • 2015  Product Liability

2018 Consumer Protection

2015 • 2013 "Most Feared Plaintiffs Firm"

## Securities Class Action Services Top 50

*International Securities Services*

2017 • 2016 • 2015 • 2014 • 2011 • 2010 • 2009

OUR LEGACY:

## Ronald L. Motley (1944–2013)

EDUCATION:

J.D., University of South Carolina School of Law, 1971

B.A., University of South Carolina, 1966

Ron Motley fought for greater justice, accountability and recourse, and has been widely recognized as one of the most accomplished and skilled trial lawyers in the U.S. During a career that spanned more than four decades, his persuasiveness before a jury and ability to break new legal and evidentiary ground brought to justice two once-invincible giant industries whose malfeasance took the lives of millions of Americans—asbestos and tobacco. Armed with a combination of legal and trial skills, personal charisma, nose-to-the-grindstone hard work and record of success, Ron built Motley Rice into one of the nation's largest plaintiffs' law firms.

Noted for his role in spearheading the historic litigation against the tobacco industry, Ron served as lead trial counsel for 26 State Attorneys General in the lawsuits. His efforts to uncover corporate and scientific wrongdoing resulted in the Master Settlement Agreement, the largest civil settlement in U.S. history and in which the tobacco industry agreed to reimburse states for smoking-related health care costs.

Through his pioneering discovery and collaboration, Ron revealed asbestos manufacturers and the harmful and disabling effects of occupational, environmental and household asbestos exposure. He represented thousands of asbestos victims and achieved numerous trial breakthroughs, including the class actions and mass consolidations of *Cimino, et al. v. Raymark, et al.* (U.S.D.C. TX); *Abate, et al. v. ACandS, et al.* (Baltimore); and *In re Asbestos Personal Injury Cases* (Mississippi).

In 2002, Ron once again advanced cutting-edge litigation as lead counsel for the 9/11 Families United to Bankrupt Terrorism with a lawsuit filed by more than 6,500 family members, survivors and those who lost their lives in the Sept. 11, 2001, terrorist attacks. The suit seeks justice and ultimately bankruptcy for al Qaeda's financiers, including many individuals, banks, corporations and charities that provided resources and monetary aid. He also served as lead counsel in numerous individual aviation security liability and damages cases under the *In re September 11 Litigation* filed against the aviation and aviation security industries by victims' families devastated by the security failures of 9/11.

Ron brought the landmark case of *Oran Almog v. Arab Bank* against the alleged financial sponsors of Hamas and other terrorist organizations in Israel and was a firm leader in the BP Deepwater Horizon litigation and claims efforts involving people and businesses in Gulf Coast communities suffering as a result of the oil spill. Two settlements were reached with BP, one of which is the largest civil class action settlement in U.S. history.

Recognized as an AV®-rated attorney by Martindale-Hubbell®, Ron served on the AAJ Board of Governors from 1977 to 2012 and was chair of its Asbestos Litigation Group from 1978 to 2012. In 2002, Ron founded the Mark Elliott Motley Foundation, Inc., in loving memory of his son to help meet the health, education and welfare needs of children and young adults in the Charleston, S.C. community.

PUBLICATIONS:

- Ron authored or co-authored more than two dozen publications, including:
- "Decades of Deception: Secrets of Lead, Asbestos and Tobacco" (*Trial Magazine*, October 1999)
- "Asbestos Disease Among Railroad Workers: 'Legacy of the Laggin' Wagon'" (*Trial Magazine*, December 1981)
- "Asbestos and Lung Cancer" (*New York State Journal of Medicine*, June 1980; Volume 80: No.7, New York State Medical Association, New York)
- "Occupational Disease and Products Liability Claims" (*South Carolina Trial Lawyers Bulletin*, September and October 1976)

FEATURED IN:

- Shackelford, Susan. "Major Leaguer" *(South Carolina Super Lawyers*, April 2008)
- Senior, Jennifer. "A Nation Unto Himself" (*The New York Times*, March 2004)
- Freedman, Michael. "Turning Lead into Gold," (*Forbes*, May 2001)
- Zegart, Dan. *Civil Warriors: The Legal Siege on the Tobacco Industry* (Delacorte Press, 2000)
- Ansen, David. "Smoke Gets in Your Eyes" (*Newsweek*, 1999)
- Mann, Michael & Roth, Eric. "The Insider" (Blue Lion Entertainment, November 5, 1999)
- Brenner, Marie. "The Man Who Knew Too Much" (*Vanity Fair*, May 1996)
- Reisig, Robin. "The Man Who Took on Manville" (*The American Lawyer*, January 1983)

AWARDS AND ACCOLADES:

Ron won widespread honors for his ability to win justice for his clients and for his seminal impact on the course of civil litigation. For his trial achievements, *BusinessWeek* characterized Ron's courtroom skills as "dazzling" and *The National Law Journal* ranked him, "One of the most influential lawyers in America."

**South Carolina Association for Justice**
**2013** Founders' Award

**American Association for Justice**
**2010** Lifetime Achievement Award
**2007** David S. Shrager President's Award
**1998** Harry M. Philo Trial Lawyer of the Year

**The Trial Lawyer Magazine**
**2012** inducted into Trial Lawyer Hall of Fame
**2011** *The Roundtable: America's 100 Most Influential Trial Lawyers*

**The Best Lawyers in America®**
**1993–2013** mass tort litigation/class actions – plaintiffs, personal injury litigation – plaintiffs product liability litigation – plaintiffs

**Best Lawyers®**
**2012** Charleston, SC "Lawyer of the Year" mass tort litigation/class actions – plaintiffs
**2010** Charleston, SC "Lawyer of the Year" personal injury

                    Prior results do not guarantee a similar outcome.

*Benchmark Plaintiff*
**2012–2013** National "Litigation Star": civil rights/human rights, mass tort/product liability, securities
**2012–2013** South Carolina "Litigation Star": human rights, product liability, securities, toxic tort

*SC Lawyers Weekly*
**2011** Leadership in Law Honoree

*The Legal 500 United States*
**2011–2013** Mass tort and class action: plaintiff representation – toxic tort

*Chambers USA*
**2007, 2010–2012** Product liability and mass torts: plaintiffs. "...An accomplished trial lawyer and a formidable opponent."

**2008–2013** *South Carolina Super Lawyers®* list
**2008** *Top 10 South Carolina Super Lawyers* list
**2008, 2009, 2011, 2012** *Top 25 South Carolina Super Lawyers* list

*The Lawdragon™ 500*
**2005–2012** *Leading Lawyers in America* list – plaintiffs'

**National Association of Attorneys General**
**1998** President's Award—for his "courage, legal skills and dedication to our children and the public health of our nation."

**The Campaign for Tobacco-Free Kids**
**1999** Youth Advocates of the Year Award

## ASSOCIATIONS:

**American Association for Justice**
**South Carolina Association for Justice**
**American Bar Association**
**South Carolina Bar Association**
**Civil Justice Foundation**
**Inner Circle of Advocates**
**International Academy of Trial Lawyers**

- Although it endorses this lawyer, The Legal 500 United States is not a Motley Rice client.

# THE FIRM'S MEMBERS

## Joseph F. Rice

*LICENSED IN: DC, SC*
*ADMITTED TO PRACTICE BEFORE:*
*U.S. Supreme Court*
*U.S. Court of Appeals for the Second, Third, Fourth and Fifth Circuits*
*U.S. District Court for the District of Nebraska and the District of South Carolina*
*EDUCATION:*
*J.D., University of South Carolina School of Law, 1979*
*B.S., University of South Carolina, 1976*

*Motley Rice co-founder Joe Rice is recognized as a skillful and innovative negotiator of complex litigation settlements, having served as the lead negotiator in some of the largest civil actions our courts have seen in the last 20 years. Corporate Legal Times* reported that national defense counsel and legal scholars described Joe as one of the nation's "five most feared and respected plaintiffs' lawyers in corporate America." As the article notes, "For all his talents as a shrewd negotiator ... Rice has earned most of his respect from playing fair and remaining humble."

Joe was recognized by some of the nation's best-regarded defense lawyers as being "the smartest dealmaker they ever sat across the table from," *Thomson Reuters* has reported. Professor Samuel Issacharoff of the New York University School of Law, a well-known professor and expert in class actions and complex litigation, has commented that he is "the best strategic thinker on the end stages of litigation that I've ever seen."

Since beginning to practice law in 1979, Joe has continued to reinforce his reputation as a skillful negotiator, including through his involvement structuring some of the most significant resolutions of asbestos liabilities on behalf of those injured by asbestos-related products. He negotiates for the firm's clients at all levels, including securities and consumer fraud, anti-terrorism, human rights, environmental, medical drugs and devices, as well as catastrophic injury and wrongful death cases.

### National Prescription Opiate MDL:

Most recently, Joe was appointed co-lead counsel in the *National Prescription Opiate* MDL aimed at combatting the alleged over-distribution and deceptive marketing of prescription opioids. Joe, with other members of the Plaintiffs' Executive Committee, led negotiations for a $260 million settlement that was reached on the eve of the MDL's first bellwether trial. The deal resolved claims filed by Ohio's Cuyahoga and Summit counties against opioid manufacturers and distributors Teva, Cardinal Health, AmerisourceBergen and McKesson. Motley Rice continues to represent dozens of governmental entities, including the first jurisdictions to file cases in the current wave of litigation.

### Vehicle Recalls:

Joe served as one of the lead negotiators in the $15 billion Volkswagen Diesel Emissions Fraud class action settlement for 2.0-liter vehicles, the largest auto-related consumer class action settlement in U.S. history, as well as the 3.0-liter settlement. Under his leadership, Motley Rice also helped negotiate a pair of Takata bankruptcy resolutions that secured funds for victims who were harmed by the company's deadly,

# TEAM BIOS:

explosive airbags. Joe also serves as a member of the Plaintiffs' Executive Committee for *In re General Motors LLC Ignition Switch Litigation*, and was appointed to the Plaintiffs' Steering Committee for *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*.

## Medical Drugs and Devices:

Joe led negotiations on behalf of thousands of women who allege complications and severe health effects caused by transvaginal mesh and sling products, including litigation that has five MDLs pending in the state of West Virginia. He is also a member of the Plaintiffs' Steering Committee for the Lipitor® MDL, filed for patients who allege the cholesterol drug caused their Type 2 diabetes.

## BP Oil Spill:

Joe served as a co-lead negotiator for the Plaintiffs' Steering Committee in reaching the two settlements with BP, one of which is the largest civil class action settlement in U.S. history. The Economic and Property Damages Rule 23 Class Action Settlement is estimated to make payments totaling between $7.8 billion and $18 billion to class members. Joe was also one of the lead negotiators of the $1.028 billion settlement reached between the Plaintiffs' Steering Committee and Halliburton Energy Services, Inc., for Halliburton's role in the disaster.

## 9/11:

Joe held a crucial role in executing strategic mediations and/or resolutions on behalf of 56 families of 9/11 victims who opted out of the government-created September 11 Victim Compensation Fund. In addition to providing answers, accountability and recourse to victims' families, the resulting settlements with multiple defendants shattered a settlement matrix developed and utilized for decades. The litigation also helped provide public access to evidence uncovered for the trial.

## Tobacco:

As lead private counsel for 26 jurisdictions, including numerous State Attorneys General, Joe was integral to the crafting and negotiating of the landmark Master Settlement Agreement, in which the tobacco industry agreed to reimburse states for smoking-related health costs. This remains the largest civil settlement in U.S. history.

## Asbestos:

Joe held leadership and negotiating roles involving the bankruptcies of several large organizations, including AWI, Federal Mogul, Johns Manville, Celotex, Garlock, W.R. Grace, Babcock & Wilcox, U.S. Gypsum, Owens Corning and Pittsburgh Corning. He has also worked on numerous Trust Advisory Committees. Today, he maintains a critical role in settlements involving asbestos manufacturers emerging from bankruptcy and has been recognized for his work in structuring significant resolutions in complex personal injury litigation for asbestos liabilities on behalf of victims injured by asbestos-related products. Joe has served as co-chair of Perrin Conferences' Asbestos Litigation Conference, the largest national asbestos-focused conference.

## Securities and Consumer Fraud:

Joe is often sought by investment funds for guidance on litigation strategies to increase shareholder value, enhance corporate governance reforms and recover assets. He was an integral part of the shareholder derivative action against Omnicare, Inc., *Manville Personal Injury Settlement Trust v. Gemunder*, which resulted in a significant settlement for shareholders as well as new corporate governance policies for the corporation.

Joe serves on the Board of Advisors for Emory University's Institute for Complex Litigation and Mass Claims, which facilitates bipartisan discussion of ways to improve the civil justice system through the hosting of judicial seminars, bar conferences, academic programs, and research. In 1999 and 2000, he served on the faculty at Duke University School of Law as a Senior Lecturing Fellow, and taught classes on the art of negotiating at the University of South Carolina School of Law, Duke University School of Law and Charleston School of Law.

In 2013, he and the firm created the Ronald L. Motley Scholarship Fund at The University of South Carolina School of Law in memory and honor of co-founding member and friend, Ron Motley.

## AWARDS AND ACCOLADES:

**Best Lawyers®**
**2013** "Lawyer of the Year" Charleston, SC: Mass tort litigation/class actions – plaintiffs
**2007–2021** Mass tort litigation/class actions – plaintiffs

**South Carolina Association for Justice**
**2018** Founders' Award

*South Carolina Super Lawyers®* list
**2008–2021** Class action/mass torts; Securities litigation; General litigation

**Lawdragon**
**2016, 2018–2021 Lawdragon 500**
**2019–2020 Lawdragon 500 Plaintiff Consumer Lawyers**
**2019–2020 Lawdragon 500 Plaintiff Financial Lawyers**

*Chambers USA*
**2019–2020** Product Liability: Plaintiffs – Nationwide, Band 1
**2016, 2018** Product Liability: Plaintiffs – Nationwide, Band 2

**Law360**
**2015** "Product Liability MVP"

*Benchmark Litigation*
**2012–2013** National "Litigation Star": mass tort/product liability
**2012–2017** South Carolina "Litigation Star": environmental, mass tort/product liability

*The Legal 500 United States*, Litigation edition
**2020** Legal 500 Leading Lawyer
**2011–2012, 2014–2019** Dispute resolution – product liability, mass tort and class action – toxic tort – plaintiff

**The National Trial Lawyers**
**2020** Elite Trial Lawyers Lifetime Achievement Award
**2014 Litigation Trailblazers**

## TEAM BIOS:

**2010** Top 100 Trial Lawyers™ – South Carolina

*SC Lawyers Weekly*
**2018** Hall of Fame honoree
**2012** Leadership in Law Award

**National Association of Attorneys General**
**1998** President's Award

**University of South Carolina School of Law Alumni Association**
**2011** Platinum Compleat Lawyer Award

**MUSC Children's Hospital**
**2010** Johnnie Dodds Award: in honor of his longtime support of the annual Bulls Bay Golf Challenge Fundraiser and continued work on behalf of our community's children

**University of South Carolina**
**2011** Garnet Award: in recognition of Joe and his family for their passion for and devotion to Gamecock athletics

**SC Junior Golf Association Programs**
**2011** Tom Fazio Service to Golf Award: in recognition of promotional efforts

### COMMUNITY INVOLVEMENT:
**Dee Norton Lowcountry Children's Center**, Co-chair for inaugural Campaign for the Next Child
**First Tee of Greater Charleston**, Board of Advisors
**American Heart Association of the Lowcountry**, 2018 Heart Walk Chair

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**American Inns of Court**
**American Constitution Society for Law and Policy**
**South Carolina Association for Justice**

*\* Although they endorse this lawyer, neither The Legal 500 United States nor Professor Samuel Issacharoff are Motley Rice clients. Any result this endorsed lawyer may achieve on behalf of one client in one matter does not necessarily indicate similar results can be obtained for other clients.*

### Frederick C. Baker
LICENSED IN: NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, Tenth and Eleventh Circuits
U.S. District Court for the Southern District of New York and the District of South Carolina
EDUCATION:
J.D. / LL.M., Duke University School of Law, 1993
B.A., University of North Carolina at Chapel Hill, 1985

A veteran litigator with strong roots in complex litigation, Fred Baker works on a broad range of environmental, medical costs recovery, consumer and products liability cases and holds numerous leadership roles within the firm. He represents individuals, institutional investors, and governmental entities in a wide variety of cases.

Fred leads the firm's tobacco litigation, and was a member of the legal team that litigated the groundbreaking tobacco litigation on behalf of several State Attorneys General. Fred has also participated in the litigation of individual tobacco cases, entity tobacco cases and a tobacco class action.

In addition to his tobacco casework, Fred is part of the opioid litigation team which represents dozens of governmental entities, including states, cities, towns, counties and townships in litigation targeting the alleged misrepresentation and fraudulent distribution of harmful and addictive opioids by manufacturers and distributors.

Fred was also a key member of the firm's representation of people and businesses in Gulf Coast communities suffering as a result of the BP Deepwater Horizon oil spill. He held a central role in the negotiation process involving the two settlements reached with BP, one of which is the largest civil class action settlement in U.S. history. In addition, his environmental experience also includes representing a state government in a case against poultry integrators that alleged poultry waste polluted natural resources.

Fred has served as counsel in a number of class actions, including the two class action settlements arising out of the 2005 Graniteville train derailment chlorine spill. He was also closely involved in the litigation surrounding the statutory direct action settlement reached in the Manville bankruptcy court and a related West Virginia unfair trade practices insurance class action.

Fred began practicing with Motley Rice attorneys in 1994 and chairs the firm's attorney hiring committee.

### AWARDS AND ACCOLADES:
**Best Lawyers®**
**2020–2021** Charleston, S.C. Mass tort litigation / class actions –plaintiffs

**Lawdragon**
**2019** Lawdragon 500 Plaintiff Financial Lawyers

*South Carolina Lawyers Weekly*
**2016** Leadership in Law Honoree

# TEAM BIOS:

## Louis M. Bograd

LICENSED IN: DC, KY
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuits; U.S. District Court for the District of Columbia
EDUCATION:
J.D., Yale Law School, 1984
A.B., Princeton University, 1981

Louis Bograd is a nationally recognized authority on issues of federal preemption, drug and device litigation, and jurisdiction. He has devoted much of his professional career to litigating appeals on complex issues involving products liability, Medicaid lien reimbursements, constitutional rights, and civil liberties. At Motley Rice, Lou continues his focus on appellate issues and mass torts, further enhancing the firm's active and growing complex litigation practice. Lou serves as co-chair of the Law & Briefing Committee for the *National Prescription Opiate* MDL, which is focused on combatting the alleged deceptive marketing and over-distribution of opioids.

Prior to joining Motley Rice, Lou served as an appellate advocate and Chief Litigation Counsel for the Center for Constitutional Litigation where he led work in mass torts, the Class Action Fairness Act, and dispositive motions concerning consumer protection and products liability. Lou argued for plaintiffs before the U.S. Supreme Court regarding federal preemption of claims against generic drug manufacturers in *Pliva, Inc. v. Mensing* and has also participated in numerous other Supreme Court cases as counsel for petitioners, respondents, and amici curiae.

Lou has spoken on various legal topics at many seminars, CLE programs, and legal conferences across the country sponsored by, among others, the American Association for Justice, state trial lawyers associations, and Mass Torts Made Perfect. Lou has also presented at judicial education programs sponsored by the Pound Institute, the Brookings Institution, the American Enterprise Institute, the Northwestern University School of Law, and the George Mason University School of Law.

Lou's legal career began at Arnold & Porter LLP in Washington, D.C., where he managed and directed work on transfusion-associated HIV/AIDS cases on behalf of the American Red Cross. He subsequently served on the American Civil Liberties Union Foundation's national legal staff and as the legal director of the Alliance for Justice. Lou has also taught advanced torts and products liability law as an Adjunct Professor at the University of Kentucky College of Law.

SELECTED PUBLICATIONS:
- Louis M. Bograd & Andre M. Mura, *Buckman Stops Here! Limits on Preemption of State Tort Claims Involving Allegations of Fraud on the PTO or the FDA*, 41 Rutgers L. J. 309 (2009)
- Louis M. Bograd, *Be Careful What You Wish For: Drugmakers, the First Amendment, and Preemption*, 51 TRIAL 24 (Nov. 2015)
- Louis M. Bograd, *Preemption's Uncertain Path*, 47 TRIAL 20 (Nov. 2011)
- Louis M. Bograd, *W(h)ither Preemption?*, 45 TRIAL 24 (Nov. 2009)
- Louis M. Bograd, *Taking on Big Pharma- and the FDA*, 43 TRIAL 30 (Mar. 2007)

ASSOCIATIONS:
**American Association for Justice** Chair, Preemption Litigation Group; Member, Legal Affairs Committee

## Serena P. Hallowell

LICENSED IN: NY
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Ninth, and Eleventh Circuits; U.S. District Court for the Southern and Eastern Districts of New York
EDUCATION:
J.D., Boston University School of Law, 2003
B.A., Occidental College, 1999

With nearly 20 years of complex litigation and securities experience, Serena Hallowell has been recognized by her peers as a leader in the plaintiffs' securities bar and a Plaintiffs' Lawyer "Trailblazer" in 2019 by *National Law Journal* for her work in securities opt-out litigation. As lead of Motley Rice's direct-action litigation efforts, and a leader of the firm's securities fraud team, Serena litigates for some of the world's largest institutional investors, including pension funds, hedge funds, mutual funds, family offices, and other large institutional investors. She also regularly advises institutional investors and public entities regarding recovery opportunities in connection with fraud-related conduct.

Prior to her time at Motley Rice, Serena was the head of a direct-action practice and member of the securities class action group as a partner of a large securities law firm in New York. In that capacity, she was a key member of several litigation teams that achieved multi-million settlements for clients, aggregating close to $500 million. Notable cases Serena was a leading/key member of prior to joining Motley Rice include:

- *In re Barrick Gold Securities Litigation* ($140 million settlement*)
- *In re Computer Sciences Corp. Securities Litigation* ($97.5 million settlement*)("rocket docket" jurisdiction and estimated to be the third largest all cash settlement in the Fourth Circuit)
- *Public Employees' Retirement System of Mississippi v. Endo* ($50 million settlement*) (state court Section 11 action believed to be the largest class settlement obtained pursuant to the Securities Act of 1933 in connection with a secondary public offering)
- *In re Intuitive Surgical Securities Litigation*, No. 5:13-cv-01920 (N.D. Cal.) ($42.5 million settlement* for the class, including the Employees' Retirement System of the State of Hawaii)
- *In re NII Holdings, Inc. Securities Litigation* ($41.5 million settlement*) ("rocket docket" jurisdiction where settlement was obtained even after company filed bankruptcy)

Serena has also led opt-out cases against companies, including Valeant Pharmaceuticals, Perrigo Company, and Teva Pharmaceuticals for a variety of institutional investors seeking to recoup losses stemming from alleged fraud-related conduct. With respect to Valeant, Serena and her team pursued claims under the New Jersey RICO statute, and was the first opt-out

plaintiff to successfully defeat a motion to dismiss those claims. Certain Valeant actions have since been resolved and Serena continues to prosecute matters on behalf of others.

Serena was selected to *The National Law Journal's* "Elite Women of the Plaintiffs Bar" in 2020 for having consistently excelled in high-stakes matters on behalf of plaintiffs. She was also recognized by them as a Plaintiffs' Lawyer "Trailblazer" in 2019 in part for her work on behalf of opt-out plaintiffs. Legal publication *Law360* named her as a "Securities MVP" in 2019, and the 2020 *Chambers USA* report recognized her in the area of New York securities litigation for plaintiffs. *The Legal 500* also recommended her in the field of securities litigation in 2016 and 2017.

Serena is a frequent speaker in legal circles throughout the country on matters related to securities litigation and diversity and inclusion in the legal and financial sectors. She uses her platform to champion women's rights and promote diversity in the financial realm, including advocating for women and minority-led investment firms.

Serena has performed *pro bono* work for immigrant detainees through the American Immigrant Representation Project, in addition to volunteering with the Securities Arbitration Clinic at Brooklyn Law School, among other positions. She is conversational in Hindi and Urdu.

### SELECTED PUBLICATIONS:
- *'Mutual Funds Should Consider Shareholder Litigation,'* Law360 (Oct. 8, 2019)
- *'Around the World in a Decade: The Evolving Landscape of Securities Litigation Post-Morrison,'* NAPPA (Nov. 26, 2019)
- *'Emulex Highlights Greater Scrutiny of Issues at High Court,'* Law360 (April 25, 2019)
- *'China Agritech's Positive Implications for Plaintiffs,'* Law360 (July 3, 2018)
- *'Direct Actions: A Path to Recovery for Foreign Purchases of Securities,'* The NAPPA Report (Oct. 31, 2017) *'Investor Recovery Strategies Following ANZ Securities,'* Law360 (July 12, 2017)
- *'Does 'Dukes' Require Full 'Daubert' Scrutiny at Class Certification?'* New York Law Journal (Nov. 25, 2011)

### AWARDS AND ACCOLADES:
**National Law Journal**
**2020** Elite Women of the Plaintiffs' Bar
**2019** Plaintiffs' Lawyers Trailblazers

**Lawdragon 500**
**2019-2020** Leading Plaintiff Financial Lawyers
**2019-2020** Leading Lawyers in America

**Chambers USA**
**2020** New York Securities Litigation, Plaintiff

**Benchmark Litigation**
**2020-2021** Future Star

**Law360**
**2019** Securities MVP
**2016** Rising Star

**The Legal 500**
**2016-2017** Recommended in the Field of Securities Litigation

### ASSOCIATIONS:
**New York City Bar Association, Securities Litigation Committee**
**Federal Bar Council**
**South Asian Bar Association**
**National Association of Public Pension Attorneys**
**National Association of Women Lawyers**
**The National Association of Shareholder & Consumer Attorneys, Secretary**

## James M. Hughes, Ph.D.
LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the First, Second, Fourth, Fifth, Eighth, and Eleventh Circuits, U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 1993
Ph.D., University of Illinois, Chicago, 1983
M.A., University of Illinois, Chicago, 1976
B.A., University of Minnesota, 1975

Jim Hughes has a broad range of experience litigating complex matters, including securities fraud, occupational disease and public client cases.

Focusing his practice on securities fraud, he develops strategic legal arguments, drafts and argues motions and litigates cases. Most notably, Jim was the lead Motley Rice lawyer in *Bennett v. Sprint Nextel Corp.* ($131 million settlement) and *In re Barrick Gold Securities Litigation* ($140 million settlement).

Involved with the firm's representation of governmental entities, he works on opioid litigation against opioid manufacturers, distributors and pharmacies.

Jim has also represented industrial workers exposed to silica and asbestos in the workplace, arguing before appellate courts in Illinois and Minnesota on behalf of occupational disease victims. He has shared his experience with silica litigation and product identification at several national conferences, addressing the plaintiff's perspective and other pertinent issues.

A published author on several legal and academic themes, Jim's law review article, "Informing South Carolina Capital Juries About Parole" (44 *S.C. Law Review 383*, 1993) was cited in 2000 by U.S. Supreme Court Justice John Paul Stevens in his dissenting opinion in *Ramdass v. Angelone*. His reported opinions include *Ison v. E.I. DuPont de Nemours & Co.* (Del. 1999), *In re Minnesota Asbestos Litigation* (Minn., 1996), *W.R. Grace & Co. v. CSR Ltd.,* (Ill. App. Ct. 1996) and *In re Tutu Wells Contamination Litigation* (D.V.I. 1995).

A former professor of philosophy, Jim began his legal career with the plaintiffs' bar after clerkships with the South Carolina Office of Appellate Defense and a business, employment and intellectual property defense firm. He is recognized as an AV® rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:
**Lawdragon**
**2019** Lawdragon 500 Plaintiff Financial Lawyers

## TEAM BIOS:

**ASSOCIATIONS:**
**American Association for Justice**
**South Carolina Association for Justice**

### Mathew P. Jasinski

LICENSED IN: CT, NY
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the First,
Second, and Third Circuits; U.S. District Court for the District
of Connecticut and Southern District of New York
EDUCATION:
J.D. *with high honors*, University of Connecticut School of Law,
2006
B.A. *summa cum laude*, University of Connecticut, 2003

Mathew Jasinski represents consumers, businesses, and governmental entities in class action and complex cases involving consumer protection, unfair trade practices, commercial, environmental and securities litigation. He also represents whistleblowers in *qui tam* cases under the False Claims Act.

Mathew's litigation experience includes all aspects of trial work, from case investigation to appeal. He has represented plaintiffs in class actions involving such claims as breach of contract and unfair trade practices. He has experience in complex commercial cases regarding claims of fraud and breach of fiduciary duty and has represented an institutional investor in its efforts to satisfy a judgment obtained against the operator of a Ponzi scheme. Mathew obtained a seven-figure arbitration award in a case involving secondary liability for an investment advisor's conduct under the Uniform Securities Act. Please remember that every case is different. Any result we achieve for one client in one matter does not necessarily indicate similar results can be obtained for other clients.

Mathew also serves the firm's appellate group, having argued cases in the U.S. Courts of Appeals for the First and Second Circuits, the Connecticut Appellate Court, and the Connecticut Supreme Court. He also has worked on numerous appeals before other state and federal appellate courts across the country.

Prior to joining Motley Rice in 2009, Mathew practiced complex commercial and business litigation at a large defense firm. He began his legal career as a law clerk for Justice David M. Borden (ret.) of the Connecticut Supreme Court. During law school, Mathew served as executive editor of the *Connecticut Law Review* and judging director of the Connecticut Moot Court Board. He placed first in various mock court and mock court competitions, including the Boston region mock trial competition of the American Association for Justice. As an undergraduate, Mathew served on the board of associate directors for the University of Connecticut's honors program and was recognized with the Donald L. McCullough Award for his student leadership.

Mathew continues to demonstrate civic leadership in the local Hartford community. He is vice chairman of the board of directors for the Hartford Symphony Orchestra, a deacon of the

Asylum Hill Congregational Church, and a commissioner of the Hartford Parking Authority. Previously, Mathew served on the city's Charter Revision Commission and its Young Professionals Task Force, an organization focused on engaging young professionals and positioning them for future business and community leadership.

**PUBLISHED WORKS:**
"On the Causes and Consequences of and Remedies for Interstate Malapportionment of the U.S. House of Representatives" (Jasinski and Ladewig, *Perspectives on Politics*, Vol. 6, Issue 1, March 2008)

"Hybrid Class Actions:  Bridging the Gap Between the Process Due and the Process that Functions" (Jasinski and Narwold), *The Brief*, Fall 2009

**AWARDS AND ACCOLADES:**
**Lawdragon**
**2019–2020**  Lawdragon 500 Plaintiff Financial Lawyers

**Super Lawyers®**
**2013–2020**  *Connecticut Super Lawyers Rising Stars* list
Business litigation; Class action/mass torts; Appellate

***Connecticut Law Tribune***
**2018** "New Leaders in Law"

***Hartford Business Journal***
**2009** "Forty Under 40"

**ASSOCIATIONS:**
**American Association for Justice**
**American Bar Association**
**Connecticut Bar Association**
**Oliver Ellsworth Inn of Court**
**Phi Beta Kappa**

*\* For full Super Lawyers selection methodology visit: www.superlawyers.com/about/selection_process.html
For current year CT data visit: www.superlawyers.com/connecticut/selection_details.html*

Prior results do not guarantee a similar outcome.

TEAM BIOS:

## Marlon E. Kimpson

*LICENSED IN: SC*
*ADMITTED TO PRACTICE BEFORE:*
*U.S. District Court for the District of South Carolina, Eastern District of Michigan*
*EDUCATION:*
*J.D., University of South Carolina School of Law, 1999*
*B.A., Morehouse College, 1991*

*Marlon Kimpson represents victims of corporate malfeasance, from investors in securities fraud cases to consumers harmed by large data and privacy breaches, as well as people injured or killed in catastrophic incidents. Building upon the firm's relationships with unions and governmental entities, Marlon represents individuals, state and municipality pension funds, multi-employer plans, unions and other institutional investors in securities fraud class actions and in mergers and acquisition cases, seeking asset recovery and improved corporate governance.*

*Marlon has litigated securities cases including: In re Atheros Communications, Inc., Shareholder Litigation; In re Celera Corporation Shareholder Litigation; In re RehabCare Group, Inc. Shareholders Litigation; In re Coventry Healthcare, Inc., Shareholder Litigation;* and *In re Big Lots, Inc., Shareholder Litigation.* In 2017, he helped secure a $16 million settlement to resolve shareholders' claims in *Epstein v. World Acceptance Corp. et al.,* which alleged that World Acceptance misled investors about its lending practices and compliance with federal law. More recently, Marlon was local counsel for institutional investors in *In re SCANA Corporation Securities Litigation,* a complex securities fraud matter related to alleged misrepresentations and omissions concerning the design, construction, and abandonment of SCANA's nuclear construction project in South Carolina. The case resolved in 2020 with a $192 million settlement. It is the largest securities class action recovery ever obtained in the District of South Carolina, the fifth largest securities class action recovery in the history of the Fourth Circuit, and among the top 100 securities class action recoveries nationwide.

Marlon is co-lead counsel and a member of the Plaintiffs' Steering Committee for multidistrict litigation, *In re: Blackbaud Inc. Customer Data Security Breach Litigation,* filed in the District of South Carolina for consumers affected by a 2020 ransomware attack and resulting data breach that targeted software company Blackbaud. He also represents Facebook users who allege the social media network violated privacy laws by allowing political data firm Cambridge Analytica to harvest private information from more than 87 million of its users without their knowledge or permission.

In addition to securities and consumer fraud litigation, Marlon is part of the team representing dozens of governmental entities, including states, counties, cities, towns, and townships in litigation targeting the alleged deceptive marketing and over-distribution of highly addictive opioid drugs, a contended cause of the nationwide opioid crisis. He has also represented victims of catastrophic personal injury, asbestos exposure, and aviation disasters. He has litigated commercial and charter aviation cases with clients, defendants and accidents involving multiple countries. He also represented people and businesses in the Deepwater Horizon BP oil spill settlements claims programs.

Marlon currently serves as South Carolina State Senator of District 42, representing citizens of Charleston and Dorchester Counties. A frequent speaker, Marlon has presented at seminars and conferences across the country, including the Public Funds Summit, the National Association of State Treasurers, the South Carolina Black Lawyers' Association, the National Conference on Public Employee Retirement Systems (NCPERS) and the National Association of Securities Professionals (NASP).

After five years in commercial banking, Marlon entered the field of law and served as a law clerk to Judge Matthew J. Perry of the U.S. District Court of South Carolina. His legal work and volunteer service also earned him the University of South Carolina School of Law bronze Compleat Award. Martindale-Hubbell® recognizes Marlon as a BV® rated attorney.

Marlon is active in his community and formerly served on the Board of Directors for the Peggy Browning Fund. He has also held leadership roles with the University of South Carolina Board of Visitors, the Charleston Black Lawyers Association and the South Carolina Election Commission. In 2017, the American Association of Justice Minority Caucus awarded Marlon with its Johnnie L. Cochran, Jr. Soaring Eagle Award reserved for lawyers of color who have made outstanding contributions to the legal profession and paved the way for others. In 2018, Marlon was chosen as a Leadership in Law Honoree by *South Carolina Lawyers Weekly.* He is a lifetime member of the NAACP and a member of Sigma Pi Phi Boulé and Omega Psi Phi Fraternity, Inc.

## AWARDS AND ACCOLADES:

**Best Lawyers®**
**2015–2021**  Mass tort litigation/class actions – plaintiffs

**Lawdragon**
**2019–2020**  Lawdragon 500 Plaintiff Consumer Lawyers
**2019–2020**  Lawdragon 500 Plaintiff Financial Lawyers

**South Carolina Lawyers Weekly**
**2018 Leadership in Law Honoree**

**American Association of Justice**
**2017** Johnnie L. Cochran, Jr. Soaring Eagle Award

**Benchmark Plaintiff**
**2012** National "Litigation Star": mass tort/product liability
**2012–2014** South Carolina "Litigation Star": environmental, mass tort, securities

**Coastal Conservation League**
**2016** Coastal Stewardship Award

**United Food and Commercial Workers**
**2016 Legislative Activist of the Year**

## ASSOCIATIONS:

**American Association for Justice**
**South Carolina Association for Justice**
**National Association of Public Pension Attorneys**
**American Bar Association**
**National Bar Association**

## TEAM BIOS:

### Gregg S. Levin

LICENSED IN: DC, MA, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, Ninth and Eleventh Circuits
U.S. District Court for the District of Colorado, District of Massachusetts, and the Eastern District of Michigan
EDUCATION:
J.D., Vanderbilt University School of Law, 1987
B.A. *magna cum laude*, University of Rochester, 1984

With more than three decades of legal experience, Gregg Levin represents domestic and foreign institutional investors and union pension funds in corporate governance, directorial misconduct and securities fraud matters. His investigative, research and writing skills have supported Motley Rice as lead or co-lead counsel in numerous securities and shareholder derivative cases against Dell, Inc., UBS AG and Cintas Corporation. Gregg manages complaint and brief writing for class action deal cases, shareholder derivative suits and securities fraud class actions.

Prior to joining Motley Rice, Gregg was an associate with Grant & Eisenhofer in Delaware, where he represented institutional investors in securities fraud actions and shareholder derivative actions in federal and state courts across the country, including the WorldCom, Telxon and Global Crossing cases. He also served as corporate counsel to a Delaware Valley-based retail corporation from 1996-2003, where he handled corporate compliance matters and internal investigations.

In 2019, Gregg was appointed as a Vice President of the Institute for Law and Economic Policy, a foundation whose goals include supplementing the resource-limited SEC by educating the public on the importance of private securities fraud litigation in maintaining corporate accountability. Since its inception in the 1990s, the institute has presented and published papers that have been cited in more than 60 federal cases, including several in the U.S. Supreme Court. Appearing in the media to discuss a variety of securities matters, Gregg has also presented in educational forums, including at the Ethics and Transparency in Corporate America Webinar held by the National Association of State Treasurers.

#### PUBLISHED WORKS:

Gregg is a published author on corporate governance and accountability issues, having written significant portions of the treatise *Shareholder Activism Handbook* (Aspen Publishers, November 2005), as well as several other articles of interest to institutional investors, including:

- "*In re Cox Communications:* A Suggested Step in the Wrong Direction" (*Bank and Corporate Governance Law Reporter,* September 2005)
- "Does Corporate Governance Matter to Investment Returns?" (*Corporate Accountability Report,* September 23, 2005)
- "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith under Delaware Corporate Law" (*Bank and Corporate Governance Law Reporter,* September 2006)

- "Proxy Access Takes Center Stage: The Second Circuit's Decision in American Federation of State County and Municipal Employees, Employees Pension Plan v. American International Group, Inc." (*Bloomberg Law Reports,* February 5, 2007)
- "Investor Litigation in the U.S. -- The System is Working" (*Securities Reform Act Litigation Reporter,* February 2007)

#### AWARDS AND ACCOLADES:

**Lawdragon**
**2019** Lawdragon 500 Plaintiff Financial Lawyers

### Joshua Littlejohn

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Third and Fourth Circuits; U.S. District Court for the District of Colorado, District of South Carolina
EDUCATION:
J.D., Charleston School of Law, 2007
B.A., University of North Carolina at Asheville, 1999

With a broad base of experience in complex litigation—including securities fraud, corporate governance, whistleblower cases under Dodd-Frank and the False Claims Act, and catastrophic injury cases—Josh Littlejohn plays a key role on the Motley Rice securities litigation team, particularly in cases involving healthcare.

Josh represents public pension funds, unions and institutional investors in both federal and state courts. He also represents people with catastrophic injuries and corporate whistleblowers. Josh works directly with clients and has been involved in all aspects of the litigation process, including case evaluation, fact and expert discovery, resolution and trial.

Throughout his career Josh has been involved in numerous complex securities matters including litigation against 3M Corporation; MetLife Inc.; Alexion Pharmaceuticals; Wells Fargo & Company; 3D Systems Corporation; St. Jude Medical, Inc.; Omnicare; Pharmacia Corporation and NPS Pharmaceuticals. Currently, Josh is one of the lead lawyers in in the groundbreaking securities fraud litigation against NASDAQ and the New York Stock Exchange, among other defendants, related to high frequency trading or "HFT." This matter is currently in discovery in the U.S. District Court for the Southern District of New York. Along with other Motley Rice lawyers, Josh was South Carolina liaison counsel in a securities fraud class action that settled in 2020 being by investors against SCANA Corporation over its failed nuclear reactor project. Josh regularly reviews and analyzes potential securities fraud class action, shareholder derivative, and SEC whistleblower matters on behalf of our clients and the firm.

In addition to securities matters, Josh is a leading member of the team representing former Greer Laboratories, Inc. corporate insiders who allege that Greer violated the False Claims Act by causing healthcare providers to seek reimbursement from Medicare and Medicaid for unlicensed biologic drugs. This matter is pending before the U.S. Court of Appeals for the Fourth Circuit.

  Prior results do not guarantee a similar outcome.

## TEAM BIOS:

Aside from various securities and whistleblower matters, Josh was recently part of the Motley Rice negotiating team that helped secure a resolution with a major U.S. auto manufacturer on behalf of Takata airbag victims.  Early in his career at Motley Rice, Josh worked on discovery in mass tort litigation against large drug manufacturers.

### AWARDS AND ACCOLADES:
**Lawdragon**
**2019**  Lawdragon 500 Plaintiff Financial Lawyers

**Super Lawyers®**
**2013–2017**  *South Carolina Super lawyers Rising Star* list Securities litigation; Class action/mass torts; General litigation

### ASSOCIATIONS:
**American Bar Association**
**South Carolina Association for Justice**

### *Donald A. Migliori*

*LICENSED IN: MA, MN, NY, RI, SC*
*ADMITTED TO PRACTICE BEFORE:*
*U.S. Court of Appeals for the First, Fourth, and Eleventh Circuits, U.S. District Court for the District of Rhode Island, District of Massachusetts, and Northern, Southern and Eastern Districts of New York*
*EDUCATION:*
*M.A./J.D., Syracuse University, 1993*
*A.B., Brown University, 1988*

Building upon his experience in complex asbestos cases, the historic tobacco lawsuits and 9/11 litigation, Don Migliori is a multifaceted litigator who can navigate both the courtroom and the negotiating table. He represents victims of defective medical devices and drugs, occupational diseases, terrorism, aviation disasters, antitrust, and securities and consumer fraud in mass torts and other cutting-edge litigation that spans the country.

Don serves in leadership roles for a number of multidistrict litigations, including being a key member of Motley Rice's team that represents dozens of cities, towns, counties and townships in the National Prescription Opiate MDL against opioid manufacturers and distributors. He also represents states in similarly filed litigation. He played a significant role in negotiations on behalf of tens of thousands of women allegedly harmed by pelvic mesh/sling products and served as co-liaison counsel in the N.J. Bard pelvic mesh litigation in Atlantic County. Hundreds of cases have been filed in federal and state courts against multiple defendants.

He is also co-lead counsel for *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, a member of the Plaintiffs' Steering Committee for *In re Bard IVC Filters Products Liability Litigation*, as well as the Depuy® Orthopaedics, Inc. ASR™ and Pinnacle® Hip Implant MDLs. Don has litigated against both Ethicon, a Johnson & Johnson subsidiary, and  C.R. Bard previously in pelvic mesh litigation and also against C.R. Bard in the Composix® Kugel® hernia mesh multidistrict litigation, *In re Kugel Mesh Hernia Patch Products Liability Litigation, the first MDL before the federal court of*

Rhode Island. Don also serves as co-lead plaintiffs' counsel and liaison counsel in the federal MDL, and as liaison counsel for the Composix® Kugel® Mesh lawsuits consolidated in Rhode Island state court on behalf of thousands of individuals alleging injury by the hernia repair patch.

Don played a central role in the extensive discovery, mediations and settlements of more than 50 cases of 9/11 aviation liability and damages against numerous defendants.  He represented families of the victims of the September 11, 2001, attacks who opted out of the Victim Compensation Fund to seek greater answers, accountability and recourse, and served as liaison counsel for all wrongful death and personal injury cases in the 9/11 aviation security litigation. Additionally, he manages anti-terrorism litigation associated with the 9/11 terrorist attacks as a lead attorney of the 9/11 Families United to Bankrupt Terrorism, a groundbreaking case designed to bankrupt the financiers of al Qaeda.

Don contributed his experience in connection with the commencement of and strategy for shareholder derivative litigation brought on behalf Chiquita Brands International, Inc., alleging the defendants breached their fiduciary duties by paying bribes to terrorist organizations in violation of U.S. and Columbian law. He also served as trial counsel for PACE Industry Union-Management Pension Fund in a securities case against Forest Laboratories, Inc., and was involved in the initial liability discovery and trial strategy in an ongoing securities fraud class action involving Household International, Inc.

Don began working with Motley Rice attorneys in 1997 on behalf of the State Attorneys General in the historic lawsuit against Big Tobacco, resulting in the largest civil settlement in U.S. history. He tried several noteworthy asbestos cases on behalf of mesothelioma victims, including the state of Indiana's first contractor liability verdict and first premises liability verdict for wrongful exposure to asbestos. He continues to manage asbestos cases and actively litigates mesothelioma lawsuits and individual tobacco cases in the courtroom.

Don is a frequent speaker at legal seminars across the country and has appeared on numerous television and radio programs, as well as in print media to address legal issues related to terrorist financing, aviation security, class action litigation, premises liability and defective medical devices. A "Distinguished Practitioner in Residence" at Roger Williams University School of Law for the 2010-2011 academic year, Don taught mass torts as an adjunct professor for more than 10 years. Don is an AV® rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:
**Best Lawyers®**
**2020**  "Lawyer of the Year" Charleston, SC
Mass tort litigation/class actions- plaintiffs
**2011–2021**  Mass tort litigation/class actions- plaintiffs

**Super Lawyers®** lists
**2018–2021**  *South Carolina Super Lawyers*: Class action/ mass torts; Personal Injury – products: plaintiff; Aviation and aerospace
**2009–2017**  *Rhode Island Super Lawyers*
**2012–2013**  *Top 10 Rhode Island Super Lawyers* lists

# TEAM BIOS:

**The National Trial Lawyers**
**2010–present** Top 100 Trial Lawyers™: Rhode Island

*Rhode Island Lawyers Weekly*
**2020** Leader in the Law
**2011** Lawyer of the Year

**Lawdragon**
**2018–2021** Lawdragon 500
**2019–2020** Lawdragon 500 Plaintiff Consumer Lawyers
**2019–2020** Lawdragon 500 Plaintiff Financial Lawyers
**2010** Lawdragon 3,000

*Massachusetts Lawyers Weekly*
**2011** Lawyers of the Year

**Benchmark Plaintiff**
**2012–2014** Rhode Island "Litigation Star": human rights and product liability

*Providence Business News*
**2005** Forty Under 40

## ASSOCIATIONS:
**Law360 Product Liability Editorial Advisory Board,** 2019, 2021
**American Association for Justice,** Board of Governors; former Executive Committee member
**American Bar Association**
**Rhode Island Association for Justice,** former President
**The Fellows of the American Bar Foundation**

## William H. Narwold
LICENSED IN: CT, DC, NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, D.C., and Federal Circuits, U.S. District Court for the District of Connecticut, Eastern District of Michigan, Eastern and Southern Districts of New York, District of South Carolina
EDUCATION:
J.D. cum laude, University of Connecticut School of Law, 1979
B.A., Colby College, 1974

Bill Narwold has advocated for corporate accountability and fiduciary responsibility for nearly 40 years, representing consumers, governmental entities, unions and institutional investors. He litigates complex securities fraud, shareholder rights and consumer fraud lawsuits, as well as matters involving unfair trade practices, antitrust violations and whistleblower/qui tam claims.

Bill leads Motley Rice's securities and consumer fraud litigation teams and False Claim Act practice. He is also active in the firm's appellate practice. His experience includes being involved in more than 200 appeals before the U.S. Supreme Court, U.S. Courts of Appeal and multiple state courts.

Prior to joining Motley Rice in 2004, Bill directed corporate, securities, financial, and other complex litigation on behalf of private and commercial clients for 25 years at Cummings & Lockwood in Hartford, Connecticut, including 10 years as managing partner. Prior to his work in private practice, he served as a law clerk for the Honorable Warren W. Eginton of the U.S. District Court, District of Connecticut from 1979-1981.

Bill often acts as an arbitrator and mediator both privately and through the American Arbitration Association. He is a frequent speaker on legal matters, including class actions. Named one of 11 lawyers "who made a difference" by *The Connecticut Law Tribune*, Bill is recognized as an AV® rated attorney by Martindale-Hubbell®.

Bill has served the Hartford community with past involvements including the Greater Hartford Legal Assistance Foundation, Lawyers for Children America, and as President of the Connecticut Bar Foundation. For more than twenty years, Bill served as a Director and Chairman of Protein Sciences Corporation, a biopharmaceutical company in Meriden, Connecticut.

## AWARDS AND ACCOLADES:
**Best Lawyers®**
**2013, 2015, 2017, 2019** Hartford, Conn. "Lawyer of the Year": Litigation–Banking and Finance
**2005–2021** Litigation–Banking and finance, mergers and acquisitions, securities

**Lawdragon**
**2019–2020** Lawdragon 500 Plaintiff Financial Lawyers

**Super Lawyers®**
**2009–2020** *Connecticut Super Lawyers and New England Super Lawyers*® lists
Securities litigation; Class action/mass torts

**Connecticut Bar Foundation**
**2008** Legal Services Leadership Award

## ASSOCIATIONS:
**American Bar Association**
**Connecticut Bar Foundation,** Past President
**Taxpayers Against Fraud**
**University of Connecticut Law School Foundation,** past Board of Trustees member

 Prior results do not guarantee a similar outcome.

## TEAM BIOS:

### William S. Norton

LICENSED IN: MA, NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the First, Second, Third and Fourth Circuits; U.S. District Court for the District of Colorado, Northern District of Illinois, District of Massachusetts, Eastern and Southern Districts of New York, and District of South Carolina
EDUCATION:
J.D., Boston University School of Law, 2004
B.A./B.S. *magna cum laude*, University of South Carolina, 2001

Bill Norton litigates securities fraud, corporate governance, False Claims Act, SEC whistleblower and other complex class action, consumer, and commercial matters. Bill has represented institutional and individual investors in securities fraud and shareholders actions before federal, state, and appellate courts throughout the country. He has also represented whistleblowers before the U.S. Securities and Exchange Commission through the Dodd-Frank Whistleblower Program and *qui tam* relators in actions under the False Claims Act.

### Securities Fraud Litigation

Bill represents institutional investors as a member of the lead counsel teams in litigation involving Alexion Pharmaceuticals, Inc., Intel Corporation, Qualcomm Inc., and Riot Blockchain, Inc. His previous securities fraud matters include:

- *In re SCANA Corporation Securities Litigation* ($192.5 million recovery as Liaison Counsel*)
- *Bennett v. Sprint Nextel Corp.* ($131 million recovery*)
- *City of Brockton Retirement System v. Avon Products, Inc.* ($62 million recovery*)
- *Hill v. State Street Corporation* ($60 million recovery*)
- *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.* ($60 million recovery*)
- *In re Hewlett-Packard Company Securities Litigation* ($57 million recovery*)
- *In re Medtronic, Inc. Securities Litigation* ($43 million recovery*)
- *Hatamian v. Advanced Micro Devices, Inc.* ($29.5 million recovery*)
- *Ross v. Career Education Corporation* ($27.5 million recovery*)

### Shareholder Derivative Litigation

Bill has represented shareholders in derivative actions, including:

- *Manville Personal Injury Settlement Trust v. Gemunder* ($16.7 million payment and significant corporate governance reforms*)
- *In re Walgreen Co. Derivative Litigation* (corporate governance reforms concerning compliance with Controlled Substances Act*)

### Merger and Acquisition Litigation

Bill has represented institutional shareholders in corporate M&A litigation, including:

- *In re Allion Healthcare, Inc. Shareholders Litigation* ($4 million payment to shareholders*)
- *In re RehabCare Group, Inc., Shareholders Litigation* ($2.5 million payment, modification of merger agreement, and additional disclosures to shareholders*)

- *In re Atheros Communications Shareholder Litigation* (preliminary injunction delaying shareholder vote and requiring additional disclosures to shareholders in $3.1 billion merger*)
- *Maric Capital Master Fund, Ltd. v. PLATO Learning, Inc.* (preliminary injunction requiring additional disclosures to shareholders in $143 million private-equity buyout*)

### Other Commercial, Consumer Fraud, and Whistleblower Matters

Bill has represented clients in a variety of commercial, consumer fraud, and whistleblower matters, including:

- Satellite retailers in class action against EchoStar Corporation ($83 million recovery*)
- Municipal bondholders in class action concerning alleged Ponzi scheme ($7.8 million recovery*)
- A *qui tam* whistleblower in appeal, resulting in reinstatement of claim for employment retaliation*
- Consumers in class action against DirecTV regarding early cancellation fees
- German bank in litigation concerning collateralized debt obligations
- Investors in actions concerning variable life insurance policies funneled to the Madoff Ponzi scheme

Before joining Motley Rice, Bill practiced securities and commercial litigation in the New York office of an international law firm. In law school, Bill served as an Editor of the *Boston University Law Review* and was a G. Joseph Tauro Distinguished Scholar. He worked as a law clerk in the United States Attorney's Office for the District of Massachusetts, represented asylum seekers at Greater Boston Legal Services, and studied law at the University of Oxford. Before law school, Bill worked for the United States Attorney's Office for the District of South Carolina and volunteered with the Neighborhood Legal Assistance Program of Charleston. He graduated Phi Beta Kappa from the University of South Carolina Honors College. Bill is recognized as an AV®-rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:

**Lawdragon**
**2019** Lawdragon 500 Plaintiff Financial Lawyers

**Super Lawyers®**
**2013–2019** *South Carolina Super Lawyers Rising Stars* list
Securities litigation; Class action/mass torts; General litigation

### ASSOCIATIONS:

**Federal Bar Association**
**American Bar Association**
**American Association for Justice**
**New York State Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**

# TEAM BIOS:

## Lance Oliver

LICENSED IN: AL, DC, FL, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the District of Columbia, Fifth and the Eleventh Circuits; U.S. District Court for the District of Columbia, and the Middle and Southern Districts of Florida
EDUCATION:
J.D., Duke University School of Law, 2004
B.A., Samford University, 2001

Lance Oliver is a trial lawyer who litigates class actions, mass torts, and other complex matters. He has experience with all phases of litigation from filing the complaint, trying the case, and pursuing appeals. His practice focuses on securities and consumer fraud class actions, tobacco litigation, and other defective products.

Lance has recently acted as lead trial counsel in a number of *Engle* progeny cases in Florida, representing smokers and their families against tobacco manufacturers. He argued a successful appeal to the Fourth District Court of Appeals in Florida, securing a verdict for a smoker's widow in a wrongful death suit against tobacco giants Philip Morris and R.J. Reynolds in *Philip Morris USA Inc. et al. v. Marchese*. He also served as counsel in *Berger v. Philip Morris USA Inc.*, which resulted in a verdict for a client who fell victim at a young age to the manufacturer's marketing campaigns targeting children.

Lance has also devoted a substantial amount of time to litigating securities fraud class actions, and has served as co-lead counsel for the class in many securities fraud cases including *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.*, a securities fraud class action that resulted in a settlement for plaintiffs. More recently, Lance selected the jury as co-trial counsel for the end-payor class in *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, a pay-for-delay antitrust litigation.

Prior to joining Motley Rice in 2007, Lance served as an associate in the Washington, D.C., office of a national law firm, where he worked on complex products liability litigation at both the trial and appellate levels.

Lance is a member of the National Conference on Public Employee Retirement Systems (NCPERS) and the International Foundation of Employee Benefit Plans (IFEBP). After graduating from Duke Law School, he served as a law clerk to the Honorable James Hughes Hancock of the U.S. District Court, Northern District of Alabama. He is recognized as an AV® rated attorney by Martindale-Hubbell®. He serves on the Board of Directors for the Charleston chapter of the American Lung Association, as well as the Dee Norton Child Advocacy Center.

### AWARDS AND ACCOLADES:

**Lawdragon**
**2019–2020**  Lawdragon 500 Plaintiff Financial Lawyers

***South Carolina Super Lawyers® Rising Stars* list**
**2013–2018**  Securities litigation; Class action/mass torts

**The National Trial Lawyers**
**2016** Top 100 Trial Lawyers™ South Carolina:

### ASSOCIATIONS:
**American Bar Association**

## Meghan S. B. Oliver

LICENSED IN: DC, SC, VA
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Federal Circuit, U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of Virginia School of Law, 2004
B.A. *with distinction*, University of Virginia, 2000

Meghan Oliver's practice focuses on complex litigation and class actions, including work on securities fraud cases, general commercial litigation, and consumer fraud litigation.

She is actively involved in various class actions, including several against health insurers for drug and equipment overcharges, and one alleging that the Administrative Office of the U.S. Courts charges more for PACER services than is authorized by statute (*Nat'l Veterans Legal Services Program v. United States*, Case No. 16-745-ESH). She also represents large public pension funds, unions, and institutional investors in securities fraud class actions, including *In re Twitter, Inc. Securities Litigation*, No. 3:16-cv-05315-JST-SK and *In re Qualcomm Inc. Securities Litigation*, No. 17-CV-00121-JAH-WVG.

Additionally, Meghan helps to lead litigation filed for a class consisting of more than a million tax return preparers alleging the IRS charged unauthorized user fees for the issuance and renewal of preparer tax identification numbers, (*Steele v. United States*, Case No. 1:14-cv-1523-RCL).

She has also worked on several antitrust matters in the past, including *In re North Sea Brent Crude Oil Futures Litigation, In re Libor-Based Financial Instruments Antitrust Litigation*, and generic drug cases involving "reverse payment" agreements.

Prior to joining Motley Rice, Meghan worked as a business litigation and antitrust associate in Washington, D.C. There, she assisted in the trial of a multidistrict litigation antitrust case and assisted in multiple corporate internal investigations. She is a member of Phi Beta Kappa.

### AWARDS AND ACCOLADES:
**Lawdragon**
**2019–2020**  Lawdragon 500 Plaintiff Financial Lawyers

### ASSOCIATIONS:
**American Bar Association**

## TEAM BIOS:

### Michael J. Pendell

LICENSED IN: CT, NY
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of Connecticut, Southern and Eastern Districts of New York
EDUCATION:
J.D., *summa cum laude*, Albany Law School, 2007
B.A., *cum laude*, Emerson College, 2000

Michael Pendell focuses his practice on representing people affected by corporate wrongdoing, including whistleblowers, and people harmed by tobacco and dangerous pelvic mesh devices. He also represents pension fund trustees and other institutional investors in securities, consumer fraud, and other complex class actions.

Michael has been involved in the firm's representation of personal injury clients, including representing people allegedly harmed by tobacco products and thousands alleging harm by dangerous medical devices. He serves as trial counsel in the Engle-progeny litigation pending in Florida for smokers and families of deceased smokers against tobacco manufacturers. In transvaginal mesh litigation, he represents women implanted with Ethicon Gynecare Prolift transvaginal mesh devices and who claim serious injuries and complications from the devices.

Michael also has experience representing institutional and individual investors in claims involving common law fraud pursuant to state securities laws. He played a central role on the litigation team that obtained a seven-figure arbitration award in a case involving secondary liability for an investment advisor's conduct under the Uniform Securities Act. Michael also represents clients in complex commercial cases regarding claims of fraud, breach of contract, and tortuous interference, as well as representing whistleblowers in multiple cases involving the False Claims Act, including litigation filed against Afognak Native Corp., alleging regulatory violations related to the Small Business Administration.

Michael, along with other Motley Rice attorneys, represented a union pension fund as co-lead counsel in a securities fraud class action to recoup losses against a telecom provider that allegedly provided false information regarding its financial results, causing artificially inflated stock prices that subsequently plummeted when the truth was made known. The settlement is pending court approval.

In addition to his whistleblower and securities casework, Michael is also a part of the firm's team that represents dozens of governmental entities, including states, cities, towns, counties and townships in litigation against several pharmaceutical drug manufacturers and distributors for the alleged deceptive marketing and distribution of highly addictive opioid prescription drugs.

Prior to joining Motley Rice. Michael served as an associate with a Connecticut-based law firm, where he first gained experience in both federal and state courts in such areas as commercial and construction litigation, media and administrative law, personal injury defense and labor and employment matters. He previously taught business law to BA and MBA candidates as an adjunct professor at Albertus Magnus College.

Michael served as a legal intern for the Honorable Randolph F. Treece of the U.S. District Court for the Northern District of New York and as a law clerk for the Major Felony Unit of the Albany County District Attorney's Office. He served as the executive editor for the *New York State Bar Association Government Law & Policy Journal* and senior editor for the *Albany Law Review*, which published his 2008 article entitled, "How Far is Too Far? The Spending Clause, the Tenth Amendment, and the Education State's Battle Against Unfunded Mandates."

### AWARDS AND ACCOLADES:
**Lawdragon**
**2019–2020** Lawdragon 500 Plaintiff Financial Lawyers

**Super Lawyers®**
**2013–2018** *Connecticut Super Lawyers Rising Stars* list
Securities litigation; Business litigation; Personal injury – products: plaintiff

### ASSOCIATIONS:
**American Association for Justice**
**Connecticut Bar Association**
**New York State Bar Association**

* Prior results do not guarantee a similar outcome. For full *Super Lawyers* selection methodology visit: www.superlawyers.com/about/selection_process.html
For CT-specific methodology visit: www.superlawyers.com/connecticut/selection_details.html

## TEAM BIOS:

## SENIOR COUNSEL

### David D. Burnett

LICENSED IN: DC, NY
ADMITTED TO PRACTICE BEFORE: U.S. Court of Appeals for the Second Circuit; U.S. District Courts for the Southern and Eastern Districts of New York
EDUCATION:
J.D., University of Virginia School of Law, 2007
M.A., University of Texas at Austin, 2002
B.A. with high honors and distinction, University of Virginia, 1999

As a part of Motley Rice's opioid litigation team, David Burnett applies more than a decade of experience in plaintiffs-side commercial litigation and finance to investigate complex economic issues in an effort to hold opioid companies responsible for the current epidemic.

David's practice includes working on behalf of dozens of clients— cities, counties, townships and other municipalities— in the *National Prescription Opiate* MDL, and in separate investigations and litigation filed in state courts.

In addition to opioids, David also represents individual and institutional investors in complex securities fraud litigation.

Prior to joining Motley Rice, David served as a vice president of underwriting at Burford Capital, the world's largest litigation finance firm, where he evaluated potential investments in dozens of lawsuits and recovered tens of millions of dollars in entitlements for investors, among other duties. He gained experience in evaluating the cost-benefits of litigation and structuring financing terms commensurate with legal risks.

Prior to Burford, David worked for 11 years as an associate and Of Counsel at Quinn Emanuel, where he represented institutional investors as plaintiffs in litigation and investigations arising from losses on mortgage-backed securities and CDOs following the 2007 financial crisis. He recovered hundreds of millions of dollars* in dozens of favorable settlements for plaintiffs in residential mortgage-backed securities litigation. David also recently worked as a consultant on SEC compliance matters for a Virginia wealth-management firm.

While completing his law degree, David clerked for a plaintiffs' asbestos firm in Washington, D.C. and an international corporate law firm in New York. During law school David was selected as a Hardy Cross Dillard Fellow, was an editor of the *Journal of Law and Politics*, and was a member of the *Journal of Social Policy and the Law*. He published an article on billboard regulation in the *Journal of Law and Politics*, cited by the Ninth Circuit, and an article on nutrition policy in the *Virginia Journal of Social Policy and the Law*.

Outside of work, David is a member of the Appalachian Mountain Club, the country's oldest outdoor organization, and serves on its Board of Advisors. He is also a competitive cyclist, avid hiker, and drives a racecar on track.

### Rebecca M. Katz

LICENSED IN: NY
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Second Circuit; U.S. District Courts for the Southern, Eastern, and Western Districts of New York, and the District of Colorado
EDUCATION:
J.D., Hofstra University School of Law, 1990
B.S., Hofstra University, 1987

As a lead attorney on Motley Rice's whistleblower litigation team, Rebecca Katz represents and protects individual whistleblowers who expose corporate misconduct. Her clients come from all levels of job responsibility in a wide range of industries and she helps them to investigate and report fraud to governmental enforcement agencies including the SEC, DOJ, IRS and CTFC. She has represented senior executives, mid-level managers and staff of multinational banking and financial services and public companies, including financial advisors, clinical researchers, quantitative analysts, engineers, commodities and securities traders.

Rebecca has been at the forefront of this field since the SEC Whistleblower Program was established under the Dodd-Frank Act in 2010 and is recognized in the field of whistleblower representation. She has represented numerous clients in navigating the intricacies of the SEC whistleblower process from filing the initial complaint through the final award process.

For nearly a decade prior to entering private practice, Rebecca served as senior counsel for the SEC's Enforcement Division. In addition to her whistleblower work, Rebecca has more than 20 years of experience litigating complex securities fraud cases, and was a partner and held senior leadership roles at two large New York plaintiffs' litigation firms.

Using her experience as a former SEC attorney and in private practice, Rebecca provides critical, objective legal counsel to those who need knowledge and support to ensure their confidentiality and protection in undertaking the complex and ever-changing whistleblower laws.

Rebecca is a frequent speaker at legal conferences nationwide and provides insight on numerous issues involving the SEC whistleblower program and securities litigation for national and local media outlets, including *The Wall Street Journal, The New York Times*, and *Law360*, among others. She is a published author and former faculty member at the Practising Law Institute's Securities Litigation & Enforcement Institute (both in the United States and United Kingdom) and has also lectured at the Fordham University School of Law's Eugene P. and Delia S. Murphy Conference on Corporate Law – Corporations, Investors and the Securities Markets.

While completing her law degree from Hofstra University School of Law, Rebecca was a member of the *Hofstra Law Review*.

She is an active supporter of several community organizations, including Friends of Firefighters and Komen Race for a Cure.

   Prior results do not guarantee a similar outcome.

## TEAM BIOS:

**PUBLISHED WORKS:**

Rebecca M. Katz & James M. Weir, Plaintiffs' Perspective: The SEC's Final Rules for Whistleblowers Offer a Balanced Approach to an Important New Program, *Securities Litigation Report* (July/Aug. 2011)

Rebecca M. Katz & David B. Harrison, The Dodd-Frank Act: New Life for Whistleblowers and the SEC; *Securities Litigation Report* (Sept. 2010)

**AWARDS AND ACCOLADES:**

**Best Lawyers®**
**2017–2021** Mass tort litigation / class actions – plaintiffs

**Super Lawyers**
**2008–2010, 2013–2020** New York Metro Super Lawyers – Securities

**Hofstra University, Maurice A. Deane School of Law**
**2019** Outstanding Woman in Law honoree

**Benchmark Plaintiff**
**2014** *Top 150 Women in Litigation* list: New York – securities
**2013–2014** New York "Litigation Star" securities

**ASSOCIATIONS:**

**New York City Bar Association**, Securities Litigation Committee

# ASSOCIATES

## Andrew P. Arnold

LICENSED IN: NY, SC
EDUCATION:
J.D., with honors, University of North Carolina School of Law, 2013
B.A., with highest honors, University of North Carolina at Chapel Hill, 2002

Andrew Arnold represents institutional investors and individuals in complex securities, corporate governance and shareholder litigation.

He concentrates his practice on investigating and developing securities fraud class actions, shareholder derivative lawsuits, merger and acquisition litigation, and consumer fraud. He joined Motley Rice co-founder Joe Rice in negotiations in the Volkswagen Diesel Emissions Fraud class action for consumers whose vehicles were allegedly designed to bypass regulations. The $15 billion settlement for 2.0-liter vehicles is the largest consumer auto-related consumer class action in U.S. history, and among the fastest reached of its kind.

Prior to joining Motley Rice, Andrew practiced commercial litigation and investor-state dispute settlement in the Washington, D.C. office of a large international law firm. He was recognized on the 2014 Capital *Pro Bono* High Honor Roll for serving 100 *pro bono* hours in the D.C. area. While attending the University of North Carolina School of Law, Andrew was a member of the *North Carolina Law Review* and served as a judicial intern for the North Carolina Court of Appeals and as a research assistant for Professor Thomas Lee Hazen, a prominent securities regulation scholar.

Andrew also has an extensive background in software development, primarily in the healthcare industry, where he designed and developed software to ensure compliance with government regulations.

**AWARDS AND ACCOLADES:**
**Best Lawyers: Ones to Watch®**
**2021** Litigation – Securities

## Elizabeth A. Camputaro

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Federal and Fourth Circuits; U.S. District Court for the District of South Carolina
EDUCATION:
J.D. *magna cum laude*, Charleston School of Law, 2008
B.A., Columbia College, 2004

Elizabeth Camputaro is part of the team representing county and municipal governments in litigation involving opioid manufacturers and distributors for their alleged deceptive marketing and fraudulent distribution of highly addictive opioids.

In addition, Elizabeth has several years of experience representing institutional investors in complex securities fraud and shareholder derivative matters, including serving on litigation teams in class action suits filed against Medtronic, Inc, State Street Corp., Sprint Nextel Corp., and Advanced Micro Devices.

Prior to joining Motley Rice, Elizabeth served as a judicial law clerk for the Honorable Deadra L. Jefferson, Ninth Judicial Circuit. While in law school, Elizabeth was a member of the Federal Courts Law Review, contributed more than 100 hours of pro bono service, and served as a judicial extern for the Honorable Thomas L. Hughston, Ninth Judicial Circuit.

Active in her community, Elizabeth previously served on the South Carolina Bar Diversity Committee, and has served as an Election Commissioner for Beaufort and Summerville municipalities, Beaufort County Council Library Board Trustee, and international missionary with Project Medishare and One World Health.

**ASSOCIATIONS:**
**American Bar Association**
**South Carolina Bar Association**
**Charleston Bar Association**

# TEAM BIOS:

## Ebony Williams Bobbitt

LICENSED IN: SC
EDUCATION:
J.D. *magna cum laude*, North Carolina Central University School of Law 2020
B.S., North Carolina Agricultural and Technical State University, 2012

Ebony Williams Bobbitt represents institutional investors and individuals in complex securities and consumer protection class actions that aspire to hold corporations accountable for alleged misconduct.

Ebony's casework includes litigating for U.S. tax return preparers who allege they were charged unlawful fees by the IRS to obtain their Preparer Tax Identification Numbers (PTIN) in *Adam Steele, et al. v. United States of America*, Case No. 1:14-cv-01523-RCL. She also represents a class of patients who allege Cigna Health and Life Insurance Co. fraudulently inflated copayments and coinsurance by overcharging for medical services and products, *Neufeld v. Cigna Health and Life Insurance Company et al.*, Case No. 3:17-cv-01693.

Ebony has a background in criminal justice and worked for several years as a legal assistant for the New Hanover District Attorney's Office and as a deputy clerk for the New Hanover County Board of Commissioners prior to pursuing her law degree. She gained additional legal experience while interning with the North Carolina Department of Justice during the summer of 2018 and is a former Motley Rice law clerk.

## Jessica C. Colombo

LICENSED IN: CT, NY
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Second Circuit, U.S. District Court for the District of Connecticut
EDUCATION:
J.D. *with high honors*, University of Connecticut School of Law, 2017
B.A. *cum laude*, State University of New York at New Paltz, 2014

Jessica Colombo works to deter misconduct and fraud by representing individuals and institutional investors in complex securities and consumer protection class actions. In addition, Jessica's practice includes representing whistleblowers in cases involving the False Claims Act, and she contributes to the firm's appellate practice. She is also a part of the firm's team that represents dozens of governmental entities, including states, cities, towns, counties and townships in litigation against several pharmaceutical drug manufacturers and distributors for the alleged deceptive marketing and distribution of highly addictive prescription opioids.

Prior to joining Motley Rice, Jessica served as a law clerk to the Honorable Bethany J. Alvord of the Connecticut Appellate Court. She gained additional experience in complex consumer fraud and product liability litigation while serving as a Motley Rice law clerk in 2016. She also interned with the U.S. Attorney's Office for the District of Connecticut.

While completing her legal studies, Jessica served as Executive Editor of the *Connecticut Law Review*, a member of the Public Interest Law Group, and a volunteer with the International Refugee Assistance Project. She also represented criminal defendants in the University of Connecticut School of Law Criminal Trial Clinic. She received multiple CALI awards in Lawyering Process, Torts, Estate Plan/Tax Practice, and Trademark Law.

Jessica previously worked as a toll collector for the New York State Thruway Authority, where she was a member of the International Brotherhood of Teamsters, Local 72.

### ASSOCIATIONS:
**American Bar Association**
**Connecticut Bar Association**

## Max N. Gruetzmacher

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina, and the Northern District of Illinois
EDUCATION:
J.D., Marquette University Law School, 2008
B.A., University of Wisconsin-Madison, 2004

Max Gruetzmacher focuses his practice on securities and consumer fraud, representing large public pension funds, unions and other institutional investors in securities and consumer fraud class actions and shareholder derivative suits.

Max has represented numerous clients in a variety of complex civil litigation matters. He has substantial experience managing litigation discovery efforts and shaping e-discovery strategy, including drafting and negotiating sophisticated e-discovery protocols. Max is proficient in the use of predictive coding and other advanced analytic technologies and workflows.

Previously, he served as a legal intern during law school for the Wisconsin State Public Defender, Appellate Division, where he aided in appellate criminal defense and handled legal research and appellate brief writing projects.

### ASSOCIATIONS:
**South Carolina Bar Association**
**Charleston County Bar Association**

## Annie E. Kouba

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of North Carolina School of Law, 2016
M.S.W., University of North Carolina School of Social Work, 2016
B.A., *magna cum laude*, Lenoir-Rhyne University, 2012

Annie Kouba represents institutional investors in securities fraud and shareholder litigation as well as public clients and government entities. Annie also advocates for survivors of childhood sexual abuse who wish to seek justice through the civil court system.

Prior results do not guarantee a similar outcome.

## TEAM BIOS:

She is a part of Motley Rice's team of attorneys that represents dozens of cities, towns, counties and townships in the *National Prescription Opiate* MDL against opioid manufacturers, distributors and pharmacies for alleged deceptive marketing, fraudulent distribution and other business practices that contributed to the opioid crisis. Additionally, she represents several municipalities in litigation against multiple large telecommunications companies for alleged under-billing and under-remittance of 911 fees those municipalities depend upon to fund their emergency systems.

As an advocate for survivors of childhood sexual abuse, Annie represents abused former Boy Scouts in their Boy Scouts of America bankruptcy claims. She also litigates under newly enacted "window" laws that extend the number of years available for childhood sexual abuse survivors to file claims by opening a statute of limitations for a finite period of time.

Prior to joining Motley Rice, Annie interned with the North Carolina Department of Justice in the Health and Human Services Division where she drafted criminal briefs for the N.C. Court of Appeals and N.C. Supreme Court, and assisted the president of the American Association of Public Welfare Attorneys. She also interned with the EMILY's List Political Opportunity Program and has worked as a *voir dire* consultant.

Annie concentrated in Community, Management, and Policy Practice at the University of North Carolina's School of Social Work Master's program where she specialized in the intersection of public policy and the law. Through a practicum with the program, Annie interned with the Compass Center for Women and Families in the Financial Literacy Education Program, where she served as a certified counselor with The Benefit Bank.

While pursuing her studies at the University of North Carolina School of Law, Annie served as a published staff member on the *First Amendment Law Review* and as vice president of the Carolina Public Interest Law Organization. She also contributed more than 100 hours in the Pro Bono Program there, through which she prepared tax returns for low-income citizens and researched and provided social work policy and legal perspective related to minors' rights after sexual assault for a guidebook from the NC Coalition Against Sexual Assault.

Annie serves on the board of the Green Heart Project, a volunteer-assisted service-learning organization connecting children living in food deserts with school gardens, healthy produce, and mentors.

### AWARDS AND ACCOLADES:
**South Carolina Bar Leadership Academy**
Class of 2019

### ASSOCIATIONS:
**American Association for Justice**, Political Action Committee Task Force
**South Carolina Association for Justice**

## Alexis N. Lilly

LICENSED IN: SC
EDUCATION:
J.D. *cum laude*, American University Washington College of Law, 2020
B.A. *magna cum laude*, The Ohio State University, 2017

Alexis Lilly protects public entities, institutional investors and individuals through complex litigation targeting corporate negligence and misconduct.

Alexis is a part of the firm's team that represents dozens of governmental entities, including states, counties, cities, towns, and townships in litigation targeting the alleged deceptive marketing and over-distribution of highly addictive opioid drugs, a contended cause of the nationwide opioid crisis.

A former Motley Rice law clerk, Alexis was the Technical Editor of the *American University Business Law Review*, Vol. 9, and served as a student attorney for American University Washington College of Law's Civil Advocacy Clinic in Washington, D.C., while completing her legal studies. She also assisted faculty as a Dean's Fellow for the school's Legal Rhetoric Department, served as a judicial intern for U.S. District Judge Rudolph Contreras of the U.S. District Court for D.C., and gained valuable experience as a law clerk for the U.S. Attorney's Office, District of Arizona.

## Christopher F. Moriarty

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, and Tenth Circuits; U.S. District Court for the District of Colorado, the Northern District of Illinois, the Eastern District of Michigan, and the District of South Carolina
EDUCATION:
J.D., Duke University School of Law, 2011
M.A., Trinity College, University of Cambridge, 2007
B.A., Trinity College, University of Cambridge, 2003

Christopher Moriarty litigates securities fraud, corporate governance, and other complex class action litigation in the U.S. and counsels institutional investors on opportunities to seek recovery in securities-related actions in both the U.S. and internationally. His practice encompasses every aspect of litigation, from case-starting to settlement.

Notable securities fraud class actions include:

- *In re Barrick Gold Securities Litigation,* No. 13-cv-03851 (S.D.N.Y.) ($140 million recovery*) (sole lead counsel);
- *City of Brockton Retirement System v. Avon Products, Inc.,* 11 Civ. 4655 (PGG) (S.D.N.Y.) ($62 million recovery*) (sole lead counsel);
- *Hill v. State Street Corp.,* No. 09-cv-12136-GAO (D. Mass.) ($60 million recovery*) (co-lead counsel);
- *In re Hewlett-Packard Co. Securities Litigation,* No. 11-cv-1404 (RNBx) (C.D. Cal.) ($57 million recovery*) (co-lead counsel);
- *KBC Asset Mgmt. v. 3D Sys. Corp.,* No. 15-cv-02393-MGL (D.S.C.) ($50 million recovery*) (co-lead counsel);

## TEAM BIOS:

- *Första AP-Fonden and Danske Invest Management A/S v. St. Jude Medical, Inc.,* No. Civil No. 12-3070 (JNE/HB) (D. Minn.) ($39.25 million recovery*) (co-lead counsel);
- *Ross v. Career Education Corp.,* No. 12-cv-00276 (N.D. Ill.) ($27.5 million recovery*) (co-lead counsel);
- *KBC Asset Mgmt. NV v. Aegerion Pharms., Inc.,* No. 14-cv-10105-MLW (D. Mass.) ($22.25 million recovery*) (co-lead counsel).

Christopher represents investors in shareholder derivative litigation, including in *In re Walgreen Co. Derivative Litigation,* No. 13-cv-05471 (N.D. Ill.) (securing corporate governance reforms to ensure compliance with the Controlled Substances Act*); antitrust class actions, including *In re Libor-Based Financial Instruments Antitrust Litigation,* No. 11-md-02262-NRB (S.D.N.Y.) (pending); and whistleblowers in proceedings before the U.S. Securities and Exchange Commission. His practice extends to securities-related litigation in several foreign jurisdictions, including England, France, and the Netherlands.

While in law school, Christopher was a member of the Moot Court Board, served as an Executive Editor of the *Duke Journal of Constitutional Law and Public Policy,* and taught a course on constitutional law to LL.M. students. Christopher has also drafted *amicus curiae* briefs in numerous constitutional law cases before the U.S. Supreme Court (which has cited his work) and the federal courts of appeal.

Christopher was called to the Bar in England and Wales by the Honourable Society of the Middle Temple.

### AWARDS AND ACCOLADES:
***South Carolina Super Lawyers® Rising Stars*** list
**2016–2021** Securities litigation

### ASSOCIATIONS:
**South Carolina Association for Justice**
**American Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**

## Lisa M. Saltzburg

LICENSED IN: SC, CO
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Fourth, Fifth and Eleventh Circuits
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., Stanford Law School, 2006
B.A. with high distinction, University of California, Berkeley, 2003

Lisa Saltzburg represents individuals, government entities and institutional clients in complex securities and consumer fraud actions, public client litigation, and a variety of other consumer and commercial matters. Lisa is an integral part of Motley Rice's team of attorneys that represents dozens of cities, towns, counties and townships in the *National Prescription Opiate* MDL against opioid manufacturers and distributors for alleged deceptive marketing, fraudulent distribution and other business practices that contributed to the opioid crisis.

She is part of the BP Oil Spill litigation team, and helped people and businesses in Gulf Coast communities file claims through the new claims programs established by the two settlements reached with BP. Lisa also serves on the trial team for the Florida *Engle* tobacco litigation.

Prior to joining Motley Rice, Lisa was an associate attorney for a nonprofit advocacy organization, where she worked through law and policy to protect the environmental interests of the Southeast. She drafted briefs and other filings in South Carolina's federal and state courts and worked with administrative agencies to prepare for hearings and mediation sessions. Lisa also served for two years as a judicial clerk for the Honorable Karen J. Williams of the U.S. Court of Appeals for the Fourth Circuit, where she developed valuable legal research and writing skills and gained experience involving a wide range of issues arising in civil and criminal cases.

Lisa held multiple positions in environmental organizations during law school, handling a broad array of constitutional, jurisdictional and environmental issues. She also served as an editor of the *Stanford Law Review* and as an executive editor of the *Stanford Environmental Law Journal.* A member of numerous organizations and societies, including the Stanford Environmental Law Society, Lisa attended the National Institute for Trial Advocacy's week-long Trial Advocacy College at the University of Virginia.

### AWARDS AND ACCOLADES:
***South Carolina Super Lawyers® Rising Stars*** list
**2016** Securities litigation, Class action/mass torts, Personal injury–products: plaintiff

## Meredith B. Weatherby

LICENSED IN: SC, TX
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Northern, Southern, Eastern and Western Districts of Texas
EDUCATION:
J.D., University of Texas School of Law, 2011
B.A., *with distinction,* University of North Carolina, Chapel Hill, 2008

Meredith Weatherby develops and litigates securities fraud class actions and shareholder derivative suits on behalf of institutional investors.

Meredith represents unions, public pensions and institutional investors in federal courts throughout the country. Her casework includes representing clients in a number of cases related to high frequency trading (HFT), including the groundbreaking securities fraud litigation against NASDAQ and the New York Stock Exchange that was recently revived upon appeal to the U.S. Court of Appeals for the Second Circuit. She is also involved in the securities class action against Twitter Inc. Previously, Meredith was a member of the teams representing investors in securities fraud class actions filed against Advanced Micro Devices, Barrick Gold and SAC Capital, among others.

Meredith also has experience litigating medical malpractice and negligence suits in state court.

## TEAM BIOS:

Prior to joining Motley Rice, Meredith gained trial and settlement experience as an associate at a Dallas, Texas, law firm working in business and construction litigation. While attending the University of Texas School of Law, she clerked for an Austin firm, represented victims in court as a student attorney in the UT Law Domestic Violence Clinic and was a Staff Editor of the Review of Litigation journal. During her undergraduate and law school career, Meredith studied abroad in Paris, France, Geneva, Switzerland and Puebla, Mexico.

### AWARDS AND ACCOLADES:
**Best Lawyers: Ones to Watch®**
**2021** Litigation – Securities

### ASSOCIATIONS:
**Charleston County Bar Association**

### *Erin Casey Williams*

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
United States Court of Appeals for the Second Circuit; U.S. District Court for the Eastern District of Michigan, and District of South Carolina
EDUCATION:
J.D., University of Illinois College of Law, 2014
B.S. with honors, University of Illinois at Urbana-Champaign, 2011

Erin Casey Williams protects the interests of institutional investors and consumers through complex securities litigation.

Erin is a member of Motley Rice's litigation teams representing investors in securities fraud class action cases. She supports the firm's efforts in matters involving Qualcomm Incorporated and Investment Technology Group, Inc.

Erin assisted in the development of deposition strategies and completed discovery with the Motley Rice securities team before joining the firm in 2017. Her previous experience includes litigating claims involving medical malpractice, wrongful death, personal injury and complex family law matters at a Charleston, S.C., law firm. She also researched and drafted memoranda regarding construction defects, insurance defense, and tort liability for a national litigation support agency.

While pursuing her law degree, Erin interned for the Federal Defender Program in Chicago in addition to working as a judicial extern for the Honorable Michael T. Mason of the U.S. District Court for the Northern District of Illinois. She served as an associate editor of the *University of Illinois Law Review* and the Community Service Chair of the Women's Law Society.

### ASSOCIATIONS:
**American Bar Association**
**South Carolina Bar Association**
**South Carolina Association for Justice**
**South Carolina Women Lawyers Association**
**Charleston County Bar Association**

## STAFF ATTORNEYS

### *Rebecca E. Jacobs*

LICENSED IN: SC
EDUCATION:
J.D. with honors, Charleston School of Law, 2014
B.A., Furman University, 2010

Rebecca Jacobs focuses her practice on managing discovery efforts and implementing e-discovery best practices in large-scale antitrust, whistleblower, securities, and consumer fraud class actions. She also develops and manages teams that perform research and conduct document discovery for the firm.

Rebecca's casework includes assisting in antitrust litigation against Keurig Green Mountain, Inc., alleging a monopoly of single-serve coffee brewers and cups compatible with those brewers. She is also actively involved in various class actions against health insurers for drug and equipment overcharges.

Rebecca has been working with Motley Rice since 2015, where she leverages advanced processing and review technologies to increase efficiencies in cases with complex e-discovery. Rebecca was a member of the team that represented institutional investors as lead counsel in *In re Barrick Gold Securities Litigation,* which reached a $140 million settlement for shareholders.* She has also contributed to discovery in securities fraud litigation against St. Jude Medical, Inc. and Conn's Inc.

Rebecca worked as a legal assistant and paralegal in Charleston while pursuing a law degree. She has also completed numerous *pro bono* hours with programs including Volunteer Income Tax Assistance as well as Adult Guardianship Assistance and Monitoring.

### ASSOCIATIONS:
**South Carolina Women Lawyers Association**
**South Carolina Bar Association**
**Charleston County Bar Association**

### *Kelly A. Quillin*

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE: U.S. District Court for the District of South Carolina
EDUCATION:
J.D., The John Marshall Law School, 2014
B.S., Indiana University, 2010

Kelly Quillin seeks to hold businesses accountable and recover losses for individuals and institutional investors who are harmed by corporate wrongdoing and misconduct.

Kelly is a member of the litigation teams representing investors as lead counsel in securities and consumer fraud class actions filed against Twitter, Inc. and Qualcomm, Inc. She has also assisted in the litigations filed against St. Jude Medical, Inc., LIBOR, American Realty Capital, and 3D Systems Corp. She was also involved in the litigation against NASDAQ and NYSE, among other defendants, related to high frequency trading.

Acting as a liaison among counsel, attorney review teams, vendors and data management personnel, Kelly oversees teams that conduct discovery and research in order to further

# TEAM BIOS:

complex securities litigation, including implementing best practices regarding e-discovery strategies in large scale, complex, and document-intensive cases. She has experience in advanced analytic technologies and technology assisted review processes.

Prior to joining the firm, she clerked for the Cook County State's Attorney's Office in Chicago, assisting with legal filings, court appearances and research in the Felony Trial Division.

In 2012, while completing her legal studies in Chicago, Kelly served as a judicial extern for U.S. District Judge Jon E. DeGuilio for the Northern District of Indiana, where she drafted proposed opinions, orders and memoranda. While completing her undergraduate studies, she interned for the Southern District of Indiana Clerk's Office.

Kelly applies her legal knowledge to benefit the less fortunate by providing assistance and access to judicial services through the Charleston Pro Bono organization.

### ASSOCIATIONS:
**American Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**
**American Association for Justice**

## SECURITIES LITIGATION PROFESSIONAL STAFF

### Ellie Kimmel
EDUCATION:
B.A., University of South Florida, 1993
Business Analyst Ellie Kimmel began working with Motley Rice attorneys in 2000. Prior to her work with the securities litigation team, she was a founding member of the firm's Central Research Unit and also supervised the firm's file management. She currently completes securities research and client portfolio analysis for the firm's securities cases.

Ellie has a diverse background that includes experience in education as well as the banking industry. She began her career in banking operations, where she served as an operations manager and business analyst in corporate banking support for 14 years. She then spent seven years teaching high school economics, Latin and history before joining Motley Rice.

### Evelyn Richards
EDUCATION:
A.S. *cum laude*, Computer Technology, Trident Technical College, 1995
J.D., University of South Carolina School of Law, 1989
B.A., English Literature and Religion, University of Virginia, 1986
Evelyn Richards joined Motley Rice in 2007. As a law clerk for the Securities and Consumer Fraud practice group, she plays a key role in supporting the securities litigation team through editing, cite-checking and Shepardizing complaints, briefs, and other legal documents. She also trains support staff on how to use The Bluebook.

Evelyn has over 25 years of experience in the legal field. As an Assistant Solicitor for the Ninth Circuit Solicitor's Office, she prosecuted child abuse and neglect and criminal cases. She also worked as a programmer/analyst for a few years. Prior to joining Motley Rice, Evelyn worked as an administrator for a large telecom, corporate and litigation firm, supervising all office operations, including human resources and accounting procedures. She also served as office manager for a small worker's compensation law office, where she managed trust and operating accounts and provided information technology support.

Evelyn's diverse background in information technology, management, programming and analysis adds great depth to the resources provided to Motley Rice clients.

### Joshua Welch
EDUCATION:
M.B.A., The Citadel, 2017
B.S. with honors, The College of Charleston, 2015
As a Financial Analyst with the securities litigation team, Joshua Welch is responsible for monitoring client portfolios, analyzing investor losses, and conducting research on companies facing allegations of securities fraud. He also assists in submitting claims for securities class action settlements.

Joshua holds a Master of Business Administration degree from The Citadel, where he worked as a graduate assistant. As an undergraduate, he double-majored in Accounting and Business Administration.

### Bruno Rosenbaum
EDUCATION:
LL.M., Columbia Law School, 2019
M.B.A., Assas Paris II, 2014
Master II, Assas Paris II, 2014
Master I, Sorbonne Paris I, 2010
Bruno Rosenbaum consults on complex securities fraud class actions, merger and acquisition cases and shareholder derivative suits on behalf of domestic and foreign institutional investors.

As Director of European Investor Relations for Motley Rice, Bruno assists the firm, clients and co-counsel in matters relating to international financial regulations and securities law to enhance corporate governance and protect shareholders against misconduct and fraud.

Prior to joining Motley Rice, Bruno was associated with international law firms in Paris and Luxembourg, where he practiced in the areas of mergers and acquisitions and private equity.

Bruno is licensed in New York as a Legal Consultant, admitted to the practice of law in Paris as Avocat à la Cour, and in Luxembourg as Avocat au Barreau *(Liste IV)*. His post-graduate studies concentrated in business and corporate law.

Bruno is fluent in English, French and Portuguese and conversant in German/Luxembourgish, Spanish and Italian.

### ASSOCIATIONS:
**Paris Bar**
**Luxembourg Bar** *(Liste IV)*

            Prior results do not guarantee a similar outcome.



**www.motleyrice.com**
**1 800.768.4026**

28 BRIDGESIDE BLVD.
MT. PLEASANT, SC 29464
**SC | RI | CT | NY | WV**
**DC | LA | MO | NJ | PA**

William H. Narwold (CT, DC, NY, SC) is the attorney responsible for this communication. Prior results do not guarantee a similar outcome. Motley Rice LLC, a South Carolina Limited Liability Company, is engaged in the New Jersey practice of law through Motley Rice New Jersey LLC. Esther Berezofsky attorney responsible for New Jersey practice.

*PD: 05.07.2021*



www.motleyrice.com
1 800.768.4026

# Exhibit 5E

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil Action No. 18-296 (MJD/KMM)

## DECLARATION OF GEORGE M. SNELLINGS, IV
## IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF
## ATTORNEYS' FEES AND LITIGATION EXPENSES, FILED ON BEHALF OF
## NELSON, ZENTNER, SARTOR & SNELLINGS, LLC

I, George M. Snellings, IV, hereby declare under penalty of perjury as follows:

1.    I am a partner in the law firm of Nelson, Zentner, Sartor & Snellings, LLC

("NZSS"). I submit this declaration in support of Lead Counsel's application for an award

of attorneys' fees in connection with services rendered in the above-captioned class action

(the "Action"). I have personal knowledge of the matters set forth herein.[1]

2.    My firm acted as Liaison Counsel for Lead Plaintiff while the Action was

pending in the United States District Court for the Western District of Louisiana ("Western

District of Louisiana"). In that capacity, we assisted Lead Counsel with court filings in the

Western District of Louisiana, court communications, and preparing for and participating

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings
defined in the Stipulation and Agreement of Settlement dated January 29, 2021, and
previously filed with the Court. *See* ECF No. 354-1.

in court conferences and hearings, and advised Lead Counsel regarding local practice and procedure.

3.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each NZSS attorney involved in this Action who devoted ten or more hours to the Action from its inception through and including November 19, 2020 and the lodestar calculation for those individuals based on my firm's current hourly rates. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by NZSS.

4.     As the partner responsible for supervising my firm's work on this case, I reviewed these time entries to prepare this declaration. The purpose of this review was to confirm both the accuracy of the time entries and the necessity for, and reasonableness of, the time committed to the litigation. In addition, all time expended in preparing this application for fees has been excluded.

5.     Following this review, I believe that the time reflected in the firm's lodestar calculation for which payment is sought as stated in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.

6.     The hourly rates for the NZSS attorneys included in Exhibit 1 are the same as, or comparable to, the rates charged by my firm in complex commercial litigation matters.

7.     My firm's rates are set based on periodic analysis of rates used by firms performing comparable work. Different timekeepers within the same employment

category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

8.     The total number of hours expended on this Action by my firm from its inception through and including November 19, 2020, is 106.50 hours.  The total lodestar for my firm for that period is $37,275.00.  "See Exhibit 1".

9.     With respect to the standing of my firm, attached hereto as Exhibit 2 is a brief biography of my firm and the attorneys still employed with the firm and involved in this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on June 15, 2021.

> */s/George M. Snellings, IV*
> George M. Snellings, IV

# EXHIBIT 1

*In re: CenturyLink Sales Practices and Securities Litigation*
Civil Action No. 18-296 (MJD/KMM)

## NELSON, ZENTNER, SARTOR & SNELLINGS, LLC

## TIME REPORT

Inception through and including November 19, 2020

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| F. Williams Sartor, Jr. | 46.00 | 350.00 | 16,100.00 |
| George M. Snellings, IV | 60.50 | 350.00 | 21,175.00 |
| | | | |
| | | | |
| **TOTALS:** | **106.50** | **350.00** | **$37,275.00** |

4



free initial consultation
☎ ☎ 318-388-4454

NELSON, ZENTNER,
SARTOR & SNELLINGS, LLC

Home | Attorney Profiles ▼ | Practice Areas ▼ | Clients | Location | Contact Us

### Experienced Monroe, LA Attorneys Zealously Advocate for Your Rights

**A general practice law firm focusing on insurance defense, professional liability and collections**
The attorneys of Nelson, Zentner, Sartor & Snellings, LLC have more than 100 years of combined experience. As trusted advisers to clients including high profile business entities, small and large corporations, insurance companies, hospitals, doctors, supervisors, adjustors and upper management, they develop creative solutions to resolve your legal matters. They pride themselves on the long-standing relationships they've developed with their clients and are committed to representing you in a professional, courteous and efficient manner.



Acting as legal counsel in a wide variety of industries,
Nelson, Zentner, Sartor & Snellings, LLC serves clients nationwide. The firm's vigorous advocacy and the results its attorneys have obtained have earned them an AV® Preeminent™ Peer Review Rating by Martindale-Hubbell®, the highest recognition possible in the legal industry, for their professionalism and ethics.

The firm's clients include:

- Arch Insurance Group
- Brookshire Grocery Company
- Colonial Insurance Company
- Crawford & Company
- EMC Insurance Corp.
- Farm Bureau Insurance Company
- Farmers Insurance Company
- General Electric Insurance Company
- Hartford Insurance Company
- House of Raeford Farms of Louisiana
- Jackson Parish Hospital
- JD Byrider
- Liberty Mutual Insurance Company
- Lincoln Parish Police Jury
- Louisiana Insurance Guaranty Association
- Louisiana Medical Mutual Insurance Company
- Marlin Firearms Company

- Maxum Insurance Company
- MetLife Auto and Home
- Morehouse General Hospital
- Ouachita Parish Police Jury
- Progressive Insurance Company
- Remington Arms Company
- Republic Finance
- Republic Insurance Company
- Ride Time
- St. Francis Medical Center
- State Farm Mutual Automobile Insurance Co.
- State of Louisiana
- Stonetrust Commercial Insurance Company
- Trenton Loans
- Unitrin Specialty Lines Insurance

**Knowledgeable and responsive Monroe attorneys**
The firm provides prompt, diligent and aggressive representation. The attorneys are responsive to your needs and concerns and always give you clear and precise advice while creating a detailed plan for your legal matters. Their goal is to bring you peace of mind through personalized attention.

Nelson, Zentner, Sartor & Snellings, LLC aims to resolve your case in the most efficient, cost-effective manner possible.

**Contact a Louisiana lawyer who will fight for your rights**
Call Nelson, Zentner, Sartor & Snellings, LLC today at 318-388-4454 or contact the firm online to schedule a free initial consultation.

*Nelson, Zentner, Sartor & Snellings, LLC*
*serves clients in Monroe and throughout Louisiana as well as nationwide.*

### Practice Areas
- Commercial Litigation
- Insurance Defense
- Professional Liability
- Collections

**Nelson, Zentner, Sartor & Snellings, LLC**
1507 Royal Avenue
P.O. Box 14420
Monroe, Louisiana 71207-4420
**Phone:** 318-388-4454
**Fax:** 318-388-4447

Contact Us|View Map





EXHIBIT
2