## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to
Civil File No. 18-296 (MJD/KMM)

**MEMORANDUM OF LAW & ORDER**

---

Michael D. Blatchley, John C. Browne, and Michael Mathai, Bernstein Litowitz
Berger & Grossmann LLP; Keith S. Dubanevich, Timothy S. DeJong, Keil M.
Mueller, and Lydia Anderson-Dana, Stoll Berne Lokting & Shlachter P.C.; Special
Assistant Attorneys General and Counsel for Lead Plaintiff the State of Oregon
by and through the Oregon State Treasurer and the Oregon Public Employee
Retirement Board, on behalf of the Oregon Public Employee Retirement Fund,
Counsel for Plaintiff Fernando Vildosola, and Lead Counsel for the Class; and
Richard A. Lockridge, Gregg M. Fishbein, and Kate M. Baxter-Kauf, Lockridge
Grindal Nauen P.L.L.P., Liaison Counsel for Plaintiffs.

Patrick E. Gibbs, Douglas P. Lobel, David A. Vogel, Sarah M. Lightdale, Ryan
Blair, and Dana A. Moss, Cooley LLP; William A. McNab, Thomas H. Boyd, and
David M. Aafedt, Winthrop & Weinstine, P.A.; and Jerry W. Blackwell, Blackwell
Burke P.A.; Counsel for Defendants CenturyLink, Inc., Glen F. Post, III, R.
Stewart Ewing, Jr., David D. Cole, Karen Puckett, Dean J. Douglas, and G. Clay
Bailey.

---

## I.     INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Final Approval of

Class Action Settlement and Plan of Allocation [Docket No. 363] and Lead

Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses

[Docket No. 366].  The Court heard oral argument on July 20, 2021.

## II.    BACKGROUND

### A.    Factual Background[1]

Defendant CenturyLink, Inc.[2] ("CenturyLink") is the country's third-

largest telecommunications company with millions of customers.  ([Docket No.

143] Consolidated Securities Class Action Complaint ("Compl.") ¶¶ 28, 37.)  Glen

F. Post, III; R. Stewart Ewing, Jr.; David D. Cole; Karen Puckett; Dean J. Douglas;

and G. Clay Bailey (collectively, the "Executive Defendants") held senior

positions at CenturyLink during the relevant time.  (Id. ¶¶ 29-34.)

Lead Plaintiff and Class Representative the State of Oregon by and

through the Oregon State Treasurer and the Oregon Public Employee Retirement

Board ("Oregon") operates and oversees public funds for the benefit of retired

public employees.  (Compl. ¶ 26.)  The Oregon Public Employee Retirement

Fund is a state pension fund for retired public employees.  (Id.)  Oregon

---

[1] This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated January 29, 2021 (the "Stipulation") [Docket No. 354-1], and all capitalized terms not otherwise defined herein have the same meaning as they have in the Stipulation.

[2] CenturyLink, Inc. changed its legal name to Lumen Technologies, Inc. on January 22, 2021.  (Stipulation at 8 ¶ 1(d).)

2

purchased CenturyLink securities during the Class Period.  (Id.)  Plaintiff and

Class Representative Fernando Alberto Vildosola, is trustee for the AUFV Trust

U/A/D 02/19/2009.  (Id. ¶ 27.)  AUFV Trust U/A/D 02/19/2009 purchased

CenturyLink's 7.60% Senior Notes due September 15, 2039 ("7.60% Notes")

during the Class Period.  (Id.)

     According to Vildosola and Oregon (collectively, "Plaintiffs"), for a

number of years, CenturyLink engaged in systemic "cramming" of customer

accounts, by adding services to customers' accounts without authorization,

deceiving customers about the prices they would be charged, and misquoting

prices by failing to disclose that "bundles" included fees for optional services

that the customers did not need or authorize.  (Compl. ¶¶ 44, 64.)  CenturyLink

potentially overbilled 3.5 million customers, representing over half of its

broadband subscribers and one-third of its 12 million wireline subscribers.  (Id.

¶¶ 65, 178.)  Overall, Plaintiffs allege that Defendants made false and misleading

statements concerning CenturyLink's allegedly fraudulent billing practices and

its financial condition on dozens of different dates from March 1, 2013 through

July 12, 2017 (the "Class Period").  (Id. ¶¶ 190–263 & App. A.)  As a result, the

prices of publicly traded CenturyLink common stock and 7.60% Notes were

artificially inflated and then, the prices of those securities declined when the

truth was revealed in a series of disclosures on June 16, 2017, June 19, 2017, and

July 12, 2017.  (Id. ¶¶ 152, 158, 163, 266.)

> B.   **Procedural History**

>> 1.   **Complaint**

In February 2018, the Judicial Panel on Multidistrict Litigation transferred

four federal securities actions to this Court for inclusion in MDL No. 2795: Craig

v. CenturyLink, Inc., Civil File No. 18-296 (MJD/KMM); Scott v. CenturyLink

Inc., Civil File No. 18-297 (MJD/KMM); Thummeti v. CenturyLink, Inc., Civil File

No. 18-298 (MJD/KMM); and Inter-Marketing Group USA Inc. v. CenturyLink,

Inc., Civil File No. 18-299 (MJD/KMM).  Before transfer to this Court, on October

19, 2017, the District Court for the Western District of Louisiana granted the four

potential lead plaintiffs' motions to consolidate the Craig, Scott, and Thummeti

cases.  [Docket No. 79]  On October 20, the Western District of Louisiana court

issued an Order appointing Oregon as Lead Plaintiff in the consolidated cases

and appointing Bernstein Litowitz Berger & Grossmann LLP ("Bernstein

Litowitz") and Stoll Berne Lokting & Shlachter P.C. ("Stoll Berne") as Lead

Counsel.  [Docket No. 80]  On April 20, 2018, this Court consolidated IMG with

the previously consolidated securities actions.  [Docket No. 137]

On June 25, 2018, Lead Plaintiff Oregon and Plaintiff Vildosola filed a

Consolidated Securities Class Action Complaint against Defendants CenturyLink

and the Executive Defendants.  [Docket No. 143]  The Complaint alleges: Count

1: Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated

Thereunder (against Defendants CenturyLink, Post, Ewing, Cole, Puckett, and

Douglas); and Count 2: Violations of Section 20(a) of the Exchange Act (against

Defendants Post, Ewing, Cole, Puckett, Douglas, and Bailey).

On July 30, 2019, the Court denied Defendants' Motion to Dismiss in its

entirety.  [Docket No. 180]  In re CenturyLink Sales Practices & Sec. Litig., 403 F.

Supp. 3d 712 (D. Minn. 2019).

## 2.    Class Certification Order

On September 14, 2020, the Court granted Plaintiffs' Motion for Class

Certification and certified a class consisting of:

> All persons and entities that purchased or otherwise acquired
> publicly traded CenturyLink, Inc. ("CenturyLink") common stock or
> 7.60% Senior Notes due September 15, 2039, during the period
> between March 1, 2013 to July 12, 2017, inclusive (the "Class
> Period"), and who were damaged thereby (the "Class").

[Docket No. 321]  In re CenturyLink Sales Practices & Sec. Litig., No. CV 18-296

(MJD/KMM), 2020 WL 5517483, at *16 (D. Minn. Sept. 14, 2020).  The Court also

5

appointed Oregon and Vildosola as Class Representatives and appointed

Bernstein Litowitz and Stoll Berne as Class Counsel.  Id.

On September 28, 2020, Defendants filed a petition with the Eighth Circuit

seeking interlocutory appeal of the Court's class certification order and, on

September 29, they filed a motion to stay discovery with this Court.  [Docket No.

323]  Plaintiffs filed oppositions to the petition and motion to stay, and, on

October 27, 2020, the Eighth Circuit denied Defendants' petition.  [Docket No.

346]

### 3.    Settlement Negotiations

In February 2020, the parties participated in a full-day, in-person

mediation before former United States District Court Judge Layn R. Phillips,

which did not result in a settlement.  (Joint Decl. ¶ 87.)  In October 2020, the

parties engaged in direct settlement negotiations that were somewhat

productive, but ultimately not successful.  (Id. ¶ 90.)

In early November 2020, the parties again participated in mediation with

Judge Phillips.  (Id.)  Judge Phillips issued a Mediator's recommendation that the

action be settled for $55 million in cash, which led to compromise by the parties.

(Id.)  On November 4, 2020, the parties reached an agreement on the amount of

6

the settlement.  (Id.)  They continued to negotiate on the other terms of the

settlement and executed a Term Sheet on November 19, 2020.  (Id.)  They signed

the formal Stipulation and Agreement of Settlement ("Stipulation") on January

29, 2021.  (Blatchley Decl., Ex. 1, Stipulation.)

### 4.    Terms of the Stipulation and Agreement of Settlement

#### a)    Settlement Class

The Settlement applies to the same Class that was previously certified by

the Court:

> All persons and entities that purchased or otherwise acquired
> publicly traded CenturyLink, Inc. ("CenturyLink") common stock or
> 7.60% Senior Notes due September 15, 2039, during the period
> between March 1, 2013 to July 12, 2017, inclusive (the "Class
> Period"), and who were damaged thereby (the "Class").

(See Stipulation at 9 ¶ 1(i).)

> Excluded from the Class are CenturyLink's affiliates and
> subsidiaries; the Officers and directors of CenturyLink and its
> subsidiaries and affiliates at all relevant times; members of the
> Immediate Family of any excluded person; heirs, successors, and
> assigns of any excluded person or entity; and any entity in which
> any excluded person has or had a controlling interest.  Also
> excluded from the Class are any persons and entities who or which
> exclude themselves by submitting a request for exclusion that is
> accepted by the Court.

(Id.)

7

### b)   Monetary Award

The Settlement requires a $55 million Settlement Amount that will be paid

into an escrow account.  (Stipulation at 16-17 ¶ 1(ww).)  "Settlement Fund"

means the Settlement Amount plus any interest earned thereon after being paid

into the Escrow Account.  (Stipulation at 17 ¶ 1(xx).)

> The Settlement Fund shall be used to pay: (a) any Taxes; (b) any
> Notice and Administration Costs; (c) any Litigation Expenses
> awarded by the Court; (d) any attorneys' fees awarded by the Court;
> and (e) any other costs and fees approved by the Court.  The balance
> remaining in the Settlement Fund, that is, the Net Settlement Fund,
> shall be distributed to Authorized Claimants. . . .

(Stipulation at 21 ¶ 9.)

The Settlement is not a claims-made settlement.  (Stipulation at 23 ¶ 13.)  If

there are funds remaining after the Claims Administrator has attempted to

redistribute remaining funds to Authorized Claimants, those funds will be

contributed to a non-sectarian, not-for-profit, 501(c)(3) organization

recommended by Lead Counsel and approved by the Court.  (Stipulation, Ex. 1-

A, Proposed Class Notice ¶ 69.)

Plaintiffs' damages expert developed the Plan of Allocation with Lead

Counsel.  (Stipulation, Ex. 1-A, Proposed Class Notice ¶ 50.)  The expert

calculated the estimated amount of artificial inflation in the closing prices of the

publicly traded CenturyLink common stock and 7.60% Notes during the Class

Period which allegedly was proximately caused by Defendants' allegedly

materially false and misleading statements and omissions.  (Id.; see also [Docket

No. 354-1] at 93, Stipulation, Ex. 1-A, Proposed Class Notice, Tables A-B.)

Recognized Loss Amounts are based primarily on the difference in the amount of

alleged artificial inflation in the respective prices of CenturyLink Securities at the

time of purchase or acquisition and at the time of sale or the difference between

the actual purchase price and sale price.  (Proposed Class Notice ¶ 53.)  In order

to have a Recognized Loss Amount under the Plan of Allocation, a Class Member

who acquired CenturyLink common stock or 7.60% Notes during the Class

Period must have held the respective CenturyLink Security over a date on which

corrective information was released to the market (June 16, 2017; June 19, 2017;

and July 12, 2017) and partially removed the artificial inflation from the price of

the security.  (Proposed Class Notice ¶¶ 52-53.)  The specific formula is set forth

in Paragraphs 54-65 of the Proposed Class Notice and Table A to the Proposed

Class Notice.

If the total of Recognized Claims of all Authorized Claimants is greater

than the Net Settlement Fund, each Authorized Claimant will receive their pro

rata share of the Net Settlement Fund.  (Id. ¶ 66.)  If the total of Recognized

Claims of all Authorized Claimants is less than the Net Settlement Fund, the

excess amount of the Net Settlement Fund will be distributed pro rata to all

Authorized Claimants entitled to receive payment.  (Id. ¶ 67.)  If an Authorized

Claimant's Distribution Amount is less than $10.00, no distribution will be made

to that Authorized Claimant.  (Id. ¶ 68.)

### c)       Attorneys' Fees and Costs

Plaintiffs' Counsel's attorneys' fees and litigation expenses will be paid out

of the Settlement Fund.  (Stipulation at 24 ¶ 15.)  Lead Counsel will apply to the

Court for an award of attorneys' fees to be distributed among all Plaintiffs'

Counsel in an amount not to exceed 25% of the Settlement Fund.  (Stipulation,

Ex. 1-A, Proposed Class Notice ¶ 5.)  Lead Counsel will also apply for payment

of Litigation Expenses incurred not to exceed $2 million.  (Id.)

### d)       Release

In exchange for the monetary relief, Class members must release certain

claims against Defendants.  Specifically, Class members must release the

"Released Plaintiffs' Claims," that is,

10

all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that (i) Plaintiffs or any other member of the Class asserted in the Complaint or could have asserted in any other forum that arise out of or are based upon the allegations, transactions, facts, matters, alleged misrepresentations, or alleged omissions involved, set forth, or referred to in the Complaint and (ii) relate to the purchase or acquisition of CenturyLink common stock or 7.60% Notes during the Class Period. For the avoidance of doubt, the Released Plaintiffs' Claims do not release or impair any of the Excluded Plaintiffs' Claims.

(Stipulation at 16 ¶ 1(ss).)

The following claims are excluded from the release as "Excluded Plaintiffs' Claims:" (i) any claims asserted by or on behalf of CenturyLink's customers in their capacity as customers, including without limitation the claims asserted in In re CenturyLink Sales Practices and Sec. Litig. Consumer Actions; (ii) claims asserted by or on behalf of CenturyLink's shareholders derivatively on behalf of CenturyLink, both in this MDL and in any other lawsuits; (iii) any claims asserted on behalf of former Level 3[3] shareholders; (iv) any claims by any governmental entity that arise out of any investigation of Defendants relating to the conduct alleged in the Action; (v) any claims relating to the enforcement of

---

[3] Level 3 was a communications company acquired by CenturyLink in 2017.

the Settlement; or (vi) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.  (Stipulation at 11-12 ¶ 1(w).)

### 5.      Preliminary Approval

On March 18, 2021, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement.  ([Docket No. 360] Preliminary Approval Order.)  Pursuant to the Preliminary Approval Order, objections to the settlement were required to be filed 21 days before the hearing.  (Preliminary Approval Order ¶ 15.)

No objections have been filed.  Forty-nine potential Class Members have asked to opt out.  Proof of CAFA notice was filed on July 13.  [Docket No. 372] The deadline to mail a claim for payment under the Settlement is August 13, 2021.  (Joint Decl. ¶ 141.)

### 6.      Current Motions for Final Approval and Attorneys' Fees

Plaintiffs now move for final approval of the Settlement, and Lead Counsel moves for an award of attorneys' fees of 25% of the Settlement Fund to Plaintiffs' Counsel; $888,775.83 for litigation expenses; and costs and expenses incurred by the Class Representatives ($40,763.69 for Oregon and $21,375.00 for Vildosola). Epiq received 49 requests for exclusion representing 500,608.437 eligible shares of

CenturyLink common stock purchased during the Class Period. (Supp. Sullivan Decl. ¶ 5.) No objections to the Settlement or attorneys' fee request were received. (Id. ¶ 6.)

## III.    DISCUSSION: FINAL APPROVAL

### A.    Standard

A Court may approve a Rule 23 class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The decision to approve a settlement agreement "is committed to the sound discretion of the trial judge." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975) (citation omitted). "[T]he district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." Id. (citations omitted).

> As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.

Schoenbaum v. E.I. Dupont De Nemours & Co., No. 4:05CV01108 ERW, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) (citations omitted). "At the preliminary approval stage, the 'fair, reasonable, and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval

due to an absence of any glaring substantive or procedural deficiencies." Id. at *3 (citations omitted). The Court grants preliminary approval and approves class notice only if the parties show that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).

When making a preliminary determination of the fairness of the proposed settlement, the Court considers

> issues such as whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys. The settling parties' views as to the propriety of the settlement are also entitled to some weight.

Id. (citations omitted).

At the stage of final approval,

> [a] district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. The district court need not make a detailed investigation consonant with trying the case; it must, however, provide the appellate court with a basis for determining that its decision rests on well-reasoned conclusions and is not mere boilerplate. The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.

14

In re Wireless Tele. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932-33 (8th Cir.

2005) (citations omitted).  In deciding whether the settlement is fair reasonable,

and adequate, the Court must consider whether

> (A) the class representatives and class counsel have adequately
> represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing
> > relief to the class, including the method of processing class-
> > member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees,
> > including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3);
> > and
>
> (D) the proposal treats class members equitably relative to each
> other.

Fed. R. Civ. P. 23(e)(2).

> [A] strong public policy favors agreements, and courts should
> approach them with a presumption in their favor.  Although a trial
> court must consider the terms of a class action settlement to the
> extent necessary to protect the interests of the class, [j]udges should

not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1148–49 (8th Cir. 1999) (citations omitted).

### B.    Adequacy of Representation

Plaintiffs have adequately represented the Class.  There was no conflict between Plaintiffs and the Class.  Plaintiffs and the other Class Members all purchased or otherwise acquired publicly traded CenturyLink common stock and/or 7.60% Notes during the Class Period and were allegedly damaged by the same alleged false and misleading statements about CenturyLink's sales and billing practices and the Company's financial results.  Additionally, the Class was represented in the litigation and the negotiations by experienced Lead Counsel, who have prosecuted numerous securities class actions.  Lead Counsel conducted extensive investigation, succeeded in defeating a motion to dismiss, obtained and reviewed extensive discovery, and obtained class certification against vigorous opposition from Defendants.

### C.    Arm's Length Negotiations Between Experienced Counsel

The fact that the Settlement was negotiated over many months by experienced counsel and sophisticated parties using an experienced mediator

and with the benefit of robust discovery from the parallel consumer action and the Minnesota Attorney General action weighs in favor of approval.

### D.   Merits of the Proposed Settlement

An immediate cash payment of $55 million for the benefit of the Class is an excellent result considering the significant risks and expenses of continued litigation.

### 1.   Merits of Plaintiffs' Case and Risks of Continued Litigation

Continued litigation through summary judgment, Daubert motions, and trial would involve considerable time and expense.  Plaintiffs faced a risk of losing based on the difficulty of proving scienter, particularly given the results of the internal investigation, and the fact that there was no government investigation regarding CenturyLink's statements to its investors and no auditor required CenturyLink to restate is financial statements.  Proving loss causation would have been a significant hurdle.  Overall, the next stages of the litigation, including summary judgment and then trial could have taken years and would have opened Plaintiffs up to considerable expense and risk.

### 2.    Benefits of the Settlement

The benefits of the Settlement are substantial.  $55 million is a significant sum and represents of the largest PSLRA settlements obtained in this District, particularly when taking into account that there was no related SEC or criminal securities investigation.  (Joint Decl. ¶ 93.)  The $55 million award represents 8% to 17% of investors' realistically recoverable damages of $315 to $690 million under Plaintiffs' expert's damages calculation and is more than twice the median recovery in securities class actions this size.  (Joint Decl. ¶ 133; Joint Decl., Ex. 11.)

### 3.    Confidential Termination Agreement

The Court routinely approves class action settlements when there is a confidential agreement allowing the defendant to terminate the settlement if a particular threshold of class members opt out.  The existence of such an agreement does not weigh against approval.

### 4.    Effectiveness of Proposed Method of Distributing Relief to the Class and Whether the Settlement Treats Class Members Equitably Relative to Each Other

The method of allocation is equitable and reasonable.  Plaintiffs' expert calculated the amount of artificial inflation of the securities' price caused by the alleged misstatements.  Each claimant's Recognized Loss Amounts will be based

on the difference in the amount of alleged artificial inflation in the prices of

CenturyLink Securities at the time of purchase and at the time of sale or the

difference between the actual purchase price and sale price, as long as the

claimant held the security during the time that CenturyLink made one of several

corrective statements that allegedly caused the artificial price inflation to

decrease.  (Joint Decl. ¶¶ 142-47.)

  If the amount of verified claims is less than or more than the settlement

funds available, claimants will receive their pro rata share of the money based on

the size of their verified damages claims.  This is a reasonable way to allocate the

funds and to ensure that the maximum amount of the funds is used for class

members' benefit.  See, e.g., In re Charter Commc'ns, Inc., Sec. Litig., No. 4:02-

CV-1186 CAS, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005) ("[I]t is

appropriate for interclass allocations to be based upon, among other things, the

relative strengths and weaknesses of class members' individual claims and the

timing of purchases and sales of the securities at issue.") (citation omitted).

### E. CenturyLink's Financial Condition

  There is no indication that CenturyLink's financial condition is inadequate.

The $55 million settlement amount has already been placed in escrow.  (Joint

Decl. ¶ 92.)

### F.      Opposition to the Settlement

There is no opposition to the Settlement.  No objections to the Settlement or attorneys' fee request were received.  (Supp. Sullivan Decl. ¶ 6.)

Epiq received 49 requests for exclusion representing 500,608.437 eligible shares of CenturyLink common stock purchased during the Class Period.  (Supp. Sullivan Decl. ¶ 5.)  The only non-individual to request exclusion was Hapoalim (Switzerland) Ltd., a foreign bank, that requested exclusion only because all of its clients have transferred to other banks or closed their accounts because Hapoalim is winding down.  (Id. ¶ 5; Supp. Sullivan Decl., Ex. A at 179.)  The 49 opt-out requests represent 0.005% of the total number of Notices mailed to potential Class Members.  None of the opt-out requests stated any specific objection to any aspect of the Settlement or the requested fees and expenses.  This factor weighs in favor of approval.

### G.      Form of the Notices and Claim Forms

#### 1.      Standard for Class Notice

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The

notice must satisfy the "broad reasonableness standards imposed by due

process." <u>Petrovic v. Amoco Oil Co.</u>, 200 F.3d 1140, 1153 (8th Cir. 1999) (citation

omitted). The "notice must be reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." <u>Id.</u> (citation omitted).

## 2.    Class Notification

The Court approved the contents and manner of the Class notification in

its Preliminary Approval Order as confirming with the Rule 23 and PSLRA

requirements. As required by the Class Action Fairness Act, 28 U.S.C. § 1715,

("CAFA"), notice was provided to the relevant government entities. ([Docket

No. 372] Koch Decl.)

Epiq began sending Notice Packets to potential Class Members on April

15, 2021. (Sullivan Decl. ¶¶ 4-6.) As of July 13, 2021, Epiq had disseminated

955,207 copies of the Notice Packet to potential Class Members and nominees.

(Supp. Sullivan Decl. ¶ 2.) Epiq caused the Summary Notice to be published in

Investor's Business Daily and transmitted over PR Newswire. (Sullivan Decl. ¶

11.) Additionally, copies of the Notice and Claim Form, as well as other relevant

documents, including the Complaint, the Stipulation, and the Preliminary

Approval Order, were continuously made available on the settlement website,

www.CenturyLinkSecuritiesLitigation.com, maintained by Epiq beginning on

April 14, 2021.  (Id. ¶ 16.)  Epiq also reserved a toll-free number, which appears

in the Notice, in the Claim Form, and on the Settlement website, which provides

pre-recorded information regarding the Settlement 24 hours a day and, Monday

through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time, provides a live operator

to answer questions about the status of the Settlement or communications callers

received from Epiq.  (Id. ¶¶ 12-14.)

Overall, the Court finds that the form of the notice complied with the

requirements of due process, the Federal Rules of Civil Procedure, and the

PSLRA.  The notice method was reasonable and effective.

## IV.   DISCUSSION: ATTORNEYS' FEES AND EXPENSES

Lead Counsel Bernstein Litowitz and Stoll Berne move for an award of

attorneys' fees to Plaintiffs' Counsel consisting of 25% of the Settlement Fund;

payment of Plaintiffs' Counsel's reasonable litigation expenses; and

reimbursement of reasonable expenses incurred by Lead Plaintiff and Class

Representative Oregon and Class Representative Vildosola.  "Plaintiffs' Counsel"

consist of Lead Counsel, Bernstein Litowitz and Stoll Berne; Liaison Counsel,

Lockridge Grindal Nauen P.L.L.P. ("Lockridge"); Nelson, Zentner, Sartor &

Snellings, LLC ("NZSS"), which served as liaison counsel for Lead Plaintiff while

the Action was pending in the United States District Court for the Western

District of Louisiana; and Motley Rice LLC ("Motley Rice"), additional counsel

for Plaintiffs.  Under the Settlement, Lead Counsel are permitted to apply for an

award of attorneys' fees not to exceed 25% of the Settlement Fund and for

payment of expenses not to exceed $2 million.

### A.    Attorneys' Fee Award

#### 1.    Standard for Award of Attorneys' Fees

> The district court has discretion to use either a lodestar or
> percentage-of-the-fund method in determining an appropriate
> recovery, and the ultimate reasonableness of the award is evaluated
> by considering relevant factors from the twelve factors listed in
> Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 719–20 (5th Cir.
> 1974).

Rawa v. Monsanto Co., 934 F.3d 862, 870 (8th Cir. 2019) (citations omitted).  The

Court must "provid[e] a concise but clear explanation of its reasons for the fee

award," and the Eighth Circuit "give[s] substantial deference to a district court's

determinations, in light of the district court's superior understanding of the

litigation."  Id. (citations omitted).  "It is within the discretion of the district court

to choose which method to apply, as well as to determine the resulting amount

that constitutes a reasonable award of attorney's fees in a given case." Keil v.

Lopez, 862 F.3d 685, 701 (8th Cir. 2017) (citation omitted).

### 2.      Percentage-of-the-Benefit Method

#### a)      Percentage-of-the-Benefit Standard

"[T]he 'percentage of the benefit' approach, permits an award of fees that

is equal to some fraction of the common fund that the attorneys were successful

in gathering during the course of the litigation." Keil, 862 F.3d at 701 (citation

omitted).   The Court uses the Johnson factors to determine the reasonableness of

the fee request:

> (1) The time and labor required; (2) The novelty and difficulty of the
> questions; (3) The skill requisite to perform the legal service
> properly; (4) The preclusion of other employment by the attorney
> due to acceptance of the case; (5) The customary fee for similar work
> in the community; (6) Whether the fee is fixed or contingent; (7)
> Time limitations imposed by the client or the circumstances; (8) The
> amount involved and the results obtained; (9) The experience,
> reputation, and ability of the attorneys; (10) The undesirability of the
> case; (11) The nature and length of the professional relationship with
> the client; and (12) Awards in similar cases.

In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d 980, 993

(D. Minn. 2005) (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-

19 (5th Cir. 1974)).   Because "not all of the individual Johnson factors will apply

in every case, [] the court has wide discretion as to which factors to apply and the relative weight to assign to each." Id.

### b)   Benefit Conferred on the Class

Plaintiffs' Counsel obtained a substantial benefit for the Class. The $55 million in monetary relief represents one of the largest PSLRA settlements in this District. The amount recovered is larger than the recoveries in the parallel state Attorneys General investigations and the consumer MDL class action combined. It is over twice the median recovery in securities class actions this size under Plaintiffs' best-case damages estimates.

### c)   Risks to which Plaintiffs' Counsel Were Exposed

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d at 994. And "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." Mashburn v. Nat'l Healthcare, Inc., 684 F. Supp. 679, 687 (M.D. Ala. 1988).

Plaintiffs' Counsel have received no compensation to date, while assuming the risk of no recovery and expending significant attorney time and advancing considerable costs. Class certification posed potential case-ending risk, particularly in light of Defendants' vigorous arguments regarding price impact and Plaintiffs' damages model, which, if accepted, could have precluded both certification of the class and any recovery whatsoever. They also faced significant risks at summary judgment and trial. (See, e.g., Joint Decl. ¶ 32.)

### d) Difficulty and Novelty of the Legal and Factual Issues

"Securities claims proceeding as a class action present complex and novel issues, and successfully prosecuting these types of actions has become more difficult with the adoption of the Private Securities Litigation Reform Act ("PSLRA")." Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc., No. 014CV00786ADMTNL, 2017 WL 2588950, at *2 (D. Minn. June 14, 2017). This case involved difficult issues regarding falsity, materiality, scienter, loss causation, and damages. (Joint Decl. ¶¶ 105-29.) This case lacked several strong facts that often support liability (and large settlement valuations) and provide a roadmap for proving fraud, such as suspected insider trading, a corporate restatement, or a companion SEC or DOJ investigation. See In re Xcel Energy,

26

Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d at 995 ("The case was also made more difficult because it had none of the usual indicia of securities fraud, such as accounting improprieties, a restatement of financials, any insider trading, or an investigation by the SEC into the primary allegations of securities fraud this case."). And the independent investigation commissioned by a special committee of CenturyLink's Board of Directors purportedly absolved senior management of knowledge of fraud and the company as a whole of systemic sales and billing misconduct. (Joint Decl. ¶¶ 106, 119-20.)

### e)   Skill of the Lawyers

Both Plaintiffs and Defendants retained counsel with significant experience and expertise in securities class actions, who litigated aggressively and effectively.

### f)   Time and Labor Involved

This case has been heavily litigated since its inception in June 2017 and has involved complex procedural issues including consolidation, lead plaintiff appointment, multidistrict litigation, and class certification. Plaintiffs also had to oppose Defendants' Rule 23(f) petition seeking immediate appeal of the Court's class certification order.

### g)     Reaction of the Class

Although Epiq has disseminated more than 955,000 copies of the Notice to potential Class Members or nominees informing them that Lead Counsel intended to apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund and expenses not to exceed $2 million, there have been no objections.  Furthermore, none of the 49 opt-out requests specified any objection to the request for fees and costs.

### h)     Comparison of Awards in Similar Cases

A fee award of 25% is reasonable, because "courts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions."  In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d at 998 (gathering cases).  And an attorneys' fee award of 25% "comports with attorney fee awards in other securities actions from other federal courts around the country."  Id. (gathering cases).

### 3.     Support of Plaintiffs

Plaintiffs support Lead Counsel's request for fees and expenses.  (Joint Decl., Ex. 2, de Haan Decl. ¶¶ 8-9; Joint Decl., Ex. 3, Vildosola Decl. ¶¶ 6-7.)

Oregon is an experienced, sophisticated institutional investor that has achieved numerous securities class action recoveries under the PSLRA, and Vildosola is an experienced investor who suffered a substantial loss on the 7.60% Notes. Oregon engaged a retired Oregon state court judge to provide an independent assessment of the reasonableness of the proposed fee. (de Haan Decl. ¶ 9.) Thus, their endorsement of Lead Counsel's fee request as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation, is entitled to consideration.

### 4.    Lodestar Method Cross-Check

"Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." Keil v. Lopez, 862 F.3d 685, 701 (8th Cir. 2017) (citation omitted). When the Court uses the percentage-of-the-benefit method, it is not required to cross-check it against the lodestar method. Id. However, in this case, using the lodestar method as a cross-check demonstrates that the fees requested are reasonable.

Plaintiffs' Counsel expended more than 39,000 hours prosecuting this action, including in connection with obtaining transfer of this case to this Court, defeating Defendants' motion to dismiss, conducting discovery, and successfully obtaining class certification and defeating Defendants' Rule 23(f) petition.  (Joint Decl. ¶¶ 156-61.)  The resulting lodestar is $17,923,589.75.  (Id. ¶ 160.)  The vast majority of the total lodestar—$16,396,312.75, or approximately 91%—was incurred by Lead Counsel.  Lead Counsel has and will continue to invest substantial time and effort in this case after the November 19, 2020 cut-off imposed for their lodestar submissions on this application, including by overseeing the distribution of funds to eligible claimants.  (Id.)  Therefore, the requested fee amount here, $13,750,000, is a negative lodestar multiple, 0.77.

**B.     Plaintiffs' Counsel's Litigation Expenses**

**1.     Standard for Award of Plaintiffs' Counsel's Litigation Expenses**

"It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile

30

expenses." <u>Krueger v. Ameriprise Fin., Inc.</u>, No. 11-CV-2781 SRN/JSM, 2015 WL

4246879, at *3 (D. Minn. July 13, 2015).

### 2.   Requested Award

Lead Counsel requests payment of $888,775.83 for litigation expenses

incurred by Plaintiffs' Counsel to prosecute this case.  (Joint Decl. ¶ 179; Joint

Decl., Ex. 6; Supp. Blatchley Decl.; Supp. Blatchley Decl., Exs. A-C.)  The largest

category of expense was for the retention of Plaintiffs' experts, which came to

$534,996.41, or approximately 60% of the total litigation expenses incurred by

Plaintiffs' Counsel.  (Joint Decl. ¶ 182; Supp. Blatchley Decl., Ex. A.)  These

experts were key to Plaintiffs' success in this litigation.  In addition, the costs for

online research, in the amount of $196,473.27, represented 22% of the total

amount of expenses.  (Supp. Blatchley Decl., Ex. A.)

Plaintiffs' Counsel's requested expenses are "related and necessary to the

prosecution of this type of litigation and are properly recovered by counsel who

prosecute cases on a contingent basis." <u>In re Zurn Pex Plumbing Prod. Liab.</u>

<u>Litig.</u>, No. 08-MDL-1958 ADM/AJB, 2013 WL 716460, at *5 (D. Minn. Feb. 27,

2013).  Because counsel had no guarantee that these expenses would ever be

reimbursed, Plaintiffs' Counsel had the incentive to keep the amounts reasonable.  <u>See, e.g.</u>, <u>Krueger</u>, 2015 WL 4246879, at *3.

The Class Notice informed potential Class members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $2 million.  (Joint Decl. ¶ 188.)  The actual amount requested is less than 50% that amount.  Yet there have been no objections to the requests for expenses.  The Court approves the request for expenses.

## C.    Class Representatives' Reasonable Costs and Expenses

### 1.    Standard for Award of Class Representatives' Reasonable Costs and Expenses

"The PSLRA permits the court to order an award to lead plaintiffs for the services they rendered in a securities class action."  <u>In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.</u>, 364 F. Supp. 2d at 1000 (citing 15 U.S.C. § 78u–4(a)(4).

> In granting compensatory awards to the representative plaintiff in PSLRA class actions, courts consider the circumstances, including the personal risks incurred by the plaintiff in becoming a lead plaintiff, the time and effort expended by that plaintiff in prosecuting the litigation, any other burdens sustained by that plaintiff in lending himself or herself to prosecuting the claim, and the ultimate recovery.

Id.  Courts also consider "the important policy role they play in the enforcement of the federal securities laws on behalf of persons other than themselves," because, without them, "many violations of law might go unprosecuted."  Id.

### 2.   Requested Award

Lead Counsel requests reimbursement of $40,763.69 for Oregon and $21,375.00 for Vildosola as Class Representatives.  Oregon seeks an award based on $35,351.23 for the time dedicated by Oregon employees in the Department of Justice and the Treasury Department in furthering and supervising this litigation; $599.96 for reimbursement for travel expenses incurred by Brian de Haan from Oregon DOJ for his travel to the February 2020 mediation session; and $4,812.50 for the out-of-pocket expense to obtain an independent assessment of Lead Counsel's proposed fee request.  (de Haan Decl. ¶¶ 12-15.)  The hourly rates charged are based on the annual salaries of the Oregon personnel.  (Id. ¶ 12 n.2.) Vildosola seeks an award based on the 95 hours he devoted to the representation of the Class in the Action and his hourly rate of $225 per hour charged for his regular consulting work.  (Vildosola Decl. ¶¶ 8-9.)

Throughout this litigation, Oregon and Vildosola communicated with Lead Counsel regarding case strategy and developments, reviewed pleadings

and briefs filed in the Action, responded to discovery requests, consulted with

Lead Counsel regarding settlement negotiations, and evaluated and approved

the proposed Settlement.  (de Haan Decl. ¶ 4; Vildosola Decl. ¶ 9.)  Also,

Vildosola and two representatives of Oregon were deposed in connection with

the class certification motion, and de Haan attended the February 2020 mediation

before Judge Phillips.  (de Haan Decl. ¶¶ 4-5; Vildosola Decl. ¶ 3.)

The Court concludes that the requests for reimbursement of Plaintiffs'

costs and expenses are reasonable and compensable.  See, e.g., In re Charter

Commc'ns, Inc., Sec. Litig., No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *25 (E.D.

Mo. June 30, 2005); In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364

F. Supp. 2d at 1000.


Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1.  Plaintiffs' Motion for Final Approval of Class Action Settlement
    and Plan of Allocation [Docket No. 363] is **GRANTED**.

2.  Lead Counsel's Motion for an Award of Attorneys' Fees and
    Litigation Expenses [Docket No. 366] is **GRANTED**.

3.  The Court hereby finds and concludes that the Plan of Allocation
    is, in all respects, fair and reasonable to the Class.  Accordingly,

34

the Court hereby approves the Plan of Allocation proposed by Plaintiffs.

4. Any appeal or any challenge affecting this Court's approval of the Plan of Allocation shall in no way disturb or affect the finality of the Judgment.

5. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, which sum the Court finds to be fair and reasonable.

6. Plaintiffs' Counsel are also hereby awarded $888,775.83 in payment of litigation expenses to be paid from the Settlement Fund, which sum the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

7. Lead Plaintiff and Class Representative the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund, is hereby awarded $40,763.69 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

8. Named Plaintiff and Class Representative Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009, is hereby awarded $21,375.00 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Class.

9. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expenses application shall in no way disturb or affect the finality of the Judgment.

10. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11. Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.


Dated:  July 21, 2021                      s/Michael J. Davis
                                           Michael J. Davis
                                           United States District Court