## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil File No. 18-296 (MJD/KMM)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..............................................................................................ii

I.     BACKGROUND ..................................................................................................... 2

II.    CLAIMS ADMINISTRATION ............................................................................... 3

       A.     No Disputed Claims ...................................................................................... 4

       B.     Late Claims and Final Cut-Off Date ............................................................. 5

III.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR.................................. 6

IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ......................... 7

       A.     Initial Distribution of the Net Settlement Fund.............................................. 7

       B.     Additional Distribution(s) of the Net Settlement Fund.................................. 8

V.     RELEASE OF CLAIMS ....................................................................................... 10

VI.    CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**                                                   **PAGE(S)**

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. 14-cv-3428 (S.D. Tex. Nov. 17, 2020) ................................................................ 12

*In re Eletrobras Sec. Litig.*,
467 F.Supp.3d 149 (S.D.N.Y. 2020)........................................................................... 12

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
No. 12-cv-3824, 2015 WL 12839121 (E.D. Pa. Jan. 21, 2015).................................. 12

*In re Nu Skin Enters., Inc., Sec. Litig.*,
Master File No. 14-cv-33 (D. Utah Aug. 30, 2018)..................................................... 10

*Perkins v. Am. Nat'l Ins. Co.*,
No. 05-cv-100, 2012 WL 2839788 (M.D. Ga. July 10, 2012) .................................... 10

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL
9778633 (9th Cir. Nov. 7, 2016).................................................................................. 10

*In re The St. Paul Cos., Inc. Sec. Litig.*,
2006 WL 618910 (D. Minn. Mar. 10, 2006) ............................................................... 11

*Thorpe v. Walter Inv. Mgmt., Corp.*,
2018 WL 3672266 (S.D. Fla. May 24, 2018), *report and
recommendation adopted*, 2018 WL 3672239 (S.D. Fla. June 8, 2018) ..................... 12

Lead Plaintiff and Class Representative the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund ("Oregon"), and named plaintiff and Class Representative Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009 ("Vildosola," and together with Lead Plaintiff, "Plaintiffs"), respectfully move for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order") for the proceeds of the Settlement in the above-captioned securities class action (the "Action"). The Distribution Plan is included in the accompanying Declaration of Owen F. Sullivan ("Sullivan Declaration" or "Sullivan Decl."), submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").[1]

If entered by the Court, the Class Distribution Order would permit Epiq to make an Initial Distribution of Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order would: (i) approve Epiq's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise;

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Sullivan Declaration or the Stipulation and Agreement of Settlement dated as of January 29, 2021 (ECF No. 354-1) (the "Stipulation"). The Settlement is contained in the Stipulation.

and (iii) approve Epiq's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.

Under the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 18, 22, 24. Nevertheless, we provided Defendants' counsel a copy of these motion papers and they informed us that Defendants do not oppose this motion. There are no disputed Claims by any Class Member requiring Court review. As such, the motion is ripe for determination.

## I.    BACKGROUND

As the Court is aware, this Action was settled for $55 million in cash. On July 21, 2021, the Court granted final approval in its Memorandum of Law & Order (ECF No. 380) and entered the Judgment Approving Class Action Settlement (ECF No. 381). The Effective Date of the Settlement has now occurred. *See* Stipulation ¶ 33. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. In accordance with paragraph 27 of the Stipulation, Plaintiffs respectfully request that the Court enter the Class Distribution Order approving the Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement (ECF No. 360), Epiq mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Class Members,

2

brokers, and other nominees. Sullivan Decl. ¶ 2. Epiq has disseminated 966,439 Notice

Packets to potential Class Members, brokers, and nominees. *Id*. ¶ 4. The Notice informed

Class Members that if they wished to be eligible to participate in the distribution of the Net

Settlement Fund, they were required to submit a properly executed Claim Form postmarked

no later than August 13, 2021. *Id*. ¶ 7.

## II.   CLAIMS ADMINISTRATION

As set forth in the Sullivan Declaration, through May 8, 2022, Epiq received and

processed 589,759 Claims. Sullivan Decl. ¶ 7. All Claims received through May 8, 2022,

have been fully processed in accordance with the Stipulation and the Court-approved Plan

of Allocation included in the Notice (*see id*.), and Epiq has worked with Claimants to help

them perfect their Claims. *See id.* ¶¶ 19-32. Many of the Claims were initially deficient or

ineligible for one or more reasons, including for being incomplete, not signed, not properly

documented, or otherwise deficient, which required substantial follow-up work by Epiq.

*Id*. ¶¶ 19, 22.

If Epiq determined a Claim to be defective or ineligible, Epiq sent a letter (if the

Claimant or filer filed a paper Claim) or an email (if the Claimant or filer filed an Electronic

Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of

ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim

("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer

that the appropriate information or documentary evidence to complete the Claim had to be

sent within 20 days from the date of the Deficiency Notice or Epiq would recommend the

Claim for rejection to the extent the deficiency or condition of ineligibility was not cured.

3

*Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Sullivan Declaration.

Of the 589,759 Claims that are the subject of this motion, Epiq has determined that 105,487 Claims are acceptable in whole or in part, and that 484,272 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Sullivan Decl. ¶¶ 38-41. Plaintiffs respectfully request that the Court approve Epiq's administrative determinations accepting and rejecting Claims as stated in the Sullivan Declaration.

### A. No Disputed Claims

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. Consistent with paragraph 25(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within 20 days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. *Id*. ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully processed Claims, Epiq received seventy-one (71) requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, Epiq contacted the Claimants requesting Court review and attempted to answer all questions and fully explain Epiq's administrative determination of the Claim's status and facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 32. As a result of these efforts, fifty-six (56) Claimants resolved their deficiencies and withdrew their requests for Court review, and their Claims are recommended for approval; fifteen (15) Claimants understood the reasons

4

for Epiq's determinations and are no longer requesting Court review. *Id*. Accordingly, there are no outstanding requests for Court review by any Claimants. *Id*.

## B. Late Claims and Final Cut-Off Date

The 589,759 Claims received through May 8, 2022, include 57,912 Claims that were postmarked or received after August 13, 2021, the Court-approved Claim submission deadline. *Id*. ¶¶ 33, 39. Those late Claims have been fully processed, and 16,637 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 16,637 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Notice ¶ 44. Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Plaintiffs respectfully request that the Court order that any new Claims and any adjustments to previously filed Claims that would result in an increased Recognized Claim amount received after May 8, 2022, be barred, subject to the provisions of paragraph 43(f) of the Sullivan Declaration. Paragraph 43(f) applies to any Claims received or modified after May

8, 2022, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received. At the time when Lead Counsel, in consultation with Epiq, determine that an additional distribution is not cost-effective as provided in paragraph 43(e) of the Sullivan Declaration, the post-May 8, 2022 Claimants, after payment of fees and expenses as provided in paragraph 43(f) of the Sullivan Declaration, and at the discretion of Lead Counsel and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

## III.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with Epiq's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, Epiq was responsible for, among other things, disseminating notice of the Settlement to the Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Sullivan Decl. ¶ 2. Epiq's fees and expenses for its work performed through February 28, 2022, are \$2,033,575.74, and its estimated fees and expenses for work to be performed on behalf of the Class in connection with the Initial Distribution are \$424,251.50, which together total \$2,457,847.24. *Id*. ¶ 42. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. To date, Epiq has received no payment for its fees and expenses. *Id*. Accordingly, there is an outstanding

6

balance of $2,457,847.24 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the Initial Distribution. *Id*. Lead Counsel reviewed Epiq's invoices and respectfully request on behalf of Plaintiffs that the Court approve all Epiq's fees and expenses.

## IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A. Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute 95% of the Net Settlement Fund after deducting: (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (the "Initial Distribution"). *See* Sullivan Decl. ¶ 43(a). In the Initial Distribution, Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 43(a)(1). Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. Epiq will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq. *Id*. ¶ 43(a)(2). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 43(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*.

Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 43(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 43(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 43(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 43(b) of the Sullivan Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 43(c).

### B.     Additional Distribution(s) of the Net Settlement Fund

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than six (6) months after the Initial Distribution, Epiq will, after consulting with Lead Counsel, conduct the Second

8

Distribution of the Net Settlement Fund. *Id.* ¶ 43(d). In the Second Distribution, any amount remaining in the Net Settlement Fund after deducting any unpaid fees and expenses incurred will be distributed to all Authorized Claimants who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. After the Second Distribution, if any funds remain in the Net Settlement Fund, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Lead Counsel, in consultation with Epiq, determine that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after May 8, 2022, Epiq will process those Claims. *Id*. ¶ 43(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after May 8, 2022, may be paid in accordance with paragraph 43(f) of the Sullivan Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and unpaid fees or expenses, the remaining funds will be contributed to the National Consumer Law Center ("NCLC"). *Id; see also* Notice ¶ 69.

NCLC is a private, non-sectarian, not-for-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See About Us*, National Consumer Law Center, nclc.org/about-us/about-us.html (last visited Apr. 18, 2022). NCLC was founded in 1969 through a federal grant to provide legal services addressed to two main goals: improving the access of low-income people to the legal system and enabling advocates to seek remedies where needed. *See Our Story*, National Consumer Law Center, nclc.org/about-us/our-story.html (last visited Apr. 18, 2022). Today, NCLC continues to

9

advocate for low-income consumers and provides many resources to civil legal aid and private attorneys representing low-income consumers. *See id.* NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the United States. *See id.* "NCLC works to ensure a fair marketplace and access to justice for all consumers, including low-income people, older Americans, students, military service members and veterans," and its "work covers a broad range of consumer issues, including consumer protection, fair credit, debt collection, student loans, mortgages and foreclosures, financial services, bankruptcy, [and] unfair and deceptive acts and practices. . . ." *See Cy Pres Awards*, National Consumer Law Center, nclc.org/about-us/cy-pres-awards.html (last visited Apr. 18, 2022). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See, e.g.*, *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW, ECF Nos. 152-154 (D. Utah Aug. 30, 2018); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633 (9th Cir. Nov. 7, 2016); *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at \*5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## V.   RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing or who are involved in the administration or taxation of the

Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 29; *see also* Notice ¶ 70. Accordingly, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *In re The St. Paul Cos., Inc. Sec. Litig.,* 2006 WL 618910, at \*2 (D. Minn. Mar. 10, 2006) ("The Court finds that the administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and the Plan of Allocation and that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they

11

are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the Released Parties beyond the amount allocated to them pursuant to this Order."); *In re Eletrobras Sec. Litig.*, 467 F.Supp.3d 149, 151 (S.D.N.Y. 2020) (approving substantially similar language in order authorizing distribution of settlement proceeds); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 14-cv-3428-NFA, ECF No. 384, at 7 (S.D. Tex. Nov. 17, 2020) (same); *Thorpe v. Walter Inv. Mgmt., Corp.*, 2018 WL 3672266, at *2 (S.D. Fla. May 24, 2018), *report and recommendation adopted*, 2018 WL 3672239 (S.D. Fla. June 8, 2018) (same); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2015 WL 12839121, at *1 (E.D. Pa. Jan. 21, 2015) (same).

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated:  May 20, 2022                    Respectfully submitted,

*/s/ Michael D. Blatchley*
John C. Browne, NYS Bar No. 3922747
Michael D. Blatchley, NYS Bar No. 4747424
Michael M. Mathai, NYS Bar No. 5166319
**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com
michael.mathai@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydia Anderson-Dana, OSB No. 166167
Megan K. Houlihan, OSB No. 161273
**STOLL STOLL BERNE LOKTING
  & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com
landersondana@stollberne.com
mhoulihan@stollberne.com

*Special Assistant Attorneys General and
Counsel for Lead Plaintiff the State of Oregon
by and through the Oregon State Treasurer
and the Oregon Public Employee Retirement
Board, on behalf of the Oregon Public
Employee Retirement Fund and Fernando
Alberto Vildosola, as trustee for the AUFV
Trust U/A/D 02/19/2009, and Lead Counsel
for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Lead Plaintiff the State of
Oregon by and through the Oregon State
Treasurer and the Oregon Public Employee
Retirement Board, on behalf of the Oregon*

13

*Public Employee Retirement Fund and Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009, and Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION<br><br>This Document Relates to:<br>Civil File No. 18-296 (MJD/KMM) | MDL No. 17-2795 (MJD/KMM) |

**LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE FOR PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

I, Michael D. Blatchley, certify the accompanying Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Distribution Plan. I further certify that Microsoft Office Word 2016 was used to prepare the memorandum and when applied specifically to include all text, including headings, footnotes, and quotations, generated a word count of 4,076 in 13-point Times New Roman font.

Dated: May 20, 2022                    Respectfully submitted,

                                       */s/* Michael D. Blatchley
                                       John C. Browne, NYS Bar No. 3922747
                                       Michael D. Blatchley, NYS Bar No. 4747424
                                       Michael M. Mathai, NYS Bar No. 5166319
                                       **BERNSTEIN LITOWITZ BERGER**
                                       **& GROSSMANN LLP**
                                       1251 Avenue of the Americas
                                       New York, New York 10020
                                       Telephone: (212) 554-1400
                                       Facsimile: (212) 554-1444
                                       johnb@blbglaw.com
                                       michaelb@blbglaw.com
                                       michael.mathai@blbglaw.com

1

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydia Anderson-Dana, OSB No. 166167
Megan K. Houlihan, OSB No. 161273
**STOLL STOLL BERNE LOKTING
 & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com
landersondana@stollberne.com
mhoulihan@stollberne.com

*Special Assistant Attorneys General and
Counsel for Lead Plaintiff the State of Oregon
by and through the Oregon State Treasurer
and the Oregon Public Employee Retirement
Board, on behalf of the Oregon Public
Employee Retirement Fund and Fernando
Alberto Vildosola, as trustee for the AUFV
Trust U/A/D 02/19/2009, and Lead Counsel
for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Lead Plaintiff the State of
Oregon by and through the Oregon State
Treasurer and the Oregon Public Employee
Retirement Board, on behalf of the Oregon*

2

*Public Employee Retirement Fund and
Fernando Alberto Vildosola, as trustee for the
AUFV Trust U/A/D 02/19/2009, and Lead
Counsel for the Class*